1 | WILSON PETTY KOSMO & TURNER LLP
REGINA A. PETTY (106163)
2 | SOTERA L. ANDERSON (211025)
550 West C Street, Suite 1050
3 | San Diego, California 92101
Telephone: (619) 236-9600
4 | Facsimile: (619) 236-9669
**E-mail:** rpetty@wpkt.com
5 | **E-mail:** sanderson@wpkt.com

6 | Attorneys for Defendant
SAN DIEGO CONVENTION CENTER
7 | CORPORATION, INC.

**FILED**

NOV 2 6 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8

9 | **UNITED STATES DISTRICT COURT**

10 | **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | UNITED NATIONAL MAINTENANCE INC,
A NEVADA CORPORATION,

13 |              Plaintiff,

14 |       v.

15 | SAN DIEGO CONVENTION CENTER
CORPORATION, INC., A CALIFORNIA
16 | CORPORATION,

17 |              Defendant.

18

Case No. 07-CV-2172 BEN (JMA)

**REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF DEFENDANT SAN
DIEGO CONVENTION CENTER
CORPORATION, INC.'S
OPPOSITION TO PLAINTIFF'S *EX
PARTE* APPLICATION FOR ORDER
SHORTENING TIME TO HEAR
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

Complaint Filed: November 13, 2007

19 | Date:
Time:
20 | Dept.:       3
Judge:      Hon. Roger T. Benitez
21 | Trial Date: Not Set

22

23 | **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

24 |       **PLEASE TAKE NOTICE** that pursuant to Federal Rules of Evidence, Rule 201 Defendant

25 | SAN DIEGO CONVENTION CENTER CORPORATION, INC. ("SDCCC"), respectfully requests

26 | that the Court take judicial notice of the following document in support of its Opposition to

27 | Plaintiff's *Ex Parte* Application for an Order Shortening Time to Hear Plaintiff's Motion for

28 | Preliminary Injunction:



| Exhibit | Description |
|---|---|
| A | Plaintiff's Complaint filed in the San Diego Superior Court, Case No. 37-2007-00072054-CU-BT-CTL |
| B | San Diego Superior Court Minute Order denying Plaintiff's request for Temporary Restraining Order and setting hearing for Plaintiff's request for Preliminary Injunction |
| C | SDCCC's Demurrer to Plaintiff's Complaint filed in the San Diego Superior Court |
| D | Plaintiff's Complaint filed in the United States District Court, Southern District of California, Case No. 07-CV-2172 BEN (JMA) |
| E | Articles of Incorporation for the San Diego Convention Center Corporation |

Pursuant to Federal Rules of Evidence, Rule 201, the Court may take judicial notice of adjudicative facts, that is, facts that relate to the parties, their activities, their businesses. (2 Administrative Law Treatise 353.)

Dated:    November 26, 2007

**WILSON PETTY KOSMO & TURNER LLP**

By: _____
REGINA A. PETTY
SOTERA L. ANDERSON

Attorneys for Defendant
SAN DIEGO CONVENTION CENTER
CORPORATION

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT SAN DIEGO CONVENTION CENTER
CORPORATION, INC.'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION

1 | James R. Lance (147173)
      jlance@knlh.com
2 | Jacob M. Slania (200652)
      jslania@knlh.com
3 | **KIRBY NOONAN LANCE & HOGE LLP**
      600 West Broadway, Suite 1100
4 | San Diego, California 92101-3387
      Telephone (619) 231-8666
5 | Facsimile (619) 231-9593

6 | Attorneys for Plaintiff

F I L E D
Clerk of the Superior Court

JUL 3 0 2007

By: C. BOYLE , Deputy

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SAN DIEGO**

10

11 | UNITED NATIONAL MAINTENANCE,
INC., a Nevada Corporation,

12 |                    Plaintiff,

13 |        vs.

14 |

15 | SAN DIEGO CONVENTION CENTER
CORPORATION, INC., a California
corporation; and DOES 1-20, inclusive,

16 |

17 |                    Defendant.

CASE NO.   37-2007-00072054-CU-BT-CTL

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES (VIOLATION OF CARTWRIGHT ACT); INTERFERENCE WITH CONTRACT; INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; VIOLATION OF UNFAIR PRACTICES ACT**

[BUSINESS & PROFESSIONS CODE §§ 16700, *ET SEQ.*, 1700, *ET SEQ.*]

18 |        Plaintiff UNITED NATIONAL MAINTENANCE, INC. complains and alleges as

19 | follows:

20 | **GENERAL ALLEGATIONS**

21 |        1.    Plaintiff UNITED NATIONAL MAINTENANCE, INC. (hereinafter referred to

22 | as "UNITED NATIONAL") is, and at all times herein mentioned was, a corporation duly

23 | organized and existing under the laws of the State of Nevada, authorized and qualified to

24 | transact, and transacting business in California. UNITED NATIONAL presently conducts

25 | business in San Diego County, California. UNITED NATIONAL is engaged in the business

26 | of providing booth cleaning, janitorial, and related services (hereinafter referred to as "Booth

27 | Cleaning Services") at convention Facility, and has developed a national expertise for

28 | providing such services at trade shows and conventions. UNITED NATIONAL has provided

KNLH\469912.1

1   Booth Cleaning Services for over 40 years.

2       2.      Defendant SAN DIEGO CONVENTION CENTER CORPORATION, INC.

3   (hereinafter referred to as "SDCC") is, and at all times herein mentioned was, a corporation

4   duly organized and existing under the laws of the State of California, and authorized to

5   transact, and transacting, business in California, with its principal place of business in the City

6   and County of San Diego, California.  SDCC's Articles of Incorporation state that it is a non-

7   profit public benefit corporation, and its business purpose is to operate and manage the San

8   Diego Convention Center.

9       3.      The true names, capacities, and involvement of Defendants sued herein as

10  DOES 1 through 20, inclusive, whether individual, corporate, associate or otherwise, are

11  unknown to UNITED NATIONAL, who therefore sues these Defendants by such fictitious

12  names pursuant to Code of Civil Procedure section 474.  Each of these Defendants named as a

13  DOE was in some manner responsible for the events and happenings alleged herein, and for

14  UNITED NATIONAL's injuries and damages.  UNITED NATIONAL will amend this

15  complaint to allege such fictitiously named Defendants' true names, capacities, and

16  involvement once they are ascertained.

17      4.      UNITED NATIONAL is informed and believes and thereon alleges that at all

18  times herein mentioned, each of the Defendants was the agent, alter ego, co-conspirator,

19  servant, employee, joint venturer and partner of each other, and at all times relevant herein

20  was acting within the course and scope of such employment and/or relationship with the actual

21  and/or apparent authority to do so.

## VENUE

23      5.      Venue is appropriate in this judicial district because the acts complained of, and

24  the liability and injuries alleged herein, arose and occurred within the City and County of

25  San Diego.

## TRADE SHOW OPERATIONS

27      6.      SDCC operates and manages the San Diego Convention Center located at 111

28  West Harbor Drive, San Diego, California (hereinafter referred to as "Convention Facility"),

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   the only convention center of its size in San Diego. The Convention Facility is truly unique.

2   SDCC leases the Convention Facility, pursuant to license agreements, to various trade

3   associations for daily periods to hold trade shows. These trade associations came into San

4   Diego from numerous other states. The licensee Trade Associations hire general contractors,

5   such as GES Exposition Services ("GES") and Champion Exposition Services ("Champion"),

6   to organize and manage the trade shows.

7        7.    The General Contractors, including but not limited to GES and Champion, have

8   always had the absolute right to select companies to perform services associated with the trade

9   shows, including Booth Cleaning Services. GES and other general contractors have utilized

10   the services of UNITED NATIONAL to provide Booth Cleaning Services for more than 25

11   years. GES and other general contractors desire to continue to use the services of UNITED

12   NATIONAL in the future.

13        8.    UNITED NATIONAL has provided its services in San Diego for trade shows

14   since before the Convention Facility was even built. Once constructed, UNITED NATIONAL

15   has continuously provided its services at the Convention Facility. General contractors such as

16   GES and Champion have entered into long-term written contracts with UNITED NATIONAL

17   to provide Booth Cleaning Services for those trade shows operated and managed by them. A

18   redacted copy of the UNITED NATIONAL – GES Booth Cleaning Services contract is

19   attached hereto as Exhibit 1, and a redacted copy of the UNITED NATIONAL – Champion

20   Booth Cleaning Services contract is attached hereto as Exhibit 2.

21        9.    Under these contracts, freely negotiated and entered into in the marketplace,

22   GES and Champion agreed to pay UNITED NATIONAL 50% of the revenues received from

23   trade shows exhibitors for Booth Cleaning Services. From that 50%, UNITED NATIONAL

24   has to pay its overhead and operating costs, including paying its local San Diego employees.

25   The remainder of any revenue constitutes UNITED NATIONAL's profit margin.

26        10.   Even though SDCC purports to be a non-profit corporation, in 2007 it

27   implemented a policy that effectively eliminates the general contractors' right to use UNITED

28   NATIONAL by requiring UNITED NATIONAL to surrender to SDCC the entire 50% of

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101.3387

1  revenue UNITED NATIONAL would receive under its contracts with its clients, and to pay an

2  hourly rate of $17.00 per man hour for move-in and move-out cleaning.

3        11.    In May, 2007, UNITED NATIONAL learned that SDCC had notified general

4  contractors that effective July 1, 2007, all Booth Cleaning Services within the Convention

5  Facility would have to be performed by SDCC employees. On or about June 25, 2007, SDCC

6  wrote a letter to UNITED NATIONAL informing UNITED NATIONAL that UNITED

7  NATIONAL could continue to work at the Convention Facility, but that UNITED

8  NATIONAL would have to use SDCC employees to perform Booth Cleaning Services. A

9  true and correct copy of SDCC's letter is attached hereto as Exhibit 3. Under this mandatory

10  arrangement, SDCC would require UNITED NATIONAL to surrender to SDCC the full 50%

11  of revenue UNITED NATIONAL is entitled to under its contracts with the general

12  contractors, such as GES and Champion. On or about July, 2007, SDCC confirmed these facts

13  in an e-mail to UNITED NATIONAL. A true and correct copy of the e-mail string between

14  SDCC and UNITED NATIONAL referencing the cost are attached hereto as Exhibit 4.

15        12.    Clearly, UNITED NATIONAL cannot operate under SDCC's mandatory

16  proposal. SDCC's proposal leaves no revenue for UNITED NATIONAL to operate at the

17  Convention Facility. SDCC's proposal to UNITED NATIONAL is simply an offer to commit

18  financial suicide in the San Diego market.

19        13.    At the same time that SDCC notified UNITED NATIONAL of its new Booth

20  Cleaning Services policy, SDCC also sent a written proposal to UNITED NATIONAL's

21  customers regarding its ability to provide Booth Cleaning Services on the same terms offered

22  by UNITED NATIONAL. This proposal to general contractors states that SDCC will provide

23  Booth Cleaning Services for all events at the Convention Facility and that the cost for

24  providing such services will be 50% of all revenues received by the general contractor for

25  Booth Cleaning Services. A true and correct copy of SDCC's Booth Cleaning Services

26  proposal sent to general contractors is attached hereto as Exhibit 5 and incorporated herein by

27  this reference. SDCC has also told the general contractors that if they do not accept SDCC's

28  proposal that SDCC will provide all Booth Cleaning Services and retain 100% of all Booth

1    Cleaning Services revenue. This would prove extremely detrimental to the general

2    contractors, such that the general contractors are faced with no option, or they stand to lose all

3    Booth Cleaning Service revenues.

4          14.     SDCC told UNITED NATIONAL and the general contractors that it would no

5    longer allow outside employees to perform Booth Cleaning Services at the Convention

6    Facility allegedly because doing so presented security issues. UNITED NATIONAL asked

7    SDCC what security issues its employees presented and assured SDCC that UNITED

8    NATIONAL would provide and comply with an appropriate security protocol. To date, the

9    only security issues articulated by SDCC to UNITED NATIONAL was that some unidentified

10    UNITED NATIONAL employees were not wearing an appropriate name tag. In fact, SDCC

11    had informed UNITED NATIONAL that if UNITED NATIONAL employees wore the

12    UNITED NATIONAL shirt and the daily, colored wristband issued by SDCC that the name

13    tags were not necessary. This single issue was never brought to UNITED NATIONAL's

14    attention as a serious concern that might prevent it from operating at the Convention Facility

15    in the future.

16          15.     By virtue of managing and operating the Convention Facility for a number of

17    years, SDCC had complete knowledge of UNITED NATIONAL's Booth Cleaning Services

18    contracts with GES and Champion. SDCC, armed with such knowledge, is now attempting to

19    wrongfully deprive UNITED NATIONAL of its San Diego business operations, under the

20    guise of dealing with a "security issue." SDCC is actually preventing any competition from

21    for-profit businesses concerning Booth Cleaning Services at the Convention Facility. SDCC

22    is doing so unfairly and illegally by using its position of power and control of the Convention

23    Facility to force UNITED NATIONAL out of business and to force general contractors to use

24    SDCC services exclusively.

25                              **FIRST CAUSE OF ACTION**
        **(Violation of Business and Professions Code §§16700, *et seq.*, Against All Defendants)**

26

27          16.     UNITED NATIONAL realleges and incorporates herein by this reference each

28    and every one of the allegations contained in paragraphs 1 through 15 as though fully set forth

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1  herein.

2      17.    At all times mentioned herein, UNITED NATIONAL has been engaged in

3  providing Booth Cleaning Services at the Convention Facility, and UNITED NATIONAL

4  competed with other businesses to provide those services.

5      18.    The lease of the Convention Facility, pursuant to license agreements between

6  SDCC and Trade Associations, is a unique right to use the Convention Facility, and constitutes

7  the "tying product."  The Booth Cleaning Services, which SDCC has now mandated are to be

8  provided exclusively by SDCC personnel, is the "tied product."  Up until recently, those two

9  separate products had never been tied together.  SDCC is doing so under the guise that there is

10  a "security issue" when in fact there is no such security issue, as discussed in paragraphs 14

11  and 15, above.

12      19.    SDCC controls the Convention Facility in San Diego, and thus has sufficient

13  economic power to coerce Trade Associations, general contractors and UNITED NATIONAL

14  to exclusively use the Booth Cleaning Services of SDCC, which is the "tied product."

15      20.    SDCC's absolute requirement that all Booth Cleaning Services be performed

16  exclusively by SDCC personnel restrains the Trade Associations, as licensees of the

17  Convention Facility, as well as the general contractors, from selecting the service provider of

18  its choice to perform Booth Cleaning Services.

19      21.    As a direct consequence of Defendants' acts, competition in the Booth Cleaning

20  Services in the San Diego area has been, and will be, restrained, suppressed, and eliminated.

21  The Trade Associations, general contractors, UNITED NATIONAL and the general public

22  have been, and will be, deprived of the benefit of free, competitive providers of such services

23  and have been, and will be, forced to enter into exclusive, in-house agreements with SDCC to

24  provide the services.

25      22.    Defendants' continuing wrongful conduct as alleged hereinabove, unless and

26  until restrained by order of this court, will cause great and irreparable harm to UNITED

27  NATIONAL, including, but not limited to, UNITED NATIONAL not being permitted to work

28  at trade shows at the Convention Facility, and thereby being forced to fire its entire staff in

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\469912.1                    -6-

San Diego.  UNITED NATIONAL will also be unable to comply with its contractual

obligations with established customers (i.e., GES and Champion) to provide Booth Cleaning

Services.

23.    UNITED NATIONAL has no adequate remedy at law for the injuries currently

being suffered or which will result in the future from Defendants' continued wrongful conduct.

In addition, damages have resulted and will result from said wrongful acts including, but not

limited to, the loss in excess of $500,000 annually in revenue from the San Diego market, and

the corresponding laying off of at least 50 full and/or part-time San Diego based employees.

General contractors, Trade Associations, and other members of the public will be forced to file

similar suits unless this Court restrains Defendants.

24.    The foregoing wrongful acts of Defendants constitute violations of sections

16700 *et seq.* of the California Business and Professions Code, entitling UNITED

NATIONAL to, among other things, preliminary and permanent injunctive relief.

## SECOND CAUSE OF ACTION
### (Interference with Contract Against All Defendants)

25.    UNITED NATIONAL realleges and incorporates herein by this reference each

and every one of the allegations contained in paragraphs 1 through 24 as though fully set forth

herein.

26.    As alleged in paragraph 8 above, UNITED NATIONAL has established

contractual business relationships with GES and with Champion, whereby UNITED

NATIONAL provides the Booth Cleaning Services for trade shows at the Convention Facility

for which GES or Champion are the general contractors.

27.    SDCC knew of the above described contractual business relationships existing

between UNITED NATIONAL and the general contractors.  SDCC has known of said

business relationships for many years by virtue of its operation and management of the

Convention Facility.

28.    The aforementioned acts of SDCC, mandating that only SDCC personnel are

authorized to perform Booth Cleaning Services at the Convention Facility, and requiring

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1  payments be made to SDCC in conjunction therewith, demonstrates SDCC's intent to disrupt

2  and destroy UNITED NATIONAL'S established contractual business relationships.  SDCC

3  committed these acts with the intent to harm UNITED NATIONAL financially, and to induce

4  the general contractors to sever their business relationships with UNITED NATIONAL, and to

5  terminate UNITED NATIONAL's San Diego business.  SDCC's stated reason for requiring its

6  employees to perform Booth Cleaning Services, a "security issue," is pretextual and false, as

7  mentioned in paragraphs 14 and 15 above.

8       29.     As a proximate result of SDCC's conduct, UNITED NATIONAL has and will

9  suffer irreparable injury and will sustain damages, including but not limited to the loss of at

10  least $500,000 annually in San Diego based revenue, as well as the loss of its San Diego based

11  employees.

12       30.     The aforementioned acts of Defendants were willful, wanton, malicious, and

13  oppressive, and justify the awarding of exemplary and punitive damages pursuant to

14  California Civil Code section 3294 in an amount according to proof at trial.

15                  **THIRD CAUSE OF ACTION**

     **(Interference with Prospective Business Advantage Against All Defendants)**

16

17       31.     UNITED NATIONAL realleges and incorporates herein by this reference each

18  and every one of the allegations contained in paragraphs 1 through 24 as though fully set forth

19  herein.

20       32.     UNITED NATIONAL has prospective business relationships with other general

21  contractors, including but not limited to Brede National, Paradice, and others, for Booth

22  Cleaning Services at the Convention Facility.

23       33.     SDCC knew of the above described prospective business relationships existing

24  between UNITED NATIONAL and other general contractors.  SDCC has known of said

25  business relationships for many years by virtue of its operation and management of the

26  Convention Facility.

27       34.     The aforementioned acts of SDCC, mandating that only SDCC personnel are

28  authorized to perform Booth Cleaning Services at the Convention Facility, and requiring

*Kirby Noonan Lance & Hoge LLP*
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH469912.1

-8-

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, ETC.

1 payments be made to SDCC in conjunction therewith, demonstrate SDCC's intent to disrupt

2 and destroy UNITED NATIONAL'S prospective business relationships. SDCC committed

3 these acts with the intent to harm UNITED NATIONAL financially, and to induce the general

4 contractors to sever their business relationships with UNITED NATIONAL, and to terminate

5 UNITED NATIONAL's San Diego business. SDCC stated reason for requiring its employees

6 to perform Booth Cleaning Services, a "security issue," is pretextual and false, as mentioned in

7 paragraphs 14 and 15, above.

8     35.     The above described acts of UNITED NATIONAL are wrongful by a measure

9 other than the interference itself, because the acts constitute violations of California Business

10 and Professions Code §§16700, *et seq.* and 17000, *et seq.*

11     36.     As a proximate result of SDCC's conduct, UNITED NATIONAL has and will

12 suffer irreparable injury and will sustain damages, including but not limited to the loss of at

13 least $500,000 annually in San Diego based revenue, as well as the loss of its San Diego based

14 employees.

15     37.     The aforementioned acts of Defendants were willful, wanton, malicious, and

16 oppressive, and justify the awarding of exemplary and punitive damages pursuant to

17 California Civil Code section 3294 in an amount according to proof at trial.

18                           **FOURTH CAUSE OF ACTION**
        **(Violation of Business and Professions Code §§17000, *et seq.*, Against All Defendants)**
19

20     38.     UNITED NATIONAL realleges and incorporates herein by this reference each

21 and every one of the allegations contained in paragraphs 1 through 30 as though fully set forth

22 herein.

23     39.     The aforementioned acts of Defendants constitute violations of the Unfair

24 Business Practices Act, sections 17000, *et seq.*, of the Business and Professions Code. As a

25 proximate result of the above mentioned acts of Defendants, UNITED NATIONAL has and

26 will continue to sustain irreparable harm, entitling UNITED NATIONAL to damages and

27 preliminary and permanent injunctive relief pursuant to Business and Professions Code section

28 17203.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

40.     The aforementioned acts were done by Defendants willfully and maliciously and with the intent to injure and oppress UNITED NATIONAL and, by reason thereof, UNITED NATIONAL is entitled to exemplary and punitive damages in an amount according to proof at trial, pursuant to Civil Code section 3294.

WHEREFORE, UNITED NATIONAL prays for judgment against Defendants, and each of them, as follows:

1.     For an order requiring Defendants, and each of them, to show cause, if any, why they should not be enjoined as set forth below, during the pendency of this action;

2.     That the Court issue a temporary restraining order and, thereafter, a preliminary and permanent injunction, enjoining Defendants, and each of them, their agents, servants, and employees, and all persons acting under, in concert with, or for them, from directly or indirectly or in any manner (a) entering into Booth Cleaning agreements for the San Diego Convention Center which require that SDCC employees and/or personnel to be used as the exclusive, in-house provider of Booth Cleaning Services and (b) engaging in unlawful restraints of trade, unfair business practices, and interference with both contractual and prospective business relationships by prohibiting general contractors and Trade Associations from utilizing the company of their choice to provide Booth Cleaning Services at the Convention Facility;

3.     For compensatory damages in an amount according to proof at trial;

4.     That said damages be trebled pursuant to Business and Professions Code section 17082 (on the Fourth Cause of Action only);

5.     For exemplary and punitive damages in an amount according to proof at trial;

6.     For interest thereon at the maximum legally permissible rate;

7.     For reasonable attorney's fees as allowable by law;

8.     For costs of suit herein incurred; and

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

9.    For such other and further relief as the Court may deem just and proper.

DATED: July 30, 2007                    KIRBY NOONAN LANCE & HOGE LLP

By: _____
    James R. Lance
    Jacob M. Slania
    Attorneys for Plaintiff

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNL\469912.1

-11-

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, ETC.

## SUPERIOR COURT OF CALIFORNIA,
### COUNTY OF SAN DIEGO
### CENTRAL

## MINUTE ORDER

Date: 08/06/2007                    Time: 08:15:00 AM          Dept: C-71

Judicial Officer Presiding: Judge Ronald S. Prager

Clerk: Clara Banks

Bailiff/Court Attendant: L. Wilks

ERM:

Reporter: Peter C. Stewart
Case Init. Date: 07/30/2007
Case No: 37-2007-00072054-CU-BT-CTL          Case Title: United National Maintenance Inc vs. SAN DIEGO CONVENTION CENTER CORPORATION INC

Case Category: Civil - Unlimited       Case Type: Business Tort

Event Type: Ex Parte

---

**Appearances:**

SEE SIGN-IN SHEET

Preliminary Injunction 9/12/07 @ 10:00AM. Briefing per code. Request for TRO is denied. No reasonable probability of prevailing on the merits due to complicated issues of governmental immunity from antitrust violations and governmental claims statutes which have not been complied with. Further, plaintiff's failed to establish by a preponderance of the evidence that money damages would not be an adequate remedy.

| | Calendar No.: 3 |
|---|---|
| **Superior Court of California**<br>**County of San Diego**<br><br>**SIGN-IN SHEET** | Court Use Only |

**CASE:** 37-2007-00072054-CU-BT-CTL - United National Maintenance Inc vs. SAN DIEGO CONVENTION CENTER CORPORATION

**EVENT TYPE:** Ex Parte

**EVENT DATE/TIME:** 08/06/2007  8:15 am

**DEPARTMENT:** C-71

**JUDGE:** Ronald S. Prager

| ATTORNEY/PARTICIPANT NAME | CLIENT NAME | SIGNATURE |
|---|---|---|
| LANCE, JAMES R. | United National Maintenance Inc [PLN] | James R. Lance<br>Jacob Slania |
| SAN DIEGO CONVENTION CENTER CORPORATION INC [PRO PER] | [DFN] | Dessi Nintcheva Denial<br>Bea Kemp |
| | | |
| | | |
| | | |

Exhibit C

1  WILSON PETTY KOSMO & TURNER LLP
   REGINA A. PETTY (106163)
2  SOTERA L. ANDERSON (211025)
   550 West C Street, Suite 1050
3  San Diego, California 92101
   Telephone: (619) 236-9600
4  Facsimile: (619) 236-9669

5  Attorneys for Defendant
   SAN DIEGO CONVENTION CENTER
6  CORPORATION, INC.

FILED
CIVIL BUSINESS OFFICE 1
CENTRAL DIVISION

2007 SEP 14 A 0: 1

CLERK-SUPERIOR COUR
SAN DIEGO COUNTY, CA

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **IN AND FOR THE COUNTY OF SAN DIEGO**

10

11  UNITED NATIONAL MAINTENANCE, INC.        Case No. 37-2007-00072054-CU-BT-CTL
    a Nevada Corporation,
12                                            **REQUEST FOR JUDICIAL NOTICE**
                                              **IN SUPPORT OF DEFENDANT SAN**
13              Plaintiff,                     **DIEGO CONVENTION CENTER**
                                              **CORPORATION, INC.'S DEMURRER**
14        v.                                   **TO PLAINTIFF'S COMPLAINT**

15  SAN DIEGO CONVENTION CENTER              Complaint Filed: July 30, 2007
    CORPORATION, INC.; and DOES 1 through
16  20, inclusive,                           Date:       November 30, 2007
                                             Time:       10:00 a.m.
17              Defendants.                   Dept.:      71
                                             Judge:      Hon. Ronald S. Prager
18                                           Trial Date: Not Set

19
                                             **[EXEMPT FROM FEES –GOV. CODE, § 6103]**
20

21        **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

22        **PLEASE TAKE NOTICE** that pursuant to Evidence Code sections 452-453 and California

23  Rules of Court, rule 3.1306(c), Defendant SAN DIEGO CONVENTION CENTER

24  CORPORATION, INC. ("Defendant"), respectfully requests that the Court take judicial notice of the

25  following document in support of its Demurrer to Plaintiff's Complaint:

26  **Exhibit    Description**

27    A        Articles of Incorporation of San Diego Convention Center Corporation, Inc. filed on
             October 31, 1984.
28

                                           1
   REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT SAN DIEGO CONVENTION CENTER
              CORPORATION, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT

1    Pursuant to Evidence Code section 452, subdivisions (c) and (h), the Court may take judicial

2  notice of official acts of the executive departments of any state and facts that are not reasonably

3  subject to dispute.  Official acts include records, reports and orders of administrative agencies.

4  *Rodas v. Spiegel* (2001) 87 Cal.App. 4th 513, 518.  The Articles of Incorporation attached as Exhibit

5  A reflect public records on file with the California Secretary of State.  These Articles reflect the fact

6  that the City of San Diego set up the San Diego County Convention Center as a public corporation.

7  *Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134.  Therefore, under Evidence Code

8  section 452, subdivisions (c) and (h), the Court may take judicial notice of the attached Articles of

9  Incorporation.

10

11  Dated:.    September 13, 2007              **WILSON PETTY KOSMO & TURNER LLP**

12

13                                            By: _____

14                                            REGINA A. PETTY
                                              SOTERA L. ANDERSON

15
                                              Attorneys for Defendant
16                                            SAN DIEGO CONVENTION CENTER
                                              CORPORATION, INC.

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT SAN DIEGO CONVENTION CENTER
CORPORATION, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT



COPY

1261143

ARTICLES OF INCORPORATION

Page 1

OF

SAN DIEGO CONVENTION CENTER CORPORATION, INC.

ENDORSED
FILED
In the office of the Secretary of State
of the State of California

OCT 3 1 1984

MARCH FONG EU, Secretary of State
Gloria J. Carroll
Deputy

## ARTICLE I

The name of this corporation is San Diego Convention Center Corporation, Inc.

## ARTICLE II

A.  This corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person.  It is organized under the Nonprofit Public Benefit Corporation Law for public purposes.

B.  The specific purpose of this corporation is to operate and manage the San Diego Convention Center.

## ARTICLE III

The name and address in the State of California of this corporations's initial agent for service of process is: Curtis M. Fitzpatrick, Assistant City Attorney, City of San Diego, San Diego, CA 92101.

## ARTICLE IV

A.  This corporation is organized and operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

Page 2

B.   No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

## ARTICLE V

The principal office for the transaction of the business of this corporation is to be located in the City of San Diego, County of San Diego, State of California.

## ARTICLE VI

The property of this corporation is irrevocably dedicated to charitable, educational and civic purposes and, upon the liquidation, dissolution or abandonment thereof, the assets thereof will not inure to the benefit of any private, person, officer or director of this corporation, but shall be distributed to The City of San Diego, or to such fund, foundation or corporation organized and operated for charitable, educational and civic purposes as may be designated by the City Council of The City of San Diego, and none of the property, assets or earnings of this corporation may be used to carry on propaganda or otherwise attempt to influence legislation.

Page 3

## ARTICLE VII

The City of San Diego, a municipal corporation, shall be the sole member of this corporation.

IN WITNESS WHEREOF I, the undersigned, constituting the incorporator of this corporation has hereunto set my hand this 26th day of October, 1984.

*Curtis M. Fitzpatrick*

(Signature of Incorporator)

Curtis M. Fitzpatrick, Incorporator

STATE OF CALIFORNIA, )
                     ) SS.
COUNTY OF SAN DIEGO  )

On   October 26, 1984            before me,  Barbara J. Berridge,
a Notary Public in and for said County and State, personally appeared
            Curtis M. Fitzpatrick                                    ,
known to me to be the person___ whose name is xxx subscribed to the within instrument and acknowledged that   he   executed the same.

WITNESS my hand and official seal.
       Notary Stamp below)

*Barbara J. Berridge*
Notary Public in and for said San Diego County,
State of California

OFFICIAL SEAL
BARBARA J. BERRIDGE
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
SAN DIEGO COUNTY
My Commission Expires March 29, 1988

SAN DIEGO SUPERIOR COURT, STATE OF CALIFORNIA

TITLE OF CASE (ABBREVIATED)

UNITED NATIONAL MAINTENANCE, INC. v. SAN DIEGO CONVENTION
CENTER CORPORATION, INC., ET AL

| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS): | TELEPHONE NO.: |
|---|---|
| REGINA A. PETTY (106163) | Tel. (619) 236-9600 |
| KRISTA M. CABRERA (190595) | Fax: (619) 236-9669 |
| **WILSON PETTY KOSMO & TURNER LLP** | |
| 550 West C Street, Suite 1050 | |
| San Diego, CA 92101 | |

| ATTORNEYS FOR: | HEARING DATE – TIME | CASE NUMBER: |
|---|---|---|
| Defendant SAN DIEGO CONVENTION CENTER CORPORATION, INC. | | 37-2007-00072054-CU-BT-CTL |

FILED
CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2007 SEP 14 A 10: 14

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

## PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address is Wilson Petty Kosmo & Turner LLP, 550 West C Street, Suite 1050, San Diego, CA 92101.

On September 14, 2007, I served the following documents:

1.    DEFENDANT SAN DIEGO CONVENTION CENTER CORPORATION, INC'S NOTICE OF DEMURRER TO PLAINTIFF'S COMPLAINT;
2.    DEFENDANT SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S NOTICE OF DEMURRER TO PLAINTIFF'S COMPLAINT;
3.    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT; AND,
4.    REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT' SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT

I served the documents on the person below, as follows:

James R. Lance, Esq.
Jacob M. Slania, Esq.
Kirby Noonan Lance & Hoge LLP
600 West Broadway, Ste 1100
San Diego, CA 92101
Tel: (619) 231-8666
Fax: (619) 231-9593

*Attorneys for Plaintiff United National Maintenance, Inc.*

☐    **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☒    **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addressed below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐    **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

pos.doc

---

PROOF OF SERVICE

UNITED NATIONAL MAINTENANCE, INC. v. SAN DIEGO CONVENTION CENTER CORPORATION, INC., ET AL
Case No. 37-2007-00072054-CU-BT-CTL

☐    **By e-mail or electronic transmission.**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.  Executed on September 14, 2007, at San Diego, California.

Lori Currell

**PROOF OF SERVICE**

FILED
CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2007 SEP 14   A 10: 13

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1 | WILSON PETTY KOSMO & TURNER LLP
REGINA A. PETTY (106163)
2 | SOTERA L. ANDERSON (211025)
550 West C Street, Suite 1050
3 | San Diego, California 92101
Telephone: (619) 236-9600
4 | Facsimile: (619) 236-9669

5 | Attorneys for Defendant
SAN DIEGO CONVENTION CENTER
6 | CORPORATION, INC.

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **IN AND FOR THE COUNTY OF SAN DIEGO**

10

11 | UNITED NATIONAL MAINTENANCE, INC. | Case No. 37-2007-00072054-CU-BT-CTL
a Nevada Corporation,

12 |           Plaintiff, | **MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
13 |         v. | DEFENDANT SAN DIEGO
CONVENTION CENTER
14 |   | CORPORATION, INC.'S DEMURRER
TO PLAINTIFF'S COMPLAINT**
15 | SAN DIEGO CONVENTION CENTER
CORPORATION, INC.; and DOES 1 through
16 | 20, inclusive, | Complaint Filed: July 30, 2007

17 |         Defendants. | Date:      November 30, 2007
Time:     10:00 a.m.
18 | | Dept.:     71
Judge:   Hon. Ronald S. Prager
19 | | Trial Date: Not Set

20

21 | | **[EXEMPT FROM FEES –GOV. CODE, § 6103]**

22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SAN DIEGO CONVENTION
CENTER CORPORATION, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT

Defendant SAN DIEGO CONVENTION CENTER CORPORATION, INC. ("Defendant" or "SDCCC") hereby respectfully submits its Memorandum of Points and Authorities in Support of its Demurrer to Plaintiff UNITED NATIONAL MAINTENANCE, INC.'s ("Plaintiff" or "UNITED NATIONAL") Complaint.

## I.

## SUMMARY OF ARGUMENT

This is a straightforward motion, with only one appropriate answer. SDCCC enjoys governmental immunity for the specific causes of action raised in the Complaint. As such, Plaintiff's Complaint fails as a matter of law for it fails to state any facts sufficient to constitute a cause of action against SDCCC.

SDCCC is a public entity. No claim against a public entity can maintain in the absence of a statute which clearly imposes such liability. Plaintiff has raised four causes of action, two based on statute (Cartwright Act and Unfair Practices Act) and two based on common law (interference with contract and prospective economic advantage). Neither statute imposes liability on a public entity and common law claims are barred as they are not founded upon a statute. Plaintiff cannot maintain a civil action against SDCCC under either statutory or common law scheme.

SDCCC's Demurrer must be sustained without leave to amend for no amendment can cure the defects.

## II.

## STANDARD FOR DEMURRERS

The function of a demurrer is to test the sufficiency of a complaint. *Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 306. A demurrer should be granted where the complaint "does not state facts sufficient to constitute a cause of action." Code of Civ. Proc., § 430.10, subd (e). In deciding the demurrer, the court must accept as true all allegations of fact, but it should <u>not</u> accept "contentions, deductions, or conclusions of . . . law." *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.

Where the defects in a complaint cannot be cured by amendment, or where Plaintiff has already unsuccessfully amended, it is proper to sustain a demurrer without leave to amend. *Blank v.*

1     *Kirwan* (1985) 39 Cal.3d 311, 318; *Edgren v. Regents of Univ. of California* (1984) 158 Cal.App.3d

2     515, 521 (sustaining without leave for failure to exhaust administrative remedies).

**III.**

**LEGAL ARGUMENT**

5        Plaintiff's entire Complaint is barred by the doctrine of governmental immunity and, as such,

6     Plaintiff has failed to state facts sufficient to constitute a cause of action against defendant.

7        In 1963, the California Legislature enacted several interrelated laws known as the Tort

8     Claims Act. *Tokeshi v. State of California* (1990) 217 Cal.App.3d 999, 1004; Gov. Code, §§ 810-

9     996.6. It is well settled under the Tort Claims Act that a "public entity" is not liable for tortuous

10    injury unless the liability is specifically imposed by statute or the Constitution itself. See e.g.,

11    *Trinkle v. Cal. State Lottery* (1999) 71 Cal. App. 4th 1198, 1202; see also, *Colome v. State Athletic*

12    *Com.* (1996) 47 Cal.App.4th 1444. To implement this concept, Government Code section 815,

13    subdivision (a) expressly states **"except as otherwise provided by statute… [a] public entity is not**

14    **liable** for an injury, whether such injury arises out of an act or omission of the public entity or a

15    public employee or any other person." Gov. Code, § 815 subd. (a) (emphasis added). "The statute

16    amounts to a legislative declaration that governmental immunity from suit is the rule and liability the

17    exception. Thus, in the absence of some constitutional requirement, public entities may be liable

18    only if a statute declares them to be liable." *Trinkle v. California State Lottery* (1999) 71

19    Cal.App.4th 1198, 1202; Gov. Code, §§ 811.2 and 815, subd. (a). Therefore, common law claims

20    may not, as a matter of law, be brought against public entities. Gov. Code, § 815, subd. (a);

21    *Harshbarger v. City Colton* (1988) 197 Cal.App.3d 1335, 1339 ("Government Code section 815

22    abolished all common law or judicially declared liability for public entities."); *Michael J. v. Los*

23    *Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 866 (claims against public entities

24    must be based on statutes, not common law tort theories of liability).

25        The term "public entity" is defined in the Government Code. Public entity under

26    Government Code section 811.2 "includes . . . a city . . . and any other political subdivision or public

27    corporation in the State." Gov. Code, § 811.2.

28

2

1    SDCCC is a public corporation, established by the City of San Diego. See SDCCC Articles

2  of Incorporation attached as Exhibit A to Request for Judicial Notice. The City of San Diego is

3  SDCCC's sole member and appoints the board of directors. *Id.* at p. 3. SDCCC is subject to

4  California's opening meetings law (the "Brown Act" contained in section 54950, *et seq.* of the

5  Government Code) and other laws governing the conduct of business of a public entity. All of

6  SDCCC's decision makers must comply with the Political Reform Act and the San Diego Ethics

7  Ordinance. In all respects, SDCCC functions as a public entity performing a service for the City and

8  the public. As a public corporation, SDCCC's sole purpose is to manage, market and operate the

9  San Diego Convention Center for the benefit of the City and the general public.

10    As a public entity, SDCCC is statutorily immune from liability (Gov. Code, § 815, subd. (a))

11  and punitive damages (Gov. Code, § 818 ["public entity is not liable for damages awarded under

12  section 3294 of the Civil Code]; *Austin v. Regents of University of California* (1979) 89 Cal.App.3d

13  354, 358 [affirming trial court's decision to strike punitive damages claim against public entity]).

14    As discussed below, all four causes of action alleged in Plaintiffs Complaint are barred by

15  governmental immunity.

16    **A.**    **SDCCC Is Immune From Liability Under The Cartwright Act**

17    Plaintiff's first cause of action is for violation of Business and Professions Code sections

18  16700, *et seq.*, which is a statute otherwise known as the Cartwright Act. Nowhere in the statute is

19  there a provision imposing governmental liability for violations of the act. Because there is no

20  statute making public entities liable under the Cartwright Act, the general rule of governmental

21  immunity must prevail and Plaintiff's first cause of action fails as a matter of law.

22    **B.**    **Interference With Contract And Interference With Prospective Economic**
   **Advantage Are Common Law Torts Which Are Not Permitted Against Public**
23   **Entities**

24    Plaintiff's second cause of action for interference with contract and third cause of action for

25  interference with prospective economic advantage are not founded on any statute, but rather

26  common law principles. As noted above, the Tort Claims Act provides that all public entities are

27  immune from liability **unless** the Legislature expressly provides for such liability. Gov. Code, §§

28  811.2 and 815, subd. (a). Plaintiff's common law claims fail as a matter of law as a public

1   corporation may not be sued on common law theories of liability. Gov. Code § 815, subd. (a);

2   *Harshbarger, supra,* 197 Cal.App.3d at 1339 ("Government Code section 815 abolished all common

3   law or judicially declared liability for public entities."); *Michael J., supra,* (1988) 201 Cal.App.3d

4   859, 866 (claims against public entities must be based on statutes, not common law tort theories of

5   liability). Accordingly, Plaintiff's second and third causes of action are barred by governmental

6   immunity.

7       C.    **SDCCC Is Immune From Liability Under The Unfair Practices Act**

8           Similar to Plaintiff's first cause of action, Plaintiff's fourth cause of action is barred by

9   governmental immunity. Plaintiff's fourth cause of action is for violation of Business and

10  Professions Code sections 17000, *et seq.,* which is also a statute, more commonly referred to as the

11  Unfair Practices Act or the Unfair Trade Practices Act. Nowhere in the statute is there a provision

12  imposing governmental liability for violations of the Act. The Unfair Practices Act applies to

13  specific "persons" and the law is clear that a "public entity" is not a "person" within the meaning of

14  the Act and, therefore, cannot be sued under the Act. See, Bus. & Prof. Code §§ 17201 and 17506;

15  see also, *Cal. Med. Ass'n v. Regents of the Univ. of Cal.* (2000) 79 Cal. App. 4th 542, 551; *Janis v.*

16  *Cal. State Lottery Com* (1998) 68 Cal.App.4th 824, 831, *citing, Community Memorial Hospital v.*

17  *County of Ventura* (1996) 50 Cal.App.4th 199, 209 and *Santa Monica Rent Control Bd. v. Bluvshtein*

18  (1991) 230 Cal.App.3d 308. Courts have held that public entities cannot be sued under this Act even

19  if they engage in commercial activity. See e.g., *Trinkle, supra,* 71 Cal. App. 4th 1198, 1202. Thus,

20  SDCCC is protected by governmental immunity and Plaintiff's fourth cause of action fails as a

21  matter of law.

22                          **IV.**

23                    **CONCLUSION**

24          Plaintiff's entire Complaint, including the first, second, third and fourth causes of action, fail

25  as a matter of law. SDCCC is a public entity and considering neither the Cartwright Act, nor the

26  Unfair Practices Act expressly imposes liability upon a public entity, SDCCC is immune from

27  liability. Further, public entities cannot be sued for common law torts such as interference with

28  contract and interference with prospective economic advantage. Accordingly, SDCCC requests that

1   the Court sustain its Demurrer to Plaintiff's Complaint, without leave to amend, for Plaintiff's failure

2   to state facts sufficient to constitute a cause of action against SDCCC.

3

4   Dated:      September 13 , 2007          **WILSON PETTY KOSMO & TURNER LLP**

5

6                                           By:   _Sotera L. Anderson_

7                                                 Regina A. Petty
                                                  Sotera L. Anderson

8                                                 Attorneys for Defendant
                                                  SAN DIEGO CONVENTION CENTER
9                                                 CORPORATION, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SAN DIEGO CONVENTION
CENTER CORPORATION, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT

1  WILSON PETTY KOSMO & TURNER LLP
   REGINA A. PETTY (106163)
2  SOTERA L. ANDERSON (211025)
   550 West C Street, Suite 1050
3  San Diego, California 92101
   Telephone: (619) 236-9600
4  Facsimile: (619) 236-9669

5  Attorneys for Defendant
   SAN DIEGO CONVENTION CENTER
6  CORPORATION, INC.

FILED
CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2007 SEP 14 A 10: 13

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **IN AND FOR THE COUNTY OF SAN DIEGO**

10

11 | UNITED NATIONAL MAINTENANCE, INC. | Case No. 37-2007-00072054-CU-BT-CTL
   a Nevada Corporation,
12                                            | **DEFENDANT SAN DIEGO
                Plaintiff,                    | CONVENTION CENTER
13                                            | CORPORATION, INC.'S NOTICE OF
        v.                                    | DEMURRER TO PLAINTIFF'S
14                                            | COMPLAINT**
   SAN DIEGO CONVENTION CENTER
15 | CORPORATION, INC.; and DOES 1 through | Complaint Filed: July 30, 2007
   20, inclusive,
16                                            | Date:       November 30, 2007
                Defendants.                   | Time:       10:00 a.m.
17                                            | Dept.:      71
                                              | Judge:      Hon. Ronald S. Prager
18                                            | Trial Date: Not Set

19                                            | **[EXEMPT FROM FEES –GOV. CODE, § 6103]**

20

21        Defendant SAN DIEGO CONVENTION CENTER CORPORATION, INC. ("SDCCC")

22 hereby respectfully demurs to Plaintiff's entire complaint, including the first, second, third and

23 fourth causes of action, as follows:

24        1.      FIRST CAUSE OF ACTION FOR VIOLATION OF THE CARTWRIGHT ACT.

25 SDCCC demurs to Plaintiff's first cause of action for violation of the Cartwright Act pursuant to

26 Code of Civil Procedure section 430.10, subdivision (e) on the grounds that Plaintiff fails to state

27 facts sufficient to state a cause of action against SDCCC. Namely, UNITED NATIONAL's entire

28 action is barred against SDCCC under the doctrine of governmental immunity.

                                          1

1    2.    SECOND CAUSE OF ACTION FOR INTERFERENCE WITH CONTRACT.

2  SDCCC demurs to Plaintiff's second cause of action for interference with contract pursuant to Code

3  of Civil Procedure section 430.10, subdivision (e) on the grounds that Plaintiff fails to state facts

4  sufficient to state a cause of action against SDCCC. Namely, UNITED NATIONAL's entire action

5  is barred against SDCCC under the doctrine of governmental immunity.

6    3.    THIRD CAUSE OF ACTION FOR INTERFERENCE WITH PROSPECTIVE

7  ECONOMIC ADVANTAGE. SDCCC demurs to Plaintiff's third cause of action for interference

8  with prospective economic advantage pursuant to Code of Civil Procedure section 430.10,

9  subdivision (e) on the grounds that Plaintiff fails to state facts sufficient to state a cause of action

10  against SDCCC. Namely, UNITED NATIONAL's entire action is barred against SDCCC under the

11  doctrine of governmental immunity.

12    4.    FOURTH CAUSE OF ACTION FOR VIOLATION OF UNFAIR PRACTICES

13  ACT. SDCCC demurs to Plaintiff's fourth cause of action for violation of unfair practices act

14  pursuant to Code of Civil Procedure section 430.10, subdivision (e) on the grounds that Plaintiff fails

15  to state facts sufficient to state a cause of action against SDCCC. Namely, UNITED NATIONAL's

16  entire action is barred against SDCCC under the doctrine of governmental immunity.

17

18  Dated:    September 13, 2007        **WILSON PETTY KOSMO & TURNER LLP**

19

20    By:    _Sotera L. Anderson_

21    REGINA A. PETTY
     SOTERA L. ANDERSON

22
     Attorneys for Defendant
23    SAN DIEGO CONVENTION CENTER
     CORPORATION, INC.

24

25

26

27

28

DEFENDANT SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S NOTICE OF DEMURRER TO
PLAINTIFF'S COMPLAINT

1 | James R. Lance (147173)
   jlance@knlh.com
2 | Jacob M. Slania (200652)
   jslania@knlh.com
3 | Dylan O. Malagrino (228052)
   dmalagrino@knlh.com
4 | **KIRBY NOONAN LANCE & HOGE LLP**
   600 West Broadway, Suite 1100
5 | San Diego, California 92101-3387
   Telephone (619) 231-8666
6 | Facsimile (619) 231-9593

7 | Jeffrey A. Leon [PRO HAC VICE PENDING]
   Kristopher J. Stark [PRO HAC VICE PENDING]
8 | **UNGARETTI & HARRIS LLP**
   3500 Three First National Plaza
9 | Chicago, Illinois 60602-4224
   Telephone (312) 977-4400
10 | Facsimile (312) 977-4405

11 | Attorneys for Plaintiff
    UNITED NATIONAL MAINTENANCE, INC.



FILED

NOV 13 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

'07 CV 2172 BEN JMA

12 |

13 | **UNITED STATES DISTRICT COURT**

14 | **SOUTHERN DISTRICT OF CALIFORNIA**

15 |

16 | UNITED NATIONAL MAINTENANCE,
    INC., a Nevada Corporation,      | CASE NO.

17 |                                   | **VERIFIED COMPLAINT FOR**
              Plaintiff,              | **INJUNCTIVE RELIEF AND DAMAGES**
18 |                                   | **(VIOLATION OF THE SHERMAN AND**
         vs.                          | **CLAYTON ACTS)**
19 |
    SAN DIEGO CONVENTION CENTER       | **JURY TRIAL DEMANDED**
20 | CORPORATION, INC., a California
    corporation,
21 |
              Defendant.
22 |

23 |

24 |     Plaintiffs UNITED NATIONAL MAINTENANCE, INC. (herein after referred to as

25 | "UNITED"), by and through its respective undersigned attorneys and for its Complaint against the San

26 | Diego Convention Center Corporation, Inc. (herein after referred to as "SDCC") states as follows:

27 |

28 |

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

**INTRODUCTION**

1.     UNITED brings this action to enjoin SDCC from violating antitrust laws and to recover damages for federal and pendent state claims.  UNITED demands a jury trial.

2.     SDCC has engaged in a naked scheme to unlawfully eliminate competition in the market for Trade Show Cleaning Services (defined *infra*) in San Diego.  SDCC is on the verge of successfully monopolizing this market as a result of its implementation of an anticompetitive policy barring any outside Trade Show Cleaning Services employees from entering the San Diego Convention Center (hereinafter referred to as "SDCC Facility") while requiring any trade association, general contractor or service provider, including Plaintiff UNITED, to contract at supra-competitive prices for the use of the SDCC's employees to provide Trade Show Cleaning Services at the SDCC Facility.  This policy has no valid purpose and is in direct violation of Sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1, 2.

**PARTIES**

3.     Plaintiff UNITED is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Nevada, authorized and qualified to transact, and transacting business in California. UNITED presently conducts business in San Diego County, California. UNITED is engaged in the business of providing cleaning, janitorial, maintenance and related services to trade shows and conventions (hereinafter referred to as "Trade Show Cleaning Services") at the SDCC Facility, and it has developed a national reputation for providing such services at trade shows and conventions nationwide. UNITED has provided Trade Show Cleaning Services for over 40 years.

4.     Prior to the implementation of SDCC's policy, UNITED maintained employees, leased a facility and maintained equipment in San Diego.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

5.    Defendant SDCC is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of California, and authorized to transact, and transacting, business in California, with its principal place of business in the City and County of San Diego, California.  SDCC's Articles of Incorporation state that it is a non-profit public benefit corporation, and its business purpose is to operate and manage the SDCC Facility.  SDCC also sells Trade Show Cleaning Services for shows held at the SDCC Facility and is a direct competitor of UNITED in San Diego.

6.    The SDCC was incorporated on October 31, 1984, and has "managed, marketed and operated" the SDCC Facility continuously since 1989 without having registered as a public agency on the Roster of Public Agencies with the California Secretary of State as required by the California Government Code Section 53050 et seq.  Because SDCC has failed to so register, UNITED is not required to serve a notice of claim on SDCC under the California Tort Claims Act and need not plead that it did so.  Further, SDCC may not assert the failure of UNITED to comply with the notice requirement of the Tort Claims Act as a defense to any of the claims alleged herein.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under 15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337 because UNITED has brought this action to restrain violations of 15 U.S.C. §§ 1, 2 and to recover damages.  This Court has supplemental jurisdiction over UNITED's state claims pursuant to 28 U.S.C. § 1367 because such claims arise out of the same core of operative facts as the federal antitrust claims and are so related to the federal antitrust claims that they form part of the same case and controversy.

8.    SDCC transacts business in the San Diego area of the Southern District of California and has committed unlawful acts in the Southern District of California.  Therefore, this Court has

Kirby Noonan Lance & Hoge, LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

jurisdiction over SDCC and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 22.

## INTERSTATE COMMERCE

9.    The activities of SDCC, as described herein, have been within the flow of, and have substantially affected, interstate commerce as the business of attracting and servicing conventions is at the core of interstate commerce. Indeed, the vast majority of SDCC conventions are organized and contracted for by out-of-state entities, and the participants overwhelmingly travel to San Diego in the flow of interstate commerce. Further, businesses such as UNITED perform services at the SDCC Facility pursuant to national contracts.

## THE SAN DIEGO CONVENTION CENTER MARKET

10.    SDCC operates and manages the SDCC Facility located at 111 West Harbor Drive, San Diego, California. It is the only true convention center in San Diego, offering over 615,000 square feet of exhibit space and over 1,000,000 square feet of combined exhibit and meeting space making it the 11th largest convention center in the United States and is viewed by many in the trade show industry as one of the top five convention centers in the United States. By contrast, the next largest venues in and around San Diego are hotels offering only a fraction of the space the SDCC Facility offers. For instance, the next largest facility suitable for trade shows in the San Diego market will be the Hilton San Diego Convention Center offering 165,000 square feet of meeting space and that facility does not open until November 2008. There is no remotely comparable alternative venue in San Diego for the type of trade shows that use the SDCC Facility.

11.    SDCC's primary business is to lease the SDCC Facility, pursuant to license agreements, to various trade associations for daily periods to hold trade shows. Trade shows are regularly held in the SDCC Facility on a annual or rotating basis.

12.    Because the SDCC Facility is one of the top five trade show venues in the United

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

States, trade associations must typically sign a contract with SDCC at least five years or even 15 years in advance to secure a preferable date. The same is the case at other similar large facilities in the United States such as those in Las Vegas, Chicago, and Orlando.

13.  .  Trade associations that license the SDCC Facility are essentially handed the keys to an empty building wherein they are contractually responsible for their use of the SDCC Facility between move-in and move-out dates. Trade associations typically hire general contractors, such as GES Exposition Services ("GES") and Champion Exposition Services ("Champion"), to organize and manage their trade shows at the SDCC Facility. Organizing and managing trade shows at the SDCC Facility is no small job. There are a tremendous number of logistical challenges for general contractors serving trade associations including setting up and taking down a trade show in very narrow time windows.

14.  The general contractors, including but not limited to GES and Champion, have continuously, since the SDCC Facility opened 19 years ago, hired subcontractors to perform many of the various services associated with trade shows, including electrical, exhibit installation and dismantling ("I&D"), and Trade Show Cleaning Services. The employees of these subcontractors have historically (and with the exception of UNITED) continued to have access to the SDCC Facility to provide the services for which they have contracted.

15.  General contractors have always benefited from competition to provide Trade Show Cleaning Services in San Diego. The SDCC and UNITED have competed head to head for the business of Trade Show Cleaning Services ever since the SDCC Facility opened. GES and other general contractors have utilized the services of UNITED to provide Trade Show Cleaning Services in San Diego even before the SDCC Facility opened. GES, Champion and other general contractors desire to continue to use the services of UNITED in San Diego in the future.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

## THE TRADE SHOW CLEANING SERVICES
## PRODUCT MARKET

16.    Trade Show Cleaning Services is a specialized product that is not reasonably interchangeable with other janitorial or custodial services. There is a sufficient demand for these services such that it is efficient for a firm such as UNITED to provide these services in competition with SDCC Facility personnel.

17.    There are two distinct components to Trade Show Cleaning Services: (1) cleaning of the aisles and common areas of the SDCC Facility ("Facility Cleaning"); and, (2) cleaning of individual exhibit booths ("Booth Cleaning").

18.    Facility Cleaning addresses the cleaning of all common areas utilized by a trade show throughout the move-in phase, construction and installation of the show exhibits and through the move-out phase wherein all relevant common areas must be cleaned in time for the next scheduled event.

19.    Booth Cleaning addresses the cleaning of individual exhibits and contiguous aisle space throughout the show including during the overnight hours. This service is tailored to ensure that the unique needs of each individual exhibit are met.

20.    Unlike traditional janitorial service firms, whose employees can expect their work areas to be the same size and in a relatively similar condition each day, the size, scope, and cleaning needs of each trade show are unique. The unique needs of each show demand that a provider of Trade Show Cleaning Services have a tremendous amount of trade show specific logistical expertise because they must anticipate needs proactively based on the past experience of the Trade Show Cleaning Services management. Due to this lack of expertise, a traditional janitorial firm cannot provide Trade Show Cleaning Services in an efficient and effective manner.   If these services could be provided by

Kirby Noonan Lance & Hoge LLP

600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   traditional janitorial firms, there would be many more competitors to UNITED and SDCC and general

2   contractors would in all likelihood provide these services themselves.

3       21.    The Trade Show Cleaning Services product must be individually tailored to the needs

4   of small and large trade shows alike, to account for the specific cleaning needs of the exhibits of each

5   industry. For example, a food show has very different needs from a technology show. The size and

6

7   industry of each show requires a specific amount and positioning of manpower and equipment in very

8   specific time windows to perform differentiated tasks. This service must be provided in a seamless

9   fashion so that UNITED recognizes and acts on a particular issue as it develops, without the luxury of

10   waiting for a request or response from its customer.

11       22.    Unlike SDCC, UNITED is a national service provider of Trade Show Cleaning

12   Services. It provides services to customers that promote trade shows wherever they are held in the

13   United States, including those held at the SDCC Facility on an annual or rotating basis. The

14

15   knowledge and experience gained from producing shows in each city with its customers enables

16   UNITED to provide a specialized level of service that many customers using the SDCC Facility value.

17   Ultimately, the complexities of these shows demand carefully selected and integrated vendor partners,

18   such as UNITED, who have a thorough understanding of each show's special needs.

19   **THE RELEVANT GEOGRAPHIC MARKET IS SAN DIEGO**

20       23.    Trade Show Cleaning Service contractors such as UNITED and SDCC can only

21

22   profitably educate and train a separate workforce of their own at each location. Margins are too thin

23   and customers will not pay the expense of traveling and housing so many low wage workers. It is not

24   profitable to move employees from city to city to compete for cleaning contracts as a regular business

25   model. Rather, a company must make the investment of building, hiring and training locally as a

26   precursor to providing these services. Because of these factors, UNITED trains and maintains its own

27

28   workforce at each location and SDCC's workforce only works locally as well. For these reasons,

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\497699.1                                    -7-

Trade Show Cleaning Services simply are not reasonably interchangeable with other cleaning services.

24.    The distinct nature and requirements of Trade Show Cleaning Services ensure high entry barriers, including large start-up costs, upfront training, specialized knowledge and the difficulty of obtaining repetitive learning-by-doing skills of this business. Even if an entrant was willing to take the time and expense of trying to build a new entrant, it would be extremely difficult to convince a customer to take a chance on an untested startup.

25.    Accordingly, for the past 19 years, UNITED has maintained a workforce and equipment in San Diego with the sole purpose of providing Trade Show Cleaning Services to San Diego and San Diego only. Even though Los Angeles and Palm Springs are geographically close to San Diego, UNITED maintains separate work forces at each location because those workforces cannot profitably be moved to even relatively close geographic areas.

26.    Prior to the implementation of this policy, UNITED's San Diego workforce of 51 employees, including managers and supervisors, was located in the San Diego area. Some of these employees have been employed by UNITED for the sole purpose of providing Trade Show Cleaning Services in San Diego for 17 years. Since the policy was implemented in July 2007, UNITED has lost 47 of these 51 employees because they were not working and UNITED cannot pay them to not work. Obviously, they have little choice but to seek other employment. As more time passes, it will become more difficult for UNITED to get them back. UNITED cannot compete in San Diego without its workforce.

27.    While competition between convention cities of certain sizes exists, a trade show cannot profitably change its show location in response to an increase in the cost of Trade Show Cleaning Services. Shows at the SDCC Facility are contracted for years in advance, in many

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

instances five to fifteen years in advance. The vast majority of trade shows to be held at the SDCC Facility in the next several years are thus already locked-in place by contract.

28.    Further, Trade Show Cleaning Services is a very small component of trade show and exhibition costs. I&D services and electrical contracting dwarf Trade Show Cleaning costs, as do many other services. Thus, even if a trade show was contractually able to switch its show to a new city, it would likely not do so simply because Trade Show Cleaning Services became more expensive.

29.    Even if a trade show wanted to switch cities, it is exceedingly difficult to do so. There are very few facilities the size of the SDCC Facility in the United States, and these facilities in Chicago, Las Vegas, and Orlando are very busy. The available dates at these facilities, even five years from now, are few. A trade association wishing to switch location from San Diego would thus have to accept an inferior date if one is even available. And since trade shows are typically held during the same week each year, an association is not likely to accept a different date.

30.    Further, the logistics involved with switching a show location a year or two in advance are numerous and daunting. It would simply not make sense to switch cities based solely on cleaning cost increases. It is competition between Trade Show Cleaning Service vendors that keeps prices in check and not competition from other convention cities.

31.    The unique size of the SDCC Facility combined with high switching costs and contractual barriers as well as the need for local Trade Show Cleaning employees makes San Diego the relevant geographic market as no SDCC customer is likely to switch to or select another geographic area solely in response to a sustained Trade Show Cleaning price increase.

## SDCC HAS MONOPOLY POWER IN THE TRADE SHOW CLEANING SERVICES MARKET

32.    SDCC has the power of a classic monopolist as it and it alone controls who has physical access to its building. SDCC's power to exclude, if not challenged by this Court, is thus absolute. Even short of total exclusion, SDCC has the power through its control of the SDCC Facility

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   to impose discriminatory conditions on an outside contractor such as UNITED that could impede if

2   not eliminate competition.

3       33.    Proof of SDCC's monopoly power is obvious from the result of its exclusion of

4   UNITED. SDCC did not merely try to exclude UNITED, it did so completely and directly. Service

5   has declined since UNITED's exclusion and UNITED's costs have risen and will be passed on to

6   
7   customers where contractually possible. Further, while UNITED is currently servicing its San Diego

8   contractual commitments (at a loss financially) it is not pursuing new business opportunities anymore,

9   leaving that market entirely to the SDCC.

10      34.    This reality was quickly realized by the trade show industry as a whole and is

11  evidenced by letters sent by experts in the trade show industry to SDCC voicing opposition to this

12  ridiculous policy. True and correct copies of these letters are attached hereto as Exhibits A through

13  
14  E. SDCC's complete foreclosure of competition for Trade Show Cleaning Services in San Diego and

15  its inevitable anticompetitive effect clearly looms over the trade show industry as a whole:

16  • "By taking the decision out of our hands to select this very important -- and visible service --
17    you could be taking away our ability to negotiate competitive pricing models for our client, as
      well as the relationship to a valuable member of our service level team environment." (June
18    27, 2007 Ltr from SmithBucklin Corp. to SDCC, attached as Ex. A)

19  • "While I believe we have used the SDCC cleaning services over the past years, it was by
20    choice. Imposing an exclusive of any type isn't in the best interest of Nielsen or its
      customers. Nielsen manages its shows based on the specific needs and requirements of
21    customers and having this flexibility is a key ingredient to a successful show. . . . In our
      experience, exclusive services ultimately become more expensive and less service oriented as
22    it takes the competitive nature out of the business." (June 22, 2007 Letter from Nielsen
      Business Media to SDCC, attached as Ex. B)
23
24  • "[T]here are many components that make a successful show and it is our responsibility to
      manage these components. We determine . . . the services provided to our
25    exhibitors. Sometimes we make these determinations based on service, sometimes only on
      price, and sometimes on both, but in any case these decisions are the right of the show
26    manager, not the facility. . . . Please know that the imposition of an exclusive service will be
      in contradiction to the wishes of your customers and it typically reduces service levels and
27    takes competitive pricing options away. We have found over the years that the show
      manager's ability to choose a contractor and control price helps . . . provide better service at
28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

competitive prices." (June 14, 2007 Letter from Bobit Business Media to SDCC, attached as Ex. C)

- "While we understand the need for facility managers to generate revenue, tradeshow organizers and their exhibitors must retain the right to select vendors of their choice. This is particularly true for large shows whose complexities demand carefully selected and integrated vendor partners who have a thorough understanding of each show's special needs. This includes cleaning services . . . . Show organizers spend years cultivating relationships and advantageous pricing with their chosen suppliers. In-house exclusives arbitrarily increase costs to show organizers -- and therefore exhibitors -- while decreasing the quality of the service provided due to lack of competition." (July 20 Letter from Society of Independent Show Organizers to SDCC, attached as Ex. D)

- "[O]ur clients would love to have the San Diego Convention Center competitively bid for the opportunity to be the official cleaning contractor. However, an exclusive situation does not promote competition and service." (July 26, 2007 Letter from Tradeshowlogistics to SDCC, attached as Ex. E)

35.    The fact that the SDCC can implement such a policy in the face of such overwhelming customer opposition without fear of losing business is *prima facie* evidence of its monopolistic strangle-hold on the Trade Show Cleaning Service market in San Diego and its ability, unless this Court intervenes, to completely foreclose the market to its competitors.

36.    Richard Simon, President of UNITED, has had numerous conversations with Brad Gessner, General Manager of the SDCC Facility, where Gessner has complained that UNITED's prices are too low and specifically urged UNITED to raise its prices. SDCC has made its intentions clear and the industry's fears an inevitable reality regarding price increases.

37.    Even without exercising its power to exclude, SDCC has strong market power. The market for Trade Show Cleaning Services in San Diego has developed into a fairly stable duopoly. According to SDCC, SDCC services 60% of the trade shows in the SDCC Facility and UNITED services the remainder. Other competitors have tried to enter the San Diego market but currently do not have a material share of the market.

## THE TRADE SHOW CLEANING SERVICE
## MARKET CONTRACTING PROCESS

38.     UNITED has invested heavily in its San Diego operations in order to service general contractors and trade show licensees operating at the SDCC Facility.

39.     General contractors such as GES and Champion have been the beneficiaries of this investment and the vigorous competition on service and price that has historically existed between SDCC and UNITED. Despite the best efforts of SDCC to obtain business with GES, Champion and others, these companies have entered into long-term written contracts with UNITED to provide Trade Show Cleaning Services for those trade shows operated and managed by them in San Diego. A redacted copy of the UNITED – GES Trade Show Cleaning Services contract is attached hereto as Exhibit F, and a redacted copy of the UNITED – Champion Trade Show Cleaning Services contract is attached hereto as Exhibit G.

40.     UNITED's contracts are national in scope. The structure of these contracts is based upon the two components of Trade Show Cleaning Services provided by UNITED described in paragraphs 18 and 19: Facility Cleaning and Booth Cleaning. During a trade show, companies such as UNITED perform both types of cleaning services, but do so under slightly different contractual arrangements.

41.     Facility Cleaning is paid for out of the general fees received by the general contractor. Facility Cleaning is billed on a pre-negotiated, fully-loaded, hourly basis. In San Diego, UNITED contracts with GES and Champion to provide Facility Cleaning at a fully-loaded hourly rate of $16.30. This rate is calculated based on UNITED's costs of paying its own labor and it includes costs associated with the time spent by UNITED's supervisory employees, who do not bill their time to the general contractor, equipment depreciation and other overhead, including benefits and UNITED's profit margin.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

42.    UNITED contracts for Facility Cleaning require it to provide estimates in advance of each specific trade show.  For instance, UNITED's contract with Champion provides:

"UNITED will provide Champion account exec with an estimate of the pre show, post show and aisle porter costs prior to the show...*This estimate will be a not exceed figure*.  UNITED shall invoice Champion for that amount or less based on hourly cost..."

(Ex. F, ¶ 9.)  UNITED's estimates are based on the overall square footage of the common areas for a particular show and the fully-loaded hourly rates required to clean those areas.  UNITED is not allowed to bill for hours in excess of this estimate.  Since UNITED is paid pursuant to this estimate, the efficiency of the workforce is particularly important for this phase.  UNITED's estimates were made prior to the announcement of SDCC's policy but nonetheless are still binding.

43.    In order for UNITED to service its San Diego contracts today, SDCC charges UNITED $17 an hour for labor and gives UNITED no input into the number of workers used or the hours worked.  This $17 figure is the same price SDCC charges its own customers.  Thus, even where UNITED is still technically the contractor, SDCC is earning a profit on the back of UNITED while UNITED has to suffer a loss.

44.    Booth Cleaning is provided to specific exhibitors upon request and is paid for on a flat per square foot basis.  Each requesting exhibitor at a trade show pays the fee to the general contractor.  UNITED receives a fixed percent of the cleaning fees paid by exhibitors to the general contractor to do the Booth Cleaning.  In San Diego, UNITED contracts with GES and Champion to receive roughly 50% of the general contractor's revenue from these fees.  From that 50%, UNITED has to pay its overhead and operating costs, including paying its local San Diego employees.  The remainder of any revenue constitutes UNITED's Booth Cleaning profit margin.  SDCC has charged UNITED 100% of the Booth Cleaning revenue it receives from its customers to use SDCC labor for Booth Cleaning.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

**SDCC'S FAILED EFFORTS TO RAISE ITS MARKET SHARE
THROUGH COMPETITION ON SERVICE AND PRICE**

45.    Since the inception of the SDCC Facility, SDCC has been offering to sell Trade Show Cleaning Services in direct competition with UNITED and others. During this time, SDCC has aggressively tried to solicit business from UNITED's customers, such as GES and Champion. These efforts have failed.

46.    SDCC has on at least two separate prior occasions tried to make Trade Show Cleaning Services an exclusive in-house service at the SDCC Facility, but only now in 2007 has such an effort actually been implemented. In 1990 and 2000, SDCC tried to mandate the use of SDCC employees for all Trade Show Cleaning Services within the SDCC Facility. In both instances SDCC threatened that any general contractor failing to use SDCC employees for Trade Show Cleaning Services would be precluded from providing electrical services. Electrical services would instead be provided exclusively by SDCC. Due to the fact that electrical services generate higher revenue for general contractors than Trade Show Cleaning Services, SDCC blatantly attempted to use its control over the SDCC Facility as leverage to destroy competition for Trade Show Cleaning Services. These exclusionary efforts failed because of customer outrage.

47.    Throughout the past year, SDCC has engaged in an active campaign to secure contracts with GES, Champion and other UNITED customers. SDCC tried to compete on price and service, but these competitive offerings were rejected on their merits and UNITED retained the business.

48.    These rejections caused SDCC to again fallback on anticompetitive methods, such as coercion and threats of business interruption, to raise its market share. On information and belief, SDCC threatened that, if general contractors did not give the Trade Show Cleaning business to SDCC, the general contractors would lose certain benefits related to early move-in and use of the loading docks. Despite using its absolute control over the SDCC Facility as a method to solicit and coerce UNITED's customers to give the entirety of their business to SDCC, SDCC's sales pitch failed.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

## SDCC'S PRETEXTUAL EFFORT TO CORNER THE MARKET FOR
## TRADE SHOW CLEANING SERVICES

49.     Despite being repeatedly rebuffed, SDCC remained determined to capture the profits UNITED earns from Trade Show Cleaning Services for itself. Rather than competing in a free and competitive manner, SDCC again resorted to nakedly exclusionary conduct.

50.     In May 2007, UNITED learned that SDCC had notified general contractors that effective July 1, 2007, all Trade Show Cleaning Services within the SDCC Facility would have to be performed by SDCC employees. This policy eliminated the general contractors' right to use UNITED and other providers of Trade Show Cleaning Services. The policy was limited solely to Trade Show Cleaning Services and was not applied to exclude the many thousands of other employees of outside contractors who regularly have access to the SDCC Facility.

51.     This new policy was only adopted after Champion, GES and others had already entered into long-term contracts with SDCC Facility trade show association customers, and after the general contractors in turn had entered into Trade Show Cleaning Services contracts on a long term basis with UNITED. SDCC Facility licensees and customers, and their general and sub-contractors, were thus locked into the SDCC Facility at the time this policy edict was announced.

52.     The reason SDCC offered for this policy was entirely a pretext to cloak its efforts to gain total control of the Trade Show Cleaning Services market in San Diego. Specifically, SDCC asserted that allowing UNITED employees access to the SDCC Facility posed security risks. The timing of the implementation of this policy is suspicious, to say the least. Outside Trade Show Cleaning Service employees have been excluded pursuant to this "security" policy only a short time after SDCC's aggressive efforts at legitimate competition were rejected.

53.     SDCC does not require that any of the employees of the numerous other outside contractors be given security screening. Hundreds, if not thousands, of non-SDCC laborers enter the SDCC Facility to do the work required to put on a trade show in the SDCC Facility including

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\497699.1

-15-

employees of the trade associations and general contractors and outside vendors including I&D contractors, electricians, plumbers, carpenters, freight handlers, carpet installers, display houses, decorators, sign hangers, advertisers, florists, photographers, caterers, riggers, and other general labor. Thus, upon information and belief, only 3% of the labor force servicing a trade show at the SDCC Facility is subject to this policy.

54. The discriminatory application of this policy to UNITED makes no sense and will do nothing to improve security at the SDCC Facility. For example, the employees of I&D contractors pose a much greater security concern. Normally, these companies are numerous, small, tend to go out of business with regularity and, at any given time, there could be dozens of these companies working in the SDCC Facility. I&D employees are provided unfettered access to the SDCC Facility and are not subject to any of the SDCC's alleged security protocols.

55. Since Trade Show Cleaning Service providers typically have a greater degree of knowledge and control over their staff than other providers of labor given access to a convention center, Trade Show Cleaning employees pose a low security risk compared to these other laborers. This is due to the fact that the majority of the workforce that services the various other trades for these shows are, upon information and belief, typically spot or temporary labor that come off of call lists at union halls. Upon information and belief, due to the itinerant nature of the trade show industry, there is a high amount of turnover for each trade show of the hundreds and sometimes thousands of employees that come off of these call lists for general labor, freight hauling, rigging and even electrical work. Upon information and belief, the show manager, general contractor and convention center do not run background checks on these laborers and have no idea who these people are let alone what their background is, let alone whether any of these laborers pose a security risk. Trade Show Cleaning crews, like that of UNITED, are much different because they are smaller and because they

1 come off of a common employment roster and therefore are typically made up of and managed by the

2 same groups of people that are granted access to the SDCC Facility for any given show.

3      56.    For the past 19 years, UNITED has not had a single security issue at the SDCC

4 Facility. To date, SDCC has not brought a single security issue to UNITED's attention and has not,

5 despite requests from UNITED, disclosed the security issues UNITED's employees allegedly

6

7 presented. SDCC has claimed that these security concerns arise from their belief that UNITED may

8 use temporary workers. This claims is absolutely false. UNITED does not use temporary workers

9 and all employees are hired with the intention to be long-term employees. This is clearly illustrated

10 by the fact that, as of June 2007, the majority of UNITED employees in San Diego had been

11 employed by UNITED for at least two and up to seventeen years.

12

13      57.    UNITED made exhaustive efforts to assuage SDCC's purported security concerns, all

14 of which were rejected without explanation. UNITED offered, at its own expense, to subject its

15 employees to the same background checks and security protocols SDCC uses, or to even let SDCC run

16 the background checks and security protocols itself. All of the information necessary to run the most

17 comprehensive of background checks is readily available due to UNITED's requirement that each

18 employee fill-out a 23 page application packet.

19      58.    These less restrictive alternatives were brought to SDCC's attention again by general

20 contractors, trade associations and others in the trade show industry. In letters written to SDCC

21 voicing opposition to this policy, some of these experts in the industry stated the obvious to SDCC:

22

23      "Would it not be more appropriate to establish guidelines for these companies to work within,
        rather than restrict them from doing business in your facility?"[September 21, 2007, Letter

24      from Exhibition Services & Contractors Association, to SDCC, attached as Ex. H];

25

26      "It is apparent the SDCCC feels a need to establish guidelines for cleaning contractors that
        provide a professional, secure and quality environment. The TSCA supports SDCCC in

27      mutually establishing these guidelines. The mandatory requirement of these guidelines to
        eliminate client choice we do not support. Respectfully, we ask that SDCCC withdraw the

28      new cleaning services policy and program. Once again, the TSCA will work with SDCCC to

*Kirby Noonan Lance & Hoge LLP*
*600 West Broadway, Suite 1100 San Diego, California 92101-3387*

remove the concerns stated."[June 6, 2007, Letter from Trade Show Contractors Association of Southern California, to SDCC, attached as Ex. I].

Despite the efforts of UNITED and the industry to come to a reasonable compromise, SDCC refused any dialogue with UNITED and rejected these offers without explanation.

59.     The practices of many other convention centers provide tangible examples of how to ensure security while allowing companies like UNITED to have their employees serve a facility. For example, McCormick Place in Chicago, the largest convention center in the United States, allows wide association and exhibitor latitude to select contractors, including Trade Show Cleaning. McCormick Place has instituted a mandatory badge program which requires a person accessing the show floor to wear a security badge issued by McCormick Place that includes a picture and name. The Orange County Convention Center in Orlando requires a badge issued by either show management or the Orlando Convention Center. Orlando is the second largest convention center in the United States. The Las Vegas Convention Center, the third largest in the United States, uses a similar badge process. Even though SDCC lacks such a badging program, UNITED badges its employees anyway by providing each employee with computer generated photo identification, identifying them as an employee of UNITED. Security professionals believe that it is not necessary to exclude employees of outside contractors to ensure security at convention facilities. Indeed, there is no inherent security benefit from using only inside employees. A computer generated photo badging program of all labor, inside or outside satisfied security professionals concerns.

60.     This is in sharp contrast to the SDCC Facility where all that is needed to get full access to any given trade show or convention is a show management issued wrist band. Security or the registration desk is given a list of all laborers that will need access to the SDCC Facility and the general contractor or show manager is then given a corresponding number of wrist bands to pass out to those employees. Upon information and belief, no further security screening is performed. Despite all of this, UNITED employees, all of whom are badged with photo identification and have offered to

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 91101-3387

1  go through all of the same security screening and procedures conducted on SDCC employees, are

2  barred from the SDCC Facility.

3       61.    SDCC instead is allowing UNITED to service its contracts, but requiring UNITED to

4  use SDCC's employees and accept terms that ensure that UNITED cannot profitably serve its clients.

5  Indeed, SDCC captures all of the profits as it were the service contractor.

6

7       62.    Specifically, on or about June 25, 2007, SDCC wrote a letter to UNITED informing

8  UNITED that UNITED could continue to provide services at the SDCC Facility only if UNITED used

9  SDCC employees to perform Trade Show Cleaning Services.

10      63.    On information and belief, SDCC knew that UNITED would lose money if it had to

11  abide by SDCC's conditions because of the terms of UNITED's contracts with its clients and because

12  of the price at which SDCC would make its employees available to UNITED.

13

14      64.    Under SDCC's new mandate, SDCC requires UNITED to surrender to SDCC the full

15  50% of the Booth Cleaning revenue UNITED earns under its contracts with the general contractors,

16  such as GES and Champion, and possibly more if the SDCC's labor costs exceeded the 50%. SDCC's

17  terms thus require UNITED to give SDCC 100% of the Booth Cleaning revenue it receives in San

18  Diego and possibly more.

19      65.    Not only does SDCC's new mandate force UNITED to surrender the entirety of its

20  Booth Cleaning revenue, it also ignores UNITED's pre-negotiated contractual estimates (as described

21  in paragraphs 41 to 43) and commands that SDCC be compensated at a higher fully-loaded hourly rate

22

23  than UNITED is contracted to charge its customers for Facility Cleaning. Under its current long-term

24  contracts, UNITED gives customers, such as GES and Champion, Facility Cleaning estimates based

25  on a fully-loaded, blended, hourly rate for the service which includes UNITED's direct labor cost,

26  supervisor time, overhead and profit and based on this estimate UNITED cannot be paid for hours

27  worked in excess of this estimate. Under these terms, UNITED is compensated at a rate of $16.30 per

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

man hour for Facility Cleaning. Under SDCC's mandate, UNITED must pay $17.00 per man hour for Facility Cleaning services. Also, SDCC ignores UNITED's estimates and unilaterally brings in more labor than UNITED and its customers contracted for to perform each job. While turning a profit under these contractual terms hinges on the efficiency of UNITED's workforce, SDCC employees have no such incentive and UNITED has no way to discipline SDCC employees. UNITED must cover the difference between the SDCC mandate and its own freely negotiated contracts at a complete loss.

66.    UNITED has to accept SDCC's terms in San Diego because of the nature of its contracts with Champion and GES. Both have told UNITED that it will be considered in breach of its national contracts if it does not perform in San Diego. UNITED must serve the contracts in San Diego at a loss to preserve its business nationwide.

67.    By virtue of managing and operating the SDCC Facility and competing with UNITED for Trade Show Cleaning Services for nearly 19 years, SDCC had complete knowledge of UNITED's Trade Show Cleaning Services contracts with GES and Champion. SDCC, armed with such knowledge, is effectively extorting and right now UNITED is defenseless against the SDCC terms, and customers will ultimately pay the increased price.

68.    The SDCC's new terms are higher than what it could charge in competition with UNITED. Prior to notifying UNITED of its new Trade Show Cleaning Services policy, SDCC sent a written proposal to UNITED's customers regarding its ability to provide Trade Show Cleaning Services on nearly the same terms offered by UNITED. SDCC has also told the general contractors that if they do not accept SDCC's proposal that SDCC will provide all Trade Show Cleaning Services and retain 100% of all Booth Cleaning revenue. This would prove extremely detrimental to the general contractors, such that the general contractors are faced with no option, or they stand to lose all Trade Show Cleaning Service revenues.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\497699.1

69.    Clearly, UNITED cannot operate under SDCC's mandatory proposal. SDCC's proposal leaves no revenue for UNITED to operate at the SDCC Facility. By requiring UNITED to surrender 100% of its Booth Cleaning revenue, and at the same time pay the SDCC at a higher rate for Facility Cleaning than it charges its customers, SDCC's proposal to UNITED is, at best, an offer to commit financial suicide in the San Diego market. Moreover, the SDCC's mandate irreparably harms UNITED, giving it no choice but to operate at a complete loss in the San Diego market or to withdraw from the market altogether thereby breaching its national contracts with GES and Champion.

## FIRST CAUSE OF ACTION

## (ATTEMPTED MONOPOLIZATION)

70.    UNITED realleges and incorporates herein by this reference each and every one of the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

71.    At all times mentioned herein, UNITED has been engaged in providing Trade Show Cleaning Services at the SDCC Facility, and UNITED competed with other businesses to provide those services.

72.    The SDCC is the sole operator and manager of the SDCC Facility. As the sole operator and manager SDCC controls the SDCC Facility in San Diego, and thus has sufficient economic power to coerce trade associations and general contractors to exclusively use the Trade Show Cleaning Services of SDCC.

73.    Beginning at least as early as 2007, and continuing through the present date, SDCC has willfully engaged in a course of conduct intended to give SDCC a monopoly on Trade Show Cleaning Services in the City of San Diego in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. This offense will continue or recur unless the relief requested is granted.

74.    SDCC's absolute requirement that all Trade Show Cleaning Services be performed exclusively by SDCC personnel restrains the trade associations, as licensees of the SDCC Facility, as

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

well as the general contractors, from selecting the service provider of its choice to perform Trade Show Cleaning Services. Indeed, the SDCC requirement effectively mandates that the licensees contract with SDCC to perform these services.

75.    SDCC specifically intends to achieve a monopoly and dominance in the market for Trade Show Cleaning Services in San Diego. SDCC's policy has the effect of restraining, suppressing, and eliminating competition for such services in the City of San Diego.

76.    SDCC's attempt to monopolize is being accomplished through means other than SDCC's superior skill or business acumen. The SDCC policy is nakedly exclusionary and its true intent is to capture the profits earned by UNITED for itself and to bar UNITED and any other market entrants from competing against SDCC on the merits of the service offered.

77.    The trade associations, general contractors, UNITED and the general public have been, and will be, deprived of the benefit of free, competitive providers of such services and have been, and will be, forced to enter into exclusive agreements with SDCC to provide these services. The response of trade associations, general contractors and others in the trade show industry empirically evidences the anticompetitive purpose and effect of SDCC's policy.    (Ex. A - E)

78.    Defendants' continuing wrongful conduct as alleged hereinabove, unless and until restrained by order of this court, will cause great and irreparable harm to the competitive process itself, and to UNITED in particular, including, but not limited to, UNITED not being permitted to work at trade shows at the SDCC Facility, and thereby being forced to fire its entire staff in San Diego. UNITED will also be unable to comply with its contractual obligations with established customers (i.e., GES and Champion) to provide Trade Show Cleaning Services.

79.    UNITED has no adequate remedy at law for the injuries currently being suffered or which will result in the future from Defendants' continued wrongful conduct. In addition, damages have resulted and will result from said wrongful acts including, but not limited to, the loss in excess of

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1    $500,000 annually in revenue from the San Diego market, and the corresponding laying off of at least

2    51 full and/or part-time San Diego based employees. General contractors, trade associations, and

3    other members of the public will be forced to file similar suits unless this Court restrains Defendants.

4        80.    The foregoing wrongful acts of Defendants constitute violations of Section 2 of the

5    Sherman Act, entitling UNITED to, among other things, preliminary and permanent injunctive relief.

6

7                        **SECOND CAUSE OF ACTION**

8                        (ESSENTIAL FACILITIES)

9        81.    UNITED realleges and incorporates herein by this reference each and every one of the

10   allegations contained in paragraphs 1 through 80 as though fully set forth herein.

11       82.    The SDCC Facility is the only convention center of its size in San Diego. The SDCC

12   Facility cannot practicably be duplicated, and it is the only place in San Diego that the Trade Show

13   Cleaning Services offered by UNITED can be provided. The San Diego Convention Center is

14   therefore an essential facility to UNITED without which it cannot operate as a going concern in the

15   San Diego geographic market for Trade Show Cleaning Services.

16

17       83.    At present, UNITED can only use this essential facility under SDCC's mandatory

18   proposal which leaves no revenue for UNITED to operate at the SDCC Facility. SDCC's mandatory

19   proposal to commit financial suicide has effectively excluded UNITED and all other providers of

20   Trade Show Cleaning Services from competing for providing Trade Show Cleaning Services at the

21   SDCC Facility and ultimately the San Diego market.

22

23       84.    Rather than continuing to compete in a free and competitive the market by offering to

24   sell Trade Show Cleaning Services in competition with UNITED, SDCC decided instead to deny this

25   essential facility to the rest of the market. SDCC's requirement that only SDCC personnel provide

26   Trade Show Cleaning Services at the SDCC Facility has not only inflicted a severe handicap on

27   market entrants such as UNITED but has precluded such providers from the market altogether.

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\497699.1                    -23-

85.     By refusing to give direct competitors like UNITED access to the SDCC Facility, SDCC has monopolized the San Diego market in direct violation of Section 2 of the Sherman Act, entitling UNITED to, among other things, preliminary and permanent injunctive relief.

**THIRD CAUSE OF ACTION**

(GROUP BOYCOTT)

86.     UNITED realleges and incorporates herein by this reference each and every one of the allegations contained in paragraphs 1 through 85 as though fully set forth herein.

87.     Beginning in at least 2007, and continuing to the present date, SDCC, through its officers, agents, and co-conspirators organized, promoted, and engaged in a contract, combination and conspiracy in unreasonable restraint of interstate trade and commerce by forcing licensees and general contractors to agree to exclusively hire SDCC employees for Trade Show Cleaning Services at the SDCC. This conduct is likely to continue and recur unless the relief requested is granted.

88.     For purposes of forming and effectuating this contract, combination, and conspiracy SDCC and its co-conspirators engaged in the following:

Made a mandatory policy whereby all Trade Show Cleaning Services will be provided by SDCC personnel at the SDCC Facility; and

Through its absolute control of the SDCC Facility has and will continue to force all general contractors and trade associations to contractually abide by this requirement, effectively excluding all other providers of Trade Show Cleaning Services from the market.

89.     This contract, combination and conspiracy has had and will continue to have the following effects:

Price and service competition among independent and competing providers of Trade Show Cleaning Services has all but been eliminated;

Trade associations, their members and customers, and general contractors, and the general public have been denied the benefits of free and open competition in the purchase of Trade Show Cleaning Services in the San Diego market; and

Trade associations, their members and customers, and general contractors are threatened with having to pay higher prices for Trade Show Cleaning Services at the SDCC Facility.

90.     SDCC has refused to deal with UNITED, except on price terms established by SDCC; terms which would only permit UNITED to operate without revenue and ultimately at a loss.  This refusal to deal constitutes an unlawful group boycott in the Trade Show Cleaning Services market in violation of Section 1 of the Sherman Act and has been carried out for no other reason than to protect and further SDCC's own economic self-interests.

91.     The foregoing wrongful acts of Defendants constitute violations of Section 2 of the Sherman Act, entitling UNITED to, among other things, preliminary and permanent injunctive relief.

## FOURTH CAUSE OF ACTION

### (EXLCUSIVE DEALING)

92.     UNITED realleges and incorporates herein by this reference each and every one of the allegations contained in paragraphs 1 through 91 as though fully set forth herein.

93.     SDCC's mandatory policy and corresponding agreements with trade shows, general contractors and others pursuant to which such companies agree to only use SDCC personnel for Trade Show Cleaning Services are contracts which give SDCC exclusive control of the Trade Show Cleaning Services market in San Diego.

94.     These exclusive contracts, and the policy requirement that only SDCC personnel can be used for Trade Show Cleaning Services, are, as stated, infinite in duration.  These contracts and policies unreasonably restrict competition and thus violate Section 1 of the Sherman Act.  These agreements unreasonably restrain trade and restrict the access of SDCC's competitors, such as UNITED, to the entirety of the Trade Show Cleaning Services market in San Diego.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

95.     The sole purpose and effect of these agreements are to restrain trade and competition in San Diego's Trade Show Cleaning Services market. These agreements violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

96.     These agreements constitute violations of Section 1 of the Sherman Act, entitling UNITED to, among other things, preliminary and permanent injunctive relief.

## FIFTH CAUSE OF ACTION

(Interference with Contract Against All Defendants)

97.     UNITED realleges and incorporates herein by this reference each and every one of the allegations contained in paragraphs 1 through 96 as though fully set forth herein.

98.     As alleged in paragraph 15 above, UNITED has established contractual business relationships with GES and with Champion, whereby UNITED provides the Trade Show Cleaning Services for trade shows at the SDCC Facility for which GES or Champion are the general contractors.

99.     SDCC knew of the above described contractual business relationships existing between UNITED and the general contractors. SDCC has known of said business relationships for many years by virtue of its operation and management of the SDCC Facility.

100.    The aforementioned acts of SDCC, mandating that only SDCC personnel are authorized to perform Trade Show Cleaning Services at the SDCC Facility, and requiring payments be made to SDCC in conjunction therewith, demonstrates SDCC's intent to disrupt and destroy UNITED'S established contractual business relationships. SDCC committed these acts with the intent to harm UNITED financially, and to induce the general contractors to sever their business relationships with UNITED, and to terminate UNITED's San Diego business. SDCC's stated reason for requiring its employees to perform Trade Show Cleaning Services, a "security" issue is pretextual and false.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

101.    As a proximate result of SDCC's conduct, UNITED has and will suffer irreparable injury and will sustain damages, including but not limited to the loss of at least $500,000 annually in San Diego based revenue, as well as the loss of its San Diego based employees.

102.    The aforementioned acts of Defendant were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages pursuant to California Civil Code section 3294 in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

(Interference with Prospective Business Advantage Against All Defendants)

103.    UNITED realleges and incorporates herein by this reference each and every one of the allegations contained in paragraphs 1 through 102 as though fully set forth herein.

104.    UNITED has prospective business relationships with other general contractors, including but not limited to Brede National, Paradice, and others, for Trade Show Cleaning Services at the SDCC Facility.

105.    SDCC knew of the above described prospective business relationships existing between UNITED and other general contractors. SDCC has known of said business relationships for many years by virtue of its operation and management of the SDCC Facility.

106.    The aforementioned acts of SDCC, mandating that only SDCC personnel are authorized to perform Trade Show Cleaning Services at the SDCC Facility, and requiring payments be made to SDCC in conjunction therewith, demonstrate SDCC's intent to disrupt and destroy UNITED'S prospective business relationships. SDCC committed these acts with the intent to harm UNITED financially, and to induce the general contractors to sever their business relationships with UNITED, and to terminate UNITED's San Diego business. SDCC stated reason for requiring its employees to perform Trade Show Cleaning Services, a "security" issue, is pretextual and false.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\497699.1

-27-

107.    The above described acts of UNITED are wrongful by a measure other than the interference itself, because the acts constitute violations of California Business and Professions Code §§16700, et seq. and 17000, et seq.

108.    As a proximate result of SDCC's conduct, UNITED has and will suffer irreparable injury and will sustain damages, including but not limited to the loss of at least $500,000 annually in San Diego based revenue, as well as the loss of its San Diego based employees.

109.    The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages pursuant to California Civil Code section 3294 in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION

(Violation of Business and Professions Code §§17000, et seq., Against All Defendants)

110.    UNITED realleges and incorporates herein by this reference each and every one of the allegations contained in paragraphs 1 through 109 as though fully set forth herein.

111.    The aforementioned acts of Defendants constitute violations of the Unfair Business Practices Act, sections 17000, et seq., of the Business and Professions Code. As a proximate result of the above mentioned acts of Defendants, UNITED has and will continue to sustain irreparable harm, entitling UNITED to damages and preliminary and permanent injunctive relief pursuant to Business and Professions Code section 17203.

112.    The aforementioned acts were done by Defendants willfully and maliciously and with the intent to injure and oppress UNITED and, by reason thereof, UNITED is entitled to exemplary and punitive damages in an amount according to proof at trial, pursuant to Civil Code section 3294.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH497699.1                                    -28-

WHEREFORE, UNITED prays for judgment against Defendant as follows:

1.    For an order requiring Defendant to show cause, if any, why they should not be enjoined as set forth below, during the pendency of this action;

2.    That the Court issue a preliminary and permanent injunction, enjoining Defendant and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from directly or indirectly or in any manner (a) entering into Trade Show Cleaning agreements for the San Diego Convention Center which require that SDCC employees and/or personnel to be used as the exclusive, in-house provider of Trade Show Cleaning Services and (b) engaging in unlawful restraints of trade, unfair business practices, and interference with both contractual and prospective business relationships by prohibiting general contractors and trade associations from utilizing the company of their choice to provide Trade Show Cleaning Services at the SDCC Facility;

3.    For compensatory damages in an amount according to proof at trial;

4.    That said damages be trebled pursuant to the Sherman Act (on Cause of Action One, Two, Three, and Four);

5.    For exemplary and punitive damages in an amount according to proof at trial;

6.    For interest thereon at the maximum legally permissible rate;

7.    For reasonable attorney's fees as allowable by law;

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

8.    For costs of suit herein incurred; and

9.    For such other and further relief as the Court may deem just and proper.

DATED: November 13, 2007

By: _____

Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

James R. Lance (147173)
Jacob M. Slania (200652)
Dylan O. Malagrino (228052)
**KIRBY NOONAN LANCE & HOGE LLP**
600 West Broadway, Suite 1100
San Diego, California  92101-3387
Tel: (619) 231-8666
Fax: (619) 231-9593

Jeffrey A. Leon [PRO HAC VICE PENDING]
Kristopher J. Stark [PRO HAC VICE PENDING]
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, IL 60602-4224
Tel: (312) 977-4400
Fax: (312) 977-4405

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

KNLH\497699.1

-30-



1261143

ARTICLES OF INCORPORATION

Page 1

OF

SAN DIEGO CONVENTION CENTER CORPORATION, INC.

ENDORSED
FILED
In the office of the Secretary of State
of the State of California

OCT 3 1 1984

MARCH FONG EU, Secretary of State
Gloria J. Carroll
Deputy

### ARTICLE I

The name of this corporation is San Diego Convention Center Corporation, Inc.

### ARTICLE II

A.  This corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person.  It is organized under the Nonprofit Public Benefit Corporation Law for public purposes.

B.  The specific purpose of this corporation is to operate and manage the San Diego Convention Center.

### ARTICLE III

The name and address in the State of California of this corporations's initial agent for service of process is: Curtis M. Fitzpatrick, Assistant City Attorney, City of San Diego, San Diego, CA 92101.

### ARTICLE IV

A.  This corporation is organized and operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

Page 2

B.  No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

## ARTICLE V

The principal office for the transaction of the business of this corporation is to be located in the City of San Diego, County of San Diego, State of California.

## ARTICLE VI

The property of this corporation is irrevocably dedicated to charitable, educational and civic purposes and, upon the liquidation, dissolution or abandonment thereof, the assets thereof will not inure to the benefit of any private, person, officer or director of this corporation, but shall be distributed to The City of San Diego, or to such fund, foundation or corporation organized and operated for charitable, educational and civic purposes as may be designated by the City Council of The City of San Diego, and none of the property, assets or earnings of this corporation may be used to carry on propaganda or otherwise attempt to influence legislation.

Page 3

## ARTICLE VII

The City of San Diego, a municipal corporation, shall be the sole member of this corporation.

IN WITNESS WHEREOF I, the undersigned, constituting the incorporator of this corporation has hereunto set my hand this 26th day of October, 1984.

*(Signature of Incorporator)*

Curtis M. Fitzpatrick, Incorporator

STATE OF CALIFORNIA, )
                       ) SS.
COUNTY OF SAN DIEGO  )

On   October 26, 1984         before me,  Barbara J. Berridge,
a Notary Public in and for said County and State, personally appeared
            Curtis M. Fitzpatrick                                  ,
known to me to be the person___whose name is subscribed to the within instrument and acknowledged that___he___executed the same.

WITNESS my hand and official seal.
        Notary Stamp below)

Notary Public in and for said San Diego County,
State of California

OFFICIAL SEAL
BARBARA J. BERRIDGE
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
SAN DIEGO COUNTY
My Commission Expires March 29, 1988

| UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA | | COURT USE ONLY |
|---|---|---|
| TITLE OF CASE (ABBREVIATED)<br>UNITED NATIONAL MAINTENANCE, INC. V. SAN DIEGO CONVENTION CENTER CORP | | |
| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS):                    TELEPHONE NO.:<br>REGINA A. PETTY (106163)                        Tel. (619) 236-9600<br>SOTERA L. ANDERSON (211025)                    Fax: (619) 236-9669<br>**WILSON PETTY KOSMO & TURNER LLP**<br>550 West C Street, Suite 1050<br>San Diego, CA 92101 | | |
| ATTORNEYS FOR:<br>Defendant SAN DIEGO CONVENTION CENTER CORPORATION | HEARING DATE – TIME | CASE NUMBER:<br>07-CV-2172 BEN (JMA) |

## PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address is Wilson Petty Kosmo & Turner LLP, 550 West C Street, Suite 1050, San Diego, CA 92101.

On November 26, 2007, I served the following documents:

1. DEFENDANT SDCCC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEARING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION;
2. DECLARATION OF CAROL WALLACE IN SUPPORT OF SDCCC'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEARING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION;
3. DECLARATION OF SOTERA L. ANDERSON IN SUPPORT OF SDCCC'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEARING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION;
4. REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SDCCC'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER SHORTENING TIME TO HEARING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION;

I served the documents on the person below, as follows:

James R. Lance
Kirby Noonan Lance & Hoge LLP
600 W Broadway # 1100
San Diego, CA 92101

Jeffrey A. Leon
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, IL 60602

☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addressed below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

!pos by mail.doc

UNITED NATIONAL MAINTENANCE, INC. V. SAN DIEGO CONVENTION CENTER CORP
Case No. 07-CV-2172 BEN (JMA)

---

☐    **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on November 26, 2007, at San Diego, California.

Lori Currell

PROOF OF SERVICE