1  WILSON PETTY KOSMO & TURNER LLP
   REGINA A. PETTY (106163)
2  SOTERA L. ANDERSON (211025)
   550 West C Street, Suite 1050
3  San Diego, California  92101
   Telephone:  (619) 236-9600
4  Facsimile:   (619) 236-9669
   **E-mail:**  rpetty@wpkt.com
5  **E-mail:**  sanderson@wpkt.com

6  Attorneys for Defendant
   SAN DIEGO CONVENTION CENTER
7  CORPORATION, INC.

8

9                **UNITED STATES DISTRICT COURT**

10                **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE INC, A NEVADA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., A CALIFORNIA CORPORATION,<br><br>Defendant. | Case No. 07-CV-2172 BEN (JMA)<br><br>**DEFENDANT SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULES 12(B)(1) AND 12(B)(6)**<br><br>Complaint Filed:  November 13, 2007<br><br>Date:         January 28, 2008<br>Time:        10:30 a.m.<br>Dept.:        3<br>Judge:       Hon. Roger T. Benitez<br>Trial Date:  Not Set<br><br>**[EXEMPT FROM FEES –GOV. CODE, §  6103]** |

TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ........................................................................................1

II. AUTHORITY FOR MOTIONS TO DISMISS .................................................................2

III. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW AS SDCCC IS IMMUNE FROM LIABILITY FOR THE CLAIMS PLAINTIFF RAISES IN THE COMPLAINT ...........................................................................................................2

    A. Background ..........................................................................................................2

    B. SDCCC Is Immune From Liability As Its Security Policy Concerns The Public Welfare ......................................................................................................3

    C. SDCCC Is Exempt From Liability Under The Sherman Act Under The "State Action Doctrine" ........................................................................................4

    D. Plaintiff Has Failed To Assert Facts Sufficient To Meet The "Affecting Interstate Commerce" Requirement For Pleading Violations Of The Sherman Act..........................................................................................................8

    E. The Court Lacks Supplemental Subject Matter Jurisdiction ...............................10

    F. As a Public Entity, SDCCC Is Immune From Liability For Plaintiff's State Claims ..................................................................................................................11

        1. Interference With Contract And Interference With Prospective Business Advantage Are Common Law Torts Which, As A Matter Of Law, May Not Be Brought Against Public Entities ............................12

        2. SDCCC Is Immune From Liability Under The Unfair Practices Act........13

IV. CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Alpin v. Henson*,
    392 F. Supp. 813, (D. Md 1975) .................................................................................................. 4

*American Column & Lumber Co. v. United States*,
    257 U.S. 377 (1921) ..................................................................................................................... 9

*Balistreri v. Pacifica Police Dept*,
    901 F.2d 696 (9th Cir. 1988) ....................................................................................................... 2

*Bigelow v. Calumet & H. Min. Co.,*
    167 F. 721 (6th Cir. 1909) ........................................................................................................... 9

*Boone v. Redevelopment Agency of San Jose*,
    841 F.2d 866 (9th Cir. 1988) ....................................................................................................... 5

*E.W. Wiggins Airways, Inc. v. Massachusetts Port Authority*,
    362 F.2d 52 (1st Cir. Mass 1966) ................................................................................................ 5

*Eastern R. Presidents Conference v. Noeer Motor Freight, Inc.*,
    365 U.S. 127 (1961) ..................................................................................................................... 4

*Ford Wholesale Co. v. Fibreboard Paper Products Corp.*,
    493 F.2d 1204 (9th Cir. 1974) .................................................................................................... 9

*Highfield Water Co. v. Public Service Com.*,
    488 F. Supp. 1176 (D. Md 1980) ................................................................................................ 5

*Lynch v. Magnavox Co.*,
    94 F.2d 883 (9th Cir. 1938) ......................................................................................................... 8

*Miami International Realty Co. v. Mt. Crested Butte*,
    579 F. Supp. 68 (DC Colo 1984) ................................................................................................ 9

*Monarch Entertainment Bureau, Inc. v. New Jersey Highway Authority*,
    715 F. Supp. 1290 (D. NJ 1989) ................................................................................................. 6

*Moore v. United States*,
    85 F. 465 (8th Cir 1898) .............................................................................................................. 9

*National Waterworks Co. v. Kansas*,
    28 F. 921 (U.S. Court of Appeals 1886) ..................................................................................... 3

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ....................................................................................................... 2

*Orval Sheppard Real Estate Co. v. Valinda Freed & Associates, Inc.*,
    608 F. Supp. 354 (MD Ala 1985) ............................................................................................... 9

*Pueblo Aircraft Service, Inc. v. Pueblo*,
    679 F.2d 805 (10th Cir. 1982) .................................................................................................... 5

*Robertson v. Dean Witter Reynolds, Inc.*,
 749 F.2d 530 (9th Cir. 1984) ..................................................................................................2

*Robinson v. Suburban Brick Co.*,
 127 F. 804 (4th Cir 1904) ......................................................................................................9

*Shwarz v. United States*,
 234 F.3d 428 (9th Cir. 2000) .................................................................................................2

*Smilecare Dental Group v. Delta Dental Plan of Cal., Inc.*,
 88 F.3d 780 (9th Cir. 1996) ...................................................................................................2

*Sugar Institute, Inc. v. United States*,
 297 U.S. 553 (1936) ...............................................................................................................9

*Union Bridge Co. v. United States*,
 204 U.S. 364 (1907) ...............................................................................................................3

*United States v. Crescent Amusement Co.*,
 31 F. Supp. 730 (C.D. Tenn 1940) ................................................................................2, 3, 9

*United States v. Patten*,
 226 U.S. 525 (1913) ...............................................................................................................9

*United States v. Union P. R. Co.*,
 226 U.S. 61 (1912) .................................................................................................................9

*Vartan v. Harristown Dev. Corp.*,
 655 F. Supp. 430 (MD Pa 1987) ............................................................................................5

**State Cases**

*Austin v. Regents of University of California*,
 89 Cal. App. 3d 354 (1979) .................................................................................................12

*Cal. Med. Ass'n v. Regents of the Univ. of Cal.*,
 79 Cal. App. 4th 542 (2000) ................................................................................................13

*Colome v. State Athletic Com.*,
 47 Cal. App. 4th 1444 (1996) .........................................................................................6, 11

*Community Memorial Hospital v. County of Ventura*,
 50 Cal. App. 4th 199 (1996) ................................................................................................13

*Harshbarger v. City Colton*,
 197 Cal. App. 3d 1335 (1988) ........................................................................................11, 12

*Janis v. Cal. State Lottery Com.*,
 68 Cal. App. 4th 824 (1998) ................................................................................................13

*Michael J. v. Los Angeles County Dept. of Adoptions*,
 201 Cal. App. 3d 859 (1988) ........................................................................................11, 12

*Santa Monica Rent Control Bd. v. Bluvshtein,*
 230 Cal. App. 3d 308 (1991) ...............................................................................................13

*Tokeshi v. State of California*,
   217 Cal. App. 3d 999 (1990) ...........................................................................................11

*Trinkle v. Cal. State Lottery*,
   71 Cal. App. 4th 1198 (1999) ..............................................................................6, 11, 13

**Federal Statutes**

28 U.S.C. 1367.....................................................................................................................10

**State Statutes**

Business and Professions Code section 17000 ...............................................................2, 10

Business and Professions Code section 17506 ....................................................................13

Businsess and Professions Code section 17201....................................................................13

Government Code section 54950......................................................................................3, 12

Government Code section 811.2..................................................................................6, 11, 12

Government Code section 815........................................................................................11, 12

Government Code section 818...............................................................................................12

**Federal Rules**

Fed.R.Civ.P. 12...................................................................................................................2, 10

**Treatises**

San Diego Municipal Code section 61.2501......................................................................3, 7

U.S. Const., Art. III, § 2........................................................................................................10

**Other**

*Locker v. American Tobacco Co.*,
   121 A.D. 443 (N.Y. App. Div. 1907) ................................................................................9

*Metropolitan Opera Co. v. Hammerstein*,
   162 A.D. 691 (N.Y. App. Div. 1914) ................................................................................9

-iv-    Case No. 07-CV-2172 BEN (JMA)

DEFENDANT SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant SAN DIEGO CONVENTION CENTER CORPORATION, INC. ("Defendant" or "SDCCC") hereby respectfully submits its Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff UNITED NATIONAL MAINTENANCE, INC.'s ("Plaintiff" or "UNITED NATIONAL") Complaint.

## I.

## SUMMARY OF ARGUMENT

This is a straightforward motion, with only one appropriate answer. Dismissal. In fact, Plaintiff is attempting to achieve what it could not in state court. A state court judge denied Plaintiff's request for a Temporary Restraining Order. The Plaintiff opted to forego seeking a Preliminary Injunction in state court after being given a hearing date by the state court judge. The state court judge was inevitably preparing to sustain SDCCC's Demurrer but, before it could do so, Plaintiff dismissed the state court action and now seeks the very same remedy it was denied in state court and opted not to pursue further. Plaintiff is not attempting to take a second bite at the proverbial apple, which this Court should not condone or reward.

Plaintiff's entire Complaint fails to state claims for which relief can be granted. No cause of action can lie against a municipality such as SDCCC where it has simply exercised its right to control the operations of a public facility and functions affecting the public welfare, which is exactly what SDCCC's security policy seeks to accomplish.

Plaintiff's first four causes of action for violation of the Sherman Act fail to state claims for which relief can be granted because SDCCC's implementation of its security policy is exempt from the operation of the antitrust laws under the "state action doctrine."

Plaintiff's first four causes of action for violation of the Sherman Act also fail as Plaintiff has failed to allege sufficient facts showing SDCCC's security policy has a direct and substantial affect on interstate commerce.

Considering Plaintiff's federal claims fail, the Court lacks supplemental jurisdiction over the remaining three state claims.

But, even if Plaintiff's federal claims did not fail, Plaintiff's state claims still fail as SDCCC enjoys governmental immunity for the specific state claims raised in the Complaint - fifth, sixth, and

1  seventh causes of action for Interference with Contract, Interference with Prospective Business
2  Advantage, and violation of Business and Professions Code section 17000. SDCCC is a public
3  entity. No claim against a public entity may be maintained in the absence of a statute which clearly
4  imposes such liability. Plaintiff has raised three state claims, one based on statute (Unfair Practices
5  Act) and two based on common law (interference with contract and prospective economic
6  advantage). The statute does not impose liability on a public entity and common law claims are
7  barred as they are not founded upon a statute. Plaintiff cannot maintain a civil action against SDCCC
8  under either a statutory or common law theory.

9  SDCCC's Motion to Dismiss must be granted without leave to amend for no amendment can
10 cure these defects.

## II.

## AUTHORITY FOR MOTIONS TO DISMISS

13 The Federal Rules of Civil Procedure allow a defendant to seek dismissal of a Complaint
14 based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.
15 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim.
16 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering a Rule 12(b)(6) motion, the
17 Court assumes that all facts alleged in the Complaint are true. *Shwarz v. United States*, 234 F.3d
18 428, 435 (9th Cir. 2000). Dismissal is warranted when the plaintiff fails to allege sufficient facts
19 under a cognizable legal theory or there is a lack of a cognizable legal theory. *Navarro,* 250 F.3d at
20 732; *Balistreri v. Pacifica Police Dept*, 901 F.2d 696, 699 (9th Cir. 1988); s*ee also Smilecare*
21 *Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Robertson v.*
22 *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

## III.

### PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW AS SDCCC IS IMMUNE FROM LIABILITY FOR THE CLAIMS PLAINTIFF RAISES IN THE COMPLAINT

**A.  Background**

27 The City of San Diego is a municipal corporation operating under the authority and the laws
28 of the State of California. City Charter, Article I. The City Charter defines "City" to include

-2-    Case No. 07-CV-2172 BEN (JMA)

"corporations wholly owned by the City, such as …San Diego Convention Center Corporation. Charter, Art. 6, Div. 4, § 26.0402.

The City of San Diego created SDCCC as a non-profit public benefit corporation for the sole purpose of managing and operating the Convention Center for the public's benefit. Complaint, ¶¶ 5 and 6; SDCCC Articles of Incorporation attached as Exhibit A to Request for Judicial Notice. The City of San Diego is SDCCC's sole member and appoints the board of directors. *Id*. at p. 3. SDCCC is subject to California's open meetings law (the "Brown Act" contained in section 54950, *et seq.* of the Government Code) and other laws governing the conduct of business of a public governmental/municipal entity. All of SDCCC's decision makers must comply with the Political Reform Act and the San Diego Ethics Ordinance. SDCCC's operating budget is subsidized by the City of San Diego using taxpayer dollars. In all respects, SDCCC functions as a public entity performing a service for the City and the public. SDCCC is an extension of the City of San Diego, the local government.

The City of San Diego implemented the "San Diego Tourism Marketing District Procedural Ordinance," which establishes "a tourism marketing district to provide for tourism development" to accomplish "specific governmental goals." San Diego Municipal Code, §§ 61.2501(a) and (b) attached as Exhibit B to Request for Judicial Notice.

**B.      SDCCC Is Immune From Liability As Its Security Policy Concerns The Public Welfare**

**It is a well established rule that no cause of action can lie against a municipality who exercises its rights to control matters concerning the public welfare.** *See National Waterworks Co. v. Kansas*, 28 F. 921, 923 (U.S. Court of Appeals 1886) (no municipality can contract away it right of control when it comes to issues related to public welfare); *see also Union Bridge Co. v. United States*, 204 U.S. 364, 395 (1907). In *National Waterworks*, plaintiff contracted with the city to lay pipes below a public street. *National Waterworks,* 28 F., at 922. A year later, plaintiff was required to move the pipes so the city could dig a sewer in the same location where plaintiff had previously laid its pipes. *Id*. at 922. Plaintiff sued the city arguing that the city had no right to compel plaintiff to move the pipes as the city was under contract with plaintiff for the laying of the

pipes in their original position and location. *Id*. at 922. The city argued that the matter of sewerage is one affecting the public health and that it could not contract away the right to construct sewers in any part of the public streets it might deem necessary and wherever, in the city's judgment, the public interests demanded. *Id*. at 922-923.  The Court agreed with the city finding that "[s]ewerage is a matter unquestionably affecting largely the public health, and no municipality can make a contract divesting or abridging its full control over such matters." *Id*. at 923.

In the instant matter, Plaintiff was authorized previously to use its own employees to conduct cleaning services within the Convention Center.  But, SDCCC's permission for Plaintiff to do so was not unlimited or without restriction.  It was subject to SDCCC's right and obligation to put into effect policies and procedures which put the public welfare, here safety and security, ahead of Plaintiff's interests for making profits.  Protecting the Convention Center and its occupants is a matter directly affecting the public welfare and SDCCC should be permitted to carry out that protection as it deems necessary.

Accordingly, no cause of action can lie against SDCCC, a public entity and municipality, who has simply exercised its right to control matters concerning the public welfare.  Plaintiff's entire Complaint should, therefore, be dismissed.

**C.    SDCCC Is Exempt From Liability Under The Sherman Act Under The "State Action Doctrine"**

Plaintiff's first four causes of action assert violations of sections 1 and 2 of the Sherman Act, found at 15 U.S.C. sections 1 through 7.  SDCCC is exempt from liability from each of Plaintiff's first four causes of action for violation of the Sherman Act under the "state action doctrine."

"The [Sherman] Act forbids only those trade restraints and monopolization's that are created, or attempted, by acts of individuals or combinations of individuals or corporations." *Eastern R. Presidents Conference v. Noeer Motor Freight, Inc.*, 365 U.S. 127 (1961), reh den 365 U.S. 875 (1961). **"[W]here a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of Act can be made out."** *Id*. (emphasis added); *See also Alpin v. Henson*, 392 F. Supp 813, (D. Md 1975), aff'd 538 F.2d 85 (3rd Cir 1976), cert den 429 U.S. 960 (1976) and 522 F.2d 1033 (4th Cir. 1977), cert den 434 U.S. 823 (1977). **"Local**

-4-    Case No. 07-CV-2172 BEN (JMA)

1  **government activities are exempt from the operation of the antitrust laws if the legislature**
2  **contemplated the kind of action complained of and such action was pursuant to state policy to**
3  **displace competition with regulation or monopoly public service."** *Highfield Water Co. v. Public*
4  *Service Com.*, 488 F. Supp 1176 (D. Md 1980) (emphasis added); *see also Boone v. Redevelopment*
5  *Agency of San Jose*, 841 F.2d 866 (9th Cir. 1988), cert den 488 U.S. 965 (1988)  **"The government**
6  **need not point to a specific, detailed legislative authorization, but may rely on the authority**
7  **given in that area, and what was contemplated by the legislature."** *Highfield Water Co.,* 488 F.
8  Supp 1176 (emphasis added); s*ee also Boone,* 841 F.2d 866, cert den 488 U.S. 965 (1988)
9  (Exemption from antitrust laws under state action doctrine was applicable to city and redevelopment
10 agency, where city and redevelopment agency acted pursuant to state's clearly articulated and
11 affirmatively expressed policy under state's community redevelopment law.). *Vartan v. Harristown*
12 *Dev. Corp.*, 655 F. Supp 430 (MD Pa 1987) (Activities of municipality, redevelopment authority,
13 mayor and development corporation are exempt from liability under the Sherman Act under "state
14 action doctrine," where their activities in restricting private developer's acquisition and use of
15 property in redevelopment area are authorized under urban redevelopment law, which authorizes
16 municipalities to adopt and carry out redevelopment plans and contemplates actions to maintain
17 integrity of plans even if anticompetitive actions are involved); *Pueblo Aircraft Service, Inc. v.*
18 *Pueblo*, 679 F.2d 805 (10th Cir. 1982), cert den 459 U.S. 1126 (1983) (City is immune from federal
19 antitrust laws where city airport is operated for benefit of general public and not for particular
20 advantage of inhabitants of city, and state legislature expressly declares operation of airport facilities
21 to be public governmental function, exercised for public purpose and matters of public necessity.);
22 *E.W. Wiggins Airways, Inc. v. Massachusetts Port Authority*, 362 F.2d 52 (1st Cir. Mass 1966), cert
23 den 385 U.S. 947 (1966) (No antitrust liability arises where port authority, purely public corporation,
24 in exercise of valid governmental function, awarded exclusive franchise to party to provide "fixed
25 base operations" at airport (providing facilities, fuel, equipment, supplies and services at airport),
26 even though such action by port authority involved refusal to renew plaintiff's lease and resulted in
27 plaintiff being forced to sell its business at airport to new operator at low figure.).
28

1    The same issue presented in this case was addressed in *Monarch Entertainment Bureau, Inc.
2 v. New Jersey Highway Authority* an the Court found that the Authority was immune from liability.
3 *Monarch Entertainment Bureau, Inc. v. New Jersey Highway Authority*, 715 F. Supp 1290 (D. NJ
4 1989), aff'd without op 893 F.2d 1331 (3d Cir.1989). In *Monarch Entertainment*, the authority
5 allegedly monopolized the booking of an arts center it owned and operated through the use of an
6 exclusive booking agent. *Id.* at 1292-1293. An entertainment promoter sued the authority asserting
7 antitrust claims. *Id.* The Court found that the authority enjoyed immunity since exclusive
8 management contracts for the operation of the arts center were a foreseeable result of state policy
9 explicitly authorizing authority's continued operation of facility. *Id.*

10   The same is true in the instant matter. The State has authorized municipalities, such as the
11 City of San Diego, to conduct business for the benefit of the people. The City, a municipality and
12 local government, through SDCCC, operates the Convention Center pursuant to that state authority.
13 The Convention Center is a publicly owned facility as its budget is derived from taxpayer's dollars
14 and SDCCC's operation and management of the Convention Center is a governmental activity in
15 which SDCCC attends to the people's business. Plaintiff alleges that SDCCC is monopolizing the
16 janitorial services at the Convention Center by requiring the actual services be performed by SDCCC
17 employees. Putting aside the fact that the basis for SDCCC's policy is not to monopolize the market
18 but rather to ensure the safe use of the Convention Center, even assuming SDCCC were attempting
19 to monopolize the market, SDCCC enjoys immunity since exclusive services contracts for the
20 operation of the Convention Center is a foreseeable result of State and local governmental policy
21 explicitly authorizing SDCCC's operation of the Convention Center.

22   Moreover, it is well settled under California's Tort Claims Act that a "public entity" is not
23 liable for tortuous injury unless the liability is specifically imposed by statute or the Constitution
24 itself. *See e.g. Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1202 (1999); *see also Colome v.
25 State Athletic Com.*, 47 Cal. App. 4th 1444 (1996). The term "public entity" under Government Code
26 section 811.2 "includes . . . a city . . . and any other political subdivision <u>or public corporation</u> in the
27 State." Cal. Gov. Code, § 811.2. SDCCC, a public corporation, is, therefore, protected. The State's
28 Tort Claims Act found at California Government Code sections 810-996.6, immunizes SDCCC from

liability for the claims alleged in this action. By enacting the Tort Claims Act to protect public entities such as SDCCC, the State legislature intended SDCCC actions taken in the operation and management of the Convention Center to be covered. The immunity provided to SDCCC under the Tort Claims Act is, therefore, sufficient for purposes of the Sherman Act as well. To find otherwise would defeat the purpose of the State's desire to ensure its local governments and municipalities, such as the City and SDCCC, are afforded appropriate protection in carrying out their obligations to serve the public.

This is particularly true in this case light of the nation's concerns to ensure security of high-risk locations, such as the Convention Center. "Protecting our communities from [acts of terrorism] is the highest priority of the Schwarzenegger Administration." State of California Homeland Security Strategy 2007, Message from the Director. California's government has established the "Governor's Office of Homeland Security" ("OHS") for the prevention of and preparation for a potential terrorist event because, among other reasons, "California continues to be a high risk state with a wide variety of targets attractive to both domestic and international terrorist organizations." State of California Homeland Security Strategy 2007, Introduction, page 1. One of the State's strategic objectives is to "reduce California's vulnerability to terrorism." State of California Homeland Security Strategy 2007, Introduction, page 2. In this regard, the Department of Homeland Security encourages businesses to take steps to do their part in protecting against security breaches. This is exactly what SDCCC has done in this instance.

The State of California has charged each local government with the challenge of encouraging and promoting travel and tourism within the State. With this in mind, The City of San Diego implemented the "San Diego Tourism Marketing District Procedural Ordinance," which establishes "a tourism marketing district to provide for tourism development" to accomplish "specific governmental goals." *See* San Diego Municipal Code, §§ 61.2501(a) and (b) attached as Exhibit B to Request for Judicial Notice. To carry out the governmental goals, The City of San Diego created SDCCC as a non-profit public corporation for the sole purpose of managing and operating the Convention Center for the public's benefit. Complaint, ¶¶ 5 and 6; *See* SDCCC Articles of Incorporation attached as Exhibit A to Request for Judicial Notice. In light of the current state of

affairs of our country, which is at war with terrorism, and the State's and City's objective to protect the people in its State, it is foreseeable that SDCCC, who has the authority and the responsibility to establish business policies related to the Convention Center operations and the Licensees' use of the facility, would implement a policy designed to protect the security of the Convention Center and those within it. The most vulnerable area is the cleaning services trades who typically employ temporary workers who have not been properly screened. Complaint ¶56.

Plaintiff even admits that the San Diego Convention Center is the "11th largest convention center in the United States and is viewed by many in the trade show industry as one of the top five convention centers in the United States. Complaint, ¶10. Plaintiff further admits that the San Diego Convention Center "is one of the top five trade show venues in the United States" which typically requires "at least five years or even 15 years" advance contracts to secure a preferable date. Complaint ¶12. Plaintiff essentially admits that the Convention Center is a high risk facility, in need of protection.

The State of California contemplated that action be taken to protect and secure the people within the State, as well as buildings and high risk locations, such as the Convention Center. SDCCC's policy of requiring cleaning services to use only SDCCC approved employees is action taken consistent with the State's objectives.

Because SDCCC's security policy is a foreseeable result of its operation and management of the Convention Center, not to mention being in line with the State's homeland security plan and objectives, SDCCC is immune from liability and, therefore, Plaintiff has failed to state facts sufficient to constitute a cause of action against SDCCC for antitrust violations.

**D.    Plaintiff Has Failed To Assert Facts Sufficient To Meet The "Affecting Interstate Commerce" Requirement For Pleading Violations Of The Sherman Act**

To assert a claim for violation of the Sherman Act, Plaintiff must allege sufficient facts to support the key element of having a direct and substantial affect on interstate commerce. Plaintiff failed to do so.

The Sherman Act applies only to interstate or foreign commerce. *Lynch v. Magnavox Co.*, 94 F.2d 883 (9th Cir. 1938); *United States v. Crescent Amusement Co.*, 31 F. Supp 730 (C.D. Tenn

1940); *Locker v. American Tobacco Co.*, 121 A.D. 443 (N.Y. App. Div. 1907); *Metropolitan Opera Co. v. Hammerstein*, 162 A.D. 691 (N.Y. App. Div. 1914). It does "not apply to restraints or monopolies as such, but only to those which directly and immediately, or those which necessarily, affect commerce among the states or with foreign nations." *Bigelow v. Calumet & H. Min. Co.,* 167 F. 721 (6th Cir. 1909); *United States v. Union P. R. Co.*, 226 U.S. 61 (1912); *United States v. Colgate & Co.*, 250 U.S. 300 (1919); *American Column & Lumber Co. v. United States*, 257 U.S. 377 (1921); *Sugar Institute, Inc. v. United States*, 297 U.S. 553 (1936). **It also does not apply where the trade or commerce affected is purely intrastate.** *United States v. Patten*, 226 U.S. 525 (1913) (emphasis added); *Robinson v. Suburban Brick Co.*, 127 F. 804 (4th Cir 1904). Further, **interstate commerce is not affected by contract which is to be wholly performed within state**. *Moore v. United States*, 85 F. 465 (8th Cir 1898).

As such, Plaintiff is required to show that local activity has a substantial affect on interstate commerce. *Ford Wholesale Co. v. Fibreboard Paper Products Corp.*, 493 F.2d 1204 (9th Cir. 1974); *Orval Sheppard Real Estate Co. v. Valinda Freed & Associates, Inc.*, 608 F. Supp. 354 (MD Ala 1985). In fact, to defeat a motion to dismiss, Plaintiff "must make factual allegations supporting presence of interstate commerce, existence of substantial matters affecting interstate commerce, and requisite nexus between challenged activities and effect on relevant channel of interstate commerce." *Miami International Realty Co. v. Mt. Crested Butte*, 579 F. Supp 68 (DC Colo 1984).

Plaintiff has failed to allege sufficient facts to defeat SDCCC's motion to dismiss. Plaintiff has simply devoted one paragraph to interstate commerce consisting of conclusory statements which fail to allege how SDCCC's security policy directly and substantially affects interstate commerce. Specifically, Plaintiff has failed to allege any facts showing how SDCCC's security policy requiring the use of pre-screened, long term employees for cleaning services, directly and substantially affects interstate commerce. In fact, Plaintiff has failed to allege how interstate commerce is affected at all by cleaning contracts which are to be wholly performed within the State of California.

Simply alleging SDCCC's facilities are used by out of state organizations does not show that SDCCC's security policy has any impact on interstate commerce, let alone that is has a substantial impact on interstate commerce. Likewise, SDCCC's security policy has no relation whatsoever to

1  the fact that attendees of trade shows might travel to San Diego.  Finally, the fact that Plaintiff has
2  national contracts with others to perform cleaning services is not sufficient to show how using
3  SDCCC personnel at the Convention Center to perform cleaning services affects interstate
4  commerce in such a substantial and direct way so as warrant antitrust violation causes of action.
5        Considering Plaintiff has failed to plead facts sufficient to show SDCCC's security policy,
6  which is wholly performed within the State, has a direct and substantial affect on interstate
7  commerce, Plaintiff's first four causes of action for violation of the Sherman Act should be
8  dismissed.

### E. The Court Lacks Supplemental Subject Matter Jurisdiction

10  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) allows a defendant
11  to seek dismissal of a Complaint based on a lack of subject matter jurisdiction over plaintiff's
12  claims.  Fed.R.Civ.P. 12(b)(1).  This is because federal courts are courts of limited jurisdiction, and
13  they must dismiss claims over which they have no subject matter jurisdiction, that is, claims not
14  "arising under" federal law.  U.S. Const., Art. III, § 2.  Federal courts may exercise discretion to hear
15  state claims so long as the state claims arise under the same operative facts as the federal claims,
16  thereby asserting supplemental subject matter jurisdiction over the state claims.  28 U.S.C. 1367(a).
17  However, pursuant to 28 U.S.C. 1367(c), the Court "may decline to exercise supplemental
18  jurisdiction over a claim … if …(3) the district court has dismissed all claims over which it has
19  original jurisdiction…"
20  In the present case, considering Plaintiff's federal claims for violation of the Sherman Act
21  fail as a matter of law, the Court lacks supplemental subject matter jurisdiction to hear Plaintiff's
22  state claims.  Accordingly, the Court should dismiss Plaintiff's fifth, sixth, and seventh causes of
23  action for Interference with Contract, Interference with Prospective Business Advantage, and
24  violation of Business and Professions Code section 17000, respectively, for lack of supplemental
25  subject matter jurisdiction.

### F. As a Public Entity, SDCCC Is Immune From Liability For Plaintiff's State Claims

Even assuming, *arguendo*, that Plaintiff has asserted valid federal claims, Plaintiff's fifth, sixth and seventh causes of action for Interference with Contract, Interference with Prospective Business Advantage, and Violation of Business and Professions Code section 17000, are barred by the doctrine of governmental immunity and, as such, should be dismissed for failure to state claims for which relief can be granted. Each of Plaintiff's fifth, sixth and seventh causes of action have their basis in state law, either by state statute or state common law.

In 1963, the California Legislature enacted several interrelated laws known as the Tort Claims Act. *Tokeshi v. State of California*, 217 Cal. App. 3d 999, 1004 (1990); Gov. Code, §§ 810-996.6. It is well settled under the Tort Claims Act that a "public entity" is not liable for tortuous injury unless the liability is specifically imposed by statute or the Constitution itself. *See e.g. Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1202 (1999); *see also Colome v. State Athletic Com.*, 47 Cal. App. 4th 1444 (1996). To implement this concept, Government Code section 815, subdivision (a) expressly states "**except as otherwise provided by statute… [a] public entity is <u>not</u> liable** for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code, § 815 subd. (a) (emphasis added). "The statute amounts to a legislative declaration that governmental immunity from suit is the rule and liability the exception. Thus, **in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable**." *Trinkle v. California State Lottery*, 71 Cal. App. 4th 1198, 1202 (1999); Cal. Gov. Code, §§ 811.2 and 815, subd. (a). Therefore, **common law claims may not, as a matter of law, be brought against public entities**. Cal. Gov. Code, § 815, subd. (a); *Harshbarger v. City Colton*, 197 Cal. App. 3d 1335, 1339 (1988) ("Government Code section 815 abolished all common law or judicially declared liability for public entities."); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App. 3d 859, 866 (1988) (claims against public entities must be based on statutes, not common law tort theories of liability).

1    The term "public entity" is defined in the Government Code.  Public entity under

2  Government Code section 811.2 "includes . . . a city . . . and any other political subdivision <u>or public

3  corporation</u> in the State."  Cal. Gov. Code, § 811.2.

4    SDCCC is a public corporation, established by the City of San Diego. *See* SDCCC Articles

5  of Incorporation attached as Exhibit A to Request for Judicial Notice.  The City of San Diego is

6  SDCCC's sole member and appoints the board of directors.  *Id*. at p. 3.  SDCCC is subject to

7  California's open meetings law (the "Brown Act" contained in section 54950, *et seq.* of the

8  Government Code) and other laws governing the conduct of business of a public entity.  All of

9  SDCCC's decision makers must comply with the Political Reform Act and the San Diego Ethics

10  Ordinance.  In all respects, SDCCC functions as a public entity performing a service for the City and

11  the public.  As a public corporation, SDCCC's sole purpose is to manage, market and operate the

12  San Diego Convention Center for the benefit of the City and the general public.

13    As a public entity, SDCCC is statutorily immune from liability (Gov. Code, § 815, subd. (a))

14  and punitive damages (Gov. Code, § 818 ["public entity is not liable for damages awarded under

15  section 3294 of the Civil Code]; *Austin v. Regents of University of California*, 89 Cal. App. 3d 354,

16  358 (1979) [affirming trial court's decision to strike punitive damages claim against public entity]).

17    As discussed below, Plaintiff's fifth, sixth and seventh causes of action are barred as SDCCC

18  in immune from liability as a public entity.

19    **1.   Interference With Contract And Interference With Prospective Business Advantage Are Common Law Torts Which, As A Matter Of Law, May Not Be Brought Against Public Entities**

21  Plaintiff's fifth and sixth causes of action for Interference with Contract and Interference

22  with Prospective Business Advantage are not founded upon any statute, but rather common law

23  principles.  As noted above, the Tort Claims Act, as well as relevant case law, provide that all public

24  entities are immune from liability **unless** the Legislature expressly provides for such liability.  Cal.

25  Gov. Code, §§ 811.2 and 815, subd. (a). Plaintiff's common law claims fail as a matter of law as a

26  public corporation may not be sued on common law theories of liability.  Cal. Gov. Code § 815,

27  subd. (a); *Harshbarger*, *supra*, 197 Cal. App. 3d at 1339 ("Government Code section 815 abolished

28  all common law or judicially declared liability for public entities."); *Michael J.*, *supra*, 201 Cal.

1  App. 3d 859, 866 (1988) (claims against public entities must be based on statutes, not common law

2  tort theories of liability). Accordingly, Plaintiff's fifth and sixth causes of action for Interference

3  with Contract and Interference with Prospective Business Advantage are barred by the doctrine of

4  governmental immunity.

5  **2.     SDCCC Is Immune From Liability Under The Unfair Practices Act**

6  Plaintiff's seventh cause of action is for violation of Business and Professions Code section

7  17000, which is a statute otherwise known as the Unfair Practices Act or the Unfair Trade Practices

8  Act. Nowhere in the statute is there a provision imposing governmental liability for violations of the

9  Act. The Unfair Practices Act applies to specific "persons" and the law is clear that a "public entity"

10 is not a "person" within the meaning of the Act and, therefore, cannot be sued under the Act. *See*

11 Cal. Bus. & Prof. Code §§ 17201 and 17506; *see also Cal. Med. Ass'n v. Regents of the Univ. of*

12 *Cal.,* 79 Cal. App. 4th 542, 551 (2000); *Janis v. Cal. State Lottery Com.,* 68 Cal. App. 4th 824, 831

13 (1998), *citing Community Memorial Hospital v. County of Ventura*, 50 Cal. App. 4th 199, 209

14 (1996); and *Santa Monica Rent Control Bd. v. Bluvshtein,* 230 Cal. App. 3d 308 (1991). Courts

15 have held that public entities cannot be sued under this Act even if they engage in commercial

16 activity. *See e.g., Trinkle*, *supra*, 71 Cal. App. 4th 1198, 1202. Thus, SDCCC is protected by

17 governmental immunity.

18 Because there is no statute making public entities liable under the Unfair Practices Act, the

19 general rule of governmental immunity must prevail and Plaintiff's seventh cause of action fails as a

20 matter of law.

21 / / / / /

22 / / / / /

23 / / / / /

24 / / / / /

25 / / / / /

26 / / / / /

27 / / / / /

28 / / / / /

1 | **IV.**
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

Given the foregoing, SDCCC respectfully requests that the Court dismiss Plaintiff's entire Complaint for failure to state a claim and lack of supplemental subject matter jurisdiction.

Dated:   December 5, 2007              **WILSON PETTY KOSMO & TURNER LLP**

                                        By:      /SOTERA L. ANDERSON
                                             REGINA A. PETTY
                                             SOTERA L. ANDERSON

                                             Attorneys for Defendant
                                             SAN DIEGO CONVENTION CENTER
                                             CORPORATION

-15-                                           Case No. 07-CV-2172 BEN (JMA)
DEFENDANT SAN DIEGO CONVENTION CENTER CORPORATION, INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT