WILSON PETTY KOSMO & TURNER LLP
REGINA A. PETTY (106163)
SOTERA L. ANDERSON (211025)
550 West C Street, Suite 1050
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
**E-mail:** rpetty@wpkt.com
**E-mail:** sanderson@wpkt.com

Attorneys for Defendant
SAN DIEGO CONVENTION CENTER
CORPORATION, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE INC, A NEVADA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., A CALIFORNIA CORPORATION,<br><br>Defendant. | Case No. 07-CV-2172 BEN (JMA)<br><br>**DECLARATION OF CAROL WALLACE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Complaint Filed: November 13, 2007<br><br>Date: January 7, 2008<br>Time: 10:30 a.m.<br>Dept.: 3<br>Judge: Hon. Roger T. Benitez<br>Trial Date: Not Set |

I, Carol Wallace, declare as follows:

1. I am the President and Chief Executive Officer of the San Diego Convention Center Corporation (SDCCC), the Defendant in this matter. I have personal knowledge of the statements herein and know them to be true and correct and, if called, I would and could competently testify to the same.

2. Since its opening in 1989, SDCCC has managed, marketed and operated the San Diego Convention Center ("Convention Center") on behalf of the City of San Diego ("City") and the San Diego Unified Port District. SDCCC is a non-profit public benefit corporation created by the

-1-                                                          Case No. 07-CV-2172 BEN (JMA)
DECLARATION OF CAROL WALLACE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1. City for the sole purpose of operating the Convention Center. The City is SDCCC's sole member and appoints the board of directors. The corporate by-laws provide that SDCCC has fiscal accountability to the City. The construction of the Convention Center was financed with public funds and approximately $4 million of SDCCC's operating revenue comes from a budget subsidy allocated from the City's general fund. SDCCC is subject to California's open meeting laws (the "Brown Act") and other laws governing the conduct of business of a public entity. All of SDCCC's directors and senior executives must comply with the state's Political Reform Act and the City of San Diego's Ethics Ordinance. The Convention Center is specifically designated as one of the municipal sites that is covered by the "living wage" ordinance adopted by the San Diego City Council.

3. The Convention Center is one of the top meeting facilities in the world. Nearly one million out-of-town and local guests currently attend business or recreational events in the building each year. SDCCC licenses use of the Convention Center to individuals and entities (Licensees) as a venue for public and private events. As the operator of the Convention Center, SDCCC has the authority and the responsibility to establish business policies related to Convention Center operations and the Licensees' use of the facility.

4. The protection of the public, as well as of SDCCC's personnel and property, is one of SDCCC's primary responsibilities. Public facilities where large numbers of people congregate are identified as priority sites for activation of a higher level of security at the local, state and federal levels of government. SDCCC's responsibility to provide a safe and secure public facility outweighs vendor operational preferences.

5. For several years, SDCCC's management has been engaged in an evaluation process to upgrade security and safety at the facility through the development and implementation of significant policy and operational changes to its overall security program. These efforts have been undertaken with the assistance of private and governmental consultants and in cooperation with law enforcement. Brad Gessner, the Convention Center's general manager, and Charles ("Chuck") Gutensohn, the security manager, have direct responsibility for planning the security and safety strategy and integrating the strategy into SDCCC's operations. SDCCC has revised many policies,

1 restructured Guest Services and Asset Protection, improved operational and monitoring procedures, expanded training on security matters and utilized employee incentive programs to instill a culture of security at the Convention Center. SDCCC is unable to do everything at once. Potential measures to reduce security risks and prioritization for implementation are evaluated in terms of many factors including availability, affordability and feasibility of application to the Convention Center's operation.

6. Uncontrolled access is recognized as one of the major vulnerabilities of public buildings. As a result, SDCCC has undertaken various corrective steps related to controlling access to the building by all employees, contractors and vendors. One of the first changes was to establish a limited number of employee and vendor entrances. A number of considerations relating to security later resulted in the determination to adopt a policy that required use of SDCCC staff for all cleaning in the building. SDCCC's current policy is consistent with the practices of many public meeting facilities, and is less stringent than some which retain absolute exclusivity for all cleaning services. For example, the Boston Convention Center in Massachusetts does not permit vendors to provide cleaning services at its facility.

7. Although there may be security advantages from doing so, it was never my intention to bar Plaintiff or other cleaning vendors from doing business at the Convention Center. SDCCC's policy requiring the use of SDCCC employees to perform the actual cleaning services does not prohibit a third-party vendor from obtaining cleaning service contracts, nor does it eliminate the Licensee's vendor options for cleaning services. What the policy does do is substantially reduce security vulnerability. It also provides other smaller cleaning vendors a greater opportunity to compete for business because the actual cleaning services will be performed by SDCCC's highly trained staff. In addition, the policy promotes contractor compliance with the City's "living wage" ordinance.

8. Since the policy's July 1, 2007 effective date, Plaintiff and SDCCC have entered into seven agreements whereby SDCCC provides all of the actual cleaning services and necessary supplies for show contracts held by Plaintiff. Plaintiff receives 50% of the revenue from the show contract even though Plaintiff has minimal overhead expenses because it no longer has responsibility

for the payroll for cleaning workers. SDCCC cleaning services workers are paid in accordance with the City's "living wage" ordinance. Despite the parties reaching an agreement by which both SDCCC's security concerns are met and Plaintiff's profit margins are increased, Plaintiff nonetheless filed this second lawsuit after dropping the same lawsuit filed in the San Diego Superior Court in August 2007.

9. SDCCC's policy is a valid and reasonable exercise of its authority to establish measures to effectively protect a major public facility. Abrogation of SDCCC's security policy would seriously and negatively impair SDCCC's security program. SDCCC cannot yield control over security matters to vendor choice. SDCCC's responsibility to provide a safe and secure public facility outweighs Plaintiff's business preferences.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of December, 2007, at San Diego California.

By: _____
CAROL WALLACE

DECLARATION OF CAROL WALLACE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION