1   WILSON PETTY KOSMO & TURNER LLP
    REGINA A. PETTY (106163)
2   SOTERA L. ANDERSON (211025)
    550 West C Street, Suite 1050
3   San Diego, California 92101
    Telephone: (619) 236-9600
4   Facsimile: (619) 236-9669
    **E-mail:** rpetty@wpkt.com
5   **E-mail:** sanderson@wpkt.com

6   Attorneys for Defendant
    SAN DIEGO CONVENTION CENTER
7   CORPORATION, INC.

8

9                   **UNITED STATES DISTRICT COURT**

10                 **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  UNITED NATIONAL MAINTENANCE INC,      Case No. 07-CV-2172 BEN (JMA)
    A NEVADA CORPORATION,
13                                          **DEFENDANT'S EVIDENTIARY**
                                            **OBJECTIONS TO EVIDENCE**
14              Plaintiff,                  **SUBMITTED BY PLAINTIFF IN**
                                            **SUPPORT OF PLAINTIFF'S MOTION**
15          v.                              **FOR PRELIMINARY INJUNCTION**

16  SAN DIEGO CONVENTION CENTER            Complaint Filed: November 13, 2007
    CORPORATION, INC., A CALIFORNIA
17  CORPORATION,                           Date:        January 7, 1008
                                            Time:        10:30 a.m.
18              Defendant.                  Dept.:       3
                                            Judge:       Hon. Roger T. Benitez
19                                          Trial Date:  Not Set

20

21          **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

22          PLEASE TAKE NOTICE Defendant SAN DIEGO CONVENTION CENTER

23  CORPORATION, INC. (hereinafter "Defendant" or "SDCCC") hereby objects and moves to strike

24  the following evidence submitted by Plaintiff in support of Plaintiff's Motion for Preliminary

25  Injunction. Additionally, considering the potential devastating affect the Court's decision could

26  have on the public's safety, SDCCC requests the Court rule on each objection before issuing an

27  opinion in this matter.

28  / / /

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**A.    Evidentiary Objections to Exhibit A  - Letter dated June 27, 2007, from Pat Dwyer to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit A, letter dated June 27, 2007, from Pay Dwyer to Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**B.    Evidentiary Objections to Exhibit B - Letter dated June 22, 2007, from Mary Kay Sustek to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit B, letter dated June 22, 2007, from Mary Kay Sustek to Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**C.    Evidentiary Objections to Exhibit C - Letter dated June 14, 2007, from Ty Bobit to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit C, letter dated June 14, 2007 from Ty Bobit to Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**D.    Evidentiary Objections to Exhibit D - Letter dated July 20, 2007, from Mary Beth Rebedeau to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit D, letter dated July 20, 2007 from Mary Beth Rebedeau to Brad Glessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1   Evidence Rule (Fed. R. Evid. 1001 through 1008); Incomplete Document; and, Lacks Authentication

2   (Fed. R. Evid. 901).

3       **E.      Evidentiary Objections to Exhibit E - Letter dated July 26, 2007, from B.J.
            Enright to Brad Gessner**

4

5       SDCCC objects to Plaintiff's Exhibit E, letter dated July 26, 2007 from B.J. Enright to Brad

6   Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid.

7   801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls

8   for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best

9   Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

10      **F.      Evidentiary Objections to Exhibit F - Convention Services Agreement dated
            August 8, 2001**

11

12      SDCCC objects to Plaintiff's Exhibit F, Convention Services Agreement dated August 8,

13  2001 on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801);

14  Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best

15  Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

16      **G.      Evidentiary Objections to Exhibit G - Letter dated June 21, 2005, to Mark
            Epstein**

17

18      SDCCC objects to Plaintiff's Exhibit G, letter dated June 21, 2005, to Mark Epstein on the

19  following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801);  Misstates

20  Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best Evidence Rule

21  (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

22      **H.      Evidentiary Objections to Exhibit H - Letter dated September 21, 2007, from
            Aaron Bludworth to Brad Gessner**

23

24      SDCCC objects to Plaintiff's Exhibit I, letter dated September 21, 2007, from Aaron

25  Bludworth to Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402);

26  Hearsay(Fed. R. Evid. 801); Misstates Evidence; Legal Conclusion; Improper Lay Opinion (Fed. R.

27  Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best

28  Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.    Evidentiary Objections to Exhibit I - Letter dated June 8, 2007, from Martin Cymal to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit I, letter dated June 8, 2007, from Martin Cymal to Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay(Fed. R. Evid. 801); Misstates Evidence; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**J.    Evidentiary Objections to Exhibit 3 - Selected Portions of Hilton San Diego Convention Center Website**

SDCCC objects to Plaintiff's Exhibit 3, selected portions of Hilton San Diego Convention Center Website dated 11/13/2007 from http://www1.hilton.com/en_US/hi/hotel/SANCCHH - Hilton-San-Diego-Convention-Cent… on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay(Fed. R. Evid. 801); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); and, Lacks Authentication (Fed. R. Evid. 901).

**K.    Evidentiary Objections to Exhibit 4 - Declaration of Mark Epstein**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 1. | I am the President of Champion Exposition Services, LLC ("Champion"), and I am authorized to make this declaration on Champion's behalf.  All facts stated herein are true and are of my own personal knowledge. | Relevance (Fed. R. Evid. 401 and 402) |
| 2. | I have worked with Champion in excess of 20 years, and I am currently Champion's President.  Champion is a general contractor for trade shows.  As a general contractor, Champion signs contracts directly with trade associations to manage and organize their trade shows held at venues nationwide, including those held at the San Diego Convention Center ("Convention Facility").  Champion's contracts with trade associations generally run for three years or more. | Relevance (Fed. R. Evid. 401 and 402) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 3. | As a general contractor, Champion is responsible for hiring sub-contractors necessary for handling the logistical and service-oriented challenges needed to ensure the smooth operation of the trade show. These sub-contractors may include providers of the following services: cleaning, janitorial, maintenance and related services (defined hereinafter as "Trade Show Cleaning Services"), electrical, and installation and dismantling ("I&D"). The employees of the selected subcontractors enter the trade show venues to perform services for which they have contracted. This is the standard procedure nationwide. | Relevance (Fed. R. Evid. 401 and 402); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 4. | United National Maintenance, Inc. ("United") is engaged in the business of providing Trade Show Cleaning Services to trade shows. Champion is a consumer and a direct purchaser of Trade Show Cleaning Services and has contracted with United to provide these services at venues nationwide, including SDCC, for more than 10 years. Trade Show Cleaning Services is a unique product that is very important to Champion because we, as general contractors, need to make it available in order to meet our responsibilities for cleaning individual exhibit space and the common areas of a show. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 5. | Trade Show Cleaning Services are not traditional janitorial services and United is not a traditional janitorial services firm. While a janitorial firm hired to clean office space in a commercial building can expect each office to be the same size and in similar condition everyday, each trade show is unique in size, configurations and its cleaning needs. Based on the scope and size of a particular trade show, a provider of Trade Show Cleaning Services must constantly react to ever changing demands that involve the amount and location of manpower and equipment at any given moment. A provider of Trade Show Cleaning Services must ultimately have a tremendous amount of logistical expertise and must anticipate needs proactively based on the past experience of the Trade Show Cleaning Services management. No two trade shows are the same from the perspective of Trade Show Cleaning Services. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 6. | Due to the expertise and specialized knowledge required, I would not consider even an extremely price competitive bid from a traditional janitorial services firm to provide Trade Show Cleaning Services. Such a firm simply cannot efficiently and effectively provide the required level of service. If these services could be provided by a traditional janitorial services firm, there would be many other competitors to United and SDCC and Champion would not sub-contract for these services but would rather provide them itself. For these reasons, Champion and the trade show industry recognize that these are specialized services that cannot be substituted for traditional janitorial services. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 7. | Because of its weather, attractions and facility size, San Diego is a very desirable location for trade shows. The Convention Facility offers over 600,000 square feet of exhibit space. In fact, I believe the Convention Facility it is one of the top five trade show venues in the nation. There is no other comparable venue in or around San Diego capable of hosting large trade shows. The next largest venues in and around the San Diego area are hotels, and they are capable of handling anywhere from 5 to a maximum of 100 exhibit booths. By comparison, the SPIE Annual Meeting Optics & Photonics trade show held at the Convention Center (a relatively small show by Convention Center standards) involved 225 exhibit booths. | No objection. |
| 8. | Because San Diego is such a desirable market, a trade association usually must sign a contract with the SDCC at least five years in advance. In order to secure a preferred date, a trade show association may even have to contract with SDCC 10 to 15 years in advance. | Relevance (Fed. R. Evid. 401 and 402); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 9. | Due to the long-term nature of these contracts, when Champion contracted with SPIE to manage the Annual Meeting Optics & Photonics trade show held at the Convention Facility from August 28-30, 2007, neither Champion nor SPIE knew anything about SDCC's security policy, which was only announced in July of 2007. | Relevance (Fed. R. Evid. 401 and 402) |
| 10. | Historically, United and SDCC have aggressively competed for the business of Trade Show Cleaning Services in San Diego. Until recently, Champion has always had the absolute right to choose the company it wants to perform Trade Show Cleaning Services for trade shows held at the Convention Facility. As a result of its superior price and service, Champion chose United to be its Trade Show Cleaning services provider. | Relevance (Fed. R. Evid. 401 and 402); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

**DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 11. | Not long ago, Brad Gessner, the general manager of the Convention Facility, called me directly in an attempt to solicit Champion's Trade Show Cleaning Services business. The phone call was unsolicited. I told Mr. Gessner that Champion was satisfied with the service and price it got from United, that it had a long-term written contract with United whereby United was to perform all Trade Show Cleaning Services and that Champion would honor its written contract with United. Upset with my response, the conversation became contentious and Mr. Gessner told me that "I'd be hearing from him again." | Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Prejudice (Fed. R. Evid. 403); Argumentative |
| 12. | A matter of months after I rejected SDCC's solicitation, SDCC notified Champion in a letter of its new security policy stating that, effective July 1, 2007, Champion would no longer have the right to select which company performed the Trade Show Cleaning Services for trade shows at the Convention Facility. Instead, SDCC notified Champion that only SDCC employees would be permitted to perform the Trade Show Cleaning Services for trade shows at the Convention Facility and SDCC proposed terms for providing these services that were substantially inferior to the terms of Champions contract with United. | Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801);Misstates Evidence; Improper Lay Opinion (Fed. R. Evid. 701 and 704) |
| 14. | Security at the Convention Facility (and all convention facilities) is very important to me and Champion. Should anything happen at the Convention Facility it would reflect poorly on Champion and on the industry as a whole. I have a vested interest in the security of the Convention Facility. | No objection. |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 15. | As a long-term participant in the trade show industry, SDCC's policy which singles out Trade Show Cleaning Service employees for security concerns makes no sense. Trade Show Cleaning Service employees constitute a very small percentage of the outside labor that is given access to the Convention Facility. It makes no sense that United's employees should be denied access to the Convention Facility when employees for providers of electrical contracting, I&D, floral contractors, photographers, modeling agencies or exhibitors are not subject to any security protocols or procedures. I don't see how replacing United employees with SDCC employees will do anything to improve security. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 16. | United's employees are a low security risk because they have been working at the Facility for a long time. I am not aware of any security incidents caused by United's employees. By contrast, I&D employees are a huge security black hole. I&D companies tend to be numerous and small. There may be employees of a dozen or more I&D companies working in the Convention Facility at any given time. These employees of these companies go in and out of business with regularity. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 17. | I do not believe this is truly a security policy. The security policy has only been applied to the services provided by United. United is coincidentally, our only subcontractor that directly competes with SDCC as a service provider at the Facility, and the policy shortly followed my contentious conversation with Mr. Gessner. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Argumentative |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 18. | After protracted discussions, SDCC has allowed Champion to continue some semblance of our contractual relationship with United, requiring United to use SDCC employees to perform Trade Show Cleaning Services. This is clearly a losing situation for United. I am positive that when our contract with United expires, it will not be renewed by United. Ultimately, with no competition and SDCC as the lone provider of Trade Show Cleaning Services, Champion and other general contractors will be forced to pay more for these services. | Relevance (Fed. R. Evid. 401 and 402); Misstates Evidence; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 19. | Ultimately, SDCC's security policy, as applied to Trade Show Cleaning Services, is very unlikely to cause a trade show to switch shows from San Diego. The shows are locked in years in advance by contract, and the trade association selects the show location not general contractors such as Champion. Since Champion directly contracts for Trade Show Cleaning Services and not the trade association, and because increased Trade Show Cleaning Services costs will be lost in the midst of other cost fluctuations from year to year, this policy unlikely to cause a location change. Champion will thus have to absorb the price increase itself or pass it on to the trade associations and/or exhibitors. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

**L.    Evidentiary Objections to Exhibit 5 - Declaration of Thomas W. Robbins**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 1. | 1.    I am the Vice President and General Manager- California Region for GES Exposition Services, Inc. ("GES"), and I am authorized to make this declaration in connection with UNITED NATIONAL MAINTENANCE, INC's ("UNITED NATIONAL") application for a temporary restraining order and order to show cause regarding a preliminary injunction. All facts stated herein are true of my own personal knowledge, and if called as a witness I could and would testify competently thereto. | Relevance (Fed. R. Evid. 401 and 402) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 2. | I am responsible for the California operations GES including the San Diego operations. | Relevance (Fed. R. Evid. 401 and 402) |
| 3. | GES has a long established business relationship with UNITED NATIONAL, whereby UNITED NATIONAL performs the booth cleaning, janitorial, and related services ("Booth Cleaning Services") at trade shows held nationwide, including those trade shows held at the San Diego Convention Center (hereinafter referred to as "Convention Facility") for which GES is the general contractor and otherwise responsible for the Booth Cleaning Services. | Relevance (Fed. R. Evid. 401 and 402) |
| 4. | GES has historically had the right to choose the company it wants to perform the Booth Cleaning Services for trade shows hold at the Convention Facility for which GES acts as the general contractor. | Relevance (Fed. R. Evid. 401 and 402); Misstates Evidence |
| 5. | Attached to this Declaration as Exhibit A is a true and correct copy of a letter, dated May 18, 2007, received by GES from San Diego Convention Center Corporation, Inc., (hereinafter referred to as "SDCC") (and such letter's attachment) concerning Booth Cleaning Services for trade shows at the Convention Facility. | Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Document speaks for itself; Lacks Authentication (Fed. R. Evid. 901) |
| 6. | On or about November 2006, I attended a lunch with Brad Gessner, General Manager of SDCC.  Also present at the lunch was Larry Colby, a GES representative, and Robert D'Onofrio, an SDCC employee. During the lunch Mr. Gessner distributed written materials and told us that SDCC was soliciting GES' San Diego business for Booth Cleaning Services.  During the first quarter of 2007, I responded to SDCC and told SDCC that GES would honor its written contract with UNITED NATIONAL for the Booth Cleaning Services to be performed at the Convention Facility, and that GES would not enter into contract for Booth Cleaning Services with SDCC at that time. | Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801) |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 7. | UNITED NATIONAL has performed the Booth Cleaning Services for GES for trade shows at the Convention Facility in a good, proper, timely, efficient and workmanlike manner. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation |

**M.    Evidentiary Objections to Exhibit 7 - Declaration of William Callaghan**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 1. | I am the President of Century Security ("Century") and am responsible for the day to day management of over 400 security guards that provide security to trade shows and conventions nationwide, including Las Vegas and Orlando. All facts stated herein are true and are of my own personal knowledge. | Relevance (Fed. R. Evid. 401 and 402) |
| 2. | I was a member of the Chicago Police Department for 33 years, finishing my career as Commander of Intelligence and was primarily responsible for terrorism and related security issues. I have lead joint-security details with the FBI and Secret Service, overseeing security at events in Chicago such as the World Cup in 1994 and the Democratic Convention in 1996 and was the Commander of Intelligence for the FBI and Chicago Police Department's Joint Terrorism Task Force. On several occasions, I have received training at the FBI academy in Quantico, Virginia. | Relevance (Fed. R. Evid. 401 and 402) |
| 3. | I also have more than 20 years of experience with crowd control and event security at sporting events and trade shows. Throughout the 1980s and 1990s, I ran event security at Comiskey Park for the Chicago White Sox and at the Chicago Stadium and United Center for the Chicago Bulls and Blackhawks and supervised security for trade shows and conventions at McCormick Place. | Relevance (Fed. R. Evid. 401 and 402) |
| 4. | After leaving the Chicago Police Department in 1998, I started working for Century. Century provides security to conventions and trade shows at various venues including the Orange County Convention Center in Orlando and the Las Vegas Convention Center, two of the | Relevance (Fed. R. Evid. 401 and 402) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
|  | largest convention centers in the United States. I am as familiar as anyone with the security vulnerabilities facing convention centers and the security methods used to limit these vulnerabilities. I am a recognized security expert in the trade show industry. Attached as Exhibit A is a copy of my resume. |  |
| 5. | I have been informed that the San Diego Convention Center Corporation ("SDCC") has adopted a policy barring outside cleaning labor from the San Diego Convention Center ("SDCC Facility") and that it has given security concerns as the reason for the policy. In addition, I have reviewed the affidavit of Carol Wallace, Chief Executive and President of the SDCC, and read her security justification for barring cleaning labor from the SDCC Facility. The part that caught my interest was where Ms. Wallace states "Our assessment of areas of vulnerability indicated the use of outside cleaning crews should be eliminated. Consequently, the determination was made to adopt and implement a policy that required use of [SDCC] staff for all cleaning in the building. This policy. . . does require that the actual cleaning work be performed by persons who have gone through [SDCC's] employment process, which includes considerable vetting and background checks, and extensive training after being hired. This provides a substantially increased level of safety and security in the [SDCC Facility] than previously existed." <br><br> (Wallace Decl. ¶ 7) | Relevance (Fed. R. Evid. 401 and 402); Lacks Personal Knowledge (Fed. R. Evid. 602) |
| 6. | As a trade show and crowd control security expert, I can say that the policy implemented by SDCC, which is limited to cleaning personnel, makes absolutely no sense. Employment by the SDCC does nothing to improve security. What ensures better security is following universal security protocols, meaning that if inside and outside employees are all subject to the same screening procedures, security risks will be minimized. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 7. | In my experience, cleaning crews pose a low security risk compared to other laborers. Cleaning contractors typically | Relevance (Fed. R. Evid. 401 and 402); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; |

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | have a greater degree of knowledge and control over their staff than other providers of labor. This is due to the fact that the majority of the workforce that services the various other trades for these shows are typically temporary employees that come off of call lists at union halls. From show to show or even day to day there is a high amount of turnover for the hundreds and sometimes thousands of employees that come off of these call lists for general labor, freight hauling, rigging and even electrical work. The show manager, general contractor and convention center have no idea who these people are let alone what their background is and whether or not they pose a security risk. Cleaning crews are much different because they are smaller and, day in and day out, are typically made up of and managed by the same groups of people. In my experience, cleaning employees present one of the lowest levels of security concerns walking the convention center floor. | Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 8. | Cleaning is very small part of the total workforce needed to put on a trade show. In my experience, cleaning makes up less than 5% of this workforce. Only providing background checks and other security protocols on such a small percentage of the overall workforce makes no contribution to event security whatsoever. As a security professional, I recognize that a security protocol must be applied universally to everyone or it is useless. | Relevance (Fed. R. Evid. 401 and 402); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 9. | While Ms. Wallace sees cleaning crews, such as those of United National Maintenance, Inc. ("United"), as a security concern because "[SDCC] has no direct relationship, and consequently, minimal knowledge or control over their activities or operations in [SDCC Facility]"; she appears to be completely comfortable giving all other employees, including those of her preferred vendors, complete access to the SDCC Facility. (Wallace Decl. ¶ 5.) Preferred vendor relationships are common throughout convention centers in the United States. This direct contractual relationship is purely economic and is not related to security oversight. I am not aware of any security related requirements | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | needed to obtain this preferred status that would enhance security at the SDCC Facility. | |
| 10. | What I don't see in her affidavit is a requirement to provide background checks on anyone else's employees, preferred or not. I believe this is because SDCC does not require that employees of other trades be given background checks as a requirement to enter the SDCC Facility. SDCC does claim that providing background checks to SDCC employees is a reason for barring outside cleaning crews from the SDCC Facility. It would be very easy to conduct background checks on the employees of outside cleaning crews. I have reviewed the application packet that United requires all of its employees to fill out as a condition of employment. United's application provides more than enough information to run the most comprehensive of background checks. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 11. | There are lots of ways that you can more effectively minimize security risks that don't require locking out outside laborers. I understand that United offered to conduct background checks on its own employees and to match any other security protocols instituted by the SDCC. This would be more than satisfactory in my opinion. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 12. | I have also been made aware that even though SDCC lacks a badging program requiring picture identification, United badges its employees anyway. United badges all of its employees working at the SDCC Facility with computer generated photo identification, identifying them as an employee of United. This type of badging is an important tool used to minimize security risks. Badging of all workers is a prevalent security protocol that has been instituted at many convention centers, like Orlando's Orange County Convention Center and the Las Vegas Convention Center. Unlike these two facilities, there is no requirement at the SDCC Facility for the show manager or SDCC Facility itself to issue computer generated photo IDs to employees given access to the Facility. If the SDCC really wanted to address security, it would be simple to implement a | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | similar badging policy and apply it to all employees that are given access to the Facility. In my opinion, if United employees are badged and background checked, they would pose a very low security risk and would certainly not pose any more of a security risk than badged and background checked employees of the SDCC. | |
| 13. | The fact that United badges its employees, to me, makes them less of a security risk than the many other laborers allowed to wander the SDCC Facility. If all laborers given access to the SDCC Facility are required to have background checks and follow badging protocols, I would be comfortable knowing those employees were working a show where I was running security. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

**N.    Evidentiary Objections to Exhibit 7-A - CV of William M. Callaghan**

SDCCC objects to Plaintiff's Exhibit 7-A, Commander William M. Callaghan (Ret.) Chicago Police Department C.V. on the following grounds: Relevance(Fed. R. Evid. 401 and 402) and not qualified to serve as an expert (Fed. R. Evid. 702 through 704).

**O.    Evidentiary Objections to Exhibit 8 - Declaration of Buddy Linn**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 1. | I am a Regional Vice President of United National Maintenance, Inc. ("United") responsible for the Western United States, including San Diego. I am responsible for, among other things, hiring employees to perform cleaning, janitorial, maintenance and related services (defined hereinafter as "Trade Show Cleaning Services") at large trade shows and conventions at various venues, including the San Diego Convention Center (hereinafter as "SDCC Facility"). I have been performing these duties at the SDCC Facility since it opened in 1989. Everything in this affidavit is true and it comes from my own personal knowledge. | Relevance (Fed. R. Evid. 401 and 402) |
| 2. | I am intimately familiar with security procedures and the access of all outside service providers such as United at | Relevance (Fed. R. Evid. 401 and 402) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | facilities throughout the Western United States, including the convention centers in Las Vegas, Los Angeles and San Francisco. I have personally been present at the setup and dismantling of hundreds of shows at such facilities. The facts stated in this affidavit are based on my experiences and first hand knowledge. | |
| 3. | In July 2007, the San Diego Convention Center Corporation ("SDCC") implemented a policy that completely bars our employees from physically entering the SDCC Facility. | No objection. |
| 4. | The reason SDCC has given for this new policy is some unspecified security concerns. But because of my first hand knowledge of the type of contractors that work in the SDCC Facility and the type of access these persons have, this policy does nothing to improve security at the SDCC Facility. SDCC's policy is only applied to our employees and is not applied to employees of trade associations, show management, general contractors, or outside laborers including but not limited to freight haulers, electricians, decorators, installation and dismantlement contractors, florists and stage hands. I have first hand knowledge that there can easily be thousands of these outside laborers given access to the SDCC Facility for a full-hall show over the course of several days. While this policy is only applied to our employees and none of these other outside contractors, a United cleaning crew would make up less than 5% of that workforce. Also, this policy does nothing to screen the thousands of employees of exhibitors or show attendees who also can wander the SDCC Facility. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 5. | I am also familiar with the way displays and exhibits are delivered to the SDCC Facility. For a full-hall show there can be hundreds of truckloads of freight unloaded at the docks of the building. None of these truck drivers and their contents are not screened. It is not difficult for the truck drivers to gain access to the building while their truck is being unloaded, and there is no centralized supervision of this process. The same is true for moving out all of the | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
|  | freight at the end of a show. All of that freighted material is moved in and out of the building by another large independent workforce of freight haulers. The SDCC does not institute background checks for the freight haulers or truck drivers. |  |
| 6. | Getting access to the SDCC Facility is not difficult. SDCC does not have photo badging system like many other convention centers have. All you need is a wrist band, which is not hard to get. Before each show, the show manager or general contractor will provide security or the registration desk with a list of employees that will need access to the SDCC Facility. The show manager or general contractor is then given a corresponding number of wrist bands to pass out to those employees. No further security screening is performed. All outside laborers with a wrist band gain complete access to the SDCC Facility. In light of all of this, there is no way that barring just our employees improves security at the SDCC Facility. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation |
| 7. | I have read the affidavit of Carol Wallace, the President and Chief Executive Officer of the SDCC, that was filed in state court. Ms. Wallace claims that United's alleged use of temporary labor is the justification for applying this "security" policy solely against United. Ms. Wallace specifically says:<br><br>"I am informed, and believe, and thereon allege that [United] primarily uses temporary staff to perform cleaning at the [SDCC Facility]... Our assessment of areas of vulnerability indicated that the use of outside cleaning crews should be eliminated."<br><br>(Wallace Deci. 9:5-7.) | No objection. |
| 8. | I do not know who is informing Ms. Wallace, but, unlike Ms. Wallace, I have first hand knowledge of the status of all United employees in San Diego and can unequivocally say that her statement is false. We do not use temporary workers and all employees are hired with the intention to be long-term employees. As of June 1, 2007, the majority of our employees in San Diego had been | Argumentative; Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | employed by United for at least two and up to seventeen years. Attached as Exhibit A is a list of United's employees in San Diego listing the hiring date of each employee. | |
| 9. | In fact, on the few occasions we have needed extra people in San Diego, we have not hired temporary workers. Rather, we have chosen to eat the cost of bringing in and housing low wage United workers from other cities such as Las Vegas or Los Angeles to work a show at the SDCC Facility. We do this because the learning curve is too great for a temporary worker who would be unable to perform in an efficient manner. We simply do not use temporary workers. | Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 10. | Had Ms. Wallace truly been so concerned about our alleged use of temporary labor, she or someone from the SDCC could have asked us about it. They never did. | Argumentative; Relevance (Fed. R. Evid. 401 and 402) |
| 11. | The SDCC has never, in my 19 years of working in San Diego, informed me or anyone at United of a single security issue involving our employees. When we heard about this policy, we offered to run background checks or any other necessary security procedures on United employees. As you can see from the job application that each of our employees is required to fill out, all of the necessary information needed to run a background check is easily available and could have been provided to SDCC. Attached as Exhibit B is a copy of United's 23 page Employment Application. This offer was ignored and SDCC instead chose to bar our employees from the SDCC Facility. | Relevance (Fed. R. Evid. 401 and 402); Hearsay(Fed. R. Evid. 801); Lacks Foundation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901) |
| 12. | Prior to the implementation of SDCC's "security" policy, United had a highly trained and efficient work force of 51 employees in San Diego. More than thirty of our employees had worked for United for at least 2 years, and some have worked for United for 14 years. Since the policy was implemented in June 2007, we have lost 47 of these 51 employees. We have lost nearly all of our workforce because they were not working and we cannot pay them to not work. Obviously, they have | Relevance (Fed. R. Evid. 401 and 402); Lacks Foundation; Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | little choice but to seek other employment. I and my staff have worked very hard to stay in constant contact with our employees to see if we will be able to convince them comeback if United is allowed to return to work in the SDCC Facility. I believe that if the SDCC's policy is lifted soon, we will be able to get many of them back but it is pretty clear to me that as more time passes, it will become more difficult for us to get them back. | |
| 13. | Without our highly trained and efficient workers, we cannot compete in the San Diego market. The success of our business is based on the high level of efficient service we provide show managers and general contractors. This service is based on the experience of our employees with specific types and sizes of trade shows held at the Convention Facility. Based on the learning by doing nature of this business, our employees, many of whom have served as supervisors, have been trained to know where they need to be and what they need to do at any given moment during a show. We need our employees to offer competitive prices and service in San Diego. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 14. | Over a year ago, I met with Richard Simon, President of United, to develop and implement a plan to compete for more business and increase United's market share in the San Diego market. We specifically, were planning to solicit show management for business at trade shows serviced by SDCC by offering on competitive terms for price and service. Since the SDCC has put this "security" policy into effect, all of these efforts have come to a complete stop. We are no longer competing for new business in San Diego. | Relevance (Fed. R. Evid. 401 and 402) |
| 15. | I don't see how anyone other than SDCC can compete for business in San Diego right now because SDCC won't let our employees or anyone else's into the Convention Facility. All we are doing in San Diego right now is meeting our already existing contracts by paying SDCC for the use of their employees. | Relevance (Fed. R. Evid. 401 and 402); Improper Lay Opinion (Fed. R. Evid. 701 and 704); Lacks Foundation; Calls for Speculation |
| 16. | 16. Since the "security" policy was | Relevance (Fed. R. Evid. 401 and 402); |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | implemented, United has been allowed to carry out its contracts only by using SDCC labor. We have no control over how many or which employees SDCC assigns to a given show and we have little ability to perform oversight and supervision. Our employees have an incentive to be efficient and if they aren't efficient we can discipline them. We have no ability to do so with SDCC employees. | Misstates Evidence; Lacks Foundation; Calls for Speculation |
| 17. | Also, before each show, United gives our customers estimates based on a fully-loaded, blended, hourly rate for the service which includes United's direct labor cost, overhead and profit and based on this estimate United cannot be paid for hours worked in excess of this estimate. This means that we can only turn a profit if our workers perform efficiently. | Relevance (Fed. R. Evid. 401 and 402) |
| 18. | SDCC ignores our estimates and forces us to abide by SDCC terms. Despite these estimates, SDCC brings in more labor than United would bring in to perform each job and have used 20 employees for a show where United's contractual estimate was to use 12 employees. While we have to be efficient to meet and ultimately make money under these estimates, SDCC employees do not share this concern and we have no way to incentivize or discipline them. | Argumentative; Relevance(Fed. R. Evid. 401 and 402); Misstates Evidence; Lacks Foundation; Calls for Speculation |

**P.    Evidentiary Objections to Exhibit 8-A - Employee History-San Diego, CA**

SDCCC objects to Plaintiff's Exhibit 8-A, Employee History - San Diego, CA on the following grounds: Relevance(Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); and, Lacks Authentication (Fed. R. Evid. 901).

**Q.    Evidentiary Objections to Exhibit 8-B  - Employment Application**

SDCCC objects to Plaintiff's Exhibit 8-B, Employment Application on the following grounds: Relevance(Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Lacks Foundation; and, Lacks Authentication (Fed. R. Evid. 901).

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**R.    Evidentiary Objections to Exhibit 9 - Declaration of Dr. John S. Hekman**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 1. | My name is John S. Hekman. I am a Principal at LECG, a firm that provides consulting and expert testimony in economics, finance and accounting. Since 1990, I have testified in federal and state courts on such matters as price fixing, patent infringement, trade secrets, real estate finance and general economic damages. I have previously been engaged as a consultant or expert witness in such matters as the licensing of celebrity names and images, the structuring of contracts for the release of motion pictures, the video rental industry and other aspects of the entertainment business. I have defined relevant markets in antitrust matters. I have analyzed allegations of exclusionary behavior by market participants. I have assessed the degree of market power by defendants accused of the abuse of market power. I earned a MBA in finance and a Ph.D. in economics at the University of Chicago. I have taught economics and finance at the University of Southern California, The University of North Carolina, Boston College and The University of Chicago. In addition, I have published a number of papers in academic and professional journals. I was also an economist with the Federal Reserve in Boston and Atlanta. My billing rate in this matter is $400 per hour. My curriculum vitae is attached to this report as Exhibit 1. | Relevance (Fed. R. Evid. 401 and 402); Unqualified Expert (Fed. R. Evid. 702 through 704) |
| 2. | I have been asked by counsel for United National to analyze the actions of the San Diego Convention Center ("SDCC") from the perspective of industrial organization economics and to provide several opinions based on that analysis. I have been asked to define the geographic markets as well as to determine whether the Trade Show Cleaning Services provided by United and SDCC are part of a specialized product market that is economically meaningful and distinct from other cleaning services. I have been asked to determine whether SDCC has market power or monopoly power in this market and whether SDCC has exercised such power. Finally, I have been asked to determine the likely current and future effect on consumers in the | Relevance (Fed. R. Evid. 401 and 402); Unqualified Expert (Fed. R. Evid. 702 through 704) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | relevant market of SDCC's action in enforcing the exclusive use of SDCC employees for cleaning services. | |
| 3. | I have reviewed materials related to the case to form my opinions. These materials include the Complaint for Injunctive Relief and Damages; Defendant's Objections to Evidence Submitted by Plaintiff the Memoranda of Points and Authorities in Support and in Opposition to the application for a restraining order; the Declarations of Carol Wallace, Dessi Nintcheva, Thomas Robbins, Jason Kirby, Richard Simon, Charles Linn, Larry Colby, and Mark Epstein; the SDCC cleaning services contract with United Service Companies; certain correspondence between market participants and SDCC from 1990 to 2000; correspondence from market participants related to SDCC's 2007 actions; 2006 Exhibitor Application and Contract, Internet Telephony Conference & Expo; the SDCC website; and additional materials from my own research. A complete list of the materials I have reviewed is attached to this Declaration as Exhibit 2. | Relevance (Fed. R. Evid. 401 and 402); Unqualified Expert (Fed. R. Evid. 702 through 704) |
| 4. | I recognize that there are additional materials likely to be provided to me during the course of discovery, and I will revisit my opinions if necessary based on any new information. However, the materials I have reviewed have allowed me to reach the following opinions:<br><br>a) The economically meaningful relevant product market is Trade Show Cleaning Services at SDCC.<br><br>b) The relevant geographic market is the San Diego metropolitan area.<br><br>c) SDCC has market power in the Trade Show Cleaning Services market at the SDCC.<br><br>d) The demand for large trade show services facing SDCC is inelastic with respect to price. Trade Show Cleaning Services is a small portion of the price of large trade show services. As a result, a price increase in the Trade Show Cleaning Services market will have a small impact on the price of large trade show services | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |

**DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | and would be unlikely to cause a loss of SDCC's trade show business. | |
| | e) The effects of SDCC's denying United National and other cleaning services access to the convention center are highly anti-competitive. | |
| | f) SDCC has eliminated current and future competition and has effectively raised prices for Trade Show Cleaning Services in connection with its exclusion of non-DCC cleaning employees. | |
| | g) The convention center is an essential facility for competitors in the trade show cleaning market, and SDCC has denied access to this facility for competitors in the market. | |
| | h) SDCC has leveraged its monopoly power in the San Diego large trade show market to exclude competitors in the Trade Show Cleaning Services market. | |
| | i) Because trade shows contract for space at SDCC many years in advance, trade show consumers are "locked in" to higher prices charged for cleaning services, and are further unlikely to switch because Trade Show Cleaning Services are a small percentage of the total expenditure for trade show services. | |
| | j) The manner in which SDCC has excluded competition is a form of "raising rivals' costs", which is recognized by economics as an anti-competitive practice. | |
| | k) I conclude from the "no economic sense" test that there is no pro-competitive justification for SDCC's actions. | |
| | l) Consumers in the market for Trade Show Cleaning Services have been harmed. Consumers have had their choices in the market reduced to a single supplier, i.e. SDCC. And the prices charged by SDCC are higher than those charged by United National. | |
| 5. | In order to assess whether the actions taken by SDCC against United National are anti-competitive, it is necessary to define the market in which SDCC and United compete. When the relevant market has been defined, an economist can measure the market or monopoly power that a firm | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | such as SDCC has in that market and judge whether specific acts by that firm are anti-competitive. | |
| 6. | Economists have identified the primary elements of market definition as, first, the definition of the specific products or services that, in this case, SDCC and United sell. Products or services that have a high cross-price elasticity of demand are considered to be in the same market. A high cross-price elasticity of demand between services A and B means that if the price of A rises, the demand for B will rise by a significant amount. This shows that A and B are close substitutes. Products and services that are close substitutes using this measure are judged to be in the same market. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 7. | The second primary element of the market definition is geographic. Some firms, for example GM or Ford, compete with other carmakers throughout the country in selling their products, so that the relevant geographic context of the market is national. Other markets are much smaller geographically; a Del Taco in San Diego is not in the same geographic market as a Del Taco in Kansas City. For each product or service, the geographic market is the area in which the firms produce and sell. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 8. | The use of monopoly power to interfere with the efficient functioning of a market without the result of lowering price or increasing quality is anti-competitive. In general, exclusionary conduct is any conduct that harms competitors and is not competition on the merits. A firm's actions are exclusionary if they tend to impair the opportunities of that firm's competitors in an unnecessarily restrictive way and do not enhance competition. Sometimes it is difficult to discern whether actions by a dominant firm that have the result of excluding competitors are anticompetitive. However, that is not the case with the actions of the SDCC with regard to the Trade Show Cleaning Services market at the SDCC. The effect of SDCC's actions was to exclude all competition, with no benefit to competition or to consumers. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 9. | The FTC and DOJ's 1992 Horizontal Merger Guidelines (Merger Guidelines) were developed in conjunction with economists and are generally accepted by economists as appropriate economic tools to be used by economists defining relevant markets and market power. The FTC/DOJ guidelines define a product market to be a group of products that are related such that a hypothetical profit-maximizing firm that was the only seller of those products (the monopolist) could profitably impose at least a "small but significant and non-transitory" increase in or markup of price over the competitive level. This minimum price markup that could be maintained for a significant period of time is typically taken to be 5 percent. This is sometimes called the "hypothetical monopolist test" or the "SNIP" test. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 10. | The ability of a hypothetical monopolist to maintain a price increase as described above is analyzed by the competitive response that would result from the price increase. On the demand side, the response comes from buyers who switch to substitute products when the monopolist raises price. And on the supply side, the response comes from the ability of firms producing other products and services to begin producing the monopolist's product or service. The supply response also comes from new firms entering the industry because the price has risen. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 11. | On the demand side, the market test asks, if the monopolist imposed the "significant and non-transitory" 5% price increase, whether buyers of the service could switch to other services in such numbers that the loss of sales by the monopolist would make the price increase unprofitable. If this is probable then the service would be in the same product market, and the market has not been defined broadly enough. Conversely, if the loss of sales is not enough to make the price increase unprofitable for the monopolist, then the product market is not too broad. The relevant market is the group of services just large enough that a monopolist could profitably raise price because buyers would be unwilling or unable to switch to other | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | services. | |
| 12. | The supply side market test looks to see whether other suppliers could enter the market or switch to producing the service produced by the monopolist in such a way that a price increase would not be sustained. The market definition asks whether a 5% increase in price by the hypothetical monopolist would cause more firms to enter the market within one to two years, thus bringing price down and making the price increase by the monopolist unprofitable. If other firms are able to start producing the product or service that the hypothetical monopolist produces, then the market definition is too narrow. The relevant market is the group of sellers such that a monopolist could profitably raise price because no more sellers would be able to enter the market in a reasonable period of time. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 13. | The evidence I have reviewed indicates that the number of firms that supply Trade Show Cleaning Services is limited, because the type of cleaning performed by United National at the SDCC is not standard space cleaning. Because this cleaning appears to be specialized in a number of ways, United does not compete with ordinary janitorial services and similar firms. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 14. | One of United's primary customers in the trade show cleaning market is Champion Exposition Services, a large general contractor for trade shows. Champion signs contracts with trade associations to manage and organize their trade shows across the U.S. Mark Epstein, Champion's president, strongly supports the description of United and other firms in the trade show cleaning market as highly specialized:<br><br>"While a janitorial firm hired to clean office space in a commercial building can expect each office to be the same size and in similar condition everyday, each trade show is unique in size, configuration, and its cleaning needs. Based on the scope and size of a particular trade show, a provider of Trade Show Cleaning Services must constantly react to ever changing demands that involve the amount and location of manpower and equipment at any given | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Hearsay(Fed. R. Evid. 801) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | moment. A provider of Trade Show Cleaning Services must ultimately have a tremendous amount of logistical expertise and must anticipate needs proactively based on the past experience of the Trade Show Cleaning Services management. No two trade shows are the same from the perspective of Trade Show Cleaning Services." | |
| 15. | There are two main functions performed by firms in the Trade Show Cleaning Market. The first is "facilities cleaning", which is cleaning aisles and common areas at SDCC during the move-in phase and construction of exhibits at conventions as well as during the move-out phase. The second function is "booth cleaning", which is described as cleaning exhibit booths during shows and during the night. Facilities cleaning is specialized in part because it must be performed during a short window of time between trade shows. At times the show moving in and the one moving out overlap, requiring even more experience to make the process run smoothly. United states that its cleaning services are individually tailored to the needs of each type of show and exhibitor. United National revenues from cleaning services at SDCC were approximately $500,000 per year. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 16. | The special need filled by the cleaning contractors was acknowledged by SDCC. In a June, 2000 letter to the Trade Show Contractors Association, the Convention Center Director states: "As you know, with the existing and increasing level of business at the Convention Center, the time between move-out of one show and move-in of the next show is often extremely compressed. Time frames to return a clean floor will likewise often be compressed. You also know that we often run overlaps of move-outs and move- ins. The service contractors have been primary and key players in making those overlaps happen. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Hearsay(Fed. R. Evid. 801); Document speaks for itself; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901) |
| 17. | The number of firms supplying Trade Show Cleaning Services in San Diego is limited to those, primarily United National and SDCC, that have developed the expertise over a number of years to be able to compete in the market. In the short run it | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Hearsay(Fed. R. Evid. 801); Document speaks for itself; Best Evidence Rule (Fed. R. Evid. 1001 through |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | is unlikely that other janitorial firms could enter the market. Mark Epstein of Champion states "Due to the expertise and specialized knowledge required, I would not consider even an extremely price competitive bid from a traditional janitorial services firm to provide Trade Show Cleaning Services." Mary Beth Rebedeau of the Society of Independent Show Organizers referred to how specialized the cleaning services are in her letter to SDCC: "While we understand the need for facility managers to generate revenue, tradeshow organizers and their exhibitors must retain the right to select vendors of their choice. This is particularly true for large shows whose complexities demand carefully selected and integrated vendor partners who have a thorough understanding of each show's special needs. This includes cleaning services.. . . Show organizers spend years cultivating relationships and advantageous pricing with their chosen suppliers. In-house exclusives arbitrarily increase costs to show organizers -- and therefore exhibitors -- while decreasing the quality of the service provided due to lack of competition." | 1008); Lacks Authentication (Fed. R. Evid. 901) |
| 18. | Competition for a hypothetical monopolist also could come from other firms supplying cleaning services in San Diego. Barriers to entry make it more difficult for new firms to enter. In this case, a major barrier is the lack of other firms with the specialized cleaning experience possessed by United. As described above, the evidence I reviewed indicates that there is a long learning curve down which firms would have to travel in order to be efficient and therefore as competitive as United in doing this work. "Learning by doing" is a process that takes time, and therefore in the short run there would be no competitors able to enter the market. So even if it were possible for new firms to bid on cleaning contracts at SDCC, it is unlikely, from what I have seen, that there would be entry of new firms. However, the San Diego Convention Center is using its control over access to the center to eliminate all alternative cleaning firms. This is an absolute barrier to entry. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 19. | The relevant geographic market is the San Diego metropolitan area. Workers who are trained to perform the cleaning services in this market cannot come profitably from areas outside the local San Diego labor market and be competitive with those workers who are located in the local market, and trade shows are unable or unwilling to switch their shows from San Diego to another city in response to an increase in the price of Trade Show Cleaning Services. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 20. | The issue of whether the relevant market is properly defined as Trade Show Cleaning Services at SDCC involves the ability of other firms (the supply side of the market) or trade show exhibitors (the demand side of the market) to react to an increase in price by SDCC. In the language of the FTC/DOJ antitrust guidelines, the hypothetical monopolist test asks whether a hypothetical 5% increase in price by the monopolist, maintained for a significant period of time, would elicit a sufficient competitive response to restrain the monopolist, making the attempted price increase unprofitable. This ability of competition to "discipline" an increase in price can be analyzed by the supply response and the demand response. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 21. | The buyers, or demanders, of Trade Show Cleaning Services are ultimately the exhibitors at trade shows. However, the exhibitors are not the direct buyers of cleaning services. United National contracts with a general contractor; the general is hired by a trade association. The trade association chooses the city and convention center where the show will be held, but the exhibitor-members of the association pay the fees that go to the general contractor and finally to the cleaning contractor, United. The exhibitors do not choose the convention city. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 22. | In this way, the Trade Show Cleaning Services market is in a vertical relationship to the market for large trade shows. A monopolist who was the only seller of Trade Show Cleaning Services in San Diego would face potential competition from other convention centers, if the | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

-30-

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
|  | general contractors that hire cleaning firms in San Diego could move to other venues. However, there are a number of reasons why it is unlikely that contractors could switch to other convention centers to restrain SDCC's ability to raise price in the Trade Show Cleaning Services market. |  |
| 23. | First, buyers are unlikely to discipline a SDCC price increase because of a "third party payer" effect in the market. The ultimate buyer of Trade Show Cleaning Services as well as other costs of trade shows is the exhibitor. But the contracting of cleaning services is done by the general contractor, such as Champion. Increases in the price of Trade Show Cleaning Services are paid by the general contractor, but these increases are passed along to the exhibitor, which reduces the impact of the price increase. Further, the choice of a location for the trade show is made by the trade association, which is not the final buyer of the services. As a result of this third-party payer structure, it is unlikely that a higher price charged by SDCC for cleaning services would affect the choice of location for conventions and thus provide competitive pressure on SDCC. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 24. | Second, general contractors are unlikely to "discipline" price increases by SDCC in cleaning services because there are no similarly-sized convention centers in San Diego or nearby that can host the large conventions that use SDCC. SDCC has monopoly power in the large trade show market in the San Diego region. The SDCC, with over 600,000 square feet of exhibit space, is one of the five largest convention centers in the United States. There is no other convention center of remotely comparable size in the San Diego area.  The next largest meeting area in San Diego is the Hilton Convention Hotel, under construction across from the SDCC. It will have 106,000 square feet of meeting space, but it is mostly designed to satisfy the demand for hotel rooms for the SDCC. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 25. | Third, it is unlikely that contractors buying cleaning services would discipline a SDCC price increase for Trade Show Cleaning Services by switching to venues in other | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | cities. The cost of exhibit cleaning is a very small portion of the total cost of putting on a convention, so that a monopolist in San Diego would not experience significant limits on its ability to raise price due to the possibility that contractors would move to other cities. | |
| 26. | Fourth, buyers are unlikely to discipline a SDCC price increase because of the long term planning that is necessary for the large trade shows that SDCC serves. These shows are often committed for five, ten or fifteen years in advance. This reduces the ability of contractors and trade shows to move to other convention centers. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 27. | I conclude that the SDCC does have market power or monopoly power in large trade shows in the San Diego area as well as in the market for Trade Show Cleaning Services at conventions in San Diego. First, SDCC has the power to exclude competitors without the likelihood that new competitors could enter the market. Second, SDCC has the power to set a price floor for Trade Show Cleaning Services at the center by requiring all outside firms to use SDCC employees at wages set by SDCC. Third, SDCC has the power to raise price in the market. Currently, SDCC has control over 100% of the market, since it controls access to the SDCC and is dictating pricing in the market regardless of the level of involvement that United is permitted to have. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 28. | My reading of the evidence indicates that United National Maintenance obtains contracts with Champion and other general contractors that provide services to associations using the San Diego Convention Center for shows. The exhibitors pay a fee to Champion for booth cleaning services. Champion retains approximately 50% of the fee for its services and provides the remaining 50% to United for the booth cleaning. United performs booth cleaning under its contract for this fixed amount. For facilities cleaning, United estimates the number of hours that will be needed for individual exhibitor booth cleaning on a fully-loaded hourly fee basis. The current contracts | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
|   | specify an hourly rate of $16.35 to cover not only the labor used to perform cleaning but also for materials and for United's management of the services. This is done on a "not-to-exceed" basis. If the actual hours are greater than the not-to-exceed amount, United absorbs the additional cost. If the actual labor hours are less than what was estimated, United is compensated only for the actual hours. |   |
| 29. | In May 2007 United National was notified that as of July 1 all trade show cleaning services at the Convention Center would be performed by SDCC employees. In June of 2007 United National was notified that it could work at the Convention Center, but that it would have to use SDCC employees to fulfill the terms of its contracts, at a labor rate of $17 per hour. Furthermore, SDCC would take the entire 50% of booth cleaning revenue that was contractually owed to United National. If the actual hours expended were less than the number that would exhaust the 50% of booth-cleaning revenue, then SDCC would keep the money that was left over. In other words, United receives no revenue but is still responsible for seeing that the contract terms are satisfied. Whatever supervisory or managerial resources are expended by United to fulfill the contract are a 100% loss. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 30. | The result of the actions by SDCC described above is to exclude all competition in the Trade Show Cleaning Services market at the convention center. United National will be forced to serve out the contracts with Champion and other general contractors that it has already signed. However, when these contracts expire, United will not be able to compete in the Trade Show Cleaning Services market at SDCC because it would lose money in doing so. Nor is it likely that any general contractors would hire United under the circumstances, namely that SDCC employees perform the work. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 31. | SDCC has argued that it is not excluding competition because it has not excluded United from the center, only United's cleaning staff. This is entirely misleading | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; |

Case No. 07-CV-2172 BEN (JMA)

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | and inaccurate, in my opinion. United cannot control the pricing of the services that it would provide in the market, since SDCC dictates the hourly labor rates and takes all of the booth cleaning revenue that United formerly received. Further, United's employees are not permitted to work in the SDCC. The only way that United could "compete" in the center would be processing paperwork and requests for cleaning services. This is not competition in any meaningful sense, and since SDCC would control 100% of the pricing in the market and all of the cleaning staff, there is no competition at all from the point of view of industrial organization economics. | Misstates Evidence |
| 32. | The manner in which SDCC has attempted to exclude competitors in the market for Trade Show Cleaning Services at SDCC's facility is by leveraging its monopoly power in the market for large convention services in San Diego. Because SDCC has market power in the San Diego large convention services market, it can require convention exhibitors to use SDCC's cleaning services exclusively or raise the price without suffering a significant loss of business in its primary market. SDCC serves very large trade shows that have only a small number of alternative venues to choose from nationwide. This lack of alternative venues for large trade shows means that the SDCC has a relatively inelastic demand for its services, especially after a trade association has booked a date for ten or more years in advance. Inelastic demand for a product or service such as large trade shows means that if the price of the service rises, consumers of the service (such as general contractors and show organizers) will not tend to look elsewhere for a convention center but will tend to pay the higher price. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 33. | The inelastic demand experienced by SDCC for trade shows means that if SDCC succeeds in excluding all competition in the Trade Show Cleaning Services market, SDCC can raise the price of cleaning services that is ultimately paid by trade show exhibitors without losing business in the large trade show market. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 34. | Because of the long-term nature of SDCC's contracts with large convention trade shows, extending ten or fifteen years in some cases, the exclusionary action that SDCC has taken with regard to Trade Show Cleaning Services has "locked in" customers who use these services. In economic terms, a lock-in occurs in a situation where a consumer contracts with a seller for goods or services over an extended period of time. For the duration of the contract, the buyer is "locked in" to whatever downstream services are needed. The seller can take advantage of the lock-in to raise the prices of the services that are needed during the term of the contract. The buyer cannot go elsewhere to purchase those services because of the lock-in. In the situation being considered here, SDCC has locked in the consumers of Trade Show Cleaning Services for the duration of the ten or fifteen years that some trade shows have contracted. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 35. | A number of trade show industry participants have responded to SDCC's exclusionary acts by writing letters to oppose the new policy. Some of these participants state that they try to avoid convention centers that have "exclusives", and some threaten to take their business elsewhere. However, it is a measure of SDCC's market power in large trade shows that none of these participants has taken any business away from SDCC so far. And in spite of the implicit threat by these market participants to oppose SDCC's Maintenance, imposition of an exclusive, SDCC went ahead with their exclusionary action. This also indicates how much market power SDCC possesses. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 36. | In a strictly technical sense, SDCC is allowing cleaning contractors to work in the relevant market at SDCC. SDCC may argue that they have not excluded United from the market. However, SDCC is using the strategy known as "raising rivals' costs" to exclude competition. In this case, SDCC is appropriating all of the booth cleaning revenue that would have been received by United, and "allowing" United to compete in the market only by using SDCC's employees and by accepting no | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | revenue. Thus, SDCC has raised the costs of United and other potential competitors to be greater than revenue. | |
| 37. | The raising rivals' costs action taken by SDCC is an example of what Scheffman and Higgins refer to as "cost-effective" strategies by monopolists. They say: "Some kinds of cost-raising strategies can obviously be very cost-effective——e.g., actions that lead to governmental actions that exclude your rivals, or impair their ability to compete with you." | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 38. | Since the relevant market is Trade Show Cleaning Services at the SDCC, the Convention Center is an essential facility for firms that supply Trade Show Cleaning Services. An essential facility is a resource possessed by one firm that other competitors must have access to in order to compete with that firm. Another name for an essential facility is a bottleneck. An example would be the only railroad bridge over a river for many miles. If the railroad that owns the bridge refuses to deal with competing railroads that need to use the bridge, competition is harmed. The SDCC is an essential facility because it is the only venue for large trade shows in the San Diego area. It would be prohibitively expensive for United to build another 600,000 square foot convention center in order to compete with SDCC. United National and other firms in this market cannot compete in the market unless they have access to the San Diego Convention Center facilities. Control over this essential facility in the market for Trade Show Cleaning Services gives SDCC the ability to exclude all of its competitors from the market. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 39. | Actions by firms that tend to exclude their rivals can sometimes have pro-competitive explanations. It is important to examine the possibility of a pro-competitive reason for the exclusionary actions taken by SDCC before concluding that the actions were anti-competitive. The economics literature refers to the "no economic sense" test to examine whether there is any normal business justification other than exclusion | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
|  | for actions such as those by SDCC. I have considered all of the statements by representatives of SDCC and by other participants in the market that were provided to me to examine the issue of a possible pro-competitive reason for the exclusion. |  |
| 40. | First, I considered the possibility of enhanced efficiency in the market for Trade Show Cleaning Services if SDCC employees have an exclusive. My conclusion is that there is no enhanced efficiency justification for the conduct of SDCC. Exclusive cleaning services at the Convention Center will not reduce cost to consumers or provide a higher quality product. This is the only conclusion that can be reached given that:<br><br>1. The letters from contractors and show producers are unanimous in their opposition to an exclusive arrangement.<br><br>2. SDCC has not even attempted to provide an argument that exclusive cleaning services is more efficient. Instead, the change has been explained as a security matter. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 41. | Second, I considered whether SDCC was carrying out a general shift in its security policy by restricting all non-SDCC employees from using the center. Economists have no special ability to measure the need for security at a facility such as SDCC. However, an economist can observe the incentive for the owner of an essential facility such as the SDCC to use a pretext to exclude its competitors in a market such as Trade Show Cleaning Services where the SDCC is a competitor in the market. The economist can weigh the consistency of the behavior of the SDCC in applying its security policy against the behavior in which types of non-SDCC employees are excluded. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation |
| 42. | I have read the declaration of William Callaghan, President of Century Security and an expert in convention floor security according to the documents I have seen. Mr. Callaghan concludes that SDCC's policy of excluding only non-SDCC cleaning employees "makes absolutely no | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | sense." He finds that the policy makes no sense from a security point of view because, among other reasons, cleaning employees tend to be lower security risks than other non-SDCC employees who are not covered by the policy; because cleaning employees are only 5% or less of the outside employees accessing convention centers; because SDCC does not require outside employees to wear badges, while United National does do this; and because United National has offered to run background checks on its employees, which SDCC has refused. | |
| 43. | I have also read the declaration of Charles Buddy Linn, the Regional Vice President of United National, who is familiar with the security policies of not only SDCC but other major convention centers. He provides more detail on the level of security at SDCC compared to other centers in his experience. SDCC does not use a photo ID system for security, and its monitoring of outside employees accessing the facility is lax.  Further, Mr. Linn provides evidence that SDCC's claim that United was a security risk because it was using temporary employees is false. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 44. | From my own analysis as well as the evidence provided by Mr. Callaghan and Mr. Linn, I conclude that contrary to the idea of a general shift in security policy, cleaning services has been singled out for restrictions. SDCC competes with outside Trade Show Cleaning Services such as United. In contrast, SDCC does not compete directly with many other service providers who work on trade shows. Other non-SDCC contract employees have not been similarly excluded from the center on grounds of security concerns. Examples of the other services performed by non-SDCC workers are: drayage, cartage, furniture, booth and floor decorations, signs, photographs, telephone services, electricians, plumbers, and carpenters. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 45. | SDCC justifies its exclusion of competing cleaning suppliers on the basis of security concerns at the center. If this justification is a sham, as alleged by United National, then there is no pro-competitive justification for | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | the exclusionary restrictions by SDCC. The restrictions do not lower costs; to the contrary, the restrictions result in higher prices in the cleaning services market. Similarly, the quality of service is not increased; no justification other than the asserted security concern has been advanced. The restrictions also do not increase consumer choice or services available; rather, they reduce the choice of services. | |
| 46. | SDCC could have used a less restrictive alternative to accomplish their stated goal of improving security at the convention center. They could have subjected United's employees to background checks. They could have provided enhanced security training or requirements. They could have worked with United to ensure that United's employees were no more of a security risk than their own booth cleaning employees. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation |
| 47. | According to Mark Epstein of Champion, the employees of United National have been employed by the company for long periods of time and have had no security problems at the center. In contrast, employees of some other contractors who work in the convention center are "a huge security black hole." Yet these contractors have not been targeted in the way that United National has . | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |
| 48. | Consumers have been harmed first of all because SDCC is charging higher prices in the trade show cleaning market in connection with its exclusion of all non-SDCC cleaning employees. The terms of the relationship with United National dictated by SDCC in July 2007 represent a price increase for cleaning services. United National previously estimated the hours needed for facilities cleaning at the fully loaded labor rate of $16.35 in order to provide a not-to-exceed amount for services at particular exhibitor spaces. SDCC has raised the hourly rate, not including United National's management and other costs, to $17. Thus, SDCC has raised rates already to the extent that the hours expended are less than the not-to-exceed hours. In addition, when United National's current locked-in contract rates | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Calls for Speculation; Misstates Evidence |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | expire, SDCC will be charging more for the same number of hours estimated for purposes of setting a not-to-exceed amount. In addition, SDCC has effectively raised prices for booth cleaning. Currently, United National is locked into its contracts to provide booth cleaning, even though it passes all of its booth-cleaning revenue on to SDCC. | |
| 49. | Harm to the competitive process is demonstrated by, among other things, the statements by market participants. Because of the exercise of monopoly power by the SDCC, there is no longer any competition on the merits for exhibit cleaning services. Letters expressing the displeasure of the trade show industry with the actions of SDCC include:<br><br>1. Joint Statement of the Society of Independent Show Organizers, the International Association for Exhibition Management, and the Major American Trade Show Organizers.<br><br>2. Richard Simon, President of United Service Companies.<br><br>3. Joe Loggia, Chief Executive of Advanstar Communications.<br><br>4. Patricia Dwyer, Senior Manager of Convention and Trade Show Services, SmithBucklin Corporation.<br><br>5. Barbara Myers, Conferences and Meeting Services Director, APCO International<br><br>6. B.J. Enright, President, Trade Show Logistics.<br><br>7. Ken McAvoy, Senior Vice President, Reed Exhibitions.<br><br>8. Mary Kay Sustek, Senior Vice President, Neilson Business Media.<br><br>9. Martin Cymbal, President, Trade Show Contractors Association of Southern California.<br><br>10. Ty F. Bobit, President, Bobit Business Media.<br><br>11. Mary Beth Rebedeau, Executive Director, Society of Independent Show Organizers. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Documents speak for themselves; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901); Misstates Evidence; Hearsay (Fed. R. Evid. 801) |

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 50. | Letters from trade show participants are clear in stating the harm they see in SDCC's policy:<br><br>• Pat Dwyer of Smith Bucklin states: "By taking the decision our of our hands to select this very important -- and visible service -- you could be taking away our ability to negotiate competitive pricing models for our client, as well as the relationship to a valuable member of our service level team environment."<br><br>• Mary Kay Sustek of Nielson Business Media states: "While I believe we have used the SDCC cleaning services over the past years, it was by choice. Imposing an exclusive of any type isn't in the best interest of Nielsen or its customers. Nielsen manages its shows based on the specific needs and requirements of customers and having this flexibility is a key ingredient to a successful show... . In our experience, exclusive services ultimately become more expensive and less service oriented as it takes the competitive nature out of the business."<br><br>• Ty Bobit of Bobit Business Media states: "Please know that the imposition of an exclusive service will be in contradiction to the wishes of your customers and it typically reduces service levels and takes competitive pricing options away. We have found over the years that the show manager's ability to choose a contractor and control price helps. . . provide better service at competitive prices."<br><br>• Mary Beth Rebedeau of the Society of Independent Show Organizers states: "While we understand the need for facility managers to generate revenue, tradeshow organizers and their exhibitors must retain the right to select vendors of their choice. This is particularly true for large shows whose complexities demand carefully selected and integrated vendor partners who have a thorough understanding of each show's special needs. This includes cleaning services. Show organizers spend years cultivating relationships and advantageous pricing with their chosen suppliers. In-house exclusives arbitrarily increase costs to show organizers -- and | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Documents speak for themselves; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901); Misstates Evidence; Hearsay (Fed. R. Evid. 801) |

-41-

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | therefore exhibitors -- while decreasiri the quality of the service provided due to lack of competition." | |
| | • B.J. Enright of Tradeshowlogistics states: "[O]ur clients would love to have the San Diego Convention Center competitively bid for the opportunity to be the official cleaning contractor. However, an exclusive situation does not promote competition and service." | |
| | • John Mooney of SISO wrote: "Our opposition to exclusives is based on the historical fact that competition among suppliers provides the best service at the lowest cost. Exclusives have the reverse effect." | |
| | • Michael Muldoon, of the Convention Management Group, wrote to say "Please know that food and beverage events, like the shows we manage, have extraordinary cleaning requirements. Our relationship with United Services Companies has been extremely important to the production of these events. We have not been as successful working in facilities that require the hiring of "exclusive contractors" and we avoid "exclusive shops." | |
| 51. | The conclusion I have reached from, among other things, my experience as an economist as well as the statements from market participants quoted here is that SDCC's exclusion of competition in Trade Show Cleaning Services at the convention center, if it continues, will produce higher prices and a lower quality of service. The experiences cited by Nielson Business Services, Bobit Business Media, the Society of Independent Show Organizers and the Convention Management Group all support this conclusion. The experiences of these organizations provide a natural experiment that, while insufficient by themselves to provide a definitive prediction for SDCC, nevertheless points toward harm for consumers as a result of SDCC's exclusion. | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); Lacks Foundation; Documents speak for themselves; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901); Misstates Evidence; Hearsay (Fed. R. Evid. 801) |
| 52. | For all of the reasons stated above, I believe that the actions of SDCC in excluding competition in the market for Trade Show Cleaning Services in the | Relevance (Fed. R. Evid. 401 and 402); Legal Conclusion; Improper Expert Opinion (Fed. R. Evid. 702 through 704); |

42

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | convention center are highly anti-competitive. Based on the documents I have examined, I also believe that there is no pro-competitive justification for the SDCC's actions. My opinions have been formed based on the documents that I have seen. I understand that more information may become available in the future. If so, it may be necessary to amend these opinions in the light of additional discovery. | Lacks Foundation |

**S.    Evidentiary Objections to Exhibit 10 - Convention Services Agreement dated August 8, 2001**

SDCCC objects to Plaintiff's Exhibit 10, Convention Services Agreement dated August 8, 2001, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**T.    Evidentiary Objections to Exhibit 11 - Letter Dated June 21, 2005, to Mark Epstein**

SDCCC objects to Plaintiff's Exhibit 11, letter dated June 21, 2005, to Mark Epstein, which appears to be duplicative of Exhibit G, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801);  Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**U.    Evidentiary Objections to Exhibit 12 - Declaration of Richard Simon**

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| 1. | I am the President of United National Maintenance, Inc. ("United") and I am authorized to make this declaration on United's behalf. All facts stated herein are true and are of my own personal knowledge. | Relevance (Fed. R. Evid. 401 and 402) |
| 2. | On or about June 2007, I contacted a number of general contractors, trade associations, and trade show producers informing them of the San Diego Convention Center Corporation's | Relevance (Fed. R. Evid. 401 and 402); Hearsay(Fed. R. Evid. 801); documents speak for themselves; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Lacks Authentication (Fed. R. Evid. 901) |

-43-

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| ¶ | PLAINTIFF'S EVIDENCE | DEFENDANTS' OBJECTIONS |
|---|---|---|
| | (hereinafter referred to as "SDCC") security policy barring outside maintenance workers from entering the San Diego Convention Center and from requiring the exclusive use of SDCC workers for cleaning, janitorial, maintenance, and related services ("Trade Show Cleaning Services"). A large number of those I contacted were opposed to and concerned with the SDCC's security policy. The following people wrote letters to SDCC expressing their opposition to this policy: Joe Loggia, CEO of Advanstar Communications; Patricia Dwyer, Senior Manager of Trade Show Services at Smith Bucklin; Barbara Meyers, Conference and Meeting Service Director at APCO International; B.J. Enright, President of Tradeshowlogistics; Ken McAvoy, Senior Vice President of Reed Exhibitions; Mary Kay Sustek, Senior Vice President at Nielsen Business Media; Martin Cymbal, President of Trade Show Contractors Association of Southern California; Ty Bobit, President and CEO of Bobit Business Media; and Mary Beth Rebedeau, Executive Director of the Society of Independent Show Organizers. True and correct copies of these letters are attached hereto as Exhibits 12A to 12I. | |
| 3. | In addition, I wrote a letter to the Mayor of San Diego, Jerry Sanders, voicing United's opposition to the SDCC's policy. A true and correct copy of this letter is attached hereto as Exhibit 12 J. | Relevance (Fed. R. Evid. 401 and 402); Hearsay(Fed. R. Evid. 801); Lacks Foundation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008) |

## V.    Evidentiary Objections to Exhibit 12-A - Letter dated June 27, 2007, from Pat Dwyer to Brad Gessner

SDCCC objects to Plaintiff's Exhibit 12-A, letter dated June 27, 2007, from Pat Dwyer to Brad Gessner, which appears to be duplicative of Exhibit A, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**W.    Evidentiary Objections to Exhibit 12-B - Letter dated June 22, 2007, from Mary Kay Sustek to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit 12-B, letter dated June 22, 2007, from Mary Kay Sustek to Brad Gessner, which appears to be duplicative of Exhibit B,  on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**X.    Evidentiary Objections to Exhibit 12-C - Letter dated June 14, 2007, from Ty Bobit to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit 12-C, letter dated June 14, 2007, from Ty F. Bobit to Brad Gessner, which appears to be duplicative of Exhibit C, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

**Y.    Evidentiary Objections to Exhibit 12-D - Letter dated July 20, 2007, from Mary Beth Rebedeau to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit 12-D, letter dated July 20, 2007, from Mary Beth Rebedeau to Brad Glessner, which appears to be duplicative of Exhibit D, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); Incomplete Document; and, Lacks Authentication (Fed. R. Evid. 901).

**Z.    Evidentiary Objections to Exhibit 12-E - Letter dated July 26, 2007, from B.J. Enright to Brad Gessner**

SDCCC objects to Plaintiff's Exhibit 12-E, letter dated July 26, 2007, from B.J. Enright to Brad Gessner, which appears to be duplicative of Exhibit E, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation;

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1   Lacks Personal Knowledge (Fed. R. Evid. 602); Calls for Speculation; Legal Conclusion; Improper

2   Lay Opinion (Fed. R. Evid. 701 and 704); Best Evidence Rule (Fed. R. Evid. 1001 through 1008);

3   and, Lacks Authentication (Fed. R. Evid. 901).

4       **AA.    Evidentiary Objections to Exhibit 12-F - Letter dated June 18, 2007, from
            Barbara Myers to Brad Gessner**

5

6       SDCCC objects to Plaintiff's Exhibit 12-F, letter dated June 18, 2007, from Barbara Myers to

7   Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R.

8   Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602);

9   Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best

10  Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

11      **BB.    Evidentiary Objections to Exhibit 12-G - Letter dated June 14, 2007, from Ken
            McAvoy to Mr. Gessner**

12

13      SDCCC objects to Plaintiff's Exhibit 12-G, letter dated June 14, 2007, from Ken McAvoy to

14  Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R.

15  Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602);

16  Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid.

17  901).

18      **CC.    Evidentiary Objections to Exhibit 12-H - Letter dated July 5, 2007, from Joe
            Loggia to Brad Gessner**

19

20      SDCCC objects to Plaintiff's Exhibit 12-H, letter dated July 5, 2007, from Joe Loggia to

21  Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R.

22  Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602);

23  Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid.

24  901).

25      **DD.    Evidentiary Objections to Exhibit 12-I - Letter dated June 8, 2007, from Martin
            Cymbal to Brad Gessner**

26

27      SDCCC objects to Plaintiff's Exhibit 12-I, letter dated June 8, 2007, from Martin Cymbal to

28  Brad Gessner on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed. R.

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602);

2  Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and 704); Best

3  Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

4      **EE.**    **Evidentiary Objections to Exhibit 12-J - Letter dated July 26, 2007, from Richard Simon to Honorable Jerry Sanders**

5

6      SDCCC objects to Plaintiff's Exhibit 12-J, letter dated July 26, 2007, from Richard Simon to

7  Honorable Jerry Sanders on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay

8  (Fed. R. Evid. 801); Misstates Evidence; Lacks Foundation; Lacks Personal Knowledge (Fed. R.

9  Evid. 602); Calls for Speculation; Legal Conclusion; Improper Lay Opinion (Fed. R. Evid. 701 and

10  704); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R.

11  Evid. 901).

12      **FF.**    **Evidentiary Objections to Exhibit 13 - San Diego Convention Center Corporation and Trade Show License Agreement**

13

14      SDCCC objects to Plaintiff's Exhibit 13, San Diego Convention Center Corporation,

15  Convention and Trade Show License Agreement on the following grounds: Relevance (Fed. R. Evid.

16  401 and 402); Hearsay(Fed. R. Evid. 801); Lacks Foundation; Lacks Personal Knowledge (Fed. R.

17  Evid. 602); Best Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed.

18  R. Evid. 901).

19      **GG.**    **Evidentiary Objections to Exhibit 14 - San Diego Convention Center General Policies, Rules, and Regulations**

20

21      SDCCC objects to Plaintiff's Exhibit 14, San Diego Convention Services General Policies,

22  Rules, and Regulations on the following grounds: Relevance (Fed. R. Evid. 401 and 402);

23  Hearsay(Fed. R. Evid. 801); Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602); Best

24  Evidence Rule (Fed. R. Evid. 1001 through 1008); and, Lacks Authentication (Fed. R. Evid. 901).

25      **HH.**    **Evidentiary Objections to Exhibit 17 - Certificate of Non-Filing**

26

27      SDCCC objects to Plaintiff's Exhibit 17, Secretary of State Certificate of Non-Filing dated

28  November 8, 2007, on the following grounds: Relevance (Fed. R. Evid. 401 and 402); Hearsay (Fed.

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

R. Evid. 801); Legal Conclusion; Lacks Foundation; Lacks Personal Knowledge (Fed. R. Evid. 602);

and, Best Evidence Rule (Fed. R. Evid. 1001 through 1008).

Dated:        December 21, 2007              **WILSON PETTY KOSMO & TURNER LLP**


                                             By:      /s/SOTERA L ANDERSON
                                                      REGINA A. PETTY
                                                      SOTERA L. ANDERSON

                                                      Attorneys for Defendant
                                                      SAN DIEGO CONVENTION CENTER
                                                      CORPORATION

DEFENDANT'S EVIDENTIARY OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION