James R. Lance (147173)
Jacob M. Slania (200652)
Dylan O. Malagrino (228052)
**KIRBY NOONAN LANCE & HOGE LLP**
600 West Broadway, Suite 1100
San Diego, California 92101-3387
Telephone (619) 231-8666
Facsimile (619) 231-9593

Theodore R. Tetzlaff (*Pro Hac Vice*)
Jeffrey A. Leon (*Pro Hac Vice*)
Kristopher J. Stark (*Pro Hac Vice*)
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, Illinois 60602-4224
Telephone (312) 977-4400
Facsimile (312) 977-4405

Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California corporation,<br><br>       Defendant. | CASE NO. 07-CV-2172 BEN(JMA)<br><br>**PLAINTIFF UNITED NATIONAL MAINTENANCE, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULES 12(B)(1) AND 12(B)(6)**<br><br>Complaint Filed: November 13, 2007<br><br>Date:      January 28, 2008<br>Time:     10:30 a.m.<br>Judge:    Hon. Roger T. Benitez<br>Crtrm:    3<br>Trial Date: None Set |

*(Left margin, vertical text)* Kirby Noonan Lance & Hoge LLP — 600 West Broadway, Suite 1100 San Diego, California 92101-3387

# TABLE OF CONTENTS

**Page**

1.  INTRODUCTION ........................................................................................... 1

2.  SUMMARY OF WELL-PLED FACTS............................................................ 2

3.  ARGUMENT ................................................................................................... 3

4.  UNITED AND SDCC CLEARLY CONDUCT BUSINESS IN THE FLOW OF
    INTERSTATE COMMERCE ........................................................................... 3

5.  SDCC'S ANTICOMPETITIVE ACTIONS ARE NOT IMMUNE FROM THE
    ANTITRUST LAWS ....................................................................................... 7

    A.  The City Of San Diego's General Powers To Protect The Public Welfare
        Do Not Immunize SDCC's Actions. ........................................................ 8

    B.  SDCC's Anticompetitive Actions Do Not Qualify For State Action
        Immunity. ................................................................................................. 9

        1)  The State of California has not Clearly Articulated a Policy to
            Supplant Trade Show Cleaning Services Competition with
            Regulation or Monopoly Public Service. ......................................... 9

            (a)  The Fact that California generally Empowers a City such as
                 San Diego to Create a Public Benefit Corporation such as
                 SDCC does not Constitute a Clearly Articulated Policy to
                 Supplant Trade Show Cleaning Services Competition................ 11

            (b)  The California Tort Claims Act does not Constitute a
                 Clearly Articulated Policy to Supplant Competition for
                 Trade Show Cleaning Services. ..................................................... 13

            (c)  California's Homeland Security Strategy Report does not
                 Constitute a Clearly Articulated Legislative Intention to
                 Supplant Competition for Trade Show Cleaning Services. .......... 14

        2)  SDCC cannot Qualify for State Action Immunity because its Trade
            Show Cleaning Service Rates are not Actively Supervised by the
            State........................................................................................... 16

6.  DISCOVERY IS REQUIRED TO DETERMINE WHETHER A PUBLIC
    BENEFIT CORPORATION SUCH AS SDCC QUALIFIES FOR IMMUNITY
    UNDER THE CALIFORNIA TORT CLAIMS ACT .................................... 17

    A.  Numerous Fact Issues not in the Current Record before the Court must be
        Known Before it can be Determined whether SDCC Meets the Definition
        of a "Public Entity" under the Tort Claims Act.................................... 17

    B.  SDCC at Best Seeks the Striking of a Remedy as The California Tort
        Claims Act Will Not Bar Injunctive Relief. ......................................... 19

7.  CONCLUSION ............................................................................................. 20

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

<u>**Table of Authorities**</u>

**Page(s)**

CASES

*Alphin v. Henson,*
    392 F. Supp. 813 (D. Md. 1975)................................................................12

*Anheuser Busch, Inc. v. Goodman,*
    745 F. Supp. 1045 (M.D. Pa. 1990)..........................................................14

*Boone v. Redevelopment Auth. of San Jose,*
    841 F.2d 886 (9th Cir. 1988)...............................................................10, 12

*C.f., City of Columbia v. Omni Outdoor Advertising, Inc.,*
    499 U.S. 365 (1991).................................................................................15

*Cedarhusrt Air Charter v. Waukesha County,*
    110 F. Supp.2d 891 (E.D. Wisc. 2000).....................................................14

*City of Lafayette, Louisiana v. Louisiana Power & Light Co.,*
    435 U.S. 389 (1978)...................................................................7, 9, 14, 15

*City of Merced v. Fields,*
    997 F. Supp. 1326 (E.D. Cal. 1998) ..........................................................3

*Community Communications Co. v. City of Boulder, Colorado,*
    455 U.S. 40 (1982)......................................................................11, 12, 14

*Conley v. Gibson,*
    355 U.S. 41 (1957)......................................................................................3

*Corsican Prods. v. Pitchess,*
    338 F.2d 441 (9th Cir. 1964) ......................................................................3

*E.W. Wiggins Airways v. Mass. Port Auth.,*
    362 F.2d 52 (1st Cir. 1966) ......................................................................12

*Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961) ...................................................................................8

*FTC v. Ticor Title Insurance Co.,*
    504 U.S. 621 (1992) .................................................................................16

*Goldfarb v. Virginia State Bar,*
    421 U.S. 773 (1975) ...................................................................................5

*Hahn v. Oregon Physicians Serv.,*
    689 F.2d 840 (9th Cir. 1982).......................................................................6

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) ................................................................................ 3

*Heart of Atlanta Motel, Inc. v. U.S.*,
    379 U.S. 241 (1964) ........................................................................................ 5

*Hertz Corp. v. City of New York*,
    1 F.3d 121 (2d Cir. 1993) ............................................................................... 14

*Highfield Water Co. v. Pub. Serv. Comm'n*,
    488 F. Supp. 1176 (D.C. Md. 1980) ............................................................... 12, 13

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
    425 U.S. 738 (1976) ........................................................................................ 6

*Knapp v. Palisades Charter High School*,
    146 Cal. App. 4th 708 (2007) ......................................................................... 18, 19

*Lancaster Commun. Hospital v. Antelope Valley Hospital Dist.*,
    940 F.2d 397 (9th Cir. 1991) ........................................................................... 10, 14

*McLain v. Real Estate Bd. of New Orleans, Inc.*,
    444 U.S. 232 (1980) ...................................................................................... 4, 6

*Monarch Entm't Bureau, Inc. v. New Jersey Highway Auth.*,
    751 F. Supp. 1290 (D.N.J. 1989) ..................................................................... 10, 11

*National Water Works Co. v. City of Kansas*,
    28 F. 921 (C.C. Mo. 1886) ............................................................................... 8

*Parker v. Brown*,
    317 U.S. 341 (1943) ...................................................................................... 9, 13

*Parks Sch. of Bus., Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ........................................................................... 3

*Pueblo Aircraft Serv., Inc. v. The City of Pueblo, Colorado*,
    679 F.2d 805 (10th Cir. 1982) ......................................................................... 12

*Summit Health, Ltd. v. Pinhas*,
    500 U.S. 322 (1991) ...................................................................................... 5, 6

*Sutton v. U.S.*,
    819 F.2d 1289 (5th Cir. 1987) ......................................................................... 17

*Town of Hallie v. City of Eau Claire*,
    471 U.S. 34 (1985) ................................................................................... 12, 15, 16

*U.S. v. American Bldg. Maint. Indus.*,
    422 U.S. 271 (1975) ........................................................................................ 5

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

*U.S. v. Brown,*
   5 F.3d 658 (3d Cir. 1993)...............................................................9

*U.S. v. Darby,*
   312 U.S. 100 (1941)...............................................................5

*Union Bridge Co. v. U.S.,*
   204 U.S. 364 (1907)...............................................................8

*United States v. City of Redwood City,*
   640 F.2d 963 (9th Cir. 1981)...............................................................3

*Vartan v. Harristown Dev. Corp.,*
   655 F. Supp. 430 (M.D. Pa. 1987)...............................................................12

*Washington State Elec. Contractors Ass'n. v. Forrest,*
   930 F. 2d 736 (1991)...............................................................16

*Wells v. One2One Learning Foundation,*
   39 Cal. 4th 1164 (2006)...............................................................18

*Western Waste Serv. System v. Universal Waste Control,*
   616 F.2d 1094 (9th Cir. 1980)...............................................................5, 6

*Wickard v. Filburn,*
   317 U.S. 111 (1942)...............................................................5

*Wilson v. S.F. Redev. Agency,*
   19 Cal.3d 555 (1977)...............................................................19

*Yee v. City of Escondido,*
   503 U.S. 519 (1992)...............................................................3

## STATUTES AND PROCEDURAL RULES

Cal. Govt. Code § 811.2...............................................................17

Cal. Govt. Code § 814...............................................................20

Cal. Govt. Code § 53051...............................................................19

FRCP 12(b)(6)............................................................... passim

FRCP 12(f)...............................................................19

**1. INTRODUCTION**

Defendant San Diego Convention Center Corporation, Inc. ("SDCC") sells trade show cleaning services to customers holding trade shows at the San Diego Convention Center ("SDCC Facility"). SDCC competed for such sales against Plaintiff United National Maintenance, Inc. ("United") until it precipitously used its control of the SDCC Facility to bar United's employees from entering the Facility, thus ending 19 years of competition between SDCC and United. By its own admission, SDCC profits from its sale of trade show cleaning services and its profits from such sales have risen since SDCC locked United's employees out of the SDCC Facility.

SDCC has filed a FRCP 12(b)(6) motion, which must take all of the facts in the Verified Complaint (including the above) as true. Further, SDCC's Motion does not challenge the substantive validity of any of United's claims. The sole basis of SDCC's Motion is an assertion that SDCC's actions in excluding its sole cleaning competitor from the SDCC Facility are immune from antitrust challenge because the SDCC operates outside the flow of interstate commerce and its actions are asserted to be motivated by a desire to protect the public from security threats.

SDCC can not prevail on its Motion without contradicting the well-pled facts in United's Verified Complaint establishing that (i) SDCC is a commercial actor attracting over one million visitors a year and with sales offices in several states selling to national and international businesses; and, (ii) SDCC's stated security concerns are a sham which do not further security at the SDCC Facility and are intended to provide cover for its illegal, anticompetitive, conduct.

Further, SDCC's discretion as to how to best protect the public welfare at the SDCC Facility is subject to federal law, including the antitrust laws, which exempt actions that run afoul of the Clayton and Sherman Acts only where the narrow requirements of the state action doctrine are met. Here, SDCC cannot invoke a claim of immunity under the state action doctrine because it cannot point to a clearly articulated state policy to preempt competition at convention centers that would justify its actions, and because its rates for maintenance services are not actively supervised by the state.

/ / /

/ / /

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

**2. SUMMARY OF WELL-PLED FACTS**

This is an antitrust lawsuit challenging the actions taken by SDCC to bar United's employees from entering the SDCC building, thus rendering United unable to compete with SDCC in performing trade show cleaning. The following facts are presented in the Verified Complaint and must be accepted as true for purposes of this Motion.

United has provided cleaning services at the SDCC facility in competition against SDCC for 19 years. (Ver. Compl. ¶ 25.) United has an exemplary record for quality, provides a very well-priced product, and it has never been cited for a security breach or received a complaint regarding security procedures during those 19 years. (*Id.* at ¶ 56.)

SDCC, which by its own admission, has a 60% market share in providing maintenance services at the SDCC Facility (Ver. Compl. ¶ 37.) SDCC profits from these sales and tried to increase its profits by aggressively pursuing United's customers, trying to get those customers to switch to using SDCC's cleaning staff. (*Id.* at ¶¶ 45–48.) SDCC's purpose in doing so was clear—it wanted to earn additional revenues from serving these customers. Each of those customers rejected SDCC's offer and decided to remain with United. (*Id.* at ¶¶ 47–48.)

Although SDCC's security obligations are real and highly important, its security justification and discriminatory application was a sham created to justify SDCC's anticompetitive conduct. (Ver. Compl. ¶¶ 49, 52, 54.) Shortly after its offers were rejected, SDCC suddenly announced that United's employees would be barred from the SDCC Facility because of unstated and unspecified security concerns. (*Id.* at ¶¶ 51–52.) This policy was applied exclusively to maintenance services, and was not applied to any of the thousands of other persons who work on the convention center floor in setting up and breaking down trade shows. (*Id.* at ¶ 53.)

SDCC rejected, without explanation, United's offer to run background checks on their employees, or to allow SDCC to run those background checks itself at United's expense. (Ver. Compl. ¶ 58.) It is the opinion of security professionals that such background checks would meet any reasonable security concerns, and that SDCC's policy does nothing to enhance security at the facility because SDCC has not applied it to any other laborers and because SDCC does not use a photo-badging program as is in use in other large convention

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   facilities. (*Id.* at ¶ 55.) Even without such a program, United's employees all wear computer

2   generated photo badges when on-site at the SDCC, thus ensuring security. (*Id.* at ¶ 59.)

### 3. ARGUMENT

4       SDCC seemingly willfully ignores the procedural posture of its motion, which is made

5   pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To prevail on its Motion, SDCC

6   must show that United's verified complaint "fail[s] to state a claim upon which relief can be

7   granted." FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, this Court must accept all

8   material allegations in the complaint as true and construe them in the light most favorable to United.

9   *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Accordingly, dismissal

10   pursuant to Rule 12(b)(6) is warranted only in extraordinary cases. *City of Redwood City*, 640 F.2d

11   at 966; *Corsican Prods. v. Pitchess*, 338 F.2d 441, 442–43 (9th Cir. 1964) (motion to dismiss should

12   only be granted "in the extraordinary case where the pleader makes allegations which show on the

13   face of the complaint some insuperable bar to relief"); *Hall v. City of Santa Barbara*, 833 F.2d 1270,

14   1274 (9th Cir. 1986) (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE

15   AND PROCEDURE § 1357, at 598 (1st ed. 1969)), *abrogated on other grounds*, *Yee v. City of*

16   *Escondido*, 503 U.S. 519 (1992); *City of Merced v. Fields*, 997 F. Supp. 1326, 1331 (E.D. Cal.

17   1998). It is thus well established that United's "[C]omplaint should not be dismissed for failure to

18   state a claim unless it appears beyond doubt that [United] can prove no set of facts in support of [its]

19   claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *United*

20   *States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

21       SDCC ignores the several hundred well-pled factual averments of the Complaint in their

22   entirety, and these well-pled facts resoundingly defeat SDCC's Motion, especially when they are

23   accepted as true and construed in the light most favorable to United.

### 4. UNITED AND SDCC CLEARLY CONDUCT BUSINESS IN THE FLOW OF INTERSTATE COMMERCE

26       SDCC moves to dismiss Counts I through IV of United's Complaint for failing to

27   "allege sufficient facts to support the key element of having a direct and substantial affect on

28   interstate commerce." (SDCC. 12(b)(6) Mem., pp. 8, 10.) SDCC asserts that "cleaning

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   contracts which are to be wholly performed in the State of California" do not meet the Sherman

2   Act's interstate commerce requirement.  (*Id.* at p. 9.)  SDCC's narrow view of interstate commerce

3   has been rejected since the New Deal.

4          The facts in United's Verified Complaint establish that the business of the SDCC and United

5   unquestionably occurs within the flow of interstate commerce, which only requires the parties'

6   activities to have an "effect on commerce."  *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444

7   U.S. 232, 242 (1980).  The "effect on commerce" test allows plaintiffs to "demonstrate a substantial

8   effect on interstate commerce generated by [defendant's business] activities" without making the

9   "more particularized showing of an effect on interstate commerce caused by [defendant's alleged

10  antitrust violations]."  *Id.* at 242–43.  Here are the well-plead facts in the Complaint that must be

11  taken as true:

12       • The activities of SDCC, as described herein, have been within the flow of, and have
           substantially affected interstate commerce as the business of attracting and servicing
13         conventions is at the core of interstate commerce.

14       • Indeed, the vast majority of SDCC conventions are organized and contracted for by
           out-of-state entities, and the participants overwhelmingly travel to San Diego in the
15         flow of interstate commerce.

16       • Further, businesses such as UNITED perform services at the SDCC Facility pursuant
           to national contracts.
17

18  (Ver. Compl. ¶ 9.)

19         These facts establish that not only does SDCC's business of managing, operating, and

20  marketing the SDCC Facility substantially affect interstate commerce, but that SDCC's

21  corresponding antitrust violations substantially affect interstate commerce as well.  Even SDCC

22  readily admits that "[n]early one million out-of-town and local guests currently attend business or

23  recreational events in the [SDCC Facility] each year." (Prelim. Inj. Resp., p. 4 *citing* Wallace Decl.,

24  ¶ 3.)  Indeed, the very purpose of the SDCC Facility is to bring interstate commerce to the City of

25  San Diego and its primary business is to lease the SDCC Facility to trade associations from all over

26  the country. (Ver. Compl., ¶¶ 11–13.)  Despite SDCC's representation that "[t]he Convention Center

27  only operates within the County and City of San Diego" and "is not operating across interstate lines"

28  (Prelim. Inj. Transcript, p. 22, lns. 11–14, attached to Malagrino Decl. as Ex. 2), it has sales offices

1   in Chicago and Washington D.C., the very purpose of which are to bring trade associations and

2   exhibitors to San Diego. (SDCC Website, attached to Malagrino Decl. as Ex. 1.)

3        Moreover, any question as to whether SDCC's anticompetitive actions have substantially

4   affected interstate commerce is answered by the letters sent by the trade show industry to SDCC

5   voicing opposition to this policy. (Ver. Compl., ¶ 34.) Such customer opposition, voiced from

6   entities operating in numerous states, clearly evidences the fact that SDCC has completely

7   foreclosed the market for trade show cleaning services to SDCC's competitors, leaving trade show

8   associations, general contractors and exhibitors without competitive alternatives for price and

9   service. (*Id.* at ¶¶ 33–35.)

10       SDCC's narrow view of interstate commerce has been consistently rejected by the courts,

11  which have found that the Sherman Act does not merely apply to activities that are in interstate

12  commerce but also applies "to local activities which, although are not themselves within the flow of

13  interstate commerce, substantially affect interstate commerce." *U.S. v. American Bldg. Maint.*

14  *Indus.*, 422 U.S. 271, 278 (1975). The Ninth Circuit has observed that "[i]t is well established that

15  the reach of the Sherman Act is as inclusive as the constitutional limits of Congress' power to

16  regulate interstate commerce" and "[a]s judicial construction of the scope of the commerce clause

17  has expanded so has the reach of the Sherman Act." *Western Waste Serv. System v. Universal Waste*

18  *Control*, 616 F.2d 1094, 1096 (9th Cir. 1980) (citations omitted). This congressional power under

19  the Commerce Clause is extensive and far reaching. *See, e.g., Wickard v. Filburn*, 317 U.S. 111

20  (1942) (interstate commerce affected by farmer who grows his own wheat); *U.S. v. Darby*, 312 U.S.

21  100 (1941) (interstate commerce affected by local labor and employment practices); *Heart of*

22  *Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241 (1964) (interstate commerce affected by single family

23  owned motel because they may service out of state travelers).

24       Accordingly, the Sherman Act has time and time again been held applicable to local

25  activities. *See, e.g., Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991) (allegations of a

26  single opthamological surgeon who had been excluded by a local hospital and its staff were

27  sufficient to meet the interstate commerce requirement); *Goldfarb v. Virginia State Bar*, 421

28  U.S. 773, 783–785 (1975) (interstate commerce affected by the intrastate fixing of attorney's

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1  fees); *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738 (1976) (interstate commerce

2  affected by intrastate monopolization of hospital services); *McLain*, 444 U.S. at 246 (interstate

3  commerce affected by real estate brokers fixing brokerage fees on the local sale of residential

4  houses); *Western Waste Serv. System v. Universal Waste Control*, 616 F.2d 1094 (9th Cir.

5  1980) (local garbage collection company affects interstate commerce).

6        The "concededly rigorous standard" required to dismiss an antitrust action based on the

7  interstate commerce requirement was demonstrated in *Hospital Bldg. Co. v. Trustees of Rex*

8  *Hospital.*, 425 U.S. 738, 746 (1976). *Hospital Building* involved allegations by a hospital that a

9  rival hospital conspired to block its expansion and relocation in violation of the Sherman Act. The

10 purchase of medicine and supplies from out of state sellers, receipt of revenue from out of state

11 insurers, and the funding of the expansion by out of state lenders were found to withstand a motion

12 to dismiss. In light of this standard, it is without doubt that United has properly pled the interstate

13 commerce requirement.

14       Further, SDCC misguidedly contends that United is required to "allege…facts showing

15 how [SDCC's] security policy requiring the use of pre-screened, long term employees for

16 cleaning services, directly and substantially affects interstate commerce." (SDCC 12(b)(6)

17 Mem., p. 8.) Although United has made this more particularized showing, as the Supreme

18 Court and subsequent precedent in the Ninth Circuit have clearly established, it was not

19 necessary. United need only show the broader requirement that SDCC's general business

20 activities (marketing, managing, and operating the SDCC Facility for regional and national

21 conventions), independent of these violations, clearly affect interstate commerce. United does

22 not have to show that the challenged action itself is part of interstate commerce. *See Summit*

23 *Health*, 500 U.S. at 330 ("The proper analysis focuses, not upon actual consequences but

24 rather upon the potential harm that would ensue if the conspiracy were successful…Thus,

25 respondent need not allege, or prove, an actual effect on interstate commerce to support

26 federal jurisdiction."); *Western Waste Serv. Sys.*, 616 F.2d at 1097 (sufficient for "'defendants'

27 business activities, independent of the violations, [to] affect interstate commerce."); *Hahn v.*

28 *Oregon Physicians Serv.*, 689 F.2d 840, 844 (9th Cir. 1982) (requirement met if shown that

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1 defendants' activities affect commerce).  It is without question that the marketing managing

2 and operation of the SDCC Facility "is at the core of interstate commerce" and therefore

3 substantially affects interstate commerce and that United has pled as such because "the vast

4 majority of SDCC conventions are organized and contracted for by out-of-state entities, and

5 the participants overwhelmingly travel to San Diego in the flow of interstate

6 commerce…[and] businesses such as United perform services at the SDCC Facility pursuant

7 to national contracts." (Ver. Compl. ¶ 9.)

### 5. SDCC'S ANTICOMPETITIVE ACTIONS ARE NOT IMMUNE FROM THE ANTITRUST LAWS

10    SDCC essentially asserts that it is a governmental entity and that its actions, even though

11 they are anticompetitive, are made immune by SDCC's allegedly pure motives and alleged

12 governmental status.  However, the Supreme Court has made clear that an entity such as SDCC is

13 not immune from the antitrust laws simply because it may be a quasi-governmental entity:

> In 1972, there were 62,437 different units of local government in this country.  Of this number 23,885 were special districts which had a defined goal or goals for the provision of one or several services…These units may, and do, participate in and affect the economic life of this Nation in a great number and variety of ways…If municipalities were free to make economic choices counseled solely by their own parochial interests and without regard to their anticompetitive effects, a serious chink in the armor of antitrust protection would be introduced at odds with the comprehensive national policy Congress established…In light of the serious economic dislocation which could result if cities were free to place their own parochial interests above the Nation's economic goals reflected in the antitrust laws, we are especially unwilling to presume that Congress intended to exclude anticompetitive municipal action from their reach.

22 *City of Lafayette, Louisiana v. Louisiana Power & Light Co.*, 435 U.S. 389, 407–8, 412–13 (1978).

23 SDCC does not even have the sovereign status of a city, yet it has placed its own parochial economic

24 interests above those of the antitrust laws which is focused on promoting customer choice and lower

25 prices.

26 / / /

27 / / /

28 / / /

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

**A.  The City Of San Diego's General Powers To Protect The Public Welfare Do Not Immunize SDCC's Actions.**

SDCC asserts that it is immune because its actions were intended to protect the public welfare. (SDCC 12(b)(6) Mem., pp. at 3–4)  SDCC's assertion ignores SDCC's profit motive as well as the well-pled facts establishing that security is a sham justification for its anticompetitive conduct.  That alone requires rejection of SDCC's Motion at this stage of the proceedings, as do the well-pled facts concerning the lack of any security benefit from SDCC's policy and the availability of security-enhancing alternatives that do not result in an SDCC monopoly.  (Ver. Compl. ¶¶ 55–59.)

Further, there is no legal basis for SDCC's claimed "public welfare" immunity.  SDCC's sole cited authority for this proposition is *National Water Works Co. v. City of Kansas*, 28 F. 921 (C.C. Mo. 1886)—a 121 year old breach of contract dispute that predated the passage of the Sherman Act by four years and the inception of the State Action doctrine by 57 years.  *National Water Works* concerns whether a municipality breached a contract with a pipe laying company by requiring the company to move its previously laid pipes so the city could dig a sewer: "the question is presented whether a city incurred any liability for so contracting a sewer as to interfere with and compel the re-lapping of the water pipe of the plaintiff…" *Id.* at 922.  (SDCC 12(b)(6) Mem .at 3.)[1] As an initial matter, this authority is entirely inapplicable as it concerns whether a city can contract away its right to protect the public welfare.  It is not an antitrust case and it is not an immunity case; and, there is no such contract issue in this case. *See id.* (concluding that "no municipality can make a contract divesting or abridging its sole control over such [public health] matters.").

Second, remembering the well-pled facts concerning the sham nature of the security

---

[1] SDCC also cites *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *Union Bridge Co. v. U.S.*, 204 U.S. 364 (1907).  SDCC citation of *Noerr* is completely out of context and has absolutely no bearing here as it dealt with the application of the antitrust laws to political actions such as petitioning or lobbying the government for changes to laws or regulations. Similarly, *Union Bridge* concerned whether an order by the Secretary of War to a bridge company to make alterations constituted a taking for purposes of eminent domain.  It is also entirely inapposite.

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1  justification and the ineffectual nature of the policy at issue, SDCC's ability to protect the public

2  welfare is not even factually at issue at this stage of the litigation. And, even if SDCC's motives

3  were at issue, "[a]n anticompetitive motive may trigger antitrust scrutiny of otherwise non-

4  commercial conduct. The opposite however, is not true. *A beneficient objective does not excuse*

5  *commercial activities from compliance with the Sherman Act.*" *U.S. v. Brown*, 5 F.3d 658, 666 n.7

6  (3d Cir. 1993). Finally, SDCC is a public benefit corporation, not a city, and it cannot be

7  determined from the pleadings whether the SDCC can stand in the shoes of the City for purposes of

8  its discretion to protect public welfare.

**B.    SDCC's Anticompetitive Actions Do Not Qualify For State Action Immunity.**

The only judicially recognized basis for SDCC to claim immunity from both the monetary

and injunctive relief United seeks is through the State Action immunity doctrine, which only

provides immunity to entities whose actions, although anticompetitive, are undertaken according to a

clearly articulated state policy to supplant competition, and where such a clearly articulated policy is

accompanied by active supervision of the rates to be charged. *Parker v. Brown*, 317 U.S. 341, 351

(1943). SDCC cannot meet these narrow requirements.

**1)    The State of California has not Clearly Articulated a Policy to Supplant Trade Show Cleaning Services Competition with Regulation or Monopoly Public Service.**

SDCC's own brief concedes that it cannot claim immunity absent a clearly articulated state

policy "to displace competition with regulation or monopoly service." (SDCC 12(b)(6) Mem., p. 5.)

Indeed, the Supreme Court has made clear that such a policy "to displace competition" must be

"clearly articulated and affirmatively expressed." *City of Lafayette*, 435 U.S. at 410. SDCC

unavailingly claims three policies immunize its behavior: (a) California's general empowerment of a

city to create a public benefit corporation constitutes a clearly articulated policy to supplant

convention center services competition; (b) The California Tort Claims Act constitutes a clearly

articulated policy to supplant convention center services competition; and, (c) California's

Homeland Security Strategy Report constitutes a clearly articulated legislative intent to supplant

competition. Not one these policies even comes close to articulating a policy to displace

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1  competition at convention centers.

2      SDCC's assertion of state action immunity is particularly ill founded on a Rule 12 motion,

3  where all well-pled facts must be accepted as true. The Ninth Circuit has recognized the importance

4  of a fact intensive analysis in state action immunity cases. *See Lancaster Commun. Hospital v.*

5  *Antelope Valley Hospital Dist.*, 940 F.2d 397, 401 (9th Cir. 1991) (distinguishing "defendants'

6  cases" as being "of limited value because they simply involve…circumstances quite unlike those

7  now presented. To recite the facts of these cases is to distinguish them from the instant case."). The

8  highly fact-intensive nature of the inquiry here is highlighted by the SDCC's policies under which

9  SDCC claims immunity are not part of United's Complaint, are not supported by proper citation, and

10  are not accompanied by a motion for this Court to take judicial notice of this material beyond the

11  scope of United's pleadings.[2]

12      SDCC's facile assertion that *Monarch Entm't Bureau, Inc. v. New Jersey Highway Auth.*, 751

13  F. Supp. 1290 (D.N.J. 1989) addresses "the same issue presented in this case" (SDCC 12(b)(6)

14  Mem., p. 6) demonstrates the importance of a highly fact-intensive inquiry and shows the danger of

15  SDCC's shallow analysis. In fact, beyond the vague similarity of a concert venue and a convention

16  center, the situation in *Monarch Entertainment* was wholly different than the dispute in the instant

17  case. First, *Monarch Entertainment*, was decided on summary judgment and on an extensive factual

18  record. Second, the governmental authority seeking immunity, the New Jersey Highway Authority,

19  was a direct instrumentality of the state with the commissioners directly appointed by the governor

20  and with the Authority's actions having no force absent a 10 day governor's review period. *Id.* at

21  1291–92. The New Jersey Highway Authority is thus wholly unlike the SDCC, which is a public

22  benefit corporation whose shares are owned by a city, which in turn exists by virtue of the State of

23  California, but does not have its actions reviewed by the governor's office before they take

24

---

25  [2] In contrast, SDCC's citation of *Boone v. Redevelopment Auth. of San Jose*, 841 F.2d 886 (9th Cir.

26  1988) was decided on a Rule 12 motion because it required only reference to the words of the enabling statute and well accepted case law concerning the grant of authority inherent in the power to

27  zone. *See Id.* at 890–91 (citing case law interpreting similar statutory language). Thus, *Boone* would not support summary judgment, let alone a Rule 12 motion.

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   effect.  Third, *Monarch Entertainment* did not involve a governmental unit taking action to advance

2   itself as a competitor as the SDCC has done here.  Rather, the challenged conduct concerned the

3   Authority's decision to contract with a booking agent for the concert venue on an exclusive basis and

4   the Authority had always contracted exclusively.  Fourth, the Plaintiff conceded that there was a

5   clear legislative intention to permit the authority to enter into exclusive contracts for paving and

6   towing and other highway related contracts, and the court found this clear legislative

7   intention extended to exclusive contracts for the concert venue as well.  *Id.* at 1297.  Further, when

8   the Authority was specifically enabled by the legislature to continue operating the concert venue in

9   1968, the matter of exclusive booking was explicitly discussed and analogized as "not unlike the

10  situation where we built millions of dollars worth of restaurants and gas stations and we turned them

11  over to somebody else to operate . . . "  *Id.* at 1298.  The court thus concluded that the legislature,

12  having known of these contracts, clearly intended to authorize them.  *Id.*  SDCC can point to no

13  similar record.

> (a)    **The Fact that California generally Empowers a City such as San Diego to Create a Public Benefit Corporation such as SDCC does not Constitute a Clearly Articulated Policy to Supplant Trade Show Cleaning Services Competition.**

17      SDCC claims immunity because "[t]he State has authorized municipalities, such as the City

18  of San Diego, to conduct business for the benefit of the people" and that the SDCC "operates

19  pursuant to this state authority".  (SDCC 12(b)(6) Mem., p. 6.)  This argument does not come close

20  to meeting the clear articulation requirement of state action immunity, and would immunize almost

21  any municipal action since all municipalities exist by virtue of a legislative mandate to "benefit the

22  people."  Consider the indirect nature of this supposed clear legislative intention: the State has given

23  general authorities to municipalities.  The State did not create SDCC.  The State does not regulate

24  SDCC.  The State does not regulate the City of San Diego's creation of SDCC.  In fact, because the

25  SDCC has failed to register as a public agency on the Roster of Public Agencies with the California

26  Secretary of State, the State may not even be aware of SDCC's existence. (Ver. Compl. ¶ 6.)

27      The Supreme Court rejected this very type of broad authority in *Community*

28  *Communications Co. v. City of Boulder, Colorado*, 455 U.S. 40 (1982), where the City argued

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

1  clear articulation could be derived from the State giving municipalities "every power

2  theretofore possessed by the legislature." *Id.* at 52. The Supreme Court rejected this position:

> 3  But plainly the requirement of 'clear articulation and affirmative
>    expression' is not satisfied when the State's position is one of *mere*
> 4  *neutrality* respecting the municipal action challenged as
>    anticompetitive. A State that allows its municipalities to do as they
> 5  please can hardly be said to have 'contemplated' the specific
>    anticompetitive actions for which municipal liability is
> 6  sought...Acceptance of such to a proposition – that the general grant
>    of power to enact ordinances necessarily implies state authorization to
> 7  enact specific anticompetitive ordinances – would wholly eviscerate
>    the concepts of 'clear articulation and affirmative expression' that our
> 8  precedents require.

9  *Id.* at 55–56 (emphasis added). *See also Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39

10 (1985) ("The State may not validate a municipality's anticompetitive conduct simply by declaring it

11 to be lawful."). SDCC's case is even weaker than the City of Boulder's because *Boulder* involved a

12 city's exercise of power, and SDCC is not a city and does not have the status of a city.

13       The general authority given to the City of San Diego is not specific to the convention

14 industry in California or a public benefit corporation operating a convention center, and it expresses

15 no intention to supplant competition for services performed at the SDCC Facility. It is not "clearly

16 articulated and affirmatively expressed" as was the policy in the cases SDCC cites where state action

17 immunity was actually conferred. (See SDCC 12(b)(6) Mem., pp. 5–8).[3] Further, none of the

18

19  ───────────────

20  [3] *See, e.g., Highfield Water Co. v. Pub. Serv. Comm'n*, 488 F. Supp. 1176 (D.C. Md. 1980) (clearly articulated policy to supplant competition where agencies were granted authority to (1) regulate rates and service of utilities; and, (2) displace an existing system to ensure quality and prevent duplication);

21  *Boone*, 841 F.2d 886 (9th Cir. 1988) (clearly articulated policy to supplant competition where state law authorized cities to take actions to redevelop blighted areas including the power to zone, "which by its

22  very nature encompasses the power to exclude competition."); *Vartan v. Harristown Dev. Corp.*, 655 F. Supp. 430 (M.D. Pa. 1987) (clearly articulated policy to supplant competition where state statute

23  specifically addressed subject of urban development and authorized local authorities to redevelop blighted areas using zoning powers); *Pueblo Aircraft Serv., Inc. v. The City of Pueblo, Colorado*, 679

24  F.2d 805 (10th Cir. 1982) (was a foreseeable result of a state statute specifically authorizing a city to

25  acquire and operate a municipal airport for public purposes and matters of public necessity to enter into an exclusive contract with a fixed base operator); *Alphin v. Henson*, 392 F. Supp. 813 (D. Md. 1975)

26  (state action doctrine applies to antitrust action regarding airport lease negotiations where municipality is

27  granted specific authority by state legislature to operate airport). The holding in *E.W. Wiggins Airways v. Mass. Port Auth.*, 362 F.2d 52 (1st Cir. 1966)(because state statute specifically authorized the Port

28  (footnote continued)

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   authority SDCC cites involves a situation where the governmental unit promoted itself directly at the

2   expense of its direct competitors.  At best, the State of California's view of SDCC's actions here

3   would be that of "mere neutrality."

4          The rejection of state action immunity in *Capital City Cab Services, Inc. v. Susquehanna*

5   *Area Regional Airport Auth.* is instructive.  470 F. Supp. 2d 462 (M.D. Pa. 2000).  There, the Airport

6   Authority claimed its exclusive contract with a taxi company for airport pickups was immune to

7   antitrust challenge because the authority was explicitly authorized to enter into contracts for ground

8   transportation services.  *Id.* at 474.  The court rejected this argument because "the delegation of the

9   naked power to contract does not suggest that the Pennsylvania legislature intended to permit [the

10  Authority] to enter into contracts that would violate federal antitrust laws."  *Id.*  The same is true

11  here.

12              **(b)    The California Tort Claims Act does not Constitute a Clearly
                        Articulated Policy to Supplant Competition for Trade Show**
13                      **Cleaning Services.**

14         SDCC also claims, without any supporting citation, that immunity under California's Tort

15  Claims Act would also confer federal state action immunity: "[b]y enacting the Tort Claims Act . . .

16  the state legislature intended SDCC actions taken in the operation and management of the

17  Convention Center to be covered."  (SDCC 12(b)(6) Mem., p. 7.)[4]

18         However, it is clear that the Sherman and Clayton Antitrust Acts, upon which this lawsuit are

19  founded, are federal laws not governed by the California Tort Claims Act.  SDCC nonetheless baldy

20  asserts that "[t]he immunity provided to SDCCC under the Tort Claims Act is, therefore, sufficient

21

22  ─────────────────────

23  Authority to enter into contracts for use of the airport, decision by Port Authority to enter into exclusive
    lease with fixed base operator at airport was immune under the state action doctrine) is necessarily
    superseded by the five Supreme Court cases in the interim on the clear articulation issue.  In 1980, the

24  *Highfield* court observed that "[t]he state action doctrine remained undeveloped until recent years when
    the Supreme Court made it plain that the doctrine is not as broad as the *Parker* language suggests."

25  *Highfield*, 488 F. Supp. at 1186.

26  [4] Indeed, for purposes of this Rule 12 Motion, it is not at all clear that SDCC qualifies for immunity

27  under California's Tort Claims Act, as is discussed below at pp. 18–22.

28

1  for purposes of the Sherman Act as well." There is not a single citation accompanying that bald and

2  sweeping assertion. Indeed, the Supreme Court has rejected "[the] position that an antitrust claim

3  will not lie for anticompetitive action which, though not state directed, is lawful under state law."

4  *City of Lafayette*, 435 U.S. at 415 n. 45.

5  Notably, SDCC has not cited a single case where a state tort claims act can satisfy the clear

6  articulation requirement for state immunity to a federal antitrust claim. Indeed, courts have found

7  numerous governmental and quasi-governmental entities may be liable under the federal antitrust

8  laws. *See, e.g.*, *Community Communications Co. v. City of Boulder*, 455 U.S. 40 (1982) (city not

9  immune from antitrust laws for restricting private actor from providing cable services); *Lancaster*

10  *Commun. Hospital v. Antelope Hospital Dist.*, 940 F.2d 397 (9th Cir. 1991) (hospital district not

11  protected by state action doctrine from antitrust laws); *Cedarhusrt Air Charter v. Waukesha County*,

12  110 F. Supp.2d 891 (E.D. Wisc. 2000) (county not immune from antitrust laws for imposing

13  requirement that aircraft owners at county airport exclusively use single fuel supplier); *Hertz Corp.*

14  *v. City of New York*, 1 F.3d 121, 128 (2d Cir. 1993) (city not immune from antitrust laws for

15  enforcing municipal ordinance prohibiting rental car companies from prohibiting higher fees where

16  state legislature had no clearly articulation regarding rental car companies); *Anheuser Busch, Inc. v.*

17  *Goodman*, 745 F. Supp. 1045 (M.D. Pa. 1990) (liquor control board not entitled to state action

18  immunity and regulations were price fixing scheme in violation of antitrust laws). Nor has SDCC

19  cited any legislative authority indicating that the California legislature wished specifically to

20  immunize against federal antitrust law. SDCC's assertion fails the clear articulation standard.

21  **(c)   California's Homeland Security Strategy Report does not
        Constitute a Clearly Articulated Legislative Intention to Supplant**

22  **Competition for Trade Show Cleaning Services.**

23  SDCC also claims that vague statements in a Governor's report on homeland security

24  provide it state action immunity. SDCC relies solely on vague statements such as "protecting our

25  community from [acts of terrorism] is the highest priority of the Schwarzenegger Administration"

26  and that the State seeks to "reduce California's vulnerability to terrorism." (SDCC 12(b)(6) Mem.,

27

28

KNLH\504682.1

-14-

07-CV-2172 BEN(JMA)

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1    p. 7.)  These statements are not a clearly articulated legislative intention to preempt competition in

2    trade show cleaning or other trade show-related services.[5]  They are not even a clear articulation of a

3    policy to do anything in particular.  The statements are at best aspirational and do not in any way

4    immunize SDCC's specific actions that are the subject of this lawsuit.

5         Indeed, SDCC could probably cite to thousands of California governmental documents

6    discussing the need to prevent terrorism in the State.  All such materials would be entirely beside the

7    point as SDCC cannot point to any legislative action or intention to allow convention centers in

8    California to preempt the application of the federal antitrust laws in order to implement security

9    measures.[6]

10        Further, as the well-pled facts in United's Complaint make clear, SDCC's actions do not

11   enhance security, and there were many security-enhancing alternatives available to the SDCC that

12

13   _____

[5] Further, such statements from the governor's office do not constitute an articulation of a policy

14   of the California General Assembly, and state action immunity requires a clearly articulated
     intention of a state legislature.  *See e.g., City of Lafayette,* 435 U.S. at 415 ("an adequate state

15   mandate for anticompetitive activities of cities and other subordinate governmental units exists
     when it is found 'from the authority given a governmental entity to operate in a particular area,

16   that the legislature contemplated the kind of action complained of.'").

17
     [6] SDCC notes that courts do not require precision in the clearly articulated legislative authorization.

18   (SDCC 12(b)(6) Mem. at p. 5.)  However, SDCC takes this leeway miles too far as made clear by *Town
     of Hallie v. City of Eau Claire,* where the Supreme Court squarely addressed "how clearly a state policy

19   must be articulated for a municipality to be able to establish that its anticompetitive activity constitutes
     state action." 471 U.S. at 40.  The Court stated that "[i]t is not necessary…for the state legislature to

20   have stated explicitly that it expected the City to engage in conduct that would have anticompetitive
     effects" so long as the statutory scheme "provided [a] regulatory structure that inherently displace[d]

21   unfettered business freedom." *Id.* at 42 (*quoting New Motor Vehicle Board v. Orrin W. Fox Co.,* 439

22   U.S. 96, 109 (1978)).  In *Town of Hallie,* the Court found such an inherent displacement of business
     freedom in the state's "empowering the City to refuse to service un-annexed areas." *Id.*  Eau Claire's

23   refusal to provide sewage treatment unless the towns agreed to allow Eau Claire to provide trash
     collection was thus found to be immune.  SDCC points to no statutory scheme involving it which

24   inherently displaces business freedom.  C.f., *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499

25   U.S. 365, 373 (1991) (finding clear articulation and thus conferring immunity to a city that had passed a
     moratorium on new billboards because "the very purpose of zoning regulation is to displace unfettered

26   business freedom…A municipal ordinance restricting the size, location, and spacing of billboards surely
     is a common form of zoning necessarily protects existing billboards against some competition from new

27   comers.").

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   did not require to exclude United's employees.  (Ver. Compl. ¶¶ 56–58.)  SDCC had available to it

2   numerous ways to achieve the Governor's general security aspirations that would not have violated

3   the antitrust laws including background checking United's employees.  Indeed, accepting the well-

4   pled facts of the Verified Complaint as true, the security justification is in any event a sham,

5   confabulated by SDCC to justify a naked effort to monopolize the maintenance services market at

6   the SDCC.

7          2)     **SDCC cannot Qualify for State Action Immunity because its
                   Trade Show Cleaning Service Rates are not Actively
8                  Supervised by the State.**

9          Even a clearly articulated state policy to preempt competition cannot establish state action

10  immunity unless the state also actively supervises the rates that the immunized entity charges.  The

11  Supreme Court made clear in *California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc,* that

12  there are "two standards for antitrust [state action] immunity":  (a) the immunity must be "clearly

13  articulated and affirmatively expressed as state policy" and (b) "the policy must be actively

14  supervised by the state itself." 445 U.S. 97, 105 (1980).  The active supervision requirement exists

15  to ensure that "the State has exercised sufficient independent judgment and control so that the details

16  of the rates or prices have been established as a product of deliberate state intervention . . . ." *FTC v.*

17  *Ticor Title Insurance Co.*, 504 U.S. 621, 634–35 (1992).

18         SDCC does not allege that its trade show cleaning services rates are actively supervised by

19  the State, nor could it make such allegation.[7]  And, that failure is fatal to its claim of state action

20  immunity.  *See, e.g., Midcal*, 445 U.S. at 105–06 (rejected state action immunity even though

21  finding a clear articulation to displace competition because "[t]he state neither establishes prices nor

22

---

23  [7] It is clear that state agencies and municipalities do not have to establish the active supervision
24  requirement. *See, e.g., Town of Hallie*, 471 U.S. 34 at 39 (1985).  It is a seriously disputed fact
    question as to whether an entity such as SDCC, which is neither a state agency nor a municipality,
25  must establish the requirement of active supervision. *See, e.g., Washington State Elec. Contractors*
    *Ass'n. v. Forrest*, 930 F. 2d 736 (1991) (active supervision of state apprenticeship council which
26  worked to set minimum wage rates required because "[t]he council has both public and private
    members, and the private members have their own agenda which may or may not be responsive to
27  state labor policy.").

28

1    reviews the reasonableness of price schedules; nor does it regulate the terms of fair trade contracts.

2    The State does not monitor market conditions are engage in any 'pointed reexamination of the

3    program.'").

### 6. DISCOVERY IS REQUIRED TO DETERMINE WHETHER A PUBLIC BENEFIT CORPORATION SUCH AS SDCC QUALIFIES FOR IMMUNITY UNDER THE CALIFORNIA TORT CLAIMS ACT

7        In moving to dismiss United's pendent state law claims, SDCC, a California public benefit

8    corporation, seeks resolution of its status under the California Tort Claims Act on a Rule 12(b)(6)

9    Motion before any discovery has been taken.  Yet, to reach such a conclusion, this Court must rely

10   on factual matters that are simply beyond the pleadings (and beyond the facts for which SDCC seeks

11   judicial notice).  A Rule 12 determination of claims of sovereign immunity is disfavored because of

12   the inherently fact-intensive nature of the sovereign immunity inquiry:

13              [T]he threshold question of governmental immunity is not always
                answerable on general pleadings under F.R.Civ.P. 8. Trial courts
14              ought not try to deal with this on motions under F.R.Civ.P. 12(b),
                when the proper disposition of the case requires some factual
15              development by the parties. Instead, the court should use its pretrial
                powers to compel the parties to submit the problem by summary
16              judgment. The summary judgment process, in which affidavits and
                depositions, both pro and con, are submitted will reveal exactly what
17              facts exist, not just what the parties generally claim to exist. This is so
                even though the summary judgment process might make summary
18              judgment unavailable by demonstrating a genuine issue of material
                fact exists.

19

20   *Sutton v. U.S.*, 819 F.2d 1289, 1299 (5th Cir. 1987).  This judicial caution is particularly warranted

21   in this case.

22       **A.    Numerous Fact Issues not in the Current Record before the Court must
                 be Known Before it can be Determined whether SDCC Meets the
23               Definition of a "Public Entity" under the Tort Claims Act.**

24       To obtain Tort Claims Act Immunity on this Rule 12 Motion, SDCC must show this Court

25   there are no set of facts that could disprove SDCC's status as a "public entity" entitled to damages

26   immunity.  Cal. Govt. Code § 811.2.

27       SDCC is an interesting entity.  It is not a state agency.  Nor is it a municipality.  Nor was it

28   created by the State of California itself.  Rather, SDCC was created by the City of San Diego as a

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   "public benefit corporation." SDCC asks this Court to take judicial notice of materials outside the

2   pleadings such as SDCC's Articles of Incorporation, which do not by themselves establish that

3   SDCC is a "public entity."[8] (SDCC Req. for Judicial Notice) The California Supreme Court has

4   made clear that merely proving registration with the state as a nonprofit public benefit corporation

5   does not, by itself, confer status as a "public entity" under the California Tort Claims Act. In *Wells*

6   *v. One2One Learning Foundation*, 39 Cal. 4th 1164 (2006), the Court held that a charter school,

7   incorporated as a nonprofit public benefit corporation, was not protected by governmental immunity,

8   and permitted a damages action to proceed. *Id.* at 1203.

9          The California Court of Appeals reached a similar conclusion in *Knapp v. Palisades Charter*

10  *High School*, 146 Cal. App. 4th 708 (2007). The *Knapp* court engaged in an extensive, fact-

11  intensive inquiry into the structure of a different charter school public benefit corporation, and found

12  that the school in question was not a public entity for purposes of the Tort Claims Act. The court

13  reasoned, in relevant part, that the school (1) had its own board of directors, (2) hired its own

14  administrators and teachers, (3) had substantial freedom to achieve academic results without

15  interference by the local school district, and (4) was responsible for its own budgetary and financial

16  matters. *Knapp*, 146 Cal. App. 4th at 717. The facts considered by the *Knapp* court need to be

17  determined here before SDCC's status can be properly decided. As in *Knapp*, this Court must

18  consider:

19     1.   Whether the SDCC public benefit corporation has a separate board of directors from the
            City of San Diego (*i.e.*, the City Council);
20

21     2.   Whether the SDCC public benefit corporation has autonomy to hire its own executives;

22     3.   Whether the SDCC public benefit corporation was given substantial freedom to
            establish its own goals, and the degree of oversight the City of San Diego exercised over
23          SDCC as it sought to set and achieve those goals; and,

24  _____

25  [8] SDCC's Articles of Incorporation only show that SDCC registered with the Secretary of State as a
    nonprofit public benefit corporation and was organized under the Nonprofit Public Benefit Law. The
26  Articles of Incorporation merely establish that SDCC was formed for nonprofit purposes. These facts
    alone have no bearing on whether SDCC is a "public entity" entitling it to the protections of the Tort
27  Claims Act.

28

4.    Whether the SDCC public benefit corporation exercised considerable autonomy and independent responsibility as to financial matters.

None of these facts is evident from the pleadings or the materials for which SDCC seeks judicial notice.

One thing, however, that *is* evident is that SDCC has failed to register as a public agency on the Roster of Public Agencies with the California Secretary of State as required by the California Government Code Section 53051.   Failure to register is an important factor that a court must consider in deciding whether or not to apply governmental immunity under the Tort Claims Act. *Wilson v. S.F. Redev. Agency*, 19 Cal.3d 555, 560–62 (1977).  This is another fact beyond the pleadings that is relevant to the "public entity" determination, and United knows that SDCC has failed to so register.  (Ver. Compl. ¶ 6.)

In light of the *Knapp* factors and SDCC's failure to register with the Roster of Public Agencies, making a determination on SDCC's status as a public entity is inappropriate at the Rule 12 stage.

**B.    SDCC at Best Seeks the Striking of a Remedy as The California Tort Claims Act Will Not Bar Injunctive Relief.**

SDCC filed a separate motion to strike United's prayer for federal antitrust damages under FRCP 12(f), presumably because the Local Government Antitrust Act (LGAA) still makes SDCC vulnerable to injunctive relief.  Curiously, SDCC seeks resolution of its state immunity status under the different procedural mechanism afforded by Rule 12(b)(6).  Yet, 12(b)(6) determination of SDCC's state law immunity is similarly inappropriate as SDCC, even if considered a "public entity" by the Tort Claims Act, remains vulnerable to injunctive relief.

United's Complaint explicitly seeks injunctive relief, such as the rescission of SDCC's policy barring United from using its own employees from servicing its customers in San Diego and barring SDCC from requiring outside contractors such as United to exclusively use and hire SDCC's employees to perform trade show cleaning services.  (Ver. Compl. ¶ 112.)

The Tort Claims Act expressly permits United to pursue its state law claims in order to obtain this injunctive relief even if its damages claims are barred by immunity: "Nothing in this

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

part...affects the right to obtain relief other than money or damages against a public entity...." Cal. Govt. Code § 814.[9]  A Rule 12(b)(6) dismissal is thus not warranted under any definition of SDCC's status as a "public entity".

### 7. CONCLUSION

In light of the foregoing, United respectfully requests that this Court deny SDCC's Motion to Dismiss in its entirety.

DATED: January 14, 2008

By:  s/ Dylan O. Malagrino
Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

James R. Lance (147173)
Jacob M. Slania (200652)
Dylan O. Malagrino (228052)
**KIRBY NOONAN LANCE & HOGE LLP**
600 West Broadway, Suite 1100
San Diego, California  92101-3387
Tel: (619) 231-8666
Fax: (619) 231-9593

Theodore R. Tetzlaff (*Pro Hac Vice*)
Jeffrey A. Leon (*Pro Hac Vice*)
Kristopher J. Stark (*Pro Hac Vice*)
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, IL 60602-4224
Tel: (312) 977-4400
Fax: (312) 977-4405

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

---

[9] The legislative committee comments for Section 814 of the Government Code expressly state that injunctive relief is available against a "public entity": "This section also declares that the provisions of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages.... Thus, for example...the right to enjoin the enforcement of unconstitutional statutes will still remain." *Id.*