# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada Corporation,<br><br>                      Plaintiff,<br><br>vs.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California Corporation,<br><br>                      Defendant. | Case No. 07cv2172 BEN (JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO:**<br><br>**(1) DISMISS THE COMPLAINT; AND**<br><br>**(2) STRIKE PLAINTIFF'S REQUESTS FOR MONETARY DAMAGES** |

Plaintiff United National Maintenance, Inc. ("United") has commenced this action against Defendant San Diego Convention Center Corporation, Inc. ("SDCC") under the Sherman Act, the California Business and Professions Code, and common law. Dkt. No. 1 (Nov. 13, 2007) ("Compl."). This action arises from SDCC's implementation of a security policy requiring that all trade show cleaning services at the San Diego Convention Center (the "Center") be performed by SDCC employees. *Id.* ¶ 2. Claiming that this policy is a pretext to monopolize cleaning services at the Center, United seeks monetary damages and injunctive relief. *Id.* ¶¶ 80, 85. SDCC moves under Federal Rule of Civil Procedure 12 to dismiss the Complaint and strike United's requests for monetary damages. Dkt. Nos. 13, 17 (Dec. 5, 2007). For the reasons set forth below, SDCC's motions are denied.

**BACKGROUND**

The details of United's Complaint are set forth in the Court's February 19, 2008 Order. Dkt. No. 49 (Feb. 19, 2008). Here, the Court sketches only the allegations necessary to the disposition of SDCC's pending motions. Central to these motions are two issues: (1) whether the Complaint sufficiently alleges that SDCC's security policy in question affects interstate commerce; and (2) whether SDCC is entitled to immunity under the state action doctrine and the California Tort Claims Act (the "CTCA"), Cal. Gov. Code § 810 *et seq.*

**I.    Interstate Commerce**

According to the Complaint, SDCC manages and operates the Center, one of the largest convention centers in the United States. Compl. ¶¶ 5, 10. As a part of its operation, SDCC markets and performs cleaning services for trade shows held at the Center. *Id.* ¶ 5. United competes with SDCC for cleaning service contracts. *Id.* ¶ 15. SDCC's security policy allegedly eliminates United's competition because under the policy, United employees are barred from entering the Center. *Id.* ¶ 2.

The Complaint alleges that SDCC's security policy affects interstate commerce because (1) the majority of SDCC's customers for cleaning services come from outside California; and (2) United is a Nevada corporation conducting business nationwide. *Id.* ¶¶ 3, 9, 15, 22. Furthermore, the exhibits to the Complaint show that SDCC's out-of-state customers were dissatisfied with the security policy in question. *Id.* Exs. A-D.

**II.    Immunity**

Determination of the immunity issue depends on: (1) whether SDCC constitutes a government agency; and (2) whether the state is involved in implementing SDCC's security policy in question. According to the Complaint, SDCC is a nonprofit public benefit corporation. *Id.* ¶ 5. Although the SDCC's Articles of Incorporation identify the City of San Diego as its sole member, they do not indicate the level of supervision the state or city government exercises over SDCC's operation. Dkt. No. 18-2 at 4. Nor do the pleadings or SDCC's submissions identify a clearly articulated state policy behind SDCC's alleged anticompetitive conduct.

///

///

# DISCUSSION

## I. Motion to Dismiss

### A. Legal Standard

SDCC's Rule 12(b)(6) motion challenges the legal sufficiency of the Complaint. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). To survive the motion, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). However, the Complaint need not include specific facts, so long as it gives SDCC fair notice of United's claims and the grounds upon which they rest. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). In ruling on the motion, the Court accepts as true all well-pleaded facts alleged in the Complaint and draws all reasonable inferences in United's favor. *Id.*

### B. Interstate Commerce

The Sherman Act applies only to activities affecting interstate commerce. *See* 15 U.S.C. § 1. Relying on this jurisdictional restriction, SDCC argues that its security policy involves only local activities – cleaning services at the Center – and therefore, does not give rise to a Sherman Act claim.

Contrary to SDCC's argument, "local activities," which are not themselves "within the flow of interstate commerce," may fall within the Sherman Act's purview. *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 278 (1975). To state a Sherman Act claim, United need only make a general showing that SDCC's security policy has "a substantial effect on interstate commerce." *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980).

United carries this burden. United alleges that "the vast majority of [SDCC's] conventions are organized . . . for . . . out-of-state entities, and the participants . . . travel to San Diego in the flow of interstate commerce." Compl. ¶ 9. United also attaches to the Complaint several exhibits showing that SDCC's security policy drew criticism from out-of-state customers. *Id.* Exs. A (Illinois), B (Virginia). Moreover, United is a Nevada corporation and "perform[s] services at the [Center] pursuant to national contracts." *Id.* ¶¶ 3, 9. These uncontroverted allegations are sufficient to show a "substantial effect on interstate commerce." *McLain*, 444 U.S. at 242. The Complaint therefore withstands SDCC's jurisdictional challenge.

### C. Immunity

SDCC urges the Court to dismiss the Complaint based on immunity. To establish immunity, SDCC advances three theories. First, the CTCA confers immunity on SDCC as a "public entity." Second, SDCC is immune from antitrust liability because its security policy in question concerns public welfare. Third, SDCC claims immunity under the state action doctrine on the basis that its security policy advances California's objective to reduce vulnerability to terrorism. As discussed below, these theories cannot prevail at the pleading stage.

#### (1) The CTCA

SDCC argues that it is a "public entity" under the CTCA and therefore, immune from all state law claims. To support its argument, SDCC asserts that: (1) the City of San Diego appoints all SDCC directors; and (2) SDCC is subject to California law governing public entities. These assertions, however, cannot be substantiated from the pleadings or judicially-noticeable materials before the Court. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). As a result, the Court lacks a factual basis to evaluate SDCC's assertions.

In any event, these assertions, even when taken at face value, are insufficient to establish SDCC's "public entity" status under the CTCA. Determination whether a nonprofit public benefit corporation, such as SDCC, constitutes a "public entity" requires a fact-intensive inquiry regarding the corporation's structure and autonomy. *See Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1201 (Cal. 2006) (discussing the structure of the entity in question). In making this determination, the Court should consider multiple factors, including whether SDCC enjoys autonomy in making employment decisions and handling financial matters. *Knapp v. Palisades Charter High Sch.*, 146 Cal. App. 4th 708, 717 (Cal. Ct. App. 2d Dist. 2007). At the pleading stage, the Court cannot conduct this fact-intensive inquiry and therefore, must reject SDCC's argument based on the CTCA. *See id.* (determining whether a charter school is a public entity on a summary judgment motion). The Court notes, however, that if SDCC comes forth with evidence regarding its "public entity" status on a motion for summary judgment, its immunity claim will likely succeed.

///

///

**(2)     Public Welfare**

SDCC argues that it is immune from antitrust liability because the security policy in question concerns public welfare. To support this argument, SDCC relies on *National Waterworks Co. v. City of Kansas,* 28 F. 921 (Cir. Ct. W.D. Mo. 1886), and *Union Bridge Co. v. United States*, 204 U.S. 364 (1907). SDCC's reliance on these hundred-year-old cases is puzzling because neither of them addresses immunity in antitrust cases. *Nat'l Waterworks Co.*, 28 F. at 923 (holding that a municipality may have full control over contracts regarding sewage); *Union Bridge Co.*, 204 U.S. at 380 (holding that the Secretary of War's order to make alteration to a bridge did not constitute taking under the Constitution). Moreover, instead of conferring a blanket immunity on public entities, the Supreme Court has prescribed the state action doctrine in *Parker v. Brown*, 317 U.S. 341 (1943), and its progeny. SDCC therefore cannot rely on inapposite cases to fashion a new immunity. Rather, SDCC must meet the requirements set forth in the *Parker* line of cases. As discussed below, however, SDCC cannot pass muster at the pleading stage.

**(3)     State Action Doctrine**

To claim state action immunity under *Parker*, SDCC must first establish that it implements the security policy in question according to a clearly articulated state policy to supplant competition. *Parker*, 317 U.S. at 352. Unless SDCC establishes that it is a municipality, it must also prove that the state actively supervises the implementation of the security policy. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 (1985).

At the outset, immunity claims are inappropriate for adjudication at the pleading stage when, as is often the case, they require fact-intensive consideration. *See Lancas Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 400-02 (9th Cir. 1991) (deciding a state action immunity claim on a summary judgment motion). Not surprisingly, SDCC cites only one Ninth Circuit case that applies the state action doctrine at the pleading stage: *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886 (9th Cir. 1988). But in *Boone*, determination of the immunity claim required the court to consider only the language in a zoning statute and the complaint challenging a city agency's zoning decisions. *Id.* at 890. In contrast, SDCC cites no statute that articulates a state policy to supplant competition for cleaning services at the Center. *Boone* is therefore inapplicable.

### (i) Clearly Articulated State Policy

Without any authority or analysis, SDCC asserts that the CTCA articulates a policy to shield public entities from tort liability. This assertion is untenable for two reasons. First, when a public entity "acts anticompetitively, [it] is not automatically beyond the reach of [the antitrust laws]." *Lancaster Cmty. Hosp.*, 940 F.2d at 400. Instead, SDCC must demonstrate that it "acts in accord with the state's wishes when it contravenes the federal antitrust laws." *Id.* Second, SDCC does not point to any CTCA provision that articulates a state policy justifying its alleged anticompetitive conduct. *See City of Lafayette, v. Louisiana Power & Light Co.*, 435 U.S. 389, 415 (1978) (an articulated state policy can be found "from authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of"); *cf. Town of Hallie*, 471 U.S. at 42 (the legislature need not explicitly authorize the anticompetitive activities, but must prescribe a regulatory structure that has inherent anticompetitive effects).

Attempting to establish a clearly articulated state policy, SDCC also relies on the statements in the California governor's report on homeland security. These statements generally identify California's objective to reduce its vulnerability to terrorism. Even assuming the Court may properly consider these statements on a motion to dismiss, they are insufficient to establish a clearly articulated state policy to justify state action immunity because they make no mention of any anticompetitive activities. *City of Lafayette*, 435 U.S. at 415. Thus, SDCC fails to demonstrate a clearly articulated state policy behind its alleged anticompetitive conduct.

### (ii) Active State Supervision

Even if SDCC clears the hurdle requiring a clearly articulated state policy, it makes no effort to show that the state actively supervises the implementation of the security policy in question. Nor can SDCC establish at the pleading stage that it is a municipality and therefore, exempt from the active-state-supervision requirement. *Cf.* Dkt. No. 49 at 5 (stating that based on declarations, "it appears that SDCC will be successful in establishing its status as a municipality"). Accordingly, SDCC's invocation of the state action doctrine does not warrant the dismissal of United's Sherman Act claims.

///

**II.    Motion to Strike**

    **A.    Legal Standard**

Under Rule 12(f), the Court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Where the damages sought are not recoverable as a matter of law, the Court may strike the prayer for relief. *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (C.D. Cal. 2005) (O'Neill, J.). Determination on motions to strike rests within the Court's discretion. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002).

    **B.    Application of the Rule 12(f) Standard**

Seeking to strike United's requests for monetary damages, SDCC advances three arguments. First, SDCC reargues the theory that the CTCA confers immunity on public entities. As discussed above, however, SDCC cannot establish at the pleading stage that it is a "public entity" under the CTCA. Thus, the CTCA theory is unavailing.

Second, SDCC argues that the Local Government Antitrust Act of 1984 (the "LGAA"), 15 U.S.C. §§ 34-36, precludes United from recovering monetary damages because SDCC constitutes a "local government" entity. Under the LGAA, "local government" includes any "special function governmental unit established by State law." 15 U.S.C. § 34(1). But SDCC does not cite any state law that authorizes its formation. Nor can the Court determine whether SDCC is a "special function governmental unit" based on the pleadings. *See Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1566 (10th Cir. 1991) (conducting a fact-intensive inquiry under the LGAA). Accordingly, the LGAA argument must fail.

Third, SDCC argues that United's request for punitive damages fails to comply with § 3294 of the California Civil Code. Under § 3294, United must allege oppressive, fraudulent, or malicious conduct to recover punitive damages. CAL. CIV. CODE § 3294 (defining "malice" as "conduct . . . carried on . . . with a willful and conscious disregard of" others' rights). In its Complaint, United alleges that SDCC uses the security policy as a pretext to eliminate competition and intentionally causes injury to its competitors. Compl. ¶¶ 49-60. These allegations of intentional misconduct are sufficient to withstand a § 3294 argument. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1481 (C.D. Cal. 1996) (Collins, J.) (denying motion to strike because malice can be averred generally).

**CONCLUSION**

For the reasons set forth above, the Court denies SDCC's motions to (1) dismiss the Complaint; and (2) strike the requests for monetary damages from the Complaint.

IT IS SO ORDERED.

Dated:  September 11, 2008

Hon. Roger T. Benitez
United States District Judge