1

2    2010 AUG -3  AM II: 35

3    CLERK US DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA

4

5    BY_____DEPUTY

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   UNITED NATIONAL MAINTENANCE,          CASE NO. 07-CV-2172 BEN (JMA)
     INC.,
12                                         ORDER GRANTING IN PART AND
                              Plaintiff,   DENYING IN PART DEFENDANT'S
13        vs.                              MOTION FOR SUMMARY
                                           JUDGMENT
14
                                           [Docket No. 92]
15   SAN DIEGO CONVENTION CENTER
     CORPORATION, INC.,
16
                              Defendant.
17

18        Before the Court is Defendant's Motion for Summary Judgment, or in the Alternative for

19   Summary Adjudication ("Motion"). (Docket No. 92.) For the reasons set forth below, Defendant's

20   Motion is **GRANTED IN PART AND DENIED IN PART**.

21                                  **BACKGROUND**

22        Defendant owns and operates a convention center located in San Diego, California, consisting

23   of over 1,000,000 square feet of combined exhibit and meeting space. This action arises from a policy

24   implemented by Defendant in July 2007, concerning trade show cleaning services at the convention

25   center.

26        The 2007 policy requires that all cleaning services at trade shows be performed exclusively by

27   Defendant's in-house cleaning staff. (Cymbal Decl. [Docket No. 92-6], Exs. 1-2.) Prior to 2007, these

28   services were either performed by Defendant who used its in-house cleaning staff or, at the trade show

                                         - 1 -                                    07cv2172

1    organizer's option, outsourced to vendors who were then entitled to use their own cleaning staff.

2    Plaintiff is one of those vendors.

3       On November 13, 2007, Plaintiff initiated this action, alleging four antitrust violations under

4    the Sherman Act and three state law claims, including one claim under the California Business and

5    Professions Code. (Docket No. 1.)

6       On January 20, 2010, Defendant filed the Motion, seeking summary judgment or summary

7    adjudication on each cause of action asserted by Plaintiff, as well as on Defendant's Tenth and

8    Twenty-Third Affirmative Defenses for state action immunity and local government antitrust

9    immunity, respectively. (Docket No. 92.) Plaintiff filed an opposition, and Defendant filed a reply.

10   (Docket Nos. 95, 99.)

11      Over one month after Defendant filed the Motion, on March 8, 2010, Defendant filed its

12   Separate Statement of Undisputed Facts in support the Motion. (Docket No. 97.) The Court allowed

13   the late filing and provided additional time for Plaintiff to respond, which it did. (Docket Nos. 107,

14   110.)

15      After the Motion was fully briefed, the Court vacated the hearing date and took the Motion

16   under submission pursuant to CivLR 7.1.d.1. For the reasons set forth below, the Court finds

17   Defendant is entitled to summary adjudication on Plaintiff's Third, Fourth and Seventh Causes of

18   Action. However, Defendant is not entitled to summary adjudication on the First, Second, Fifth or

19   Sixth Cause of Action, or its Tenth or Twenty-Third Affirmative Defense.

20                                            **DISCUSSION**

21      Summary judgment should be granted when "the pleadings, the discovery and disclosure

22   materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

23   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp.*

24   *v. Catrett*, 477 U.S. 317, 322 (1986). Because antitrust cases consist of primarily factual issues,

25   summary judgment should be used "sparingly." *Poller v. Columbia Broadcasting System, Inc.*, 368

26   U.S. 464, 473 (1962).

27   ///

28   ///

1   **I.    PLAINTIFF'S ANTITRUST CLAIMS (FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION)**

2

3   Plaintiff's federal antitrust claims are set forth in the First, Second, Third and Fourth Causes

4   of Action.  Specifically, the First and Second Causes of Action are based on alleged violations of

5   Section 2 of the Sherman Act; the Third and Fourth Causes of Action are based on alleged violations

6   of Section 1 of the Sherman Act.  Defendant seeks summary judgment on each of these causes of

7   action, as well as on its Tenth and Twenty-Third Affirmative Defenses.  Because the Tenth and

8   Twenty-Third Affirmative Defenses would, if successful, bar all of Plaintiff's antitrust claims as a

9   matter of law, the Court addresses these defenses first.

10  **A.    DEFENDANT'S TENTH AFFIRMATIVE DEFENSE: STATE ACTION IMMUNITY**

11

12  Defendant contends that, as a "non-profit public benefit corporation" incorporated by the City

13  of San Diego, it is a state actor and, therefore, entitled to immunity from Plaintiff's antitrust claims

14  (i.e., the First, Second, Third and Fourth Causes of Action) under the state action doctrine.  The Court

15  disagrees.

16  It is well-established that the Sherman Act does not apply to state anti-competitive conduct.

17  *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 40 (1985); *Parker v. Brown,* 317 U.S. 341, 350-52

18  (1943).  However, state action immunity only applies if the challenged activity was "one clearly

19  articulated and affirmatively expressed as state policy." *California Retail Liquor Dealers Assoc. v.*

20  *Midcal Aluminum, Inc.,* 445 U.S. 97, 105 (1980).  If the defendant is not a state actor, then the

21  defendant must also prove the policy was "actively supervised" by the state itself. *Id.*

22  *1.    State Actor*

23  If Defendant is not a state actor, Defendant qualifies for state action immunity only if it also

24  proves that the state actively supervises the implementation of the 2007 policy. *Town of Hallie v. City*

25  *of Eau Claire,* 471 U.S. 34, 46 (1985); *Shames v. California Travel and Tourism Comm'n,* 607 F.3d

26  611, 614-15 (9th Cir. 2010).

27  It is not genuinely disputed that Defendant's Articles of Incorporation, as executed by the

28  Assistant City Attorney, states Defendant is a "nonprofit public benefit corporation," created by the

1   City of San Diego ("City") for the sole purpose of managing and operating the San Diego Convention

2   Center. (RJN, Ex. 4 [Articles of Incorporation].) The Articles of Incorporation further provides that

3   Defendant is vested with City property and that such property re-vests with the City upon the

4   dissolution, termination or abandonment of Defendant. *Id.* The City is also the only member of the

5   corporation and appoints the board of directors. *Id.* It is likewise not genuinely disputed that

6   Defendant receives funding from the City, is subject to independent audits, and must give public notice

7   of its meetings. (Resp. Sep. Statement [Docket No. 110], ¶¶ 53, 54, 55.)

8        Plaintiff, on the other hand, claims that Defendant is not a state actor because Defendant creates

9   its own budget and only reports on its budget to the City. *Id.* Even if true, however, such

10   circumstances are not inconsistent with Defendant's contention that it receives funding from the City

11   nor inconsistent with a finding that Defendant is a state actor for purposes of state action immunity.

12   The Court also notes the Ninth Circuit has recently held, under facts similar to those present here, that

13   the California Travel and Tourism Commission was a state actor and entitled to immunity from

14   antitrust liability. *See Shames*, 607 F.3d at 619. Similarly here, the Court finds there is no genuine

15   dispute that Defendant is a state actor for purposes of the state action doctrine. As such, the Court also

16   finds Defendant need not prove the state actively supervised the implementation of the 2007 policy

17   in order to avail itself of state action immunity.

18                    2.        *"Clearly Articulated and Affirmatively Expressed" State Policy*

19        The Court next determines whether a genuine issue of material fact exists of whether the 2007

20   policy was, as Defendant claims, "one clearly articulated and affirmatively expressed as state policy."

21   *Midcal*, 445 U.S. at 105.

22        Express authorization of particular anti-competitive conduct is not required; it is sufficient if

23   the alleged actions were a foreseeable result of a broader statutory authorization. *City of Columbia*

24   *v. Omni Outdoor Advertis.*, 499 U.S. 365, 370-71, 373 (1991); *Shames*, 607 F.3d at 614-15. Therefore,

25   the standard is whether the agency acted pursuant to its authority and, if so, whether the

26   anticompetitive conduct was foreseeable given that authorization. *Shames*, 607 F.3d at 616. The

27   authorization need not be embodied in a statute. *Southern Motor Carriers Rate Conf. v. United States*,

28   471 U.S. 48, 63-64 (1985). Rather, decisions of the State Supreme Court and regulatory agencies can

1   also demonstrate the applicable state policy. *Id.*; *see also City of Lafayette v. Louisiana Power & Light*

2   *Co.*, 435 U.S. 389, 414 (1978) (a political subdivision need not point to specific, detailed legislative

3   authorization before asserting state action immunity).

4        As noted, it is undisputed Defendant's Articles of Incorporation provides that Defendant is

5   vested with the authority to "operate and manage the San Diego Convention Center." (RJN [Docket

6   No. 95-7], Ex. 4.). It is likewise not genuinely disputed that the Governor of California signed an

7   Executive Order on February 7, 2 003 that recognized, "state and local officials must assure

8   California's readiness to prevent and respond to terrorist attacks." (Resp. Sep. Statement [Docket No.

9   92-1], ¶ 65; RJN, Ex. 7.) In large part, however, the Executive Order authorized and established

10   California's Office of Homeland Security. *Id.*

11        Defendant produced evidence that, in designing and implementing the 2007 policy, one of the

12   factors considered was "security concerns." (Cymbal Decl., Ex. 1.)  However, Defendant fails to

13   produce any evidence, disputed or otherwise, explaining these "security concerns" or showing that

14   these "security concerns" relate in any way to homeland security or a fear of terrorism, which is the

15   essence of the Executive Order. Although Defendant contends the convention center received federal

16   grant money through the Office of Homeland Security in order to make the facility safer, none of

17   Defendant's evidence supports this contention. Notably absent are any memoranda, minutes, board

18   resolutions, or similar documents from Defendant showing that the Executive Order or homeland

19   security was discussed in connection with the 2007 policy. There is simply no evidence before this

20   Court that allows it to infer the 2007 policy was a foreseeable consequence of the Executive Order.

21   Plaintiff also produces evidence suggesting that the drive behind Defendant's 2007 policy was, in

22   reality, the need to increase City revenue. (Slania Decl., Ex. E at 110:3-8, 197:2-6 and Ex. Q at 14:19-

23   21.)  Under these circumstances, it is clear that a genuine dispute of material fact exists regarding

24   whether the 2007 policy was made pursuant to a clearly articulated state policy.

25        Accordingly, Defendant's motion for summary adjudication of its Tenth Affirmative Defense

26   is **DENIED**.

27   ///

28   ///

07cv2172

1          **B.      DEFENDANT'S TWENTY-THIRD AFFIRMATIVE DEFENSE: LOCAL
                      GOVERNMENT ANTITRUST ACT**
2

3          Defendant also contends Plaintiff's antitrust claims (i.e., the First, Second, Third and Fourth

4   Causes of Action) are barred as a matter of law by the Local Government Antitrust Act, 15 U.S.C. §§

5   34–36 (the "LGAA").

6          To qualify for immunity under the LGAA, Defendant must prove it is, among other things,

7   either a "general function governmental unit" or a "special function governmental unit."  15 U.S.C.

8   § 34(1).  Although unclear, it appears Defendant argues it is a "general function governmental unit."

9   Defendant, however, cites no authority for this position, and the Court could find none.

10         Therefore, to qualify for immunity, Defendant must be a "special function governmental unit"

11  within the meaning of 15 U.S.C. § 341(1)(B).  To qualify as a "special function governmental unit,"

12  Defendant must show that: (1) California law treats it as a government entity; (2) Defendant has

13  limited geographic jurisdiction; and (3) taxpayers would bear the burden of any antitrust damage

14  award.  Defendant fails to produce any evidence, let alone undisputed evidence, of the third element.

15  Accordingly, the Court finds Defendant is not entitled to immunity under the LGAA as a matter of

16  law.

17         Defendant's motion for summary adjudication of its Twenty-Third Affirmative Defense is

18  **DENIED**.

19         **C.      FIRST CAUSE OF ACTION: ATTEMPTED MONOPOLIZATION (15
                     U.S.C. § 2)**
20

21         Because Defendant is not entitled to summary adjudication of its affirmative defenses, the

22  Court now addresses whether Defendant is entitled to summary adjudication on Plaintiff's claims.

23         To demonstrate attempted monopolization under 15 U.S.C. § 2, Plaintiff must prove, among

24  other things: (1) a dangerous probability of success by Defendant (i.e., a probability of achieving

25  monopoly power in the relevant market); and (2) causal injury. *Paladin Assoc., Inc. v. Montana Power*

26  *Co.*, 328 F.3d 1145, 1163 n. 22 (9th Cir. 2003).  Defendant contends Plaintiff cannot prove these

27  elements and, therefore, the First Cause of Action fails as a matter of law.

28

07cv2172

*1. Dangerous Probability of Success*

To determine whether there is a dangerous probability of monopolization, courts must consider the relevant market and examine the defendant's relative economic power in that market. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 459 (1993). "[D]efining the relevant market is indispensable to a monopolization claim." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989). Defendant contends Plaintiff's claim fails as a matter of law because Plaintiff cannot define the relevant market as a single convention center and Plaintiff cannot show monopoly power.

a.    Relevant Market

The relevant market for antitrust purposes includes both a geographic and product component. *Tanaka v University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001). Plaintiff alleges the relevant geographic market is limited to the San Diego Convention Center because there are no comparable facilities nearby, and the relevant product market is trade show cleaning services.

Plaintiff submits evidence showing that the geographic market is limited to the San Diego Convention Center because the location of the facility in comparison to similarly-sized facilities compels it to employ local labor. This is not a situation similar to that in *Tanaka v. University of Southern California*, 252 F.3d 1059 (9th Cir. 2001), where the Ninth Circuit held that a plaintiff could not limit the relevant market to a particular city merely on the grounds that she wanted to be close to her family. *Tanaka*, 252 F.3d at 1063. Here, Plaintiff's evidence on geographic market corresponds to the "commercial realities" of the industry and shows San Diego to be the economically significant market. *Brown Shoe Co. v. United States,* 370 U.S. 294, 336-37 (1962). For example, the evidence shows that trade show space at the San Diego Convention Center is reserved far in advance. Therefore, even if the price for trade show cleaning services increases, consumers may not be able to find another facility. (Hekman Decl., ¶¶ 23-31; Slania Decl., Ex. 507, ¶¶ 23-26.) Consumers also may not be motivated to look for another facility because trade show cleaning services constitute a relatively small part of the overall expenses at the trade show. *Id*. Other courts have suggested that a market may be limited to a single metropolitan area or convention facility. *See, e.g., MCM Partners, Inc. v. Andrews-Bartlett Assoc., Inc.*, 62 F.3d 967, 975-77 (7th Cir. 1995) (single convention center in Chicago could be relevant market); *Woods Exploration &Producing Co. v. Aluminum Co. of*

1  *America*, 438 F.2d 1286, 1307 (5th Cir. 1971) (single natural gas field could be relevant market).

2  Defendant objects to Plaintiff's evidence on the grounds that the evidence is unreliable and

3  contradictory. (Reply, pg. 3; Evid. Obj. [Docket No. 99-2], pg. 9.)  The Court finds that Plaintiff's

4  evidence is consistent in that the expert's opinion appears, at certain times, to discuss the product

5  market and geographic market simultaneously.   Therefore, the opinion does not contradict other

6  statements by the expert wherein the expert discusses the product market on one hand, and the

7  geographic market on the other hand.   Accordingly, the Court overrules the objection and finds

8  Plaintiff has produced sufficient evidence showing a triable issue of fact exists regarding the relevant

9  geographic market.

10       As to the relevant product market, Plaintiff provides evidence that trade show cleaning services

11  are a distinct product market.  Plaintiff offered a declaration from a company that regularly contracts

12  for these services on a large scale, stating traditional janitorial services cannot be substituted for trade

13  show cleaning services, regardless of price. (Slania Decl., Ex. 2 [Epstein Decl.], ¶ 2.)  Plaintiff also

14  offered a declaration from its expert suggesting that trade show cleaning services represent a distinct

15  product.  (Hekman Decl., ¶¶ 4, 15-22.)  Defendant similarly objects to Plaintiff's evidence, in

16  particular Plaintiff's expert opinion, on the grounds that such evidence is unreliable and contradictory.

17  For the same reasons stated above, the Court overrules these objections.

18       The Court finds that Plaintiff has provided sufficient evidence to show a genuine issue of

19  material fact exists regarding the relevant geographic and product market.   Therefore, summary

20  judgment on these issues is denied.

21                    b.       Market Power

22       Market power may be proven by direct or circumstantial evidence. *Rebel Oil Co.*, 51 F.3d at

23  1434.  Although unclear, it appears Plaintiff seeks to demonstrate market power through the use of

24  circumstantial evidence. (Opp., pg. 13.)  To demonstrate market power circumstantially, Plaintiff must

25  define the relevant market, show Defendant owns a dominant share of that market, and show there are

26  significant barriers to entry and existing competitors lack capacity to increase their output in the short

27  run. *Id.*

28       As noted, the Court finds that Plaintiff provides sufficient evidence of the relevant market to

- 8 -

1    survive summary judgment. Plaintiff also provides evidence that, before the 2007 policy, Defendant

2    performed 50% or more of the trade show cleaning at the San Diego Convention Center. (Hekman

3    Decl., ¶ 32; Slania Decl., Ex. E at 88:3-90:7.) After implementing the 2007 policy, however,

4    Defendant performed 100% of the trade show cleaning at the San Diego Convention Center. *Id.*

5    Defendant does not dispute this evidence. Accordingly, the issue becomes whether Plaintiff can show

6    that significant barriers to entry exist and existing competitors lack capacity to increase their output

7    in the short run.

8         Entry barriers are "factors in the market that deter entry while permitting incumbent firms to

9    earn monopoly returns." *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1427-28 (9th Cir.

10   1993). Control of an essential resource is a barrier to entry. *Rebel*, 51 F.3d at 1439. It is undisputed

11   that Defendant's 2007 policy requires that all trade show cleaning companies use Defendant's cleaning

12   staff. (Cymbal Decl., Exs. 1-2.) Plaintiff has, therefore, clearly satisfied this element for summary

13   judgment purposes.

14        Plaintiff must also demonstrate that existing competitors cannot increase their output in the

15   short run. This can be shown when competitors are prevented from accessing the essential facility

16   such that existing competitors cannot increase production and cannot capture defendant's market share

17   if defendant increases prices. *Rebel*, 51 F.3d at 1441. As noted, it is undisputed that Defendant's 2007

18   policy requires Plaintiff to use Defendant's cleaning staff. Plaintiff also provides evidence that the

19   cost of using Defendant's cleaning staff is higher than, if not cost-prohibitive, when Plaintiff was able

20   to hire its own labor. (Simon Decl., ¶¶ 5-8.) Accordingly, the Court finds Plaintiff has provided

21   sufficient evidence of Defendant's market power to survive summary judgment on this issue.

22        As Plaintiff has shown that a genuine issue of fact exists with respect to the "dangerous

23   probability of success" element, the Court denies summary judgment on this issue.

24                    *2.     Causal Antitrust Injury*

25        To survive summary judgment on the issue of causal antitrust injury, Plaintiff must "offer some

26   evidence demonstrating the existence of an antitrust injury, which is to say injury of the type the

27   antitrust laws were intended to prevent and that flows from that which makes defendant's acts

28   unlawful." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477 (9th Cir. 1997) (internal citations and

- 9 -

1    quotation marks omitted).  To do this, Plaintiff must show Defendant's conduct "harms consumer
2    welfare," i.e., "it harms both allocative efficiency and raises the price of goods above competitive
3    levels or diminishes their quality."  *Rebel*, 51 F.3d at 1433.  Allocative inefficiency occurs when
4    market participants who can use resources most efficiently lack access to those resources because of
5    a defendant's conduct.  *Id.*  Defendant claims Plaintiff has not and cannot present such evidence.

6           To show injury, Plaintiff introduced evidence showing that, because Defendant requires the
7    use of its cleaning labor under the 2007 policy, the costs to trade show organizers for cleaning services
8    has increased.  (Slania Decl., Ex. B at 100:1-101:12; Pitts Decl., ¶¶ 7-8; Colby Decl., ¶ 8.)  Plaintiff
9    likewise submitted evidence that the costs associated with the 2007 policy prohibit competitors from
10   bidding in this market.  (Daddano Decl., ¶ 3.)  Plaintiff also introduced evidence showing that the
11   quality of cleaning has declined under the 2007 policy as well.  (Slania Decl., Ex. I at 30:18-31:9; and
12   Ex. J at 38:14-40:17 and Ex. F at 69:5-70:25, 169:17-20, 172:23-179:10.)  Defendant does not dispute
13   this evidence but rather claims the evidence is inadmissible because it is speculative, hearsay, and
14   improper lay opinion.  (Reply, pg. 2.)  The Court overrules these objections.  The evidence cited herein
15   is not speculative, hearsay or improper lay opinion, as it is based on the particular deponent or
16   declarant's personal knowledge and observation.  The Court addresses Defendant's other evidentiary
17   objections at the end of this Order.

18          Plaintiff also claims it has suffered a loss in the amount of approximately $500,000.  (Kennedy
19   Decl., ¶ 20.)  Defendant again objects to Plaintiff's evidence, contending Plaintiff relies on
20   inadmissible expert opinion.   (Reply, pg. 2.)  As detailed in the accompanying Order Denying
21   Defendant's Motion in Limine to Exclude Opinion Testimony, the Court overrules Defendant's
22   objection.

23          In light of the above, the Court finds Plaintiff has provided sufficient evidence showing a
24   genuine issue exists regarding harm to consumers and itself.   Accordingly, Defendant's motion for
25   summary adjudication of Plaintiff's First Cause of Action is **DENIED**.

26          **D.      SECOND CAUSE OF ACTION: ESSENTIAL FACILITIES (15 U.S.C.**
                      **§ 2)**
27

28          The "essential facilities" doctrine requires that "a facility that is essential to competition in a

- 10 -

1    given market [be] available to competitors so that they may compete in that market." *MetroNet Servs.*
2    *Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129 (9th Cir. 2004). A facility is "essential" only if it is
3    "otherwise unavailable and cannot be reasonably or practically replicated." *Id.* at 1129-30. Defendant
4    contends Plaintiff's claim is barred as a matter of law because Plaintiff is still able to compete in the
5    market because Plaintiff has access to bid on the trade show cleaning services the San Diego
6    Convention Center.

7         As noted above, Plaintiff has introduced evidence that the San Diego Convention Center is
8    distinct. Plaintiff has also introduced evidence that Defendant's 2007 policy is cost prohibitive for
9    trade show cleaning companies, such as Plaintiff, to bid on cleaning services at the facility because the
10   2007 policy increases labor costs and requires sharing half of the revenue. (Cymbal Decl., Exs. 1-2;
11   Simon Decl., ¶¶ 5-8.) Plaintiff claims the cost-prohibitive nature of the 2007 policy effectively bars
12   a competitor from the convention center market. However, Defendant introduces evidence that
13   Plaintiff has made a profit on convention center work since the implementation of the 2007 policy.
14   (L'Estrange Decl. [Docket No. 92-5], Ex. 450, pg. 289.) Plaintiff, on the other hand, claims it has
15   suffered a loss of $500,000. (Kennedy Decl., ¶ 20.)

16        These circumstances clearly demonstrate that a triable issue of fact exists regarding whether
17   Plaintiff and other competitors of Defendant are able to compete for trade show cleaning work at the
18   San Diego Convention Center. Accordingly, Defendant's motion for summary adjudication of the
19   Second Cause of Action is **DENIED**.

20        **E.     THIRD CAUSE OF ACTION: GROUP BOYCOTT  (15 U.S.C. § 1)**

21        To prevail on a claim for group boycott under Section 1 of the Sherman Act, Plaintiff must
22   demonstrate, among other things, concerted activity between two or more entities. *American Ad*
23   *Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996). To survive summary judgment, Plaintiff
24   must point to evidence "'that tends to exclude the possibility' that the alleged conspirators acted
25   independently." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)
26   (citation omitted).

27        It is well established that antitrust laws do not prohibit a trader from unilaterally determining
28   the parties with whom it will deal and the terms upon which it will transact business. *United States*

1   *v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (there is "the long recognized right of trader or

2   manufacturer. . . to exercise his own independent discretion as to parties with whom he will deal.")

3   An antitrust case must be based upon conspiratorial rather than unilateral conduct.  *Dahl, Inc. v. Roy*

4   *Cooper Co., Inc.*, 448 F.2d 17, 19 (9th Cir. 1971).

5          In this case, there is no genuine dispute that Defendant implemented the 2007 policy on its own

6   accord.  (Resp. to Sep. Statement [Docket No. 110], pg. 33, ¶ 13.)  This conclusion is supported by

7   the 2007 policy itself which states that all cleaning services must be performed by Defendant's own

8   cleaning staff.  (Cymbal Decl., Exs. 1, 2.)  No other entity is a party to, or a beneficiary under, the

9   policy.  *Id.*  The undisputed facts clearly show that  Defendant's 2007 policy is a result of Defendant's

10  unilateral action and not the result of any alleged conspiratorial conduct.

11         As Plaintiff cannot establish at least one element of its group boycott claim under Section 1

12  of the Sherman Act, Defendant is entitled to judgment as a matter of law on Plaintiff's Third Cause

13  of Action.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-60 (1970).  To the extent Plaintiff's Third

14  Cause of Action also asserts a tying claim under Section 1of the Sherman Act, it also fails because

15  such a claim likewise requires a showing of concerted activity.  *Eichman v. Fotomat Corp.*, 880 F.2d

16  149, 161 (9th Cir. 1989).  Therefore, Defendant is entitled to judgment as a matter of law.  The Court

17  does not address the issue of whether Plaintiff has properly pled a tying claim nor Defendant's other

18  arguments for summary judgment, as those issues are moot.

19         Defendant's motion for summary adjudication of the Third Cause of Action is **GRANTED**.

20  **F.      FOURTH CAUSE OF ACTION: EXCLUSIVE DEALING  (15 U.S.C. §**
           **1)**
21

22         A claim for exclusive dealing under Section 1 of the Sherman Act likewise requires Plaintiff

23  to demonstrate, among other things, concerted activity between two or more entities.  *American Ad*

24  *Mgmt.*, 92 F.3d at 788; *see also Gordon v. Lewistown Hosp.*, 423 F.3d 184, 206-07 (3rd Cir. 2005).

25  The essence of a Section 1 claim is the existence of an agreement.  *Copperweld Corp. v. Independence*

26  *Tube Corp.*, 467 U.S. 752, 771 (1984) (holding there must be a "unity of purpose or a common design

27  and understanding or a meeting of the minds in an unlawful arrangement.").  Unilateral action simply

28  does not support liability.

- 12 -

1    In this case, as detailed above, the undisputed facts clearly show Defendant's 2007 policy is

2    a result of Defendant's unilateral action and not the result of conspiratorial conduct. Plaintiff does not

3    introduce evidence excluding the possibility of independent action. Accordingly, Plaintiff cannot

4    establish an essential element of its Section 1 claim and, thus, Defendant is entitled to judgment as a

5    matter of law on Plaintiff's Fourth Cause of Action.

6    Defendant's motion for summary adjudication of the Fourth Cause of Action is **GRANTED**.

7    **II.      PLAINTIFF'S STATE CLAIMS**

8    Plaintiff's state law claims are set forth in the Fifth, Sixth and Seventh Causes of Action. The

9    Court addresses Defendant's request for summary adjudication of these claims below.

10   **A.      FIFTH CAUSE OF ACTION: INTERFERENCE WITH CONTRACT**

11   Defendant argues the Court should grant summary judgment against Plaintiff's Fifth Cause of

12   Action on the grounds that Plaintiff cannot prove either breach or disruptive interference with its

13   contractual relationship with GES or Champion, two general contractors for whom Plaintiff provides

14   cleaning services for trade shows. (P. & A., pgs. 19-20.)

15   To establish a state law claim for intentional inference with a contract, a plaintiff need not

16   demonstrate an actual breach; it is sufficient that the plaintiff demonstrate the defendant disrupted the

17   contractual relationship. *Golden West Baseball Co. v. City of Anaheim*, 25 Cal.App.4th 11, 50-51

18   (1994). To prove disruption, "[i]t is sufficient to show the defendant's conduct made the plaintiff's

19   performance, and inferentially [sic] enjoyment, under the contract more burdensome or costly." *Id.*

20   at 51; *see also Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1129 (1990).

21   The contracts at issue here are Plaintiff's contracts with GES and Champion, under which

22   Plaintiff agreed to provide cleaning services. (Compl., ¶ 98.) Defendant contends Plaintiff cannot

23   prove disruption because there are no performance expectations under these contracts because these

24   contracts only require Plaintiff to perform if GES or Champion is able to designate Plaintiff as a

25   cleaning subcontractor. (P. & A., pg. 22.) However, Defendant concedes, and the evidence suggests,

26   that GES or Champion is still able to designate Plaintiff as a cleaning subcontractor, as long as

27   Plaintiff uses Defendant's in-house cleaning staff. (Resp. Sep. Statement [Docket No. 110], pg. 2, ¶

28   2.) Therefore, Defendant's argument lacks merit.

1    In opposing Defendant's Motion, Plaintiff also submits evidence showing that performance

2    under the cleaning contracts has become more expensive because Plaintiff must use Defendant's labor

3    and such labor is more expensive. (Slania Decl., Ex. D. at 87:4-12; see also Cymbal Decl., Ex. 2.)

4    Plaintiff also submits evidence suggesting that, prior to the 2007 policy, Plaintiff split certain cleaning

5    revenue 50/50 with the general contractors who hired Plaintiff to perform cleaning services. (Simon

6    Decl., ¶¶ 5, 8.) Under the 2007 policy, however, 50% of the cleaning revenue must be paid over to

7    Defendant. (Slania Decl., Ex. D at 84:9-87:12 and Ex. E at 181:3-16; see also Cymbal Decl., Exs. 1,

8    2.) It is clear, therefore, that a genuine issue of material fact exists regarding whether Defendant's

9    2007 policy disrupts Plaintiff's contractual relationship with general trade contractors.

10    Defendant's motion for summary adjudication of the Fifth Cause of Action is **DENIED**.

11    **B.    SIXTH CAUSE OF ACTION: INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

12

13    Similar to the above, Defendant contends the Sixth Cause of Action fails because Plaintiff

14    cannot prove disruption or future economic benefit, i.e., two elements required for an interference with

15    prospective business advantage claim. *Youst v. Longo*, 43 Cal.3d 64, 71 n. 6 (1987).

16    The contracts alleged under this cause of action include those with "Brede National, Paradice,

17    and others, for Trade Show Cleaning Services." (Compl., ¶ 104. ) Unlike under the Fifth Cause of

18    Action, this list is not exclusive. Defendant contends that, based on a deposition of Plaintiff's Rule

19    30(b)(6) designee, the universe of contracts at issue under this claim consists of contracts with Brede

20    National, Paradice and Blaine Decorating Services. (P. & A., pgs. 24-25.) Nothing in the deposition

21    transcript or other evidence submitted by Defendant supports this position; Defendant's evidence

22    merely shows that, in addition to Brede National and Paradice, both of which are listed in the

23    complaint, Plaintiff also alleges interference with Blaine Decorating Services. This does not mean

24    there are no other contracts or prospective business relationships at issue under the Sixth Cause of

25    Action.

26    Plaintiff submits evidence that at least one other contract is at issue under the Sixth Cause of

27    Action, namely a contract with Nielson Business Media. (Opp., pg. 27.) Defendant contends that,

28    because this contract was entered into after 2007 (the date of Defendant's 2007 policy), it cannot serve

- 14 -

1   as a basis for the Sixth Cause of Action. (Reply, pgs. 12-13.) Defendant does not cite authority for

2   this position, and the Court could find none.  Defendant also contends that Plaintiff cannot rely on any

3   prospective contract with Blaine Decorating Services because "Blaine made the decision to switch its

4   cleaning work to [Defendant] for reasons other than the change in policy." (P. & A., pg. 25.)

5   Defendant likewise fails to cite evidence for this position, and the Court could find none.  Rather, for

6   the same reasons stated above, the evidence submitted by both parties suggests a genuine issue exists

7   regarding whether Defendant's 2007 policy interfered with prospective business between Plaintiff and

8   others for trade show cleaning services. (L'Estrange Decl. [Simon Depo.], Ex. K at 170:13-172:5.)

9          Accordingly, Defendant's motion for summary adjudication of the Sixth Cause of Action is

10  **DENIED**.

11          C.      **SEVENTH CAUSE OF ACTION: VIOLATION OF CAL. BUS. & PROF.
                    CODE §§ 17000 et seq.**

12

13          Section 17200 *et seq.* of the California Business and Professions Code codifies California's

14  Unfair Competition Law ("UCL") and prohibits "any unlawful, unfair, or fraudulent business act or

15  practice and unfair, deceptive, untrue or misleading advertising...." Cal. Bus. & Prof. Code § 17200.

16  The UCL proscribes penalties against "persons" who engage in acts of unfair competition. *See, e.g.,*

17  *Id.* at §§ 17203 (injunction), 17206 (monetary penalties).  Section 17201, in turn, defines "person" as

18  including "natural persons, corporations, firms, partnerships, joint stock companies, associations and

19  other organizations of persons." *Id.* at § 17201. Defendant contends the Seventh Cause of Action fails

20  as a matter of law because Plaintiff is not a "person," as defined under Section 17201.

21          It is well-established that the term "person" includes corporations, but does not include

22  government entities, even those government entities operating in the fashion of a private business. *See,*

23  *e.g., Trinkle v. California State Lottery*, 71 Cal. App. 4th 1198, 1203-04 (1999) (California State

24  Lottery was not a "person," even though it operated as a private business by competing for business).

25  For the same reasons that the Court finds Defendant is a state actor for purposes of state action

26  immunity, the Court likewise finds here that Defendant was a government entity.  In particular, the

27  undisputed facts show that Defendant was created by the City to operate and manage the San Diego

28  Convention Center, and the City is Defendant's sole member and appoints each voting member of the

1 | Board of Directors.  (Resp. Sep. Statement [Docket No. 110], ¶¶ 50, 51.)

2 |      Accordingly, the Court finds Defendant is immune from liability under the UCL and, therefore,

3 | Plaintiff's Seventh Cause of Action is barred as a matter of law.  Defendant's motion for summary

4 | adjudication of the Seventh Cause of Action is **GRANTED**.

5 | **OBJECTIONS**

6 |      Both parties filed evidentiary objections.  To the extent not inconsistent with the above, the

7 | Court overrules the evidentiary objections.

8 | **CONCLUSION**

9 |      As detailed above, the Court **GRANTS** summary adjudication in favor of Defendant on

10 | Plaintiff's Third, Fourth and Seventh Causes of Action.  The Court **DENIES** summary adjudication

11 | on Plaintiff's First, Second, Fifth and Sixth Causes of Action, and on Defendant's Tenth and Twenty-

12 | Third Affirmative Defenses.  To the extent not inconsistent with the above, the Court overrules both

13 | parties' evidentiary objections.

14 | **IT IS SO ORDERED**.

15 | Date: July 2, 2010

16 | Hon. Roger T. Benitez<br>United States District Court