WRIGHT & L'ESTRANGE
A Partnership Including Professional Corporations
    John H. L'Estrange, Jr. (SBN 049594)
       jlestrange@wllawsd.com
    Joseph T. Ergastolo (SBN 137807)
       jte@wllawsd.com
    Andrew E. Schouten (SBN 263684)
       aschouten@wllawsd.com
401 West A Street, Suite 2250
San Diego, California 92101
(619) 231-4844   Fax: (619) 231-6710

Attorneys for Defendant
San Diego Convention Center
Corporation, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE INC., a Nevada Corporation,<br><br>            Plaintiff,<br><br>v.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California Corporation,<br><br>            Defendant. | CASE NO. 07-cv-2172-AJB<br><br>**DEFENDANT'S MOTION *IN LIMINE* NO. 2 OF 14 TO EXCLUDE EVIDENCE OF SECURITY PROTOCOL PROPOSED BY UNITED NATIONAL MAINTENANCE AND RELATED TESTIMONY AND DOCUMENTS**<br><br>Date:         March 11, 2011<br>Time:        1:30 p.m.<br>Courtroom: A<br><br>Complaint Filed: November 13, 2007<br>Trial Date:      March 21, 2011 |

## I.

## MOTION

Defendant San Diego Convention Center Corporation, Inc. ("SDCCC") moves this Court *in limine* for an order excluding evidence, as well as all comment by counsel and/or witnesses, concerning Trial Exhibits 46, 327, 328 and 331; and the security protocol presented to SDCCC by counsel for Plaintiff in connection with the Early Neutral Evaluation Conference in this case on November 3, 2008.

/ / /

/ / /

## II.

## INTRODUCTION

In an attempt to aid settlement negotiations after this litigation was instituted, Anthony D'Angelo ("D'Angelo"), a security consultant for Plaintiff United National Maintenance ("UNM"), was asked to draft a security protocol for UNM's employees at the San Diego Convention Center (the "Building"). D'Angelo therefore created the "United Maintenance Security Protocol For United Personnel With Access To The San Diego Convention Center" (the "Security Protocol"), which was first presented to Defendant San Diego Convention Center Corporation, Inc. ("SDCCC") in a settlement letter dated October 23, 2008 (Ex. 327). The settlement letter was sent in anticipation of the Early Neutral Evaluation Conference ("ENE") with Magistrate Judge Jan Adler on November 3, 2008 (Ex. 327). Prior to the ENE, D'Angelo submitted the Security Protocol to Matthew Bettenhausen ("Bettenhausen") of the then California Office of Homeland Security and took notes about his conversations with Bettenhausen (Declaration of Joseph T. Ergastolo ("Ergastolo Dec."), Ex. K at 126:17-127:2 and 128:12 – 129:11). During discovery, several witnesses were deposed on the topic of the Security Protocol (see, e.g., Ergastolo Dec., Ex. Y at 279:16 – 281:12). The Security Protocol was created solely for purposes of the instant litigation and has not been implemented by UNM in any facility (Ergastolo Dec., Ex. X at 265:7-16 and Ex. K at 135:13 - 25).

Defendant seeks to exclude from trial the Security Protocol, any reference to the Security Protocol, including references to the Security Protocol made by Candice Wright and John Hekman in their expert reports, any witness testimony regarding the Security Protocol, and D'Angelo's notes regarding his conversations with Bettenhausen (Ex. 328). The Security Protocol is a settlement offer under Federal Rules of Evidence 408. Further, the Security Protocol and any related witness testimony are irrelevant and unduly prejudicial under Rules 402 and 403. D'Angelo's notes are also inadmissible under Rule 408, and are inadmissible hearsay under Rules 801 and 802.

///

///

# III.

# ARGUMENT

A.  THE SECURITY PROTOCOL WAS A SETTLEMENT OFFER.

Evidence of an offer or acceptance of an offer to compromise a disputed claim is not admissible to prove liability or invalidity of the claim or its amount. Fed. R. Evid. 408(a); Bridgeport Music, Inc. v. Justin Combs Publishing, 507 F.3d 470, 480-81 (6th Cir. 2007). Evidence of conduct or statements made in compromise negotiations is likewise inadmissible. Fed. R. Evid. 408(a)(2); Scenic Holding, LLC v. New Board of Trustees of Tabernacle Missionary Baptist Church, Inc., 506 F.3d 656, 668 (8th Cir. 2007). The purpose of Rule 408 is to promote the compromise and settlement of disputes. Adv. Comm. Notes to Fed. R. Evid. 408; United States v. Contra Costa County Water Dist., 678 F.2d 90, 92 (9th Cir. 1982) ("By preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement."). Further, the ENE, which is a settlement conference, is "informal, off the record, privileged, and confidential." Civ. LR. 16.1(c)(1)(b).

The Security Protocol was first submitted to Defendant in the form of a settlement negotiation letter from Jeffrey Leon, counsel for UNM, to Regina Petty, former counsel for Defendant. The letter indicates it "is a settlement communication, and its contents should be treated as such." (Ex. 327)). As the letter explains, UNM developed a Security Protocol to allay Defendant's security concerns regarding cleaning services at the Building (Id.). The settlement offer was transmitted on October 23, 2008, "in advance of our upcoming Early Neutral Evaluation Conference," which was scheduled for November 3, 2008 (Ex. 327).

In the letter, and at the ENE, UNM offered to settle the lawsuit if Defendant would permit UNM's employees back into the Building. In exchange, UNM offered to implement the Security Protocol (Ex. 327); see also Ergastolo Dec., Ex. K at 124:7-8 (D'Angelo stating he offered the Security Protocol to Defendant while in front of the judge); Ergastolo Dec., Ex. X at 263:25 – 264:9 (Simon explaining that UNM hired D'Angelo to write a protocol, which they then offered to Defendant in exchange for bringing UNM employees back into the Building).

1  As a settlement offer, the Security Protocol is inadmissible under Rule 408. In fact, when D'Angelo was questioned about the content of the letter and accompanying Security Protocol during his deposition, Plaintiff's counsel objected on the grounds it was a settlement communication and involved the content of the ENE (Ergastolo Dec., Ex. K at 122:16 – 24 and 130:4 – 131:9).

Nonetheless, UNM may try to argue it is relevant for other purposes. Settlement offers may be admissible in the court's discretion if relevant to prove something other than the offerer's liability. Fed. R. Evid. 408(b); United States v. Technic Services, Inc., 314 F.3d 1031, 1045 (9th Cir. 2002) (overruled on other grounds in United States v. Contreras, 593 F.3d 1135 (9th. Cir. 2010). However, no such purpose, other than liability, exists here. For example, UNM may argue the Security Protocol is relevant to its contention that Defendant's security justification for the cleaning policy is a "sham." However, the basis for UNM's contention that security is a "sham" is, in part, the fact that Defendant rejected UNM's settlement offer. In other words, UNM is seeking to use Defendant's rejection of a settlement offer as evidence of Defendant's liability.[1] This is exemplified by the expert opinion of Candice Wright, UNM's security expert, whose report states: "If SDCCC had a legitimate concern about properly securing the venue through credentialing, screening and training employees and contractors, *not only should they have accepted this proposal, but adopted it as part of their overall security protocol.*" (Ex. 515 at 9) (emphasis added); see also Ergastolo Dec., Ex. X at 264:1-22 (Simon calling Defendant's rejection of the Security Protocol "suspect" because "if they were genuinely concerned about Homeland Security, you would think they would be anxious to at least talk to [D'Angelo].").  Thus, it is evident that UNM intends to use its offer of settlement to prove

///

---

[1] On the antitrust claims, if UNM proves Defendant's conduct was exclusionary or anticompetitive, Defendant may present evidence it had a legitimate, pro-competitive business justification for that conduct. UNM may then try to rebut the business justification with evidence the justification is pretextual. Image Tech. Servs. v. Eastman Kodak Co., 125 F.3d 1195, 1212 (9th Cir. 1997). At all times, UNM bears the burden of proving lack of legitimate business justification in a Section 2 claim. Calculators Hawaii, Inc. v. Brandt, Inc., 724 F.2d 1332, 1339 (9th Cir. 1983). Thus, UNM's claim of "sham" justification goes directly to Defendant's liability.

4

Defendant's liability on the claim. The fact that Defendant did not accept UNM's settlement offer cannot be used against it at trial; such use is expressly prohibited under Rule 408.

Indeed, documents prepared specifically to aid settlement negotiations, *i.e.*, documents that would not exist but for such negotiations, are covered by Rule 408. Ramada Develop. Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981). The Security Protocol is such a document. Further, it is irrelevant that UNM is seeking to admit its own settlement offer. Compromise evidence remains inadmissible under Rule 408 "even when a party seeks to admit its own settlement offer or statements made in settlement negotiations." Adv. Comm. Notes to 2006 Amendments to Fed. R. Evid. 408; Pierce v. F.R. Tripler & Co., 955 F.2d 820, 828 (2d Cir. 1992) (barring defendant from using rejected settlement offer as evidence of plaintiff's failure to mitigate damages). Because the Security Protocol was expressly created for settlement and was presented at the ENE, it is inadmissible under Rule 408.

Likewise inadmissible under Rule 408 are D'Angelo's notes regarding his conversation with Bettenhausen. Internal memoranda or notes created to support compromise negotiations may also be excluded under Rule 408. Affiliated Manufacturers, Inc. v. Aluminum Co. of America, 56 F.3d 521, 529 (3d Cir. 1995). To fall within the protections of Rule 408, the memorandum must have been created during settlement negotiations and must evidence an offer to compromise. Wall Data Inc. v. Los Angeles County Sherriff's Dept., 447 F.3d 769, 784 (9th Cir. 2006). Here, D'Angelo's notes were created after the beginning of settlement discussions and describe conduct taken by him in aid of those discussions, specifically, his efforts to have Bettenhausen indicate approval of the Security Protocol (Exs. 328, 331). Accordingly, they are inadmissible under Rule 408. See Wall Data Inc., 447 F.3d at 784.

**B.     D'ANGELO'S NOTES ARE HEARSAY**

D'Angelo's notes of his conversations with Bettenhausen are not only part of the settlement negotiations, but are also inadmissible hearsay. According to D'Angelo, Bettenhausen informed him that his proposed security protocol was "good," and that while homeland security is California's number one priority, "the policy wasn't meant to discourage participation by, or prohibit competition from private sector vendors at public venues such as

1  [the Building]." (Ex. 328; Ergastolo Dec., Ex. K at 128:24 – 129:11 and 132:9 – 134:15). UNM
2  may seek to use Bettenhausen's comments to argue that Defendant's security policy is a sham or
3  that security does not justify Defendant's actions, but to do so is simply using Bettenhausen's
4  out of court statements to prove the truth of the matter asserted. Fed. R. Evid. 801.
5  Accordingly, D'Angelo's notes of Bettenhausen's statements are inadmissible hearsay. Fed. R.
6  Evid. 802.

### C. THE SECURITY PROTOCOL IS IRRELEVANT AND UNDULY PREJUDICIAL

Even if the Security Protocol were admissible under Rule 408, it is irrelevant to UNM's claims and would cause confusion, mislead the jury and result in unfair prejudice to Defendant.

One of the issues in this case is whether Defendant had a legitimate business justification for implementing the cleaning policy. In the context of the two interference claims, determining justification involves balancing the social and private importance of the objective advanced by the interference, against the importance of the interest interfered with. Herron v. State Farm Mut. Ins. Co., 56 Cal.2d 202, 206 (1961); Environmental Planning & Info. Council v. Superior Court, 36 Cal.3d 188, 194 (1984). The jury may look at a multitude of factors in making this determination, including the nature of the defendant's conduct, the defendant's motive, and the interest advanced by defendant. Lowell v. Mother's Cake & Cookie Co., 79 Cal.App.3d 13, 21 (1978) (citing Restatement (Second) of Torts § 767 & cmt. d). Additionally, a defendant is justified in protecting its own legally valid interests, where it acts in good faith and uses otherwise lawful and appropriate means to protect its interest. Richardson v. La Rancherita, 98 Cal.App.3d 73, 81 (1979) (citing Restatement (Second) of Torts § 773).

In the context of the antitrust claims, a legitimate business justification will excuse monopolistic conduct. Image Tech. Servs. v. Eastman Kodak Co., 125 F.3d 1195, 1209 (9th Cir. 1997). In Section 2 claims, which are the only claims remaining here, there is no requirement that a defendant act in the least restrictive manner. Image Tech. Services, Inc. v. Eastman Kodak Co., 903 F.2d 612, 620 (9th Cir. 1990), aff'd, 504 U.S. 451 (1992); Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group L.P., 2008 U.S. Dist. LEXIS 112002 at

///

60 (C.D. Cal. July 9, 2008), aff'd, 592 F.3d 991 (9th Cir. 2010); In re IBM Peripheral EDP Devices Antitrust Litigation, 481 F. Supp. 965, 1021 (N.D. Cal. 1979).

Here, the Security Protocol did not exist at the time Defendant made the decision to implement the cleaning policy. The cleaning policy was implemented with an effective date of July 2007 (Ex. 7). D'Angelo was not hired by UNM until October 2008, after which he was asked by UNM to prepare the security protocol. (Ergastolo Dec., Ex. K at 110:10 - 13 and 123:7 – 125:16 and Ex. X at 265:7-8). The Security Protocol is simply irrelevant to the issue of whether Defendant's business justifications are legitimate because it played no part in Defendant's decision making process. It does not serve as a basis to question Defendant's motives or good faith because it was not given to Defendant until more than a year after Defendant implemented the cleaning policy. Further, use of the Security Protocol would improperly permit the jury to second guess Defendant's business decision, which is inappropriate for the antitrust claims. See Image Tech. Servs. v. Eastman Kodak Co., 125 F.3d at 1213 (upholding jury instruction that stated the jury could not "second guess whether [the defendant's] business judgment was wise or correct in retrospect").

For the same reasons, the Security Protocol is also inadmissible under Rule 403. Defendant did not rely on the Security Protocol when making its decision to implement the cleaning policy. Defendant was not presented with the Security Protocol until more than a year after the cleaning policy had been in place, while the parties were extensively litigating the issues at hand. Under these circumstances, any inference that Defendant's motives or justifications can be questioned based on its rejection of the Security Protocol during settlement negotiations is unfairly prejudicial, confusing and misleading. Fed. R. Evid. 403.

Finally, UNM has not implemented the Security Protocol in any facility in which it operates (Ergastolo Dec., Ex. X at 265:9-16 and Ex. K at 135:13-19). Thus, any claim that the Security Protocol provides a sufficiently secure alternative to Defendant's current policies are speculative and misleading. See Fed. R. Evid. 403, 602. Accordingly, the Security Protocol should be excluded on these additional grounds.

///

## IV.

## CONCLUSION

Because the Security Protocol was an element of UNM's offer to compromise its claim, and it was communicated to SDCC in the context of settlement negotiations, it is not admissible under Rule 408. Further, the Security Protocol is irrelevant because it did not exist at the time Defendant created and implemented its cleaning policy, and any use of the Security Protocol would be misleading and confusing. D'Angelo's notes accompanying the Security Protocol are inadmissible under Rule 408 and are hearsay statements. Accordingly, Defendant respectfully requests that this Court grant this motion *in limine* to exclude evidence of the Security Protocol and all related references, testimony and documents.

Dated: February 11, 2011

WRIGHT & L'ESTRANGE
Attorneys for Defendant
San Diego Convention Center Corp., Inc.

*/s/ John H. L'Estrange, Jr.*
John H. L'Estrange, Jr.
jlestrange@wllawsd.com