James R. Lance (147173)
Jacob M. Slania (200652)
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone (619) 231-8666
Facsimile (619) 231-9593

Theodore R. Tetzlaff (*Pro Hac Vice*)
Kristopher J. Stark (*Pro Hac Vice*)
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, Illinois 60602-4224
Telephone (312) 977-4400
Facsimile (312) 977-4405

Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED NATIONAL MAINTENANCE, INC., a Nevada corporation,

Plaintiff,

vs.

SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California corporation,

Defendant.

CASE NO. 07-CV-2172 AJB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION NO. 2 OF 3 TO EXCLUDE OPINION TESTIMONY OF PLAINTIFF'S EXPERT JOHN S. HEKMAN, PH.D. ON ALLEGED ANTICOMPETITIVE CONDUCT**

Judge: Hon. Anthony J. Battaglia
Date: March 11, 2011
Time: 1:30 p.m.
Crtrm.: A

Complaint Filed: November 13, 2007
Trial Date: March 21, 2011

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**TABLE OF CONTENTS**

**Page**

1. INTRODUCTION ........ 1

2. SDCCC'S MOTION IS PROCEDURALLY DEFICIENT ........ 2

   A. SDCCC's Motion Is Untimely. ........ 2

   B. SDCCC's Motion Violates Local Rule 7.1(h). ........ 4

3. SDCCC'S MOTION SHOULD BE DENIED BECAUSE DR. HEKMAN PROPERLY APPLIED RELIABLE METHODOLOGIES TO APPROPRIATE DATA ........ 4

   A. The Applicable Legal Standard. ........ 4

   B. Dr. Hekman's Opinions are Proper Because They Are Based on a Well-Reasoned and Supported Market Definition. ........ 5

   C. Dr. Hekman's Anticompetitive Conduct Opinion is Proper ........ 5

      1) United's Losses Are Properly Considered. ........ 6

      2) Dr. Hekman's Conclusion that the Competitive Process Was Harmed Due to Pricing Increase Is Proper. ........ 7

      3) Hekman's Monopoly Conclusion is Based on Common Principles of Industrial Organization Economics. ........ 8

   D. Dr. Hekman's Application of the Essential Facilities Doctrine Is Proper. ........ 8

      1) The Essential Facility Doctrine Remains a Viable Basis for an Anti-Competition Claim. ........ 8

      2) Dr. Hekman's Essential Facility Opinion is Based on a Proper Market Definition. ........ 10

      3) Dr. Hekman Is Not Required to Demonstrate the Existence of Two Separate Distinct Antitrust Markets. ........ 10

      4) Neither Dr. Hekman Nor the Essential Facilities Doctrine Argues for "No-Fault Monopolization." ........ 11

   E. Dr. Hekman Properly Applies the Raising Rivals' Costs Theory. ........ 12

   F. Dr. Hekman's Leveraging Opinion is in Line With Legal Principles. ........ 13

4. DR. HEKMAN'S TESTIMONY WILL ASSIST THE TRIER OF FACT ........ 13

5. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 336 (9th Cir. 1991) .......... 13

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, LP*, 592 F.3d 991 (9th Cir. 2010) .......... 11

*Aspen Highlands Skiing Corp. v. Aspen Skiing Co*, 438 F.2d 1509 (10th Cir. 1984) .......... 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993) .......... passim

*Feliciano-Hill v. Principi*, 439 F. 3d 18 (1st Cir. 2006) .......... 2, 3

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517 (6th Cir. 2008) .......... 5, 14

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) .......... 7

*Russell v. Rolfs*, 893 F.2d 1033 (9th Cir. 1990) .......... 9

*United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074 (5th Cir. 1996) .......... 5

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) .......... 9

*Webster v. Fulton County, Georgia*, 85 F. Supp. 2d 1375 (N.D. Ga. 2000) .......... 2, 3

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 .......... 4, 5

Local Rule 7.1(h) .......... 1, 4

Scheffman and Higgins, Twenty Years of Raising Rivals Costs: History, Assessment, and Future, 12 Geo Mason L. Rev. 371 (2003) .......... 12

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**1. INTRODUCTION**

This is the second *Daubert* challenge that Defendant San Diego Convention Center Corporation, Inc. ("SDCCC") brings against Plaintiff United National Maintenance, Inc.'s ("United") economist and antitrust expert Dr. John Hekman. In this motion SDCCC moves to exclude Dr. Hekman's opinions that SDCCC: (1) engaged in anticompetitive conduct; (2) denied access to an essential facility; (3) raised rivals costs; and (4) leveraged its monopoly power to exclude competitors in the Trade Show Cleaning Services market at the San Diego Convention Center (the "Facility"). SDCCC's motion is procedurally deficient on two separate grounds, and Dr. Hekman's opinions are the product of reliable principles and methodologies reasonably applied to the facts of this case. For these reasons, as explained in greater detail below, SDCCC's second *Daubert* motion should be denied.

*Daubert* motions must be brought within a reasonable time after the close of discovery, and *Daubert* motions should be placed on calendar well before the trial date is calendared. SDCCC failed to comply with these requirements, choosing instead to sandbag United with its late challenges to Dr. Hekman's opinions. By waiting until the eve of trial to bring its challenges, SDCCC has waived its objections to Dr. Hekman's opinions. Also, SDCCC attempts to circumvent Local Rule 7.1(h), using 46 pages of text in its attack on Dr. Hekman. For these independent reasons SDCCC's motion should be denied.

In this *Daubert* motion, SDCCC argues that Dr. Hekman's opinions that SDCCC engaged in anticompetitive conduct are inadmissible because his methodologies are flawed, and because he did not properly apply his methodologies to the relevant data. SDCCC is wrong. Dr. Heckman reviewed significant data, and employed numerous economic tests. The results of his analysis demonstrate that SDCCC's exclusive policy has an anticompetitive effect. His results also show that SDCCC did this by denying access to an essential facility, raising its rival's costs, and leveraging market power from an upstream market. Dr. Hekman used generally accepted methodologies, none of which are invalid or disavowed, and he applied his methodologies to accurate and relevant data. Dr. Hekman's opinions that: (1) SDCCC's exclusive policy had a highly anticompetitive effect; (2) SDCCC denied access

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

to an essential facility; (3) SDCCC raised rivals' costs; and (4) SDCCC leveraged its monopoly power to exclude competition; are all the product of reliable principles and methods. Furthermore, Dr. Hekman reasonably applied those methodologies to the facts of this case. Accordingly, Dr. Hekman's opinions are admissible, and SDCCC's motion should be denied on this ground as well.

**2. SDCCC'S MOTION IS PROCEDURALLY DEFICIENT**

**A. SDCCC's Motion Is Untimely.**

The purpose of *Daubert* motions is to address concerns regarding the reliability of expert testimony before the testimony is presented to the jury. *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 593-94 (1993); *see also Webster v. Fulton County, Georgia,* 85 F. Supp. 2d 1375, 1377 (N.D. Ga. 2000). However, any party raising such a challenge ***must do so in a timely fashion or the objection is waived***. *Webster,* 85 F. Supp. 2d at 1377 (emphasis added). In fact, the request "should be made within a reasonable time after the close of discovery if the grounds for the objection can be reasonably anticipated." *Id.* Furthermore, parties have an obligation to object to an expert's testimony in a timely fashion so that the expert's proposed testimony can be evaluated with care. *Feliciano-Hill v. Principi,* 439 F. 3d 18, 24-25 (1st Cir. 2006). Failing to bring a *Daubert* challenge until the eve of trial is improper and is a sufficient ground to deny such a motion. *Webster,* 85 F. Supp. 2d at 1377; *see also Feliciano-Hill,* 439 F. 3d at 25. SDCCC completely ignored the timeliness requirement when bringing its *Daubert* challenges to Dr. Heckman.

Dr. Hekman first appeared as an expert witness on United's behalf on November 13, 2007, submitting a declaration in support of United's motion for a preliminary injunction. (See, the accompanying declaration of Jacob M. Slania ("Slania Decl."), ¶ 3, Ex. 1.) He also submitted a supplemental declaration on December 27, 2007. (*Id.,* ¶ 4, Ex. 2.) Consistent with his declarations, Dr. Hekman was designated as United's antitrust expert on May 1, 2009. (*Id.,* ¶ 5, Ex. 3.) Then, Dr. Hekman issued his written reports. Dr. Hekman's initial written report is dated September 30, 2009 and his supplemental report is dated November 12, 2009. (*Id.,* ¶ 6, Exs. 4-5.) Thereafter, Dr. Hekman was deposed by SDCCC on December 10, 2009.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

(*Id.* at ¶ 7.) Additionally, on March 1, 2010, Dr. Hekman submitted a declaration in support of United's opposition to SDCCC's motion for summary judgment. (*Id.*, ¶ 8, Ex. 7.) (Dkt. No. 95-9.)

Expert discovery was conducted until December, 2009. (Slania Decl., at ¶ 9.) On January 20, 2010, SDCCC filed its motion for summary judgment. (Dkt. No. 92.) Also, on February 3, 2010, SDCCC filed a *Daubert* motion challenging United's damages expert, Dr. Patrick Kennedy. (Dkt. No. 93.) The current trial date of March 21, 2011 was initially calendared on October 21, 2010. (Dkt. No. 129.)

Given the procedural and factual history regarding Dr. Hekman's involvement in this case, it is clear that SDCCC did not bring its *Daubert* challenges within a reasonable time after the close of discovery. Expert discovery was completed in December, 2009. At that juncture SDCCC was well aware of Dr. Hekman's testimony, and had been aware of his testimony for quite some time. SDCCC knew the grounds for any challenge to Dr. Hekman when SDCCC filed its initial *Daubert* challenge to United's damages expert, and SDCCC could have easily brought its challenges to Dr. Hekman at that time. Additionally, SDCCC could have challenged Dr. Hekman's testimony after its motion for summary judgment was denied in part,[1] or once trial was calendared. From November, 2007 until October, 2010 nothing changed about Dr. Hekman's testimony or opinions.

Rather than bring its challenges to his testimony in a timely fashion, SDCCC sandbagged United by waiting until the eve of trial to assert its *Daubert* challenges. In so doing, SDCCC waited well over one year after expert discovery was completed before filing its *Daubert* motions. Accordingly, SDCCC waived any and all objections to Dr. Hekman and his testimony, and SDCCC's motion should be denied. *Webster,* 85 F. Supp. 2d at 1377; *Feliciano-Hill,* 439 F. 3d at 25.

---

[1] The Order denying SDCCC's motion for summary judgment in part was issued on August 3, 2010. (Dkt. No. 120.)

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**B. SDCCC's Motion Violates Local Rule 7.1(h).**

SDCCC filed three *Daubert* motions attacking Dr. Hekman. SDCCC's first *Daubert* motion is addressed to five of Dr. Hekman's opinions. (Dkt. No. 140-18 at p. 7:11-22.) SDCCC's second *Daubert* motion is addressed to five different opinions from Dr. Hekman. (Dkt. No. 140-19 at p. 7:9-20.) SDCCC's third *Daubert* motion is addressed to two of Dr. Hekman's other opinions. (Dkt. No. 140-20 at p. 7:9-16.) SDCCC's *Daubert* motions do not attack opinions from any other experts, and SDCCC acknowledges that the successive motions are based on the first motion. Essentially, SDCCC has filed one motion challenging 12 of Dr. Hekman's opinions.

SDCCC's decision to challenge 12 opinions would not be problematic if SDCCC complied with Local Rule 7.1(h). SDCCC did not do so. SDCCC used 46 pages of text in its motion, violating Local Rule 7.1(h)'s 25 page limit. SDCCC was on notice of this page limitation having previously sought permission to file a brief in excess of 25 pages. (Dkt. No. 89.) However, consistent with their gamesmanship in filing these motions late, SDCCC ignored Local Rule 7.1(h) and characterized its challenges as three separate motions. Such tactics are improper, and SDCCC's motion should be denied for violating Local Rule 7.1(h).

**3. SDCCC'S MOTION SHOULD BE DENIED BECAUSE DR. HEKMAN PROPERLY APPLIED RELIABLE METHODOLOGIES TO APPROPRIATE DATA**

**A. The Applicable Legal Standard.**

Federal Rule of Evidence 702 allows the testimony of an expert witness if it will assist the trier of fact to understand the evidence or determine a fact in issue. Expert opinions are admissible where (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FRE 702.

The Federal Rules of Evidence assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert,* 509 U.S. 579. The *Daubert* Court identified several non-exclusive factors to consider in assessing the reliability of expert testimony. These include whether the expert's

technique or theory can be or has been tested, whether the technique or theory has been subject to peer review and publication, the known or potential rate of error of the technique or theory when applied, and whether the technique or theory has been generally accepted in the scientific community. *Id.* at 593-594. These factors are meant to be helpful, not definitive, and may be tailored to the facts of a particular case. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008).

But, the trial court's "gatekeeping" role is not intended to serve as a replacement for the adversary system, and vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of attacking admissible evidence. *Daubert,* 509 U.S. at 596; *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Rule 702 does not permit a judge to weigh conflicting expert testimony or exclude expert testimony because it seems doubtful, nor should the Court determine whether the conclusions are correct. *In re Scrap Metal Antitrust Litigation,* 527 F.3d at 529-530. So long as the expert testimony is reliable and relevant, it should be admitted for the trier of fact. FRE 702.

**B. Dr. Hekman's Opinions are Proper Because They Are Based on a Well-Reasoned and Supported Market Definition.**

SDCCC contends that Dr. Hekman's opinions regarding anticompetitive conduct should be barred because it is based on an unreliable market definition. However, for the reasons set forth in United's concurrently-filed Opposition to SDCCC's *Daubert* Motion No. 1, Dr. Hekman's market definition was based on sound data and recognized methodology. As such, it provides the proper basis to form opinions regarding SDCCC's anticompetitive conduct. His testimony should be admitted.

**C. Dr. Hekman's Anticompetitive Conduct Opinion is Proper**

In his report, Dr. Hekman makes the following conclusions regarding SDCCC's anticompetitive actions:

> f. The effects of SDCCC's denying United National and other cleaning services access to the convention center are highly anti-competitive.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

      > g. SDCC has eliminated current and future competition and has effectively raised prices for trade show cleaning services in connection with its exclusion of non-SDCC cleaning employees.

(Slania Decl., Ex. 4 at ¶ 5 f, g.) SDCCC argues that these opinions are inappropriate because Dr. Hekman improperly considers United's losses, falsely assumes that United could control pricing, and fails to cite his methodology. SDCCC's arguments are meritless.

**1) United's Losses Are Properly Considered.**

In paragraph 35 of his report, Dr. Hekman states that SDCCC's exclusive policy has forced United to operate at a loss in order to maintain relationships with decorators for whom United performs work at other facilities. (*Id.*, Ex. 4 at ¶ 35.) SDCCC contends that it was improper for Dr. Hekman to consider United's losses stemming from the exclusive policy when opining on anticompetitive conduct. SDCCC alleges that the proper inquiry is whether the conduct has an anticompetitive effect, not whether it harms a competitor. However, United's losses are demonstrative of losses any other Trade Show Cleaning Services firm would have. All Trade Show Cleaning firms are subject to SDCCC's exclusive policy, and all Trade Show Cleaning firms are required to provide their cleaning revenues to SDCCC. United's losses show that the competitive process is harmed by SDCCC's actions – cleaning firms are unable to profitably compete in Trade Show Cleaning Services at the Facility.

Furthermore, the market only included two competitors, United and SDCCC, as confirmed by SDCCC witnesses. (*Id.*, Ex. 8 at 409:5-14; Ex. 9 at 412:19-413:12; 414:17-21: 415:14-24.) By considering United's losses, Dr. Hekman was observing the harm to the entire market, not just one competitor. This is relevant and helpful evidence for the jury to consider when determining if there was harm to competition.[2]

Also, is there really a doubt about whether SDCCC's conduct was anticompetitive? Before July 1, 2007 there was competition for Trade Show Cleaning Services at the Facility. Now, no such competition exists. SDCCC admits this. (Slania Decl., Ex. 8 at 409:15-23;

---

[2] This is the inquiry that SDCCC incorrectly states Dr. Hekman did not make.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Ex. 9 at 420:8-22 ) There can be no clearer evidence of an anticompetitive effect than the elimination of competition.

**2) Dr. Hekman's Conclusion that the Competitive Process Was Harmed Due to Pricing Increase Is Proper.**

In paragraph 58 of his report, Dr. Hekman explains that SDCCC's exclusive policy has effectively increased prices for booth cleaning, relying on evidence from a third party: "Mark Epstein testified that Champion's costs have increased because Champion was not previously paying for aisle and carpet cleaning services that United had provided free of charge in conjunction with booth cleaning." (Slania Dec., Ex. 4, ¶ 58; Ex. 15 at 545:6-547:16.) SDCCC does not and cannot dispute this evidence. Yet, SDCCC still argues Dr. Hekman has no knowledge of whether the cost of booth cleaning increased. Dr. Hekman does have this knowledge (Slania Decl., Ex. 4 at ¶ 58), and he obtained this knowledge from reliable data. Champion was no longer receiving the same services it was receiving from United, now paying the same amount of money for fewer services. This means the effective price has risen. Accordingly, by raising the effective price, and lowering the value of the services, SDCCC has engaged in anticompetitive acts. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1433 (9th Cir. 1995). (Slania Decl., Ex. 4 at ¶ 58.)

It is also noteworthy to point out that the cost of facility cleaning rose. It is undisputed that SDCCC now charges United $17 per hour for facility cleaning, whereas United only charged its clients $16.35 before July 1, 2007. (Slania Decl., Ex. 4 at ¶ 58; Ex. 14 at 54:3-542:4.) Thus, prices have risen in both components of Trade Show Cleaning Services.

In its argument SDCCC confuses the relevant "price" inquiry. SDCCC wants the Court to focus on pricing charged to exhibitors. That is not the focus of Dr. Hekman's opinion. Dr. Hekman clearly spoke to costs to Decorators (which as demonstrated above increased). Dr. Hekman also addressed United's prices for its labor, in an entirely different section (*Id.*, Ex. 4 at ¶ 36), than his discussion about Decorators prices (*Id.,* Ex. 4 at ¶ 58.) Dr. Hekman's discussion about United's prices relates to the Raising Rivals Costs Theory, addressed below. SDCCC is comparing apples to oranges, and its criticism misses the mark.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

The connection between Dr. Hekman's inquiry and whether prices have increased is clear, and his testimony would be helpful to the jury. Dr. Hekman should be allowed to testify as to this opinion.

**3) Hekman's Monopoly Conclusion is Based on Common Principles of Industrial Organization Economics.**

Dr. Hekman concludes that the exclusive policy is monopolistic because it has eliminated all competition at the Facility, allowing SDCCC to control 100% of the pricing and labor. (Slania Decl., Ex. 4 at ¶36.) SDCCC objects to this conclusion on the grounds that Dr. Hekman failed to explain his methodology. But SDCCC never questioned Dr. Hekman about this methodology. (*Id.,* Ex. 6.) Noticeably absent from SDCCC's evidence supporting this motion is any reference to asking Dr. Hekman questions at his deposition about this theory, and his failure to answer. In fact, the only evidence SDCCC cites to support its proposition is its questioning of Dr. Hekman's studies. (Ergastolo Decl., Ex. N at 167:11-20.)

Furthermore, SDCCC's contention that Dr. Hekman merely assumes a monopoly is baseless. Dr. Hekman's conclusion simply applies the widely-accepted definition of "monopoly" to the facts of the case. There is only one seller, who controls all of the market, and there is no competition. That is precisely what we hope for when playing the board game Monopoly: to be the one person left standing with all the properties and all the money. Dr. Hekman's methodology is clear, and Dr. Hekman's opinion should be admitted.

**D. <u>Dr. Hekman's Application of the Essential Facilities Doctrine Is Proper.</u>**

**1) The Essential Facility Doctrine Remains a Viable Basis for an Anti-Competition Claim.**

As for their proof that SDCCC brought these *Daubert* challenges to waste United's time and efforts on the eve of trial, SDCCC now takes an inconsistent stance on the availability of the essential facilities doctrine. In its Motion for Summary Judgment filed on January 20, 2010, SDCCC states that the essential facilities doctrine is still recognized in the Ninth Circuit:

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

> The 'essential facilities' doctrine 'makes a facility that is essential to competition in a given market available to competitors so that they may compete in the market.' *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129 (9th Cir. 2004). The Supreme Court recently cast doubt on the viability of such claims in *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). There, the Court stated that it has never recognized the 'essential facilities' doctrine. *Id.* at 411. Without recognizing or repudiating the doctrine, it noted that 'that the indispensible requirement for invoking the doctrine is the unavailability of access to the 'essential facilities'; where access exists, the doctrine serves no purpose.' *Id.* at 411. **The Ninth Circuit continues to recognize the doctrine after *Trinko*** (emphasis added). *MetroNet,* 383 F.3d at 1129. Under its precedent, a facility is 'essential' only if it is 'otherwise unavailable and cannot be reasonably or practically replicated.' *Id.* at 1129-1130. However, '[t]he doctrine does not guarantee competitors access to the essential facility in the most profitable manner.' *Id.* at 1130.[3]

(Dkt. No. 92-1 at 19:13-24 (emphasis added).) SDCCC admitted to the Court that the essential facilities doctrine was valid. Now, in an effort to undermine Dr. Hekman and without citing any new law, SDCCC claims the essential facilities doctrine is invalid. Such an inconsistency is disingenuous. Further, judicial estoppel precludes SDCCC from arguing inconsistent positions within the same litigation. *Russell v. Rolfs*, 893 F.2d 1033, 1037-1039 (9th Cir. 1990).

Moreover, SDCCC misstates the Supreme Court's opinion in *Verizon Communs., Inc. v. Law Offices of Curtis v. Trinko, LLP,* 540 U.S. 398 (2004). *Verizon* does not reject the essential facility doctrine, it merely adds an additional requirement that the facility at issue not be controlled by a government agency: "[t]hus, it is said that 'essential facility claims should…be denied where a state or federal agency has effective power to compel sharing and to regulate its [the facility's] scope and terms." *Verizon*, 540 U.S. 398 at 881. Here, there is no state or federal agency that has the power to compel access to the Facility. The essential facilities doctrine remains valid.

---

[3] The Court's August 3, 2010 Order on SDCCC's Motion for Summary Judgment confirms that the essential facilities doctrine is recognized in this district. (Docket No. 120 at p. 10:26-11:19.)

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**2) Dr. Hekman's Essential Facility Opinion is Based on a Proper Market Definition.**

SDCCC claims that Dr. Hekman's essential facility opinion is improper because he defined the market as the Facility, thereby establishing it as essential. As explained at length in United's Opposition to *Daubert* No. 1, this is not true. Dr. Hekman defined the relevant market properly, relying on sound data and following the appropriate methodology. As stated previously in United's Opposition No. 1, Dr. Hekman's market definition would have included other venues that would have supported Trade Show Cleaning Services in San Diego. But, other than the Facility no such venue exists. The Facility is essential to firms providing Trade Show Cleaning Services for large trade shows in San Diego. As the Court pointed out:

> Here, Plaintiff's evidence on geographic market corresponds to the "commercial realities" of the industry and shows San Diego to be the economically significant market. *Brown Shoe Co. v. United States,* 370 U.S. 294, 336-37 (1962)

(Dkt. No. 120 at 7:18-20.)

**3) Dr. Hekman Is Not Required to Demonstrate the Existence of Two Separate Distinct Antitrust Markets.**

SDCCC criticizes Dr. Hekman's essential facilities analysis on the basis that he fails to establish vertical integration between two related markets. However, there is no requirement that two markets must exist to invoke the essential facilities doctrine. In *Aspen Highlands Skiing Corp. v. Aspen Skiing Co*, 438 F.2d 1509 (10th Cir. 1984), the plaintiff, a ski resort operator, brought an essential facilities claim against defendant, another ski resort operator, who denied plaintiff access to its ski resort through a multi-area ticket offering. *Id.* The court did not require plaintiff to prove that the purported essential facility – access to defendant's resorts – constituted a separate antitrust market from plaintiff's resort. *Id.* at 1520-1521. The party making the essential facilities claim may concurrently be customers and competitors of the alleged monopolists in a single market, just as United is here. *Id.* SDCCC's critique is inconsistent with the law. Furthermore, Dr. Hekman correctly explains the interplay of two markets here. SDCCC controls the upstream market for large trade shows in San Diego.

SDCCC has used its power in that market to foreclose competition in the downstream market of Trade Show Cleaning Services at the Facility through its exclusive policy. (Slania Decl., Ex. 4, ¶¶ 33-37.) Thus, Dr. Hekman has performed the analysis SDCCC contends is missing.[4]

**4) Neither Dr. Hekman Nor the Essential Facilities Doctrine Argues for "No-Fault Monopolization."**

SDCCC argues that Dr. Hekman distorts the essential facilities doctrine to create "no-fault monopolization," and concludes that SDCCC "must share its resources freely with UNM." (*Daubert* No. 2, 10:20-22.) SDCCC misstates and misrepresents Dr. Hekman's opinion, and the intent of the essential facilities doctrine. SDCCC claims that courts will "reject essential facility claims that require a defendant to cut back its own use of its own 'essential' resource to serve a competitor." (*Daubert* No. 2, 10:14-15.) This statement is irrelevant for present purposes. United is not asking SDCCC to abandon the Facility so that United may use it. United is simply asking for access to the Facility, so that it may ***compete*** in the Trade Show Cleaning Services market in San Diego. Dr. Hekman has opined that SDCCC has precluded United from having that access. (Slania Decl., ¶¶ 33-37, 39.)

If SDCCC provides a superior product at superior prices, SDCCC will not have to cut back on its use of the Facility. However, as explained in detail above, SDCCC is harming competition by taking away competitors' ability to compete in the market. As SDCCC admits, there are no more competitors who perform Trade Show Cleaning Services at the Facility. (Slania Decl., Ex. 8 at 409:15-23; Ex. 9 at 420:8-22.) The lack of competition is precisely the harm that antitrust law and the essential facilities doctrine are designed to protect against. *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, LP*, 592 F.3d 991, 1000 (9th Cir. 2010)("...the very purpose of the antitrust laws...is, after all, to foster and ensure competition on the merits."). That is the anticompetitive effect that Dr. Hekman observed and opined on. (Slania Decl., ¶¶ 33-37, 39.)

---

[4] This is explained in further detail in section 3F, below.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Dr. Hekman's application of the essential facilities doctrine is proper, and should be allowed at trial.

**E. Dr. Hekman Properly Applies the Raising Rivals' Costs Theory.**

The Raising Rivals' Costs ("RRC") theory is economically and legally viable. SDCCC cites to no authority demonstrating that RRC is invalid. In fact, SDCCC cites to no case law even criticizing an expert's use of RRC. SDCCC critiques Dr. Hekman's RRC opinion because one article he relies on offers certain criticisms of RRC. SDCCC supports this argument by selectively citing to portions of Scheffman and Higgins, Twenty Years of Raising Rivals Costs: History, Assessment, and Future, 12 Geo Mason L. Rev. 371 (2003) without putting the quotes in context or citing to any other source that says RRC theory is unreliable.[5] The article, as a whole, supports the use of the theory.

After failing to demonstrate that RRC is unreliable, SDCCC also claims that Dr. Hekman's RRC opinion is flawed because he assumed that SDCCC's exclusive policy resulted in a price increase to consumers. Not so. Section C.2., above, explains how Dr. Hekman logically and reliably concluded that SDCCC's exclusive policy resulted in higher prices. This conclusion was not merely assumed; it was based on reliable testimony of Mark Epstein, Champion's former president. (Slania Dec., Ex. 15 at 545:6-547:16.)

Moreover, as has been demonstrated, SDCCC's exclusive policy has raised United's costs in such a manner to make it uncompetitive for United to remain in the market. United must now pay more to SDCCC than its revenues. (Slania Decl., Ex. 4 at ¶¶ 40-41; Ex. 14 at 541:3-542:4.) This is precisely the goal of a monopolist under RRC, to increase its rivals' costs so much that they are driven out of the market. This clearly produces an anticompetitive outcome, because competitors are eliminated. In this instance not only was SDCCC's largest competitor harmed, competition was eliminated. (Slania Decl., Ex. 4 at ¶¶ 32-37.)

---

[5] It would be remiss of the authors of any academic journal to ignore criticisms of a particular methodology or study. More criticisms, however, do not validate a theory.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

What SDCCC has done is raise United's costs and prices above the competitive level. This, in turn, has produced an anticompetitive result by eliminating competition. Dr. Hekman's analysis under the RRC theory is reliable and should be allowed.

**F. <u>Dr. Hekman's Leveraging Opinion is in Line With Legal Principles.</u>**

SDCCC claims that Dr. Hekman's opinion on leveraging is contrary to legal principles because he "does not rely upon anticompetitive conduct separate and apart from the leveraging itself." (*Daubert* No. 2, 15:3-8.) This is incorrect. SDCCC's leveraging relies on the implementation of the exclusive policy, which is the anticompetitive conduct complained of.

Leveraging involves a party's use of its monopoly power in the upstream market to obtain, or attempt to obtain, a monopoly in the downstream market. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 336, 547 (9th Cir. 1991). Here, the upstream market is large trade show venues in San Diego. Because the Facility is the only such venue, SDCCC controls the upstream market (Slania Decl., Ex. 4, ¶¶ 33, 37.) SDCCC then uses its control, or leverage, on the upstream market to implement its exclusive policy. (*Id.*, Ex. 4 at ¶¶ 33-37.) In turn, the exclusive policy permits SDCCC to control the downstream market by eliminating other Trade Show Cleaning Services firms from working at the Facility. (*Id.*) Thus, SDCCC is using its control over the upstream market to eliminate competition in the downstream market. (*Id.*) SDCCC accomplishes this through improperly raising costs to competitors or through prohibiting competitors from working at the Facility. (*Id.*, Ex. 4 at ¶¶ 32-37, 40-41.) This is a perfect fit for monopoly leveraging. Dr. Hekman's opinion is reliable and admissible.

**4. DR. HEKMAN'S TESTIMONY WILL ASSIST THE TRIER OF FACT**

Dr. Hekman is a well qualified and experienced economist. He earned an MBA in Finance and a Ph.D. in Economics at the University of Chicago. He also taught Economics and Finance at the University of Southern California, the University of North Carolina, the University of Chicago, and Boston College. He previously served as an economist with the Federal Reserve and as an expert witness in both federal and state court for the last 20 years. He published numerous papers in academic and professional journals. (Slania Decl., Ex. 4, ¶ 1.) He is extremely well qualified to testify on the antitrust matters in dispute, and his

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

testimony will assist the jury. In fact, Dr. Hekman's testimony assisted the Court when considering SDCCC's motion for summary judgment.

As demonstrated above, Dr. Hekman's methodologies are sound and he reasonably applied them to the facts of this case. As *Daubert* makes clear, SDCCC is free to cross-examine Dr. Hekman as to the weight of his opinions. *Daubert*, 509 U.S. at 596. Importantly, the Court need not concern itself with whether or not Dr. Hekman's conclusions are correct, that is for the jury. *In re Scrap Metal Antitrust Litigation,* 527 F.3d at 529-30. Dr. Hekman's expert testimony is reliable, based on the facts of this case, and should be permitted.

## 5. CONCLUSION

For the preceding reasons, United respectfully requests that the Court deny SDCCC's *Daubert* motion to exclude John S. Hekman, Ph.D.'s opinions regarding SDCCC's alleged anticompetitive conduct.

DATED: March 4, 2011

KIRBY NOONAN LANCE & HOGE LLP

By: */s/ Jacob M. Slania*
James R. Lance
Jacob M. Slania
Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.