James R. Lance (147173)
Jacob M. Slania (200652)
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone (619) 231-8666
Facsimile (619) 231-9593

Theodore R. Tetzlaff (*Pro Hac Vice*)
Kristopher J. Stark (*Pro Hac Vice*)
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, Illinois 60602-4224
Telephone (312) 977-4400
Facsimile (312) 977-4405

Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California corporation,<br><br>Defendant. | CASE NO. 07-CV-2172 AJB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION NO. 3 OF 3 TO EXCLUDE OPINION TESTIMONY OF PLAINTIFF'S EXPERT JOHN S. HEKMAN, PH.D. ON JUSTIFICATION AND ANTITRUST INJURY**<br><br>Judge: Hon. Anthony J. Battaglia<br>Date: March 11, 2011<br>Time: 1:30 p.m.<br>Crtrm.: A<br><br>Complaint Filed: November 13, 2007<br>Trial Date: March 21, 2011 |

KNLH\823287.1                                                                07-CV-2172 AJB

# TABLE OF CONTENTS

| | Page |
|---|---|
| 1. INTRODUCTION | 1 |
| 2. SDCCC'S MOTION IS PROCEDURALLY DEFICIENT | 2 |
|    A. SDCCC's Motion Is Untimely | 2 |
|    B. SDCCC's Motion Violates Local Rule 7.1(h) | 3 |
| 3. SDCCC'S MOTION SHOULD BE DENIED BECAUSE DR. HEKMAN PROPERLY APPLIED RELIABLE METHODOLOGIES TO APPROPRIATE DATA | 4 |
|    A. The Applicable Legal Standard. | 4 |
|    B. Dr. Hekman's Pro-Competitive Justification Opinion and Antitrust Injury Opinion Are Not Barred By His Underlying Market Definition | 5 |
|    C. Dr. Hekman's Justification Opinion Is Reliable And Would Assist The Trier Of Fact | 5 |
|       1) Dr. Hekman is Offering Neither His Opinion Nor Legal Conclusions Regarding Security at SDCCC | 5 |
|       2) Dr. Hekman Considered All Available Evidence in Forming His Opinion. | 6 |
|       3) Dr. Hekman Properly Applies the "No Economic Sense" Test. | 7 |
|    D. Dr. Hekman's Opinion That Antitrust Injury Occurred is Based on Reliable Evidence. | 10 |
| 4. DR. HEKMAN'S TESTIMONY WILL ASSIST THE TRIER OF FACT | 11 |
| 5. CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP,*
    592 F.3d 991 (9th Cir. 2010) .................................................................................... 9

*Calculators Hawaii, Inc. v. Brandt, Inc.,*
    724 F.2d 1332 (1983) ............................................................................................ 8, 9

*California Computer Products, Inc. v. International Business Machines Corp.,*
    613 F.2d 727 (1979) ................................................................................................. 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc,*
    509 U.S. 579 (1993) ........................................................................................ passim

*Feliciano-Hill v. Principi,*
    439 F. 3d 18 (1st Cir. 2006) .................................................................................. 2, 3

*Image Technical Service, Inc. v. Eastman Kodak Co.,*
    903 F.2d 612 (9th Cir. 1990) ................................................................................... 9

*In re IBM Peripheral EDP Devices Antitrust Litigation,*
    481 F.Supp. 965 (1970) ........................................................................................... 9

*In re Scrap Metal Antitrust Litigation,*
    527 F.3d 517 (6th Cir. 2008) ......................................................................... 4, 5, 11

*Paladin Association, Inc. v. Montana Power Co.,*
    328 F.3d 1145 (9th Cir. 2003) ............................................................................... 10

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995) ................................................................................. 10

*United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi,*
    80 F.3d 1074 (5th Cir. 1996) ................................................................................... 5

*Webster v. Fulton County, Georgia,*
    85 F. Supp. 2d 1375 (N.D. Ga. 2000) .................................................................. 2, 3

**OTHER AUTHORITIES**

FRE 702 ........................................................................................................................ 4, 5

FRE 703 ......................................................................................................................... 10

Local Rule 7.1(h) .................................................................................................... 1, 3, 4

# 1. INTRODUCTION

This is Defendant San Diego Convention Center Corporation, Inc.'s ("SDCCC") third *Daubert* challenge to Plaintiff United National Maintenance, Inc.'s ("United") economist and antitrust expert Dr. John Hekman. SDCCC now seeks to exclude Dr. Hekman's opinions that there is no pro-competitive justification for SDCCC's exclusive policy, and that SDCCC's exclusive policy has caused antitrust injury. SDCCC's motion is procedurally deficient, and Dr. Hekman's opinions are the product of reliable principles and methodologies reasonably applied to the facts of this case. For these reasons, as explained in greater detail below, SDCCC's motion should be denied.

*Daubert* motions must be brought within a reasonable time after the close of discovery, and *Daubert* motions should be placed on calendar well before the trial date is calendared. SDCCC failed to comply with these requirements, choosing instead to sandbag United with its late challenges to Dr. Hekman's opinions. By waiting until the eve of trial to bring its challenges, SDCCC has waived its objections to Dr. Hekman. Also, SDCCC attempts to circumvent Local Rule 7.1(h), using 46 pages of text in its attack on Dr. Hekman. For these independent reasons SDCCC's motion should be denied.

In this *Daubert* motion, SDCCC argues that Dr. Hekman's opinions regarding justification are beyond his areas of expertise, and that his methodologies are unreliable. SDCCC also contends that Dr. Hekman's opinion on antitrust injury is inadmissible because he failed to rely on appropriate data. SDCCC is wrong. Dr. Hekman employed generally accepted methodologies to areas within his expertise. As a highly qualified economist he is more than qualified to apply the "no economic sense" test. And, Dr. Hekman applied his methodologies to appropriate and relevant data. Viewing the totality of the circumstances he properly concluded that antitrust injury is exhibited by increased prices, loss of choice, and diminished quality under SDCCC's exclusive policy. Dr. Hekman's opinions are the product of reliable principles and methods, which Dr. Hekman reliably applied to the facts of this case. Accordingly, Dr. Hekman's opinions are admissible, and SDCCC's motion should be denied on this ground as well.

## 2. SDCCC'S MOTION IS PROCEDURALLY DEFICIENT

### A. SDCCC's Motion Is Untimely

The purpose of *Daubert* motions is to address concerns regarding the reliability of expert testimony before the testimony is presented to the jury. *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 593-94 (1993); *see also Webster v. Fulton County, Georgia,* 85 F. Supp. 2d 1375, 1377 (N.D. Ga. 2000). However, any party raising such a challenge **must do so in a timely fashion or the objection is waived**. *Webster,* 85 F. Supp. 2d at 1377 (emphasis added). In fact, the request "should be made within a reasonable time after the close of discovery if the grounds for the objection can be reasonably anticipated." *Id.* Furthermore, parties have an obligation to object to an expert's testimony in a timely fashion so that the expert's proposed testimony can be evaluated with care. *Feliciano-Hill v. Principi,* 439 F. 3d 18, 24-25 (1st Cir. 2006). Failing to bring a *Daubert* challenge until the eve of trial is improper and is a sufficient ground to deny such a motion. *Webster,* 85 F. Supp. 2d at 1377; *see also Feliciano-Hill,* 439 F. 3d at 25. SDCCC completely ignored the timeliness requirement when bringing its *Daubert* challenges to Dr. Heckman.

Dr. Hekman first appeared as an expert witness on United's behalf on November 13, 2007, when he submitted a declaration in support of United's motion for a preliminary injunction. (See, the accompanying declaration of Jacob M. Slania ("Slania Decl."), ¶ 3, Ex. 1.) He also submitted a supplemental declaration on December 27, 2007. (*Id.,* ¶ 4, Ex. 2.) Consistent with his declarations, Dr. Hekman was designated as United's antitrust expert on May 1, 2009. (*Id.,* ¶ 5, Ex. 3.) Then, Dr. Hekman issued his written reports. Dr. Hekman's initial written report is dated September 30, 2009 and his supplemental report is dated November 12, 2009. (*Id.,* ¶ 6, Exs. 4-5.) Thereafter, Dr. Hekman was deposed by SDCCC on December 10, 2009. (*Id.* at ¶ 7.) Additionally, on March 1, 2010, Dr. Hekman submitted a declaration in support of United's opposition to SDCCC's motion for summary judgment. (*Id.,* ¶ 8, Ex. 7) (Dkt. No. 95-9.)

Expert discovery was conducted until December, 2009. (Slania Decl., at ¶ 9.) On January 20, 2010, SDCCC filed its motion for summary judgment. (Dkt. No. 92.) Also, on

February 3, 2010, SDCCC filed a *Daubert* motion challenging United's damages expert, Dr. Patrick Kennedy. (Dkt. No. 93.) The current trial date of March 21, 2011 was initially calendared on October 21, 2010. (Dkt. No. 129.)

Given the procedural and factual history regarding Dr. Hekman's involvement in this case, it is clear that SDCCC did not bring its *Daubert* challenges within a reasonable time after the close of discovery. Expert discovery was completed in December, 2009. At that juncture SDCCC was well aware of Dr. Hekman's testimony, and had been aware of his testimony for quite some time. SDCCC knew the grounds for any challenge to Dr. Hekman when SDCCC filed its initial *Daubert* challenge to United's damages expert, and SDCCC could have easily brought its challenges to Dr. Hekman at that time. Additionally, SDCCC could have challenged Dr. Hekman's testimony after its motion for summary judgment was denied in part,[1] or once trial was calendared. From November, 2007 until October, 2010 nothing changed about Dr. Hekman's testimony or opinions.

Rather than bring its challenges to his testimony in a timely fashion, SDCCC sandbagged United by waiting until the eve of trial to assert its *Daubert* challenges. In so doing SDCCC waited well over one year after expert discovery was completed before filing its *Daubert* motions. Accordingly, SDCCC waived any and all objections to Dr. Hekman and his testimony, and SDCCC's motion should be denied. *Webster,* 85 F. Supp. 2d at 1377; *Feliciano-Hill,* 439 F. 3d at 25.

**B.   SDCCC's Motion Violates Local Rule 7.1(h)**

SDCCC filed three *Daubert* motions attacking Dr. Hekman. SDCCC's first *Daubert* motion is addressed to five of Dr. Hekman's opinions. (Dkt. No. 140-18 at p. 7:11-22.) SDCCC's second *Daubert* motion is addressed to five different opinions from Dr. Hekman. (Dkt. No. 140-19 at p. 7:9-20.) SDCCC's third *Daubert* motion is addressed to two of Dr. Hekman's other opinions. (Dkt. No. 140-20 at p. 7:9-16.) SDCCC's *Daubert* motions do

---

[1] The Order denying SDCCC's motion for summary judgment in part was issued on August 3, 2010. (Dkt. No. 120.)

not attack opinions from any other experts, and SDCCC acknowledges that the successive motions are based on the first motion. Essentially, SDCCC has filed one motion challenging 12 of Dr. Hekman's opinions.

SDCCC's decision to challenge 12 opinions would not be problematic if SDCCC complied with Local Rule 7.1(h). SDCCC did not do so. SDCCC used 46 pages of text in its motion, violating Local Rule 7.1(h)'s 25 page limit. SDCCC was on notice of this page limitation, having previously sought permission to file a brief in excess of 25 pages. (Dkt. No. 89.) However, consistent with their gamesmanship in filing these motions late, SDCCC ignored Local Rule 7.1(h) and characterized its challenges as three separate motions. Such tactics are improper, and SDCCC's motion should be denied for violating Local Rule 7.1(h).

### 3. SDCCC'S MOTION SHOULD BE DENIED BECAUSE DR. HEKMAN PROPERLY APPLIED RELIABLE METHODOLOGIES TO APPROPRIATE DATA

A.   **The Applicable Legal Standard.**

Federal Rule of Evidence 702 allows the testimony of an expert witness if it will assist the trier of fact to understand the evidence or determine a fact in issue. Expert opinions are admissible where (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FRE 702.

The Federal Rules of Evidence assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert,* 509 U.S. 579. The *Daubert* Court identified several non-exclusive factors to consider in assessing the reliability of expert testimony. These include whether the expert's technique or theory can be or has been tested, whether the technique or theory has been subject to peer review and publication, the known or potential rate of error of the technique or theory when applied, and whether the technique or theory has been generally accepted in the scientific community. *Id.* at 593-594. These factors are meant to be helpful, not definitive, and may be tailored to the facts of a particular case. *In re Scrap Metal Antitrust Litigation,* 527 F.3d 517, 529 (6th Cir. 2008).

But, the trial court's "gatekeeping" role is not intended to serve as a replacement for the adversary system, and vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of attacking admissible evidence. *Daubert*, 509 U.S. at 596; *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Rule 702 does not permit a judge to weigh conflicting expert testimony or exclude expert testimony because it seems doubtful, nor should the Court determine whether the conclusions are correct. *In re Scrap Metal Antitrust Litigation*, 527 F.3d at 529-530. So long as the expert testimony is reliable and relevant, it should be admitted for the trier of fact. FRE 702.

B. **Dr. Hekman's Pro-Competitive Justification Opinion and Antitrust Injury Opinion Are Not Barred By His Underlying Market Definition**

As explained in United's concurrently filed opposition to SDCCC's first *Daubert* motion, Dr. Hekman's opinions regarding the relevant market are the product of reliable methodologies reasonably applied to the facts of this case. United incorporates herein by this reference its opposition to SDCCC's *Daubert* motion No. 1. To the extent Dr. Hekman's justification and antitrust injury opinions rely on his relevant market opinions, his opinions are reliable and admissible.

C. **Dr. Hekman's Justification Opinion Is Reliable And Would Assist The Trier Of Fact**

   1) **Dr. Hekman is Offering Neither His Opinion Nor Legal Conclusions Regarding Security at SDCCC.**

Dr. Hekman is United's expert on matters such as exclusionary behavior by market participants, the relevant geographical markets, whether SDCCC has market power or monopoly power, whether SDCCC exercised such power, and the likely effect of SDCCC's behavior on consumers in the relevant geographic market. (Slania Decl., Ex. 3; Ex. 4 at ¶ 2.) All of his testimony is related to these issues. He is not a security expert, nor is he offering opinions regarding security at the San Diego Convention Center (the "Facility"). This is apparent from his declarations submitted to this Court, his expert reports submitted in this case, and his deposition testimony.

1    SDCCC is critical of Dr. Hekman's analysis of SDCCC's proffered security
2  justification. However, Dr. Hekman is merely offering his opinion from an economist's
3  perspective that SDCCC's behavior indicates that SDCCC was <u>not</u> motivated by security
4  concerns. SDCCC does not cite to a single instance where Dr. Hekman opines on whether
5  security is or was adequate at the Facility, because he offers no such opinion.[2] For SDCCC to
6  argue that his opinions should be excluded because he is testifying on security matters is
7  nonsensical.[3]

8    SDCCC disagrees with Dr. Hekman's conclusion, claiming he is improperly providing
9  legal conclusions, not opinions. This is incorrect. The exclusive policy adopted by SDCCC
10 has precluded all other outside entities from performing Trade Show Cleaning Services at the
11 Facility. From this Dr. Hekman rightfully concluded that all competition at the Facility was
12 eliminated. (Slania Decl., Ex. 4 at ¶¶ 33-37.) Importantly, SDCCC admits that no other
13 competitors are currently performing Trade Show Cleaning Services at the Facility. (Slania
14 Decl., Ex. 9 at 420:8-22.) Thus, Dr. Hekman is not offering legal conclusions, he is merely
15 relying on the evidence (which is neutral) to report the results of the "no economic sense"
16 test,[4] that SDCCC's exclusive policy has an exclusionary effect which has eliminated
17 competition for Trade Show Cleaning Services at the Facility.

18    **2)   Dr. Hekman Considered All Available Evidence in Forming His Opinion.**

20   SDCCC claims that Dr. Hekman ignored each of SDCCC's stated reasons for
21 implementing the exclusive policy when he rejected its security justification. In particular,
22 SDCCC contends that Dr. Hekman overlooked SDCCC interrogatory responses claiming

---

[2] If there were any question, during his deposition Dr. Hekman clearly said he was not testifying as a security expert. (Slania Decl., Ex. 6 at 228:20-230:12.)

[3] In fact, just five lines later in its moving papers (Dkt. No. 140-20 at 9:26-28), SDCCC acknowledges that Dr. Hekman is not offering opinions on security matters, but is instead testifying as an economist.

[4] SDCCC cites no authority, presumably because there is none, invalidating the "no economic sense" test.

1 dissatisfaction with United's employees' unprofessional appearance and inability to interact
2 with SDCCC personnel in the event of an emergency, and that implementing the policy would
3 reduce SDCCC's financial reliance on the City of San Diego.[5]  SDCCC is wrong.  Dr. Hekman
4 did review SDCCC's interrogatory responses.  (Slania Decl., Ex. 4 at ¶ 4; at p. 93.)
5 Dr. Hekman did consider this evidence.  Given this fact, SDCCC is left with the option of
6 conducting vigorous cross-examination at trial, as *Daubert* suggests.

### 3) Dr. Hekman Properly Applies the "No Economic Sense" Test.

Using his expertise and training as an economist, and relying on all of the evidence made available to him, Dr. Hekman concluded that there is no pro-competitive justification for SDCCC's exclusive policy. (Slania Decl., Ex. 4 at ¶¶ 48-57.)  The "no economic sense" test is a well respected and reliable methodology utilized in the economic community to determine if conduct is exclusionary.  That is precisely the test Dr. Hekman performed in this instance.  He analyzed SDCCC's exclusive policy to determine whether or not it had an exclusionary effect.  SDCCC's own witnesses testified that no personnel other than SDCCC cleaning employees are permitted to perform Trade Show Cleaning Services at the Facility.  (*Id.,* Ex. 8 at 409:15-23; Ex. 9 at 420:8-22.)  Anyone would be hard-pressed to find a more exclusionary effect than eliminating all outside individuals from performing Trade Show Cleaning Services at the Facility.  Given SDCCC's admissions that it is excluding all others from working at the Facility to perform Trade Show Cleaning Services, it is more than abundantly clear that Dr. Hekman's conclusion is correct:  SDCCC's exclusive policy does not have a pro-competitive justification for its exclusionary effect.  This is precisely what the no-economic sense test was designed to determine.

SDCCC critiques Dr. Hekman's justification opinion as improperly rewording the applicable legal standard.  Dr. Hekman was not providing any statement regarding how the Court is to instruct the jury on the applicable law.  Rather, Dr. Hekman was explaining that to

---

[5] This is precisely what United claims was SDCCC's true motivation, increasing revenues, as SDCCC witnesses establish. (Slania Decl., Ex. 8 at 409:15-23; Ex. 9 at 423:4-8.)

properly employ the "no-economic sense" test an expert must examine the possibility of a pro-competitive reason for exclusionary actions before concluding that the actions are anticompetitive. (Slania Decl., Ex. 4 at ¶¶ 48-53.) Here, given that there are no competitors for Trade Show Cleaning Services that are allowed to perform at the Facility, there is no possibility of a pro-competitive reason for SDCCC's exclusive policy.[6] It is also important to point out that Dr. Hekman was not opining about whether or not SDCCC violated the law. Instead, Dr. Hekman was simply opining that SDCCC's exclusive policy had an exclusionary effect. (Slania Decl., Ex. 4 at ¶¶ 54-57.)

Further, Dr. Hekman is not second-guessing the business decisions of SDCCC. He is simply responding to SDCCC's assertion that it had a justification for implementing the exclusive policy. As the plaintiff, it is United's burden to prove that SDCCC's actions "were predatory and not predominantly motivated by legitimate business purposes." *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1339 (1983). Dr. Hekman's opinions satisfy United's burden to demonstrate that SDCCC's purported justifications are improper. Dr. Hekman said it well at his deposition:

> They would have 100 percent of the market. That they – there was no – there was no security reason for their appropriating the booth cleaning revenues. They could have simply charged for their time of their employees. But they appropriated that revenue, and it looks like they want this market so they can make money from it.

(Slania Decl., Ex. 6 at 206:18-24.)

SDCCC cites to a number of Ninth Circuit cases in support of its argument that Dr. Hekman's "second-guessing" of SDCCC's business decisions is contrary to established Ninth Circuit law. But the cases cited by SDCCC are inapposite to this case.

---

[6] Also, nowhere in his report or in any of his testimony does Dr. Hekman purport to have the authority to instruct the jury on the applicable law. The source of SDCCC's contrived argument in this regard is unclear.

1    SDCCC appears to cite to *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 999-1000 (9th Cir. 2010), for the proposition that merely making changes to improve a product does not violate Section 2.  However, SDCCC ignores the qualification to this rule – that such a violation does exist if the improvement "constitutes an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market." *Id.* at 1000.  Here, SDCCC's exclusive policy was an exclusionary means of attempting to monopolize the Trade Show Cleaning Services market at the Facility.  Moreover, SDCCC did not make any changes to its product.  Its conduct – implementing the exclusive policy – only changes the competitors' product by requiring them to use SDCCC employees.  *Allied Orthopedic* does not support SDCCC's case.

SDCCC also cites *Image Technical Service, Inc. v. Eastman Kodak Co.*, 903 F.2d 612 (9th Cir. 1990), but it does not support SDCCC's position that the Ninth Circuit rejects second-guessing of business justification.  In fact, the case merely restates the *Calculators Hawaii* standard: "the plaintiff also bears the burden of proving lack of legitimate business justifications in a Section 2 claim." *Id.* at 620, fn. 9.

Curiously, SDCCC cites to *California Computer Products, Inc. v. International Business Machines Corp.*, 613 F.2d 727, 740 (1979), and *In re IBM Peripheral EDP Devices Antitrust Litigation*, 481 F.Supp. 965, 1020 (1970), for the proposition that redesigning a product cannot be the basis for a Section 2 violation.  Apparently, SDCCC contends that the exclusive policy was merely a product redesign.  But, as discussed above, the exclusive policy did not redesign SDCCC's product; the exclusive policy redesigned SDCCC's competitors' product so that they could not meaningfully compete in the marketplace.  This case is also inapposite.

Based on the above it is clear that Dr. Hekman's opinion complies with the law, and is consistent with the evidence of this case.  Moreover, his methodology is acceptable and valid.  His testimony on this topic should be admitted.

D.  **Dr. Hekman's Opinion That Antitrust Injury Occurred is Based on Reliable Evidence.**

Dr. Hekman reviewed a significant amount of data for this case. (Slania Decl., Ex. 4 at ¶¶ 3-4; and at p. 90-93.) He relied on data from third parties, SDCCC and United. (*Id.*) From this pool of data he opined that SDCCC's exclusionary policy caused the following: 1. Increased Prices; 2. Loss of Choice; and 3. Diminished Quality. (Slania Decl., Ex. 4 at ¶¶ 32-37, 58-61.) Each of the three types of harm constitutes antitrust injury. *Paladin Association, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1156 (9th Cir. 2003); *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439-41 (9th Cir. 1995).

SDCCC challenges his opinions as to each type of harm. SDCCC's arguments have no merit.

SDCCC claims that Dr. Hekman's opinion is faulty because there is no evidence that consumer prices rose after the exclusive policy was implemented on July 1, 2007. Not so. As testified to by Mark Epstein and explained by Dr. Hekman in paragraph 58 of his report, the effective prices of Trade Show Cleaning Services did increase. After the implementation of the exclusive policy, Champion, and other decorators, were paying the same amount for Trade Show Cleaning Services, but actually receiving fewer services. The effective price increased, as the value decreased. (Slania Decl., Ex. 4 at ¶ 58; Ex. 15 at 545:6-547:16.)

SDCCC also contends that the evidence Dr. Hekman relies on to establish the lack of choice and diminished quality, namely statements by market participants, is anecdotal and therefore insufficient to support Dr. Hekman's conclusion. Once again, SDCCC is wrong. SDCCC does not explain why these letters are anecdotal, and why it is unreasonable for Dr. Hekman to rely on them. Also, SDCCC provides no authority demonstrating that Dr. Hekman could not rely on the statements under FRE 703. Moreover, SDCCC misrepresents the nature of the statements. SDCCC claims that some of the letters do not mention the "instant controversy," but the excerpts in Dr. Hekman's report establish that the letters all relate to consumers' disagreement with the exclusive policy. (Slania Decl., Ex. 4 at ¶¶ 20-21, 49, 59, 60, 61.) It is unclear why these statements would be insufficient to establish

1  harm to the competitive process. Furthermore, SDCCC ignores other evidence demonstrating
2  lack of choice and diminished quality. Specifically, SDCCC witnesses confirm that there
3  currently is no element of choice, only SDCCC can perform Trade Show Cleaning Services at
4  the Facility. (Slania Decl., Ex. 8 at 409:5-14; Ex. 9 at 420:8-22.) Also, Messrs. Kris,
5  Ljungquist and Dickerson all testified that SDCCC does a worse job than United. (Slania
6  Decl., Ex. 16 at 550:5-551:25; 552:17-21; 553:23-560:20; Ex. 17 at 563:14-565:17; Ex. 18 at
7  568:18-569:9.)

8  All of the above demonstrates that SDCCC's criticisms are invalid. Dr. Hekman should
9  be permitted to testify to this opinion.

### 4. DR. HEKMAN'S TESTIMONY WILL ASSIST THE TRIER OF FACT

Dr. Hekman is a well qualified and experienced economist. He earned an MBA in Finance and a Ph.D. in Economics at the University of Chicago. He also taught Economics and Finance at the University of Southern California, the University of North Carolina, the University of Chicago, and Boston College. He previously served as an economist with the Federal Reserve and as an expert witness in both federal and state court for the last 20 years. He published numerous papers in academic and professional journals. (Slania Decl., Ex. 4, ¶ 1.) He is extremely well qualified to testify on the antitrust matters in dispute, and his testimony will assist the jury. In fact, Dr. Hekman's testimony assisted the Court when considering SDCCC's motion for summary judgment.

As demonstrated above, Dr. Hekman's methodologies are sound and he reasonably applied them to the facts of this case. As *Daubert* makes clear, SDCCC is free to cross-examine Dr. Hekman as to the weight of his opinions. *Daubert*, 509 U.S. at 596. Importantly, the Court need not concern itself with whether or not Dr. Hekman's conclusions are correct, that is for the jury. *In re Scrap Metal Antitrust Litigation,* 527 F.3d at 529-30. Dr. Hekman's expert testimony is reliable, based on the facts of this case, and should be permitted.

## 5. CONCLUSION

For the preceding reasons, Plaintiff United National Maintenance, Inc. respectfully requests that the Court deny Defendant's *Daubert* motion to exclude John S. Hekman, Ph.D.'s opinions regarding justification and antitrust injury.

DATED: March 4, 2011               KIRBY NOONAN LANCE & HOGE LLP


By: */s/ Jacob M. Slania*
James R. Lance
Jacob M. Slania
Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.