1   WRIGHT & L'ESTRANGE
    A Partnership Including Professional Corporations
2      John H. L'Estrange, Jr. (SBN 049594)
       jlestrange@wllawsd.com
3      Joseph T. Ergastolo (SBN 137807)
       jte@wllawsd.com
4      Andrew E. Schouten (SBN 263684)
       aschouten@wllawsd.com
5   401 West A Street, Suite 2250
    San Diego, California 92101
6   (619) 231-4844  Fax: (619) 231-6710

7   Attorneys for Defendant
    San Diego Convention Center
8   Corporation, Inc.

9                 **UNITED STATES DISTRICT COURT**

10               **SOUTHERN DISTRICT OF CALIFORNIA**

11  UNITED NATIONAL MAINTENANCE    )    **CASE NO. 07-cv-2172-AJB**
    INC., A Nevada Corporation     )
12                                 )    **DEFENDANT'S [PROPOSED]**
                    Plaintiff,     )    **SEPARATE JURY INSTRUCTIONS**
13                                 )
                                   )
14          v.                     )
                                   )
15  SAN DIEGO CONVENTION CENTER    )
    CORPORATION, INC., A California )
16  Corporation                    )    Trial Date:   March 21, 2011
                    Defendant.     )    Time:         9:00 a.m.
17                                 )    Courtroom:    12

18

19         Pursuant to Local Civil Rules 16.1(f)(9)(b) and 51.1, Defendant San Diego Convention

20  Corporation, Inc. ("SDCCC") notes that it has no objection to the Court instructing the jury as

21  proposed in paragraph 15 of its Jury Trial Preparation and Scheduling Order ("Order") (Dkt. No.

22  135 at ¶15). Additionally, and pursuant to paragraph 12 of the Order, SDCCC respectfully

23  submits the following separate jury instructions numbered 401-451,[1] which are attached hereto

24  as Exhibit 1.

25  / / /

26  / / /

27  ─────────────────────
    [1] For purposes of this submission, and for ease of reference, the parties agreed that proposed jury
28  instructions shall be numbered as follows: 1–100 (Joint Instructions); 201–400 (Plaintiff's
    Separate Instructions); 401–600 (Defendant's Separate Instructions)

1    SDCCC reserves the right to amend or supplement these proposed instructions as

2    necessary.

3    Dated:  March 18, 2011                    WRIGHT & L'ESTRANGE
                                               Attorneys for Defendant
4                                              San Diego Convention Center Corp., Inc.

5
                                               */s/ John H. L'Estrange, Jr.*
6                                              John H. L'Estrange, Jr.
                                               jlestrange@wllawsd.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 07-cv-2172-AJB

# EXHIBIT 1

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 401

### Burden Of Proof—Preponderance of the Evidence

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

After weighing all of the evidence, if you cannot decide that something is more likely to be true than not true, you must conclude that the party did not prove it.  You should base your decision on all of the evidence, regardless of which party presented it.

In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trials, such as this one, the party who is required to prove something need prove only that it is more likely to be true than not true.

**Authority:**    Ninth Circuit Civil Model Jury Instruction 1.3 (2007) (modified); Judicial Council of California Civil Jury Instruction ("CACI") 200 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 402

### Suppression of Evidence

You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence. <u>If a party intentionally concealed or destroyed evidence, you may decide that the evidence would have been unfavorable to that party</u>.

**Authority:**     CACI 203 & 204 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 403[1]

### Purpose of the Sherman Act

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

**Authority:**    ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005) (hereinafter "ABA Model Instructions"), p. A-2.

---

[1] Please note that SDCCC departed from departed from Local Civil Rule 51.1(d), requiring that all "deleted material must be shown in parentheses and additions must be underscored" for items in enumerated lists. The CACI instructions use numbered lists formatted in parentheses, e.g., "(1)," etc. This made it appear that the number had been deleted, when it fact, the pattern instruction contained the text in that format. For sake of clarity, SDCCC has formatted all of its numbered lists without parentheses, e.g., "1.", etc., regardless of the pattern instructions' format.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 404

### Monopolization—Elements

The plaintiff alleges that it was injured by the defendant's unlawful monopolization of the trade show cleaning services at the San Diego Convention Center. Defendant contends the properly defined market is the national market for hosting trade shows.  To prevail on this claim, plaintiff must prove each of the following elements by a preponderance of the evidence:

1.  (**First,**) that the alleged market is a valid antitrust market;

2.  (**Second,**) that the defendant possessed monopoly power in that market;

3.  (**Third,**) that the defendant "willfully" acquired or maintained monopoly power in that market by engaging in anti-competitive conduct; and (**Fourth,** that the defendant's conduct occurred in or affected interstate commerce;)

4.  (**Fifth,**) that the plaintiff was injured in its business or property because of the defendant's anticompetitive conduct.

If you find that plaintiff has failed to prove any of these elements, then you must find for defendant and against plaintiff on this claim. If you find that plaintiff has proved each of these elements by a preponderance of the evidence, then you must find for plaintiff and against defendant on this claim.

**Authority:**     ABA Model Instructions, p. C-2 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 405

### Monopolization—Monopoly Power Defined

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.   More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.   To prove its monopolization claim, one of the elements plaintiff must prove is that defendant has monopoly power in a relevant antitrust market. However, monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether plaintiff has met its burden of proving monopoly power in a relevant market.

**Authority:**     ABA Model Instructions, p. C-4.

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 406**

**Monopolization—Relevant Market (General)**


Plaintiff must prove by a preponderance of the evidence that the defendant had monopoly power in a relevant market.   Defining the relevant market is essential because you are required to make a judgment about whether defendant has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain defendant's freedom to set prices for or restrict the output (of) <u>in a properly defined relevant market</u>. The most likely and most import restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act as restraints on defendant's power to set prices as it pleases. All the firms and products that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether plaintiff has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.


**Authority:**    ABA Model Instructions, p. C-6 (modified).

**<u>DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 407</u>**

**Monopolization—Relevant Product Market**

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers —to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors (*but you may conclude in this case that some other percentage is more applicable to the product at issue*). If you find that such switching would occur, then you may conclude that the products are in the same product market.

<u>In addition, you may also consider the following circumstances i</u>n evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider:

- **•** ((1)) Consumers' views on whether the products are interchangeable;
- **•** ((2)) The relationship between the price of one product and sales of another;
- **•** ((3)) The presence or absence of specialized vendors;

8

- ((4)) The perceptions of either industry or the public as to whether the products are in separate markets;

- ((5)) The views of the plaintiff and defendant regarding who their respective competitors are; and

- ((6)) The existence or absence of different customer groups or distribution channels.

In this case, plaintiff contends that the relevant product market is <u>trade show cleaning services at the San Diego Convention Center</u>.  By contrast, the defendant asserts that the plaintiff has failed to allege the proper relevant product market. The defendant contends that <u>plaintiff's market is not composed of reasonably interchangeable products, does not reflect the commercial realities faced by consumers, and ignores germane considerations listed above. Instead, defendant contends that the market for hosting trade shows is the proper relevant product market.</u>

If you find that the plaintiff has proven a relevant product market comprised of products that are reasonably interchangeable, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to prove such a market, then you must find in the defendant's favor on this claim.

**Authority:**    ABA Model Instructions, pp. C-7–C-9 (modified).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 408**

**Monopolization—Relevant Product Market—Supply Substitutability**

In deciding whether plaintiff has proven a relevant product market, you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, "the extent to which the producers of one product would be willing to shift their resources and personnel to producing another product in response to an increase in the price of the other product." Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels – defeating any effort by a would-be monopolist to charge significantly higher prices.

Take two shoe manufacturers, for example. The first manufacturer produces shoes for women, while the second manufacturer produces shoes for men. Generally speaking, men's and women's shoes are not reasonably interchangeable and, therefore, might be thought of as being in separate product markets. However, it is possible that the men's shoe manufacturer could quickly shift its resources to start producing women's shoes if the women's shoe manufacturer raised its prices significantly and vice versa. Although women would not buy men's shoes, nor would men buy women's shoes, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, men's and women's shoes would be included in the same market.

If, in determining the parameters of the relevant product market, you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with the defendant's—even though they do not presently compete with the defendant—you may consider whether the existence of these potential alternative suppliers can influence the prices that the defendant charges for its product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that no cross-elasticity of supply exists, you may define the market

10

solely on your evaluation of whether the allegedly competing products are reasonable substitutes for each other from the consumer's perspective.

**Authority:**     ABA Model Instructions, p. C-11-C12.

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 409**

**Monopolization—Relevant Geographic Market**

The relevant geographic market is the area in which defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

Plaintiff has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, plaintiff claims that the relevant geographic market is large convention centers in the San Diego metropolitan area, or equivalently, the San Diego Convention Center. By contrast, defendant asserts that plaintiff's market is unduly narrow, incorporates non-geographic considerations, and fails to consider where consumers would go in response to increased prices. Moreover, because defendant asserts that the proper relevant product market is the market for hosting trade shows, the geographic market is nationwide. In determining whether plaintiff has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- The geographic area in which defendant sells and where defendant's customers are located;

- The geographic area to which customers turn for supply of the product;

- The geographic area to which customers have turned or have seriously considered turning;

- The geographic areas that suppliers view as potential sources of competition; and

- Whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

**Authority:**   ABA Model Instructions, pp. C-13–C-14 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 410

### Monopolization—Relevant Market—Necessity of Proof

If, after considering all the evidence, you find that the plaintiff has proven by a preponderance of the evidence both a relevant product market and a relevant geographic market, then you must find that plaintiff has met the relevant market requirement and you must consider the remaining elements of this claim.

If you find that the plaintiff has failed to prove by a preponderance of the evidence either a relevant product market or a relevant geographic market, then you must find for the defendant and against the plaintiff on this claim.

**Authority:**     ABA Model Instructions, p. C-15.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 411

### Existence of Monopoly Power—Indirect Proof

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. Plaintiff has attempted to use evidence of the structure of the market to show that defendant has monopoly power.   The evidence presented by the parties includes evidence of defendant's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors.  If this evidence establishes that defendant has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that defendant has monopoly power in the market.

*Market Share*

The first factor that you should consider is defendant's market share. Based on the evidence that you have heard about defendant's market share, you should determine the defendant's market share as a percentage of total industry sales.

A market share above 50 percent may be sufficient to support an inference that defendant has monopoly power, but in considering whether defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with defendants' market share, these factors should inform you as to whether defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that defendant has monopoly power. However, if you find that the other evidence demonstrates that defendant does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that defendant has monopoly power.

### Market Share Trends

The trend in defendant's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

### Barriers to Entry

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

### Entry and Exit By Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that defendant lacks monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that defendant has monopoly power.

### *Number and Size of Competitors*

You may consider whether defendant's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on defendant's ability to price its products. If defendant's competitors are vigorous or have large or increasing market shares, this may be evidence that defendant lacks monopoly power. On the other hand, if you determine that defendant's competitors are weak or have small or declining market shares, this may support an inference that defendant has monopoly power.

### *Conclusion*

If you find that defendant has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that defendant does not have monopoly power, then you must find for defendant and against the plaintiff on this claim.

**Authority:**    ABA Model Instructions, pp. C-16–C-19.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 412

### Monopolization—Willful Acquisition or Maintenance of Monopoly Power

The next element plaintiff must prove is that defendant willfully acquired monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. Monopoly power, when lawfully obtained, is an important part of the free market system. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A company with monopoly power is not required to share the source of its competitive advantage with its rivals. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

18

In determining whether defendant's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers - the only effect of the alteration is to exclude competing printer makers from the marketplace. If Firm C thereby prevented its printer competitors from competing and achieved

monopoly power, it would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the acquisition of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier; or because the market is so limited that it is impossible to efficiently produce the product except by a plant large enough to supply the whole demand.

If you find that plaintiff has proven by a preponderance of the evidence that defendant willfully acquired monopoly power through anticompetitive acts, then you must consider whether the plaintiff has proved the remaining elements of this claim. If, however, you find that the plaintiff did not prove this element by a preponderance of the evidence, then you must find for the defendant and against the plaintiff on this claim.

**Authority:**     ABA Model Instructions, pp. C-26 - C-30 (modified); Pac. Bell Tel. Co. v. linkLine Communs., Inc., 129 S. Ct. 1109, 1122 (2009); Verizon Communs., Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 407-09 (2004); Doe v. Abbott Labs., 571 F.3d 930, 934 (9th Cir. 2009).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 413

## Monopolization—Essential Facility[2]

As stated before, one of the elements plaintiff must prove is that defendant engaged in anticompetitive conduct. Plaintiff claims that this element is satisfied in this case because it claims that defendant refused to deal with plaintiff and thereby denied plaintiff access to a facility essential to competition in a relevant market. This claim requires that you examine defendant's conduct under the so-called "essential facility" or "bottleneck" theory of antitrust liability according to the following principles of law.

Ordinarily, a company may deal or refuse to deal with whomever it pleases, as long as it acts independently. A company that has exclusive control over a facility essential to effective competition may refuse to deal with another person as long as it has valid business reasons for that refusal - that is, a company may deny access as long as it has a business reason for the denial of access other than the harmful effect that the denial would have on competitors. However, a company may not deny potential competitors access to that facility on reasonable terms and conditions if it does not have valid business reasons for the refusal and if denying access would create or maintain monopoly power in the relevant market.

Plaintiff alleges that defendant denied it access to the San Diego Convention Center without a valid business reason. In order to establish that the denial of access to the San Diego Convention Center constitutes "anticompetitive conduct" and thus satisfies the second element of a monopolization claim, plaintiff must prove each of the following elements by a preponderance of the evidence:

---

[2] SDCCC maintains that the essential facilities is no longer viable following Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 411 (2004). It contends that UNM's claims should be analyzed as refusals-to-deal. The ABA Model Instructions state: "While many courts have recognized Section 2 claims based on unilateral denials of access to essential facilities, the Supreme Court emphasized in [Trinko] that it had never recognized the validity of such a claim and raised doubts about whether it would recognize such a claim. . . . This instruction is provided for those cases in which a court decides that such essential facility claims survive [Trinko]."

1.  (**First,**) that defendant controls an "essential facility" (a facility that is essential to effective competition in the relevant market); and (**Second,** that the facility could not practically or economically be duplicated by potential competitors;)

(**Third**, that it is feasible for the plaintiff to use [*name of facility*] without interfering with defendant's use or significantly inhibiting defendant's ability to conduct its business;)

2.  (**Fourth,**) that defendant denied plaintiff (reasonable) access to the San Diego Convention Center.(;)

(**Fifth**, that denying reasonable access to [*name of facility*] was contrary to defendant's independent business interests;)

(**Sixth,** that defendant's refusal to grant plaintiff reasonable access to [*name of facility*] had the effect of creating or maintaining monopoly power in a relevant market.)

A facility is essential only if:

a.  the facility is located in an upstream market over which defendant has monopoly control;

b.  defendant's control of the facility carries with it the power to eliminate competition in a downstream, relevant market;

c.  the facility could not practically or economically be duplicated by plaintiff or other potential competitors and is otherwise unavailable to plaintiff;

d.  access to the facility is absolutely vital to plaintiff's survival in the downstream, relevant market; and

e.  access to the facility by plaintiff is necessary to increase competition in the downstream, relevant market.

(A facility is essential to effective competition if it is impracticable without it to compete in the relevant market with the firm that controls the facility.)  If a competitor

22

has access to the facility, the monopolization claim fails. The fact that the use of the facility would make it easier or less costly for a firm to compete in the relevant market does not make the facility essential if the firm is capable of competing without the use of the facility. The antitrust laws do not guarantee competitors access to an essential facility in the most profitable manner.

**Authority:**     ABA Model Instructions, pp. C-32—C-34 (modified); Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 411 (2004); MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1129-30 (9th Cir. 2004); Pittsburg County Rural Water District No. 7 v. City of McAlester, 358 F.3d 694, 721 (10th Cir. 2004); Paladin Assocs. v. Montana Power Co., 328 F.3d 1145, 1163 (9th Cir. 2003); Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 544-545 & n. 12 (9th Cir. 1991); Ferguson v. Greater Pocatello Chamber of Commerce, Inc., 848 F.2d 976, 983 (9th Cir. 1988); Flip Side Prods. v. Jam Prods., 843 F.2d 1024, 1034 (7th Cir. 1988); Fishman v. Estate of Wirtz, 807 F.2d 520, 563-575 (7th Cir. 1986) (Easterbrook, J., dissenting in part), cited with approval in Ferguson, 848 F.2d at 983; Mid-South Grizzlies v. Nat'l Football League, 720 F.2d 772, 787 (3d Cir. 1983).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 413.1**

**Monopolization—Unilateral Refusal to Deal with a Competitor**

As stated before, one of the elements plaintiff must prove is that defendant engaged in anticompetitive conduct. Plaintiff claims that this element is satisfied in this case because it claims that defendant unlawfully refused to deal with plaintiff, a competitor.

Ordinarily, a company may deal or refuse to deal with whomever it pleases, as long as it acts independently. Even a company with monopoly power in a relevant market has no general duty to cooperate with its business rivals and ordinarily may refuse to deal with them.

A refusal to deal with a competitor constitutes anticompetitive conduct only where:

1. defendant's refusal amounted to a termination of a voluntary, profitable course of dealing between plaintiff and defendant;

2. the refusal was contrary to defendant's short-term economic interests; and

3. the refusal makes sense for defendant only because it harms competitors and helps defendant achieve or maintain monopoly power in the long run.

(the refusal is contrary to the short-run best interest of defendant, and where it makes sense for defendant only because it harms competitors and helps defendant achieve or maintain monopoly power in the long run.) In other words, if, on the one hand, the refusal to deal results in or is expected to result in short-run benefits to defendant— such as more profits, a higher market share, or avoiding the loss of customers—then it is not anticompetitive and you must find for defendant on this element. On the other hand,

24

if the refusal to deal hurts defendant in the short run <u>and was expected to hurt defendant</u> <u>in the short run</u>, and is undertaken only because defendant expects it to harm competitors and enhance its monopoly power in the long run, then you must find for plaintiff on this element.

If you find that defendant had mixed motives for its refusal to deal—that is, that the conduct was expected to result in some short run benefits for defendant as well as harm competitors—then you must find for defendant on this element. A refusal to deal is only anticompetitive where it is hurts defendant in the short run and benefits defendant only by harming competitors.

**Authority:**    ABA Model Instructions, pp. C-36—C-37 (modified); <u>Verizon</u> <u>Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP</u>, 540 U.S. 398, 411 (2004); <u>MetroNet Servs. Corp. v. Qwest Corp.</u>, 383 F.3d 1124, 1129-30 (9th Cir. 2004)

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 414**

**Monopolization—Business Justification**

Conduct justified by a legitimate business purpose is not exclusionary or anticompetitive under the antitrust laws.

Defendant has introduced evidence that its (refusal to deal) conduct was based on legitimate business purposes. (A refusal to deal) Conduct that is designed to protect or further the legitimate business purposes of defendant does not violate the antitrust laws, even if that conduct injures competitors.  Plaintiff has the burden of proving by a preponderance of the evidence that defendant's conduct was not motivated by legitimate business purposes. This issue has two interrelated parts.

First, you should decide whether each business purpose or reason advanced by defendant was legitimately competitive.  In general, the desire to maintain monopoly power or to block entry of competitors is not a legitimate business purpose. A legitimate business purpose is one that benefits a company regardless of any harmful effect on competitors, such as (a purpose to promote) promoting efficiency or quality, offering a better product or service, or increas(e)ing short run profits, or otherwise benefiting consumers.  Thus, (refusal to deal) conduct that harms a defendant's independent interests and makes sense only to obtain or maintain monopoly power is not based on legitimate business purposes.  (A refusal to deal.) Conduct that is based in part on legitimate business reasons, even if it is also motivated by the desire to harm competitors, does not violate the antitrust laws.

Second, if you find that any business purpose advanced by defendant is legitimate, you should then consider whether each such reason is pretextual—in other words, not a genuine reason for defendant's conduct. You may not consider any reasons that did not, in fact, motivate defendant's conduct. You may not, however, second-guess whether defendant's business judgment was wise or correct in retrospect.

If you find that the plaintiff has failed to prove by a preponderance of the evidence that defendant's conduct was not motivated by any legitimate business purposes, then you must find for the defendant and against the plaintiff on this claim.

**Authority:**   ABA Model Instructions, pp. C-39 (modified); Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 483 (1992); Cont'l T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 55 & n.23 (1977); Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP, 592 F.3d 991, 999-1001 (9th Cir. 2010); Morris Communs. Corp. v. PGA Tour, Inc., 364 F.3d 1288, 1295-96 (11th Cir. 2004); United States v. Microsoft Corp., 253 F.3d 34, 58-59 (D.C. Cir. 2001) (en banc); Image Tech. Servs. v. Eastman Kodak Co. ("Image Tech. II"), 125 F.3d 1195, 1212 (9th Cir. 1997); High Technology Careers v. San Jose Mercury News, 996 F.2d 987, 990-92 (9th Cir. 1993); Anaheim v. So. Cal. Edison Co., 955 F.2d 1373, 1381 (9th Cir. 1992); Vernon v. So. Cal. Edison Co., 955 F.2d 1361, 1366 (9th Cir. 1992); Image Technical Services, Inc. v. Eastman Kodak Co. ("Image Tech. I"), 903 F.2d 612, 620 (9th Cir. 1990), aff'd, 504 U.S. 451 (1992); Oahu Gas Service, Inc. v. Pacific Resources, Inc., 838 F.2d 360, 368-69 (9th Cir. 1988); Drinkwine v. Federated Publications, Inc.,

780 F.2d 735, 740 (9th Cir. 1985); <u>Calculators Hawaii, Inc. v. Brandt,</u>

<u>Inc.,</u> 724 F.2d 1332, 1339 (9th Cir. 1983).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 415

### Monopolization—Injury and Causation

(If you find that defendant has violated [the applicable section of the Sherman, Clayton or Robinson-Patman] Act as alleged by plaintiff, then you must decide if plaintiff is entitled to recover damages from defendant.)

If you find that plaintiff has proven the other elements of its claim that defendant has engaged in unlawful monopolization of a relevant market, then you must consider whether plaintiff has proven that defendant's unlawful conduct caused plaintiff's injury.

Plaintiff is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

1.    (**First,**) that plaintiff was in fact injured as a result of defendant's alleged violation of the antitrust laws;

2.    (**Second,**) that defendant's alleged illegal conduct was a material cause of plaintiff's injury; and

3.    (**Third,**) that plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For plaintiff to establish that it is entitled to recover damages, it must prove that it was injured as a result of defendant's alleged violation of the antitrust laws.   Proving the fact of damage does not require plaintiff to prove the dollar value of its injury. It requires only that plaintiff prove that it was in fact injured by defendant's alleged antitrust violation. If you find that plaintiff has established that it was in fact injured, you may then consider the amount of plaintiff damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiff has established that it was in fact injured.

29

Plaintiff must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause. Plaintiff is not required to prove that defendant's alleged antitrust violation was the sole cause of its injury; nor need plaintiff eliminate all other possible causes of injury. It is enough if plaintiff has proved that the alleged antitrust violation was a material cause of its injury.   However, if you find that plaintiff's injury was caused primarily by something other than the alleged antitrust violation, then you must find that plaintiff has failed to prove that it is entitled to recover damages from defendant.

Finally, plaintiff must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If plaintiff's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then plaintiff's injuries are antitrust injuries. On the other hand, if plaintiff's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then plaintiff's injuries are not antitrust injuries and plaintiff may not recover damages for those injuries under the antitrust laws.   (*Insert the following sentence where plaintiff is a competitor of defendant*.)  You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit—and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if plaintiff can establish that it was in fact injured by defendant's conduct, that defendant's conduct was a material cause of plaintiff's injury, and that (defendant's) plaintiff's injury was the type that the antitrust laws were intended to

prevent, then plaintiff is entitled to recover damages for the injury to its business or property.

**Authority**:      ABA Model Instructions, pp. F-2–F-5 (modified).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 416**

**Attempted Monopolization—Elements**

Plaintiff alleges that it was injured by defendant's unlawful attempt to monopolize. To prevail on its claim of attempted monopolization, plaintiff must prove each of the following elements by a preponderance of the evidence:

1. **(First,)** that defendant engaged in anticompetitive conduct;

2. **(Second,)** that defendant had a specific intent to achieve monopoly power in a relevant market;

3. **(Third,)** that there was a dangerous probability that defendant would achieve its goal of monopoly power in the relevant market; and **(Fourth,** that defendant's conduct occurred in or affected interstate commerce;)

4. **(Fifth,)** that plaintiff was injured in its business or property by defendant's anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for defendant and against plaintiff on plaintiff's claim of attempted monopolization. If you find that the evidence is sufficient to prove all five elements as to defendant, then you must find for plaintiff and against defendant on plaintiff's claim of attempted monopolization.

**Authority:**     ABA Model Instructions, pp. C-84—C-85 (modified)

## <u>DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 417</u>

### Attempted Monopolization—Anticompetitive Conduct

It is not sufficient for plaintiff to prove that defendant intended to monopolize the relevant market. Plaintiff must also show that defendant engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that defendant would succeed.

<u>I have previously instructed you with respect to plaintiff's burden to establish a relevant market and prove that defendant engaged in anticompetitive conduct by a preponderance of the evidence. I have also instructed you on legitimate business justifications. Those instructions apply to this claim as well.</u>

**Authority:**     ABA Model Instructions, p. C-88 (modified)

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 418

### Attempted Monopolization—Specific Intent

The second element that plaintiff must prove is that defendant had a specific intent to monopolize a relevant market. To do so, plaintiff must first prove the market it is talking about—trade show cleaning services at the San Diego Convention Center—is a relevant market for antitrust purposes. Plaintiff must then prove that defendant had a specific intent to monopolize that market. The Court will begin by instructing you on the relevant market, and the Court will then discuss specific intent. If plaintiff proves both that trade show cleaning services at the San Diego Convention Center is a relevant market and that defendant had a specific intent to monopolize that market, you must find that plaintiff has proven this element of its attempted monopolization claim and you should consider the other elements of the claim. If you find that plaintiff fails to prove either of these points, then you must find for defendant on plaintiff attempted monopolization claim.

If you find that plaintiff has proven a relevant market, you must then decide whether defendant had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that defendant acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which plaintiff may prove that defendant had the specific intent to monopolize. There may be evidence of direct statements of defendant's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of defendant at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of defendant. You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful), which

34

may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that defendant actually intended to obtain a monopoly, specific intent may be inferred from what defendant did.   For example, if the evidence shows that the natural and probable consequence of defendant's conduct in the relevant market was to give defendant control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendant, then you may (but are not required to) infer that defendant specifically intended to acquire monopoly power.


**Authority:**     ABA Model Instructions, pp. C-90—C-91 (modified)

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 419**

**Attempted Monopolization—Dangerous Probability of Success**

If you find that defendant had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that defendant would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that defendant would acquire the ability to control price in the market, you should consider such factors as:

1. (**First,**) defendant's market share;

2. (**Second,**) the trend in defendant's market share;

3. (**Third,**) whether the barriers to entry into the market made it difficult for competitors to enter the market; and

4. (**Fourth,**) the likely effect of any anticompetitive conduct on defendant's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that defendant would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that defendant would ultimately acquire monopoly power.

**Authority:**    ABA Model Instructions, pp. C-95–C-96 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 420

### Attempted Monopolization—Injury and Causation

In order to determine whether plaintiff has proven the fourth element of its attempted monopolization claims, you must determine whether it has demonstrated that defendant's conduct caused plaintiff's injury to its business and property.

In order to assess whether defendant's conduct caused plaintiff's injury, you are to follow the instructions I have already provided in Jury Instruction Nos. ___ and ___.

**Authority:**    ABA Model Instructions, pp. F-2–F-4 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 421

### Antitrust Defense—State Action Doctrine

Defendant claims that its conduct is excused under the so-called "State Action Doctrine" because it exercised authority given to it by the State of California. A state is generally immune from antitrust liability for its anticompetitive conduct. Under certain circumstances, a municipality may also be immune, but only if it is acting pursuant to state policy that authorizes the challenged conduct.

The Court has already determined that defendant is a local government entity under state law. Therefore, defendant bears the burden of proving by a preponderance of the evidence each of the following elements to qualify for immunity under the State Action Doctrine:

1.    that the State legislature authorized defendant's challenged actions; and

2.    that the State legislature intended to displace competition with regulation.

You are not to decide if state law or policy requires or commands defendant's challenged actions. Instead, you must determine whether defendant's conduct is a specific, foreseeable result from the authority to regulate granted to the City of San Diego by the laws of the State of California.

You must not consider the motivations of the individual actors in adopting or implementing defendant's policies.

If you find that defendant has proven by a preponderance of the evidence that it qualifies for immunity under the State Action Doctrine, then you must find for the defendant and against the plaintiff on the antitrust claims. If, however, you find that the defendant did not prove this defense by a preponderance of the evidence, then you must consider the remaining aspects of plaintiff's antitrust claims.

**Authority:**    Community Communications Co. v. City of Boulder, 455 U.S. 40, 54-56 (1982); Town of Hallie v. City of Eau Claire, 471 U.S. 34, 40-43 (1985); Shames v. Cal. Travel & Tourism Opinion Comm'n, 607 F.3d 611, 619 (9th Cir. 2010); Traweek v. San Francisco, 920 F.2d 589, 591-593 (9th Cir. 1990); Llewellyn v. Crothers, 765 F.2d 769, 774 (9th Cir. 1985).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 422

### Antitrust Damages—Effect of Instruction

I am now going to instruct you on the issue of damages. The fact that I am giving you instructions concerning the issue of plaintiff's damages does not mean that I believe the plaintiff should, or should not, prevail in this case.

If, for any reason, you reach a verdict for defendant on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give. Instructions as to the measure of damages are given for your guidance in the event you should find in favor of plaintiff based on a preponderance of the evidence in accordance with the other instructions I have given you. You should only consider calculating damages if you first find that defendant violated the antitrust laws and that this violation caused injury to plaintiff.

**Authority:**    ABA Model Instructions, p. F-11.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 423

### Antitrust Damages—Introduction and Purpose

If you find that defendant violated the antitrust laws and that this violation caused injury to plaintiff, then you must determine the amount of damages, if any, plaintiff is entitled to recover. The law provides that plaintiff should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer - what we sometimes refer to as punitive damages - or to deter defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to plaintiff an amount for attorneys fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

**Authority:**     ABA Model Instructions, p. F-12.

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 424**

**Antitrust Damages—Speculation Not Permitted**

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by the plaintiff. If plaintiff establishes with reasonable probability the existence of an injury proximately caused by the defendant's antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, plaintiff should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then your verdict must be for defendant. If you find that plaintiff has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

**Authority:**     ABA Model Instructions, pp. F-15—F-16.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 425

### Antitrust Damages—Causation and Disaggregation

If you find that defendant violated the antitrust laws and that plaintiff was injured by that violation, plaintiff is entitled to recover for such injury that was the direct and proximate result of the unlawful acts of defendant. Plaintiff is not entitled to recover for injury that resulted from other causes. ([*Describe potential causes of injury other than alleged unlawful conduct of defendant. Some examples follow.*])

(*Where plaintiff is a purchaser claiming injury from an alleged overcharge.*] plaintiff claims that it suffered injury because it paid increased prices for [*product X*] as a result of defendant's alleged antitrust violation. In the normal course of business activity, prices might rise for a variety of factors that have nothing to do with the antitrust laws. For example, prices may rise because producers' costs rose, demand for a product increased, changing technology made a product more valuable to consumers, the sellers engaged in lawful follow-the-leader pricing behavior, or the marketplace otherwise changed to allow producers to raise prices independent of any antitrust violation [*expand or contract list as appropriate*])

([*Where plaintiff is a competitor.*]) Plaintiff claims that it suffered injury because it lost sales and profits as a result of defendant's antitrust violation. In the normal course of competitive business activity, competitors will lose sales to each other, and to third parties, for various causes that have nothing to do with antitrust law violations; and businesses can be unprofitable for causes that have nothing to do with the antitrust laws. Plaintiff may not recover for lost sales if it lost those sales because of the superior business acumen or salesmanship of a competitor, because a competitor offered a superior product, or because of lawful competition from defendant or other competitors. Plaintiff also may not recover if it lost profits as a result of causes that had nothing to do with defendant's alleged unlawful conduct, such as changes in demand, increased

competition from new competitors, changes in product technology, changes in market conditions, poor management or missed opportunities by plaintiff, or other factors ([*expand or contract list as appropriate*]). <u>Finally, plaintiff may not recover damages for conduct that occurs outside of the relevant market.</u>

  Plaintiff bears the burden of showing that its injuries were caused by defendant's alleged antitrust violation—as opposed to any other factors, such as those that I just described to you. If you find that plaintiff's alleged injuries were caused by factors other than defendant's alleged antitrust violation, then you must return a verdict for defendant. If you find that plaintiff's alleged injuries were caused in part by defendant's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of plaintiff's alleged injuries that were caused by defendant's alleged antitrust violation. __

  Plaintiff bears the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all. If you find that plaintiff has proven with reasonable certainty the amount of damage caused by defendant's alleged antitrust violation, then you must return a verdict for the plaintiff.

**Authority:**  ABA Model Instructions, pp. F-18—F-20 (modified); <u>Concord Boat Corp. v. Brunswick Corp.</u>, 207 F.3d 1039, 1056-57 (8th Cir. 2000); <u>Image Tech. Servs. v. Eastman Kodak Co.</u>, 125 F.3d 1195, 1212 (9th Cir. 1997); <u>MCI Comms. Corp. v. A.T. & T. Co.</u>, 708 F.2d 1081, 1161-66 (7th Cir. 1983).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 426

### Antitrust Damages—Lost Profits

Plaintiff claims that it was harmed because it lost profits as a result of defendant's alleged antitrust violation. If you find that defendant committed an antitrust violation and that this violation caused injury to plaintiff, you may calculate the profits, if any, that plaintiff lost as a result of defendant's antitrust violation. To calculate lost profits, you must calculate net profit: the amount by which plaintiff's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues. (You may calculate net profit by using the following measure:)

([*Before-After Measure*]) Plaintiff has proposed to calculate the net profits it would have earned if there had been no antitrust violation by showing evidence of its actual net profits in a period before the antitrust violation. If you find that the earlier period is a reliable guide to estimate what plaintiff's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate plaintiff's lost profits by comparing (a) plaintiff's actual net profits in the earlier period with (b) plaintiff's actual net profits (or loss) thereafter. You may find, however, that plaintiff's profits in the prior period are not representative of what its profits would have been during the period in which the antitrust violation is alleged to have occurred, such as if plaintiff's profits were impacted by changed economic conditions, mismanagement, increased competition, changing technology, or other factors (expand or contract as applicable). If you find that the prior period is not representative of the later period, and that lost profits in the later period may only be calculated using speculation or guesswork, you may not award damages for lost profits based on the prior period.

([*Yardstick Measure*] plaintiff has proposed to calculate the net profits it would have earned if there had been no antitrust violation by showing evidence of other businesses that were not affected by the antitrust violation. If you find that the other

45

businesses whose performance is compared to plaintiff's business are a reliable guide to estimate what plaintiff's actual net profits would have been in the absence of the antitrust violation, then you may calculate plaintiff's lost profits by comparing (a) the actual profit performance of plaintiff with (b) the profit performance of the comparable businesses. You may find, however, that the businesses proposed by plaintiff as a yardstick for its performance are not representative of what plaintiff's profits would have been in the absence of the antitrust violation, such as if plaintiff's profits were impacted by different economic conditions, mismanagement, different levels of competition, or other factors [*expand or contract as applicable*]. The two businesses do not have to be identical; they need only be sufficiently similar that conclusions may be drawn within the bounds of reasonableness. However, if you find that the businesses proposed by plaintiff as a yardstick for its performance are not representative of what plaintiff's profits would have been, and that plaintiff's lost profits may only be calculated using speculation or guesswork, you may not award damages for lost profits based on this yardstick measure.)

([*Market Share Measure*] plaintiff has proposed to calculate the net profits it would have earned if there had been no antitrust violation by showing evidence of the market share it would have had in the absence of the antitrust violation. If you find that plaintiff has shown reliable evidence of what its market share would have been in the absence of the antitrust violation, then you may calculate plaintiff's lost profits by considering market share, evidence of the size of the market, and evidence relating to the profit margin plaintiff would have secured on such sales. You may find, however, that plaintiff has not shown reasonable evidence of what its market share would have been in the absence of the alleged antitrust violation, such as if plaintiff's market share were impacted by changed economic conditions, mismanagement, increased competition, changing technology, or other factors [*expand or contract as applicable*]. You may also find that plaintiff has not shown reasonable evidence of the profit margin it would have incurred in the absence of the alleged antitrust violation. If you find that the evidence of

plaintiff's market share and/or profit margins is not reasonable, and that lost profits may only be calculated using speculation or guesswork, you may not award damages for lost profits based on market share or profit margins.)

**Authority:**     ABA Model Instructions, pp. F-27—F-30.

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 427**

**Antitrust Damages—Expert Testimony**


You have heard testimony from plaintiff's expert, Patrick Kennedy, and from defendant's expert, Thomas Lambert, regarding the amount of damages to which plaintiff claims it is entitled and the proper amount of damages. If you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report are not reasonable or are not proven by a preponderance of the evidence, or if you find that one of these expert's conclusions depend on a comparison of things which have not been proven to be comparable, then you should consider this in determining the weight—if any—you will give to these assumptions and the effect they have on plaintiff's damages claim.


**Authority:**     ABA Model Instructions, pp. F-46.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 428

### Antitrust Damages—Trebling Damages

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three. You are not to try to do this yourself. This is the job of the Court. In calculating damages, if any, you are only to try to determine actual or single damages.

**Authority:**     ABA Model Instructions, pp. F-52.

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 429**

**Antitrust Damages—Local Government Antitrust Act**


Plaintiff may not recover damages from any local government, or official or employee acting in an official capacity for any portion of its injuries attributable to an antitrust violation.

Defendant has the burden of proof on this issue. Defendant must prove by a preponderance of the evidence that it is a "local government" as defined by the Local Government Antitrust Act.  That law defines "local government" as

> "a school district, sanitary district, or any other special function governmental unit established by State law in one or more States."

To qualify as a "special government unit," defendant must show that:
(a) defendant has limited geographic jurisdiction; and (b) taxpayers would bear the burden of any antitrust damage award.

If you find that defendant has proven that it is "local government," then you may not award any damages to plaintiff.  If you find that defendant has not proven that it is "local government," then you must award plaintiff the amount of damages it has proven with reasonable certainty.


**Authority:**     15 U.S.C. §§ 34(1), 35; Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (Dkt. 120, 6:10-14).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 430

### Antitrust Damages—Mitigation

Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. Plaintiff is not entitled to increase any damages through <u>its own action or</u> inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If plaintiff failed to take reasonable steps available to it, and the failure to take those steps results in greater harm to plaintiff than it would have suffered had it taken those steps, then plaintiff may not recover any damages for that part of the injury it could have avoided.

Defendant has the burden of proof on this issue. Defendant must prove by a preponderance of the evidence that plaintiff acted unreasonably in failing to take specific steps to minimize or limit its losses, that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps, and the amount by which plaintiff's loss would have been reduced had plaintiff taken those steps.

In determining whether plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require plaintiff to have taken every conceivable step that might have reduced its damages. The evidence must show that plaintiff failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in plaintiff's position would likely have adopted, given the circumstances as they appeared at that time. Plaintiff should be given a wide latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in light of the existing circumstances.

**Authority:**    ABA Model Instructions, pp. F-47—F-48 (modified).

<u>**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 431**</u>

**Intentional Interference With Contractual Relations—Elements**

Plaintiff claims that defendant intentionally interfered with the contracts between it and <u>"decorators" General Experience Services ("GES") and Champion Exposition Services ("Champion")</u>. To establish this claim, plaintiff must prove all of the following, <u>by a preponderance of the evidence</u>:

1. That there was a contract between plaintiff and <u>GES and/or Champion</u>;

2. That defendant knew of the contract;

3. That defendant intended to disrupt the performance of this contract;

4. That defendant's conduct prevented performance or made performance more expensive or difficult;

5. That plaintiff was harmed; and

6. That defendant's conduct was a substantial factor in causing plaintiff's harm.

**Authority:**   CACI 2201 (modified).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 432

### Intentional Interference With Contractual Relations—Contract

Plaintiff must prove, by a preponderance of the evidence, that its contracts with GES and/or Champion were valid and enforceable at the time of the interference.

I have already determined that the Paradice and Brede National oral contracts do not fall into this category. Instead, those contracts are subject to the intentional interference with prospective economic advantage claim.

**Authority:**    Buckaloo v. Johnson, 14 Cal.3d 815, 825-827 (1975);  PMC, Inc. v. Saban Entertainment, Inc., 45 Cal.App.4th 579, 601 (1996), overruled in part on other grounds by Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1159 n. 11 (2003); Shamblin v. Berge, 166 Cal.App.3d 118, 124 (1985).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 433

### Intentional Interference With Contractual Relations—Knowledge

Plaintiff must prove, by a preponderance of the evidence, that defendant knew of plaintiff's contracts with GES and/or Champion at the time of the alleged interference. This has two aspects. Plaintiff must establish defendant's knowledge of each contract's existence. Plaintiff also must establish defendant's knowledge of the fact that it is interfering with each contract's performance.

If you find that the plaintiff has proven that defendant knew plaintiff's contracts with GES and/or Champion, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to prove defendant's knowledge of those contracts, then you must find in the defendant's favor on this claim.

**Authority:**   Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., 7 F.3d 1434, 1442 (9th Cir. 1993); Imperial Ice Co. v. Rossier, 18 Cal.2d 33, 37 (1941); Dryden v. Tri-Valley Growers, 65 Cal.App.3d 990, 995 (1977); Springer v. Singleton, 256 Cal.App.2d 184, 189 (1967); Restatement (Second) of Torts § 766, cmt. i.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 434

### Intentional Interference With Contractual Relations—Intent

As stated before, one of the essential elements plaintiff must prove to succeed on its claim for intentional interference with contractual relations is that defendant intended to interfere with plaintiff's contract with <u>GES and/or Champion</u>. To prove this intent, plaintiff must show<u>, by a preponderance of the evidence,</u> that defendant's actions were intentional and were done for the purpose of disrupting the contractual relationship between plaintiff and <u>GES and/or Champion.</u> (or inducing (name of third party ) to breach (his/her/its) contract with Plaintiff.])

In deciding whether defendant acted intentionally, you may consider whether it knew that a (breach) disruption was substantially certain to result from its conduct. <u>However, you may consider such knowledge to be inconsequential if you find the defendant is not engaging in criminal, fraudulent, or violent conduct, does not desire to create the disruption, and the disruption is merely incidental to the defendant's independent purposes and desires. You should also consider whether plaintiff has proven that defendant was sufficiently aware of the details of the various contracts to form an intent to disrupt them.</u>

<u>If you find that the plaintiff has proven that defendant's actions were intentional and done with the purpose of disrupting plaintiff's contracts with GES and/or Champion, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to prove defendant's conduct was intentional and designed to interfere, then you must find in the defendant's favor on this claim.</u>

**Authority:** CACI 2203 (modified); 3-22A California Forms of Jury Instruction 2200A.05 (Matthew Bender 2010) (hereinafter "MB Cal. Instruction") (modified); <u>Quelimane Co. v. Stewart Title Guar. Co.</u>, 19 Cal.4th 26, 56

(1998) (quoting Restatement (Second) of Torts § 766, cmt. j); <u>Davis v. Nadrich</u>, 174 Cal.App.4th 1, 10-11 (2009).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 435**

**Intentional Interference With Contractual Relations—Disruption**

As stated, one of the essential elements that plaintiff must establish to prevail on a claim for intentional interference with contractual relations is that defendant's actions caused actual disruption of the relationship between it and <u>GES and/or Champion</u>. To establish this element plaintiff (may) <u>must</u> prove that defendant's conduct (either prevented Plaintiff from performing under [his/her/its] contract with [ name of third party ] or) made Plaintiff's performance more burdensome or expensive than it would otherwise have been. However, <u>defendant's conduct is not disruptive if plaintiff's and GES' and/or Champion's resulting conduct was in accordance with the terms of their existing contracts.</u>

<u>Therefore, plaintiff must prove by a preponderance of the evidence:</u>

1.  <u>The nature and extent of plaintiff's reasonable expectations[3] under each contract; and</u>

2.  <u>That defendant's conduct, in fact, caused disruptions to those expectations.</u>

<u>If you find that the plaintiff has proven that defendant's conduct impaired its reasonable expectations under each contract, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to prove either its reasonable expectations under the contracts or that defendant's conduct impaired any such reasonable expectations, then you must find in the defendant's favor on this claim.</u>

---

[3] SDCCC notes that the Court is required to interpret the relevant contract provisions as a matter of law where possible, or submit matters to the jury where necessary, such as resolving conflicts in evidence bearing on contract interpretation. <u>Mattel, Inc. v. MGA Entm't, Inc.,</u> 616 F.3d 904, 907, 910 (9th Cir. 2010) (citing <u>Morey v. Vannucci</u>, 64 Cal.App.4th 904, 912-913 (1998)). This instruction will require further amendment to reflect the Court's resolution of contract interpretation issues.

**Authority:**   MB Cal. Instruction 2200A.08 (modified); <u>Summit Machlne Tool Mfg.</u>
<u>Corp. v. Victor CNC Systems, Inc.</u>, 7 F.3d 1434, 1443 n.4 (9th Cir. 1993);
<u>Quelimane Co. v. Stewart Title Guaranty Co.</u>, 19 Cal.4th 26, 56-57
(1998); <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u>, 50 Cal.3d 1118,
1137 (1990); <u>Davis v. Nadrich</u>, 174 Cal.App.4th 1, 10-11 (2009); <u>Woods</u>
<u>v. Fox Broadcasting Sub., Inc.</u>, 129 Cal.App.4th 344, 356-57 (2005);
<u>Ramona Manor Convalescent Hosp. v. Care Enterprises</u>, 177 Cal.App.3d
1120, 1134 (1986); <u>Short v. Nevada Joint Union High School Dist.</u>, 163
Cal.App.3d 1087, 1101 (1985); Restatement (Second) of Torts §766, cmt.
b.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 436

### Intentional Interference With Contractual Relations—Causation

Plaintiff must also prove by a preponderance of the evidence that defendant's conduct was a substantial factor in causing plaintiff harm.

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Defendant's conduct is not a substantial factor in causing plaintiff's harm if the same harm would have occurred without that conduct or defendant did not intend to cause the type of harm plaintiff suffered.

**Authority:**   CACI 430 (modified); Bank of N.Y. v. Fremont Gen. Corp., 523 F.3d 902, 910 (9th Cir. 2008) (applying California law); Franklin v. Dynamic Details, Inc., 116 Cal.App.4th 375, 391-394 (2004); Tate v. Canonica, 180 Cal.App.2d 898, 907-12 (1960).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 437**

**Intentional Interference With Contractual Relations—Justification**

Defendant claims that any interference it may have caused to plaintiff's contractual relationships was justified. If you find that defendant intentionally interfered with or disrupted plaintiff's contractual relationship (or prospective economic advantage) with GES and/or Champion, you must then decide whether defendant's conduct was justified (or privileged).

In making this decision you must, as a general matter, balance the importance of the objective that defendant sought to achieve by its interference against the importance of plaintiff's interest with which defendant interfered.

When balancing these interests, you may consider all relevant circumstances, including:

- The nature of defendant's conduct;

- Defendant's motive;

- The interest sought to be advanced by defendant;

- The proximity or remoteness of defendant's conduct to the interference;

- The relationship between the parties;

- The nature of plaintiff's expectancy; and

- The social interest in protecting the expectancy on the one hand, and defendant's freedom of action on the other.

Defendant has the burden of proof on this issue. If you find that defendant has proven by a preponderance of the evidence that its behavior was justified, then you must find for the defendant and against the plaintiff on the claim for intentional interference with contract relations.

**Authority:**   MB Cal. Instruction 2200A.10 (modified); <u>Environmental Planning &</u>
<u>Information Council v. Superior Court</u>, 36 Cal.3d 188, 193-94 (1984);
<u>Herron v. State Farm Mut. Ins. Co.</u>, 56 Cal.2d 202, 206-07 (1961);
<u>Rosenfeld, Meyer & Susman v. Cohen</u>, 146 Cal.App.3d 200, 228-29
(1983) (overruled on other grounds by, <u>Applied Equipment Corp. v. Litton</u>
<u>Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 521 (1994)); <u>Lowell v. Mother's Cake &</u>
<u>Cookie Co.</u>, 79 Cal.App.3d 13, 21 (1978) (quoting Restatement (Second)
of Torts § 767 & cmt. d).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 438

**Intentional Interference With Contractual Relations—Justification of Legally Protected Interest**

Alternatively, Defendant claims that any interference it may have caused to plaintiff's contractual relationships was justified to protect its own legally protected interests. If you find that defendant intentionally interfered with or disrupted plaintiff's contractual relationship with GES and/or Champion, you must then decide whether defendant's conduct was justified to protect its own legally protected interests.

A person may interfere with another's contractual relationship if that relationship threatens to impair or destroy that person's own legally valid interest. To prove this defense, defendant must prove by a preponderance of the evidence that:

     1.      It possesses a legally valid interest;

     2.      It acted in good faith to protect that interest; and

     3.      It used otherwise lawful and appropriate means to protect that interest.

Examples of a legally valid interest include the ownership or condition of property, defendant's own prior, existing contract, or a financial interest in the affairs of the third party to the contract.

To establish good faith, defendant must show that it was motivated by the desire to protect a threatened interest and demonstrate an objective basis for believing that it was protecting such an interest.

If you find that defendant has proven by a preponderance of the evidence that its conduct was justified to protect a legally valid interest, you must find for the defendant and against the plaintiff on the claim for intentional interference with contract relations. If, however, you find that the defendant did not prove this defense by a preponderance of the evidence, then you must consider the remaining aspects of plaintiff's claim.

**Authority:**     Reyes v. Atlantic Richfield Co., 12 F.3d 1464, 1473 (9th Cir. 1993);

Online Policy Group v. Diebold, Inc., 337 F.Supp.2d 1195, 1205 (N.D.

Cal. 2004); Imperial Ice Co. v. Rossier, 18 Cal.2d 33, 37 (1941);

Richardson v. La Rancherita, 98 Cal.App.3d 73, 81-82 (1979) (citing

Prosser on Torts § 129, pp. 944-945(4th ed. 1971)); Restatement (Second)

of Torts § 773 & cmt. a.

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 439**

**Intentional Interference with Prospective Economic Relations—Elements[4]**

Plaintiff claims that defendant intentionally interfered with an economic relationship between it and Paradice Decorating Co. ("Paradice"), Brede National Exposition Services ("Brede National"), and/or Nielsen Business Media ("Nielsen") that probably would have resulted in an economic benefit to plaintiff. To establish this claim, plaintiff must prove all of the following <u>by a preponderance of the evidence</u>:

1.    That plaintiff and <u>Paradice, Brede National, and/or Nielsen</u> were in an economic relationship that probably would have resulted in an economic benefit to plaintiff;

2.    That defendant knew of the relationship;

3.    That defendant intended to disrupt the relationship;

4.    That defendant engaged in wrongful conduct, specifically by violating certain statutes;

5.    That the relationship was disrupted;

6.    That plaintiff was harmed; and

7.    That defendant's wrongful conduct was a substantial factor in causing plaintiff's harm.

**Authority:**    CACI 2202 (modified).

---

[4] SDCCC contends that it is entitled to judgment as a matter of law on UNM's intentional interference with prospective economic advantage claim. In its verified complaint, UNM alleged that SDCCC's acts "are wrongful by a measure other than the interference itself, because the acts constitute violations of California Business and Professions Code §§16700, et seq. and 17000, et seq." (Dkt. 1, at ¶107). These two statutes are known as the Cartwright Act and Unfair Competition Law, respectively. As explained more fully in SDCCC's Trial Brief, the Court granted summary adjudication on UNM's Unfair Competition Law claim, and in doing so, expressly found that SDCCC was a government entity (Dkt. 120, at 15:21-26). Government entities are immune from Cartwright Act liability. In addition, the Court found that SDCCC acted wholly unilaterally (<u>id.</u> at 12:5-10, 13:1-2). The Cartwright Act concerns combinations in restraint of trade; it does not apply to unilateral monopolizing conduct.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 440

## Intentional Interference with Prospective Economic Relations—Probability of Future Economic Benefit

As a threshold to its claim for intentional interference with prospective economic relations, plaintiff must establish by a preponderance of the evidence:

1.      The existence of an economic relationship with Paradice, Brede National, and/or Nielsen that contained the probability of future economic benefit to plaintiff; and

2.      It was reasonably probable that plaintiff would have realized an economic benefit from Paradice, Brede National, and/or Nielsen if defendant had not interfered in or disrupted their relationship.

The probability of economic benefit to plaintiff must be objectively reasonable and not speculative. Plaintiff must demonstrate that the economic relationship would eventually yield a specific, desired benefit.  It is not enough to show that a potentially beneficial relationship could have developed between plaintiff and Paradice, Brede National, and/or Nielsen.

**Authority:**      Youst v. Longo, 43 Cal.3d 64, 71-74 (1987); Buckaloo v. Johnson, 14 Cal.3d 815, 825-827 (1975); Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal.App.4th 507, 527-28 (1996); Girard v. Delta Towers Joint Venture, 20 Cal.App.4th 1741, 1750 (1993).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 441

### Intentional Interference with Prospective Economic Relations—Knowledge

Plaintiff must prove, by a preponderance of the evidence, that defendant knew of plaintiff's prospective economic relations with Paradice, Brede National, and/or Nielsen at the time of the alleged interference. This has two aspects. Plaintiff must establish defendant's knowledge of the existence of each economic or business relationship. Plaintiff also must establish defendant's knowledge of the fact that it is interfering with the reasonably-probable future economic benefit in each economic or business relationship.

If you find that the plaintiff has proven that defendant knew of plaintiff's prospective economic relationships with Paradice, Brede National, and/or Nielsen, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to prove defendant's knowledge of those relationships, then you must find in the defendant's favor on this claim.

**Authority:**   Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003); Della Penna v. Toyota Motor Sales, U.S.A., Inc.,11 Cal.4th 376, 389 (1995); Ramona Manor Convalescent Hosp. v. Care Enterprises, 177 Cal.App.3d 1120, 1130-1132 (1986).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 442**

**Intentional Interference with Prospective Economic Relations—Intent**

As stated before, one of the essential elements the plaintiff must prove to succeed on its claim for intentional interference with prospective economic relations is that defendant intentionally committed wrongful acts that were designed to interfere with or disrupt plaintiff's economic or business relationships with Paradice, Brede National, and/or Nielsen. To prove this intent, plaintiff must show, by a preponderance of the evidence, that defendant's wrongful acts were designed to disrupt (that) those relationships. (However, if you find that Defendant was substantially certain that [his/her/its] conduct would interfere with Plaintiff's prospective economic advantage, you may infer from that fact that Defendant intended to cause the disruption.)

In deciding whether defendant's wrongful acts were intentional, you may consider whether it knew that a (breach) disruption was substantially certain to result from its conduct. However, you may consider such knowledge to be inconsequential if you find the defendant is not engaging in criminal, fraudulent, or violent conduct, does not desire to create the disruption, and the disruption is merely incidental to the defendant's independent purposes and desires. You should also consider whether plaintiff has proven that defendant was sufficiently aware of the details of the various economic or business relationships to form an intent to disrupt them.

If you find that plaintiff has proven that defendant's wrongful acts were intentional and were designed to disrupt plaintiff's economic or business relationships with Paradice, Brede National, and/or Nielsen, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to prove defendant's conduct was intentional and designed to interfere, then you must find in the defendant's favor on this claim.

**Authority:**   CACI 2203 (modified); MB Cal. Instruction 2200A.06 (modified); <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134, 1153, 1159 (2003); <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>,11 Cal.4th 376, 392-393 (1995); <u>Savage v. Pacific Gas & Elec. Co.</u>, 21 Cal.App.4th 434, 449(1993); <u>Ramona Manor Convalescent Hosp. v. Care Enterprises</u>, 177 Cal.App.3d 1120, 1130-1132 (1986).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 443

**Intentional Interference with Prospective Economic Relations—Wrongful Conduct**


"Wrongful conduct" is conduct that is separate and apart from any alleged interference or disruption of the economic relationships between plaintiff and Paradice, Brede National, and/or Nielsen.

Here, plaintiff alleges defendant's conduct is "wrongful" in the sense that it violates two statutes, namely, California's Cartwright Act and Unfair Competition Law.

I will instruct you momentarily on the elements of these statutory violations that plaintiff must prove to establish defendant's wrongful conduct. If you find that defendant committed the wrongful conduct acts alleged by plaintiff and that those acts were intended to, and did, interfere with plaintiff's prospective economic relationships then you must find that this "wrongful conduct" requirement has been satisfied and you must consider the claims' remaining elements.

If you find that plaintiff has failed to prove by a preponderance of the evidence all of the elements of these two statutory violations, then you must find for the defendant and against the plaintiff on this claim.


**Authority:**   Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1158-1162 (2003); Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (1995); id. at 408-409 (Mosk, J. concurring); see CACI 2202 (directions for use).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 444**

**Intentional Interference with Prospective Economic Relations —Disruption**

As stated, one of the essential elements that plaintiff must establish to prevail on a claim for intentional interference with prospective economic relations is that defendant's actions caused actual disruption of the economic or business relationships with <u>Paradice, Brede National, and/or Nielsen</u>. To establish this element plaintiff <u>must</u> prove that defendant's conduct actually disrupted these economic or business relationships by preventing plaintiff from acquiring or continuing the reasonably-expected economic benefit contained in such relationships.

<u>Therefore, plaintiff must prove by a preponderance of the evidence:</u>

1. <u>The nature and extent of plaintiff's reasonable expectations[5] under each relationship; and</u>

2. <u>That defendant's conduct, in fact, caused disruptions to those expectations.</u>

<u>If you find that the plaintiff has proven that defendant's conduct disrupted its reasonable expectations under each economic or business relationship, then you should continue to evaluate the remainder of the plaintiff's claim. However, if you find that the plaintiff has failed to establish its reasonable expectations under relationships or failed to prove that defendant's conduct caused disruptions to any such reasonable expectations, then you must find in the defendant's favor on this claim.</u>

**Authority:**   MB Cal. Instruction 2200A.08 (modified); <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1151 (9th Cir. 2008); <u>Pac. Gas & Elec. Co. v. Bear Stearns & Co.</u>, 50 Cal. 3d 1118, 1129-1130 & n.8 (1990); <u>Salma v.</u>

---

[5] SDCCC notes that the Court is required to interpret the relevant contract provisions as a matter of law where possible, or submit matters to the jury where necessary, such as resolving conflicts in evidence bearing on contract interpretation. <u>Mattel, Inc. v. MGA Entm't, Inc.</u>, 616 F.3d 904, 907, 910 (9th Cir. 2010) (citing <u>Morey v. Vannucci</u>, 64 Cal.App.4th 904, 912-913 (1998)). This instruction will require further amendment to reflect the Court's resolution of contract interpretation issues.

<u>Capon</u>, 161 Cal.App.4th 1275, 1292 (2008); <u>Ramona Manor Convalescent Hosp. v. Care Enterprises</u>, 177 Cal.App.3d 1120, 1134 (1986); <u>Asia Investment Co. v. Borowski</u>, 133 Cal.App.3d 832, 841 (1982); <u>Worldwide Commerce, Inc. v. Fruehauf Corp.</u>, 84 Cal.App.3d 803, 808-809 (1978)

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 445**

**Intentional Interference with Prospective Economic Relations—Causation**

Plaintiff must also prove by a preponderance of the evidence that defendant's conduct was a substantial factor in causing plaintiff harm.

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Defendant's conduct is not a substantial factor in causing plaintiff's harm if the same harm would have occurred without that conduct or defendant did not intend to cause the type of harm plaintiff suffered.

**Authority:**   CACI 430 (modified); Bank of N.Y. v. Fremont Gen. Corp., 523 F.3d 902, 910 (9th Cir. 2008) (applying California law); Franklin v. Dynamic Details, Inc., 116 Cal.App.4th 375, 391-394 (2004) Tate v. Canonica, 180 Cal.App.2d 898, 907-12 (1960).

**DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 446**

**Intentional Interference with Prospective Economic Relations—Justification**


Defendant claims that any interference it may have caused to plaintiff's contractual relationships was justified. If you find that defendant intentionally interfered with or disrupted plaintiff's contractual relationship (or prospective economic advantage) with Brede National, and/or Nielsen, you must then decide whether defendant's conduct was justified (or privileged).

In making this decision you must, as a general matter, balance the importance of the objective that defendant sought to achieve by its interference against the importance of plaintiff's interest with which defendant interfered.

When balancing these interests, you may consider all relevant circumstances, including:

- The nature of defendant's conduct;

- Defendant's motive;

- The interest sought to be advanced by defendant;

- The proximity or remoteness of defendant's conduct to the interference;

- The relationship between the parties;

- The nature of plaintiff's expectancy; and

- The social interest in protecting the expectancy on the one hand, and defendant's freedom of action on the other.

Defendant has the burden of proof on this issue. If you find that defendant has proven by a preponderance of the evidence that its behavior was justified, then you must find for the defendant and against the plaintiff on the claim for intentional interference with contract relations.

**Authority:**    MB Cal. Instruction 2200A.10 (modified); <u>Environmental Planning &</u>
<u>Information Council v. Superior Court</u>, 36 Cal.3d 188, 193-94 (1984);
<u>Herron v. State Farm Mut. Ins. Co.</u>, 56 Cal.2d 202, 206-07 (1961);
<u>Rosenfeld, Meyer & Susman v. Cohen</u>, 146 Cal.App.3d 200, 228-29
(1983), overruled on other grounds by <u>Applied Equipment Corp. v. Litton</u>
<u>Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 521 (1994); <u>Lowell v. Mother's Cake &</u>
<u>Cookie Co.</u>, 79 Cal.App.3d 13, 21 (1978) (quoting Restatement (Second)
of Torts § 767 & cmt. d).

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 447

### Intentional Interference with Contractual Relations—Justification of Legally Protected Interest

Alternatively, Defendant claims that any interference it may have caused to plaintiff's contractual relationships was justified to protect its own legally protected interests. If you find that defendant intentionally interfered with or disrupted plaintiff's contractual relationship with GES and/or Champion, you must then decide whether defendant's conduct was justified to protect its own legally protected interests.

A person may interfere with another's contractual relationship if that relationship threatens to impair or destroy that person's own legally valid interest. To prove this defense, defendant must prove by a preponderance of the evidence that:

1. It possesses a legally valid interest;

2. It acted in good faith to protect that interest; and

3. It used otherwise lawful and appropriate means to protect that interest.

Examples of a legally valid interest include the ownership or condition of property, defendant's own prior, existing contract, or a financial interest in the affairs of the third party to the contract.

To establish good faith, defendant must show that it was motivated by the desire to protect a threatened interest and demonstrate an objective basis for believing that it was protecting such an interest.

If you find that defendant has proven by a preponderance of the evidence that its conduct was justified to protect a legally valid interest, you must find for the defendant and against the plaintiff on the claim for intentional interference with contract relations. If, however, you find that the defendant did not prove this defense by a preponderance of the evidence, then you must consider the remaining aspects of plaintiff's claim.

**Authority:**    <u>Reyes v. Atlantic Richfield Co.</u>, 12 F.3d 1464, 1473 (9th Cir. 1993);

<u>Online Policy Group v. Diebold, Inc.</u>, 337 F.Supp.2d 1195, 1205 (N.D.

Cal. 2004); <u>Imperial Ice Co. v. Rossier</u>, 18 Cal.2d 33, 37 (1941);

<u>Richardson v. La Rancherita</u>, 98 Cal.App.3d 73, 81-82 (1979) (citing

Prosser on Torts § 129, pp. 944-945(4th ed. 1971)); Restatement (Second)

of Torts § 773 & cmt. a.

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 448

### Intentional Interference Damages —General

If you find that plaintiff is entitled to a verdict against defendant based upon the claim of interference with contractual relations or interference with prospective economic advantage, you should then award plaintiff damages in an amount that will reasonably compensate plaintiff for all loss or harm, providing that you find it was suffered by plaintiff and caused by the defendant's conduct. The amount of your award should include the financial loss of the benefits of the contract or the prospective economic relationship.

**Authority:**     BAJI 7.89

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 449

### Intentional Interference Damages—Lost Profits

Plaintiff claims as its damages, profits that it has lost due to defendant's interference.  To recover damages for lost profits, plaintiff must prove it is reasonably certain it would have earned profits but for defendant's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount plaintiff would have received but for defendant's conduct and then subtract from that amount the expenses ([including the value of the [ *specify categories of evidence, such as labor/materials/rents/all expenses/interest of the capital employed* ]]) plaintiff would have (had) incurred, if defendant's conduct had not occurred, including the value of the labor it received from defendant and any labor, materials, supplies, or other costs plaintiff avoided as a result of defendant's conduct.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**Authority:**    CACI 3903N

78

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 450

### Intentional Interference Damages—Punitive Damages

You must not include in your award any damages to punish or make an example of defendant. Such damages would be punitive damages, and they cannot be a part of your verdict. You must award only the damages that fairly compensate plaintiff for its loss.

**Authority:**     CACI 3924

## DEFENDANT'S SEPARATE JURY INSTRUCTION NO. 451

### Intentional Interference Damages—Mitigation of Damages

If you decide defendant is responsible for the original harm, plaintiff is not entitled to recover damages for harm to ([his/her] property) <u>its economic or business interests</u> that defendant proves plaintiff could have avoided with reasonable efforts or expenditures.

You should consider the reasonableness of plaintiff's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If plaintiff made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose

**Authority:**     CACI 3931.