James R. Lance (147173)
Jacob M. Slania (200652)
Lauren E. Litteken (246668)
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California  92101-8700
Telephone (619) 231-8666
Facsimile (619) 231-9593

Theodore R. Tetzlaff (*Pro Hac Vice*)
Kristopher J. Stark (*Pro Hac Vice*)
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, Illinois  60602-4224
Telephone (312) 977-4400
Facsimile (312) 977-4405

Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada corporation,<br><br>  Plaintiff,<br><br>  vs.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California corporation,<br><br>  Defendant. | CASE NO. 07-CV-2172 AJB<br><br>**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS**<br><br>Judge:      Hon. Anthony J. Battaglia<br>Crtrm:      12<br>Trial Date:  March 21, 2011 |

KNLH\832519.1

07-CV-2172 AJB

1    Pursuant to Federal Rule of Civil Procedures 51(b), (c) and Local Civil Rules 51.1 and
2    paragraph 15 of this Court's Jury Trial Preparation and Scheduling Order (Dkt. No. 135),
3    Plaintiff United National Maintenance, Inc. ("Plaintiff") files objections to certain of
4    Defendant San Diego Convention Center Corporation, Inc.'s ("Defendant") proposed jury
5    instructions.

6    **A.    <u>OVERVIEW</u>**

7    Southern District of California Local Rule 51.1 provides the standards for jury
8    instructions in civil cases.  Among these standards, each proposed jury instruction must be
9    concise and cover only one subject.  If an instruction is submitted from a recognized book of
10   instructions and has been modified, any deleted material must be shown in parentheses and
11   additions must be underscored.

12   Jury instructions should be written and organized so that the jurors will understand
13   them.  According to the Federal Jury Practice and Instructions for Civil Actions, Governed by
14   Federal Law, Antitrust, Private Actions Treatise ("Fed-JI"), substantive instructions should be
15   tailored to the case where possible.  Fed-JI § 100.04 (Introduction to Instructions for Federal
16   Civil Cases).  Instructions should be as brief and concise as practicable, such that the average
17   high school student should be able to understand them.  *Id.*  Jurors should not receive
18   instructions on issues they do not need to decide.  *Id.*  Plaintiff's proposed instructions rely, to
19   a large extent, on the Model Instructions set forth in the Fed-JI.

20   In contrast, Defendant relied primarily on the American Bar Association Model Jury
21   Instructions in Civil Antitrust Cases, 2005 edition, and made substantive modifications to most
22   of its proposed instructions.  Plaintiff objects to the proposed jury instructions offered by
23   Defendant because many of the instructions are:  (1) not concise; (2) incomplete statements of
24   the law; (3) inapplicable to the facts of this case; and (4) argumentative.  Many of the
25   proposed instructions offered by Defendant are too imprecise and too lengthy, such that they
26   will not be easily understood by the jurors.  They are often duplicative, with Defendant citing
27   several cases from multiple Districts to support a convoluted instruction.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1    By comparison, the Federal Jury Practice and Instructions guide utilized by Plaintiff

2  specifically provides, "Every attempt has been made to use simple, commonplace words while

3  accurately stating the law.  Unnecessary words have not been used.  The instructions generally

4  use short sentences and try to avoid negative forms."  Fed-JI § 100.05 (Using These

5  Instructions).  For this reason, Plaintiff urges the Court to adopt its Plaintiff's proposed

6  instructions.

7    Plaintiff asserts the following objections to certain of Defendant's proposed

8  instructions.

9  **B.**    **SDCCC'S BURDEN OF PROOF INSTRUCTIONS**

10    **1.**    **Instruction 2:  Suppression of Evidence.**  With the current state of the

11  evidence, there is no indication that such an instruction is necessary or warranted.  It may

12  cause confusion to the jury because there has been no testimony presented about any party

13  suppressing evidence.

14  **C.**    **SDCCC'S SUBSTANTIVE LAW INSTRUCTIONS**

15    **2.**    **Instruction 2:  Monopolization.**  This instruction is inappropriate because

16  Plaintiff has not sued for Monopolization.  Plaintiff's first cause of action is for Attempted

17  Monopolization, which requires proof of different elements.

18    **3.**    **Instruction 3:  Monopoly Power Defined.**  This instruction is inappropriate

19  because it discusses what elements the Plaintiff must establish "to prove its Monopolization

20  claim."  Plaintiff has not made a Monopolization claim; Plaintiff has sued for Attempted

21  Monopolization, which requires proof of different elements.  Plaintiff does not disagree

22  generally with providing the jury a definition of "monopoly power," but the language of this

23  specific instruction is not appropriate because it is within the context of a Monopoly cause of

24  action.  Plaintiff has offered Instruction 238 to define "monopolize" using the Federal Jury

25  Practice and Instructions Model, which more accurately defines a monopoly without including

26  elements for a Monopoly cause of action.

27    **4.**    **Instruction 4:  Relevant Market – General.**  Plaintiff objects to this

28  instruction because it is not concise and the language is confusing, especially including the

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  language that the jury must "determine what, if any, economic forces restrain defendant's

2  freedom to set prices for or restrict the output in a properly defined relevant market."  Also,

3  the instruction explains the relevant market by calling it the relevant market.  Plaintiff's cause

4  of action for Attempted Monopolization is about the Defendant's anticompetitive conduct

5  excluding Plaintiff from performing trade show cleaning services in the facility that Defendant

6  manages (and the resulting harm and damages).  Therefore, this instruction regarding the

7  relevant market is confusing.

8  　　　　Plaintiff offered Instruction 246 which is a clear and concise description of what a

9  relevant market is, and Plaintiff urges the Court to adopt Plaintiff's version.

10  　　　　**5.**　　　　**Instruction 5:  Relevant Product Market.**  This instruction is not concise, too

11  lengthy, inapplicable to the facts of this case, and is confusing.  As an example,  paragraph

12  three of the instruction identifies six-factors that are mere guidelines for the jury, and have no

13  connection to this case.  Overall, the language in this instruction is largely irrelevant to the

14  facts of this case and makes the determination of the product market far more complex for the

15  jury than is necessary.

16  　　　　Additionally, Defendant's modifications to paragraph four regarding its contentions is

17  argumentative and beyond the scope of the model instruction.  The model instruction indicates

18  that the defendant should insert its version of the scope of the relevant market.  Therefore,

19  only Defendant's last sentence, "Defendant contends that the market for hosting trade shows is

20  the proper relevant market" is appropriate for this instruction.  The language regarding

21  "commercial realities" and "germane conditions" are not defined, argumentative, and should

22  be stricken.

23  　　　　Finally, Plaintiff has offered Instruction 247 to explain the relevant product and

24  geographic market.  Plaintiff used Model Rule 150.66 from Federal Jury Practice and

25  Instructions.  Plaintiff's version is more concise and explains the relevant market in terms of

26  both product and geography in simple terms with one instruction.  Plaintiff's version is a

27  widely used and accepted Model Instruction on this subject, and Plaintiff believes that its

28  instruction is more appropriate given its terms and simplicity.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

6.   **Instruction 6:  Relevant Product Market – Supply Suitability.**  Plaintiff objects to the entirety of this instruction because it is not applicable in this case.  This instruction addresses the "cross-elasticity of supply," or the extent to which a producer of one product would be willing to shift to producing another product in response to an increase in price, as well as a monopolist's attempt to charge significantly higher prices.  This is not applicable here because this case is not about Defendant pricing Plaintiff out of the market such that Plaintiff can "shift their resources and personnel to producing another product" as the instruction provides.  Plaintiff has sued Defendant for its Attempted Monopolization of the trade show cleaning market by excluding Plaintiff from competing entirely at the San Diego Convention Center.  The relevant product in this case is a service (trade show cleaning).  Defendant's proposed instruction more aptly applies to the manufacturer of a good, and actually uses shoes as an example.  Trade show cleaning is a unique service that is not reasonably interchangeable with other cleaning services, as the witnesses have testified during the trial.  It is different from an actual product, which is what this instruction addresses.  This instruction about altering the manufactured product in response to pricing is simply inapplicable.  This instruction does not apply and will only confuse the jury.

Plaintiff has offered Instruction 247, which is a clear and concise explanation of the relevant market in terms of product and geography, using the Federal Jury Practice and Instructions as a model.  Plaintiff's version should be adopted.

7.   **Instruction 7:  Relevant Geographic Market.**  Plaintiff objects to the modifications that Defendant has made to this model instruction.  The model instruction standing on its own accurately describes the factors that must be proven to establish the relevant geographic market.  However, Defendant modified the instruction, adding inappropriate argument.  In paragraph two, the Model Instructions instruct the Defendant to insert what it contends the relevant geographic market to be.  Defendant did so, but also added unnecessary and inappropriate argument about its opinion on the Plaintiff's version of the geographic market.  Jury instructions are not the appropriate venue for arguing about whose geographic market is more appropriate – that is for closing argument.  The instruction is

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  simply to inform the jury of the two perspectives so that the jury can make the ultimate

2  determination.

3       Plaintiff has offered Instruction 247, which more concisely describes the geographic

4  market using widely accepted model instructions.  Therefore, Plaintiff proposes that the Court

5  adopt its Instruction 247, or alternatively adopt the model instruction in its original format

6  without the modifications.

7       **8.      <u>Instruction 8:  Relevant Market – Necessity of Proof</u>.**  Plaintiff objects to this

8  Instruction because it is not necessary.  It is duplicative of other instructions which state that

9  the Plaintiff must prove the relevant market in order to prevail on its Attempted

10  Monopolization claim.

11      **9.      <u>Instruction 9:  Existence of Monopoly Power – Indirect Proof</u>.**  Plaintiff

12  objects to this Instruction because it is not concise and is inapplicable.  Plaintiff submits its

13  Instruction 245 is more appropriate.

14      Paragraph one of Defendant's proposed instruction states that the jury "should

15  determine whether defendant has monopoly power."  This is required for a Monopoly claim,

16  but not for Attempted Monopolization.  Attempted Monopolization only requires a showing of

17  a dangerous probability of achieving monopoly power.  The first paragraph also uses

18  confusing language regarding how Plaintiff has attempted to use evidence of the structure of

19  the market.

20      Plaintiff further objects to the entire instruction because no Monopoly claim is asserted.

21  Plaintiff objects to the "Conclusion" of this Instruction because it says that the jury must find

22  for the Defendant if the Defendant does not have monopoly power.  Again, Plaintiff has not

23  sued on a monopoly claim; Plaintiff's claim is for Attempted Monopolization.  For Attempted

24  Monopolization, Plaintiff need not prove monopoly power, merely that there is a dangerous

25  probability the Defendant will obtain monopoly power.  Therefore, the "Conclusion" should

26  not be provided to the jury.

27      If the Court elects to use this instruction, it should be significantly modified as

28  applicable to an Attempted Monopolization claim and the factors that may show a dangerous

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    probability of obtaining monopoly power.  Attached as pages 1-2 of Exhibit 1 is a proposed

2    revised instruction for the Court's consideration, only if the Court is inclined to use

3    Defendant's proposed instruction.

4         **10.      Instruction 10:  Monopolization – Willful Acquisition or Maintenance of**

5    **Monopoly Power.**  Plaintiff objects to this Instruction in its entirety because Plaintiff has not

6    alleged a Monopoly cause of action against Defendant.  This instruction is inapplicable.

7    Attempted Monopolization does not require proof of willful acquisition or maintenance of a

8    monopoly.

9         **11.      Instruction 11:  Monopolization – Essential Facility.**  Plaintiff does not object

10   to the use of the Model Instruction as provided by the ABA.  However, Defendant has

11   modified the Model Instruction so much that Defendant's proposed Instruction 11 no longer

12   resembles the Model.

13        Defendant has proposed to remove the elements that the Plaintiff must prove, and

14   instead replaced the elements with its own version based on case law from nine different cases

15   in various circuits.  It is difficult for Plaintiff to even ascertain the source of each of its several

16   modifications.  However, the case law cited by Defendant does not change the elements that

17   must be proven for this cause of action as already set forth in the Model Instruction, and

18   therefore the Model Instruction should be adopted in its original format.  Defendant's

19   additional case law is confusing and does not accurately represent the law on essential

20   facilities.

21        Plaintiff cites *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*,

22   540 U.S. 398, 411 (2004) in support of its modifications to the Essential Facilities instruction.

23   However, the Court in *Verizon* "found no need either to recognize. . .or repudiate . . ." the

24   essential facilities doctrine.   The Ninth Circuit specifically recognizes the essential facilities

25   doctrine.  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129 (9th Cir. 2004).

26   Moreover, the *Verizon* court stated:  "It suffices for present purposes to note that the

27   indispensable requirement for invoking the doctrine is the unavailability of access to the

28   essential facilities; where access exists, the doctrine serves no purpose."  This case offers no

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  more or less than the Model Instruction itself, which describes the elements that United must

2  prove in order to prevail on its Essential Facilities claim.

3      Defendant also cites *MetroNet Servs. Corp. v. Qwest Corp.*, *supra*, as support for its

4  modifications to the Model Instruction.  However, this case does not provide the support

5  Defendant seeks.  In fact, the very pages Defendant cites provide the elements that must be

6  proven for an Essential Facilities claim.  "In order to prevail on its essential facilities claim,

7  MetroNet must prove (1) that Qwest is a monopolist in control of an essential facility, (2) that

8  MetroNet, as Qwest's competitor, is unable reasonably or practically to duplicate the facility,

9  (3) that Qwest has refused to provide MetroNet access to the facility and (4) that it is feasible

10  for Qwest to provide such access."  *Id.* at  1128-1129.  These mirror the language of the Model

11  Instruction C-34-34.  There is no need to modify the Model Instruction to change the elements

12  of proof and add extraneous language.

13      Defendant cites *Pittsburg County Rural Water District No. 7 v. City of McAlester*,

14  358 F.3d 694, 721 (10th Cir. 2004).  This Tenth Circuit case merely reaffirms the elements set

15  forth in the Model Instruction before Defendant's modifications.  "There are four elements

16  necessary to establish liability under the essential facilities doctrine: (1) control of the essential

17  facility by a monopolist; (2) a competitor's inability to duplicate the facility; (3) denial of the

18  use of the facility to a competitor; and (4) the feasibility of providing the facility."  *Id.* at 721.

19  There is no language regarding an upstream/downstream market.

20      In *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003), also cited by

21  Defendant, the court set forth the elements of an Essential Facilities claim as follows:  "Under

22  this doctrine, plaintiff must show: (1) the defendant is a monopolist with control over a facility

23  that is essential, (2) a competitor is unable practicably or reasonably to duplicate the facility,

24  (3) a competitor is denied access to the facility by the defendant, (4) providing access to the

25  facility was feasible, and (5) plaintiff incurred antitrust injury as a result of the wrongful

26  conduct.  *Id.* at 1162, n. 21.  The discussion of an upstream/downstream market is not part of

27  the requisite elements to prove an Essential Facilities cause of action, as established by all of

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  the case law cited in this objection.  The *Paladin* case specifically dealt with the transportation

2  of gas in markets downstream of certain pipelines.

3      Defendant's citation to *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536

4  (9th Cir. 1991) does not change the analysis.  The court said, "Stated most generally, the

5  essential facilities doctrine imposes liability when one firm, which controls an essential

6  facility, denies a second firm reasonable access to a product or service that the second firm

7  must obtain in order to compete with the first." *Id.* at 542.  It discussed the

8  upstream/downstream market but not in terms of elements that must be proven to establish an

9  Essential Facilities claim.  There, the court held that the defendant's control of their

10  computerized reservations systems did not give them power to eliminate competition in the

11  downstream air transportation market.  The basic elements to prove this claim remain the same

12  as set forth in the Model Instruction.

13      Defendant cites *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d

14  976 (9th Cir. 1988).  But again, that court held that the requisite elements of an Essential

15  Facilities claim were as follows:  "In order to prevail on such a claim, the plaintiffs must

16  establish (1) that the defendant is a monopolist in control of the essential facility, (2) that

17  competitors of the monopolist are unable to duplicate the facility, (3) that the monopolist has

18  refused to provide the competitors access to the facility, and (4) that it is feasible for the

19  monopolist to do so." *Id.* at 983.

20      *Flip Side Prods. v. Jam Prods.*, 843 F.2d 1024, 1034 (7th Cir. 1986), cited by

21  Defendant, is a Seventh Circuit case that does not offer any support for Defendant's proposed

22  modifications to the Model Instruction.  *Fishman v. Estate of Wirtz*, 807 F.2d 520, 563-575

23  (7th Cir. 1986) is another Seventh Circuit case that does not support a modification to the

24  Model Instructions.  In fact, the 12 pages cited by Defendant are the court's dissenting opinion

25  (not law) and do not reference anything about an upstream/downstream market for an

26  Essential Facilities claim.  In fact, that case confirms the elements of the Model Instruction:

27  "the "'essential facilities doctrine'" imposes upon a firm controlling an essential facility-that is,

28  a facility that cannot reasonably be duplicated and to which access is necessary if one wishes

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1 to compete-the obligation to make that facility available to competitors on nondiscriminatory

2 terms." *Id.* at 539.  There, the court held that a basketball arena was an essential facility.

3      Defendant's last case cited, *Mid-South Grizzlies v. Nat'l Football League*, 720 F.2d

4 772, 787 (3d Cir. 1983), also fails to support for Defendant's proposed modifications to the

5 Model Instruction and mentions nothing about an upstream/downstream market analysis.

6      Finally, one of Defendant's proposed additions states, "If a competitor has access to the

7 facility, the monopolization claim fails."  Plaintiff has not asserted a claim for Monopolization,

8 and therefore this is inappropriate.

9      Plaintiff requests the Court to adopt the Model Instruction as drafted by the ABA

10 without Defendant's inapplicable and argumentative additions, or Plaintiff's proposed

11 Instruction 251 (which was based on the 1990 version of the ABA Model Instructions).  The

12 case law cited by Defendant fully supports the position that the Model Instruction correctly

13 sets forth the requisite elements of an Essential Facilities claim.  Plaintiff's previously

14 proposed Instruction 251, which was based on a 1990 version of the ABA Model Instructions.

15 Plaintiff contends its proposed Instruction 251, or the 2005 model version, should be utilized.

16      **12.**   **Instruction 11.1:  Monopolization – Unilateral Refusal to Deal with a**

17 **Competitor.**  Plaintiff objects to this instruction in its entirety because it is inapplicable and

18 unnecessary.  The parties have proposed instructions on each of Plaintiff's causes of action and

19 the elements of each.  This "unilateral refusal to deal" is extraneous, irrelevant and imprecise.

20 Additionally, Defendant has modified it so much from the Model version that Defendant's

21 instruction no longer reflects the elements in a "unilateral refusal to deal" situation, by adding

22 three new elements of proof.

23      **13.**   **Instruction 12:  Monopolization – Business Justification.**  Plaintiff objects to

24 this instruction because it is not concise and covers multiple topics.  Additionally, it modifies

25 the Model Instruction with authority from 13 cases from various districts such that it is nearly

26 impossible to decipher the true source of the instruction manufactured by Defendant for its

27 self-serving purpose.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    Plaintiff agrees that an instruction is appropriate regarding whether Defendant had a

2  legitimate business justification for its conduct.  However, Defendant's proposed instruction is

3  imprecise and confusing.  Plaintiff has offered Instruction 243, which is a simple paragraph

4  regarding what a business justification is and when it applies.  Plaintiff urges the Court to

5  adopt Plaintiff's version.

6    If not so inclined, Plaintiff contends that the Model Instruction should be adopted as

7  originally drafted and without Defendant's significant modifications.  Defendant adds

8  proposed language regarding the burdens of proof which is unnecessary and duplicative.

9    Defendant's instruction proposes language that Plaintiff bears the burden of proving

10 that the defendant's conduct was not motivated by legitimate business reasons.  This is

11 confusing, because there is actually a three part analysis that must occur.  First, the Plaintiff

12 has the burden of proving the anti-competitive conduct.  Second, the Defendant has the burden

13 of proving that it had a legitimate business reason for the conduct.  Third, if Defendant makes

14 such a showing, the Plaintiff then must prove that the reasons advanced are pretextual.  By

15 modifying paragraph two of the model instruction with a sentence about the burden of proof,

16 Defendant has made this instruction confusing and not entirely accurate.  That sentence should

17 be eliminated.

18    The case law cited by Defendant in fact supports this analysis.  In *Morris*

19 *Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295(11th Cir. 2004), the court

20 discussed that it was the defendant's burden to establish a business justification for its conduct.

21 Once the defendant meets that burden, the burden shifts to Plaintiff to state that the proffered

22 justification is merely pretextual.  *Id.* at 1296.  This makes common sense.

23    *US v. Microsoft Corp.*, 253 F.3d 34, 58-59 (D.C. Cir. 2001) offers the same analysis.

24 The court held that the plaintiff has the burden to demonstrate the monopolist's conduct has

25 the requisite anticompetitive effect.  Then, "if a plaintiff successfully establishes a prima facie

26 case under § 2 by demonstrating anticompetitive effect, then the monopolist may proffer a

27 procompetitive justification for its conduct." *Id.* at 59.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    In *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir.

2    1997), the three part analysis is set forth.  The Court stated that the plaintiff had adequately

3    "shown that Kodak has both attained monopoly power and exercised exclusionary conduct."

4    The next inquiry was whether Kodak's conduct was "supported by a legitimate business

5    justification."  *Id.*  Then, a "plaintiff may rebut an asserted business justification by

6    demonstrating either that the justification does not legitimately promote competition or that

7    the justification is pretextual."  *Id.*

8        In *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 991 (9th Cir.

9    1993), the Court simply evaluated the business justifications offered by the defendant and held

10   that the plaintiff had the burden of proving lack of legitimate business justifications -- the third

11   step in the analysis.

12       In *City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1366 (9th Cir.

13   1992), the court explained: "Although the defendant generally has the burden of coming

14   forward with a legitimate business justification after the plaintiff has shown evidence of

15   monopolistic intent, the plaintiff, in this case Vernon, ultimately has the burden of proving that

16   the defendant acted without a legitimate business justification."  This accurately sets forth the

17   burden shifting analysis -- from plaintiff's proof of monopolistic intent -- to defendant's proof

18   of justification -- to plaintiff's proof of pretext.

19       Plaintiff objects to Defendant's change of the phrase "refusal to deal" with "conduct."

20   Defendant is simply trying to modify the language of the model instruction to make it sound

21   less harsh, but it offers no substantive value.

22       Plaintiff objects to Defendant's insertion of the phrase "or otherwise benefiting

23   consumers" as a legitimate business purpose.  This is overbroad, not explained, and not part of

24   the model instruction.  Defendant is free to argue to the jury whether its conduct was done for

25   legitimate business reasons; the instruction need not be modified to include some overbroad

26   catchall phrase for any conduct that might have some potential benefit to consumers.

27

28

*Kirby Noonan Lance & Hoge LLP*
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  Defendant's fourth proposed paragraph is confusing. Defendant modified the model

2  instruction to include a sentence which reads, "You may not consider any reasons that did not,

3  in fact, motivate defendant's conduct." What does this mean? It is incomprehensible.

4  Plaintiff also objects to last sentence of paragraph four in which Defendant proposes a

5  modification to the model instruction that the jury may not second guess Defendant's business

6  judgment. This language is confusing and inconsistent with the law that a jury may consider

7  whether a defendant had legitimate business reasons for its anti-competitive conduct. In fact,

8  in *Image Technical Service, Inc., supra,* cited by Defendant, the court held that the plaintiff

9  raised no genuine issue of material fact during summary judgment proceedings that the

10  defendant's policy was unsupported by legitimate business judgment. Thus, a defendant's

11  business judgment may be considered.

12  In *Image Technical Services*, the court did allow an instruction to the jury that it could

13  not second guess whether the defendant's business judgment was wise or correct in retrospect.

14  But this is not a case about evaluating Defendant's conduct in retrospect. This is about

15  whether the Defendant's policy was legitimate at the time it was implemented. Therefore, this

16  instruction only confuses the issues and does not offer anything new or explanatory to the jury.

17  Finally, Defendant's fifth paragraph is confusing and unnecessary. It uses a double

18  negative which makes it hard to understand: "If you find the plaintiff has **failed to prove**. . .

19  that defendant's conduct was **not motivated** . . ." Also, there is no reason a conclusion

20  sentence is warranted here.

21  Plaintiff has offered its own instructions regarding the business justification defense

22  and what the jury must consider. Plaintiff urges that the Court adopt its instructions, found at

23  proposed instructions 243 and 244.

24  **14.    Instruction 13:  Monopolization – Injury and Causation.** Plaintiff objects to

25  this instruction because it is imprecise and Defendant has changed the language of the Model

26  Instruction. Defendant proposes to remove the first paragraph of the Model Instruction. This

27  is confusing because the first paragraph transitions into the causation and damages issues that

28  must be proven. Additionally, Defendant's proposed new first paragraph is inappropriate

1  because it refers to Plaintiff proving an "unlawful monopolization."  Again, Plaintiff has not

2  sued for unlawful monopolization; Plaintiff has sued for Attempted Monopolization.

3  Therefore, Defendant's proposed new language is inappropriate and inapplicable.

4         Moreover, Plaintiff has proposed Instruction 249, which is a more concise explanation

5  of causal antitrust injury.  It is one short paragraph taken from Ninth Circuit law, which would

6  be much more understandable for the jury.

7         If the Court elects to use this ABA Model Instruction, then Plaintiff would like to add

8  the ABA Model Instruction regarding Injury to Business, which is set forth in the attached

9  Exhibit 1, p. 3,  as Instruction 13.1.

10        **15.**    **Instruction 14:  Attempted Monopolization – Elements.**  Plaintiff does not

11  object generally to this instruction, but proposes that its version (Instruction 239) is a more

12  concise and accurate version of Ninth Circuit law.  Plaintiff does object to the last paragraph

13  of Defendant's proposed version because the last paragraph is unnecessary and repetitive.

14        **16.**    **Distribution 15:  Attempted Monopolization – Anticompetitive Conduct.**

15  Plaintiff objects to the second paragraph of this instruction as unnecessary and duplicative.

16        **17.**    **Instruction 16:  Attempted Monopolization – Specific Intent.**  Plaintiff

17  objects to this instruction because it is not concise and Plaintiff's proposed Instruction 240 is a

18  more concise and accurate description of the intent element.  A two page description of intent

19  as proposed by Defendant is simply unnecessary.  The better version is Plaintiff's, which is

20  supplied by the Federal Jury Practice and Instructions Model.  It is a clear and concise

21  description of intent.

22        **18.**    **Instruction 17:  Attempted Monopolization – Dangerous Probability of**

23  **Success.**  Plaintiff objects to this instruction because the language is confusing based on the

24  evidence presented.  Here, the issue is whether there is a probability that Defendant will

25  achieve monopoly power by excluding others from competing for trade show cleaning

26  services at the San Diego Convention Center.

27        **19.**    **Instruction 18:  Attempted Monopolization – Injury and Causation.**

28  Defendant offers a purportedly "model" instruction that contains no language from the model

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1  instruction and is entirely new language crafted by Defendant.  This is irrelevant and

2  unnecessary.  An instruction on Injury and Causation was already proposed; this is

3  duplicative.

4       **20.**   **Instruction 19:  State Action Doctrine.**  Plaintiff objects to this proposal

5  because it is only a partial description of the elements that must be proven to establish

6  applicability of the State Action Doctrine.  Plaintiff has appropriately set forth the requisite

7  elements for the State Action Doctrine in a clear and concise way, following case law, in its

8  proposed Instruction 255-259, breaking down each element of proof.  Plaintiff urges the Court

9  to accept its proposal as the most logical and concise.

10       The United States Supreme Court has specifically determined that two relevant factors

11  for applicability of this defense are (1) that the Defendant's conduct was actively supervised by

12  the State of California; and (2) that the Defendant's conduct was authorized by a clearly

13  articulated and affirmatively expressed State policy.  *California Retail Liquor Dealers Assoc.*

14  *v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105 (1980).  While the Court has determined that

15  Defendant is a state actor for purposes of this defense, "state action immunity only applies if

16  the challenged activity was 'one clearly articulated and affirmatively expressed as state

17  policy.'"  *California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.* 445 U.S. 97, 105

18  (1980).  To determine if the conduct was authorized by a clearly articulated and affirmatively

19  expressed State policy, the jury considers whether (1) that the state legislature authorized the

20  challenged actions, and (2) that the state legislature intended to displace competition with

21  regulation.  *Traweek v. San Francisco*, 920 F.2d 589, 591-592 (9th Cir. 1990).

22       The law is clear that the two part test in *California Retail* applies, and the cases cited

23  by Defendant do not change that.  *Community Communications Co. v. City of Boulder*,

24  455 U.S. 40 (1982) discusses the "clear articulation and affirmative expression" of state policy

25  "that our precedents require."  *Id.* at 56.  *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40

26  (1985) discusses the necessity of establishing a "clearly established state policy" and "active

27  state supervision."

28

1  Defendant cites *Shames v. California Travel and Tourism Com'n*, 607 F.3d 611 (9th Cir.

2  2010); however that opinion was withdrawn and superseded by *Shames v. California Travel*

3  *and Tourism Com'n*, 626 F.3d 1079 (9th Cir. 2010) ("*Shames II*").  In *Shames II*, the court set

4  forth the same two-prong test as the *California Liquor* case above.  The *Shames II* court

5  acknowledged that there is "a two-pronged test to determine when state involvement in

6  anticompetitive conduct can render a party eligible for immunity: (1) the challenged restraint

7  must be one clearly articulated and affirmatively expressed as state policy; and (2) the policy

8  must be actively supervised by the state itself."  *Id.* at 1083.

9  Therefore, Defendant's opening paragraph which states "A state is generally immune

10 from antitrust liability" is incorrect.  A state is only immune where these two factors are

11 proven.

12 Defendant proposes that the instruction on the State Action Doctrine encompass

13 additional information than the elements required by law.  For example, Defendant proposes

14 an instruction that the jury "determine whether defendant's conduct is a specific, foreseeable

15 result from the authority to regulate granted to the City of San Diego."  This is not the test.  In

16 *Shames II*, the court discussed that courts have "previously addressed the proper application of

17 the foreseeability language" and concluded that "a foreseeable result cannot create state

18 authorization itself.  Express authorization is the necessary predicate for the Supreme Court's

19 foreseeability test."  *Id.* at 1084 (internal citations omitted).  The court in *Hallie* held that the

20 city's acts were immunized because they were a foreseeable result of the state legislature's

21 statutory authorization to municipalities to provide sewage services, but there was nevertheless

22 a "clear and affirmative state policy to displace pure competition with regulation or

23 monopoly."  *Shames II, supra,* at 1083 (analyzing *Hallie*).  Foreseeability alone is not

24 sufficient without a clearly articulated and affirmatively expressed State policy.  That element

25 must be present.  Also, the evidence presented to date clearly establishes that SDCCC is a

26 distinct entity from the City of San Diego.

27 Additionally, Defendant seeks to insert a proposed instruction regarding the

28 "motivations of individual actors in adopting or implementing defendant's policies."  This is

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1  unnecessary.  Defendant cites two cases which discuss this, but neither is a basis on which

2  state immunity may or may not be granted.  It is only the two-step analysis of *California*

3  *Liquor* that is required to prove immunity.  The two-step analysis does not discuss motive.

4  Therefore, injecting a discussion of motive into the instruction for the jury's consideration will

5  only serve to confuse and complicate the issue.

6        In *Llewellyn v. Crothers*, the court held that state action immunity applies "[w]here the

7  restraint in question is, first, clearly articulated and affirmatively expressed as a matter of state

8  policy, and, second, subject to the active supervision of the state itself."  *Id.* at 773.  This

9  confirms the same two step analysis set forth above.  The Court also stated that the

10  motivations of individual defendants employed by the Oregon Workers' Compensation

11  Department were irrelevant because the acts challenged "were direct implementations of a

12  precise statutory policy" to set fee schedules.  *Id.* at 773.  So while this was a discussion point,

13  it was not the holding of the case and did not change the requisite elements for state action

14  immunity.  *Traweek v. San Francisco* is exactly the same, simply referencing the discussion in

15  *Llewellyn*.

16        Finally, it is important to note that "[t]he state-action immunity doctrine is disfavored,

17  and is to be interpreted narrowly, as a broad interpretation of the doctrine may inadvertently

18  extend immunity to anticompetitive activity which the states did not intend to sanction."

19  *Shames, supra*, at 1084 (internal citations omitted).  Therefore, it is important to narrowly

20  define this affirmative defense as set forth by the *California Liquor* case, without adding

21  extraneous considerations that bear no relevance on the two-prong test.  Defendant's broad

22  interpretation which omits key elements of proof and adds others should not be adopted.

23        Plaintiff proposes that the Court utilized its proposed instructions 255-259, which

24  clearly set forth each element of the State Action Doctrine that the jury must consider.

25        **21.    Instruction 2:  Antitrust Damages – Speculation Not Permitted.**

26        Plaintiff objects to this instruction as being confusing and too lengthy.  Plaintiff

27  proposes that its proposed Instruction 263 is more concise and an accurate statement of the

28  law.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

22.   **Instruction 23:  Antitrust Damages – Causation and Disaggregation.**
Plaintiff objects to this instruction in its entirety because it is unnecessary and duplicative.
Defendant already proposed Instruction 13 regarding causation (for which Plaintiff also
objected) and Plaintiff has proposed a much more concise and generally accepted causation
instruction from the Federal Jury Practice and Instructions Model (see Plaintiff's Instructions
253-254).  Additionally, the very next instruction proposed by Defendant, Instruction 24,
repeats some of the same information regarding Plaintiff's claim for lost profits damages.

23.   **Instruction 24:  Antitrust Damages – Lost Profits.**  Plaintiff objects to this
instruction because it does not accurately reflect the measure in which Plaintiff is calculating
its lost profits.  Defendant proposes an instruction that explains Plaintiff's lost profits in a
"before-after measure," in which Plaintiff will show evidence of its net profits before the
antitrust violation to establish its lost profits after the violation.  That is not what Plaintiff did.
Plaintiff will establish its lost profits damages, in part, through analysis of the Defendant's
documents for trade shows taking place at the Convention Center after July 1, 2007 when the
policy was implemented.  For every trade show hosted after July 1, 2007 in which cleaning
services were used, United contends that it lost profits because it was unable to use its
employees for those shows and was forced to pay Defendant all of its earnings.

None of the methods of calculation in proposed instruction 24 are exactly applicable to
this case.  In fact, the Notes following this model instruction state that these are three common
measures of lost profits but that the instruction should be tailored to the specific facts and
damages of each case and that this is only an "elementary frame" for a lost profits instruction.
The Notes provide that there is no mechanical test or formula that dictates how a plaintiff must
prove damages, and that the only requirement is that the method chosen be reasonable.

Therefore, Plaintiff objects to this proposal and suggests that the Court adopt its
proposed instruction 263 regarding compensatory damages in antitrust cases, which is a more
direct and simple way to explain it to the jury.

24. **Instruction 26:  Antitrust Damages – Trebling Damages.**  Plaintiff proposes
that its Instruction 265 is more appropriate.

25.    **Instruction 27:  Antitrust Damages – Local Government Antitrust Act.**
Plaintiff objects to this proposed instruction because it discusses unnecessary matters, like recovering from an official or employee.

Plaintiff has proposed instructions 260-262 which explains the Local Government Antitrust Act defense, which the Court should utilize in this case.

26.    **Instruction 28:  Antitrust Damages – Mitigation.**  Plaintiff objects to the modification made to this proposed instruction.  If this instruction will be used, there should be no modification.

27.    **Instruction 29: Intentional Interference with Contractual Relations – Elements.**  Plaintiff does not object to this use of this instruction taken from the Judicial Council of California Civil Jury Instructions ("CACI"), but suggests that each claim be separately identified.  For example, Plaintiff's contractual interference cause of action relating to the GES contract should be separately identified and considered by the jury than Plaintiff's contractual interference cause of action relating to the Champion contract.  Plaintiff has already done this with its proposed instructions 266 and 267, using the same model instruction from CACI.

28.    **Instruction 30:  Intentional Interference with Contractual Relations – Contract.**  Plaintiff objects to this instruction (and the many that follow relating to the intentional interference claims) because it is duplicative and unnecessary.  The elements that must be proven for this cause of action to succeed are adequately set forth in the model instruction that both sides have proposed – CACI 2201.  However, Defendant goes on to propose several additional instructions for the same cause of action that are duplicative, unnecessary, a waste of time, argumentative, and occasionally include an incorrect statement of the law.

Proposed instruction 30 asks the jury to determine whether Plaintiff's contracts with GES and Champion are valid and enforceable.  This is already the first element that Plaintiff must prove in its intentional contractual interference claims, which Defendant set forth in its proposed instruction 29 – CACI 2201.  This addition is unnecessary and duplicative.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

**29.    Instruction 31: Intentional Interference with Contractual Relations –**

**Knowledge.**  Plaintiff objects to this instruction because it is duplicative and unnecessary. This instruction explains that a jury must consider whether Defendant knew of the existence of Plaintiff's contracts, and knew that Defendant was interfering with those contracts. This is duplicative of Defendant's instruction 29, which is CACI model instruction 2201 on contractual interference. Element two of CACI 2201 requires proof that Defendant knew of the contract. Element three of CACI 2201 requires proof that Defendant intended to disrupt performance of the contract. Therefore, this proposed instruction 31 created by Defendant from case law is duplicative, unnecessary and a waste of time.

**30.    Instruction 32: Intentional Interference with Contractual Relations –**

**Intent.**  Plaintiff objects to this instruction because Defendant has modified the model instruction so much that it no longer resembles the model, is argumentative, and does not accurately state the law as it applies to the facts in this case.

CACI 2203, for which this proposed instruction is purportedly modeled after, states, "In deciding whether defendant acted intentionally, you may consider whether it knew that a breach/disruption was substantially certain to result from its conduct." This is all that is contained in the model instruction and is all that should be presented to the jury in this case.

Defendant confuses and misstates the issues by adding extraneous factors for the jury to consider which are inappropriate. Plaintiff objects to the entirety of the second paragraph after the first sentence. Discussion of "criminal, fraudulent or violent conduct" is absolutely inapplicable in this case. The CACI model instructions already explain that an intent element is required to prove contractual interference, and intent is fully explained in model instruction CACI 2203. An instruction regarding "merely incidental" intent if the defendant does not act with "criminal, fraudulent or violent conduct" is not appropriate here and is not the standard for proving intent. A discussion of these factors need not be injected into the jury's deliberations.

Defendant cites to *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 56 (1998) to support this proposed addition to the model instruction. However, *Quelimane* was

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  an appeal of a demurrer ruling, meaning the only issue to be decided was whether sufficient

2  facts had been pled to establish interference with contract or economic relations.  The court

3  held that there are only four elements in proving interference with contract:  "The elements

4  which a plaintiff must plead to state the cause of action for intentional interference with

5  contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

6  knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or

7  disruption of the contractual relationship; (4) actual breach or disruption of the contractual

8  relationship; and (5) resulting damage." *Id.* at 55.  The court distinguished between

9  interference with contract and interference with economic relations, stating that intentionally

10  inducing or causing a breach of an existing contract is a wrong in and of itself. *Id.* at 55-56.

11  Nothing more need be shown.   In passing, the court discussed comment j of the Restatement

12  of Torts, which discusses consideration of whether a party's intent is criminal or violent, but

13  that is neither law of the case nor applicable under our circumstances.

14      Additionally, the *Davis v. Nadrich* case, 174 Cal. App. 4th 1 (2009) does not lend

15  support to Defendant's proposed modifications to this model instruction.  Rather, the *Davis*

16  case confirms that the only considerations for interference with contract are the same elements

17  already set forth by both parties in their proposed instructions.  The *Davis* court further stated

18  that the tort "will apply if the actor knows that the interference is certain or substantially

19  certain to occur as a result of his action.  The rule applies to an interference that is incidental to

20  the actor's independent purpose and desire but known to him to be a necessary consequence of

21  his action." *Id.* at 10.  The court held that Davis could not prove his interference case because

22  there were no facts presented to show that the defendant was sufficiently aware of the details

23  of the contract to form an intent to harm it.  These are the same "knowledge" and "intent"

24  requirements previously set forth in CACI 2201 and 2203.  Defendant's last sentence of

25  paragraph two is simply duplicative and unnecessary.

26      Finally, the last paragraph of this proposed instruction is completely unnecessary

27  because it states that if Plaintiff doesn't prove the elements of its interference claims, it cannot

28

1  prevail.  This is stated numerous times throughout various instructions that the jury will

2  receive.

3      **31.**    **Instruction 33:  Intentional Interference with Contractual Relations –**

4  **Disruption.**  Plaintiff objects to this instruction because it is unnecessary and duplicative.

5  Both parties have already proposed CACI 2201 to explain the contractual interference cause of

6  action.  CACI 2201 explains that the Plaintiff must prove that Defendant intended to disrupt

7  the contract and that the Defendant's conduct prevented performance or made performance

8  more expensive or difficult.

9      This proposal restates those same elements, but in a more complicated and confusing

10  way using seven case law citations and the Restatement treatise.  Defendant's instruction is not

11  concise.

12      Defendant's proposed instruction that its "conduct is not disruptive if plaintiff's and

13  GES's and/or Champion's resulting conduct was in accordance with the terms of their existing

14  contracts" is confusing.  If the contractual terms were not actually disrupted, Plaintiff cannot

15  prevail.  That element is already subsumed within CACI 2201.

16      Defendant then asks the jury to consider Plaintiff's "reasonable expectations under each

17  contract."  This is not supported by the case law cited, none of which impose a requirement

18  that the jury consider the party's reasonable expectations.  *See, Quelimane Co. v. Stewart Title*

19  *Guaranty Co.*, 19 Cal.4th 26 (1998) (holding complaint survived demurrer by alleging

20  knowledge of contract, disruption, intent and damages); *Davis v. Nadrich*, 174 Cal. App. 4th 1

21  (2009) (holding no contractual interference where there was no evidence that defendant's

22  conduct actually interfered); *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d

23  1118 (1990) (held no interference cause of action stated where the conduct did not make the

24  contractual benefits more expensive and burdensome); *Woods v. Fox Broadcasting Sub., Inc.*,

25  129 Cal. App. 4th 344 (2005) (holding that requirement of an independently wrongful act apart

26  from interference itself is not required for claims for interference with existing contract);

27  *Ramona Manor Convalescent Hospital v. Care Enterprises*, 177 Cal. App. 3d 1120 (finding

28  contractual interference where plaintiff's legitimate expectations under a signed lease were

Kirby Noonan Lance & Hoge LLP

350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   stultified by defendant's conduct); *Short v. Nevada Joint Union High School*, 163 Cal. App. 3d

2   1087 (1985) (holding that the tort of inducing a breach of contract requires that one must

3   intend to induce the breach).  This also would bring up issues excluded from the jury by the

4   motion in limine rulings.

5          Finally, Defendant cites to the Restatement of Torts (Second).  However, that treatise is

6   not law and Defendant has simply cherry picked various sentences from the comments which

7   serve its purposes, without a full discussion.  This section of the Restatement provides that

8   "one may not, however, intentionally and improperly frustrate dealings that have been reduced

9   to the form of a contract" and "there is a general duty not to interfere intentionally with

10  another's reasonable business expectations of trade with third persons."  This essentially

11  repeats the general law of the contractual interference tort, and does not require that a jury be

12  instructed on reasonable expectations.  Defendant's proposed instruction 33 is duplicative and

13  unnecessary and should not be utilized.

14         If the Court chooses to utilized this proposed instruction, Plaintiff proposes additional

15  instructions from the Restatement (Second) of Torts so that it is not one-sided.  See Instruction

16  33.1 attached hereto as Exhibit 1, p. 4.

17         **32.     Instruction 34: Intentional Interference with Contractual Relations –**

18  **Causation.**  Plaintiff objects to this instruction because it modifies the original model

19  unnecessarily and is duplicative of prior instructions.  Additionally, it misstates the law.

20  Defendant states that its conduct is not a substantial factor if it did not intend to cause the type

21  of harm plaintiff suffered.  However, intent and causation are two separate elements for an

22  intentional contractual interference claim.  CACI 2201.

23         A decision regarding causation does not require consideration of whether the defendant

24  intended to cause the harm suffered.  That is a separate element of the cause of action; CACI

25  2202 requires consideration of intent as factor three and causation as factor seven.  The two

26  are not interrelated.  Defendant's cited authority does not support this language.  *Bank of N.Y.*

27  *v. Fremont Gen. Corp.*, 523 F.3d 902 (9th Cir. 2008) specifically refers to CACI 2201 listing

28  "substantial factor" as an element in proving intentional interference, without any mention of

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   intent subsumed within the causation element. *Franklin v. Dynamic Details, Inc.*, 116 Cal.

2   App. 4th 375, 391 (2004) provides that an intentional interference cause of action requires

3   proof of causation, which is "something that is a substantial factor in bringing about an injury,

4   damage, loss or harm."  Again, intent is not part of this element. *Tate v. Canonica*, 180 Cal.

5   App. 2d 898 was not an interference with contract case and dealt with intervening causes.  It

6   does not support Defendant's proposed modification to CACI 430.  This proposed instruction,

7   and specifically the last paragraph, is inaccurate and should not be utilized.

8       **33.    Instruction 35: Intentional Interference with Contractual Relations –**

9   **Justification.**  Plaintiff objects to this instruction because it does not accurately state the law

10   with regard to interference with contractual relations.  It is true that consideration of several of

11   these factors is permissible in considering the justification defense.  However, the law does not

12   provide for consideration of the Defendant's motive.  None of the cases cited by Defendant

13   support an instruction for the jury to consider motive.

14       The only support for a consideration of motive is Defendant's citation to the

15   Restatement (Second) of Torts.  This Restatement section discusses factors to consider in

16   determining whether or not the interference is proper.  This treatise is not law.  Defendant

17   cannot cherry pick from various treatises to support its theory of California law and instruct

18   the jury accordingly.

19       The Restatement specifically says that "this branch of tort law [privilege to interfere]

20   has not developed a crystallized set of definite rules as to the existence or non-existence of a

21   privilege. . ."  Restatement (Second) of Torts § 767, Comment b.  "The issue in each case is

22   whether the interference is improper or not under the circumstances; whether, upon a

23   consideration of the relative significance of the factors involved, the conduct should be

24   permitted without liability, despite its effect of harm to another."  Thus, there is no specific set

25   of elements or factors that must be considered by the jury or established in order to prove this

26   defense.

27       Additionally, as the Restatement comments make clear, the issue of "motive" is closely

28   interwoven with the other factors and the only reason the Restatement has identified it

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

separately is "that the factor of motive is concerned with the issue of whether the actor desired to bring about the interference."  Restatement (Second) of Torts § 767, Comment d.  This is no different from a consideration of the Defendant's intent in whether or not the intentional interference claim can be proven.

If the Court elects to utilize this instruction, Plaintiff proposes an instruction that explains "motive" as discussed in the Restatement (Second) of Torts.  See Instruction 35.1 attached hereto as Exhibit 1, p. 5.

**34.**      **Instruction 36: Intentional Interference with Contractual Relations – Justification of Legally Protected Interest.**  Plaintiff objects to this instruction because it is duplicative, unnecessary, vague, ambiguous, and confusing.  Defendant has already proposed an instruction regarding justification of its conduct.  Among the factors the Defendant wants the jury to consider are the nature of the Defendant's conduct and its interests sought to be advanced.  (See Defendant's Instruction 35.)  Naturally included within those factors is whether Defendant is acting to protect a "legally protected interest."

Further, Defendant does not define what a "legally protected interest" is, beyond giving some examples.  This may cause the jury to speculate about what a legally protected interest is and whether Defendant has one in a building that it does not own.  This instruction causes more speculation and confusion than guidance.

Finally, Defendant's fourth paragraph regarding good faith is not supported by any of the authority cited and therefore should not be permitted.

If the Court elects to utilize this instruction, Plaintiff proposes that an additional instruction be provided which explains what is and what is not a legally protected interest.  See Instruction 36.1, attached hereto as Exhibit 1, p. 6.

**35.**      **Instruction 37: Intentional Interference with Prospective Economic Relations – Elements.**  Plaintiff does not object to this instruction (it is remarkably similar to Plaintiff's proposal) except to the extent that each prospective economic relation should be set forth in separate instructions for separate consideration by the jury (i.e., Paradice Decorating Co., Brede National Exposition Services).

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

36.   **Instruction 38: Intentional Interference with Economic Relations –**
**Probability of Future Economic Benefit.**  Plaintiff objects to this instruction (and the many
that follow regarding intentional interference) because it is duplicative and unnecessary.  The
prior instruction based on CACI 2202 adequately sets forth the elements of proof for this
claim; Defendant's additional instructions regarding each element are duplicative, unnecessary
and burdensome.

This instruction is exactly duplicative of the prior instruction, which requires proof of
an economic relationship that probably would have resulted in an economic benefit.  There is
no need for a second instruction on the same terms.  Defendant's last paragraph of this
proposal is further duplicative.  Stating that "it is not enough to show that a potentially
beneficial relationship could have developed" offers nothing new beyond the original CACI
2202 instruction, which specifically requires proof  of an actual economic relationship that
"probably would have resulted in an economic benefit."  In other words, there must be a
"probability of economic benefit" that is not speculative – the same language Defendant wants
to offer again in this instruction.  Defendant's additional language is simply confusing and
unwarranted.  The jury is smart enough to understand the original model instruction without
the additional case law in support.

37.   **Instruction 39: Intentional Interference with Economic Relations –**
**Knowledge.**  Plaintiff objects to this proposed instruction because again it is exactly
duplicative of the earlier model instruction for this cause of action, which specifically requires
proof that the Defendant had knowledge of the prospective economic relationship.  The court
should not repeat the same instructions multiple times when the exact same law is presented,
just through different cases cited by Defendant.

38.   **Instruction 40: Intentional Interference with Economic Relations – Intent.**
Plaintiff objects to this proposed instruction because it modifies the CACI 2203 and Matthew
Bender instructions so much that it no longer resembles the model instructions.

First, Defendant omits a crucial sentence in the first paragraph regarding intent.  The
model instruction provides:  "However, if you find that Defendant was substantially certain

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

that its conduct would interfere with Plaintiff's prospective economic advantage, you may infer from that fact that Defendant intended to cause the disruption" Defendant does not want this language, but Defendant offers no authority as to why the language should be omitted. In fact, the case law cited by Defendant supports that it must be included. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4[th] 1134, 1153 (2003) (stating that "to satisfy the intent requirement for this tort, it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action"). Therefore, if this instruction is utilized, this language must be put back into the instruction.

Second, the modifications to paragraph two regarding "criminal, fraudulent or violent conduct" are not appropriate and wholly inapplicable to the facts of this case. The CACI model instructions already explain that an intent element is required to prove interference and intent is fully explained in model instruction CACI 2203. An instruction regarding "merely incidental" intent if the defendant does not act with "criminal, fraudulent or violent conduct" is not appropriate here and is not the standard for proving intent. There is no dispute in this case that Defendant's conduct was not criminal, fraudulent or violent. A discussion of these factors need not be injected into the jury's deliberations. Additionally, not one of the cases cited by Defendant as authority for this modification supports such a modification. None of them discuss that a disruption can be "merely incidental" if not "criminal, fraudulent or violent." This should not be permitted.

**39.    Instruction 41: Intentional Interference with Economic Relations – Wrongful Conduct.** Plaintiff objects to this proposed instruction because again it is exactly duplicative of the earlier model instruction for this cause of action, which specifically requires proof that the Defendant engaged in wrongful conduct through implementation of the exclusive policy. Additionally, Defendant has misstated the law and the facts with regard to Plaintiff's alleged "wrongful conduct." The "wrongful conduct" element need not require proof of all of the antitrust claim elements; the jury may find no antitrust violation under federal law but still find that Defendant interfered with Plaintiff's prospective economic

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1 relations by implementing the policy at issue.  Therefore, this instruction is incorrect and

2 inappropriate as phrased.

3     **40.     Instruction 42:  Intentional Interference with Economic Relations –**

4 **Disruption.**  Plaintiff objects to this proposed instruction because it is duplicative and

5 unnecessary.  Defendant seeks to instruct the jury that it must find a disruption of the

6 economic relations, the same exact element set forth in the model instruction, CACI 2202,

7 which both parties agree is appropriate.  This instruction is unnecessary.

8         Additionally, Defendant changes the word "may" (as in what Plaintiff may prove as

9 disruption) in the Matthew Bender model instruction to the word "must," which is not

10 appropriate.

11        Defendant's cited cases offer nothing new to the analysis.  In fact, none of the cases

12 Defendant cites require jury analysis of "the nature and extent of plaintiff's reasonable

13 expectations under each relationship."  All that is required to show is that there was a

14 reasonable expectation of economic advantage that has been disrupted.  That is incorporated

15 within CACI 2202, such that an additional instruction based on vaguely supportive case law is

16 not warranted.

17     **41.     Instruction 43:  Intentional Interference with Economic Relations –**

18 **Causation.**  Plaintiff objects to this proposed instruction because it is duplicative and

19 unnecessary.  The element of causation has been explained previously in Defendant's proposed

20 instruction 34 and Plaintiff's proposed instruction 253 and 266.

21        In addition to being duplicative, the last paragraph is an unnecessary and legally

22 incorrect modification to the model instruction.  The model instruction (CACI 430) explaining

23 a substantial factor is sufficient.  Yet Defendant adds case law that is confusing and inaccurate.

24        A decision regarding causation does not require consideration of whether the defendant

25 intended to cause the harm suffered.  That is a separate element of the cause of action; CACI

26 2202 requires consideration of intent as factor three and causation as factor seven.  The two

27 are not interrelated.  Defendant's cited authority does not support this language.  *Bank of N.Y.*

28 *v. Fremont Gen. Corp.*, 523, F.3d 902 (9th Cir. 2008) specifically refers to CACI 2201 listing

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  "substantial factor" as an element in proving intentional interference, without any mention of

2  intent subsumed within the causation element.  *Franklin v. Dynamic Details, Inc.*, 116 Cal.

3  App. 4th 375, 391 (2004) provides that an intentional interference cause of action requires

4  proof of causation, which is "something that is a substantial factor in bringing about an injury,

5  damage, loss or harm."  Again, intent is not part of this element.  *Tate v. Canonica*, 180 Cal.

6  App. 2d 898 was not an interference with contract case and dealt with intervening causes.  It

7  does not support Defendant's proposed modification to CACI 430.  This proposed instruction,

8  and specifically the last paragraph, is inaccurate and should not be utilized.

9     **42.     Instruction 44:  Intentional Interference with Economic Relations –**

10 **Justification.**  Plaintiff objects to this instruction because it does not accurately state the law

11 with regard to interference with economic relations.  It is true that consideration of several of

12 these factors is permissible in considering the justification defense.  However, the law does not

13 provide for consideration of the Defendant's motive.  None of the cases cited by Defendant

14 support an instruction for the jury to consider motive.

15    The only support for a consideration of motive is Defendant's citation to the

16 Restatement (Second) of Torts.  This Restatement section discusses factors to consider in

17 determining whether or not the interference is proper.  This treatise is not law.  Defendant

18 cannot cherry pick from various treatises to support its theory of California law and instruct

19 the jury accordingly.

20    The Restatement specifically says that "this branch of tort law [privilege to interfere]

21 has not developed a crystallized set of definite rules as to the existence or non-existence of a

22 privilege. . ."  Restatement (Second) of Torts § 767, Comment b.  "The issue in each case is

23 whether the interference is improper or not under the circumstances; whether, upon a

24 consideration of the relative significance of the factors involved, the conduct should be

25 permitted without liability, despite its effect of harm to another."  Thus, there is no specific set

26 of elements or factors that must be considered by the jury or established in order to prove this

27 defense.

28

1    Additionally, as the Restatement comments make clear, the issue of "motive" is closely

2  interwoven with the other factors and the only reason the Restatement has identified it

3  separately is "that the factor of motive is concerned with the issue of whether the actor desired

4  to bring about the interference."  Restatement (Second) of Torts § 767, Comment d.  This is no

5  different from a consideration of the Defendant's intent in whether or not the intentional

6  interference claim can be proven.

7    If the Court elects to utilize this instruction, Plaintiff proposes an instruction that

8  explains "motive" as discussed in the Restatement (Second) of Torts.  See Instruction 35.1

9  attached hereto as Exhibit 1, p. 5.

10    **43.    Instruction 45:  Intentional Interference with Contractual Relations –**

11  **Justification of Legally Protected Interest.**  This instruction is exactly duplicative of

12  Defendant's proposed instruction 36.  Therefore, it is unnecessary.

13    Plaintiff anticipates that Defendant intended to change the title to an Economic

14  Relations claim.  Even if this were permitted, the instruction is still exactly duplicative of

15  instruction 36 and inappropriate for the same reasons.  Defendant has now proposed four

16  variations of a "justification" defense to the interference claims.  This instruction is

17  duplicative, unnecessary, vague, ambiguous and confusing.  Moreover, among the factors the

18  Defendant wants the jury to consider are the nature of the Defendant's conduct and its interests

19  sought to be advanced.  Naturally included within those factors is whether Defendant is acting

20  to protect a "legally protected interest."

21    Further, Defendant does not define what a "legally protected interest" is, beyond giving

22  some examples.  This may cause the jury to speculate about what constitutes a legally

23  protected interest is and whether Defendant has one over a building it does not own.  This

24  instruction causes more speculation and confusion that guidance.

25    Finally, Defendant's fourth paragraph regarding good faith is not supported by any of

26  the authority cited and therefore should not be permitted.

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1        If the Court elects to utilize this instruction, Plaintiff proposes that an additional

2   instruction be provided which explains what is and what is not a legally protected interest.

3   See Instruction 36.1, attached hereto as Exhibit 1, p. 6.

4       **44.**   **Instruction 47:  Intentional Interference Damages – Lost Profits.**  Plaintiff

5   objects to Defendant's modifications to the model instruction, CACI 3903N.  The model

6   instruction standing alone is sufficient to explain the lost profits damages.  The jury need not

7   be instructed on consideration of the value of labor Plaintiff received from Defendant.  That

8   value is not explained and so this instruction would simply confuse and complicate the issues

9   for the jury.

10

11   DATED: April 9, 2011                  KIRBY NOONAN LANCE & HOGE LLP

12

13

14                          By:  */s/ Jacob M. Slania*

                               James R. Lance

15                                  Jacob M. Slania

16                                  Lauren E. Litteken

                               Attorneys for Plaintiff

17                                  UNITED NATIONAL MAINTENANCE, INC.

18

19

20

21

22

23

24

25

26

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

*United National Maintenance v. San Diego Convention Center Corporation, Inc.*

(Case No: 07-CV-2172 AJB

TABLE OF CONTENTS OF EXHIBITS TO

PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS

| EXHIBIT NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Proposed revised instruction for the Court's consideration | 1-6 |

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

KNLH\835387.1

## EXHIBIT ONE

**Instruction 9:  Existence of Monopoly Power – Indirect Proof**

      If the Court chooses to adopt Defendant's Instruction 9, then it should be modified so as to reflect that Plaintiff has sued for Attempted Monopolization, and not Monopoly.  Plaintiff offers the following alternative language for the Court's consideration.

      If you find that plaintiff has proven a relevant market, then you should determine whether defendant has <u>a dangerous probability of achieving</u> monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. (Plaintiff has attempted to use evidence of the structure of the market to show that defendant has monopoly power.)   The evidence presented by the parties includes evidence of defendant's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors.  If this evidence establishes <u>a dangerous probability</u> that defendant has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that <u>there is a dangerous probability that</u> defendant has monopoly power in the market.

### *Market Share*

      The first factor that you should consider is defendant's market share. Based on the evidence that you have heard about defendant's market share, you should determine the defendant's market share as a percentage of total industry sales.

      A market share above 50 percent may be sufficient to support an inference that <u>there is a dangerous probability that</u> defendant (has) <u>will achieve</u> monopoly power, but in considering whether defendant (has) <u>will achieve</u> monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with defendants' market share, these factors should inform you as to whether defendant (has) <u>will achieve</u> monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

      A market share below 50 percent is ordinarily not sufficient to support a conclusion that defendant (has) <u>will achieve</u> monopoly power. However, if you find that the other evidence demonstrates <u>a dangerous probability</u> that defendant (does, in fact, have) <u>will achieve</u> monopoly power despite having a market share below 50 percent, you may conclude that <u>there is a dangerous probability that</u> defendant (has) <u>will achieve</u> monopoly power.

### *Market Share Trends*

      The trend in defendant's market share is something you may consider. An increasing market share may strengthen an inference that a company (has) <u>will achieve</u> monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

### *Barriers to Entry*

      You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a

Ex 1 P 1

meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, (and) the reputation of the companies already participating in the market (or the brand name recognition of their products) <u>and denial of access to essential facilities.</u>

Evidence of low or no entry barriers may be evidence that defendant (does not have) <u>may not achieve</u> monopoly power, regardless of defendant's market share, because new competitors could enter easily if defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant (has) <u>will achieve</u> monopoly power.

### *Entry and Exit By Other Companies*

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that defendant (lacks) <u>may not achieve</u> monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that defendant (has) <u>will achieve</u> monopoly power.

### *Number and Size of Competitors*

You may consider whether defendant's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on defendant's ability to price its products. If defendant's competitors are vigorous or have large or increasing market shares, this may be evidence that defendant (lacks) <u>may not achieve</u> monopoly power. On the other hand, if you determine that defendant's competitors are weak or have small or declining market shares, this may support an inference that defendant (has) <u>will achieve</u> monopoly power.

### *Conclusion*

If you find <u>a dangerous probability</u> that defendant (has) <u>will achieve</u> monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that defendant (does not have) <u>may not achieve</u> monopoly power, then you must find for defendant and against the plaintiff on this claim.

**Authority:**    ABA Model Instructions, pp. C-16–C-19.

Ex 1 P2

**Instruction 13.1:  Causation and Damages – Business of Property**

Plaintiff must establish that the injury it claims to have suffered was an injury to its "business or property."  The term "business" includes any commercial interest or venture, and you are instructed that plaintiff has been injured in its "business" if you find that it has suffered injury to any of its commercial interests or enterprises as a result of defendant's alleged antitrust violation.  The term "property" includes anything of value plaintiff owns, possesses, or in which plaintiff has a protectable legal interest.  You are instructed that plaintiff has been injured in its "property" if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of defendant's alleged antitrust violation.  You are further instructed that plaintiff has been injured in its "property" if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of defendant's alleged antitrust violation.

**Authority:**     ABA Model Instructions, p. F-7.

Ex 1 P3

**Instruction 33.1:  Intentional Interference with Performance of Contract By Third Persons**

It is not necessary that the Defendant appreciate the legal significance of the facts giving rise to the contractual duty, at least in the case of an express contract.  If the Defendant knows those facts, he is subject to liability even though he is mistaken as to their legal significance and believes that the agreement is not legally binding or has a different legal effect from what it is judicially held to have.

The rule regarding Intentional Interference with Contractual Relations is applicable if the Defendant acts for the primary purpose of interfering with the performance of the contract, and also if the Defendant desires to interfere, even though it acts for some other purpose in addition.

The Defendant may also be liable for Intentional Interference with Contractual Relations if the Defendant does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of its action.

Interference with Plaintiff's performance of a contract may give rise to a claim for interference with contractual relations if Plaintiff's performance is made more costly or more burdensome.

**Authority:**     Restatement (Second) of Torts § 766, comment j; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1129.

Ex 1 P 4

**Instruction 35.1:  Factors to Consider in Determining Whether Interference is Proper: Motive Defined**

To establish motive, Plaintiff must show that the interference with its contractual relations was either desired by Defendant or known by Defendant to be a substantially certain result of its conduct.

**Authority:**     Restatement (Second) of Torts § 767, comment d.

Ex. 1 P 5

**Instruction 36.1:  Legally Protected Interest**

Defendant is not justified in inducing a breach of contract simply because it is in competition with one of the parties to the contract and seeks to further its own economic advantage at the expense of the other.

**Authority:**  *Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 36.

*Ex 1 P6*