1  WRIGHT & L'ESTRANGE
   A Partnership Including Professional Corporations
2     John H. L'Estrange, Jr. (SBN 049594)
        jlestrange@wllawsd.com
3     Joseph T. Ergastolo (SBN 137807)
        jte@wllawsd.com
4  401 West A Street, Suite 2250
   San Diego, California 92101
5  (619) 231-4844  Fax:  (619) 231-6710

6  Attorneys for Defendant
   San Diego Convention Center
7  Corporation, Inc.

8                **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10  UNITED NATIONAL MAINTENANCE       )    **CASE NO. 07-cv-2172-AJB**
    INC., A Nevada Corporation         )
11                                     )    **DEFENDANT'S AMENDED RULE**
                      Plaintiff,       )    **50(a)(1) MOTION FOR JUDGMENT AS**
12          v.                         )    **A MATTER OF LAW AT THE CLOSE**
                                       )    **OF EVIDENCE; AND MEMORANDUM**
13  SAN DIEGO CONVENTION CENTER        )    **OF POINTS AND AUTHORITIES IN**
    CORPORATION, INC., A California     )    **SUPPORT**
14  Corporation,                       )
                      Defendant.       )    **Trial Date:    March 21, 2011**
15  _____   )    **Time:          9:00 a.m.**
                                            **Courtroom:     12**
16

17

18

19

20

21

22

23

24

25

26

27

28

_____
                                            **Case No. 07-cv-2172-AJB**

**TABLE OF CONTENTS**

I.   MOTION ........................................................................................................ 1

II.  INTRODUCTION ........................................................................................... 3

III. STANDARD OF REVIEW ............................................................................. 4

IV.  ARGUMENT ................................................................................................... 5

   A.   SUPPLEMENTATION AND RENEWAL OF ORAL MOTION ........................ 5

      1.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's
           Actual  Monopolization ("Essential Facilities") and Attempted
           Monopolization  Claims Because UNM's Expert Failed To Define
           A Legally Sufficient  Relevant Antitrust Market. ...................................... 6

      2.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's
           Actual   Monopolization ("Essential Facilities") and Attempted
           Monopolization  Claims Because UNM Failed to Adduce
           Substantial Evidence Of Antitrust Injury. .................................................. 8

      3.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's
           Actual   Monopolization ("Essential Facilities") and Attempted
           Monopolization Claims Because UNM Failed to Adduce
           Substantial Evidence of  Disaggregated Antitrust Damages .................... 10

      4.   UNM's Attempted Monopolization Claim Fails as a Matter of
           Law Because  SDCCC's Alleged Monopoly Power is Derived
           from Contractual Relationships. ............................................................... 11

      5.   UNM's Attempted Monopolization Claim Must Be Analyzed as
           an Actual Monopolization Claim, and UNM has Failed to Adduce
           Substantial Evidence that SDCCC Willfully Maintained
           Monopoly Power by Implementing the Cleaning Services Policy. .......... 11

      6.   UNM's Actual Monopolization ("Essential Facilities") Claim
           Fails as a  Matter of Law Because SDCCC Cannot Have
           Monopoly Power in an Upstream Market. ................................................ 12

      7.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's
           Actual   Monopolization ("Essential Facilities") Claim Because
           SDCCC Continues to Afford UNM Access to the Convention
           Center on a Reasonable, Nondiscriminatory Basis. ................................. 13

      8.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's
           Actual   Monopolization ("Essential Facilities") Claim Because
           UNM's Shows Could Be Held In Other San Diego Venues .................... 13

9.  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Contract and Prospective Economic Advantage Claims  Because UNM Failed to Demonstrate SDCCC Actually Disrupted UNM's Reasonable Expectations under the Contracts or Relationships. ...................................................................... 14

10. SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Contract Claim Because UNM Failed to Demonstrate SDCCC is a Stranger to UNM's Contracts with GES or Champion. ................................................................. 15

11. SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional   Interference with Prospective Economic Advantage Claim Because UNM Failed to Demonstrate SDCCC's Alleged Interference was Independently Wrongful as an Actual or Attempted Monopolization Offense........................................................... 16

B.  SDCCC IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ITS  ASSERTED JUSTIFICATIONS UPON CLOSE OF ALL EVIDENCE.......................................................................................... 17

1.  UNM Failed to Adduce Substantial Evidence Disproving the Validity of   SDCCC's Business Justifications in the Antitrust Context. .................................................................................... 17

a.  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Failed to Demonstrate that SDCCC's Security Justification is Not a Valid Business Purpose. .................................... 18

b.  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate   that SDCCC's Quality Control and Brand Management Justification   is Not a Valid Business Purpose........................................................... 19

c.  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Increased Revenue Justification is Not a Valid Business Purpose.............................. 20

2.  SDCCC is Entitled to Judgment as a Matter of Law on its Justification Affirmative Defenses In Light of the Overpowering Evidence it Has Offered and Which the Jury May Not Disbelieve. ......... 21

Case No. 07-cv-2172-AJB

a.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's Economic Interference Claims Because UNM Has Failed to Demonstrate that SDCCC's Conduct was not Justified as Fair and Reasonable under all of the Circumstances. ............................................................................. 21

b.   SDCCC is Entitled to Judgment as a Matter of Law on UNM's Economic Interference Claims Because UNM Has Failed to Demonstrate that SDCCC's Conduct was not Justified as Conduct Protecting a Legally Valid Interest. ............. 23

C.   SDCCC IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ITS UNM'S ANTITRUST CLAIMS BECAUSE DR. HEKMAN'S TESTIMONY WAS INADMISSIBLE UNDER FEDERAL RULES OF EVIDENCE 702-703 ......................................................... 23

D.   SDCCC IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ITS STATE ACTION DOCTRINE AFFIRMATIVE DEFENSE UPON CLOSE OF ALL EVIDENCE. ................................................. 24

a.   SDCCC is Entitled to Judgment as a Matter of Law on its State Action Doctrine Because it is Uncontroverted that the State Law Authorizes the City of San Diego to Operate a Convention Center through SDCCC and the In-House Provision of Services is a Reasonable and Logically Foreseeable Result from that Authorization. ................................. 25

b.   SDCCC is Entitled to Judgment as a Matter of Law on its State Action Doctrine Because it is Uncontroverted that the State Funded the Various Security Assessments of the Building and the Cleaning Services Policy is a Reasonable and Logically Foreseeable Result from that Authorization. ......... 25

IV.   CONCLUSION ................................................................................................ 26

1

## TABLE OF AUTHORITIES

2

### CASES

3

Alaska Airlines Inc. v. United Airlines, Inc.,
    948 F.2d 536 (9th Cir. 1991)........................................................................ 12

Amarel v. Connell,
    102 F.3d 1494 (9th Cir. 1997)........................................................................ 9

Anaheim v. Southern California Edison Co.,
    955 F.2d 1373 (1992)................................................................................... 19

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...................................................................................... 5

Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,
    7 Cal.4th 503 (1994) ................................................................................... 16

Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,
    472 U.S. 585 (1985)..................................................................................... 17

Brooke Group v. Brown & Williamson Tobacco Corp.,
    509 U.S. 209 (1993).................................................................................. 9, 24

Brunswick Corp. v. Pueblo Bowl-O-Mat,
    429 U.S. 477 (1977)...................................................................................... 8

Calculators Hawaii, Inc. v. Brandt, Inc.,
    724 F.2d 1332 (9th Cir. 1983)...................................................................... 17

California Computer Products, Inc. v. International Business Machines Corp.,
    613 F.2d 727 (9th Cir. 1979).............................................................. 5, 19, 21

Cascade Health Solutions v. PeaceHealth,
    515 F.3d 883 (9th Cir. 2008)........................................................................ 11

City of Columbia v. Omni Outdoor Advertising, Inc.,
    499 U.S. 365 (1991)..................................................................................... 25

Clairol, Inc. v. Boston Discount Center, Inc.,
    608 F.2d 1114 (6th Cir. 1979)...................................................................... 19

Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,
    611 F.3d 495 (9th Cir. 2010)......................................................................... 9

Corey Airport Servs. v. City of Atlanta,
    632 F. Supp. 2d 1246 (N.D. Ga. 2008) .......................................................... 7

Del. Valley Surgical Supply, Inc. v. Johnson & Johnson,
    523 F.3d 1116 (9th Cir. 2008)....................................................................... 8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eastman Kodak Co. v. Image Technical Services, Inc.,
    504 U.S. 451 (1992) ................................................................................... 17

Environmental Planning & Info. Council v. Superior Court,
    36 Cal.3d 188 (1984) ................................................................................. 21

Farmers Ins. Exchange v. Zerin,
    53 Cal.App.4th 445 (1997)......................................................................... 15

Ferguson v. Greater Pocatello Chamber of Commerce, Inc.,
    848 F.2d 976 (9th Cir. 1988)...................................................................... 14

Flip Side Productions. v. Jam Productions, Ltd.,
    843 F.2d 10244 (7th Cir. 1988) .................................................................. 14

Forsyth v. Humana, Inc.,
    114 F.3d 1467 (9th Cir. 1997)..................................................................... 11

Freeman v. San Diego Ass'n of Realtors,
    322 F.3d 1133 (9th Cir. 2003)............................................................... 17, 19

Glen Holly Entertainment, Inc. v. Tektronix Inc.,
    352 F.3d 367 (9th Cir. 2003).........................................................................8

Hass v. Oregon State Bar,
    883 F.2d 1453 (9th Cir. 1989)..................................................................... 26

HDC Medical, Inc. v. Minntech Corp.,
    474 F.3d 543 (8th Cir. 2007)...................................................................... 19

Heerwagen v. Clear Channel Communs.,
    435 F.3d 219 (2d Cir. 2006)..........................................................................7

Herron v. State Farm Mut. Ins. Co.,
    56 Cal.2d 202 (1961) ................................................................................. 22

Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.,
    935 F.2d 1469 (7th Cir. 1991)..................................................................... 21

Image Tech. Servs. v. Eastman Kodak Co.,
    125 F.3d 1195 (9th Cir. 1997)........................................................... 10, 17, 18

Image Tech. Servs., Inc. v. Eastman Kodak Co.,
    903 F.2d 612 (9th Cir. 1990)...................................................................... 18

In re Citric Acid Litig.,
    191 F.3d 1090 (9th Cir. 1999)..................................................................... 18

In re IBM Peripheral EDP Devices Antitrust Litig.,
    481 F.Supp. 965 (N.D. Cal. 1979) .............................................................. 18

International Rys. of Central America v. United Brands Co.,
    532 F.2d 231 (2d Cir. 1976)........................................................................ 20

Kochert v. Greater Lafayette Health Services, Inc.,
    463 F.3d 710 (7th Cir. 2006)................................................................. 10

Korea Supply Co. v. Lockheed Martin Corp.,
    29 Cal. 4th 1134 (2003) ...................................................................... 16

Los Angeles Memorial Coliseum Comm'n v. National Football League,
    791 F.2d 1356 (9th Cir. 1986)............................................................. 10

Lowell v. Mother's Cake & Cookie Co.,
    79 Cal.App.3d 13 (1978).............................................................. 21, 22

Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,
    271 F.3d 825 (9th Cir. 2001)............................................................... 16

Mattel, Inc. v. MGA Entertainment, Inc.,
    616 F.3d 904 (9th Cir. 2010)............................................................... 15

McGlinchy v. Shell Chemical Co.,
    845 F.2d 802 (9th Cir.1988)............................................................... 10

McSherry v. City of Long Beach,
    423 F.3d 1015 (9th Cir. 2005)........................................................... 4, 5

Mendelovitz v. Adolph Coors Co.,
    693 F.2d 570 (5th Cir. 1982)............................................................... 19

Mentor H/S, Inc. v. Med. Device Alliance, Inc.,
    244 F.3d 1365 (Fed. Cir. 2001) ............................................................. 4

MetroNet Servs. Corp. v. Qwest Corp.,
    383 F.3d 1124 (9th Cir. 2004)........................................................ 13, 14

Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,
    208 F.3d 655 (8th Cir. 2000)................................................................. 7

Morris Communs. Corp. v. PGA Tour, Inc.,
    364 F.3d 1288 (11th Cir. 2004)........................................................... 21

Mozart Co. v. Mercedes-Benz of North America, Inc.,
    833 F.2d 1342 (9th Cir. 1987)............................................................. 20

Newcal Indus. v. Ikon Office Solution,
    513 F.3d 1038 (9th Cir. 2008)............................................................. 11

Oahu Gas Service, Inc. v. Pacific Resources, Inc.,
    838 F.2d 360 (9th Cir. 1988)......................................................... 17, 20

Pac. Gas & Elec. Co. v. Bear Stearns & Co.,
    50 Cal.3d 1118 (1990) ........................................................................ 15

Pacific Gas & E. Co. v. G. W. Thomas Drayage & Rigging Co.,
    69 Cal.2d 33 (1968) ............................................................................ 15

Paladin Assocs. v. Montana Power Co.,
    328 F.3d 1145 (9th Cir. 2003)........................................................ 9

Paragould Cablevision, Inc. v. Paragould,
    930 F.2d 1310 (8th Cir. 1991)...................................................... 25

Parker v. Brown,
    317 U.S. 341 (1943)...................................................................... 24

Pittsburg County Rural Water District No. 7 v. City of McAlester,
    358 F.3d 694 (10th Cir. 2004)...................................................... 14

PM Group, Inc. v. Stewart,
    154 Cal.App.4th 55 (2007)............................................................ 16

Rebel Oil Co. v. Atlantic Richfield Co.,
    51 F.3d 1421 (9th Cir. 1995).............................................. 8, 9, 24

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000)........................................................................ 5

Richardson v. La Rancherita of La Jolla, Inc.,
    98 Cal.App.3d 73 (1979)............................................................... 23

Ritchie v. United States,
    451 F.3d 1019 (9th Cir. 2006)........................................................ 4

Santos v. Gates,
    287 F.3d 846 (9th Cir. 2002).......................................................... 4

Southern Motor Carriers Rate Conf. v. United States,
    471 U.S. 48 (1985)........................................................................ 26

Summers v. Delta Air Lines, Inc.,
    508 F.3d 923 (9th Cir. 2007).......................................................... 4

Summit Machine Tool Mfg. Corp. v. Victor CNC Systems, Inc.,
    7 F.3d 1434 (9th Cir. 1993).......................................................... 15

Syufy Enterprises v. American Multicinema, Inc.,
    793 F.2d 990 (9th Cir. 1986).......................................................... 6

Tanaka v. University of Southern California,
    252 F.3d 1059 (9th Cir. 2001)........................................................ 6

Theme Promotions, Inc. v. News Am. Mktg. FSI,
    546 F.3d 991 (9th Cir. 2008).......................................................... 6

Town of Hallie v. City of Eau Claire,
    471 U.S. 34 (1985)........................................................................ 24

Traweek v. San Francisco,
    920 F.2d 589 (9th Cir. 1990).................................................. 24, 25

Tripati v. McKay,
    211 Fed. Appx. 552 (9th Cir. 2006)................................................. 5

Twin City Sportservice, Inc. v. Charles O. Finley & Co.,
    512 F.2d 1264 (9th Cir. 1975)..................................................... 12

U.S. v. E.I. du Pont De Nemours & Co.,
    351 U.S. 377 (1956).......................................................... 6, 11, 12

United States v. Grinnell Corp.,
    384 U.S. 563 (1966).............................................................. 11

United States v. Microsoft Corp.,
    253 F.3d 34 (D.C. Cir. 2001) ..................................................... 17

United States v. Philadelphia Nat'l Bank,
    374 U.S. 321 (1963)............................................................... 7

Untracht v. Fikri,
    454 F. Supp. 2d 289 (W.D. Pa. 2006)............................................... 8

Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP,
    540 U.S. 398 (2004).............................................................. 13

Vollrath Co. v. Sammi Corp.,
    9 F.3d 1455 (9th Cir. 1993)................................................... 12, 24

Weisgram v. Marley Co.,
    528 U.S. 440 (2000).............................................................. 24

Weiss v. York Hospital,
    745 F.2d 786 (3rd Cir. 1984) .................................................... 20

## STATUTES

Cal. Cov't Code § 37506.............................................................. 25

Cal. Gov't Code §§ 37500- 37506..................................................... 25

Cal. Gov't Code §37501.............................................................. 25

## OTHER AUTHORITIES

9B Wright & Miller, Federal Practice and Procedure § 2529 (3d ed. 2008) ............... 5

Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and
    Their Application ¶ 550 (3d ed. 2006)............................................. 7

Hovenkamp, Federal Antitrust Policy: the Law of Competition and Its Practice §
    3.6d (2005)...................................................................... 7

**I.**

**MOTION**

Defendant San Diego Convention Corporation, Inc. ("SDCCC") moves the Court for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a)(1) as follows:

(1)    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM's Expert Failed To Define A Legally Sufficient Relevant Antitrust Market.

(2)    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Failed to Adduce Substantial Evidence Of Antitrust Injury.

(3)    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Failed to Adduce Substantial Evidence of Disaggregated Antitrust Damages.

(4)    UNM's Attempted Monopolization Claim Fails as a Matter of Law Because SDCCC's Alleged Monopoly Power is Derived from Contractual   Relationships.

(5)    UNM's Attempted Monopolization Claim Must Be Analyzed as an Actual Monopolization Claim, and UNM has Failed to Adduce Substantial Evidence that SDCCC Willfully Maintained Monopoly Power by Implementing the Cleaning Services Policy.

(6)    UNM's Actual Monopolization ("Essential Facilities") Claim Fails as a Matter of Law Because SDCCC Cannot Have Monopoly Power in an Upstream Market.

(7)    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") Claim Because SDCCC Continues to Afford UNM Access to the Convention Center on a Reasonable, Nondiscriminatory Basis.

/ / /

(8)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") Claim Because UNM's Shows Could Be Held In Other San Diego Venues.

(9)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Contract and Prospective Economic Advantage Claims Because UNM Failed to Demonstrate SDCCC Actually Disrupted UNM's  Reasonable Expectations under the Contracts or Relationships.

(10)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Contract Claim Because UNM Failed to Demonstrate SDCCC is a Stranger to UNM's Contracts with GES or Champion.

(11)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Prospective Economic Advantage Claim Because UNM Failed to Demonstrate SDCCC's Alleged Interference was Independently Wrongful as an Actual or Attempted Monopolization Offense.

(12)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Security Justification is Not a Valid Business Purpose.

(13)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Quality Control and Brand Management Justification is Not a Valid Business Purpose.

(14)  SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Increased Revenue Justification is Not a Valid Business Purpose.

/ / /

/ / /

(15)   SDCCC is Entitled to Judgment as a Matter of Law on UNM's Economic Interference Claims Because UNM Has Failed to Demonstrate that SDCCC's Conduct was not Justified as Fair and Reasonable under all of the Circumstances

(16)   SDCCC is Entitled to Judgment as a Matter of Law on UNM's Economic Interference Claims Because UNM Has Failed to Demonstrate that SDCCC's Conduct was not Justified as Conduct Protecting a Legally Valid Interest.

(17)   SDCCC is Entitled to Judgment as a Matter of Law as to UNM's Antitrust Claims Because Dr. Hekman's Testimony was Inadmissible under Federal Rules of Evidence 702-703

(18)   SDCCC is Entitled to Judgment as a Matter of Law on its State Action Doctrine Because it is Uncontroverted that the State Law Authorizes the City of San Diego to Operate a Convention Center through SDCCC and the In-House Provision of Services is a Reasonable and Logically Foreseeable Result from that Authorization

(19)   SDCCC is Entitled to Judgment as a Matter of Law on its State Action Doctrine Because it is Uncontroverted that the State Funded the Various Security Assessments of the Building and the Cleaning Services Policy is a Reasonable and Logically Foreseeable Result from that Authorization

## II.

## INTRODUCTION

Now, after both parties have introduced all evidence, no reasonable jury could return a verdict in Plaintiff United National Maintenance Inc.'s ("UNM's") favor on its antitrust and economic interference claims. In addition, SDCCC has presented uncontroverted evidence that it is entitled to judgment as a matter of law with respect to SDCCC's State Action Doctrine and Local Government Antitrust Act ("LGAA") affirmative defenses. UNM has been given a full and fair opportunity to present all relevant evidence necessary to prove its case. UNM failed to present sufficient evidence from which a reasonable jury could conclude in UNM's favor. SDCCC is therefore entitled to judgment as a matter of law.

# III.

## STANDARD OF REVIEW

Pursuant to Rule 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party." Fed. R. Civ. P. 50(a)(1). A party moving under Rule 50(a) must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2).

A Rule 50(a) motion ordinarily tests the sufficiency of the nonmoving party's evidence to meet its burden of proof, and judgment as a matter of law should be granted when the evidence "permits only one reasonable conclusion."  See, Santos v. Gates, 287 F.3d 846, 851 (9th Cir. 2002).   In other words, "judgment as a matter of law is appropriate only if no reasonable jury could find in favor of the non-moving party." Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006).  As such, the Court may grant a Rule 50(a) motion in favor of a party who bears the burden of proof on an issue, but only if that party "has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor."  Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1375 (Fed. Cir. 2001) (applying Ninth Circuit procedural law).

The Court is authorized to grant such a motion "at any time during the trial, as soon as it is apparent that either party is unable to carry [the pertinent] burden of proof," and it may rule "as soon as a party has completed a presentation on a fact essential to that party's case." McSherry v. City of Long Beach, 423 F.3d 1015, 1020 (9th Cir. 2005).  "Rule 50(a) thus allows a court to remove 'issue[s]'—claims, defenses, or entire cases—from the jury when there is no 'legally sufficient evidentiary basis' to support a particular outcome."  Summers v. Delta Air Lines, Inc., 508 F.3d 923, 926 (9th Cir. 2007); see Fed. R. Civ. P. 50, advisory committee note 1993 ("[J]udgments as a matter of law in jury trials may be entered . . . with respect to issues or defenses that may not be wholly dispositive of a claim or defense.").

///

The standard for granting judgment as a matter of law is identical to that for granting a motion for summary judgment. McSherry, 423 F.3d at 1020 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).  To defeat a Rule 50(a)(1) motion, the nonmoving party must present substantial evidence supporting a finding in its favor. California Computer Products, Inc. v. International Business Machines Corp., 613 F.2d 727, 734 (9th Cir. 1979).  "Substantial evidence," is "more than a mere scintilla" and consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Conclusory, self-serving, and speculative testimony is insufficient to defeat a Rule 50(a) motion. Tripati v. McKay, 211 Fed. Appx. 552, 553 (9th Cir. 2006) (citing Anderson, 477 U.S. at 252).

In deciding a motion for judgment as a matter of law, the court "should review all of the evidence in the record." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  In doing so, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Id.  Although it "must disregard all evidence favorable to the moving party that the jury is not required to believe," the Court "should give credence to the evidence favoring the nonmovant as well as . . . evidence supporting the moving party that is uncontradicted and unimpeached." Id., at 151; see 9B Wright & Miller, Federal Practice and Procedure § 2529 (3d ed. 2008)).

## IV.

## ARGUMENT

SDCCC's motion has two components.  First, SDCCC supplements and renews portions of its oral Rule 50(a)(1) motion affected by the presentation of evidence in its case.  Second, it moves on additional issues upon which both parties had not yet been fully heard at the close of UNM's case-in-chief, namely, SDCCC's legitimate business reasons pursuant to the Section 2 burden-shifting analytical framework, and certain affirmative defenses.

### A.   SUPPLEMENTATION AND RENEWAL OF ORAL MOTION

SDCCC is aware that it is no longer necessary to renew a Rule 50(a) motion "at the close of all the evidence" to move for a post-verdict judgment as a matter of law under Rule 50(b), or to preserve the issue for appeal.  See Fed. R. Civ. P. 50, Adv. Comm. Notes on 2006 amends.

Nevertheless, SDCCC maintains that in light of the evidence it has presented in its case, many of the inferences that UNM relied upon to defeat SDCCC's oral Rule 50(a) motion are unreasonable or contradicted by record evidence, and UNM's evidence has been made even more clearly insufficient for any reasonable juror to conclude in UNM's favor.

>**1.    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM's Expert Failed To Define A Legally Sufficient Relevant Antitrust Market.**

UNM's expert, Dr. Hekman, testified that the relevant product market is trade show cleaning services for large trade shows, but conceded that (1) he defined the relevant product market without reference to the cross-elasticity of demand; (2) he was unable to perform a proper analysis because he lacked sufficient information or data on cleaning prices; and (3) he premised his market definition on the highly-specialized nature of the cleaning services at issue, despite knowing that no special skills are required to perform booth cleaning.

- U.S. v. E.I. du Pont De Nemours & Co., 351 U.S. 377, 391 (1956)  (If consumers would switch products in response to a small, but significant price increase not due to external cost factors, then the products are in the same market).

- Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1002 (9th Cir. 2008) ("Cross-elasticity of demand  measures the percentage change in quantity that consumers will demand of one product in response to a percentage change in the price of another.").

- Syufy Enterprises v. American Multicinema, Inc., 793 F.2d 990, 994 (9th Cir. 1986) ("Assessment of a product market definition must take into account whether products excluded from the definition are 'interchangeable in use' with those included in the market and whether there is 'cross-elasticity of demand' between excluded and included products.").

- Tanaka v. University of Southern California, 252 F.3d 1059, 1063 (9th Cir. 2001) (Where plaintiff defines market without reference to cross-elasticity of demand, market is legally insufficient and plaintiff fails to state a claim).

1   Dr. Hekman further testified that the relevant geographic market is the San Diego

2   metropolitan area, or equivalently, the Convention Center, because: (1) according to his

3   understanding of the relevant economics, the geographic market is defined with reference to

4   where the services at issue are actually purchased or provided; and (2) the cost of trade show

5   cleaning is such a small portion of the overall cost of a hosting a trade show that no organizer

6   would leave San Diego in response to a price increase in cleaning services.

7   Dr. Hekman's geographic market definition fails as a matter of law.

8   • United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 359 (1963) (geographic

9       market is "area of effective competition" in which (1) the seller operates, and

10      (2) purchasers can practicably turn for supplies).

11  • Heerwagen v. Clear Channel Communs., 435 F.3d 219, 228 (2d Cir. 2006)

12      (geographic market is area in which a firm can increase its price without: (1) large

13      numbers of customers quickly turning to alternative supply sources outside the area;

14      or (2) outside producers outside quickly flooding the area with substitute products).

15  • Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 208 F.3d 655, 662 (8th Cir.

16      2000) (geographic market must be based on evidence of "where consumers could

17      practicably go, not on where they actually go").

18  • Corey Airport Servs. v. City of Atlanta, 632 F. Supp. 2d 1246, 1297 (N.D. Ga. 2008)

19      (improper to define market by where "services are to be performed").

20  • Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their

21      Application ¶ 550 (3d ed. 2006) ("Relevant inquiry is not how far customers

22      currently travel in order to buy from defendant, but how far they are willing to travel

23      to avoid paying the defendant monopoly prices").

24  • Hovenkamp, Federal Antitrust Policy: the Law of Competition and Its Practice §

25      3.6d (2005). (Defendant's "trade area"—"the area from which it currently draws its

26      customers"—and the relevant geographic market "are precisely reverse concepts").

27  ///

28  ///

1    Dr. Hekman's opinion is also contrary to uncontroverted evidence that SDCCC has given

2    rental rate discounts to at least one trade show organizer, who expressed dislike of SDCCC's

3    cleaning policy to induce it to come to the Convention Center.

4       **2.    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual**
         **Monopolization ("Essential Facilities") and Attempted Monopolization**

5       **Claims Because UNM Failed to Adduce Substantial Evidence Of Antitrust**
         **Injury.**

6

7    UNM failed to present evidence of higher consumer prices.  The testimony was

8    uncontroverted that GES, Exhibitors, and Trade Show Managers did not pay higher prices for

9    cleaning services as a result of the Cleaning Services Policy.  UNM presented evidence that

10   Champion agreed to a new contractual structure that lowered its profits, but that those losses

11   were collusive and self-inflicted, in that the new agreement was requested by, and given to,

12   UNM.  SDCCC adduced evidence that UNM's pricing to consumers for hourly cleaning was, in

13   fact, higher than the prices charged by SDCCC, and that UNM increased its prices to all of its

14   customers in California.

15   • Del. Valley Surgical Supply, Inc. v. Johnson & Johnson, 523 F.3d 1116, 1120 (9th

16      Cir. 2008) (Antitrust injury is a Clayton Act § 4 statutory standing requirement).

17   • Untracht v. Fikri, 454 F. Supp. 2d 289, 310 (W.D. Pa. 2006) ("Voluntary foreclosure

18      of one's own opportunities for competition is not the type of antitrust injury for which

19      the antitrust laws were designed to provide redress").

20   • Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 489 (1977) (Antitrust injury

21      "should reflect the anticompetitive effect either of the violation or of anticompetitive

22      acts made possible by the violation").

23   • Glen Holly Entertainment, Inc. v. Tektronix Inc., 352 F.3d 367, 372 (9th Cir. 2003)

24      (Plaintiff must suffer harm of the type the antitrust laws were intended to prevent).

25   • Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995)

26      (Defendant's conduct "is of the type the antitrust laws were intended to prevent" only

27      when it: (a) harms allocative efficiency; and (b) either (i) raises prices of goods above

28      competitive levels, or (ii) diminishes their quality).

- <u>Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.</u>, 611 F.3d 495, 502-03 (9th Cir. 2010) (Defendant must engage in conduct that "actually causes injury to competition, beyond the impact on the claimant").

- <u>Paladin Assocs. v. Montana Power Co.</u>, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury.").

UNM attempted to prove harm to competition through loss of consumer choice; however (assuming consumer choice is a relevant consideration), consumer choice is unaffected because SDCCC has not interposed itself between UNM and its customers, and the Exhibitor consumers never had a choice concerning cleaning subcontractors.

- <u>Amarel v. Connell</u>, 102 F.3d 1494, 1509 (9th Cir. 1997) (Coercive restraint of trade that prevents victims from making free choices between market alternatives is antitrust injury under §1, not unlawful monopoly under §2).

- <u>Rebel Oil Co. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1433 (9th Cir. 1995) (Defendant's conduct "is of the type the antitrust laws were intended to prevent" only when it: (a) harms allocative efficiency; and (b) either (i) raises prices of goods above competitive levels, or (ii) diminishes their quality).

UNM attempted to prove harm to competition through the evidence of diminished quality; however the record evidence consists of nothing more than conflicting and subjective anecdotes.   No objective, statistical, survey evidence was offered by UNM for comparative analysis.

- <u>Brooke Group v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 242 (1993) ("Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them").

- <u>Rebel Oil Co. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1433 (9th Cir. 1995) (Defendant's conduct "is of the type the antitrust laws were intended to prevent" only when it: (a) harms allocative efficiency; and (b) either (i) raises prices of goods above competitive levels, or (ii) diminishes their quality).

1         •   <u>Kochert v. Greater Lafayette Health Services, Inc.</u>, 463 F.3d 710, 718-19 (7th Cir.

2            2006) (anecdotal evidence of diminished quality of surgical services insufficient to

3            establish antitrust injury or standing; comparative evidence must be quantifiable and

4            measurable).

5       **3.**     **SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual**

6               **Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Failed to Adduce Substantial Evidence of**

7               **Disaggregated Antitrust Damages.**

8           UNM failed to present evidence of disaggregated antitrust damages.  Dr. Hekman opined

9  that his market was defined to include only "large" trade shows, but the uncontroverted record

10  evidence is as follows: (1) Dr. Hekman concluded that at least 3 of the 92 shows in UNM's

11  damages model are not "large"; (2) Dr. Kennedy determined that at least 31 of 92 shows in

12  UNM's damages model are not "large"; and (3) Dr. Hayes opined that 48 of 92 shows in UNM's

13  damages model could fit at other San Diego venues that Dr. Hekman contends fall outside of the

14  relevant antitrust market.

15       •   <u>Los Angeles Memorial Coliseum Comm'n v. National Football League</u>, 791 F.2d

16            1356, 1370-1376 (9th Cir. 1986) (Antitrust damages are limited to "net" injury under

17            section 4 of the Clayton Act; verdict cannot be based on damages greater than that

18            attributable to antitrust injury).

19       •   <u>Image Tech. Servs. v. Eastman Kodak Co.</u> ("<u>Image Tech. II</u>"), 125 F.3d 1195, 1224

20            (9th Cir. 1997) (in the context of a § 2 monopolization claim, conduct is unlawful

21            because of its anticompetitive effects on the relevant market, which requires an

22            antitrust plaintiff to segregate damages that occur outside of the relevant market;

23            vacating damage award and remanding for new trial).

24       •   <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 807-809 (9th Cir.1988) (Granting

25            summary judgment as a matter of law where damages study failed to disaggregate

26            damages caused by antitrust violations from those caused by tortious interference).

27  / / /

28  / / /

**4.  UNM's Attempted Monopolization Claim Fails as a Matter of Law Because SDCCC's Alleged Monopoly Power is Derived from Contractual Relationships.**

Dr. Hekman testified that he computed SDCCC's 50-60% share of the "market" for trade show cleaning services at the Convention Center based the SDCCC—Freeman contract, despite conceding that he did not know whether such figure reflected sales in dollars, number of trade shows, or number of workers.

- Newcal Indus. v. Ikon Office Solution, 513 F.3d 1038, 1048 (9th Cir. 2008) (Validly conferred contractual rights, standing alone, are not a cognizable source of market power).

- Forsyth v. Humana, Inc., 114 F.3d 1467, 1476 (9th Cir. 1997) (Law prohibits an antitrust claimant from resting on market power that flows from contractual exclusivity).

- U.S. v. E.I. du Pont De Nemours & Co., 351 U.S. 377, 391 (1956) (Monopoly power is "the power to control prices or exclude competition.").

**5.  UNM's Attempted Monopolization Claim Must Be Analyzed as an Actual Monopolization Claim, and UNM has Failed to Adduce Substantial Evidence that SDCCC Willfully Maintained Monopoly Power by Implementing the Cleaning Services Policy.**

Dr. Hekman testified that SDCCC has monopoly power in the "market" for trade show cleaning services at the Convention Center because it can control access to the Convention Center, but conceded that he did not know at what point such power was attained.

- Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 893 n.3 (9th Cir. 2008) (In attempt cases, defendant has not yet achieved monopoly power).

- United States v. Grinnell Corp., 384 U.S. 563, 570-571 (1966) (Monopoly offense has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident").

**6.    UNM's Actual Monopolization ("Essential Facilities") Claim Fails as a Matter of Law Because SDCCC Cannot Have Monopoly Power in an Upstream Market.**

The parties' experts have both opined that SDCCC has no more than 10% of the market share of the upstream, nationwide market for hosting trade shows and that it has no ability to control the control the rental rates / prices of other convention centers in the nationwide market.

- U.S. v. E.I. du Pont De Nemours & Co., 351 U.S. 377, 391 (1956) (monopoly power is "the power to control prices or exclude competition.").

- Alaska Airlines Inc. v. United Airlines, Inc., 948 F.2d 536, 544 (9th Cir. 1991). (Facility is "essential" only if control of the facility carries with it the power to eliminate competition in a downstream market).

- Alaska Airlines Inc. v. United Airlines, Inc., 948 F.2d 536, 545 n.12 (9th Cir. 1991) ("Monopoly control of the upstream market is a necessary element of essential facility . . . claims").

- Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1461-1462 (9th Cir. 1993) (a 10% market share is insufficient as a matter of law to create monopoly power in an attempted monopolization case; affirming JNOV for defendant).

- Twin City Sportservice, Inc. v. Charles O. Finley & Co., 512 F.2d 1264, 1274 (9th Cir. 1975) (50% market share is presumptively insufficient in actual monopolization case; rule of thumb: 90% share of market is enough to constitute monopoly; 60-64% is doubtful; 33% is not).

- Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1461-1462 (9th Cir. 1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict").

/ / /

/ / /

/ / /

/ / /

**7.      SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") Claim Because SDCCC Continues to Afford UNM Access to the Convention Center on a Reasonable, Nondiscriminatory Basis.**

The uncontroverted evidence is that UNM continues operate in the Convention Center, in that it is able to service its subcontracts, its supervisors sell services directly to exhibitors on-site, it subcontracted labor from other entities before and after July 1, 2007, and Doctors Hekman and Hayes both opined that UNM turned a profit on its operations at the Convention Center, which Dr. Hayes calculated to be nearly $1,100 a show.

- Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 411 (2004) ("The indispensable requirement for invoking the doctrine is the unavailability of access to the 'essential facilities'; where access exists, the doctrine serves no purpose.").

- MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1129 (9th Cir. 2004) ("The 'essential facilities' doctrine imposes on the owner of a facility that cannot reasonably be duplicated and which is essential to competition in a given market a duty to make that facility available to its competitors on a nondiscriminatory basis.").

- MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1129 (9th Cir. 2004) ("The doctrine does not guarantee competitors access to the essential facility in the most profitable manner").

- MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1129 (9th Cir. 2004) (Reasonableness of access is judged separately from the plaintiff's need, i.e., access need not be "conducive to [the plaintiff's] existing business model").

**8.      SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") Claim Because UNM's Shows Could Be Held In Other San Diego Venues.**

UNM failed to present evidence of the Convention Center's essentiality in the market it has defined.  Dr. Hekman defined his market to include only "large" trade shows, but the uncontroverted record evidence is that: (1) Dr. Hekman concluded that at least 3 of the 92 shows in UNM's damages model are not "large"; (2) Dr. Kennedy determined that at least 31 of 92

13

shows in UNM's damages model are not "large"; and (3) Dr. Hayes opined that 48 of 92 shows in UNM's damages model could fit at other San Diego venues that Dr. Hekman contends fall outside of the relevant antitrust market.

- MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1129-1130 (9th Cir. 2004) (Facility is "essential" only if it is "otherwise unavailable and cannot be reasonably or practically replicated").

- Pittsburg County Rural Water District No. 7 v. City of McAlester, 358 F.3d 694, 721 (10th Cir. 2004) (City's waterworks not essential to rural water district where plaintiff had alternative sources of supply in geographic market).

- Flip Side Productions. v. Jam Productions, Ltd., 843 F.2d 1024, 1034 (7th Cir. 1988) (Concert arena not essential facility where several other concert venues in metropolitan area).

- Ferguson v. Greater Pocatello Chamber of Commerce, Inc., 848 F.2d 976, 983 (9th Cir. 1988) ("Essential facilities" claim failed where plaintiff adduced insufficient evidence that (1) "state-owned facility, is the type of 'essential facility' protected by the Sherman Act," (2) that plaintiff was unable to produce comparable trade show in facility at another time of the year, and (3) that facility competitor could not construct adequate facility in the area).

**9.    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Contract and Prospective Economic Advantage Claims Because UNM Failed to Demonstrate SDCCC Actually Disrupted UNM's Reasonable Expectations under the Contracts or Relationships.**

The GES and Champion contracts make UNM's performance conditional on the decorator being named the designated cleaning subcontractor for a particular show.   The undisputed testimony from the parties and third-parties alike is that the UNM-Decorator contracts were "subject to" any contractual agreements reached by the parties located higher up the contracting chain.   SDCCC's licenses provide that trade associations and show managers agree to comply with the Building's Policies, Rules, and Regulations ("PRRs"), including any future changes to the PRRs that may occur before the event is hosted.   There is no evidence of

specific terms in the contracts between the trade associations and the decorators relevant to this case.  Given these facts, UNM failed to offer any legally sufficient evidence demonstrating its right to be in the Building or perform work in the Building.

- <u>Pac. Gas & Elec. Co. v. Bear Stearns & Co.</u>, 50 Cal.3d 1118, 1126 (1990) (Actual breach or disruption occurs when the contract is breached or when "plaintiff's performance is made more costly or more burdensome," as a result of the defendant's interference).

- <u>Pacific Gas & E. Co. v. G. W. Thomas Drayage & Rigging Co.</u>, 69 Cal.2d 33, 38 (1968) (Court must construe contract because "the intention of the parties as expressed in the contract is the source of contractual rights and duties").

- <u>Mattel, Inc. v. MGA Entertainment, Inc.</u>, 616 F.3d 904, 907 (9th Cir. 2010) (All contract interpretation issues must be treated the same regardless of whether the dispute concerns contract or tort claims).

- <u>Farmers Ins. Exchange v. Zerin</u>, 53 Cal.App.4th 445, 458 (1997) (Defendant's intentional act must be cause in fact of interference).

- <u>Summit Machine Tool Mfg. Corp. v. Victor CNC Systems, Inc.</u>, 7 F.3d 1434, 1443 n.4 (9th Cir. 1993) (Plaintiff must establish: (1) the nature and extent of plaintiff's reasonable expectations under the contract; and (2) that defendant's interfering act actually disrupted those expectations).

**10.    SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Contract Claim Because UNM Failed to Demonstrate SDCCC is a Stranger to UNM's Contracts with GES or Champion.**

The testimony is undisputed that prior to July 1, 2007, UNM necessarily relied upon SDCCC's consent, assistance, and cooperation to perform event related cleaning at the Building. This included access to the Building, the provision of credentials and electrical power. Additionally, the undisputed testimony from the parties and third-parties alike is that the UNM-Decorator contracts were "subject to" any contractual agreements reached by the parties located higher up the contracting chain.

/ / /

- <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 513-514 (1994) (Only "a stranger to [the] contract" may be liable for interfering with it.).

- <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 513-514 (1994) ("The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance.") .

- <u>PM Group, Inc. v. Stewart</u>, 154 Cal.App.4th 55, 65 (2007) (Defendant is not a stranger where subcontracts are predicated upon defendant's performance higher up the contracting chain).

- <u>Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.</u>, 271 F.3d 825, 834 (9th Cir. 2001) (Defendant is not stranger where performance requires the alleged interloper's cooperation or "direct, active involvement," or otherwise implicates interdependence between the parties).

**11.     SDCCC is Entitled to Judgment as a Matter of Law on UNM's Intentional Interference with Prospective Economic Advantage Claim Because UNM Failed to Demonstrate SDCCC's Alleged Interference was Independently Wrongful as an Actual or Attempted Monopolization Offense.**

UNM has conceded that the only predicate acts underlying this claim are its actual and attempted monopolization claims.  Because the predicate claims fails, this claim also fails.

- <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1159 (2003) (Intentional interference with prospective economic advantage "plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself")

- <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1159 & n.11. (2003). (Act is independently "wrongful" if it is unlawful, <u>i.e.</u>, it must be conduct proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard).

/ / /

/ / /

/ / /

**B.     SDCCC IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ITS ASSERTED JUSTIFICATIONS UPON CLOSE OF ALL EVIDENCE.**

    **1.     UNM Failed to Adduce Substantial Evidence Disproving the Validity of SDCCC's Business Justifications in the Antitrust Context.**

Conduct that is otherwise anticompetitive or predatory is not actionable if it is justified by legitimate business reasons. Oahu Gas Service, Inc. v. Pacific Resources, Inc., 838 F.2d 360, 368 (9th Cir. 1988). Regardless of motive, no firm must injure itself for a rival's benefit. Id. Indeed, a legitimate purpose renders any accompanying motive irrelevant. Id. at 368-370.

UNM must prove SDCCC's conduct lacks a legitimate business justification. Calculators Hawaii, Inc. v. Brandt, Inc., 724 F.2d 1332, 1339 (9th Cir. 1983). Analysis of business justifications is a burden-shifting inquiry: if UNM successfully establishes a prima facie section 2 case, SDCCC may proffer a legitimate business justification for its conduct. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 483 (1992) ("Kodak"); Image Tech. II, 125 F.3d at 1212-1213. The defendant's burden is only a burden of production; the plaintiff retains the ultimate burden of persuasion. Calculators Hawaii, 724 F.2d at 1339. The burden then shifts back to UNM to rebut an asserted business reason by demonstrating that it does not legitimately promote competition or that it is pretextual. Image Tech. II, 125 F.3d at 1212.

As a general rule, a justification is "legitimate" if the challenged practice increases the firm's efficiency, Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 605 (1985), or if it directly or indirectly enhances consumer welfare, United States v. Microsoft Corp., 253 F.3d 34, 58-59 (D.C. Cir. 2001). To show pretext, UNM must prove that the asserted reason is not genuine, i.e., not the actual reason for SDCCC's conduct. Image Tech. II, 125 F.3d at 1212; Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1156 (9th Cir. 2003).

The Ninth Circuit has rejected justification inquiries under Section 2 that second guess an alleged monopolist's business judgment, including analyses that ask whether defendant's business judgment was wise or correct in retrospect, look to "less restrictive alternatives," or

/ / /

/ / /

weigh as-yet-unknown social gains against current competitive injuries.  <u>Allied Orthopedic</u>, 592 F.3d at 999-1000; <u>Image Tech. II</u>, 125 F.3d at 1212; <u>Image Tech. Servs., Inc. v. Eastman Kodak Co.</u>, 903 F.2d 612, 620 (9th Cir. 1990) ("<u>Image Tech. Servs. I</u>"), <u>aff'd</u>, 504 U.S. 451 (1992).

These inquiries would restrict, rather than promote, competition because nearly all business activity is designed to increase market share at competitor's expense, and "[m]anagement's safest course might be to do nothing, but that, of course, would violate their duty to shareholders, and would do nothing to benefit a healthy, innovative and competitive market."  <u>In re IBM Peripheral EDP Devices Antitrust Litig.</u>, 481 F.Supp. 965, 1021-1022 (N.D. Cal. 1979).  "Courts have recognized that firms must have broad discretion to make decisions based on their judgments of what is best for them and that business judgments should not be second-guessed even where the evidence concerning the rationality of the challenged activities might be subject to reasonable dispute."  <u>In re Citric Acid Litig.</u>, 191 F.3d 1090, 1101 (9th Cir. 1999) (section 1 claim).

> **a.** **SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Security Justification is Not a Valid Business Purpose.**

The undisputed testimony has been that a requirement that SDCCC employees perform all cleaning services provides tangible (albeit incremental) reduction of the Building's vulnerability to attack and substantial emergency preparedness benefits.  Both security experts retained by the parties confirmed that the Cleaning Services Policy at issue yields such an incremental reduction of vulnerabilities.  The undisputed testimony has also been that beginning in 2003, SDCCC began analyzing security issues through third-party assessments and "war games."  Collectively, these assessments and "war games" revealed that key security objectives at the Building included management's knowledge of, and control over, persons with access to public and non-public areas in the Building, and security and emergency preparedness training for staff.  SDCCC management actually considered these objectives when it crafted and implemented the Cleaning Services Policy.  Providing a safe and secure environment for visitors, patrons, vendors, staff and the Building itself is a legitimate business purpose.

- HDC Medical, Inc. v. Minntech Corp., 474 F.3d 543, 550 (8th Cir. 2007) (Redesigning product to ensure dialysis "[p]atient safety is a valid business justification");

- Mendelovitz v. Adolph Coors Co., 693 F.2d 570, 576 (5th Cir. 1982) (Preserving beer freshness from adverse effect of age, light, and heat justified territorial limitations and quality control procedures);

- Clairol, Inc. v. Boston Discount Center, Inc., 608 F.2d 1114, 1125 (6th Cir. 1979) (Restricting professional salon products' resale restrictions justified where products not suitable for public consumption).

b.     **SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Quality Control and Brand Management Justification is Not a Valid Business Purpose.**

The undisputed testimony has been that requiring SDCCC employees to perform all cleaning functions furthers SDCCC's quality control and brand management goals contained in the "San Diego Spirit" program.  The testimony is also undisputed that SDCCC management actually considered UNM's performance to be subpar and inconsistent with SDCCC's branding efforts when it crafted and implemented the Cleaning Services Policy.  Quality control, customer service, and brand management are all legitimate business reasons, particularly given the nature SDCCC's mission—promoting the City and the region and attracting tourism dollars and tax revenues.

- Freeman, 322 F.3d at 1156 (rejecting business proposal as incompatible with current business model is valid justification);

- Anaheim v. Southern California Edison Co., 955 F.2d 1373, 1380-1381 (1992) (Denying access to electricity transmission lines justified because the reduced capacity would decrease defendant's competitiveness and increase consumer prices);

- Cal. Computer Prods., Inc. v. IBM Corp., 613 F.2d 727, 744 (9th Cir. 1979) (improving product performance or features); Microsoft Corp., 253 F.3d at 58-59 (same);

- <u>Weiss v. York Hospital</u>, 745 F.2d 786, 821 (3rd Cir. 1984) (Enhancing hospital's reputation, improving quality of care, and preventing reduction in efficiency justified restrictions on osteopath doctor's hospital staff privileges in section 1 claim);

- <u>Mozart Co. v. Mercedes-Benz of North America, Inc.</u>, 833 F.2d 1342, 1349-1351 (9th Cir. 1987) (Ensuring quality control and company goodwill was legitimate purpose for section 1 tying agreement for branded car parts).

           **c.**      **SDCCC is Entitled to Judgment as a Matter of Law on UNM's Actual Monopolization ("Essential Facilities") and Attempted Monopolization Claims Because UNM Has Failed to Demonstrate that SDCCC's Increased Revenue Justification is Not a Valid Business Purpose.**

The undisputed testimony has been that following the enactment of the City of San Diego's adoption the Living Wage Ordinance ("LWO"), SDMC § 22.4205 <u>et seq.</u>, SDCCC faced higher labor costs by operation of law. The undisputed testimony is also that SDCCC lost money on every show that UNM cleaned the trade show floor, because SDCCC was still required to clean, operate, and maintain the public areas of the Building, and the revenues captured by UNM would ordinarily be applied to SDCCC's expenses. The undisputed testimony is also that the national market for hosting trade shows is very competitive, and that cleaning revenues are often needed to recoup rental rate discounts given to shows to attract business to the Building. The testimony is also undisputed that SDCCC management actually considered these revenue and production efficiency issues when it crafted and implemented the Cleaning Services Policy. Boosting short-run profitability, avoiding additional costs or losses, achieving economies of scale and scope, and realizing a return on investment are all legitimate business purposes.

- <u>Oahu Gas</u>, 838 F.2d at 368-70 & nn.3-4 (Refusing produce propane for competitor is justified where doing so would require additional investment and result in negative return);

- <u>International Rys. of Central America v. United Brands Co.</u>, 532 F.2d 231, 239 (2d Cir. 1976) ("Abandon[ing] an unprofitable and uncomfortable operation" is always justified business conduct).

1 • <u>Morris Communs. Corp. v. PGA Tour, Inc.</u>, 364 F.3d 1288 (11th Cir. 2004)

2 (Preventing free riding on investment by requiring reseller to purchase product);

3 • <u>Cal. Computer Prods</u>, 613 F.2d at 739-740 (Reducing manufacturing costs);

4 • <u>Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.</u>, 935 F.2d 1469, 1483 & n.13

5 (7th Cir. 1991) (Refusing to rewrite customer contracts justified where pipeline

6 would be exposed to potential $ 4 billion losses);

7 **2.      SDCCC is Entitled to Judgment as a Matter of Law on its Justification
       Affirmative Defenses In Light of the Overpowering Evidence it Has Offered**
8 **and Which the Jury May Not Disbelieve.**

9 The affirmative defense of justification applies to both economic interference claims.

10 <u>Environmental Planning & Info. Council v. Superior Court</u>, 36 Cal.3d 188, 193-94 (1984).

11 Courts employ a general balancing test or a test based on specific factual scenarios.  <u>Id.</u>  The

12 ultimate question is whether an actor's conduct was fair and reasonable under the circumstances.

13 <u>Lowell v. Mother's Cake & Cookie Co.</u>, 79 Cal.App.3d 13, 21 (1978).

14 **a.      SDCCC is Entitled to Judgment as a Matter of Law on UNM's
       Economic Interference Claims Because UNM Has Failed to**
15 **Demonstrate that SDCCC's Conduct was not Justified as Fair and
       Reasonable under all of the Circumstances.**
16

17 SDCCC's conduct is justified under all of the circumstances because it took reasonable

18 steps to protect its patrons, property, branding, and bottom line.  The undisputed testimony has

19 been that a requirement that SDCCC employees perform all cleaning services provides tangible

20 (albeit incremental) reduction of the Building's vulnerability to attack and substantial emergency

21 preparedness benefits.  Both security experts retained by the parties confirmed that the Cleaning

22 Services Policy at issue yields such an incremental reduction of vulnerabilities.  The undisputed

23 testimony has also been that beginning in 2003, SDCCC began analyzing security issues through

24 third-party assessments and "war games."  Collectively, these assessments and "war games"

25 revealed that key security objectives at the Building included management's knowledge of, and

26 control over, persons with access to public and non-public areas in the Building, and security

27 and emergency preparedness training for staff.

28 / / /

1    The undisputed testimony has been that requiring SDCCC employees to perform all

2    cleaning functions furthers SDCCC's quality control and brand management goals contained in

3    the "San Diego Spirit" program.  The testimony is also undisputed that SDCCC management

4    actually considered UNM's performance to be subpar and inconsistent with SDCCC's branding

5    efforts when it crafted and implemented the Cleaning Services Policy.

6    The undisputed testimony has been that following the enactment of the LWO, SDCCC

7    faced higher labor costs by operation of law.  The undisputed testimony is also that SDCCC lost

8    money on every show that UNM cleaned the trade show floor, because SDCCC was still

9    required to clean, operate, and maintain the public areas of the Building, and the revenues

10   captured by UNM would ordinarily be applied to SDCCC's expenses.   The undisputed

11   testimony is also that the national market for hosting trade shows is very competitive, and that

12   cleaning revenues are often needed to recoup rental rate discounts given to shows to attract

13   business to the Building.

14   - Herron v. State Farm Mut. Ins. Co., 56 Cal.2d 202, 206 (1961) (Justification defense

15   balances the importance, social and private, of the objective advanced by the

16   interference against the importance of the interest interfered with, considering all of

17   the circumstances, including the nature of the actor's conduct and the relationship

18   between the parties).

19   - Lowell, 79 Cal.App.3d at 21 (Relevant balancing factors include: (1) the nature of

20   defendant's conduct; (2) defendant's motive; (3) the interest sought to be advanced

21   by defendant; (4) the proximity or remoteness of defendant's conduct to the

22   interference; (5) the relationship between the parties; (6) the nature of plaintiff's

23   expectancy; and (7) the social interest in protecting the expectancy on the one hand,

24   and defendant's freedom of action on the other).

25   ///

26   ///

27   ///

28   ///

**b.** **SDCCC is Entitled to Judgment as a Matter of Law on UNM's Economic Interference Claims Because UNM Has Failed to Demonstrate that SDCCC's Conduct was not Justified as Conduct Protecting a Legally Valid Interest.**

SDCCC's conduct is also justified in that it took reasonable, good faith steps to protect a legally valid interest in maintaining and promoting the Building on behalf of the City, and in protecting the revenue streams it is entitled to under its management agreement with the City. The undisputed testimony has been that a requirement that SDCCC employees perform all cleaning services provides tangible (albeit incremental) reduction of the Building's vulnerability to attack and substantial emergency preparedness benefits.   Additionally, the undisputed testimony has been that requiring SDCCC employees to perform all cleaning functions furthers SDCCC's quality control and brand management goals.  Finally, the undisputed testimony has also shown that the SDCCC lost much-needed revenues that it was otherwise entitled to under the management agreement whenever UNM performed event cleaning at the Building.

- Richardson v. La Rancherita of La Jolla, Inc., 98 Cal.App.3d 73, 81 (1979) (If defendant "has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own . . . [it] is privileged to prevent performance of the contract of another which threatens [the interest].").

- Richardson v. La Rancherita of La Jolla, Inc., 98 Cal.App.3d 73, 81 (1979) (Defendant must show: (1) it has a legally protected interest, (2) it acted in good faith to protect that interest, and (3) it used otherwise lawful and appropriate means to protect that interest).

**C.   SDCCC IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ITS UNM'S ANTITRUST CLAIMS BECAUSE DR. HEKMAN'S TESTIMONY WAS INADMISSIBLE UNDER FEDERAL RULES OF EVIDENCE 702-703.**

As more fully described in SDCCC's Daubert motions, Dr. Hekman's opinions were not based on sufficient facts or data of the type relied upon by experts in the field of industrial organization economics, and were not the product of reliable principles and methods reliably applied to the facts of the case.

/ / /

---

23

1      • Weisgram v. Marley Co., 528 U.S. 440, 455-457 (2000) (Inadmissible evidence does
2         not provide a legally sufficient evidentiary basis for a reasonable jury to find for the
3         party opposing a Rule 50(a) motion)

4      • Brooke Group v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993)
5         ("Expert testimony is useful as a guide to interpreting market facts, but it is not a
6         substitute for them").

7      • Brooke Group v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993)
8         ("Expert opinion evidence . . . has little probative value in comparison with the
9         economic factors" that may dictate a particular conclusion).

10     • Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1461-1462 (9th Cir. 1993) ("When an
11        expert opinion is not supported by sufficient facts to validate it in the eyes of the law,
12        or when indisputable record facts contradict or otherwise render the opinion
13        unreasonable, it cannot support a jury's verdict").

14     • Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1435-1436 (9th Cir. 1995) (In
15        the context of antitrust law, if there are undisputed facts about the structure of the
16        market that render the inference economically unreasonable, the expert opinion is
17        insufficient to support a jury verdict).

**D.     SDCCC IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ITS
         STATE ACTION DOCTRINE AFFIRMATIVE DEFENSE UPON CLOSE OF
         ALL EVIDENCE.**

States are immune from antitrust laws.  Parker v. Brown, 317 U.S. 341, 351 (1943).  This immunity extends to municipalities that take allegedly anticompetitive actions pursuant to a clearly expressed state policy.  Town of Hallie v. City of Eau Claire, 471 U.S. 34, 40 (1985). This Court previously found that SDCCC was a "state actor" for purposes of this affirmative defense (Dkt. 120, at 15:21-26).   Accordingly, SDCCC must prove that the California Legislature: (1) authorized SDCCC's actions challenged by UNM; and (2) intended to displace competition with regulation.  Traweek v. San Francisco, 920 F.2d 589, 591-592 (9th Cir. 1990). The legislature is deemed to have intended to replace competition with regulation "if

/ / /

1    suppression of competition is the 'foreseeable result' of what the statute authorizes."   City of

2    Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 373 (1991).

         **a.**    **SDCCC is Entitled to Judgment as a Matter of Law on its State Action Doctrine Because it is Uncontroverted that the State Law Authorizes the City of San Diego to Operate a Convention Center through SDCCC and the In-House Provision of Services is a Reasonable and Logically Foreseeable Result from that Authorization.**

7         California cities have statutory authority to construct and maintain public assembly or

8    convention halls.  See Cal. Gov't Code §§ 37500- 37506.  Pursuant to that authority, cities may:

9    (1) acquire land (by condemnation or otherwise), and construct and maintain a public assembly

10   or convention hall upon it, and incur indebtedness for such purpose, id. at § 37501; (2) obtain

11   monies from the convention hall for certain municipal needs, id. at § 37505; and (3) by an

12   ordinance setting forth its powers and duties, appoint a commission or other entity to supervise

13   and manage its construction and use,  id. at § 37506.  Pursuant to this state authority, the City of

14   San Diego created SDCCC to operate and maintain the Building when it enacted City Council

15   Resolution R-261419 (Aug. 20, 1984) (see Dkt. No. 92-7, ¶ 9).  It is reasonably foreseeable that

16   a convention hall would elect to take services, including cleaning services, in house.

17       •   Traweek v. San Francisco, 920 F.2d 589, 591-592 (9th Cir. 1990) (State intended to

18          displace competition if the allegedly anticompetitive conduct is foreseeable from the

19          State's authorization)

20       •   Paragould Cablevision, Inc. v. Paragould, 930 F.2d 1310, 1312 (8th Cir. 1991) (State

21          intended to displace competition if it specifically authorizes a proprietary function)

         **b.**    **SDCCC is Entitled to Judgment as a Matter of Law on its State Action Doctrine Because it is Uncontroverted that the State Funded the Various Security Assessments of the Building and the Cleaning Services Policy is a Reasonable and Logically Foreseeable Result from that Authorization.**

25        On February 7, 2003, the Governor of California signed Executive Order No. D-67-03.

26   Executive Order No. D-67-03 established the California Office of Homeland Security

27   ("CalOHS") under the aegis of the Office of the Governor.  CalOHS' mission includes

28   developing and coordinating the implementation of a comprehensive state strategy to coordinate

security activities throughout California, including the distribution of federal grant monies throughout California.  It is undisputed that several of the assessments relied upon by SDCCC in crafting the Cleaning Services Policy were funded in whole or in part by CalOHS and the California National Guard.

- Southern Motor Carriers Rate Conf. v. United States, 471 U.S. 48, 63-64 (1985) (Authorization may be found in legislation, as well as in decisions of a State Supreme Court, and regulatory agencies)

- Hass v. Oregon State Bar, 883 F.2d 1453, 1457 (9th Cir. 1989) (Authorization may be found in legislation, as well as in decisions of a State Supreme Court, and regulatory agencies)

- Southern Motor Carriers Rate Conf. v. United States, 471 U.S. 48, 64 (1985) (A State's failure to describe its policy in detail will not defeat immunity if the intent is otherwise clear)

## V.

## CONCLUSION

For the foregoing reasons, SDCCC respectfully requests that the Court enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) in its favor for the reasons –and in the manner – detailed above.


Dated: April 19, 2011                                        WRIGHT & L'ESTRANGE
                                                                        Attorneys for Defendant
                                                                        San Diego Convention Center Corp., Inc.


                                                                        */s/ John H. L'Estrange, Jr.*
                                                                        John H. L'Estrange, Jr.
                                                                        jlestrange@wllawsd.com