UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ANTHONY J. BATTAGLIA, JUDGE PRESIDING

|  |  |
|---|---|
|  | ) VOLUME XII (EXCERPT) |
| UNITED NATIONAL MAINTENANCE, INC., | ) |
|  | ) CASE NO. 07CV2172-AJB |
| PLAINTIFF, | ) |
|  | ) |
| -V- | ) |
|  | ) SAN DIEGO, CALIFORNIA |
| SAN DIEGO CONVENTION CENTER CORPORATION, INC., | ) APRIL 11, 2011 |
|  | ) 4:20 P.M. |
| DEFENDANT. | ) |
| _____ | ) JURY TRIAL |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR THE PLAINTIFF:      JAMES R. LANCE, ESQ.
                        JAMES M. SLANIA, ESQ.
                        KIRBY NOONAN LANCE & HOGE, LLP
                        350 TENTH AVENUE, STE. 1300
                        SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT:      JOHN H. L'ESTRANGE, JR., ESQ
                        JOSEPH THOMAS ERGASTOLO, ESQ.
                        ANDREW EDWARD SCHOUTEN, ESQ.
                        WRIGHT AND L'ESTRANGE
                        401 A STREET, STE. 2250
                        SAN DIEGO, CALIFORNIA 92101

OFFICIAL REPORTER:      JEANNETTE N. HILL, C.S.R.
                        (619) 702-3905

APRIL 11, 2011

2

1    SAN DIEGO CALIFORNIA; MONDAY, APRIL 11, 2011; 4:20 P.M.

2    (PROCEEDINGS HAD IN OPEN COURT, OUTSIDE THE HEARING OF THE

3    JURY)

4              **THE COURT:**  WE ARE BACK ON THE RECORD WITHOUT THE

5    JURY, WITH COUNSEL AND PARTIES PRESENT.  AND WE HAVE THESE

6    ISSUES OF TRANSCRIPTS THAT NEED TO BE CLEANED UP, SO TO SPEAK,

7    FOR PRESENTATION.

8              I GUESS WE COULD START WITH PSUIK.  AND I GUESS THERE

9    IS AN ADDITIONAL CONCERN ABOUT HOW THIS IS PLAYED.  PLAINTIFFS

10   ARE SAYING THEY WANT IT PLAYED CHRONOLOGICALLY.  AND THEN THERE

11   IS REFERENCE TO THE DALLAS CONFERENCE.

12             AND WHAT DOES THE DEFENSE THINK ABOUT THE

13   CHRONOLOGICAL?  WELL, YOUR HONOR, THE DEPOSITION WAS TAKEN BY

14   MR. SLANIA.  I HAD NO CONTROL OVER THAT.  SO, OBVIOUSLY, I

15   DON'T WANT TO HAVE THE TESTIMONY COME IN IN TRIAL IN THE SAME

16   ORDER THAT MR. SLANIA CHOSE TO ASK IN DEPOSITION.  I DON'T

17   THINK THAT IS A REQUIREMENT OF ANY RULE THAT I AM AWARE OF,

18   EVER.

19             **THE COURT:**  YES.

20             AND, MR. SLANIA, IS THERE SOME RULE OR AUTHORITY THAT

21   MEANS HE HAS TO STRUCTURE HIS PRESENTATION?

22             **MR. SLANIA:**  I'M NOT AWARE OF ANY RULE OR ANY

23   AUTHORITY IN THAT REGARD, YOUR HONOR.  IT'S JUST WHAT WE HAVE

24   DONE WITH MR. PITTS AND MR. PSUIK, AND SO I THOUGHT IT WOULD BE

25   CONSISTENT TO HAVE ALL THE TESTIMONY PLAYED IN ORDER FOR THE

1 JURY FROM THE BEGINNING TO THE END.

2    **THE COURT:** OKAY.  I'M NOT GOING TO INTERVENE IN HOW

3 COUNSEL WANT TO PRESENT THEIR EVIDENCE.  IF YOU CAN'T AGREE,

4 THEN JUST PRESENT IT IN THE ORDER THAT MAKES SENSE TO YOU-ALL

5 AND, HOPEFULLY, THE JURY.

6    THEN WHAT ABOUT THIS DALLAS CONFERENCE ISSUE?  THERE

7 WERE NO CITES, AND I DIDN'T HAVE A CHANCE TO READ THE WHOLE

8 THING -- OR ANY OF IT.

9    **MR. ERGASTOLO:** YOUR HONOR, WE RESOLVED MOST OF

10 THOSE.  I THINK THE REST OF THEM ARE ACTUALLY SET FORTH IN THE

11 SNIPS BELOW, WHERE THERE IS ADDITIONS REQUESTED BY UNITED.

12    **THE COURT:** OKAY.  WELL, FAIR ENOUGH.

13    SO WE HAVE THE NEXT, ITEM NUMBER TWO, IS SECTIONS

14 233, 11 TO 234, 09 OF THE PSUIK DEPOSITION.

15    THE PLAINTIFF WANTS US TO START THE READING SOONER,

16 ESSENTIALLY, AT 231, 18.

17    **MR. SLANIA:** YOUR HONOR, LET ME CLARIFY.  WE HAVE AN

18 OBJECTION THAT THE TESTIMONY SHOULD NOT BE ALLOWED AT ALL

19 BECAUSE IT'S HEARSAY.

20    **THE COURT:** OKAY.

21    **MR. SLANIA:** IF THE OBJECTION IS OVERRULED, THEN WE

22 BELIEVE THAT THE EARLIER TESTIMONY SHOULD BE READ.

23    **THE COURT:** LET ME READ THE FIRST PART FIRST, THEN.

24 233, 11 THROUGH 234, 09.

25 (PAUSE)

1        ALL RIGHT.  I DON'T SEE THAT IT'S HEARSAY.  IT'S NOT

2   OFFERED TO PROVE THE TRUTH OF THE MATTER.  IT'S JUST OFFERED TO

3   BASICALLY ESTABLISH MR. PSUIK'S EXPERIENCE IN TRYING TO -- IN

4   SPEAKING SPANISH WITH THE UNITED MAINTENANCE EMPLOYEES.  SO I

5   WILL OVERRULE THAT OBJECTION.

6        AND THEN, MR. ERGASTOLO, OR WHOMEVER IS TAKING THIS

7   ONE UP, WHAT ABOUT THE REQUEST TO READ FROM 231, 18 TO 232, 22

8   AND 233, 6 TO 10?

9        **MR. ERGASTOLO:**  YOUR HONOR, I DON'T BELIEVE THE

10  ADDITIONAL TESTIMONY IS NECESSARY.  THE ONLY REASON I COULD SEE

11  AN ARGUMENT COMING IN IS IF THERE IS AN ISSUE OF COMPLETENESS.

12  BUT THE TESTIMONY THAT WE HAVE SNIPPED IS COMPLETE IN THAT IT

13  DEALS WITH HIS ACTUAL CONVERSATIONS WITH UNITED EMPLOYEES.

14       THE OTHER DISCUSSION THAT MR. SLANIA OR UNITED IS

15  REFERRING TO DEALS WITH POLICIES OF THE CONVENTION CENTER.  AND

16  SO IT'S NOT REALLY A RULE-OF-COMPLETENESS ISSUE.  I DON'T SEE

17  HOW I'M REQUIRED IN MY CASE, WHEN PUTTING ON MY DEFENSE, TO PUT

18  IN WHAT IS ESSENTIALLY CROSS-EXAMINATION BY MR. SLANIA.

19       **THE COURT:**  THAT WOULD INCLUDE THE PORTION OF 233, 6

20  TO 10.  THAT IS SORT OF THE PRECEDING QUESTION.  OKAY.

21       **MR. ERGASTOLO:**  YES, YOUR HONOR.

22       **THE COURT:**  ALL RIGHT.  I DON'T THINK THAT THE RULE

23  OF COMPLETENESS UNDER 106 DOES REQUIRE IT.  AND SO AS FAR AS

24  THE DEFENDANT'S PRESENTATION OF THIS TESTIMONY, IT CAN BE AS

25  APPARENTLY CHARACTERIZED AT 233, 11 TO 234, 09.  AND IT DOESN'T

1   PRECLUDE, OF COURSE, THE PLAINTIFF FROM USING THE OTHER PORTION

2   IN REBUTTAL OR SOME OTHER POINT.

3              **MR. SLANIA:**  YOUR HONOR, I UNDERSTAND YOUR RULING AS

4   IT RELATES TO THE FIRST SNIPPET, BUT THE 233, 6 TO 10, GOES

5   SPECIFICALLY TO THE QUESTION REGARDING THE FACT THAT HE ADMITS

6   THE CONVENTION CENTER CLEANING PERSONNEL SPOKE SPANISH, WHICH

7   IS THE PREMISE AND THE PREDICATE FOR THE QUESTION AND THE

8   ANSWER THAT MR. ERGASTOLO IS ASKING THE COURT TO HAVE READ FOR

9   THE JURY.

10             **THE COURT:**  LET ME READ THAT AGAIN.

11             AND SO I ASKED YOU:  WAS IT NOTICEABLY DIFFERENT?

12   YOU SAID A GOOD NUMBER.

13             WELL, YEAH.  IT IS SOMEWHAT THE CONTEXT.  ALL RIGHT.

14   I'M GOING TO ALLOW THAT, MR. ERGASTOLO, THE 6 TO 10 THAT

15   PROCEEDS TO 11, THROUGH THE END, AND ON PAGE 234, TO 9.

16             I DON'T SEE THAT IT HARMS YOU.  I THINK IT'S A BETTER

17   WAY TO START THIS PORTION OF THE TESTIMONY.  "AND SO I ASKED

18   YOU" AS A LEAD-IN.  SO LET'S GO WITH THAT.  I DON'T THINK IT'S

19   ROCKET SCIENCE OR IT WILL MAKE A BIG DIFFERENCE, BUT I THINK IT

20   WILL GIVE A GOOD CONTEXT.

21             **MR. ERGASTOLO:**  THAT'S ACCEPTABLE, YOUR HONOR.

22             **THE COURT:**  THEN WE HAVE 107, 14 TO 107, 23.

23   (PAUSE)

24             SO WHY DOES THE PLAINTIFF WANT THIS?

25             **MR. SLANIA:**  THE ANSWER TO THE LAST QUESTION REFERS

1    TO MR. PSUIK'S GOAL OF, QUOTE/UNQUOTE, SECURITY PROCESS.  AND

2    THE FOLLOWING DISCUSSION RELATES TO WHAT THAT SECURITY PROCESS

3    IS.  IT DEFINES WHAT SECURITY PROCESS WAS IN PLACE AT THE TIME

4    AND THAT GOES TO HIS STATE OF MIND.  EXACTLY WHAT HE IS

5    DISCUSSING IS WHAT HE ANALYZED; AND THAT HE WAS AFTER A

6    SECURITY PROCESS.  AND THEN I EXPLAINED WHAT -- OR I ASKED HIM

7    THE QUESTIONS, AND HE GIVES THE ANSWERS, EXPLAINING WHAT THAT

8    SECURITY PROCESS IS.

9          **THE COURT:**  THE WHOLE BUSINESS OF ABOUT WHAT'S MINOR

10   AND SO FORTH HAS NOTHING TO DO WITH SECURITY.  THAT IS WHY I

11   WANTED YOU TO EXPAND.  I GUESS WE GET BACK TO THAT ON 108.

12         **MR. SLANIA:**  WELL, HIS SECURITY PROCESS.  THERE IS

13   EARLIER TESTIMONY AS TO WHAT HIS SECURITY PROCESS IS, WHICH WAS

14   CONTROL OVER THE PEOPLE THAT ARE ON THE FLOOR.  AND THAT'S WHAT

15   WE TALKED ABOUT, IS WHETHER OR NOT PEOPLE ARE ACTUALLY

16   AUTHORIZED TO BE ON THE FLOOR.  AND HE IS SAYING HE WANTED

17   CONTROL OVER THAT.  THAT IS WHAT HE DID WHEN HE WAS ANALYZING

18   WHETHER OR NOT AN EXCLUSIVE POLICY SHOULD BE IMPLEMENTED IN THE

19   FIRST PLACE.

20         AND THAT'S WHAT THIS WHOLE LINE OF QUESTIONING IS

21   ABOUT, BECAUSE HE WASN'T EVEN AROUND WHEN THE DECISION WAS MADE

22   TO IMPLEMENT THIS POLICY, ALTHOUGH HE DID PREPARE THE EXCLUSIVE

23   CLEANING STRATEGY DRAFT.

24         **MR. ERGASTOLO:**  MAY I RESPOND, YOUR HONOR?

25         **THE COURT:**  YES, PLEASE.

APRIL 11, 2011

1          **MR. ERGASTOLO:**  THIS IS ANOTHER ISSUE.  THE ONLY WAY

2     THAT THIS COULD COME IN IS THROUGH A RULE OF COMPLETENESS.

3     THESE ARE SEPARATE QUESTIONS.  THE SUMMARY QUESTION IS THE PART

4     THAT I HAVE SNIPPED.  AND THEN MR. SLANIA WENT ON AND ASKED

5     SOME MORE SPECIFIC QUESTIONS.  BUT THOSE ANSWERS TO THOSE

6     SPECIFIC QUESTIONS AREN'T NEEDED IN ANY WAY, SHAPE OR FORM TO

7     MAKE THE QUESTIONS THAT I CHOSE MORE COMPLETE.

8          SO IN THAT SENSE, AGAIN, THIS IS CROSS-EXAMINATION.

9     AND SHOULD THEY DECIDE TO PUT ON DIFFERENT TESTIMONY, THEY ARE

10    ALLOWED TO DO SO.  BUT ON THE EXAMINATION OF MR. PSUIK, I

11    SHOULDN'T BE HAVING CROSS-EXAMINATION COME IN THROUGH THE

12    DIRECT IN THE MIDDLE OF MY TESTIMONY.

13         **THE COURT:**  I'M GOING TO GO WITH THAT.  I THINK THE

14    ANSWER AS TO THE ANALYSIS IS COMPLETE, IN AND OF ITSELF, AS

15    PROPOSED.  AND SO IT CAN BE PLAYED WITHOUT ADDITION IN THE

16    DEFENSE PRESENTATION.

17         SO NUMBER FOUR, 183, 25.

18         **MR. SLANIA:**  YOUR HONOR, AS WE GET INTO THESE

19    OBJECTIONS, I BELIEVE IT'S THE NEXT -- ONE, TWO, THREE -- THIS

20    RELATES TO THE DALLAS CONFERENCE.  AND THERE ARE NUMEROUS OTHER

21    SNIPPETS THAT ARE NOT ON THIS PAGE, THAT REFER TO WHAT THAT

22    DALLAS CONFERENCE IS.  AND WE ALREADY AGREED TO THEM.  AND OUR

23    OBJECTIONS RELATE TO ADDITIONAL INFORMATION THAT THE WITNESS

24    DISCLOSED REGARDING THAT CONFERENCE.  AND THAT IS WHY WE ADDED

25    THIS ADDITIONAL TESTIMONY INTO THE RULE OF COMPLETENESS, SO

APRIL 11, 2011

1  THAT THE JURY HAS THE COMPLETE PICTURE OF WHAT HAPPENED THERE.

2         **THE COURT:**  OKAY.  SO LET'S TAKE, FOR EXAMPLE, 183,

3  25 TO 184, 4.

4         **MR. SLANIA:**  YOUR HONOR, I GUESS JUST TO PUT IT IN

5  CONTEXT SO YOU ARE AWARE, THERE ARE ONE, TWO, THREE, FOUR,

6  FIVE, SIX SNIPPETS THAT PRECEDE THIS OBJECTION, THAT RELATE TO

7  THE DALLAS CONFERENCE.  SO THIS IS NOT THE BEGINNING OF THE

8  DALLAS CONFERENCE TESTIMONY THAT THE JURY IS GOING TO HEAR.

9         **THE COURT:**  OKAY.  BUT, I MEAN, THE FIRST REFERENCE

10  IS:  DID YOU PARTICIPATE IN WRITING EXHIBIT 172?

11         ANSWER:  173.

12         QUESTION:  172, THE ONE PAGE?

13         ANSWER:  I WROTE IT.

14         SO I ASSUME THAT GOES TO A DOCUMENT THAT WE MAY OR

15  MAY NOT ALREADY HAVE IN EVIDENCE, AND THE PURPOSE IS TO

16  IDENTIFY IT FOR ADMISSION PURPOSES OR SOMETHING?

17         **MR. ERGASTOLO:**  CORRECT.  THAT'S IT.

18         **THE COURT:**  OKAY.  AND IF WE LOOK BEYOND THAT, THE

19  PLAINTIFF WANTS US TO CARRY ON ABOUT THE WAR GAMES.  I GUESS IS

20  THAT WHAT THE EXHIBIT IS ABOUT?

21         **MR. SLANIA:**  YOUR HONOR, WHAT HAPPENED IS -- AND I

22  TOOK MR. PSUIK'S DEPOSITION -- AND I BROUGHT WITH ME THE

23  DOCUMENTS IN THE ORDER IN WHICH THEY HAVE BEEN BATES-LABELED

24  FROM THE CONVENTION CENTER.  AND I PUT THEM IN FRONT OF

25  MR. PSUIK TO HAVE HIM EXPLAIN WHAT THE ACTUAL DOCUMENTS WERE

APRIL 11, 2011

1   FOR THIS TABLETOP WAR GAME, AND HAVE HIM EXPLAIN WHAT WAS GIVEN

2   TO THE PEOPLE, HOW THE GAME WAS PLAYED, AND WHAT THE RESULTS

3   WERE.

4           AND HE HAS GONE THROUGH, IN EARLIER SECTIONS, TO

5   DESCRIBE WHAT THE DOCUMENTS ARE.  AND THOSE SNIPPETS ARE GOING

6   TO BE PLAYED TO THE JURY, THAT ARE BEFORE YOU.  AND THEN I

7   ASKED HIM ABOUT THIS SNIPPET AND THIS -- EXHIBITS 172 AND 173.

8   AND HE GOES ON TO THEN DISCUSS THE FACT THAT OF ALL THE

9   DOCUMENTS THAT WERE PRODUCED BY THE CONVENTION CENTER RELATING

10  TO THIS WAR GAME, THE MOST IMPORTANT DOCUMENT WAS NOT PRODUCED.

11          AND THAT'S IMPORTANT INFORMATION AS IT RELATES TO --

12  AND HE SAYS IT ON PAGE 184, 16:  WHAT YOU'RE MISSING THAT IS

13  CRITICAL IS THE SET CONDITIONS OF THE WAR GAME.

14          **THE COURT:**  THIS TIES INTO SOME OTHER TESTIMONY THAT

15  HAS BEEN AGREED TO.

16          **MR. SLANIA:**  YES.  BECAUSE HE'S DESCRIBING --

17  MR. ERGASTOLO IS PUTTING ON MR. PSUIK'S TESTIMONY OF WHAT

18  TRANSPIRED AT THE WAR GAME.  AND I HAVE ADDED TESTIMONY AS IT

19  RELATES TO WHAT TRANSPIRED AT THE WAR GAME, WHAT THE DOCUMENTS

20  WERE AND ALL THOSE TYPES OF THINGS, SO THAT THE JURY COULD HAVE

21  A COMPLETE PICTURE OF WHAT TRANSPIRED AND THE DOCUMENTS THAT

22  HAVE NOT BEEN PRODUCED.

23          **MR. ERGASTOLO:**  YOUR HONOR, IF I MAY RESPOND, PLEASE?

24          **THE COURT:**  YEAH.

25          **MR. ERGASTOLO:**  AGAIN, THIS IS A COMPLETENESS ISSUE.

APRIL 11, 2011

1    THE ONLY QUESTION HERE IS:  DID YOU PARTICIPATE IN WRITING

2    EXHIBIT 172?

3              ANSWER:  I WROTE IT.

4              THE FACT THAT THERE WERE ADDITIONAL DOCUMENTS THAT

5    EXISTED AT THE TIME OF THE WAR GAME THAT DIDN'T EXIST AT THE

6    TIME OF THE PRODUCTION DOESN'T MEAN THAT WE CAN'T TALK ABOUT

7    EXHIBIT 172.

8              THERE WAS TESTIMONY FROM MR. PSUIK EARLIER, TALKING

9    ABOUT THE SET CONDITIONS OF THE WAR GAME, EVEN THOUGH THERE

10   WASN'T A DOCUMENT THAT GOES WITH THOSE SET CONDITIONS.  SO I

11   THINK IT WOULD ACTUALLY CONFUSE THE JURY TO TALK ABOUT WHAT

12   1 -- THE SECTION THAT HE WANTS TO ADD IN HERE, AND IT'S

13   UNNECESSARY.

14             IF HE WANTS TO DO THAT ON CROSS TO SAY, "WELL, YOU

15   DON'T HAVE ALL THE DOCUMENTS," THAT'S FINE.  BUT I DON'T

16   UNDERSTAND HOW THAT RELATES TO THE SIMPLE FIVE-LINE ADMISSION

17   OF EXHIBIT 172.

18             **THE COURT:**  AND WHY IS THE ABSENCE OF THE CONDITIONS

19   CRITICAL AS IT RELATES TO THIS TESTIMONY?

20             **MR. ERGASTOLO:**  IT ISN'T.  HE DISCUSSED THE

21   CONDITIONS.

22             **THE COURT:**  IN HIS VIEW, WHY ISN'T IT CRITICAL?

23             **MR. ERGASTOLO:**  WHY?

24             **THE COURT:**  YES.

25             **MR. ERGASTOLO:**  WHAT HE IS SAYING IS THESE ARE THE

1  DOCUMENTS.  THERE IS A CRITICAL DOCUMENT THAT IS MISSING.  YOU

2  HAVE PIECES OF THAT, BUT YOU DON'T HAVE THE WHOLE PICTURE.

3          HE GIVES TESTIMONY ABOUT THOSE CONDITIONS IN LIEU OF

4  AND IN ADDITION -- WELL, NOT IN ADDITION TO BECAUSE THE

5  DOCUMENT DOESN'T EXIST ANYMORE.  IT WASN'T PRODUCED BECAUSE IT

6  DOESN'T EXIST.

7          **MR. SLANIA:**  YOUR HONOR, THE REASON WHY IT'S CRITICAL

8  IS BECAUSE MR. ERGASTOLO IS TRYING TO GET IN FRONT OF THE JURY

9  THAT A TABLETOP WAR GAME THAT TOOK PLACE IN DALLAS IN 2005

10  RESULTED IN INFILTRATION THROUGH, IN THIS WAR GAME, SOMETHING

11  CALLED HOUSEKEEPERS, WHICH WAS NEVER DISTINGUISHED OR

12  DIFFERENTIATED BETWEEN CONVENTION CENTER PERSONNEL, OUTSIDE

13  PERSONNEL -- WHAT HAVE YOU.  MR. PSUIK HAS TESTIFIED THAT THE

14  INFILTRATION TOOK PLACE EVERYWHERE.  AND THAT TESTIMONY, TO BE

15  PUT IN CONTEXT, NEEDS TO SHOW WHAT THE SET OF CONDITIONS WERE

16  FOR THE GAME.  SO THIS IS A COMPLETENESS ISSUE.

17          **THE COURT:**  SAME THING YOUR SECURITY EXPERT SAID.

18          **MR. SLANIA:**  CORRECT.

19          **THE COURT:**  THERE WAS INFILTRATION EVERYWHERE.

20          **MR. SLANIA:**  CORRECT.

21          **THE COURT:**  I THINK ALL THE DEFENSE WANTS TO USE IT

22  FOR IS TO ESTABLISH FOUNDATION FOR THE EXHIBIT.  YOU CAN READ

23  THE FOLLOWING SECTIONS AS CROSS-EXAMINATION IMMEDIATELY

24  FOLLOWING -- YOUR PORTION AS TO CROSS-EXAMINATION OF THE

25  WITNESS AFTER THE VIDEO.  IF THIS HAS GOT THAT SIGNIFICANT A

1    MEANING, THEN, FINE.  I DON'T THINK THE DEFENSE HAS TO INHERIT

2    IT WITH WHAT THEY ARE TRYING TO DO OR THE FLOW THEY ARE TRYING

3    TO CREATE.  SO THE 183, 25 TO 184, 4 WE'LL LEAVE AS A

4    STAND-ALONE AND YOU FOLKS CAN LAY OUT YOUR CROSS-EXAMINATION

5    THEREAFTER.

6          NOW, 189, 01 TO 189, 17.  HERE COMES THE HOUSEKEEPER,

7    AS I'M READING.

8    (PAUSE)

9          ALL RIGHT.  HERE I THINK THERE IS MORE OF A NEXUS,

10   BUT, MR. ERGASTOLO, I WILL LET YOU ARGUE ABOUT IT.

11         **MR. ERGASTOLO:**  YOUR HONOR, I DON'T THINK THIS IS A

12   COMPLETION ISSUE.  I THINK, AGAIN, THIS IS CROSS-EXAMINATION.

13   THE WITNESS IS SAYING INFILTRATING HOUSEKEEPING.  DOES THAT

14   MEAN IN-HOUSE OR SUBCONTRACTOR?  THAT REALLY DOESN'T ADD

15   ANYTHING TO WHETHER OR NOT IT'S INFILTRATING HOUSEKEEPING.

16         I DON'T HAVE A PROBLEM WITH THIS COMING IN AS A

17   SEPARATE PRESENTATION ON A CROSS-EXAMINATION, WHICH IS WHAT

18   WOULD HAPPEN IF THIS WITNESS WERE LIVE.

19         **THE COURT:**  WELL, IT'S BASICALLY THE CONTINUOUS

20   SEQUENCE OF THIS LINE OF QUESTIONING BY WHOMEVER IS ASKING AT

21   THIS POINT IN TIME.  AND HE STOPS BY SAYING "HOUSEKEEPING."

22   AND THERE IS CLARIFICATION SOUGHT IN THE QUESTIONING BY SAYING

23   CLEANING SUBCONTRACTOR, IN-HOUSE.  IT WAS GENERAL.  OKAY.

24   DECORATORS, ALSO.  DECORATORS AS CONTRACTORS, AS

25   SUBCONTRACTORS, AS ANY WAY ATTACHED TO DECORATORS, I THINK IT

APRIL 11, 2011

1   SHOWS HOW BROADLY HE IS USING THAT TERM.  AND I THINK THAT

2   WOULD BE AN APPROPRIATE ADDITION.  SO WE'LL ORDER THAT TO BE

3   INCLUDED.

4            **MR. ERGASTOLO:**  HOW FAR DOWN, YOUR HONOR?

5            **THE COURT:**  DOWN TO 190, 11 IS WHAT WAS ASKED FOR.  I

6   THINK PROBABLY JUST DOWN TO THE END OF THE PAGE.

7            **MR. ERGASTOLO:**  CORRECT.

8            **THE COURT:**  YES.  NOW THAT I'M READING IT.  LET'S GO

9   THROUGH TO THE END OF THE PAGE ON 189.  189, 25, THEN.

10           ALL RIGHT.  AND THEN 191 WE PICK UP FOUR PAGES OR SO

11   OF DIALOGUE.  LET ME START THROUGH THIS.

12   (PAUSE)

13           OKAY.  MR. ERGASTOLO, YOUR PROBLEMS WITH THE

14   SUGGESTED ADDITION TO THE 191, 15 THROUGH 195, 06 SECTION WOULD

15   BE WHAT?  BASICALLY, THEY WANT TO CONTINUE ON THROUGH 196, 13,

16   THE SPECIFIC QUESTIONS ABOUT WHETHER OR NOT THERE WAS A PRIME

17   METHODOLOGY TO INFILTRATE THROUGH CONVENTION CENTER EMPLOYEES

18   OR CLEANING SUBCONTRACTORS AND SO FORTH.

19           **MR. ERGASTOLO:**  YOUR HONOR, AGAIN, I DON'T THINK

20   THESE ARE COMPLETENESS ISSUES.  THESE ARE CROSS-EXAMINATION

21   ISSUES.  THE DISCUSSION ENDED WITH -- THE INTENT WAS WE MAY NOT

22   BE ABLE TO WIN THEM ALL, BUT LET'S REDUCE OUR VULNERABILITIES.

23   AND THEN IT ENDS.  AND HE STARTS UP WITH A LINE OF QUESTIONING

24   DEALING WITH THE BEST WAY TO INFILTRATE A TRADE SHOW IS THROUGH

25   THE DECORATORS.  SO I THINK IT'S NOT INTENDED TO COMPLETE THE

 1   PRIOR TESTIMONY.  IT'S ANOTHER SUBJECT.

 2            **THE COURT:**  IT'S ALMOST A SUBSET OR A FURTHER

 3   DRILLING DOWN.  OKAY.

 4            MR. SLANIA, I TEND TO AGREE.  I THINK YOU CAN ASK

 5   THIS OR HAVE THIS READ OR PRODUCED AS PART OF YOUR

 6   CROSS-EXAMINATION OF THIS GENTLEMAN.

 7            THE ANSWER SEEMS TO END AND THEN WE START IN A

 8   DIFFERENT VEIN.  I KNOW IT SAYS "LET ME ASK MY QUESTION THIS

 9   WAY," BUT HE ACTUALLY ANSWERS THE QUESTION, AND NOW WE'RE JUST

10   GOING INTO SOME MORE DEPTH OF THE STUDY.

11            SO MY INCLINATION IS TO SAY WE LET THE DEFENSE READ

12   THROUGH LINE 6 ON 195, AND YOU CAN FOLLOW UP WITH THE REST OF

13   THAT PAGE AND PART OF THE NEXT AS FAR AS A CROSS-EXAMINATION

14   POINT.

15            **MR. SLANIA:**  YOUR HONOR, THE REASON I PUT IT -- I

16   TYPED THIS E-MAIL TO MR. ERGASTOLO IN ORDER, WITH THE SNIPPETS,

17   AS HE HAS DONE.  THAT TESTIMONY ALSO PROVIDES A COMPLETE

18   LEAD-IN TO THE NEXT SNIPPET THAT MR. ERGASTOLO HAS ASKED TO BE

19   PLAYED TO THE JURY, STARTING ON PAGE 196, LINE 14.  SO I

20   BELIEVE IT DOES LEND ITSELF TO THE COMPLETENESS ANALYSIS.

21            **THE COURT:**  THE TAIL OF ONE AND THE HEAD OF ANOTHER,

22   I GUESS.  OKAY.  LET ME KEEP READING.

23   (PAUSE)

24            **THE COURT:**  OKAY.  MR. ERGASTOLO, WHAT ABOUT THAT?

25   WE SORT OF PICKED UP 196, LINE 14, GETTING INTO THE

APRIL 11, 2011

1   DISTINCTIONS DRAWN.  AND THEN, OF COURSE, HE INVOKES 9/11,

2   WHICH IS ARGUED TO BE PREJUDICIAL.

3            **MR. ERGASTOLO:**  LET'S FIRST TALK ABOUT THE PIECE IN

4   BETWEEN WHAT I HAVE MARKED AS NUMBER 6 AND NUMBER 7.  THAT IS

5   STARTING AT 195, 7 THROUGH 196, 13.  I WILL WITHDRAW MY

6   OBJECTION ON THAT.  WE CAN ADD THAT.  IT DOES KIND OF FLOW ALL

7   TOGETHER.

8            **THE COURT:**  IT'S THE BRIDGE IN YOUR FLOW.  SO YOU ARE

9   GOOD ON THAT, MR. SLANIA.

10           AND THEN WE HAVE GOT THE PIECE OF 196, LINE 22, WHERE

11  HE STARTS IN AN ANSWER WITH "AND, YOU KNOW, THE BAD GUYS TRIED

12  TO BLOW UP THE BASEMENT FIRST."

13           AND THAT, OF COURSE, TURNS OUT TO BE 9/11, WHETHER OR

14  NOT HE IS ACCURATE IN HIS ASSESSMENT OR NOT, SINCE THOSE WERE

15  SOME YEARS APART.

16           WHY WOULD THAT BE NECESSARY IN THE CONTEXT OF THIS

17  TESTIMONY?  HOW DOES THE RELEVANCE OF THAT OVERCOME A POTENTIAL

18  PREJUDICE?

19           **MR. ERGASTOLO:**  YOUR HONOR, IN OUR OPINION -- IT'S

20  NOT AN OPINION, IT'S A FACT OF THIS CASE -- THE ISSUE HERE IS

21  TERRORISM.  IT'S BEEN TERRORISM.  THERE HAS BEEN A TON OF

22  TESTIMONY FROM OUR SIDE ALREADY THAT THE WAY THE CONVENTION

23  CENTER APPROACHED SECURITY AT THE CONVENTION CENTER SINCE 9/11

24  WAS SIGNIFICANTLY DIFFERENT THAN BEFORE 9/11.  SO THE JURY IS

25  NOT GOING TO BE -- I DON'T THINK THE RESPONSE TO THIS IS GOING

APRIL 11, 2011

1   TO BE AS HARSH AS UNITED THINKS IT IS.  WE HAVE BEEN HEARING

2   THIS; WE HAVE BEEN TALKING ABOUT TERRORISM.

3         **THE COURT:**  IT HAS BEEN TOSSED AROUND A LOT.  I AGREE

4   WITH YOU.  I HEAR YOU.  WE HAVE HEARD ABOUT 9/11.

5         **MR. ERGASTOLO:**  THIS IS SOMETHING THAT OUR SECURITY

6   PERSON HAD IN HIS MIND WHEN HE WAS THINKING ABOUT THE CLEANING

7   DEPARTMENT.  WE CAN'T IGNORE THE FACT THAT 9/11 HAPPENED AND

8   THAT IT WAS A CONSIDERATION FOR MR. PSUIK AFTER THE AVSS

9   CONFERENCE TO SAY "LOOK, THESE GUYS TRIED IT MORE THAN ONCE; WE

10   NEED TO DO WHAT WE CAN; HERE'S SOMETHING I LEARNED; LET'S USE

11   WHAT I LEARNED TO HELP SECURE THIS FACILITY."

12         **THE COURT:**  HE SAYS IF THEY DON'T GET YOU THE FIRST

13   WAY, THEY TRY SOMETHING ELSE.  AND HE IS USING THAT AS AN

14   EXAMPLE.

15         **MR. ERGASTOLO:**  SO I UNDERSTAND THE SENSITIVITY HERE,

16   BUT THAT IS WHAT THIS CASE IS ABOUT:  THE RISK OF TERRORISM AT

17   THE CONVENTION CENTER.

18         **THE COURT:**  WE HAVEN'T KEPT OUT ALL REFERENCES,

19   EITHER.

20         BUT, MR. SLANIA, WHAT ELSE WOULD YOU LIKE TO ADD?

21         **MR. SLANIA:**  I HAVE NOTHING TO ADD, YOUR HONOR, OTHER

22   THAN I DON'T BELIEVE THAT WHAT MR. PSUIK WAS TESTIFYING TO --

23   AND I WAS THERE AND I ASKED HIM THE QUESTION -- THAT HE WAS

24   DRAWING A CONNECTION BETWEEN WHAT HAPPENED ON 9/11 AND THE

25   PEOPLE WHO WORKED AT THE SAN DIEGO CONVENTION CENTER.  BUT IF

APRIL 11, 2011

1    THIS TESTIMONY IS ALLOWED IN, THE JURORS COULD POTENTIALLY

2    INFER THAT THAT IS THE CONNECTION HE IS MAKING.  AND THAT'S THE

3    CONCERN I HAVE.  BECAUSE HE IS TALKING ABOUT DISTINCTIONS AND

4    METHODS AND WAYS YOU COULD INFILTRATE.  AND HE STARTS TALKING

5    ABOUT THIS.

6         AND I JUST THINK THAT THERE IS A RISK OF PREJUDICE

7    HERE, THAT THE JURORS COULD INFER THAT THAT IS WHAT MR. PSUIK

8    WAS TALKING ABOUT.  NOW, I LOOKED ON HIS FACE AND IT DIDN'T

9    APPEAR THAT WAY, BUT THAT IS WHAT THE JURY COULD SEE IF THEY

10   WATCH HIS VIDEO.  AND THAT IS THE CONCERN I HAVE.

11        I RECOGNIZE THAT SEPTEMBER 11, 2001 HAS BEEN

12   MENTIONED IN THIS CASE.  THERE IS NO DENYING THAT.  THERE IS NO

13   DISPUTE ABOUT THAT.  I JUST WANTED TO BRING THAT UP BECAUSE I

14   BELIEVE THAT IT'S A LEGITIMATE CONCERN.

15        **THE COURT:**  I DON'T THINK THE PREJUDICE IS

16   SIGNIFICANT, IF ANY.  THIS IS A WITNESS DESCRIBING WHY PICKING

17   OUT A PARTICULAR METHOD OR VULNERABILITY ISN'T WHERE YOU STOP.

18   YOU HAVE TO LOOK AT THE WHOLE PICTURE BECAUSE THEY DON'T GET

19   YOU THE FIRST TIME; THEY GET YOU THE SECOND.

20        I WILL ALLOW IT, FINDING THE BALANCE IN FAVOR OF

21   CLARIFICATION OF THE MINDSET OF THE WITNESS OVER ANY PREJUDICE.

22        AND THAT TAKES US TO 208.

23        **MR. SLANIA:**  ACTUALLY, YOUR HONOR --

24        **THE COURT:**  DID I MISS SOMETHING?

25        **MR. SLANIA:**  YES.  AT THE END OF THAT SNIPPET, I HAVE

APRIL 11, 2011

1   SAID THE REST IS OKAY UP THROUGH 197, 21, BUT TESTIMONY SHOULD

2   BE ADDED THROUGH 199, 14.

3           AND THIS GETS TO THE MOTION IN LIMINE ISSUE, YOUR

4   HONOR.  MR. ERGASTOLO JUST SAID THAT ONE OF THE REASONS WHY

5   THIS TESTIMONY IS RELEVANT IS BECAUSE IT GOES TO MR. PSUIK'S

6   STATE OF MIND AND WHAT HE WAS THINKING.  WELL, WHEN HE WAS

7   DEPOSED, HE WAS THINKING ABOUT HIS VISIT TO THE CONVENTION

8   CENTER THE DAY BEFORE.  AND HE MENTIONS IN THE SNIP THAT

9   MR. ERGASTOLO HAS ASKED TO BE READ TO THE JURY, ON LINE 21,

10  "THERE IS PHENOMENALLY EASY ACCESS TO THIS FACILITY."  AND I

11  FOLLOW UP ON THAT EXACT PHRASE, BEGINNING ON LINE 25.

12          **THE COURT:**  ON WHAT PAGE ARE YOU NOW?

13          **MR. SLANIA:**  197.  THE END OF PROFFERED TESTIMONY

14  ENDS AT 21, TALKING ABOUT THERE IS PHENOMENALLY EASY ACCESS TO

15  THIS FACILITY.

16          AND I FOLLOW UP, BEGINNING ON LINE 25, WITH THE

17  PHENOMENALLY EASY ACCESS QUESTION, WHICH GOES STRAIGHT TO HIS

18  VISIT TO THE CONVENTION CENTER THE DAY BEFORE HIS DEPOSITION.

19          **MR. ERGASTOLO:**  MAY I RESPOND, YOUR HONOR?

20          **THE COURT:**  THE ADDITION IS OKAY?  OH, YOU WANT TO

21  RESPOND.  I THOUGHT YOU SAID YOU THOUGHT IT WAS FINE.  I SHOULD

22  HAVE LOOKED UP AS OPPOSED TO RELYING ON MY HEARING.  GO AHEAD.

23          **MR. ERGASTOLO:**  YOUR HONOR, THE SNIPPET THAT

24  MR. SLANIA IS TALKING ABOUT WAS THE DIRECT SUBJECT OF A MOTION

25  IN LIMINE.  THE ISSUE IS -- THE DIFFERENCE IS CRITICAL IN WHAT

APRIL 11, 2011

1    MR. PSUIK WAS THINKING.  THE TESTIMONY THAT YOUR HONOR HAS LET

2    IN DEALT WITH WHAT HE WAS THINKING WHEN HE WAS MAKING

3    RECOMMENDATIONS TO MS. WALLACE PRIOR TO JULY 2007.  THE

4    TESTIMONY THAT MR. SLANIA IS REFERENCING HAPPENED IN 2009 AND

5    HAS NOTHING TO DO WITH THIS CASE.  SO HIS STATE OF MIND IN 2009

6    IS NOT RELEVANT.  AND THAT IS WHY THAT MOTION IN LIMINE WAS

7    GRANTED.  AND NOTHING HAS CHANGED HERE.

8           **THE COURT:**  IT'S ESSENTIALLY HIM SAYING THAT THERE

9    HAS BEEN NO IMPROVEMENT IN SECURITY.

10          YES.  I THINK THAT IS MORE CROSS-EXAMINATION --

11          **MR. ERGASTOLO:**  WELL, YOUR HONOR --

12          **THE COURT:**  -- IN THE FIRST PLACE.

13          **MR. ERGASTOLO:**  -- MAY I?  IT IS SUBJECT TO A MOTION

14   IN LIMINE THAT WAS GRANTED ON THESE EXACT WORDS.

15          **THE COURT:**  WHICH ONE?

16          **MR. ERGASTOLO:**  MOTION IN LIMINE --

17          **THE COURT:**  I DON'T REMEMBER.  ON PSUIK?

18          **MR. ERGASTOLO:**  YES, SIR.

19          **MR. SLANIA:**  YOUR HONOR, I THINK IT WAS NUMBER 10.

20          **THE COURT:**  I HAVE DEFENDANT'S 4.

21          **MR. ERGASTOLO:**  NO.  IT'S -- I WISH I HAD THESE

22   MEMORIZED.

23          **THE COURT:**  YOU AND ME BOTH.  10 WAS A FAVORABLE

24   TREATMENT.  IT'S 4, IS IT NOT?

25          **MR. ERGASTOLO:**  NUMBER 4, WHICH WAS GRANTED.

APRIL 11, 2011

1    **THE COURT:** I WOULD HAVE TO GO BACK AND LOOK. MY

2  CHEAT SHEET DOESN'T SUPPLY ENOUGH FOR ME TO REMEMBER NOW.

3    **MR. ERGASTOLO:** IF I MAY, YOUR HONOR, I HAVE THE

4  TRANSCRIPT OF THE HEARING.

5    **THE COURT:** WHAT DO WE SAY?

6    **MR. ERGASTOLO:** THE COURT: OKAY. I'M GOING TO GRANT

7  4. I THINK IT'S SPECULATIVE AND LACKS TRUE VALUE. IT'S A

8  WASTE OF TIME. THERE IS A LOT UNEXPLAINED ABOUT THIS

9  FOUNDATION. YOU CERTAINLY CAN'T GIVE OPINIONS. THE FACT YOU

10 WALKED BY SECURITY ON THIS ONE OCCASION IS OF VERY LIMITED

11 EVIDENTIARY VALUE, SO THAT'S GRANTED.

12    OKAY. GO AHEAD, MR. SLANIA. IN LIGHT OF THE RECORD,

13 TELL ME HOW THAT --

14    **MR. SLANIA:** THAT WAS WHAT WE RULED. I KNOW THERE

15 HAS BEEN A LOT OF EVIDENCE THAT HAS GONE FORWARD TODAY. I DID

16 BRING THIS UP WITH YOUR HONOR AT THE BEGINNING OF THE DAY, THAT

17 THIS IS AN OBJECTION THAT I RAISED AND THE ADDITIONAL TESTIMONY

18 THAT I'VE ASKED FOR, WHICH WAS ADDRESSED DURING THE MOTION IN

19 LIMINE. BECAUSE THEY ARE OPENING THE DOOR INTO THIS EVIDENCE

20 BY DISCUSSING THE ACCESS TO THE FACILITY, WHICH IS THE EXACT

21 TESTIMONY THAT THEY ARE ASKING THIS WITNESS TO TESTIFY ABOUT IN

22 FRONT OF THE JURY. AND THEY ARE GETTING STRAIGHT INTO IT BY

23 TALKING ABOUT THE PHENOMENALLY EASY ACCESS TO THE FACILITY,

24 WHICH IS THE LAST WORDS THAT HE IS GOING TO BE TESTIFYING TO IN

25 THIS SNIPPET.

1        **THE COURT:**  BUT THE WHOLE DISCUSSION ABOUT THIS

2   CONFERENCE DATES FROM 2005, PRIOR TO THE IMPLEMENTATION OF

3   POLICY.  PRIOR TO EVEN THE DECISION, IT SEEMS TO ME, TO INVOKE

4   THE POLICY FOR THE ALLEGED REASONS.  WITH THE TESTIMONY BEING

5   CONSISTENT WITH WHAT THE POINTS OF ENTRY WERE, OR ITS

6   SUSCEPTIBILITY AND SO FORTH AS OF 2005, '06, '07.  THAT'S

7   DISTINCT AND DIFFERENT.  I DON'T KNOW.  I SHOULDN'T ARGUE THE

8   DEFENDANT'S POINT, BUT MR. ERGASTOLO, YOU ARGUE.

9        **MR. ERGASTOLO:**  THAT IS THE POINT, YOUR HONOR.  AND I

10  DON'T THINK YOU'RE ARGUING; YOU'RE REPEATING WHAT I ALREADY

11  SAID, WHICH IS THERE IS A CRITICAL DIFFERENCE IN THE PARTS THAT

12  WE WANT TO LET IN, WHICH IS HIS THOUGHT PROCESS IN MAKING A

13  RECOMMENDATION TO CAROL WALLACE PRIOR TO 2007.  AND THEN THIS

14  ISOLATED INCIDENT AFTER HE HAD NOT BEEN IN THE CONVENTION

15  CENTER FOR TWO YEARS.  IT'S NOT RELEVANT TO ANYTHING.

16        **THE COURT:**  I THINK THAT IS RIGHT.  WE'LL STRIKE THAT

17  PORTION AND NOT REQUIRE THE DEFENSE TO ARGUE THAT PORTION, NOR

18  ALLOW THE PLAINTIFF TO REPEAT IT.  IT'S IN DIRECT CONTROVERSION

19  TO THE MOTION IN LIMINE ORDER.

20        **MR. SLANIA:**  YOUR HONOR, I UNDERSTAND YOUR RULING.  I

21  JUST, FOR THE RECORD, WANTED TO MAKE CLEAR.  THEY ARE TALKING

22  ABOUT THIS WITNESS AND WHAT HE WAS DOING AT THE TIME THAT HE

23  WAS WORKING FOR THE CONVENTION CENTER, AND WHY HE WAS MAKING

24  DECISIONS ABOUT WHAT WAS BEING DONE.  AND HE WAS TRYING TO

25  INCREASE SECURITY BECAUSE THERE WAS, QUOTE/UNQUOTE,

1   PHENOMENALLY EASY ACCESS TO THE BUILDING.

2          THE INFORMATION THAT I'M ASKING HIM ABOUT OR ASKED TO

3   BE PUT IN FRONT OF THE JURY IS WHAT IS THE ACCESS TO THE

4   FACILITY, BASED ON HIS KNOWLEDGE, AND WHETHER OR NOT IT'S

5   GOTTEN ANY BETTER.  AND HE SAYS IT GOT WORSE.

6          NOW, THAT GOES DIRECTLY TO THE SECURITY

7   JUSTIFICATIONS THAT THE CONVENTION CENTER IS PUTTING ON AS A

8   DEFENSE IN THIS CASE.  THEY ARE TRYING TO PUT FORTH A LOT OF

9   EVIDENCE AND TESTIMONY THAT SECURITY IMPROVED.  AND WHAT

10  MR. PSUIK TESTIFIED TO IS THAT'S NOT HIS IMPRESSION, BASED ON

11  HIS RETURN TO THE BUILDING.

12          **THE COURT:**  IN HIS LIMITED EXPOSURE THAT DAY, KNOWING

13  THE BUILDING, ETC. ET AL, I DON'T THINK THAT IT CHANGES THE

14  BASIS UPON WHICH THE MOTION IN LIMINE WAS GRANTED WITH REGARD

15  TO SPECULATION AND HIS, ESSENTIALLY, GIVING AN EXPERT OPINION

16  OR LAY WITNESS OPINION ON INSUFFICIENT FACTS.

17          SO I APPRECIATE THE POINT, BUT THAT TESTIMONY IS NOT

18  COMING IN.

19          AND THAT WOULD LEAD US TO 208, 03.  AND LET ME FIND

20  THAT.

21  (PAUSE)

22          ALL RIGHT.  THERE IS NO PROBLEM WITH THE TESTIMONY,

23  JUST A REQUEST TO ADD LINES 18 TO 25 ON PAGE 209, WHICH IS THE

24  QUESTION:  DID THE CONTRACTORS GO THROUGH THAT SECURITY

25  TRAINING THAT YOU TALKED ABOUT?

APRIL 11, 2011

1    ANSWER:  THEY DID NOT GO THROUGH THE FORMAL TRAINING.

2    AND HE GOES ON TO EXPLAIN.  AND WE, OF COURSE,

3  ALREADY HEARD TESTIMONY -- OR THERE HAS BEEN QUESTIONS AND

4  ANSWERS ABOUT THIS ON AT LEAST SEVERAL OCCASIONS.

5    SO, MR. ERGASTOLO, AS THE CONTINUED FLOW OF THIS

6  DISCUSSION ABOUT THE IMPLEMENTATION OF THE TRAINING PROCEDURES,

7  ALTHOUGH IT'S NOT NECESSARILY CALLED FOR BY THE QUESTION --

8  MOST OF HIS ANSWER ISN'T -- WHAT'S THE PROBLEM HERE WITH ADDING

9  THAT?

10    **MR. ERGASTOLO:**  YOU HONOR, I THINK THIS IS

11  CROSS-EXAMINATION.  THIS IS NOT COMPLETENESS.  I THINK THE

12  ANSWER IS QUESTIONED APPROPRIATELY AND THEN THERE IS A

13  QUESTION -- MAYBE A FOLLOW-UP QUESTION REGARDING CONTRACTORS

14  GOING THROUGH TRAINING.  THE PRIOR PARAGRAPH WAS TALKING ABOUT

15  WANTING TO HAVE THEIR HOUSEKEEPERS ON THE FLOOR BECAUSE OF THE

16  FIRST CONTACT WANTING TO KNOW WHAT TO DO SPECIFICALLY TO GET

17  THOSE FOLKS OUT OF THE BUILDING.

18    SO THERE IS A FOLLOW-UP QUESTION.  BUT DO YOU NEED

19  THAT FOLLOW-UP QUESTION AND ANSWER TO COMPLETE THE PART THAT

20  I'VE SELECTED?  AND THE ANSWER TO THAT IS NO.  THIS IS

21  CROSS-EXAMINATION.

22    **THE COURT:**  SO WHY WOULD THAT MAKE THE ANSWER ANY

23  MORE COMPLETE, MR. SLANIA?

24    **MR. SLANIA:**  HE DISCUSSES THE FOLKS ON THE FLOOR.  HE

25  DISCUSSES THE SECURITY TRAINING PROGRAMS.  THE DECORATORS ARE

1    FOLKS ON THE FLOOR.  AND IT COMPLETES HIS TESTIMONY REGARDING

2    WHETHER OR NOT, IN FACT, ALL THE PEOPLE ON THE FLOOR HAD GONE

3    THROUGH THIS SECURITY AND SAFETY TRAINING PROGRAM THAT HE

4    TALKED ABOUT AT LENGTH IN THE ANSWER.

5         **THE COURT:**  I THINK IT'S CROSS-EXAMINATION.  I'M NOT

6    GOING TO REQUIRE THE DEFENSE TO ADD IT.  YOU CAN PRESENT IT.

7    IT'S A STAND-ALONE QUESTION AND ANSWER.  RELATED, BUT

8    DIFFERENT.

9         OKAY.  SO THAT IS PSUIK'S DEPOSITION.  HOPEFULLY,

10   THAT WILL ASSIST IN HAVING THAT GEARED FOR PRESENTATION.

11        **MR. SLANIA:**  YOUR HONOR, BRIEFLY, WHEN YOU ARE

12   TALKING ABOUT PRESENTING THE CROSS-EXAMINATION, ARE YOU

13   ENVISIONING THAT WE WOULD PUT THAT CROSS-EXAMINATION ON AFTER

14   THE VIDEO PLAYS OF MR. PSUIK'S TESTIMONY, OR ARE YOU

15   ENVISIONING THAT WE WILL DO THAT IN OUR REBUTTAL CASE?

16        **THE COURT:**  I WAS THINKING YOU PUT IT ON AFTER,

17   UNLESS YOU FOLKS HAVE SOME OTHER THOUGHT.  BUT THIS IS BEING

18   PRESENTED ESSENTIALLY AS DIRECT, AND I FIGURED YOUR CROSS WOULD

19   FOLLOW AND WE'D BE DONE WITH THAT.  SO THAT WOULD BE MY INTENT.

20        LET'S GO TO THE PITTS' DEPO.

21        **MR. ERGASTOLO:**  YOUR HONOR, I HAVE A QUESTION, IF I

22   MAY INTERRUPT.

23        **THE COURT:**  SURE, YOU CAN.

24        **MR. ERGASTOLO:**  IS THE AGENDA TO GO OVER THE THREE

25   SNIPS THIS EVENING OR ARE WE GOING TO GO FURTHER?

APRIL 11, 2011

1              **THE COURT:** I'M SORRY?

2              **MR. ERGASTOLO:** IS THE AGENDA LIMITED TO THE THREE

3    EXAMINATION OUTLINES?

4              **THE COURT:** THAT IS WHERE I WAS GOING TO START.  YOU

5    KNOW, I WAS GOING TO ASK ABOUT THE LGAA AGAIN.  WE CAN TALK

6    ABOUT THAT NOW, IF YOU WANT.

7              I MEAN, THE QUESTION I HAVE ON THE LGAA IS THIS:  THE

8    PROCEDURAL POSTURE OF WHAT IT IS YOU FOLKS WANT.

9              THIS CAME UP BECAUSE OF A MOTION IN LIMINE,

10   ESSENTIALLY, BY MR. SLANIA AND MR. LANCE, SAYING "WE'VE JUST

11   LEARNED" -- I KNOW THERE IS A DISPUTE ABOUT THIS -- "WE JUST

12   LEARNED MS. WALLACE IS GOING TO TESTIFY ABOUT THE TAXPAYERS'

13   LIABILITY FOR ANY ANTITRUST VERDICT ON THE DEFENDANT'S MAKING

14   ITS MATRIX FOR THE LGAA COMMUNITY."

15             AND WE GOT INTO A DISCUSSION ABOUT DISCLOSURE, NOT

16   DISCLOSURE, APPROPRIATE AND SO FORTH.  AND I SORT OF LOOKED

17   THROUGH AND DOWN THE ROAD AND HAD QUESTIONS ABOUT THE

18   COMPETENCY OF THE TESTIMONY OF THE WITNESS TO GIVE THE LEGAL,

19   CONTRACTUAL AND SO FORTH EVIDENCE, AND AVOID ISSUES OF

20   SPECULATION AND WHATNOT.

21             AND THAT EVOLVED INTO YOUR FOLKS' TRIAL BRIEF, WHICH

22   SAID, ESSENTIALLY, "IT DOESN'T MATTER BECAUSE THE LGAA DOESN'T

23   REQUIRE THIS FINANCIAL PRONG FOR THE DEFENSE."

24             AND I KNOW I'M PARAPHRASING AND NOT DOING IT AS

25   ARTICULABLE AS YOU FOLKS WOULD.  "AND, AS A RESULT, SINCE WE

1   BELIEVE THAT TO BE TRUE, WE ARE NOT GOING TO ASK MS. WALLACE

2   THOSE QUESTIONS," WHICH MOOTS THE MOTION IN LIMINE, TO EXCLUDE

3   MS. WALLACE BECAUSE SHE IS NOT GOING TO TESTIFY ABOUT THAT,

4   ANYWAY.  AND IT MOOTS THE ISSUE OF WAS SHE PROPERLY DISCLOSED

5   OR NOT.  I DON'T THINK WE NEED TO GET TO ANY OF THAT.

6            EVERYBODY AGREE SO FAR?

7            **MR. SLANIA:**  YES, YOUR HONOR.

8            **MR. ERGASTOLO:**  YES.

9            **THE COURT:**  SO NOW THE QUESTION IS WE HAVE GOT

10  INFORMATION IN THE RECORD THAT SAYS IN EFFECT THAT JUDGE

11  BENITEZ WAS WRONG IN TERMS OF HIS CHARACTERIZATION WITHOUT

12  CITATION, EXCEPT TO THE STATUTE WHICH DOESN'T COVER THE POINT

13  THAT HE WAS TRYING TO MAKE ON WHAT THE THREE ELEMENTS ARE TO

14  THIS DEFENSE.

15           BUT THERE IS NO OPERATIVE -- I GUESS, THERE IS NO

16  REAL PENDING MOTION OR REQUEST FOR RELIEF ON THAT POINT.  SO

17  THE QUESTION IS WHAT DO YOU FOLKS WANT?  AND I DON'T MEAN THAT

18  IN THE SARCASTIC WAY IT SOUNDS.

19           IS IT YOUR INTENTION TO ESSENTIALLY SEEK THROUGH

20  RULINGS ON JURY INSTRUCTIONS, OR ARE YOU ESSENTIALLY GOING TO

21  TRY AND MAKE A LAST-MINUTE MOTION FOR SUMMARY JUDGMENT?  OR ARE

22  WE ANTICIPATING THIS GOING TO THE JURY AND LOOKING AT IT IN

23  TERMS OF A JUDGMENT, NOTWITHSTANDING THE VERDICT AS A MATTER OF

24  LAW IF THE JURY FINDS ANTITRUST VIOLATION?

25           I DON'T KNOW WHERE YOU GUYS ARE COMING FROM,

1   PROCEDURALLY.  I KNOW WHERE YOU ARE COMING FROM LEGALLY.  BUT

2   PROCEDURALLY, WHERE ARE WE?  AND MAYBE WE SHOULD BE DEBATING

3   THIS AT LENGTH AND MAYBE NOT.  SO HELP ME.

4          **MR. ERGASTOLO:**  WE ARE TRYING, YOUR HONOR.  AND YOU

5   HONOR, I VERY MUCH APPRECIATE YOUR GUIDANCE ON THURSDAY -- LAST

6   THURSDAY, ON WHAT TO DO.  WE WENT BACK.  WE WENT BACK TO SQUARE

7   ONE AND LOOKED AT THIS AND REALIZED THAT THE REASON WE WERE

8   GETTING TRIPPED UP IN THE FACTS IS BECAUSE THE LAW WAS WRONG.

9          AND WE PRESENTED THE COURT A BRIEF THAT WE BELIEVE

10  STRAIGHTENS OUT THE LAW.  SO WHERE WE ARE LEFT, IN OUR OPINION,

11  IS WE PRESENTED AN ALTERNATIVE JURY INSTRUCTION.  WE BELIEVE WE

12  ALREADY MET THE REQUIREMENTS OF LGAA.  WE DON'T BELIEVE

13  ANYTHING YOU ARE GOING TO DO IS INCONSISTENT WITH ANYTHING

14  JUDGE BENITEZ DID.

15         THERE ARE THREE SECTIONS TO LGAA:  34, 35, 36.  HIS

16  DECISION, SUCH AS IT IS, WAS UNDER SECTION 34.  WE HAVE ISSUES

17  UNDER SESSION 36 AND UNDER THE ALTERNATE SESSION UNDER 34.

18         I DON'T THINK THERE IS ANY PROHIBITION IN US PUTTING

19  ON EVIDENCE AT THIS POINT, WHICH -- WE'VE ALREADY PUT ON SOME

20  TODAY, REGARDING THE RELATIONSHIP BETWEEN THE CITY AND THE

21  CONVENTION CENTER CORPORATION.  AND IN MY OPINION, I BELIEVE AS

22  A MATTER OF LAW, WE ARE ENTITLED TO LGAA PROTECTION, BASED ON

23  THE EVIDENCE AS ALREADY BEEN ENTERED IN THIS CASE.

24         WE CITED CASES IN OUR TRIAL BRIEF ON THIS ISSUE.  WE

25  SUBMITTED A JURY INSTRUCTION.  WE CAN ARGUE ABOUT THE JURY

APRIL 11, 2011

1    INSTRUCTION IF YOUR HONOR AGREES THAT IT'S A JURY ISSUE.  IT

2    MAY BE AN ISSUE THAT YOU GET TO DECIDE AFTER THE FACT.  THOSE

3    ARE ALL THINGS WE CAN CONSIDER IN TERMS OF HOW TO PRESENT THE

4    CASE.  BUT THE INITIAL ISSUE OF IS MS. WALLACE GOING TO GET UP

5    ON THE STAND AND TALK ABOUT TAXPAYER LIABILITY, THAT IS NOT

6    GOING TO HAPPEN.  I'M ALREADY PAST THAT PART IN THE OUTLINE,

7    ANYWAY.

8            **THE COURT:**  AND I JUST WANTED TO PUT A SPOT IN THE

9    RECORD WHERE WE CLARIFIED HOW WE STARTED -- HOW THOSE INITIAL

10   ISSUES ARE REALLY NOW MOOTED BY THE CHANGE OF THE POSITION OF

11   THE DEFENSE NOT TO HAVE HER TESTIFY IN REGARD TO THE PROFFER.

12   AND THEN, LIKE YOU SAY, THE NEXT STEP IS NOW WHAT?

13           AND I DON'T MEAN ANY OF WHAT I'M SAYING -- HOW I'M

14   CHARACTERIZING IT, TO BE CRITICIZING JUDGE BENITEZ.  I

15   RECOGNIZE WHAT HE SAID WAS THERE ARE THREE PRONGS AND THERE IS

16   NO EVIDENCE OF PRONG THREE SO I'M NOT GOING TO GRANT SUMMARY

17   JUDGMENT ON THE IMMUNITY.

18           IT'S WITHOUT CITATION EXCEPT TO THE FIRST SECTION OF

19   THE STATUTE, WHICH DOESN'T COVER THESE ELEMENTS, ANYWAY.  TO

20   SOME DEGREE, IT'S A CONTESTED ISSUE NATIONALLY.  AND I'M SLOWLY

21   LEARNING THE VARIOUS VIEWS AND SO FORTH.  AND I KNOW THE

22   PLAINTIFFS WOULD LIKE TO HAVE IT DEEMED TO BE A LAW OF THE

23   CASE.  BUT UNLIKE WHERE HE SAYS THE SDCC IS A STATE ACTOR -- HE

24   MAKES THAT FINDING AS A MATTER OF LAW, WHERE HE SAYS OUR

25   GOVERNMENTAL ENTITY IS A MATTER OF LAW.  THOSE, I THINK, ARE

APRIL 11, 2011

1   THE LAW OF CASE OR THE FACTUAL FINDINGS THAT WE DEAL WITH.

2          WHERE HE SAYS THAT IN HIS VIEW YOU DIDN'T MEET YOUR

3   BURDEN AS A MATTER OF LAW, I'M NOT SO SURE THAT'S THE SAME

4   THING.  BUT I'M NOT TRYING TO ARGUE YOUR CASE.  I'M JUST TRYING

5   TO FOCUS THE ISSUE.

6          **MR. ERGASTOLO:**  JUST TO GIVE IT A LITTLE BIT MORE

7   CONTEXT, YOUR HONOR.  WHEN WE MOVED FOR SUMMARY JUDGMENT, WE

8   MOVED UNDER SECTION 34(A).  WE ARGUED WE'RE THE CITY, WE'RE THE

9   CITY, WE'RE THE CITY.  WE PUT ON A BUNCH OF FACTS TO ARGUE TO

10  JUDGE BENITEZ THAT WE WERE THE CITY.

11         WE NEVER EVEN MADE AN ARRANGEMENT UNDER PRONG B FOR

12  SPECIAL GOVERNMENT.  UNITED CAME BACK AND SAID "YOU'RE UNDER

13  SPECIAL GOVERNMENT AND THERE IS A REQUIREMENT AND YOU HAVEN'T

14  MET IT."  AND IN OUR REPLY WE SAID "WE'RE NOT MOVING UNDER

15  SECTION B; WE'RE MOVING UNDER SECTION A."

16         SO WE ENDED UP WITH A DECISION THAT SAYS YOU'RE UNDER

17  SECTION B AND YOU HAVE A REQUIREMENT.  IF YOU GO BACK TO THE

18  CASE THAT WAS CITED BY UNITED IN SUPPORT OF THAT --

19         **THE COURT:**  TARABISHI.

20         **MR. ERGASTOLO:**  TARABISHI.  IT DOESN'T SAY IT'S A

21  REQUIREMENT.  IT SAYS IT'S A CONSIDERATION.

22         **THE COURT:**  IT'S ONE OF MANY FACTORS.

23         **MR. ERGASTOLO:**  ONE OF MANY FACTORS.  SO ALL OF A

24  SUDDEN -- AND, IN FACT, I CAN GO THROUGH THE HISTORY OF THIS

25  BECAUSE I SPENT A GOOD CHUNK OF MY WEEKEND LEARNING ABOUT LGAA

APRIL 11, 2011

1    MORE THAN I HAVE BEFORE, YOUR HONOR.  THIS IDEA OF TAXPAYER

2    LIABILITY ARISES SOLELY WHEN YOUR LOOKING TO WHETHER TO APPLY

3    THAT STATUTE RETROACTIVELY.

4           IN THE 1980S, THERE WAS A HUGE DISPUTE WHEN THIS

5    STATUTE FIRST CAME OUT IN 1984, ABOUT WHETHER IT APPLIED

6    RETROACTIVELY.  THERE IS A CASE FROM, I BELIEVE IT'S THE STATE

7    OF TEXAS, THAT WAS CITED BY THE NINTH CIRCUIT THAT -- THERE IS

8    QUOTES IN THERE FROM CONGRESS THAT SAYS THESE ARE THINGS YOU

9    SHOULD CONSIDER WHEN DECIDING TO APPLY RETROACTIVELY.

10          **THE COURT:**  REINFORCING THE TAXICABS.

11          **MR. ERGASTOLO:**  YES.  AND ONE OF THE ITEMS THAT WAS

12   CITED RIGHT IN THERE WAS TAXPAYERS.  THAT IS THE ONLY PLACE

13   WHERE I HAVE SEEN CONGRESS SAY TAXPAYER LIABILITY IS AN ISSUE.

14          **THE COURT:**  RIGHT.

15          **MR. ERGASTOLO:**  SO FROM THERE, SOMEHOW THE CASES,

16   ADMITTEDLY, AND ACCORDING TO AREEDA & HOVENKAMP, IT'S NOT

17   CLEAN.

18          **THE COURT:**  IT'S NOT CLEAN.

19          **MR. ERGASTOLO:**  BUT WE CERTAINLY DON'T HAVE A

20   REQUIREMENT IN THE NINTH CIRCUIT BECAUSE TARABISHI IS A NINTH

21   CIRCUIT LAW THAT SAYS YOU HAVE TO PROVE THAT ELEMENT.

22          SO YES, SHOULD WE HAVE ADDRESSED THIS MORE FULLY

23   EARLIER?  MEA CULPA.  BUT THAT DOESN'T MEAN WE CAN'T PUT ON

24   EVIDENCE NOW ABOUT WHETHER OR NOT WE MEET THE ELEMENTS OF LGAA.

25          **THE COURT:**  AND MY DILEMMA IS TO FIGURE OUT

APRIL 11, 2011

1  PROCEDURALLY HOW I AM GOING TO ADDRESS THAT.  AND, I MEAN,

2  ESSENTIALLY, YOU KNOW AT THE CONCLUSION OF THE CASE I GUESS YOU

3  COULD MAKE A RULE 50 MOTION FOR JUDGMENT, BUT THAT GOES THE

4  OTHER WAY, DOESN'T IT?  WELL, I HAVE TO THINK ABOUT THAT.

5          **MR. SCHOUTEN:**  YOUR HONOR, YOU CAN GO ON YOUR OWN

6  BURDEN.  IT REQUIRES A SHOWING OF UNCONTROVERTED EVIDENCE.

7  IT'S A VERY HIGH BURDEN, BUT YOU CAN MOVE ON YOUR OWN.

8          **THE COURT:**  OF COURSE, THE OTHER ALTERNATIVE IS LET

9  THE JURY DECIDE.  IF THEY FIND ON THE FACTS THERE IS NO

10 ANTITRUST LIABILITY, IT'S A MOOT POINT.  AND IF THEY FIND THAT

11 THERE IS, WE HAVE JM -- WHATEVER IT IS -- THE DOJ NOV, WHICH I

12 THINK IS STILL SUBSUMED IN 50.

13         MR. SLANIA, I WILL CERTAINLY LET YOU TALK ABOUT YOUR

14 THOUGHTS OF HOW THIS SHOULD PROCEED.  I RECOGNIZE YOUR

15 POSITION.  I GUESS NOT TO FINALIZE THE LAW HERE, I JUST WANT TO

16 GET A PROCEDURAL FOOTHOLD AS TO WHEN AND HOW WE DEAL WITH IT

17 AND UNDER WHAT STANDARDS AND SO FORTH.

18         **MR. SLANIA:**  I UNDERSTAND THAT, YOUR HONOR.  THERE

19 WERE A WHOLE SLEW OF TOPICS THAT WERE ADDRESSED AND I'M GOING

20 TO TRY TO HIT THEM.  AND I RECOGNIZE THE DIFFICULTIES WITH THIS

21 ISSUE.

22         AS FAR AS WHERE WE CURRENTLY ARE, IF MS. WALLACE

23 ISN'T GOING TO BE TESTIFYING ABOUT THE BURDEN ON TAXPAYERS AND

24 THERE IS NO OTHER WITNESS THAT'S GOING TO BE TESTIFYING ON THE

25 BURDEN ON TAXPAYERS, THEN I THINK PROCEDURALLY THE NEXT STEP

1   WOULD BE WHETHER OR NOT THEY ARE GOING TO BRING A MOTION UNDER

2   50(A) OR WE'RE GOING TO BRING A MOTION, OR POTENTIALLY IT GOES

3   TO THE JURY.  I THINK THAT IS OBVIOUSLY SOMETHING THAT WOULDN'T

4   BE DONE UNTIL THE END OF THEIR PRESENTATION OF EVIDENCE,

5   ANYWAY.  SO I THINK THAT IS WHERE WE SIT NOW.  BASED ON THE

6   REPRESENTATIONS FROM COUNSEL, THEY ARE NOT GOING TO BE PUTTING

7   ON ANY MORE EVIDENCE, SO I THINK THAT'S WHERE IT SITS.

8           AS IT RELATES TO THE LAW OF THE CASE DISCUSSION, IN

9   OUR BRIEF WE DO ADDRESS THAT -- THE BRIEF THAT WAS FILED THIS

10  AFTERNOON.

11          **THE COURT:**  WHICH I HAVEN'T READ.  I'M JUST TALKING

12  OUT LOUD WITH ALL OF YOU HERE.

13          **MR. SLANIA:**  I RECOGNIZE THAT.  I WANTED TO POINT

14  THAT OUT.  THE ISSUE ISN'T WHETHER OR NOT THE LAW OF THE CASE

15  IS THAT THE CONVENTION CENTER CAN'T PUT ON ANY EVIDENCE TO

16  ESTABLISH THE THIRD ELEMENT.  WE NEVER MADE THAT ARGUMENT.  IF

17  THEY WOULD HAVE DESIGNATED EXPERTS AT THE OUTSET OF THIS CASE,

18  A LEGAL EXPERT THAT MIGHT HAVE BEEN ABLE TO TESTIFY ON THIS

19  ISSUE, THAT WOULD BE SOMETHING ELSE ENTIRELY.  WE DON'T HAVE

20  THAT SITUATION HERE.  BUT JUDGE BENITEZ, IN HIS MOTION FOR

21  SUMMARY JUDGMENT ORDER, VERY CLEARLY SET FORTH WHAT THE

22  ELEMENTS ARE THAT THEY HAD TO PROVE TO ESTABLISH THIS DEFENSE.

23  ONE OF THOSE ELEMENTS WAS THE BURDEN ON TAXPAYERS.

24          **THE COURT:**  RIGHT.

25          **MR. SLANIA:**  SO THAT'S THE ISSUE THAT WE'RE FOCUSING

1    ON HERE.  THAT'S THE  BURDEN THAT THEY FACE TO PREVAIL ON THIS

2    DEFENSE.  THEY HAVE TO MEET WHAT JUDGE BENITEZ SET OUT.

3           NOW, IF THERE IS A DIFFERENCE OF OPINION ABOUT THAT

4    AND WE HAVE TO PROLONG THIS DISCUSSION, I UNDERSTAND THAT.  I

5    WANTED TO FOCUS ON THAT POINT, NOT THE ISSUE OF WHETHER OR NOT

6    THEY COULD EVER PRODUCE EVIDENCE AS TO THAT POINT.

7           **THE COURT:**  YOU'RE RIGHT.  I THINK WE ALL AGREE THAT

8    IS WHAT THE POINT IS.

9           **MR. SLANIA:**  THERE IS ALSO INFORMATION, YOU KNOW, AS

10   WE PUT FORTH IN OUR BRIEF -- AND I RECOGNIZE YOU HAVEN'T READ

11   IT.  WE TALK ABOUT THE CONGRESSIONAL INTENT.  THERE IS A CASE

12   THAT IS CITED IN OUR PAPERS THAT TALKS ABOUT THE FACT THAT

13   CONGRESS ADOPTED A DEFINITION HERE BASED ON STATUS AS A

14   GOVERNMENT INSTRUMENTALITY, AND EFFECT ON TAXPAYERS RATHER THAN

15   ON PURPOSE.

16          AND THAT'S THE CAPITAL FREIGHT SERVICES CASE.  THAT

17   SPECIFIC QUOTE THAT I JUST READ TO YOU IS PAGE 6 OF OUR BRIEF,

18   LINES 19 THROUGH 22.

19          SO THERE IS OTHER EVIDENCE OUT THERE AND THERE ARE

20   OTHER STATEMENTS ABOUT THE EFFECT ON TAXPAYERS THAT WE ALSO

21   THINK SUPPORTS OUR ARGUMENT THAT, IN FACT, THIS IS EVIDENCE

22   THAT MUST ABSOLUTELY BE PRESENTED BEFORE THEY CAN EVER PREVAIL

23   ON THIS DEFENSE.

24          AND I THINK THE REST OF THE DISCUSSION WE CAN LEAVE

25   FOR ANOTHER POINT IN TIME, AFTER YOU'VE HAD A CHANCE TO REVIEW

1  OUR BRIEF.  AND WE CAN DISCUSS THE REST, BUT I WANTED TO

2  ADDRESS THOSE ISSUES UNLESS THERE ARE ANY OTHER QUESTIONS YOU

3  HAD FOR ME AT THIS TIME ON THIS TOPIC.

4          **THE COURT:**  NO.  I FIND THIS VERY HELPFUL, BOTH IN

5  FRAMING YOUR RELATIVE POSITIONS, BUT ALSO IN CLEARING THE

6  RECORD AS TO WHERE WE WERE PROCEDURALLY.  WHICH IS, IN ESSENCE,

7  MY DENYING THE PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE

8  TESTIMONY OF MS. WALLACE ON THE TAXPAYER LIABILITY AS MOOT,

9  SINCE IT'S NOT GOING TO BE PRESENTED.

10         WE RECOGNIZE THAT THE DEFENSE WILL CONTINUE TO

11  PRESENT EVIDENCE.  AND THAT PROBABLY IS IN PART WHAT THE

12  JUDICIAL NOTICE REQUESTS ARE ABOUT?

13         **MR. ERGASTOLO:**  IN PART, YOUR HONOR.  THE JUDICIAL

14  NOTICE DEALS SIGNIFICANTLY MORE WITH THE STATE ACTION DOCTRINE.

15  THE CASES THAT ARE INTERPRETING LGAA, INCLUDING -- WHAT IS THE

16  CASE FROM THE FOURTH CIRCUIT THAT WE CITED?

17         **MR. SCHOUTEN:**  SANDCREST.

18         **MR. ERGASTOLO:**  SANDCREST SPECIFICALLY SAYS FOLLOW

19  THAT ANALYSIS.

20         SO WE HAVE IT IN THERE BECAUSE OF THE STATE ACTION

21  DOCTRINE REQUIREMENTS, AS WELL AS THE LGAA.

22         **THE COURT:**  OKAY.  BUT, IN ESSENCE, WE CAN CONTINUE

23  WITH THE CASE, AND AT THE TIME OF -- AND WE HAVE TO OVERCOME

24  THE PLAINTIFF'S ASSERTION THAT THE LAW FOR THE CASE, THE

25  MATRIX, HAS BEEN SET BY JUDGE BENITEZ, WHICH WE CAN CERTAINLY

1   CONTINUE TO ARGUE ABOUT AND CONTINUE TO EDUCATE OURSELVES

2   ABOUT.

3           **MR. SLANIA:**  THERE WAS ONE POINT I FORGOT TO MENTION,

4   YOUR HONOR.  AS IT RELATES TO THE <u>TARABISHI</u> CASE, THERE WAS

5   SOME DISCUSSION ABOUT CONSIDERATION, TAXPAYERS, THINGS OF THAT

6   NATURE.  ON PAGE 6 OF THE CASE, ON THE VERSION THAT I HAVE FROM

7   WESTLAW, WHICH I BELIEVE IS PAGE 1566 FROM THE CASE ITSELF,

8   <u>TARABISHI</u> DISCUSSES THAT IT'S A SIGNIFICANT CONSIDERATION, NOT

9   JUST A FLIMSY CONSIDERATION.  IT'S A SIGNIFICANT CONSIDERATION.

10          **THE COURT:**  RIGHT.  OKAY.  I WILL MAKE NOTE OF THAT.

11           WE MARKED THAT AS TO BE ADDRESSED DOWNSTREAM, TO

12   BORROW ONE OF YOUR TERMS OF ART ABOUT ANTITRUST.

13          **MR. ERGASTOLO:**  AND I APOLOGIZE FOR TAKING IT OUT OF

14   ORDER, YOUR HONOR.  I DIDN'T WANT TO LEAVE AND REALIZE I MISSED

15   SOMETHING.

16          **THE COURT:**  IT'S NEVER INAPPROPRIATE TO RAISE THESE

17   THINGS.  AND IT IS SOMETHING THAT CLEARLY WE WANT TO DO

18   CORRECTLY AND GIVE EVERYBODY A CHANCE.  AND I JUST WANT TO MAKE

19   SURE WE HAD SOMEWHAT OF A PROCEDURAL CLARIFICATION.

20           OKAY.  LET'S DIVE INTO MR. PITTS' TESTIMONY.  AND THE

21   FIRST OBJECTION DEALS WITH THE EXCERPT FROM 49, 21 TO 50, 21,

22   WITH AN OBJECTION TO 54 THROUGH 8 AS CONFUSING, AND 9 THROUGH

23   13 AS VIOLATING MOTION IN LIMINE.  SO LET ME READ THOSE

24   PORTIONS WHILE YOU ARE HERE, AND GET THROUGH THIS.

25   (PAUSE)

APRIL 11, 2011

1        OKAY.  SO ON PAGE 50, LINES 4 THROUGH 8, WHY WOULD

2   THIS BE CONFUSING?  I THINK THAT IS YOUR OBJECTION.

3        **MR. SLANIA:**  JUST BECAUSE HE IS NOT CERTAIN WHETHER

4   OR NOT HE HAS SEEN THAT DOCUMENT OR WHEN HE SAW IT, BECAUSE HE

5   SAYS I WOULD HAVE SEEN THIS OR A SIMILAR-TYPE DOCUMENT.  THAT

6   IS THE ONLY POINT I AM RAISING WITH THAT.  WE DON'T KNOW THAT

7   HE ACTUALLY SAW THESE RULES BEFORE HE WAS WORKING THERE THE

8   2006 SHOW.

9        **THE COURT:**  THEN IT CONTINUES WITH THE FACT THAT THE

10  GENERAL POLICIES, RULES AND REGULATIONS -- THAT THEY ARE MADE

11  AVAILABLE TO PARTICIPANTS BY OTHER BUILDINGS.  AND YOU FOLKS

12  FEEL THAT IS A MOTION IN LIMINE PROBLEM, ALTHOUGH THERE HAS

13  BEEN TESTIMONY THAT MOST OF THESE BUILDINGS HAVE RULES AND

14  REGULATIONS.  NO ONE HAS TALKED ABOUT EXCLUSIVE-EMPLOYEES-ONLY

15  CLEANING POLICY, BUT WE HEARD ABOUT RULES AND POLICIES.

16       **MR. SLANIA:**  BUT BASED ON THAT, YOUR HONOR, WE'LL

17  WITHDRAW THOSE OBJECTIONS.

18       **THE COURT:**  OKAY.  SO WE CAN GO AHEAD WITH THIS.

19  LET'S GO AHEAD.  THAT THE DEFENSE CAN USE AND PLAY AS THEY

20  INTEND.

21       133, 13 TO 134, 01.  LET ME ASK MY COURT REPORTER AND

22  COURTROOM DEPUTY, WHAT'S THE TIME SITUATION FOR YOU?  YOU HAVE

23  TO BE SOMEWHERE?

24  (PAUSE)

25       **THE COURT:**  WHAT WE DON'T FINISH TODAY WE WILL FINISH

APRIL 11, 2011

1    IN THE MORNING.

2              **MR. L'ESTRANGE:**  EXCUSE ME, YOUR HONOR.  MAYBE I CAN

3    HELP ACCELERATE THINGS.

4              **THE COURT:**  THAT WOULD BE WONDERFUL.

5              **MR. L'ESTRANGE:**  YOU ARE LOOKING AT THE SHEET THAT I

6    PROVIDED WITH THE YELLOW HIGHLIGHTING?

7              **THE COURT:**  YES, SIR.

8              **MR. L'ESTRANGE:**  THE VERY LAST ONE, THE SPLIT SCREEN

9    WITH THE X THROUGH IT, THAT'S OUT.  THE ONE IMMEDIATELY ABOVE

10   THAT, WHERE THEY WANTED TO COUNTER-DESIGNATE, WE WITHDRAW OUR

11   DESIGNATION.

12             **THE COURT:**  OKAY.

13             **MR. L'ESTRANGE:**  AND YOU'VE ALREADY RULED ON THE

14   EXHIBITS, SO WE ARE NOW LEFT WITH THREE SEGMENTS.  AND I CAN

15   TELL YOU, IN A BLANKET FORM, WHAT OUR OBJECTION IS.

16             **THE COURT:**  OKAY.

17             **MR. L'ESTRANGE:**  WE HAVE DESIGNATED A RELATIVELY

18   SMALL PORTION.  AND THEY HAVE ESSENTIALLY FLOODED IT WITH A

19   VERY LARGE COUNTER-DESIGNATION THAT I THINK IS NOT PROPER 106

20   MATERIAL.  BUT EVEN IF IT WERE, THIS HAS ALREADY BEEN SHOWN TO

21   THE JURY DURING THEIR PRESENTATION OF THE PITTS' DEPOSITION.

22             AND I DON'T KNOW IF YOU RECALL, BUT THAT PRESENTATION

23   WAS AN HOUR AND A HALF.  BECAUSE OF THAT, WE ARE TRYING TO CUT

24   DOWN THE AMOUNT OF PITTS BECAUSE I HAVE A FEELING WHEN THE JURY

25   HEARS WE ARE GOING TO BE SHOWING MORE OF MR. PITTS, THERE'S

1   GOING TO BE A COLLECTIVE SIGH.  AND WHAT IS HAPPENING HERE IS

2   THAT THEY ARE MOVING US AWAY FROM WHAT WE TRIED TO DO TO KEEP

3   IT CONCISE, TO SWALLOWING IT UP WITH ALL OF THESE

4   COUNTER-DESIGNATIONS THAT THE JURY HAS ALREADY SEEN.

5           **THE COURT:**  SO THEREFORE, CUMULATIVE.

6           **MR. L'ESTRANGE:**  YES.

7           **THE COURT:**  WHAT ABOUT THAT, MR. SLANIA?

8           **MR. SLANIA:**  I HAVE TO ADMIT I AM A BIT CONFUSED

9   ABOUT WHAT MR. L'ESTRANGE HAD SAID WHEN HE WAS EXPLAINING WHAT

10  STILL EXISTS AND WHAT DOESN'T EXIST, AS FAR AS THE ISSUES.

11          **THE COURT:**  I WAS CONFUSED ABOUT THAT.

12          133 IS PROBABLY STILL IN CONTROVERSY, 133 TO 134,

13  WITH PLAINTIFF WANTING TO START BACK AT 129.

14          **MR. L'ESTRANGE:**  RIGHT.  WHAT IS STILL IN PLAY HERE

15  IS 133, 13 TO 134, 01.

16          **MR. SLANIA:**  AND WE AGREED TO GO ALL THE WAY TO 134,

17  12 AS OF RIGHT NOW.  WASN'T THAT PART OF OUR --

18          **THE COURT:**  THAT'S WRITTEN DOWN HERE.

19          **MR. L'ESTRANGE:**  YOU HAVE AGREED, BUT WE OBJECTED.

20          **MR. SLANIA:**  NO.  YOU SAID WE AGREED TO ADD 134, 2 TO

21  12.

22          **MR. L'ESTRANGE:**  RIGHT.  RIGHT.  2 TO 12.

23          **MR. SLANIA:**  THAT IS WHAT I'M REFERRING TO.

24          **MR. L'ESTRANGE:**  THAT WAS NOT PREVIOUSLY READ.  AND

25  FRANKLY, IF YOU TAKE A LOOK AT THAT, IT SAYS NOTHING.  WE ARE

1    NOT OBJECTING ON A CUMULATIVE BASIS, BUT HERE'S WHAT IT SAID.

2              QUESTION BY MR. L'ESTRANGE, ARE THERE INSTANCES WHERE

3    EXHIBITORS WISH TO BRING THEIR OWN VACUUM CLEANER AND THEY ARE

4    TOLD BY THE ASSOCIATION THEY CANNOT DO SO BECAUSE OF YOUR

5    EXCLUSIVE ON CLEANING?

6              THERE IS SOME OBJECTIONS.

7              ANSWER:  NOT THAT I'M AWARE OF.

8              QUESTION:  IT NEVER -- HAS THAT EVER HAPPENED, THAT

9    YOU'RE AWARE OF?

10             ANSWER:  I COULDN'T SAY YES OR NO.

11                IT'S MEANINGLESS.

12           **THE COURT:**  YEAH, IN ESSENCE.

13           **MR. L'ESTRANGE:**  IF HE WANTS TO PUT IT IN, WE CAN,

14   BUT I THINK IT'S A WASTE OF TIME.

15           **THE COURT:**  IT'S TRUE THAT WE HEARD FROM MR. PITTS.

16   HE WAS THE GUY CHEWING GUM, RIGHT?

17           **MR. L'ESTRANGE:**  PARDON ME?

18           **THE COURT:**  HE WAS THE GUY CHEWING GUM THROUGH HIS

19   DEPOSITION?  WAS IT PITTS?  NO.  THAT WAS PSUIK.  PSUIK WAS

20   CHEWING THE GUM.

21             I THINK AT THIS STAGE WE HAVE SEEN HIS DEPO AT

22   LENGTH.  AND UNLESS THERE IS A TRUE 106 ISSUE IN TERMS OF

23   COMPLETENESS TO A PARTICULAR ANSWER, I THINK WE SHOULD LET THE

24   DEFENSE HAVE ITS PORTIONS AT THIS POINT, TO MAKE WHAT THEY WANT

25   FROM THAT.  AND YOU HAVE GOT 133, 13, WITH AN OBJECTION IN

APRIL 11, 2011

1    THERE.

2              **MR. SLANIA:**  SO FOR THIS ONE ARE WE GOING FROM 133,

3    13 TO 134, 12?

4              **THE COURT:**  WELL, MR. L'ESTRANGE IS STILL OBJECTING

5    TO 134, 2 THROUGH 12 WAS THE QUESTION, WITHOUT -- I DON'T KNOW.

6    I COULDN'T SAY YES OR NO.

7              I SAY WE LIMIT IT TO THE ORIGINALLY DESIGNATED

8    PORTION, 133, 13 TO 134, 1.  AND I DON'T SEE ANY VALUE.  I

9    DON'T SEE A GOOD AS CONTEXT TO THE EARLIER BECAUSE HE DOESN'T

10   KNOW.  SO HE DOESN'T KNOW.  SO LET'S LEAVE THAT AS THAT.

11             WHAT'S THE NEXT ONE ON YOUR REMAINING LIST,

12   MR. L'ESTRANGE?

13             **MR. L'ESTRANGE:**  THE NEXT ONE IS 224, 20, TO 226, 07.

14             **THE COURT:**  AND LET ME GET TO THERE.

15             **MR. L'ESTRANGE:**  AND THIS IS AGAIN,

16   THEY'VE-ALREADY-SEEN-IT OBJECTION.

17             **THE COURT:**  OKAY.  I READ THE DESIGNATED PORTION.

18   AND THEN 340 IS WHAT'S SOUGHT TO BE IN.

19             THAT'S ALREADY BEEN SHOWN, AND IT'S HUNDREDS OF PAGES

20   BEHIND, SO I DON'T THINK IT'S GOING TO MEET A 106 SHOWING.  SO

21   WE'LL LIMIT 224, 20 TO 226, 07.

22             AND THEN WHAT'S THE NEXT PORTION, MR. L'ESTRANGE,

23   THAT IS IN DISPUTE?

24             **MR. L'ESTRANGE:**  THE GOOD NEWS IS THAT -- WAIT A

25   SECOND.  237, 03 TO 239, 17.

APRIL 11, 2011

1        **THE COURT:**  OKAY.

2        **MR. L'ESTRANGE:**  AND THAT'S ACTUALLY ADDING THE SAME

3   PORTION THAT YOU JUST TALKED ABOUT.

4        **THE COURT:**  LET ME LOOK AT THE -- I DON'T THINK I

5   HAVE THE -- WHAT IS SAID AT 237, 03 TO 239.  237/239.  I DON'T

6   HAVE THOSE PAGES IN THE MATERIAL.

7        HERE IT IS.  I JUST FOUND IT.  I SOMEHOW GOT IT OUT

8   OF ORDER.

9        I WOULD MAKE THE SAME OBSERVATION.  IT'S NOT A 106

10  COMPLETENESS ISSUE.  IT'S BEEN SHOWN TO THE JURY.  IT IS

11  CUMULATIVE.  SO WE'LL LET THE DESIGNATED PORTION BE DELIVERED

12  BY PLAINTIFFS.  AND THAT WOULD SEEM TO WRAP UP MR. PITTS.

13       **MR. L'ESTRANGE:**  I BELIEVE SO, YES.

14       **THE COURT:**  AND THEN THAT LEAVES PSUIK, RIGHT?

15       **MR. SCHOUTEN:**  IT'S MS. ROCHA.

16       **THE COURT:**  MS. ROCHA.

17       **MR. SCHOUTEN:**  SHE MAY ACTUALLY BE IN COURT TOMORROW.

18  SHE'S BEEN SUBPOENAED, THE LAST WE KNEW.

19       **MR. SLANIA:**  I'M SORRY?

20       **THE COURT:**  I THOUGHT WE DIDN'T KNOW.

21       **MR. SLANIA:**  I'M SORRY, YOUR HONOR.  I'M STILL

22  CONFUSED AS TO WHAT HAPPENED AT THE LAST PART OF THE PITTS

23  DESIGNATION.  I UNDERSTOOD MR. L'ESTRANGE SAID SOMETHING HAD

24  BEEN WITHDRAWN.  I'M NOT CERTAIN AS TO WHAT IT WAS.

25       **MR. L'ESTRANGE:**  304, 20 HAS BEEN WITHDRAWN.  THE

1   LAST ONE JUST BEFORE WHAT YOU REFERRED TO AS THE SPLIT-SCREEN

2   OBJECTION.

3               **MR. SLANIA:**  SO THEN WE ARE JUST GOING TO HAVE 304,

4   14 TO 17, WHICH IS THE QUESTION?

5               **MR. L'ESTRANGE:**  HOLD ON A SECOND.  NO.  I'M SORRY.

6   WHAT HAS BEEN WITHDRAWN IS 304, 14 TO 304, 17.  I MISSPOKE.  I

7   APOLOGIZE.

8               **THE COURT:**  SO WE HAVE 304, 20, STILL.

9               **MR. L'ESTRANGE:**  THAT IS WITHDRAWN, ALSO.

10              **THE COURT:**  OKAY.  SO WE ARE DONE.

11              THEN ROCHA MAY BE HERE BUT WE DON'T KNOW FOR SURE.

12              **MR. SCHOUTEN:**  WE HAVE ARRANGED FOR A TRANSLATOR TO

13  COME.  IF NOT, THIS IS OUR PLAN B.  AND SO WE JUST WANTED TO GO

14  AHEAD AND RESOLVE A COUPLE CLIPS HERE.

15              **THE COURT:**  DO WE THINK -- WOULD SHE BE CALLED BEFORE

16  THE MORNING BREAK?

17              **MR. SCHOUTEN:**  SHE WOULD BE THE FIRST WITNESS.

18              **THE COURT:**  LET'S DIVE INTO THIS FOR A FEW MORE

19  MINUTES AND THEN I HAVE TO LET FOLKS MAKE THEIR HOMEWARD-BOUND

20  CONNECTIONS.  16, 10 TO 16, 15.  LET ME GET THERE.

21              **MR. SLANIA:**  YOUR HONOR, JUST FOR YOUR REFERENCE, AS

22  YOU ARE GOING THROUGH THIS, THE NEXT FOUR, I BELIEVE, ALL

23  RELATE TO THE SAME TOPIC.  IT'S ALL ABOUT MR. ROCHA'S WORK IN

24  LAS VEGAS IS 2008.

25  (PAUSE)

APRIL 11, 2011

1              **THE COURT:**  IT'S ALL ABOUT MS. ROCHA GETTING PAID

2      CASH, EXCEPT WHERE SHE IS IN LAS VEGAS GETTING A CHECK, AS I'M

3      READING IT SO FAR.  LET ME LOOK AT THE ACTUAL TESTIMONY. 16, 10

4      THROUGH 15 IS SIMPLY SHE WORKED IN LAS VEGAS FOR UNITED.  WE

5      HEARD LOTS OF WITNESSES TALK ABOUT THEIR LENGTHY CAREERS.  AND

6      THAT'S A 17-SECOND-LONG CLIP.  I DON'T THINK THAT IS GOING TO

7      CONFUSE ANYBODY.  IT MAY BE RELEVANT IN TERMS OF HER EXPERIENCE

8      OR CONTEXT FOR QUESTIONS THAT FOLLOW.  SO I WILL OVERRULE THE

9      OBJECTION.  THAT CAN GO IN.  16, 22.

10     (PAUSE)

11             ALL RIGHT.  THIS ALL TIES INTO THE UNITED TEMPS WHICH

12     WE DEALT WITH IN LIMINE AND FOUND THERE COULD BE TESTIMONY.

13     THERE MAY BE RELEVANCE, GIVEN THE PARTIES' POSITIONS AND

14     STATEMENTS IN PRIOR TESTIMONY DECLARATIONS AND WHATNOT.  WE

15     HEARD MR. SIMON, I THINK, AND OTHERS TALK ABOUT THE WAY IT WAS

16     SET UP FOR PAYROLL PURPOSES AND WHATNOT.  SO I DON'T THINK IT'S

17     IRRELEVANT OR CONFUSING.

18             WHAT ELSE, MR. SLANIA, MAKES THAT A PROBLEM?

19             **MR. SLANIA:**  IT RELATES TO AUGUST 2008 IN LAS VEGAS.

20     THAT'S THE WHOLE PREMISES TO THIS LINE OF QUESTIONING.

21             **THE COURT:**  YES.

22             **MR. SLANIA:**  THAT HAS NOTHING TO DO WITH WHAT IS

23     GOING ON HERE.  AND SHE GOES ON TO SAY SHE DIDN'T KNOW WHO SHE

24     WORKED FOR AT THAT POINT IN TIME.  AND MR. SIMON TESTIFIED

25     REGARDING THE FACT THAT BY THAT POINT IN TIME UNITED NATIONAL

1   WAS UNITED NATIONAL AND IT'S NOT THE SAME UNITED TEMPS ISSUE

2   THAT WE HAVE HERE.  SO IT WOULD BE VERY CONFUSING TO THE JURY

3   TO HEAR ONE WITNESS TALK ABOUT BEING AT A SHOW IN AUGUST OF

4   2008, NOT KNOWING WHO SHE WORKED FOR.

5           **THE COURT:**  YES.  I WASN'T FOCUSING ON THE DATE.

6   THANK YOU FOR CLARIFYING THAT.  SO LET'S GO BACK TO YOU,

7   MR. SCHOUTEN.

8           **MR. SCHOUTEN:**  YOUR HONOR, THE DATE MATTERS BECAUSE

9   IT'S RELEVANT TO DETERMINING THE RELEVANT ANTITRUST MARKET.

10  WHAT MR. HEKMAN'S REPORT SAYS IN PARAGRAPH 24 -- IT'S TRIAL

11  EXHIBIT 446, PAGE 16 -- SAYS "THE MARKET IS LIMITED TO THE SAN

12  DIEGO AREA BECAUSE WORKERS WHO ARE TRYING TO PERFORM THE

13  CLEANING SERVICES IN THIS MARKET CANNOT PROFITABLY COME FROM

14  AREAS OUTSIDE THE LOCAL SAN DIEGO LABOR MARKET AND BE

15  COMPETITIVE WITH THOSE WORKERS WHO ARE LOCATED IN LOCAL MARKET.

16  THE COMPETITION IS AMONG PROVIDERS IN THE TRADE SHOW CLEANING

17  SERVICES IN THE LOCAL LABOR MARKET."

18          THROUGHOUT ALL THIS TESTIMONY, WHAT MS. ROCHA SAYS IS

19  THAT SHE ACTUALLY STARTED WORKING AT THE SAN DIEGO CONVENTION

20  CENTER, THEN WENT TO LAS VEGAS, CAME BACK TO SAN DIEGO, WENT TO

21  PALM SPRINGS, WENT BACK TO LAS VEGAS.  AND THE LAST EMPLOYMENT

22  THAT SHE HAD WAS IN LAS VEGAS.

23          SO IT GOES TO WHETHER OR NOT, YOU KNOW, THE RELEVANT

24  MARKET REALLY IS JUST SAN DIEGO WHEN YOU HAVE THIS KIND OF

25  MOVEMENT OF UNM EMPLOYEES FROM LOCATION TO LOCATION.  AND IT

APRIL 11, 2011

1    MIGHT HAPPEN IN 2008, BUT THEN THAT WOULD ACTUALLY ALSO BEAR ON

2    THE MITIGATION ISSUE.  AND THAT IS ARE THEY USING THE EMPLOYEES

3    THAT THEY HAVE AT OTHER LOCALES.  YOU KNOW, JUST BECAUSE WE'RE

4    LOOKING IN 2008 DOESN'T SOMEHOW CREATE SOME FIREWALL,

5    PARTICULARLY WHEN THIS IS ACTUAL EMPIRICAL DATA OF MOVEMENT OF

6    EMPLOYEES FROM ONE LOCATION TO ANOTHER.

7              **THE COURT:**  WELL, I UNDERSTAND THAT.  AND I AGREE

8    THAT THERE WOULD BE SOME RELEVANCE TO TIE IT IN TO THE

9    QUESTIONS AT 16, 10 THROUGH 16, 15.  BEYOND THAT IT DOESN'T

10   MAKE THE CUT, IN MY VIEW.

11             WHY SHOULD IT?  AS TO WHO HER EMPLOYER IS, WHAT ABOUT

12   UNITED TEMPS?  ALL THAT IN 2008 IS REALLY IRRELEVANT TO THE

13   ISSUES OF POTENTIAL SECURITY, COORDINATION, PERFORMANCE OF

14   UNITED IN THE PRE-POLICY PERIOD.  SO WE CAN ALLOW QUESTIONS OR

15   READ THE DEPOSITION AS TO ITEM ONE, 16, 10 THROUGH 16, 15.  I

16   THINK THE 16, 22 TO 17, 05; 17, 07 TO 12, ARE ALL IRRELEVANT AS

17   TO THE NAME OF THE EMPLOYEE.

18             THE FACT THAT SHE CAN MOVE IN THE MARKET, WHETHER

19   IT'S UNITED, UNITED TEMPS, THAT BECOMES TIME CONSUMING AND

20   IRRELEVANT.  SO I WOULD STRIKE THOSE TWO PORTIONS.

21             16, 22, 17, 05; 17, 07 TO 12.

22             LET'S GET TO 19, 03 TO 20, 10.

23             **MR. SLANIA:**  YOUR HONOR, ONCE AGAIN YOU'RE TALKING

24   ABOUT WHAT MS. ROCHA DID IN AUGUST OF 2008, AND SHE TESTIFIES

25   THAT SHE WAS SUPERVISING AT THAT POINT IN TIME.  WHICH IS

1  CONSISTENT WITH WHAT MR. LINN AND I BELIEVE MR. SIMON TESTIFIED

2  TO:  THAT ON OCCASION SUPERVISORS HAVE TO TRAVEL TO SUPERVISE.

3  AND WE ARE STILL DEALING WITH AUGUST OF 2008.  SO THERE IS NO

4  IMPEACHMENT VALUE HERE AND THIS IS, ONCE AGAIN, REMOTE IN

5  AUGUST 2008.

6          **THE COURT:**  LET ME READ THE ENTIRE PORTION, AND I CAN

7  TRY TO PUT THOSE COMMENTS INTO --

8          OKAY.  MR. SCHOUTEN, GO AHEAD.  THIS DOESN'T GET INTO

9  THE WHOLE UNITED TEMPS, UNITED MAINTENANCE, ALL OF THAT STUFF

10 THAT ISN'T IMPORTANT, IN MY VIEW, TO BE RE-READ OR REDISCUSSED.

11 WHAT ABOUT THIS?  WE KNOW THE WOMAN WENT FROM, AS YOU SAID,

12 FROM PLACE TO PLACE.  IN AUGUST 2008 SHE WORKED IN LAS VEGAS,

13 BUT THAT'S GOING TO GO IN.  THE DETAILS ABOUT THE NORTH HALL,

14 HOW MANY PEOPLE SHE IS SUPERVISING DOESN'T GO TO SAY WHERE SHE

15 GOT THESE PEOPLE, DOES IT?

16         **MR. SLANIA:**  NO, YOUR HONOR.

17         **MR. SCHOUTEN:**  NO, YOUR HONOR.

18         **THE COURT:**  SO LET'S TAKE THAT OUT.  I'LL RULE THAT

19 EXCLUDED.

20         **MR. SCHOUTEN:**  YOUR HONOR, IF I MAY.  PAGE 20, LINES

21 4 TO 10 DISCUSS WHETHER OR NOT SHE WAS A TEMPORARY WORKER OR A

22 FULL-TIME WORKER OR A PART-TIME WORKER.  MY UNDERSTANDING IS

23 THAT IS VERY MUCH A LIVE ISSUE IN THIS CASE:  WHETHER OR NOT

24 UNITED EMPLOYEES WERE TEMPORARY, WHETHER THEY WERE FULL-TIME.

25 AND THAT HAS A SEPARATE SIGNIFICANCE FROM VEGAS OR NON-VEGAS.

1          **THE COURT:**  IN 2008, AFTER THE POLICY AND ALL OF

2     THAT?  IF THEY WERE TEMPORARY OR NOT, I THOUGHT THAT WAS MORE

3     FOCUSED ON THE INTEGRITY OF THE WORK STAFF THAT WOULD LEAD TO

4     SECURITY, COORDINATION, CLEANING SATISFACTION ISSUES.

5          **MR. SCHOUTEN:**  WELL, YOUR HONOR, FURTHER DOWN IN THE

6     TESTIMONY SHE TESTIFIES THAT SHE WAS HIRED TO BE A TEMPORARY

7     WORKER, AND SHE REMAINED A TEMPORARY WORKER.  AND SHE REMAINED

8     A TEMPORARY WORKER EVEN AFTER 2007, FOR UNITED.  YOU KNOW, I

9     THINK THAT IS SOMEWHAT SIGNIFICANT, THAT EVEN AFTER SOME OF

10    THESE ISSUES WERE BROUGHT TO UNITED'S ATTENTION, SHE REMAINS AS

11    A TEMPORARY WORKER AND THEY REMAINED EMPLOYING TEMPORARY LABOR,

12    AT LEAST AS SHE UNDERSTANDS HER POSITION WITH THE COMPANY.

13         **THE COURT:**  I DON'T THINK SO.  I AM GOING TO STRIKE

14    THAT PORTION.

15         LET'S MOVE TO 299, 19 TO 24.

16         **MR. SLANIA:**  YOUR HONOR, IT WASN'T DESIGNATED AT THE

17    PRETRIAL ISSUE.  AND THEN I WAS -- IT'S ONE TOPIC THAT I WANTED

18    TO ASK EXACTLY WHAT IT WAS THAT IS BEING IMPEACHED HERE.

19    BECAUSE THE RESPONSE I GOT FROM MR. SCHOUTEN WAS THIS IS BEING

20    OFFERED TO IMPEACH.  AND HE ACKNOWLEDGED THAT IT WASN'T

21    DESIGNATED PREVIOUSLY.  SO I'M JUST CURIOUS AS TO WHAT THE

22    IMPEACHMENT VALUE IS, BECAUSE I DON'T BELIEVE THAT ANYBODY

23    TESTIFIED AT ALL ABOUT JAVIER RAMIREZ.  SO I DON'T KNOW HOW IT

24    COULD BE IMPEACHING ANYTHING WHEN THE NAME HASN'T EVEN BEEN

25    BROUGHT UP.

1      **THE COURT:**  LET'S FIND OUT.

2      HOW IS IT IMPEACHING?

3      **MR. SCHOUTEN:**  WELL, IT'S IMPEACHING BECAUSE IT

4  DISCUSSES HOW UNITED SELECTS ITS EMPLOYEES.  29, 19 TO 29, 24

5  IS JUST A SETUP TO EXPLAIN WHAT HAPPENS IN 30, 3 TO 31, 09.

6      **THE COURT:**  OKAY.  LET ME READ THAT, IF IT CONNECTS.

7  THAT WILL BE IMPORTANT TO HAVE IN MIND.

8  (PAUSE)

9      YEAH.  THE PORTION AT 29 CONNECTS TO THE PART AT PAGE

10  30.  THAT IS ALSO OBJECTED TO, ALTHOUGH, AGAIN, IT WAS NOT

11  DESIGNATED.

12      **MR. SLANIA:**  THERE IS NO IMPEACHMENT VALUE HERE.

13  WHAT THIS WITNESS IS TESTIFYING TO IS THAT IN 1997 OR 1998 SHE

14  WAS HIRED BY A FRIEND -- OR SHE WAS INVITED BY A FRIEND TO GO

15  TO WORK, WHICH IS WHAT MR. LINN TESTIFIED TO ON THE STAND

16  REGARDING HOW PEOPLE WERE HIRED:  THAT THEY WENT TO FAMILY AND

17  FRIENDS.  THAT IS ABSOLUTELY CONSISTENT WITH HIS PRIOR

18  TESTIMONY.  AND THE OTHER PERSON WHO IT'S SUPPOSEDLY IMPEACHING

19  IS MR. RAMIREZ.  MR. RAMIREZ DIDN'T TESTIFY TO HIRING ANYBODY

20  IN SAN DIEGO IN 1997 OR 1998 BECAUSE HE WASN'T EVEN IN SAN

21  DIEGO YET.

22      **THE COURT:**  I DON'T THINK IT'S IMPEACHMENT, BUT IT

23  MAY HAVE RELEVANCE BECAUSE WE HAVE HAD DISCUSSION ABOUT HOW

24  PEOPLE WERE HIRED, AND HOW THE CONVENTION CENTER HIRES.  I SEE

25  SOME RELEVANCE THERE, BUT I DON'T SEE IT AS IMPEACHMENT.  YOU

APRIL 11, 2011

1   DON'T CARE HOW YOU GET IT IN, I GUESS.

2           **MR. SCHOUTEN:**  PARDON ME?

3           **THE COURT:**  YOU DON'T CARE HOW YOU GET IT IN IF YOU

4   CAN JUST GET IT IN.  IT'S NOT IMPEACHMENT.  I THINK IT'S

5   RELEVANT.  IT HAS SOME TENDENCY AND LOGIC TO GO TO THIS ISSUE

6   OF THE INTEGRITY OF THE WORKFORCE, THE SCREENING AND THE

7   SECURITY QUESTIONS AND ALL OF THAT.  MAYBE NOT HUGE, BUT THERE

8   IS NO PREJUDICE TO IT.  SO I WILL ALLOW THOSE PORTIONS ON THAT

9   BASIS.  IT MAY NOT HAVE BEEN DESIGNATED, BUT I DON'T SEE IT AS

10  EARTHSHAKING AT THAT STAGE.

11          SO THAT'S IT.  AND ROCHA IS SET TO GO.  IF SHE COMES

12  IN PERSON THEN WE'LL GET THE PLEASURE OF HER COMPANY.  AND IF

13  NOT, WE CAN PROCEED WITH THAT.  I'M GOING TO LET MY STAFF GO.

14  ANYTHING ELSE WE CAN TALK UP IN THE MORNING.

15          THANK YOU, FOLKS, FOR YOUR PATIENCE AND ENDURANCE

16  HERE, AND WE WILL BE IN RECESS FOR THE NIGHT.

17  (CONTINUED TO PAGE 50)

18

19

20

21

22

23

24

25

APRIL 11, 2011

1          **MR. L'ESTRANGE:**   THANK YOU AND YOUR STAFF FOR

2     STAYING.

3     (PROCEEDINGS CONCLUDED AT 5:42 P.M.)

4                          CERTIFICATION

5          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
      QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
6     STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
      TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
7     ON APRIL 11, 2011; THAT SAID TRANSCRIPT IS A TRUE AND CORRECT
      TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT
8     USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE
      UNITED STATES JUDICIAL CONFERENCE.

9

10    DATED:    4/13/11, AT SAN DIEGO, CALIFORNIA.

11    _____

12          JEANNETTE N. HILL, OFFICIAL REPORTER, CSR NO. 11148

13

14

15

16

17

18

19

20

21

22

23

24

25

                          APRIL 11, 2011