FILED

MAY 0 4 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada Corporation, | ) ) ) | Civil No.07cv2172 AJB |
| Plaintiff, | ) ) | JURY INSTRUCTIONS |
| v. | ) ) | |
| SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## 1.1C  DUTY OF JURY (COURT READS AND PROVIDES
## WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

/

**Instruction 203:  Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, United National Maintenance ("United"), claims that the Defendant, San Diego Convention Center Corporation ("SDC") has violated federal antitrust laws and state interference with contract and prospective economic relations laws.

SDC denies those claims and also contends that it is immune from liability and damages, had business justifications for its conduct and United failed to mitigate damages.

United denies that any of SDC's defenses are valid.

You will be instructed later on which party has the burden of proof for each claim and defense.

2

### 1.3  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*3*

## 1.6  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.     the sworn testimony of any witness;

2.     the exhibits which are received into evidence; and

3.     any facts to which the lawyers have agreed.

## 1.7 WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

5

## 1.9  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## 1.10  RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

## 1.11 CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## 1.12  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## 1.13  NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

*10*

## 1.14 TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## 1.16 JURY TO BE GUIDED BY OFFICIAL ENGLISH
## TRANSLATION/INTERPRETATION

Languages other than English may be used during this trial.

The evidence to be considered by you is only that provided through the official court interpreters. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

## 1.18  BENCH CONFERENCES AND RECESSES

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum.  I did not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Instruction 219**: **Stipulations of Fact**

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.

**A.     ADMITTED FACTS.**

1.      United is a corporation organized and existing under the laws of the State of Nevada, authorized and qualified to transact business in California.

2.      SDC is a corporation organized and existing under the laws of the State of California, authorized and qualified to transact business in California, with its principal place of business in San Diego, California.

3.      United is engaged in the business of providing cleaning, janitorial, maintenance and related services to trade shows and conventions nationwide, including at the San Diego Convention Center.

4.      SDC was incorporated on October 31, 1984 and has managed, marketed and operated the San Diego Convention Center ("Building") continuously since 1989.

5.      SDC is a non-profit public benefit corporation, with the sole shareholder being the City of San Diego.

6.      SDC operates and manages the Building located at 111 West Harbor Drive, San Diego, California, on behalf of the City of San Diego pursuant to a management agreement. The City of San Diego leases the Building from the San Diego Unified Port District. The Building offers over 615,000 square feet of exhibit space and over 1,000,000 square feet of combined exhibit and meeting space.

7.      SDC's primary business is to lease the Building, pursuant to license agreements, to various trade associations/organizations for daily periods to hold trade shows, conventions and other events.

8.      Trade shows are produced by professional associations or trade show managers acting on their behalf. Trade associations or managers typically hire general service contractors, such as GES Exposition Services, Champion Exposition Services or Freeman Decorating Services, Inc., to organize and manage trade shows. These contractors are commonly referred to as "Decorators." All three of these Decorators, as well as other Decorators, provide trade show related services at the Building and at other convention centers nationwide.

9.      The Decorators hire subcontractors to perform many of the various services associated with trade shows, including cleaning, electrical, exhibit installation, exhibit dismantling, drayage, and other services.

## B.      UNCONTESTED FACTS.

1.      A substantial part of the alleged events and omissions giving rise to United's claims occurred in, or substantially affect, interstate commerce.

2.      SDC is a government entity.

3.      SDC is a state actor for purposes of the state action doctrine.

4.      Effective July 1, 2007, SDC implemented the cleaning services policy at issue here by amending the Building's Policies, Rules and Regulations to state: "only SDC employees are permitted to provide event cleaning within the center" (the "Cleaning Services Policy").

5.      SDC implemented the Cleaning Services Policy on its own accord.

6.      No entity other than SDC is a party to, or a beneficiary under, SDC's Cleaning Services Policy.

7.      The Cleaning Services Policy is a result of SDC's unilateral action.

8.      In 2005, the City of San Diego adopted the Living Wage Ordinance ("LWO"). As

*15*

of July 1, 2007, the LWO applies to SDC. The LWO does not apply to United.

**Instruction 220:  Judicial Notice**

The court has decided to accept as proved (the fact that [*state fact*]) the following facts as true, even though no evidence has been introduced on the subject:

1.  California Government Code § 37501 states:

> A city may acquire, by condemnation or otherwise, the necessary land and construct and maintain a public assembly or convention hall upon it, and may incur indebtedness for such purpose.

2.  California Government Code § 37505 states:

> Money obtained from the use of such building shall be deposited in the city treasury to the credit of the proper fund and applied, in order, to the following purposes exclusively:

> (a) The necessary expenses of maintaining, insuring, and making improvements and repairs on, the hall.

> (b) Payment of interest and principal on the bonds.

> (c) The surplus remaining may be appropriated and used for general municipal purposes.

3.  California Government Code § 37506 states:

> In cities not having a board of public works, by ordinance the legislative body may appoint a commission to select the site for the building, supervise its construction, and manage its use. By ordinance, the legislative body shall prescribe the powers and duties of the commission.

4.  On August 20, 1984, the San Diego City Council adopted Resolution R-261419. A copy of Resolution R-261419 has been marked as Exhibit 1331 and attached to this instruction.

5.  On February 7, 2003, the Governor of California signed Executive Order No. D-67-03. A copy of Executive Order No. D-67-03 has been marked as Exhibit 1332 and attached to this instruction.

You must accept these facts as true.

*17*

(R-85-308)

RESOLUTION NUMBER R-261419

ADOPTED ON AUGUST 20, 1984


BE IT RESOLVED, that the proposed Articles of Incorporation

and Bylaws of the SAN DIEGO CONVENTION CENTER CORPORATION, INC.,

a California non-profit corporation, copies of which are on file

in the office of the City Clerk as Document Nos. RR-261419-1 and

RR-261419-2, be and they are hereby approved and the City

Attorney is hereby authorized to take such action as is necessary

to cause said corporation to be legally forced.

BE IT FURTHER RESOLVED, that the Agreement between the City

and SAN DIEGO CONVENTION CENTER CORPORATION, INC., to provide

operating and maintenance services for the San Diego Convention

Center, on file in the office of the City Clerk as Document No.

RR-261419-3, be and it is hereby approved and the City Manager is

authorized to execute said agreement.


APPROVED:  John W. Witt, City Attorney

By

    C. M. Fitzpatrick


*18*

Assistant City Attorney

CMF:js:715.8

08/15/84

Or.Dept:Rules

R-85-308

Form=r.none

*19*

**EXECUTIVE ORDER D-67-03**
**by the**
**Governor of the State of California**

WHEREAS, on September 11, 2001, civilian buildings and government facilities in the State of New York, Washington, D.C., and the Commonwealth of Pennsylvania were the targets of multiple, coordinated terrorist attacks on the United States, which caused tremendous damage, injury and loss of life; and

WHEREAS, on September 11, 2001, I proclaimed a State of Emergency to exist as a result of these attacks; and

WHEREAS, on September 14, 2001, the President declared a national emergency as a result of these attacks; and

WHEREAS, the congress has enacted, and the President has signed the "Homeland Security Act of 2002", which establishes the Department of Homeland Security, a federal department whose primary mission is to prevent, protect against and respond to acts of terrorism on American soil; and

WHEREAS, the federal government has primary responsibility for the security and safety of the nation, but state and local officials must assure California's readiness to prevent and respond to terrorist attacks and recommend such additional measures as may be necessary; and

WHEREAS, in 1999, the Governor's Office of Emergency Services joined with federal, state and local agencies to establish an inter-disciplinary committee known as the State Strategic Committee on Terrorism to plan for and develop programs to address terrorist threats; and

WHEREAS, the California Anti-Terrorism Information Center was established on September 25, 2001 to coordinate the exchange and assessment of information between state and local law enforcement agencies regarding terrorism within California; and

WHEREAS, it is in the best interests of the citizens of California to coordinate state security activities throughout California, and to highlight the extraordinary technological capabilities of California's private industry to help protect all Americans;

NOW, THEREFORE, I GRAY DAVIS, Governor of the State of California, by virtue of the power and authority invested in me by the Constitution and statutes of the State of California, do hereby issue this order to become effective immediately:

IT IS ORDERED that the State of California Office of Homeland Security be established in the Office of the Governor. The mission of the Office of Homeland Security shall be to develop and coordinate the implementation of a comprehensive state strategy to coordinate security activities throughout California, and to highlight the extraordinary technological capabilities of California's private industry to help protect all Americans.

IT IS FURTHER ORDERED that the Office of Homeland Security shall be headed by a Director, who shall be appointed by, and who shall serve at the pleasure of, the Governor. The Director of the Office of Homeland Security shall be the individual primarily responsible for coordinating state security efforts of all departments and agencies in the State of California and shall be the principal point of contact for and to the Governor with respect to coordination of such efforts.

IT IS FURTHER ORDERED that the duties and responsibilities of the Office of Homeland Security shall include the following:

1. Coordinating security activities throughout California.

2. Coordinating the activities of all state agencies pertaining to terrorism-related issues, including, but not limited to, all legislative issues, contact with federal and local agencies, training, and public outreach activities.

*20*

3. Coordinating and approving all activities between state agencies and federal agencies on topics related to terrorism, including coordinating and approving all state requests for federal funds designated for terrorism-related activities, developing guidelines for all such state requests, and approving the distribution of any federal funds allocated to the state.

4. Serving as the principal point of contact for and to the Governor with respect to the federal Department of Homeland Security and all other federal and state agencies, and legislators, on matters relating to terrorism and state security.

5. Coordinating the review and assessment of the State of California Emergency Plan and the California Terrorism Response Plan, and coordinating the amendment and the submission of those plans, through the California Emergency Council, to the Governor for approval.

6. Assigning specific state security functions to state agencies consistent with the duties and responsibilities identified in the California Emergency Plan and the California Terrorism Response Plan. Such assignments will be made by the Administrative Order issued by the Director of the Office of Homeland Security.

7. Coordinating efforts to ensure that all state departments and agencies that have intelligence collection responsibilities have sufficient technological capabilities and resources to collect intelligence and data relating to terrorist activities or possible terrorist acts within the State of California.

8. Highlighting the extraordinary technology capabilities of California's private industry to help protect all Americans.

IT IS FURTHER ORDERED that the Director of the Office of Homeland Security shall be appointed by and serve at the pleasure of the Governor.

IT IS FURTHER ORDERED that the Director of the Office of Homeland Security shall serve as the Chair of the State Strategic Committee on Terrorism and, in his capacity as the Governor's security advisor, as the Chair off the Emergency Response Training Advisory Committee.

IT IS FURTHER ORDERED that the Directors of the Office of Emergency Services and the Office of Criminal Justice and Planning shall report to the Governor's Office through the Director of the Office of Homeland Security.

IT IS FURTHER ORDERED that all state departments and agencies are directed to assist the Office of Homeland Security and the Director of the Office of Homeland Security in carrying out the purposes of this order and the functions of the Office of Homeland Security.

IT IS FURTHER ORDERED that to the extent specific directives contained herein are inconsistent with directives contained in Executive Order W-9-91 and Executive Order D-47-01, the directives contained herein supersede those contained in the prior executive orders, all other prior directives remain in effect.

This order does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the State of California, its departments, agencies or instrumentalities, its officers or employees, or any other person.

I FURTHER DIRECT that as soon as hereafter possible, this order shall be filed with the Office of the Secretary of State and that widespread publicity and notice be given to this order.

IN WITNESS WHEREOF I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this seventh day of February 2003.

/s/ Gray Davis

Governor of California

*21*

## 2.4 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

## 2.8 IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

23

## 2.11  EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## 2.12  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

25

## 2.13  CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

26

### 3.1 DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 3.2  COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

28

### 3.3  RETURN OF VERDICT

A verdict form has been prepared for you.  [*Any explanation of the verdict form may be given at this time.*]  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

29

## 4.1 CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## 4.2   LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**<u>Instruction 230</u>:   The Sherman Act**

Plaintiff United claims that Defendant SDC violated the Sherman Act.

**Instruction 231:   Purpose of the Sherman Act**

The purpose of the Sherman Act is:

      (1)      to preserve and advance our system of free, competitive enterprise;

      (2)      to encourage, to the fullest extent practicable, free and open competition in the marketplace; and

      (3)      to prevent the accomplishment of a monopoly in any business or industry

all to the end that the consuming public may receive better goods and services at a lower cost.

**Instruction 404:  Monopolization – Elements**

United contends that it was injured by SDC's unlawful monopolization of the market for trade show cleaning services at the San Diego Convention Center.  SDC contends the market is the national market for hosting trade shows.  To prevail on this claim, United must prove each of the following elements by a preponderance of the evidence:

1.     That trade show cleaning services at the San Diego Convention Center is a valid antitrust market;

2.     That SDC possessed monopoly power in that market;

3.     That SDC "willfully" acquired or maintained monopoly power in that market by engaging in anti-competitive conduct; and

4.      That United was injured in its business or property because of SDC's anticompetitive conduct.

*34*

**Instruction 405**: **Monopolization—Monopoly Power Defined**

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.   More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.

I will provide further instructions about how you may determine whether United has met its burden of proving monopoly power in a relevant market.

35

**Instruction 406**: **Monopolization—Relevant Market**

Defining the relevant market is essential because you are required to make a judgment about whether SDC has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain SDC's freedom to set prices for or restrict the output in a properly defined relevant market. The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act as restraints on SDC's power to set prices as it pleases. All the firms and products that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether United has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.

**Instruction 407**: Monopolization—Relevant Product Market

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers —to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors.  If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider:

- Consumers' views on whether the products are interchangeable;

- The relationship between the price of one product and sales of another;

- The presence or absence of specialized vendors;

- The perceptions of either industry or the public as to whether the products are in separate markets;

- The views of the plaintiff and defendant regarding who their respective competitors are; and

- The existence or absence of different customer groups or distribution channels.

In this case, United contends that the proper relevant product market is trade show cleaning services at the San Diego Convention Center.  SDC contends that the proper relevant market is hosting trade shows.

**Instruction 408**: Monopolization-Relevant Product Market- Supply Substitutability

In deciding whether United has proven a relevant product market, you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, "the extent to which the producers of one product would be willing to shift their resources and personnel to producing another product in response to an increase in the price of the other product." Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels – defeating any effort by a would-be monopolist to charge significantly higher prices.

If, in determining the parameters of the relevant product market, you find that there are businesses that have the ability to alter their production of the ~~to manufacture~~ products that can reasonably be substituted with SDC's—even though they do not presently compete with SDC—you may consider whether the existence of these potential alternative suppliers can influence the prices that SDC charges for its product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that no cross-elasticity of supply exists, you may define the market solely on your evaluation of whether the allegedly competing products are reasonable substitutes for each other from the consumer's perspective.

39

**Instruction 409**: Monopolization – Relevant Geographic Market

The relevant geographic market is the area in which SDC faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

In this case, United claims that the relevant geographic market is large convention centers in the San Diego metropolitan area, or equivalently, the San Diego Convention Center.  By contrast, SDC claims that the relevant geographic market is nationwide. In determining whether United has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- The geographic area in which SDC sells and where SDC's customers are located;

- The geographic area to which customers turn for supply of the product;

- The geographic area to which customers have turned or have seriously considered turning; and

- The geographic areas that suppliers view as potential sources of competition.

*40*

**Instruction 411: Existence of Monopoly Power – Indirect Proof**

If you find that United has proven a relevant market, then you should determine whether SDC has monopoly power in that market.  As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  The evidence presented by the parties includes evidence of SDC's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors.  If the evidence establishes that SDC has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that SDC has monopoly power in the market.

*Market Share*

The first factor that you should consider is SDC's market share.  Based on the evidence that you have heard about SDC's market share, you should determine SDC's market share as a percentage of total industry sales.

A market share above 50 percent may be sufficient to support an inference that SDC has monopoly power, but in considering whether SDC has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with SDC's market share, these factors should inform you as to whether SDC has monopoly power.  The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that SDC has monopoly power. However, if you find that the other evidence

41

demonstrates that SDC does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that SDC has monopoly power.

### Market Share Trends

The trend in SDC's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

### Barriers to Entry

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include property rights, specialized marketing practices, and the reputation of the companies already participating in the market.

Evidence of low or no entry barriers may be evidence that SDC does not have monopoly power, regardless of SDC's market share, because new competitors could enter easily if SDC attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that SDC has monopoly power.

### Entry and Exit By Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that SDC lacks monopoly power.  On the other hand, departures from the market, or the failure of

firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that SDC has monopoly power.

### Number and Size of Competitors

You may consider whether SDC's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on SDC's ability to price its products. If SDC's competitors are vigorous or have large or increasing market shares, this may be evidence that SDC lacks monopoly power. On the other hand, if you determine that SDC's competitors are weak or have small or declining market shares, this may support an inference that SDC has monopoly power.

**Instruction 412:** **Monopolization—Willful Acquisition or Maintenance of Monopoly Power**

The next element United must prove is that SDC willfully acquired monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

44

In determining whether SDC's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

45

**Instruction 413**: Monopolization—Essential Facility

As stated before, one of the elements United must prove is that SDC engaged in anticompetitive conduct.  United claims that this element is satisfied in this case because it claims that SDC refused to deal with United and thereby denied United access to a facility essential to competition in a relevant market. This claim requires that you examine SDC's conduct under the so-called "essential facility" or "bottleneck" theory of antitrust liability according to the following principles of law.

Ordinarily, a company may deal or refuse to deal with whomever it pleases, as long as it acts independently.  A company that has exclusive control over a facility essential to effective competition may refuse to deal with another person as long as it has valid business reasons for that refusal - that is, a company may deny access as long as it has a business reason for the denial of access other than the harmful effect that the denial would have on competitors.  However, a company may not deny potential competitors access to that facility on reasonable terms and conditions if it does not have valid business reasons for the refusal and if denying access would create or maintain monopoly power in the relevant market.

United alleges that SDC denied it access to the San Diego Convention Center without a valid business reason.  In order to establish that the denial of access to the San Diego Convention Center constitutes "anticompetitive conduct" and thus satisfies the third element of a monopolization claim, United must prove each of the following elements by a preponderance of the evidence:

46

1.   That SDC controls an "essential facility" (a facility that is essential
     to effective competition in the relevant market); and

2.   That SDC denied United reasonable access to the San Diego
     Convention Center.

A facility is essential if:

(a)   the facility is located in an upstream market over which SDC has
      monopoly control;

(b)   SDC's control of the facility carries with it the power to eliminate
      competition in a downstream, relevant market;

(c)   the facility could not practically or economically be duplicated by United
      or other potential competitors and is otherwise unavailable to United;

(d)   access to the facility is vital to United's survival in the downstream,
      relevant market; and

(e)   access to the facility by United (and/or competitors) is necessary to
      increase competition in the downstream, relevant market.

The fact that the use of the facility would make it easier or less costly for a firm to
compete in the relevant market does not make the facility essential if the firm is capable
of competing without the use of the facility.

47

**Instruction 414: Monopolization—Business Justification**

SDC has introduced evidence that its conduct was based on legitimate business purposes. Conduct that is designed to protect or further the legitimate business purposes of SDC does not violate the antitrust laws, even if that conduct injures competitors. United has the burden of proving by a preponderance of the evidence that SDC's conduct was not motivated by legitimate business purposes. This issue has two interrelated parts.

First, you should decide whether each business purpose or reason advanced by SDC was legitimately competitive. In general, the desire to maintain monopoly power or to block entry of competitors is not a legitimate business purpose. A legitimate business purpose is one that benefits a company regardless of any harmful effect on competitors, such as promoting efficiency or quality, offering a better product or service, or increasing short run profits, or otherwise benefiting consumers. Thus, conduct that harms SDC's independent interests and makes sense only to obtain or maintain monopoly power is not based on legitimate business purposes. Conduct that is based in part on legitimate business reasons, even if it is also motivated by the desire to harm competitors, does not violate the antitrust laws.

Second, if you find that any business purpose advanced by SDC is legitimate, you should then consider whether each such reason is pretextual—in other words, not a genuine reason for SDC's conduct.

48

It is up to you to determine whether SDC's conduct was motivated by legitimate business purposes or whether it was designed solely to obtain or maintain monopoly power.

49

**Instruction 415: Monopolization—Injury and Causation**

United is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

1.     That United was in fact injured as a result of SDC's alleged violation of the antitrust laws;

2.     That SDC's alleged illegal conduct was a material cause of United's injury; and

3.     That United's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For United to establish that it is entitled to recover damages, it must prove that it was injured as a result of SDC's alleged violation of the antitrust laws. Proving the fact of damage does not require United to prove the dollar value of its injury. It requires only that United prove that it was in fact injured by SDC's alleged antitrust violation. If you find that United has established that it was in fact injured, you may then consider the amount of United's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that United has established that it was in fact injured.

United must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that SDC's alleged illegal conduct was a material cause of United's injury. This means that United must have proved that some damage occurred to it as a

*50*

result of SDC's alleged antitrust violation, and not some other cause. United is not required to prove that SDC's alleged antitrust violation was the sole cause of its injury; nor need Untied eliminate all other possible causes of injury.  It is enough if United has proved that the alleged antitrust violation was a material cause of its injury.  However, if you find that United's injury was caused primarily by something other than the alleged antitrust violation, then you must find that United has failed to prove that it is entitled to recover damages from SDC.

Finally, United must establish that its injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If United's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then United's injuries are antitrust injuries.  On the other hand, if United's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then United's injuries are not antitrust injuries and United may not recover damages for those injuries under the antitrust laws.  You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit—and the antitrust laws do not permit a United to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if United can establish that it was in fact injured by SDC's conduct, SDC's conduct was a material cause of United's injury, and that United's injury was the

type that the antitrust laws were intended to prevent, then United is entitled to recover

damages for the injury to its business or property.

## JURY INSTRUCTION NO. 416

### Attempted Monopolization—Elements

United alleges that it was injured by SDC's unlawful attempt to monopolize. To prevail on its claim of attempted monopolization, United must prove each of the following elements by a preponderance of the evidence:

1. That SDC engaged in anticompetitive conduct;

2. That SDC had a specific intent to achieve monopoly power in a relevant market;

3. That there was a dangerous probability that SDC would achieve its goal of monopoly power in the relevant market; and

4. That United was injured in its business or property by SDC's anticompetitive conduct.

53

**Instruction 417: Attempted Monopolization—Anticompetitive Conduct**

It is not sufficient for United to prove that SDC intended to monopolize the relevant market.  United must also show that SDC engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that SDC would succeed.

I have previously instructed you with respect to United's burden to establish a relevant market and prove that SDC engaged in anticompetitive conduct by a preponderance of the evidence. I have also instructed you on legitimate business justifications. Those instructions apply to this claim as well.

**Instruction 418: Attempted Monopolization—Specific Intent**

The second element that United must prove in its attempted monopolization claim is that SDC had a specific intent to monopolize a relevant market.  To do so, United must first prove the market it is talking about—trade show cleaning services at the San Diego Convention Center—is a relevant market for antitrust purposes. United must then prove that SDC had a specific intent to monopolize that market. The Court will begin by instructing you on the relevant market, and the Court will then discuss specific intent. If United proves both that trade show cleaning services at the San Diego Convention Center is a relevant market and that SDC had a specific intent to monopolize that market, you must find that United has proven this element of its attempted monopolization claim and you should consider the other elements of the claim. If you find that United fails to prove either of these points, then you must find for SDC on United attempted monopolization claim.

If you find that United has proven a relevant market, you must then decide whether SDC had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that SDC acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which United may prove that SDC had the specific intent to monopolize.  There may be evidence of direct statements of SDC's intent to obtain a monopoly in the relevant market.  Such proof of specific intent may be established by documents prepared by responsible officers or employees of SDC at or about the time of the conduct in question or by testimony concerning statements made by

responsible officers or employees of SDC.  You must be careful, however, to distinguish between a SDC's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that SDC actually intended to obtain a monopoly, specific intent may be inferred from what SDC did.  For example, if the evidence shows that the natural and probable consequence of SDC's conduct in the relevant market was to give SDC control over prices and to exclude or destroy competition, and that this was plainly foreseeable by SDC, then you may (but are not required to) infer that SDC specifically intended to acquire monopoly power.

*56*

**Instruction 419: Attempted Monopolization—Dangerous Probability of Success**

If you find that SDC had the specific intent to achieve a monopoly and engaged in anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that SDC would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that SDC would acquire the ability to control price in the market, you should consider such factors as:

1.    SDC's market share;

2.    The trend in SDC's market share;

3.    Whether the barriers to entry into the market made it difficult for competitors to enter the market; and

4.    The likely effect of any anticompetitive conduct on SDC's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that SDC would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that SDC would ultimately acquire monopoly power.

**Instruction 420**: **Attempted Monopolization—Injury and Causation**

In order to determine whether United has proven the fourth element of its attempted monopolization claims, you must determine whether it has demonstrated that SDC's conduct caused United's injury to its business and property.

In order to assess whether SDC's conduct caused United's injury, you are to follow the instructions I have already provided in Jury Instruction No. 415.

*58*

**<u>Instruction 421</u>: Antitrust Defense  State Action Doctrine**

SDC claims that it is exempt from liability on the antitrust claims under the State Action Doctrine.

SDC bears the burden of proving by a preponderance of the evidence each of the following elements to qualify for immunity under the State Action Doctrine:

1.      That the State authorized SDC's challenged actions; and

2.      That the State intended to displace competition with regulation.

You are not to decide if state authorization requires or commands SDC's challenged actions.  Instead, you must determine whether SDC's conduct is a foreseeable and logical result from the State's authorization.

In considering the State Action Doctrine only, you must not consider the motivations of the individual actors in adopting or implementing SDC's policies.

*59*

**Instruction 453**: Antitrust Damages – Local Government Antitrust Act

United may not recover antitrust damages for any portion of its injuries attributable to an antitrust violation from any local government entity, or any person based on official action directed by a local government entity.

SDC has the burden of proof on this issue. SDC must prove by a preponderance of the evidence that it is: (1) "local government"; or (2) its actions were official actions directed by a "local government."

The Local Government Antitrust Act defines "local government" as either:

(A)   a city, county, parish, town, township, village, or any other general function governmental unit established by State law, or

(B)   a school district, sanitary district, or any other special function governmental unit established by State law.

SDC's allegedly anticompetitive actions are official actions directed by a "local government" if: (a) SDC's activities were authorized by a local government; and (b) the local government adequately supervised the SDC's activities. In considering the supervision element, you must determine whether SDC's conduct is a foreseeable and logical result from the local government's authorization.

If you find that SDC has proven that it is a "local government" or was directed by a local government, then you may not award any antitrust damages to United. If you find that SDC has not proven that it is "local government" or was directed by a local government, then you must award United the amount of antitrust damages it has proven with reasonable certainty.

**Instruction 422: Antitrust Damages – Effect of Instruction**

I am now going to instruct you on the issue of damages. The fact that I am giving you instructions concerning the issue of United's damages does not mean that I believe the United should, or should not, prevail in this case.

If, for any reason, you reach a verdict for SDC on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give. Instructions as to the measure of damages are given for your guidance in the event you should find in favor of United based on a preponderance of the evidence in accordance with the other instructions I have given you. You should only consider calculating damages if you first find that SDC violated the antitrust laws and that this violation caused injury to United.

**Instruction 423: Antitrust Damages – Introduction and Purpose**

If you find that SDC violated the antitrust laws and that this violation caused injury to United, then you must determine the amount of damages, if any, United is entitled to recover. The law provides that United should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer - what we sometimes refer to as punitive damages - or to deter SDC from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to United an amount for attorney's fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate United for the particular injuries it suffered as a result of the alleged violation of the law.

62

**Instruction 424: Antitrust Damages – Speculation Not Permitted**

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by United. If United establishes with reasonable probability the existence of an injury proximately caused by SDC's antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, United should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. United must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that United has failed to carry its burden of providing a reasonable basis for determining damages, then your verdict must be for SDC. If you find that United has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

63

**<u>Instruction 425</u>: Antitrust Damages –Disaggregation**


United claims that it suffered injury because it lost profits as a result of SDC's antitrust violation. In the normal course of competitive business activity, competitors will lose profits to each other, and to third parties, for various causes that have nothing to do with antitrust law violations; and businesses can be unprofitable for causes that have nothing to do with the antitrust laws.  United may not recover for lost profits if it lost those profits because of the superior business acumen or salesmanship of a competitor, because a competitor offered a superior product, or because of lawful competition from SDC or other competitors. United also may not recover if it lost profits as a result of causes that had nothing to do with SDC's alleged unlawful conduct, such as changes in demand, increased competition from new competitors, changes in product technology, changes in market conditions, poor management or missed opportunities by United, or other factors.  United may not recover antitrust damages for conduct that occurs outside of the relevant market.

United bears the burden of showing that its injuries were caused by SDC's alleged antitrust violation—as opposed to any other factors, such as those that I just described to you. If you find that United's alleged injuries were caused by factors other than SDC's alleged antitrust violation, then you must return a verdict for SDC. If you find that United's alleged injuries were caused in part by SDC's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of United's alleged injuries that were caused by SDC's alleged antitrust violation.

64

United bears the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no reasonable basis to apportion United's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all. If you find that United has proven with reasonable certainty the amount of damage caused by SDC's alleged antitrust violation, then you must return a verdict for the United.

**Instruction 426**: Antitrust Damages –Lost Profits

United claims that it was harmed because it lost profits as a result of SDC's alleged antitrust violation. If you find that SDC committed an antitrust violation and that this violation caused injury to United, you may calculate the profits, if any, that United lost as a result of SDC's antitrust violation. To calculate lost profits, you must calculate net profit: the amount by which United's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

66

**Instruction 430: Damages –Mitigation**

United may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. United is not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If United failed to take reasonable steps available to it, and the failure to take those steps results in greater harm to United than it would have suffered had it taken those steps, then United may not recover any damages for that part of the injury it could have avoided.

SDC has the burden of proof on this issue. SDC must prove by a preponderance of the evidence that United acted unreasonably in failing to take specific steps to minimize or limit its losses, that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps, and the amount by which United's loss would have been reduced had United taken those steps.

In determining whether United failed to take reasonable measures to limit its damages, you must remember that the law does not require United to have taken every conceivable step that might have reduced its damages. The evidence must show that United failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in United's position would likely have adopted, given the circumstances as they appeared at that time. United should be given a wide latitude in deciding how to handle the situation, so long as what United did was not unreasonable in light of the existing circumstances.

**Instruction 266:   Intentional Interference With Contractual Relations**

United claims that SDC intentionally interfered with the contracts between United and "decorators" General Experience Services ("GES") and Champion Exposition Services ("Champion").  To establish this claim, United must prove all of the following, by a preponderance of the evidence, for each contract:

1.   That there was a contract with United;

2.   That SDC knew of the contract;

3.   That SDC intended to disrupt the performance of this contract;

4.   That SDC's conduct prevented performance or made performance more expensive or difficult;

5.   That United was harmed; and

6.   That SDC's conduct was a substantial factor in causing United's harm.

68

**Instruction 434**: **Intentional Interference with Contractual Relations - Intent**

In deciding whether SDC acted intentionally, you may consider whether it knew that a disruption was substantially certain to result from its conduct.

*69*

**Instruction 436**: **Intentional Interference with Contractual Relations - Causation**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

**Instruction 268:** **Intentional Interference with Prospective Economic Relations**

United claims that SDC intentionally interfered with the economic relationships between United and "decorators" Paradice Decorating Co. ("Paradice") and Brede National Exposition Services ("Brede National") that probably would have resulted in an economic benefit to United. To establish this claim, United must prove all of the following, by a preponderance of the evidence, for each economic relationship:

      1.     That United was in an economic relationship that probably would have resulted in an economic benefit to United;

      2.     That SDC knew of the relationship;

      3.     That SDC intended to disrupt the relationship;

      4.     That SDC engaged in wrongful conduct in violation of the antitrust laws, as set forth in this case;

      5.     That the relationship was disrupted;

      6.     That United was harmed; and

      7.     That SDC's wrongful conduct was a substantial factor in causing United's harm.

**Instruction 442: Intentional Interference with Prospective Economic Relations -
Intent**

In deciding whether SDC's wrongful acts were intentional, you may consider whether it knew that a disruption was substantially certain to result from its conduct.

**Instruction 443**: Intentional Interference with Prospective Economic Relations –
**Wrongful Conduct**


Wrongful conduct" is conduct that is in addition to any alleged interference or disruption of the economic relationships between United and Paradice and/or Brede National.

Here, United alleges SDC's conduct is "wrongful" because SDC's conduct violates the antitrust laws, as set forth in this case.

I have previously instructed you on the antitrust claims in this case. If you find that SDC committed the wrongful conduct acts alleged by United and that those acts were intended to, and did, interfere with United's prospective economic relationships then you must find that this "wrongful conduct" requirement has been satisfied and you must consider the remaining elements of the claim.

**Instruction 447**: Intentional Interference – Justification

SDC claims that any interference it may have caused to United's contractual relationships was justified. If you find that SDC intentionally interfered with or disrupted United's contractual relationship with GES and/or Champion or its prospective economic advantage with Paradice and/or Brede, you must then decide whether SDC's conduct was justified.

In making this decision you must, as a general matter, balance the importance of the objective that SDC sought to achieve by its interference against the importance of United's interest with which SDC interfered.

When balancing these interests, you may consider all relevant circumstances, including:

- The nature of SDC's conduct;

- SDC's motive;

- The interest sought to be advanced by SDC;

- The proximity or remoteness of SDC's conduct to the interference;

- The relationship between the parties

- The nature of United's expectancy; and

- The social interest in protecting the expectancy on the one hand, and SDC's freedom of action on the other.

SDC has the burden of proof on this issue. If you find that SDC has proven by a preponderance of the evidence that its behavior was justified, then you must find for the SDC and against the United on the interference claims.

74

**Instruction 448**: **Intentional Interference Damages – General**

If you find that United is entitled to a verdict against SDC based upon the claim of interference with contractual relations or interference with prospective economic advantage, you should then award United damages in an amount that will reasonably compensate United for all loss or harm, providing that you find it was suffered by United and caused by the SDC's conduct. The amount of your award should include the financial loss of the benefits of the contract or the prospective economic relationship.

**Instruction 449**: **Intentional Interference Damages – Lost Profits**

To recover damages for lost profits, United must prove it is reasonably certain it would have earned profits but for SDC's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount United would have received but for SDC's conduct and then subtract from that amount the expenses United had incurred, if SDC's conduct had not occurred, including the value of the labor it received from SDC and any materials, supplies, or other costs United avoided as a result of SDC's conduct.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**Instruction 451: Intentional Interference Damages –Mitigation of Damages**

In order to assess whether SDC met its burden to prove that United failed to mitigate damages, you are to follow the instructions I have already provided in jury instruction no. 430.