1          UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
2

     BEFORE THE HONORABLE ANTHONY J. BATTAGLIA, JUDGE PRESIDING
3


4
                                  ) VOLUME XVI (EXCERPT)
5  UNITED NATIONAL MAINTENANCE,    )
   INC.,                           ) CASE NO. 07CV2172-AJB
6               PLAINTIFF,         )
                                   )
7          -V-                     )
                                   ) SAN DIEGO, CALIFORNIA
8  SAN DIEGO CONVENTION CENTER     ) APRIL 18, 2011
   CORPORATION, INC.,              ) 10:17 A.M.
9                                  )
                DEFENDANT.         )
10 _____ ) JURY TRIAL

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                    50(A) MOTION
14

15

16

17 APPEARANCES:

18 FOR THE PLAINTIFF:   JAMES R. LANCE, ESQ.
                        JAMES M. SLANIA, ESQ.
19                      LAUREN E. LITTEKEN, ESQ.
                        KIRBY NOONAN LANCE & HOGE, LLP
20                      350 TENTH AVENUE, STE. 1300
                        SAN DIEGO, CALIFORNIA 92101
21

22 FOR THE DEFENDANT:   JOHN H. L'ESTRANGE, JR., ESQ
                        JOSEPH THOMAS ERGASTOLO, ESQ.
23                      ANDREW EDWARD SCHOUTEN, ESQ.
                        WRIGHT AND L'ESTRANGE
24                      401 A STREET, STE. 2250
                        SAN DIEGO, CALIFORNIA 92101

25 OFFICIAL REPORTER:   JEANNETTE N. HILL, C.S.R.
                        (619) 702-3905

                     APRIL 18, 2011

2

1     **SAN DIEGO, CALIFORNIA; MONDAY, APRIL 18, 2011; 10:17 A.M.**

2     (PROCEEDINGS HAD IN OPEN COURT, OUTSIDE THE HEARING OF THE

3     JURY)

4              **THE COURT:**  ALL RIGHT.  OUR JURY HAS LEFT FOR THE

5     DAY.  THAT LEADS US THEN TO THESE LEGAL ISSUES I OBLIQUELY

6     REFERENCED.  WHY DON'T WE TAKE A MORNING BREAK AND THEN COME

7     BACK AND I CAN HEAR THE PLAINTIFF'S MOTIONS.  I THINK THAT

8     WOULD BE THE FIRST NEXT STEP, AND WE CAN TALK ABOUT OTHER

9     THINGS TO FOLLOW.  SO IT'S ABOUT 10:20.  WHY DON'T WE TAKE A

10    RECESS UNTIL 10:35, AND WE'LL SEE YOU AT THAT TIME FOR THOSE

11    MOTIONS.

12             **MR. SLANIA:**  THANK YOU, YOUR HONOR.

13    (RECESS FROM 10:18 A.M. TO 10:38 A.M.)

14             **THE COURT:**  SO WE'RE BACK ON THE RECORD WITH COUNSEL

15    AND THE PARTIES IN THE CASE.  AND THEN THE PLAINTIFF HAD

16    MOTIONS IT WANTED TO MAKE, SO LET'S DO THAT FIRST.

17             **MR. SLANIA:**  THANK YOU, YOUR HONOR.

18             **THE COURT:**  WHEN YOU ARE READY.

19             **MR. SLANIA:**  THANK YOU, YOUR HONOR.

20             PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE

21    50(A), UNITED REQUESTS THAT THE COURT RESOLVE TWO AFFIRMATIVE

22    DEFENSES THAT HAVE BEEN ALLEGED BY THE SAN DIEGO CONVENTION

23    CENTER CORPORATION AGAINST SAN DIEGO CONVENTION CENTER

24    CORPORATION.

25             BASED ON ALL THE EVIDENCE THAT HAS BEEN PRESENTED, A

APRIL 18, 2011

1    REASONABLE JURY WOULD NOT HAVE A LEGALLY SUFFICIENT BASIS TO

2    FIND FOR SDC ON EITHER ITS STATE ACTION IMMUNITY DEFENSE OR ITS

3    LOCAL GOVERNMENT ANTITRUST ACT AFFIRMATIVE DEFENSE.  THEREFORE,

4    UNITED REQUESTS THAT THE COURT GRANT UNITED'S MOTION FOR

5    JUDGMENT AS A MATTER OF LAW AGAINST SDC ON THE STATE ACTION

6    IMMUNITY AFFIRMATIVE DEFENSE, AND THE LOCAL GOVERNMENT

7    ANTITRUST ACT AFFIRMATIVE DEFENSE, UNDER FEDERAL RULE OF CIVIL

8    PROCEDURE RULE 50(A).

9         AND CONSISTENT WITH HOW THE PRIOR 50(A) MOTION WAS

10   ARGUED, IF YOU'D LIKE, I WOULD ADDRESS THE STATE ACTION

11   IMMUNITY DEFENSE ARGUMENT FIRST.

12        **THE COURT:**  WHY DON'T WE DO THAT AS TO THE SPECIFICS

13   OF BOTH THE ELEMENTS AND THE FAILING OF THE EVIDENCE IN

14   RELATION TO THOSE.

15        **MR. SLANIA:**  THANK YOU.

16        AS IT RELATES TO THE STATE ACTION IMMUNITY DEFENSE,

17   THAT REQUESTS SDC TO DEMONSTRATE THAT THE EXCLUSIVE POLICY FOR

18   THE PERFORMANCE OF TRADE SHOW CLEANING SERVICES AT THE SAN

19   DIEGO CONVENTION CENTER, AFTER JULY 1ST 2007, WAS CLEARLY

20   ARTICULATED AND AFFIRMATIVELY EXPRESSED AS STATE POLICY.

21        AND THAT STANDARD COMES FROM THE CALIFORNIA RETAIL

22   CASE, 445 U.S. 97, AT PAGE 105.

23        AND THAT STANDARD HAS DEVELOPED INTO A TWO-PRONG

24   TEST.  AND THE CONVENTION CENTER CORPORATION MUST ESTABLISH

25   BOTH ELEMENTS OF THE TWO-PRONG TEST.  FIRST, THE CONVENTION

APRIL 18, 2011

1   CENTER MUST ESTABLISH THAT THE EXCLUSIVE POLICY FOR THE

2   PERFORMANCE OF TRADE SHOW CLEANING SERVICES WAS AUTHORIZED BY

3   STATE LAW.

4           THE SECOND PRONG THAT THE CONVENTION CENTER MUST

5   ESTABLISH IS THAT THE STATE INTENDED TO DISPLACE COMPETITION

6   WITH REGULATION.  ANOTHER WAY OF SAYING THAT IS THAT THE

7   SUPPRESSION OF COMPETITION WAS A LOGICAL AND FORESEEABLE RESULT

8   OF THE REGULATION.  AND THAT COMES FROM THE TRAWEEK CASE AT 920

9   F2D 589, AT 591 AND 592.

10          NOW, ALTHOUGH THERE HAS BEEN QUITE A BIT OF DISPUTE

11  BETWEEN UNITED AND THE CONVENTION CENTER REGARDING THE ENTIRETY

12  OF THIS CASE, THIS APPEARS TO BE ONE AREA IN WHICH THE PARTIES

13  AGREE.  BECAUSE IN THE CONVENTION CENTER'S TRIAL BRIEF, ON PAGE

14  32, THEY AGREE THAT THOSE TWO ELEMENTS NEED TO BE PROVEN.

15          NOW, UNITED CONTENDS THAT A REASONABLE JURY DOES NOT

16  HAVE A LEGALLY SUFFICIENT BASIS TO FIND, BASED ON THE EVIDENCE

17  PRESENTED, EITHER OF THOSE ELEMENTS IN THIS CASE.

18          THAT IS NOT OUR BURDEN OF PROOF ON THIS MOTION, YOUR

19  HONOR.  ALL WE HAVE TO ESTABLISH IS THAT EITHER ONE OR THE

20  OTHER HAS NOT BEEN SATISFIED.  WE DON'T BELIEVE THAT EITHER HAS

21  BEEN SATISFIED.  SO UNITED CONTENDS IT'S ENTITLED TO JUDGMENT

22  AS A MATTER OF LAW UNDER RULE 50(A).

23          DEALING FIRST WITH THE FIRST PRONG, WHETHER OR NOT

24  THE POLICY WAS AUTHORIZED BY STATE LAW.  THERE IS NO STATE

25  STATUTE, THERE IS NO CITY ORDINANCE, THERE IS NO GOVERNOR'S

APRIL 18, 2011

1   EXECUTIVE ORDER THAT SPECIFICALLY AUTHORIZES THE EXCLUSIVE

2   POLICY THAT WE HAVE BEEN LITIGATING ABOUT.  SO THERE IS NO

3   CLEAR EXPRESSION AT ALL OF ANY INTENT BY THE STATE AUTHORIZING

4   THE SPECIFIC POLICY.

5           NOW, THE STATUTES THAT ARE IN EVIDENCE, THROUGH THE

6   REVISED REQUEST FOR JUDICIAL NOTICE SUBMITTED BY THE CONVENTION

7   CENTER, BEGINS WITH GOVERNMENT CODE SECTION 37501.  AND THAT

8   STATUTE SAYS:  A CITY MAY ACQUIRE, BY CONDEMNATION OR

9   OTHERWISE, THE NECESSARY LAND AND CONSTRUCT AND MAINTAIN A

10  PUBLIC ASSEMBLY OR CONVENTION CENTER HALL UPON IT, AND MAY

11  INCUR INDEBTEDNESS FOR SUCH, PURSUANT TO THIS ARTICLE.

12          THERE IS NO CLEAR STATEMENT THERE AUTHORIZING THE

13  POLICY THAT WE'RE LITIGATING ABOUT HERE.  THERE IS ALSO NOTHING

14  IN THAT STATUTE THAT DISCUSSES ELIMINATING OR DISPLACING

15  COMPETITION WITH REGULATION.

16          THE SECOND STATUTE THAT THE CONVENTION CENTER

17  SUBMITTED THROUGH ITS REVISED REQUEST FOR JUDICIAL NOTICE WAS

18  GOVERNMENT CODE SECTION 37505.  AND THIS SECTION DISCUSSES

19  MONEY OBTAINED FROM THE USE OF THE BUILDING.  IT STATES:  MONEY

20  OBTAINED FROM THE USE OF SUCH BUILDING SHALL BE DEPOSITED IN

21  THE CITY TREASURY TO THE CREDIT OF THE PROPER FUND AND APPLIED,

22  IN ORDER, TO THE FOLLOWING PURPOSES EXCLUSIVELY:  A, THE

23  NECESSARY EXPENSES OF MAINTAINING, INSURING, AND MAKING

24  IMPROVEMENTS AND REPAIRS ON THE HALL; B, PAYMENT OF INTEREST

25  AND PRINCIPAL ON THE BONDS; OR C, THE SURPLUS REMAINING MAY BE

1    APPROPRIATED AND USED FOR GENERAL MUNICIPAL PURPOSES.

2              ONCE AGAIN, NO STATEMENT BY THE STATUTE AUTHORIZING

3    THE EXCLUSIVE POLICY OR AUTHORIZING THE ELIMINATION OF

4    COMPETITION THROUGH REGULATION.

5              THE THIRD STATUTE THAT THE CONVENTION CENTER HAS

6    PRESENTED IS GOVERNMENT CODE SECTION 37506.  AND THIS STATUTE

7    DISCUSSES SELECTING THE SITE OF THE BUILDING AND MANAGEMENT OF

8    THE PROPERTY.  IT SAYS:  IN CITIES NOT HAVING A BOARD OF PUBLIC

9    WORKS, BY ORDINANCE THE LEGISLATIVE BODY MAY APPOINT A

10   COMMISSION TO SELECT THE SITE FOR THE BUILDING, SUPERVISE ITS

11   CONSTRUCTION, AND MANAGE ITS USE.  BY ORDINANCE, THE

12   LEGISLATIVE BODY SHALL PRESCRIBE THE POWERS AND DUTIES OF THE

13   COMMISSION.

14             ONCE AGAIN, WE'RE DISCUSSING SELECTION OF THE SITE.

15   NOTHING ABOUT DISPLACING COMPETITION.  SO WE STILL DON'T HAVE

16   ANY STATE LAW THAT AUTHORIZES THE POLICY THAT WAS IMPLEMENTED

17   BY THE CONVENTION CENTER.

18             THE OTHER STATEMENTS THAT WE HAVE, THAT HAVE BEEN

19   SUBMITTED BY THE CONVENTION CENTER, COME FROM THE CITY

20   RESOLUTION, WHICH I BELIEVE IS DESIGNATED AS RESOLUTION NUMBER

21   R-261419, ADOPTED AUGUST 20TH, 1984.  AND THAT DISCUSSES

22   FORMATION OF THE SAN DIEGO CONVENTION CENTER CORPORATION.  ONCE

23   AGAIN, IT DOESN'T DISCUSS AUTHORIZING THIS POLICY.  IT ALSO

24   PREDATES THE FIRST 18 YEARS THAT WE HAD COMPETITION FOR TRADE

25   SHOW CLEANING SERVICES IN THE BUILDING.  SO THERE IS NO INTENT

1   BY THIS RESOLUTION TO DISPLACE COMPETITION.

2          AND THE LAST STATEMENT OF THE LAW THAT WE HAVE THAT

3   HAS BEEN PRESENTED TO THIS JURY ON THIS ISSUE COMES FROM THE

4   GOVERNOR'S EXECUTIVE ORDER.  I BELIEVE IT'S EXECUTIVE ORDER

5   D67-03.  IT MIGHT BE D-67-03.  AND THIS DISCUSSES THE FORMATION

6   OF THE OFFICE OF HOMELAND SECURITY FOR CALIFORNIA.  IT

7   DISCUSSES HOW PRIVATE TECHNOLOGY AND INDUSTRY CAN BE USED TO

8   HELP ALL AMERICANS.  AND IT DISCUSSES READYING FOR TERRORIST

9   ATTACKS.

10          ONCE AGAIN, THIS ORDER DOES NOT STATE THAT THE POLICY

11   THAT HAS BEEN IMPLEMENTED WAS AUTHORIZED IN ANY WAY, OR THAT

12   COMPETITION SHOULD BE DISPLACED.  AND IF ANYTHING, WHEN

13   REFERRING TO THE TECHNOLOGICAL CAPABILITIES OF CALIFORNIA'S

14   PRIVATE INDUSTRY, WHAT THIS ORDER DISCUSSES IS READYING FOR

15   TERRORIST FRONTS BY COMBINING THE PUBLIC AND PRIVATE SECTOR,

16   NOT BY ELIMINATING COMPETITION AMONGST THE PRIVATE SECTOR.

17          SO THE CONVENTION CENTER HAS NOT OFFERED ANY EVIDENCE

18   WHATSOEVER TO THE JURY ABOUT ANY INTENT FROM THE STATE TO

19   AUTHORIZE THIS EXCLUSIVE POLICY.  SO THEY CANNOT ESTABLISH THE

20   FIRST PRONG OF THE TEST UNDER TRAWEEK; AND, THEREFORE, THERE IS

21   NO LEGALLY SUFFICIENT BASIS FOR THE JURY TO FIND THAT ELEMENT

22   HAS BEEN SATISFIED OR THAT THE CONVENTION CENTER WOULD BE

23   ENTITLED TO HAVE ITS AFFIRMATIVE DEFENSE GRANTED IN THIS CASE

24   ON STATE ACTION IMMUNITY.

25          WE'LL GO THROUGH THE ANALYSIS ON THE SECOND ELEMENT,

1    AND UNITED CONTENDS WE COME TO THE SAME CONCLUSION.  FIRST OF

2    ALL -- WELL, THE ELEMENT, JUST TO REMIND THE COURT, IS DID THE

3    LEGISLATURE INTEND TO DISPLACE COMPETITION WITH REGULATIONS?

4    AND THE ANSWER IS NO.

5            WE LOOKED AT THE STATUTES IN DETAIL.  NOTHING IN

6    THOSE STATUTES DISCUSSES ELIMINATING COMPETITION, OR DISPLACING

7    COMPETITION WITH REGULATION, OR ANYTHING ALONG THOSE LINES.

8    THERE IS NO WITNESS THAT TESTIFIED TO THE LEGISLATIVE INTENT OF

9    ANY OF THOSE STATUTES, OR WHY THE CITY RESOLUTION WAS ADOPTED,

10   OR WHY THE GOVERNOR'S ORDER WAS ENTERED, EXPLAINING WHAT THE

11   PURPOSE WAS OR INFERRING IN ANY WAY OR INSINUATING IN ANY WAY

12   THAT THE PURPOSE WAS TO DISPLACE COMPETITION WITH REGULATION.

13           IN FACT, THE STATUTES THAT THE CONVENTION CENTER

14   OFFERED IN THE REVISED REQUEST FOR JUDICIAL NOTICE AND THE CITY

15   ORDINANCE ALL PREDATE, I BELIEVE, WHEN THE CONVENTION CENTER

16   BUILDING OPENED.  AND THEREAFTER, WE HAVE 18 YEARS OF

17   COMPETITION AT THE CONVENTION CENTER BUILDING, COMPETITION

18   REGARDING TRADE SHOW CLEANING SERVICES.

19           SO IF THERE IS ANY INTENT TO BE GLEANED FROM THOSE

20   STATUTES AND THE CITY RESOLUTION, IT'S THAT COMPETITION IS

21   BEING FOSTERED, NOT THAT WE'RE GOING TO BE ELIMINATING

22   COMPETITION WITH ANY TYPE OF REGULATION.

23           NOW, AS WE GET INTO THE GOVERNOR'S ORDER, I THINK AT

24   LEAST IN THE TRIAL BRIEF AND IN OTHER AREAS OF THIS CASE, THE

25   CONVENTION CENTER HAS ARGUED THAT SOMEHOW THE GOVERNOR'S ORDER

APRIL 18, 2011

1  DEMONSTRATES AN INTENT TO DISPLACE COMPETITION WITH REGULATION.

2  ONCE AGAIN, THEY DIDN'T BRING A WITNESS FROM THE GOVERNOR'S

3  OFFICE OR THE OFFICE OF HOMELAND SECURITY TO AT ALL TESTIFY

4  THAT THAT WAS THE INTENT OF THE GOVERNOR'S ORDER.

5          SO THERE IS NO EVIDENCE BEFORE THE JURY THAT THEY

6  COULD SOMEHOW DRAW THAT CONCLUSION FROM.  AND IF YOU LOOK AT

7  WHAT HAPPENED IN THIS CASE AND THE EVIDENCE THAT WAS PRESENTED,

8  IT'S CLEAR THAT THE GOVERNOR'S ORDER DID NOT INTEND TO DISPLACE

9  COMPETITION WITH REGULATION.

10          FIRST OF ALL, THE ORDER TALKS ABOUT THE CALIFORNIA

11  OFFICE OF HOMELAND SECURITY TO DEAL WITH TERRORISM.  AND THE

12  CONVENTION CENTER HAS, THROUGH A WITNESS OR TWO, ATTEMPTED TO

13  MAKE A DEMONSTRATION THAT THAT OFFICE PROVIDED GRANT MONEY FOR

14  THE ASSESSMENTS THAT WERE DISCUSSED AT LENGTH IN FRONT OF THE

15  JURY.  BUT NO SINGLE WITNESS TESTIFIED ABOUT ANY SPECIFIC GRANT

16  THAT THE OFFICE OF HOMELAND SECURITY PROVIDED FOR ANY OF THE

17  VULNERABILITY ASSESSMENTS THAT WERE CONDUCTED AT THE SAN DIEGO

18  CONVENTION CENTER.  NO MEETING MINUTES OR MEMORANDA OF MEETING

19  MINUTES WERE PRESENTED BY THE CONVENTION CENTER REFERRING TO

20  ANY SPECIFIC GRANT BEING OFFERED BY THE CALIFORNIA OFFICE OF

21  HOMELAND SECURITY TO PAY FOR ANY OF THE VULNERABILITY

22  ASSESSMENTS.  THERE IS NO EVIDENCE BEFORE THIS COURT OR BEFORE

23  THIS JURY FOR THE JURY TO CONCLUDE THAT THERE WAS ANY GRANT

24  MONEY UTILIZED FOR THE VULNERABILITY ASSESSMENTS.  THAT IN AND

25  OF ITSELF WOULD BE ENOUGH OF A GROUND UPON WHICH THE

1    AFFIRMATIVE DEFENSE SHOULD BE RESOLVED AGAINST THE CONVENTION

2    CENTER.

3            AND THIS IS NOT SOMETHING THAT IS NEW FOR THE

4    CONVENTION CENTER TO BE AWARE OF, BECAUSE WHEN THEIR MOTION FOR

5    SUMMARY JUDGMENT WAS DENIED, JUDGE BENITEZ SPECIFICALLY DID PUT

6    THE CONVENTION CENTER ON NOTICE:  LOOK, YOU HAVEN'T PRESENTED

7    ANY EVIDENCE THAT THERE WAS ANY GRANT MONEY OR ANY CONNECTION

8    BETWEEN THE GOVERNOR'S ORDER AND THE IMPLEMENTATION OF THIS

9    POLICY.  AND THE ORDER SPECIFICALLY REFERENCES MEETING MINUTES

10   OR MEMORANDA OF ANY TYPE, INTERNAL DOCUMENTS FROM THE

11   CONVENTION CENTER TO PROVE THIS CONNECTION.

12           WE COME TO TRIAL MONTHS LATER AND NONE OF THAT

13   EVIDENCE HAS BEEN PRESENTED.  NOW, IF THE COURT IS INCLINED TO

14   THINK THAT THERE MIGHT BE A LEGALLY SUFFICIENT BASIS BY

15   CONNECTING THE VULNERABILITY ASSESSMENTS TO THE FORMATION OF

16   THE OFFICE OF HOMELAND SECURITY AND THE GOVERNOR'S ORDER FROM

17   2003, THEN THE ONLY LOGICAL AND FORESEEABLE CONSEQUENCE OF

18   THOSE VULNERABILITY ASSESSMENTS IS ADDRESSING THE

19   VULNERABILITIES IDENTIFIED IN THE ASSESSMENTS.

20           NONE OF THE ASSESSMENTS IDENTIFY TRADE SHOW CLEANING

21   AS A VULNERABILITY OR RISK.  THE CONVENTION CENTER'S PERSON

22   MOST KNOWLEDGEABLE, ROBERT DE NOFRIO, CONFIRMED THAT.  JOSEPH

23   PSUIK, EX-COO OF THE CORPORATION CONFIRMED THAT.  CHARLES

24   GUTENSOHN, WHO WAS IN CHARGE OF SECURITY DURING THE TIME OF THE

25   ASSESSMENTS CONFIRMED THAT, AS DID THE CONVENTION CENTER'S

1  SECURITY EXPERT:  THAT NONE OF THE VULNERABILITY ASSESSMENTS

2  IDENTIFIED TRADE SHOW CLEANING SUBCONTRACTORS AS A SPECIFIC

3  AREA OF RISK OR A SPECIFIC AREA OF VULNERABILITY.

4          AND SPECIFICALLY, FOR THE RECORD, I AM REFERRING TO

5  THE PALOMAR ASSESSMENT, WHICH IS EXHIBIT 63.  THE HOPS

6  ASSESSMENT, WHICH IS EXHIBIT 1311.  THE FULL SPECTRUM

7  INTEGRATED VULNERABILITY ASSESSMENT, WHICH IS EXHIBIT 1310.

8  THE BUFFER ZONE THREAT ASSESSMENT, WHICH IS EXHIBIT 1314.  THE

9  TACTICAL SURVEY, AND THE VISAT.

10         SO IF THERE IS SOME TYPE OF CONNECTION -- AND UNITED

11 CONTENDS THERE IS ABSOLUTELY NO EVIDENCE BEFORE THE JURY THAT

12 WOULD FORM A LEGALLY SUFFICIENT BASIS TO FIND THAT SOMEHOW THE

13 GOVERNOR'S ORDER, OR ANY OF THE OTHER STATUTES FOR THAT MATTER,

14 INTENDED TO DISPLACE COMPETITION WITH REGULATION.

15         WHEN YOU LOOK AT THE ASSESSMENTS THEMSELVES, WHICH

16 THE CONVENTION CENTER HASN'T PROVEN WERE PAID FOR BY GRANTS

17 FROM THE OFFICE OF HOMELAND SECURITY -- BUT EVEN IF SOMEHOW

18 THAT LEAP OR LINK WAS ALLOWED TO BE MADE, THE ASSESSMENTS DON'T

19 IDENTIFY TRADE SHOW CLEANING SUBCONTRACTORS.  SO ELIMINATING

20 COMPETITION IN THAT TRADE IS NOT A LOGICAL AND FORESEEABLE

21 RESULT OF THE GOVERNOR'S ORDER.

22         AND NOT ONLY DID THE CONVENTION CENTER WITNESSES

23 CONFIRM THAT, THEIR OWN DOCUMENTS CONFIRM IT.  THE SECURITY

24 PLAN, EXHIBIT 51, WAS A PLAN.  AND JOSH LAYNE TESTIFIED THAT

25 THIS PLAN EXPLAINED THE HISTORY OF SECURITY AT THE CONVENTION

1   CENTER.  THAT PLAN HAS RECOMMENDATIONS.  I BELIEVE IT'S PAGES

2   41 OR 42 THROUGH 49.  THERE IS NO RECOMMENDATION ABOUT

3   ELIMINATING COMPETITION FOR TRADE SHOW CLEANING SERVICES AT THE

4   CONVENTION CENTER.  FURTHERMORE, THERE IS NO RECOMMENDATION TO

5   ELIMINATE THAT COMPETITION BECAUSE OF ANY STATE STATUTE OR

6   BECAUSE OF A GOVERNOR'S ORDINANCE OR BECAUSE OF A CITY

7   RESOLUTION.

8          CHARLES GUTENSOHN TESTIFIED THAT HE WAS RESPONSIBLE

9   FOR DRAFTING THAT DOCUMENT.  HE WORKED AT THE CONVENTION CENTER

10  UNTIL SEPTEMBER OF 2008.  IT WAS A LIVING DOCUMENT; CHANGES

11  CONTINUED TO BE MADE TO IT.  HE NEVER TESTIFIED ABOUT EVER

12  IDENTIFYING ELIMINATING COMPETITION FOR TRADE SHOW CLEANING

13  SERVICES BECAUSE OF ANY AFFIRMATIVELY EXPRESSED STATE POLICY

14  COMING FROM THE STATUTES, THE GOVERNOR'S ORDINANCE OR THE CITY

15  RESOLUTION.

16         NOW, THAT IS NOT THE ONLY DOCUMENT THAT CONFIRMS IT.

17  EXHIBIT 26, WHICH IS THE SECURITY UPGRADES DOCUMENT, WHICH WAS

18  AN E-MAIL -- WELL, THE COVER PAGE IS AN E-MAIL THAT WAS

19  EXCHANGED BETWEEN MR. DE NOFRIO AND MR. GESSNER IN JANUARY OF

20  2008.  AND THEN IN MAY OF 2008, YOU HAVE ANOTHER E-MAIL FROM

21  MR. GESSNER TO HIS ASSISTANT, I BELIEVE IT'S KATHY ANTON,

22  SAYING KEEP THIS DOCUMENT.  AND THE DOCUMENT IS CALLED

23  "SECURITY UPGRADES SINCE 9/11."

24         THERE IS A LIST OF SECURITY UPGRADES THAT THE

25  CONVENTION CENTER MADE.  WHICH EVEN GIVING THE CONVENTION

APRIL 18, 2011

1  CENTER THE BENEFIT OF THE DOUBT -- AS I HAD MENTIONED BEFORE, I

2  DON'T THINK THERE IS ANY EVIDENCE UPON WHICH TO DO SO -- BUT

3  EVEN IF SOMEHOW THE CONVENTION CENTER DID GET THE BENEFIT OF

4  THE DOUBT, THIS DOCUMENT VERY CLEARLY STATES THAT THERE WAS NO

5  SECURITY UPGRADE BY ELIMINATING TRADE SHOW CLEANING COMPETITION

6  BECAUSE IT'S NOT MENTIONED IN THE DOCUMENT.

7           I BELIEVE THERE IS 12 OR 13 PAGES IN THE EXHIBIT

8  DISCUSSING SECURITY UPGRADES, PHOTO IDENTIFICATION BADGING,

9  VARIOUS OTHER ISSUES REGARDING ACCESS POINTS, THE CCTV SYSTEM.

10 NO MENTION OF TRADE SHOW CLEANING OR ITS ELIMINATION, OR THE

11 ELIMINATION OF COMPETITION.  AND FURTHERMORE, THERE IS

12 ABSOLUTELY NO CONNECTION BETWEEN ELIMINATING COMPETITION FOR

13 THAT TRADE AND ANY AFFIRMATIVELY EXPRESSED STATE POLICY.  AND

14 MR. MCGEE, THE CONVENTION CENTER'S SECURITY EXPERT, CONFIRMED

15 THAT ON THE STAND.

16          SO EVEN IF THERE IS SOME TYPE -- WHICH WE DON'T

17 BELIEVE THERE IS -- BUT EVEN IF THERE IS A STATEMENT -- AN

18 AFFIRMATIVELY EXPRESSED STATE POLICY TO ELIMINATE COMPETITION

19 FOR TRADE SHOW CLEANING SERVICES AT THE SAN DIEGO CONVENTION

20 CENTER WITH REGULATION, IT COULD ONLY RELATE TO THE SECURITY

21 UPGRADES THAT THE CONVENTION CENTER ITSELF SAID THEY UNDERTOOK.

22          THAT'S IN EXHIBIT 26.  AND THEIR OWN EXPERT CONFIRMED

23 THERE WAS NO SECURITY UPGRADE FOR TRADE SHOW CLEANING.  THAT'S

24 WHAT THE DOCUMENT SAYS.

25          SO BASED ON ALL THE FOREGOING, YOUR HONOR, AND THE

APRIL 18, 2011

1   EVIDENCE SUBMITTED AT TRIAL, UNITED SUBMITS THAT NO REASONABLE

2   JURY WOULD HAVE A LEGALLY SUFFICIENT BASIS TO FIND FOR THE

3   CONVENTION CENTER CORPORATION ON THE STATE ACTION IMMUNITY

4   AFFIRMATIVE DEFENSE.  AND, ACCORDINGLY, UNITED REQUESTS

5   JUDGMENT AS A MATTER OF LAW ON SDC'S STATE ACTION IMMUNITY

6   DEFENSE UNDER FEDERAL RULE OF CIVIL PROCEDURE RULE 50(A).

7           **THE COURT:**  OKAY.  THANKS.  WELL, MR. ERGASTOLO, YOU

8   ARE GOING TO BE RESPONDING ON BEHALF OF THE DEFENSE?

9           **MR. ERGASTOLO:**  YES, YOUR HONOR.

10          **THE COURT:**  GO AHEAD WHEN READY.

11          **MR. ERGASTOLO:**  WELL, THERE IS SOME SMALL AMOUNT OF

12  AGREEMENT HERE WITH UNITED.  WE AGREE THAT THERE ARE ONLY TWO

13  ELEMENTS THAT THE CONVENTION CENTER HAS THE BURDEN OF PROOF ON,

14  AND THAT IS THE ISSUE OF AUTHORIZATION AND THE ISSUE OF INTENT.

15  THAT'S ABOUT WHERE THE AGREEMENT STOPS.

16          THE FIRST ISSUE:  WERE THE CONVENTION CENTER'S

17  ACTIONS AUTHORIZED BY STATE -- BY THE STATE?

18          THE LAW IS THAT THE POLICY NEED NOT BE A DETAILED

19  EXPRESSION OF INTENT.  THERE IS A CASE VERY SIMILAR TO THIS,

20  FROM THE CENTRAL DISTRICT, CALLED SPRINGS AMBULANCE SERVICE,

21  1984.  SPRINGS AMBULANCE V. CITY OF RANCHO MIRAGE.  THAT WAS A

22  STATE ACTION DOCTRINE CASE.

23          AND IN THAT CASE THE COURT FOUND THAT THE STATE

24  ACTION DOCTRINE APPLIED NOT TO PRECLUDE ANTITRUST LIABILITY

25  AGAINST A COLLECTION OF MUNICIPALITIES IN THE DESERT

APRIL 18, 2011

1    COMMUNITIES -- THE CITY OF RANCHO MIRAGE, THE CITY OF INDIAN

2    WELLS, THE CITY OF PALM DESERT.  AND THE LAWSUIT WAS ABOUT

3    THOSE CITIES TAKING AMBULANCE SERVICES IN-HOUSE, ESSENTIALLY --

4            **THE COURT:**  RIGHT.

5            **MR. ERGASTOLO:**  -- AND PRECLUDING OR CHANGING A

6    POLICY THAT HAD EXISTED FOR MANY YEARS, IN WHICH THE PRIVATE

7    AMBULANCE SERVICES WERE ALLOWED TO COMPETE WITH THE PUBLIC

8    AMBULANCE SERVICE.  KIND OF SOUNDS FAMILIAR.

9            WELL, THE FIRST PLACE THE COURT LOOKED TO DETERMINE

10   THAT THERE WAS, IN FACT, STATE ACTION IMMUNITY WAS THE STATE

11   STATUTE THAT AUTHORIZED REGULATING AMBULANCES -- THE CITE, BY

12   THE WAY, FOR THE SPRINGS CASE --

13           **THE COURT:**  I HAVE IT.  745 F2D 1270.

14           **MR. ERGASTOLO:**  IT'S ACTUALLY A NINTH CIRCUIT CASE,

15   NOT A DISTRICT COURT CASE, SO IT'S CONTROLLING LAW.

16           THE STATUTE THAT PROVIDED THE AUTHORITY IN THE

17   SPRINGS CASE WAS CALIFORNIA GOVERNMENT CODE 38794, WHICH STATES

18   THE LEGISLATIVE BODY OF A CITY MAY CONTRACT FOR AMBULANCE

19   SERVICE TO SERVE THE RESIDENTS OF A CITY AS CONVENIENCE

20   REQUIRES.

21           THAT'S IT.  THAT WAS ENOUGH, ACCORDING TO THE NINTH

22   CIRCUIT, TO GIVE AUTHORITY TO THOSE MUNICIPALITIES TO CHANGE

23   THEIR POLICY AND BRING AMBULANCE SERVICES IN-HOUSE.

24           NOW, IF WE COMPARE THAT LANGUAGE TO THE GOVERNMENT

25   CODE SECTION THAT AUTHORIZES CONVENTION CENTERS:  A CITY MAY

APRIL 18, 2011

1  ACQUIRE, BY CONDEMNATION OR OTHERWISE, THE NECESSARY LAND AND

2  CONSTRUCT TO MAINTAIN A PUBLIC ASSEMBLY OR CONVENTION HALL UPON

3  IT, AND MAY INCUR INDEBTEDNESS FOR SUCH PURPOSE.  THAT'S

4  GOVERNMENT CODE SECTION 37501.

5           THE IMPORT OF THOSE STATUTES -- IT'S

6  INDISTINGUISHABLE.  THEY ARE VERY BROAD AUTHORIZING STATUTES.

7  AND FOR THE NINTH CIRCUIT, THAT'S SUFFICIENT.  SO THERE IS NO

8  AUTHORITY ISSUE IN THIS CASE.  UNITED HASN'T PRESENTED ANY

9  CONTRA-AUTHORITY AND HASN'T MENTIONED THE SPRINGS CASE IN

10  DISCUSSING WHAT ELSE NEEDS TO BE PROVIDED FOR AUTHORITY TO MEET

11  THAT FIRST ELEMENT.

12           IF I MAY MOVE ON, YOUR HONOR?

13           **THE COURT:**  SURE.

14           **MR. ERGASTOLO:**  JUST AS IN THE SPRINGS CASE, IT WAS

15  REASONABLY FORESEEABLE THAT THE AUTHORITY INCLUDES THE RIGHT TO

16  LIMIT WHO CAN WORK.  IN THAT CASE, IT WAS REASONABLY

17  FORESEEABLE FROM THE STATUTE, GOVERNMENT CODE 38794, THAT IT

18  WOULD DISPLACE COMPETITION.  SAME BROAD STATUTE AUTHORIZING

19  CONVENTION CENTER OPERATIONS, SAME REASONABLE FORESEEABILITY

20  HERE.

21           NOW, THE SECOND ELEMENT, INTENTION TO DISPLACE

22  COMPETITION WITH REGULATION.  NOW, THE LAW HERE IS A LITTLE BIT

23  DIFFERENT THAN I BELIEVE UNITED HAS PRESENTED TO THE COURT.

24  INTENTION EXISTS IF SUPPRESSION OF COMPETITION IS A FORESEEABLE

25  RESULT OF WHAT THE STATE AUTHORIZED.  THAT IS THE CITY OF

APRIL 18, 2011

1   COLUMBIA CASE, 499 U.S. 365, 373, 1991.

2           THE STATE STATUTES NEED NOT NECESSARILY EXPRESSLY

3   COMPEL THE ACTIVITY.  SO THERE IS NO REQUIREMENT THAT THERE BE

4   AN EXECUTIVE ORDER THAT SAYS YOU HAVE THE RIGHT TO BRING YOUR

5   CLEANING POLICY IN-HOUSE.  THAT IS NOT WHAT IS REQUIRED IN THIS

6   CASE FOR THIS AFFIRMATIVE DEFENSE TO SUCCEED.

7           THE STATE STATUTE NEED ONLY CONTEMPLATE THAT A PUBLIC

8   ENTITY MAY ENGAGE IN ANTI-COMPETITIVE CONDUCT.  AND THAT IS

9   TRAWEEK, WHICH WAS CITED BY UNITED, AT PAGE 592.

10          ONE DIFFERENCE HERE BETWEEN THE TWO SIDES IS WHETHER

11  OR NOT YOU ARE PERMITTED TO GO BEHIND THE FACE OF THESE

12  STATUTES TO DETERMINE WHAT ANYBODY INTENDED.  AND TRAWEEK SAYS

13  YOU CAN'T.  IT SAYS THERE IS NO REQUIREMENT TO LOOK BEHIND THE

14  GENERAL GRANT.  YOU CAN'T LOOK TO THE LEGISLATIVE INTENT.  YOU

15  HAVE TO LOOK TO THE WORDS OF WHAT THE STATE HAS DONE.

16          AND I WILL GET TO THE FACTS.  THAT'S THE LAW.  WHAT

17  ARE THE FACTS HERE?  WELL, WE HAVE ASSESSMENTS THAT WERE PAID

18  FOR BY THE STATE.  THERE IS EVIDENCE THAT THE JURY COULD INFER

19  AND, IN FACT, WE HAVE THE CALIFORNIA NATIONAL GUARD THAT

20  PERFORMED THE HOMELAND DEFENSE VULNERABILITY ASSESSMENT.  WE

21  CALLED IT FSIVA THE ENTIRE TRIAL.

22          SO THERE IS ENOUGH EVIDENCE HERE WHERE WE HAVE THE

23  STATE PAYING FOR THIS.  AND WE HAVE A DIRECTIVE FROM THE STATE,

24  EXECUTIVE ORDER D-67-03, THAT TALKS ABOUT BECOMING MORE AWARE

25  ABOUT TERRORISM AND TAKING STEPS TO COMBAT TERRORISM.

APRIL 18, 2011

1          THOSE TWO PIECES ARE SUFFICIENT FOR THE STATE ACTION

2    DOCTRINE TO APPLY AND GIVE ENOUGH GUIDANCE TO THE JURY AND TO

3    THE COURT OF AN INTENTION TO DISPLACE COMPETITION.  IT WOULD

4    SEEM THAT IF THE STATE SAYS WE NEED TO BE MORE AWARE OF

5    TERRORISM, AUTHORIZES CONVENTION CENTERS TO EXIST AND PAYS FOR

6    THESE ASSESSMENTS, I THINK WE ARE ALREADY THERE.

7          **THE COURT:**  ALTHOUGH NOT NECESSARILY IN THAT ORDER.

8          **MR. ERGASTOLO:**  NOT NECESSARILY IN THAT ORDER,

9    CORRECT.  BUT THERE IS ANOTHER PIECE HERE.  UNITED SEEMS TO

10   THINK THAT THESE ASSESSMENTS NEED TO SAY UNITED IS A SECURITY

11   RISK OR THAT VENDOR CLEANING IS A SECURITY RISK.  THEY DON'T

12   SAY THAT.  THAT IS UNDISPUTED.  WHAT THEY SAY IS THAT ONE OF

13   THE THINGS YOU NEED TO DO TO IMPROVE SECURITY IN YOUR FACILITY

14   IS TAKE CONTROL OVER PEOPLE.  THAT WAS A CONSISTENT THEME IN

15   ALL OF THOSE ASSESSMENTS.

16         UNDER THAT GUIDANCE, IN ADDITION TO WHAT HAPPENED AT

17   AVSS -- UNDER THAT GUIDANCE THE POLICY CHANGED.  SO DO THOSE

18   ASSESSMENTS SUPPORT THE DECISION OF THE CONVENTION CENTER TO

19   TAKE TRADE SHOW CLEANING IN-HOUSE AND REQUIRE THAT ITS

20   EMPLOYEES PROVIDE THE SERVICE?  YES.  DIRECTLY FROM THE

21   ASSESSMENT'S CONCLUSION THAT YOU ARE BETTER OFF FROM A SECURITY

22   POINT OF VIEW BRINGING THE SERVICE IN-HOUSE AND CONTROLLING THE

23   PEOPLE, DENYING ACCESS.  THAT IS ENTIRELY CONSISTENT WITH WHAT

24   OUR EXPERT SAID.  I THINK IN TERMS OF INTENTION TO DISPLACE,

25   MORE THAN SUFFICIENT AUTHORIZATION.  ABSOLUTELY CLEAR.

APRIL 18, 2011

1        NOW, I WANT TO ADDRESS A PROCEDURAL ISSUE.  AFTER

2   MORE WORK ON THE STATE ACTION DOCTRINE, WE CONCLUDED THAT THERE

3   IS NO JURY INSTRUCTION THAT EXISTS.  WE HAD TO MAKE ONE UP

4   OURSELVES.  WE STARTED ASKING OURSELVES WHY.  AND WE REACHED

5   THE CONCLUSION THAT THIS MAY NOT BE A QUESTION FOR THE JURY.

6   THE IMMUNITIES UNDER THE ANTITRUST LAWS ARE TYPICALLY QUESTIONS

7   OF LAW.  THEY ARE QUESTIONS OF LAW FOR THE JUDGE.  AND THIS IS

8   ONE OF THOSE IMMUNITIES.

9        SO WE CAN PRESENT THIS TO THE JURY, I SUPPOSE, BUT

10  ULTIMATELY I THINK, YOUR HONOR, IT'S YOUR DECISION ON THIS

11  ISSUE OF THE APPLICATION OF THE STATE ACTION DOCTRINE.

12       **THE COURT:**  INCLUDING THE QUESTION OF FORESEEABILITY,

13  THE FACTUAL QUESTION TO THAT?

14       **MR. ERGASTOLO:**  YES.  THE INSTANCES IN WHICH WE HAVE

15  SEEN A QUESTION GO TO A JURY ON A STATE ACTION DOCTRINE HAS

16  BEEN LIMITED TO THE ISSUE THAT WAS ALREADY DECIDED BY JUDGE

17  BENITEZ, WHICH IS WHETHER WE'RE A STATE ACTOR.  THAT PART OF

18  IT, THERE HAS BEEN SOME CASES WHERE IT SAID -- ACTUALLY, THE

19  REQUIREMENT THAT FLOWS FROM THAT REQUIREMENT, WHICH IS ACTIVE

20  SUPERVISION.

21       THE CASES WE HAVE SEEN HAVE SHOWN THAT -- THE ACTIVE

22  SUPERVISION ELEMENT, WHICH IS IF YOU'RE NOT A STATE ACTOR THEN

23  YOU HAVE A THIRD REQUIREMENT OF ACTIVE SUPERVISION.  THERE HAVE

24  BEEN CASES WHERE THE ACTIVE SUPERVISION ELEMENT HAS GONE TO THE

25  JURY BECAUSE THERE HAS BEEN DISPUTE OVER HOW MUCH SUPERVISION

1   THERE HAS BEEN AND WHETHER THERE HAS BEEN ENOUGH SUPERVISION.

2   ALL THOSE THINGS.

3          WE HAVEN'T SEEN A SINGLE CASE IN WHICH A CASE WENT TO

4   A JURY ON THE STATE ACTION DOCTRINE WITHOUT THERE BEING A

5   NON-STATE ACTOR AND THE ACTIVE SUPERVISION REQUIREMENT.

6          SO OUR QUESTION IS DO WE NEED TO PRESENT JURY

7   INSTRUCTIONS AND PRESENT IT TO THE JURY?  CAN THE COURT RESERVE

8   ON THIS ISSUE AS A MATTER OF LAW, AFTER THE FACT, AFTER THE

9   JURY IS CONCLUDED?  BECAUSE IT MIGHT BE COMPLETELY UNNECESSARY,

10  DEPENDING ON WHAT THE JURY DOES.

11         WE JUST THROW THESE OUT THERE AS THINGS THAT I THINK

12  WE NEED TO WORK THROUGH AND DECIDE.  BUT I THINK I HAVE COVERED

13  OUR POSITION ON AUTHORIZATION AND INTENTION TO DISPLACE.

14         THERE ARE FACT DIFFERENCES ON INTENTION TO DISPLACE.

15  I THINK THERE IS MORE THAN ENOUGH, IF IT IS A JURY QUESTION, TO

16  GET TO JURY.  I THINK THE JURY COULD REASONABLY CONCLUDE FROM

17  WHAT THE WITNESS TESTIMONY WAS.

18         ON THE FINANCIAL STUFF, YOUR HONOR, IT'S

19  UNCONTROVERTED.  THERE IS NO EVIDENCE FROM UNITED THAT THE

20  STATE DIDN'T PAY.  AND CERTAINLY, THE JURY CAN BELIEVE THE

21  WITNESS' TESTIMONY.  THAT HAS BEEN UNCONTROVERTED.  AND

22  CONCLUDE THAT YES, THE STATE IS INVOLVED HERE IN HELPING

23  PROTECT THE CONVENTION CENTER BY FUNDING THESE ASSESSMENTS THAT

24  LED TO CHANGES, INCLUDING THE ONE IN THIS CASE.  THANK YOU.

25         **THE COURT:**  OKAY.  ANYTHING ELSE YOU WANT TO SAY IN

1    RESPONSE, MR. SLANIA?

2           **MR. SLANIA:**  BRIEFLY, YOUR HONOR.

3           ON THE ISSUE OF FORESEEABILITY, THE ONLY THING THAT

4    IS FORESEEABLE, BASED ON THE EVIDENCE THAT HAS BEEN PRESENTED

5    THROUGH THE CONVENTION CENTER'S WITNESSES, DOCUMENTS, WHAT HAVE

6    YOU, IS TO ASSESS THE CRITICAL AREAS OF CONCERN AT THE

7    CONVENTION CENTER AND HOW TO ADDRESS THEM.  THAT IS WHAT THE

8    ASSESSMENTS DID.  THEY CONDUCTED ASSESSMENTS OF WHAT WERE THE

9    VULNERABILITIES OF THE CONVENTION CENTER, AND HOW SHOULD THEY

10   BE ADDRESSED.

11          THE ASSESSMENTS NOT IDENTIFYING TRADE SHOW CLEANING

12   IS AN IMPORTANT ELEMENT OF THIS ANALYSIS.  BECAUSE IF, IN FACT,

13   THE STATE OF CALIFORNIA DID PAY FOR THESE ASSESSMENTS, WHICH --

14   THERE HAS BEEN NO EVIDENCE TO PROVE THAT.  WE MIGHT HAVE A

15   DOCUMENT THAT IS AUTHORED BY THE CALIFORNIA NATIONAL GUARD, BUT

16   THAT DOESN'T GET US TO THE POINT THAT THE STATE OF CALIFORNIA

17   PAID FOR IT AND GAVE IT TO THE CONVENTION CENTER.  SO WE DON'T

18   HAVE THAT EVIDENCE BEFORE THE JURY.  THERE IS NO PROOF THERE.

19          BUT EVEN IF YOU ASSUME THAT THAT OCCURRED, THE

20   FORESEEABLE CONSEQUENCES OF THAT IS TO ADDRESS WHAT IS

21   MENTIONED IN THE VULNERABILITY ASSESSMENTS, LIKE THE PARKING

22   GARAGE.  THAT WAS NEVER ADDRESSED.  SCREENING OF FREIGHT AND

23   CARGO.  THAT WASN'T ADDRESSED.  THEY DON'T USE BOMB-SNIFFING

24   DOGS OR ANYTHING ELSE.  ACCESS ISSUES.  NOW, THAT WAS

25   ADDRESSED.  THEY DID PUT SOME LOCKS UP AND THEY DID GET PHOTO

1   IDENTIFICATION BADGES.  IT DOESN'T SAY ANYTHING ABOUT

2   ELIMINATING COMPETITION FOR A TRADE.  SO I THINK THAT THE

3   FORESEEABILITY ISSUE IS VERY CRITICAL FOR THE ANALYSIS AS IT

4   RELATES TO THIS MOTION.

5            NOW, ALSO RESPONDING TO THE ISSUE REGARDING WHETHER

6   OR NOT THE NATIONAL GUARD PAID FOR THE FSIVA.  THERE IS NO

7   WITNESS THAT'S TESTIFIED, NO DOCUMENT THAT ESTABLISHES THAT

8   CAUSAL CONNECTION OR THAT CAUSAL LINK.  THAT'S THEIR BURDEN ON

9   THEIR AFFIRMATIVE DEFENSE TO PRESENT THAT EVIDENCE.  THE

10  CONVENTION CENTER DIDN'T DO SO.  NONE OF THE WITNESSES THAT

11  TESTIFIED ON THE STAND WERE ABLE TO SUBSTANTIATE HOW IT WAS

12  PAID.

13           THAT'S THE CONVENTION CENTER'S BURDEN ON THEIR

14  AFFIRMATIVE DEFENSE.  BY NOT PRESENTING THAT EVIDENCE, THE

15  AFFIRMATIVE DEFENSE FAILS.

16           NOW, I DON'T KNOW IF YOUR HONOR HAD ANY OTHER

17  QUESTIONS THAT YOU WANTED TO POSE.  I AM HAPPY TO ANSWER ANY

18  QUESTIONS YOU HAVE.

19           **THE COURT:**  YOU WANT TO TAKE A SHOT AT THIS

20  PROCEDURAL ISSUE ON WHO IS TO DECIDE FORESEEABILITY?  GIVEN

21  THAT IT'S CLEAR THAT SDC IS THE STATE ACTOR AND THE

22  GOVERNMENTAL ENTITY, THEN THE QUESTION IS WHO DECIDES

23  FORESEEABILITY?  AND TO SOME DEGREE IT'S AWFULLY WRAPPED UP IN

24  THE WHOLE QUESTION OF PRETEXT AND WRONGFUL CONDUCT THAT COMES

25  BACK AROUND ON THE STATE CLAIM.  I'M NOT CLEAR THAT IT'S FOR

1    THE COURT, BUT WHAT'S YOUR VIEW?

2              **MR. SLANIA:**  I HAVEN'T HAD A CHANCE TO ADDRESS IT

3    WITH MR. LANCE YET.  I JUST HEARD IT FOR THE FIRST TIME FROM

4    MR. ERGASTOLO A COUPLE MINUTES AGO.  I DO THINK THAT THE

5    CONVENTION CENTER SUBMITTED THE REQUEST FOR JUDICIAL NOTICE

6    ABOUT THE EXECUTIVE ORDER AND ASKED FOR A JURY INSTRUCTION

7    ABOUT THAT FOR THE JURY TO DECIDE THAT ISSUE AND TO DETERMINE

8    WHETHER OR NOT THERE WAS A FORESEEABLE CONNECTION OR THE NEXUS

9    BETWEEN THE EXECUTIVE ORDER OR THE CITY ORDINANCE OR THE STATE

10   STATUTES AND THE IMPLEMENTATION OF THE TRADE SHOW CLEANING

11   POLICY.

12             AND THAT DOES APPEAR TO BE A FACTUAL ISSUE FOR THE

13   JURY TO DECIDE -- WHETHER OR NOT IT'S ACTUALLY FORESEEABLE --

14   BASED ON ALL OF THE EVIDENCE, FOUR WEEKS' WORTH AND ANOTHER

15   DAY -- OR I GUESS ANOTHER MORNING -- PRESENTED TO THE JURY

16   ABOUT WHY THIS POLICY WAS IMPLEMENTED.

17             I MEAN, CAROL WALLACE WAS ON THE STAND AND SHE TALKED

18   ABOUT COMMUNICATIONS THAT SHE HAD WITH HER TEAM.  THE FIRST

19   TIME SHE WAS ON THE STAND SHE DIDN'T MENTION ANYTHING ABOUT

20   COMMUNICATIONS WITH JOE PSUIK AND CHARLES GUTENSOHN.  THEN

21   AFTER THOSE PEOPLE TESTIFIED, SHE SAID OH, YEAH, THEY TOLD ME

22   ABOUT THE POLICY -- OR WHAT HAPPENED AT THE AVSS CONFERENCE IN

23   DALLAS.  THAT IS NOT AN AFFIRMATIVELY EXPRESSED STATE POLICY.

24             AND THERE WAS DISCUSSION ABOUT AFTER THE

25   SOLICITATIONS FAILED BY MR. GESSNER, THAT'S WHEN THE POLICY WAS

APRIL 18, 2011

1   IMPLEMENTED.  I THINK WHETHER OR NOT THERE IS THAT CAUSAL

2   CONNECTION OR THAT NEXUS BETWEEN THESE POLICIES, AND WHY THE

3   CONVENTION CENTER MADE THEIR DECISIONS, IS ABSOLUTELY AN ISSUE

4   FOR THE JURY.

5          AND LIKE I SAID, I'D LIKE TO ADDRESS THAT WITH

6   MR. LANCE.  BUT IT APPEARS AS THOUGH THE CONVENTION CENTER

7   WITNESSES HAVE ALREADY TESTIFIED, NO, WE DECIDED TO DO IT ON

8   OUR OWN.  AND NONE OF THEM TESTIFIED WELL, YOU KNOW WHAT WE

9   WERE DOING?  WHAT WE'RE THINKING IS THAT UNDER THE CALIFORNIA

10  GOVERNMENT CODE, THAT GIVES US THE ABILITY TO ACQUIRE LAND, AND

11  UNDER THE CALIFORNIA GOVERNMENT CODE, THAT GIVES US THE ABILITY

12  TO SPEND MONEY GENERATED FROM THAT HALL.  WE OUGHT TO IMPLEMENT

13  THIS POLICY.

14          NO WITNESS TESTIFIED TO THAT, YOUR HONOR.  AND NO

15  WITNESS TESTIFIED, YOU KNOW WHAT?  WE READ THE GOVERNOR'S

16  EXECUTIVE ORDER.  AND WHEN WE READ THAT ORDER, OH, YEAH, THAT

17  WAS THE IMPETUS FOR US TO IMPLEMENT THIS EXCLUSIVE POLICY AS IT

18  RELATES TO TRADE SHOW CLEANING.  THERE IS NO EVIDENCE LIKE

19  THAT.  AND THAT'S THE CONVENTION CENTER'S BURDEN ON THEIR

20  AFFIRMATIVE DEFENSE.

21          AND I WOULD LIKE TO ALSO POINT OUT, ON THIS

22  FORESEEABLE ISSUE, THE EXECUTIVE ORDER MENTIONS PRIVATE

23  ENTERPRISE, AND WHY CALIFORNIA'S PRIVATE ENTERPRISE WOULD HELP

24  IN ADDRESSING TERRORISM CONCERNS.  THAT DOESN'T EXCLUDE

25  COMPETITION OF PRIVATE COMPANIES, YOUR HONOR.  IF ANYTHING,

1    THAT FOSTERS PUBLIC COLLABORATION.  AND MR. MCGEE TESTIFIED --

2    YOU MIGHT RECALL THE LAST SET OF QUESTIONS THAT I ASKED HIM.

3    HE AGREES ENHANCED SECURITY DOES INCLUDE AND NEED

4    PUBLIC/PRIVATE COLLABORATION.  AND HE INCLUDED IN THAT ANALYSIS

5    LAW ENFORCEMENT AND PRIVATE COMPANIES LIKE TRADE SHOW CLEANERS.

6          SO ON THIS FORESEEABILITY ISSUE, YOUR HONOR,

7    PUBLIC/PRIVATE COLLABORATION IS ALL THE EVIDENCE THAT THE JURY

8    HAS.

9          IF YOU HAVE ANY OTHER QUESTIONS, I AM HAPPY TO

10   ADDRESS THEM.

11         **THE COURT:**  NOPE.  NOPE.

12         **MR. ERGASTOLO:**  JUST VERY BRIEFLY, YOUR HONOR.  THERE

13   WAS A QUESTION ABOUT WHAT EVIDENCE IS IN, REGARDING THE

14   PAYMENT.  IN ADDITION TO THE WITNESSES' TESTIMONY, EXHIBIT 26

15   SPECIFICALLY STATES THAT THE BUFFER ZONE THREAT ASSESSMENT WAS

16   PREPARED FOR THE SAN DIEGO CONVENTION CENTER BY THE

17   ENVIRONMENTAL SYSTEMS RESEARCH INSTITUTE, THROUGH THE

18   CALIFORNIA DEPARTMENT OF HOMELAND SECURITY.

19         THERE IS ALSO INFORMATION IN THERE REGARDING FSIVA,

20   LOCALIZED THREAT ASSESSMENT CONDUCTED BY THE CALIFORNIA

21   NATIONAL GUARD FOR THE DEPARTMENT OF HOMELAND DEFENSE.  I THINK

22   THERE IS MORE THAN ENOUGH INFORMATION IN THE RECORD, BETWEEN

23   THE WITNESS' TESTIMONY AND THE DOCUMENTS, TALKING ABOUT WHO

24   PAID FOR IT AND WHAT WAS DONE.

25         THERE IS NO REQUIREMENT UNDER THE LAW THAT WE PUT A

APRIL 18, 2011

1    WITNESS ON THE STAND TO SPECIFICALLY GO THROUGH THE ELEMENTS OF

2    THE STATE ACTION DOCTRINE.  THAT IS NOT REQUIRED IN ANYTHING I

3    HAVE EVER SEEN DEALING WITH THIS ISSUE.  WE DID NOT NEED TO PUT

4    A WITNESS UP -- SORRY, YOUR HONOR.  I WAS ASKED TO STAND.

5          **THE COURT:**  I WAS SO RIVETED BY YOUR COMMENTS, I

6    DIDN'T KNOW YOU WERE SITTING.

7          **MR. ERGASTOLO:**  WE DID NOT NEED TO.  IN FACT, IT

8    WOULD HAVE CONFUSED THE JURY TO PUT A WITNESS UP TO TALK ABOUT

9    ANYBODY'S THOUGHT PROCESS.  THIS IS AN AFFIRMATIVE DEFENSE

10   AFTER THE FACT.  DO WE MEET THE ELEMENTS OF A STATE ACTION

11   REQUIREMENT OR NOT?  THERE WAS NO REQUIREMENT THAT WE HAD

12   CONTEMPLATED THIS DEFENSE PRIOR TO JULY 1, 2007.  SO THAT

13   WITNESS WOULDN'T HAVE EXISTED.  NO FURTHER COMMENTS.

14         **THE COURT:**  ALL RIGHT.  WELL, CLEARLY, THIS WAS

15   IDENTIFIED BY JUDGE BENITEZ AS A TRIABLE ISSUE IN HIS SUMMARY

16   JUDGMENT RULING, AT PAGE FOUR.  AND I THINK WE ALL AGREE -- OR

17   AT LEAST THE PAPERWORK SEEMS TO AGREE -- THAT THE BURDEN THE

18   CONVENTION CENTER BEARS IS PROVING THAT THE CALIFORNIA

19   LEGISLATURE AUTHORIZED THE ACTIONS THAT ARE CHALLENGED BY

20   UNITED AND INTENDED TO DISPLACE COMPETITION WITH REGULATION.

21   THAT IS TRAWEEK, WHICH EVERYBODY HAS TALKED ABOUT.

22         AND REFLECTING BACK ON WORK THAT JUDGE BENITEZ DID,

23   HE CITES, AT PAGE FOUR, THE CITY OF COLUMBIA SUPREME COURT CASE

24   FOR THIS PROPOSAL, WITH EXPRESS AUTHORIZATION OF PARTICULAR

25   ANTI-COMPETITIVE CONDUCT IS NOT REQUIRED.

APRIL 18, 2011

1        SO THE DIRECTIVE, THE STATUTES DON'T HAVE TO SAY

2   THAT.  SPECIFICALLY, THE CASE GOES ON TO SAY THIS IS EFFICIENT

3   IF THE ALLEGED ACTIONS WERE A FORESEEABLE RESULT OF A BROADER

4   STATUTORY AUTHORIZATION.

5        I THINK WHAT SDC HAS PRESENTED THUS FAR, IN TERMS OF

6   WHAT WAS TAKEN UNDER JUDICIAL NOTICE, GIVES THE STATUTORY

7   SCHEME AND THE DIRECTIVE OF THE GOVERNOR FROM WHICH WE HAVE TO

8   VIEW THIS FORESEEABLE RESULT.

9        WE ARE TALKING ABOUT, REALLY, WHETHER OR NOT THIS

10  AGENCY -- A GOVERNMENTAL ENTITY, THE STATE ACTOR -- ACTED

11  PURSUANT TO ITS AUTHORITY AND WHETHER THIS CONDUCT WAS

12  FORESEEABLE GIVEN THAT AUTHORIZATION.

13       AND IT'S TRUE, THERE IS A DISPUTE IN THE EVIDENCE.  I

14  THINK THERE IS EVIDENCE, CLEARLY, OF WHO PAID FOR THESE

15  STUDIES.  THERE IS A LOT OF TESTIMONY COMING AND GOING WITH

16  REGARD TO WHAT WAS THE INTENT OF THIS STATE ACTOR IN DOING WHAT

17  IT DID.

18       AND YES, THERE IS NOTHING IN THE ASSESSMENTS THAT

19  CALL OUT THE CLEANING CREWS SPECIFICALLY, BUT I THINK A

20  REASONABLE JURY COULD INFER FROM THE FACT THAT THE TRADE SHOW

21  CLEANING FOLKS, LIKE TRADE SHOW SECURITY, AND TO THAT DEGREE

22  BUILDING SECURITY, ACCESS THIS BUILDING AT ALL HOURS.  AND THE

23  FORESEEABILITY COULD BE DRAWN THAT THOSE THAT OCCUPY THE

24  BUILDING THE MOST MIGHT BE A PART OF THE GROUP TO WHICH FURTHER

25  REGULATION AND THEREFORE SOME ANTI-COMPETITIVE ACTION MIGHT

1  OCCUR.

2          IN LOOKING AT SOME OF THE CASES IN THE AREA IN TERMS

3  OF THIS BROAD POLICY AND THEN THE NET EFFECT -- I MEAN, THE

4  SPRINGS AMBULANCE CASE, THE NINTH CIRCUIT AUTHORITY THAT WE

5  WOULDN'T HAVE TO FOLLOW, IS ONE GOOD EXAMPLE.  THE OREGON STATE

6  BAR, THE HASS CASE, ON THE BAR'S OWN MALPRACTICE INSURANCE,

7  AGAIN, FALLS INTO THAT SAME CATEGORY.

8          AND YOU KNOW, THE GOVERNMENT CODE HERE AUTHORIZED THE

9  CITY, WHO THEN CREATED SDC TO ESTABLISH, OPERATE AND MAINTAIN

10  WHAT IS ESSENTIALLY A PUBLIC CONVENTION-HALL-LIKE BUILDING.

11  AND IT'S NOT UNLIKE -- WHAT WAS IT? -- THE ELLIOT CASE, WHICH

12  WAS THE STADIUM THAT CHOSE TO KEEP SOME OF THE SERVICES

13  IN-HOUSE WHILE USING OTHER VENDORS, LIMITING COMPETITION ALL

14  WITHIN THE PROPRIETY OF ESTABLISHING, OPERATING AND MAINTAINING

15  THAT BUILDING.

16          YOU HAVE THE SKI RESORT CASE.  AND THE CASES GO ON

17  AND ON.  AND I FIND THAT SDC HAS ESTABLISHED SUFFICIENT

18  EVIDENCE THAT A REASONABLE JURY COULD TAKE THE STATUTORY

19  MANDATE TO OPERATE, THE DIRECTIVE OF THE GOVERNOR TO BE ON

20  ALERT FOR SECURITY, THE ASSESSMENTS AND ALL OF THIS, AND CONCUR

21  THAT THIS WAS ONE THAT WAS A -- WHAT HAPPENED TO UNITED AND

22  WHAT HAPPENED TO TEAM CLEAN AND THESE OTHER GROUPS WAS A

23  FORESEEABLE RESULT OF THE BROAD STATUTORY AUTHORIZATION FROM

24  WHICH THEY COULD FIND IMMUNITY.

25          THE FORESEEABILITY IS THE $64,000 QUESTION.  MAYBE

1   THE $750,000 QUESTION.  BECAUSE WE HAVE ISSUES OF IT BEING A

2   PRETEXT THAT HAS BEEN RAISED.  THE TRUE INTENT TO BE SOMETHING

3   OTHER THAN SECURITY, SOMETHING MORE AKIN TO A COMPETITOR VERSUS

4   COMPETITOR.  THERE IS A LOT FOR THIS JURY TO CONCLUDE.

5          THE QUESTION INTERRELATES, OF COURSE, TO NOT ONLY THE

6   ANTI-COMPETITIVE CONDUCT ASPECT FROM WHICH THE IMMUNITY WOULD

7   PROTECT THE SDC, BUT IT'S FIRMLY INTERWOVEN INTO THE BUSINESS

8   CONDUCT, THE ALLEGED MISCONDUCT THAT FOSTERS THE INTERFERENCE

9   CLAIMS.  AND I THINK THE JURY HAS TO DEAL WITH THE ISSUE, GIVEN

10  ITS INTERTWINEMENT HERE.

11         AND I THINK THE PLAINTIFFS MAKE A SINCERE ARGUMENT.

12  THAT IS SOMETHING THAT MIGHT PERSUADE THE JURY ON THE

13  FORESEEABILITY QUESTION.

14         THE DEFENSE MAKES A SINCERE ARGUMENT.  THAT MAY

15  SIMILARLY SWAY THE JURY TO FIND THAT THE IMMUNITY SHOULD APPLY,

16  OR AT LEAST THAT THE FORESEEABILITY WAS THERE SUCH THAT THE

17  COURT, PERHAPS IN THE LEGAL STROKE THAT THE DEFENSE IS TALKING

18  ABOUT, WOULD, DESPITE A JURY FINDING, IMPOSE THE IMMUNITY POST

19  VERDICT.

20         BUT I THINK FOR NOW, FOR ALL THE CASES THAT HAVE BEEN

21  CITED AND PARTICULARLY THE SUPREME COURT AND THE NINTH CIRCUIT,

22  THIS IS A QUESTION THAT SURVIVES THE MOTION AND GOES FORWARD TO

23  RESOLUTION ON THE MERIT.  SO THE 50(A), ON THAT GROUND, IS

24  DENIED.

25         LEAVING US, I GUESS, WITH THE LGAA, TO WHICH I

1    SUSPECT THERE IS EVEN LESS AGREEMENT THAN ON THE IMMUNITY --

2    THE TOTAL IMMUNITY.

3            BUT, MR. SLANIA, I TAKE IT YOU ARE GOING TO ROW THAT

4    BOAT, SO GO AHEAD.

5            **MR. SLANIA:**  THANK YOU, YOUR HONOR.  UNDER FEDERAL

6    RULE OF CIVIL PROCEDURE 50(A), UNITED REQUESTS THAT THE COURT

7    GRANT UNITED'S MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST

8    THE SAN DIEGO CONVENTION CENTER CORPORATION ON ITS LOCAL

9    GOVERNMENT ANTITRUST ACT AFFIRMATIVE DEFENSE.

10           AND THE LOCAL GOVERNMENT ANTITRUST ACT IMMUNIZES

11   SPECIAL-FUNCTION GOVERNMENT UNITS FROM ANTITRUST DAMAGES.  NOT

12   FROM AN INJUNCTION, BUT JUST FROM ANTITRUST DAMAGES.

13           **THE COURT:**  I AM CLEAR ON THAT DISTINCTION.

14           **MR. SLANIA:**  AND BEFORE TRIAL STARTED, IN THE

15   CONVENTION CENTER CORPORATION'S MEMORANDUM OF CONTENTIONS OF

16   FACT AND LAW, AND IN THEIR TRIAL BRIEF -- THE MEMO OF

17   CONTENTIONS OF FACT AND LAW IS DOCUMENT 132, AND THE TRIAL

18   BRIEF IS DOCUMENT 163 -- THE CONVENTION CENTER STATED THAT TO

19   BE ENTITLED TO THIS DEFENSE, THE CONVENTION CENTER MUST PROVE,

20   AMONG OTHER THINGS, THAT THE TAXPAYERS WOULD BEAR THE BURDEN OF

21   THE ANTITRUST DAMAGES AWARD.  AND THAT'S THE SAME STANDARD THAT

22   JUDGE BENITEZ SET FORTH WHEN RULING ON THE CONVENTION CENTER'S

23   MOTION FOR SUMMARY JUDGMENT.

24           AND THAT IS ON DOCKET NUMBER 120, PAGE SIX, WHERE

25   JUDGE BENITEZ, STARTING AT LINE 10, SAYS TO QUALIFY FOR

APRIL 18, 2011

1    IMMUNITY, DEFENDANT MUST BE A SPECIAL-FUNCTION GOVERNMENT UNIT.

2    AND TO QUALIFY AS A SPECIAL-FUNCTION GOVERNMENT UNIT, DEFENDANT

3    MUST SHOW -- AND LISTING THREE ITEMS, THE THIRD ITEM --

4    TAXPAYERS WOULD BEAR THE BURDEN OF ANY ANTITRUST DAMAGE AWARD.

5            SO WHEN WE HAD DISCUSSIONS EARLIER, YOUR HONOR -- YOU

6    WILL RECALL THAT THERE WAS THE MOTION IN LIMINE AND THE

7    SUPPLEMENTAL TRIAL BRIEF SUBMITTED BY THE CONVENTION CENTER --

8    THERE WAS A DISCUSSION REGARDING WHETHER OR NOT JUDGE BENITEZ

9    HAD ALREADY FOUND THAT THE CONVENTION CENTER COULD NOT

10   ESTABLISH ENTITLEMENT TO THIS DEFENSE.  AND I JUST WANTED TO

11   REEMPHASIZE TO THE COURT, WHAT WE ARE POINTING OUT HERE IS

12   JUDGE BENITEZ DECIDED, AS THE LAW OF THE CASE, WHAT THE

13   STANDARD IS THAT THE CONVENTION CENTER MUST MEET TO BE ENTITLED

14   TO THIS DEFENSE.

15           NOW, IT IS TRUE THAT IN THE NEXT SENTENCE OF THE MSJ

16   ORDER, JUDGE BENITEZ DOES SAY DEFENDANT FAILS TO PRODUCE ANY

17   EVIDENCE, LET ALONE UNDISPUTED EVIDENCE OF THE THIRD ELEMENT.

18   AND THE COURT FINDS THAT DEFENDANT IS NOT ENTITLED TO IMMUNITY

19   UNDER THE LGAA AS A MATTER OF LAW.

20           AND UNITED RECOGNIZES, YOUR HONOR, THAT WE ALREADY

21   HAD DISCUSSIONS ABOUT THAT, AND THAT THAT WAS DECIDED AGAINST

22   UNITED REGARDING WHETHER OR NOT THEY COULD EVEN PROCEED ON THE

23   DEFENSE.  I RECOGNIZE THAT, BUT I WANT TO JUST DRAW THE

24   DISTINCTION.  WHAT WE ARE TALKING ABOUT HERE IS JUDGE BENITEZ

25   SET FORTH WHAT THE STANDARD IS.  AND THE CONVENTION CENTER,

1   BEFORE TRIAL STARTED, IN ITS MEMO OF CONTENTIONS OF FACT AND

2   LAW AND IN ITS TRIAL BRIEF, AGREED THAT THAT IS THE STANDARD

3   THEY HAD TO MEET TO BE ENTITLED TO IMMUNITY FROM AN ANTITRUST

4   DAMAGES AWARD UNDER THIS DEFENSE.  AND WE SUBMIT THAT IS STILL

5   THE STANDARD THAT THEY HAVE TO MEET.

6          NOW, IN THE SUPPLEMENTAL TRIAL BRIEF, THE CONVENTION

7   CENTER ARGUES ABOUT KERN-TULARE, WHICH IS 828 F2D 514.  AND IN

8   THEIR SUPPLEMENTAL TRIAL BRIEF, THE CONVENTION CENTER ARGUES

9   THAT IN KERN THE COURT STATED IN DICTA -- NOT IN ITS HOLDING,

10  BUT IN DICTA -- THAT THE BURDEN ON TAXPAYERS ONLY APPLIES WHEN

11  YOU ARE TRYING TO DETERMINE WHETHER OR NOT TO APPLY THE LGAA

12  RETROACTIVELY.  AND I BELIEVE THAT IS ON PAGE SIX OF THEIR

13  SUPPLEMENTAL TRIAL BRIEF.  I AM NOT POSITIVE ABOUT THAT PAGE

14  CITE, YOUR HONOR, BUT I THINK THAT IS WHERE IT IS.

15         WELL, WHAT THE KERN CASE WAS DISCUSSING WAS WHETHER

16  OR NOT TO APPLY THE LGAA RETROACTIVELY.  THAT IS WHAT THE

17  DISCUSSION WAS IN THAT CASE.  EVEN IF THE DICTA THAT THE

18  CONVENTION CENTER WAS TALKING ABOUT WERE THE ACCURATE STATEMENT

19  OF LAW -- AND WE DISAGREE -- THE ONLY RELEVANCE THAT THAT WOULD

20  HAVE TO THIS CASE WOULD BE IF WE WERE ANALYZING WHETHER OR NOT

21  TO APPLY THE LGAA RETROACTIVELY.  THAT WOULD BE THE ONLY ISSUE.

22  THAT IS NOT WHAT WE HAVE GOING ON HERE.

23         SO I DON'T THINK THAT KERN HAS ANYTHING TO DO WITH

24  THE CASE THAT IS IN FRONT OF YOUR HONOR.  IN FACT, THE POSITION

25  BY THE CONVENTION CENTER IN THEIR SUPPLEMENTAL TRIAL BRIEF IS

APRIL 18, 2011

1    INCONSISTENT WITH THE CONGRESSIONAL INTENT FOR THE LOCAL

2    GOVERNMENT ANTITRUST ACT.  AND WE FIND THAT CONGRESSIONAL

3    INTENT IN CAPITAL FREIGHT SERVICES CASE, 704 F. SUPP 1190 AND

4    1199.  THERE IS A DISCUSSION ABOUT THE FACT THAT CONGRESS

5    ADOPTED A DEFINITION RELATING TO THE LOCAL GOVERNMENT ANTITRUST

6    ACT, AS TO WHO THIS ACT WAS GOING TO APPLY TO BASED ON THE

7    STATUS AS A GOVERNMENT INSTRUMENTALITY AND EFFECT ON TAXPAYERS,

8    RATHER THAN PURPOSE.

9            THAT'S THE STANDARD THAT WE ARE TALKING ABOUT HERE.

10   THAT IS THE STANDARD JUDGE BENITEZ WAS TALKING ABOUT.  THAT IS

11   THE STANDARD THE CONVENTION CENTER KNEW APPLIED TO THEM WHEN

12   THEY SUBMITTED THEIR MEMO OF CONTENTIONS OF FACT AND LAW IN

13   THEIR TRIAL BRIEF.

14           THE TARABISHI CASE, WHICH HAS ALSO BEEN DISCUSSED,

15   YOUR HONOR, TALKS ABOUT THE FACT THAT IT IS A SIGNIFICANT

16   CONSIDERATION OF WHERE LIABILITY FOR AN ANTITRUST DAMAGE AWARD

17   WILL ACTUALLY FALL.  AND THAT'S 951 F2D 1558, 1566.

18           THAT'S THE STANDARD THAT WE BELIEVE APPLIES.  WE

19   BELIEVE IT'S THE LAW OF THE CASE AND WE BELIEVE THAT IS WHAT

20   THE CASE LAW DEMONSTRATES.  AND THERE IS NO EVIDENCE THAT WAS

21   PRESENTED FOR A REASONABLE JURY TO FIND THAT THE LOCAL

22   TAXPAYERS WOULD BEAR THE BURDEN OF AN ANTITRUST DAMAGES AWARD

23   AGAINST THE SAN DIEGO CONVENTION CENTER.

24           AND THAT EVIDENCE STARTS FROM TESTIMONY FROM

25   MS. WALLACE.  SHE TESTIFIED ABOUT THE RELATIONSHIP BETWEEN THE

1   CONVENTION CENTER CORPORATION AND THE CITY.  SHE TESTIFIED THAT

2   THE CONVENTION CENTER AND HERSELF WERE IN CHARGE OF THE

3   DAY-TO-DAY OPERATIONS OF THE BUILDING.  SHE TESTIFIED THAT THE

4   CITY DIDN'T HAVE ANY VOTING RIGHTS REGARDING THE POLICIES OR

5   PROCEDURES IMPLEMENTED AT THE BUILDING, AND SHE TESTIFIED THAT

6   SHE HAD THE EXCLUSIVE AUTHORITY TO MANAGE AND OPERATE THE

7   BUILDING WITHOUT INTERFERENCE FROM THE CITY.

8          SHE ALSO TESTIFIED THAT SHE DIDN'T PRESENT THE

9   EXCLUSIVE POLICY REGARDING THE PERFORMANCE OF TRADE SHOW

10  CLEANING TO THE MAYOR OR TO THE CITY COUNCIL OR TO ANYBODY ELSE

11  AT THE CITY.

12         SO IN ADDITION TO THAT TESTIMONY, WE HAVE GOT -- I

13  BELIEVE IT'S TRIAL EXHIBIT 37, WHICH IS THE MANAGEMENT

14  AGREEMENT.  THAT MANAGEMENT AGREEMENT PROVIDES THAT SDC IS AN

15  INDEPENDENT CONTRACTOR AND NOT AN AGENT OF THE CITY.  I BELIEVE

16  THAT IS SECTION 2.02.  THE MANAGEMENT AGREEMENT ALSO CONFIRMS

17  THAT THE CONVENTION CENTER CORPORATION HAS AUTHORITY OVER THE

18  BUILDING.  I BELIEVE THAT IS 2.03.

19         SECTION 2.02(C) READS:  THE CORPORATION SHALL SET ALL

20  POLICIES, RULES AND REGULATIONS FOR OPERATIONS AT THE CENTER

21  AND USE OF THE CENTER BY THIRD PARTIES.

22         AND SECTION 2.03 READS:  IN THE PERFORMANCE OF ITS

23  OBLIGATIONS HEREUNDER, CORPORATION SHALL BE AN INDEPENDENT

24  CONTRACTOR AND NOT AN AGENT OF THE CITY.

25         I APOLOGIZE.  I GOT THOSE REVERSED.  2.03 IS THE

1    INDEPENDENT CONTRACTOR.  2.02 IS THE SUPERVISION OF THE CITY.

2           BUT THERE IS NOTHING IN THE MANAGEMENT AGREEMENT OR

3    THAT MS. WALLACE TESTIFIED TO OR ANY OTHER CONVENTION CENTER

4    WITNESS TESTIFIED TO THAT THE CITY OR THE LOCAL TAXPAYERS WOULD

5    BEAR THE BURDEN OF THE ANTITRUST DAMAGE AWARD.  AND, IN FACT,

6    SECTION 6.01 OF THE MANAGEMENT AGREEMENT SAYS THE OPPOSITE.

7    WHERE IT SAYS:  EXCEPT AS PROVIDED IN SECTION 6.02 BELOW, EACH

8    PARTY SHALL INDEMNIFY AND HOLD HARMLESS THE OTHER PARTY, ITS

9    AGENTS, EMPLOYEES, REPRESENTATIVES AND SUBCONTRACTORS AND

10   DEFEND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND EXPENSES,

11   INCLUDING ATTORNEY FEES, ARISING OUT OF OR RESULTING FROM THE

12   PERFORMANCE OF THEIR REPRESENTATIVE DUTIES AND OBLIGATIONS

13   SPECIFIED HEREIN, CAUSED BY THE NEGLIGENCE, OMISSION OR WILLFUL

14   ACT OF THE PARTY, ITS AGENTS, EMPLOYEES, ETC.

15          WELL, MS. WALLACE ALREADY VERY CLEARLY SAID, I MADE

16   THE DECISION; I MADE THAT DECISION WITHOUT CONSULTING ANYBODY

17   FROM THE CITY.

18          THAT MEANS THE CITY OWES -- I MEAN, THAT THE

19   CONVENTION CENTER OWES INDEMNITY OBLIGATIONS TO THE CITY FOR

20   ANY OF THOSE ACTIONS.  AND THIS LAWSUIT CAME ABOUT BECAUSE OF

21   MS. WALLACE'S DECISION TO IMPLEMENT THE POLICY.

22          SO THE ONLY EVIDENCE THAT THE JURY HAS IS THAT THE

23   CONVENTION CENTER WOULD HAVE TO INDEMNIFY THE CITY IF, IN FACT,

24   THERE WERE A JUDGMENT SOMEHOW ENTERED AGAINST THE CITY.  AND WE

25   DON'T HAVE THAT.  THE CITY IS NOT EVEN A PARTY HERE.  THE

1    MANAGEMENT AGREEMENT VERY CLEARLY DEMONSTRATES THE LOCAL

2    TAXPAYERS WOULD NOT BEAR THE BURDEN OF ANY ANTITRUST DAMAGES

3    AWARD.

4              IF YOU GO FURTHER IN THE MANAGEMENT AGREEMENT,

5    SECTION 3.01 TALKS ABOUT CITY FUNDING MUST BE LIMITED TO

6    MARKETING, PROMOTIONAL AND CAPITAL PROJECTS.

7              SECTION 3.04 DISCUSSES THE INSURANCE REQUIREMENTS.

8    SO ALL OF THE EVIDENCE THAT IS IN FRONT OF THIS JURY IS THE

9    CONVENTION CENTER BEARS THE RESPONSIBILITY FOR A DAMAGES AWARD.

10             NOW, IF YOU LOOK TO THE 2010 PRESS KIT, WHICH IS THE

11   SAN DIEGO CONVENTION CENTER'S OWN DOCUMENT.  IT'S TRIAL

12   EXHIBIT 1316.  IT STATES THAT THE CONVENTION CENTER IS SOLELY

13   RELIANT ON SELF-GENERATED REVENUES AND AN ANNUAL DISCRETIONARY

14   INVESTMENT FROM THE CITY OF SAN DIEGO.  THAT IS ON PAGE 14.

15   THAT PAGE ALSO SAYS THE CITY IS NO LONGER OBLIGATED TO

16   SUBSIDIZE CONVENTION CENTER OPERATIONS.

17             AND WHEN YOU READ THAT IN CONJUNCTION WITH SECTION

18   3.01 OF THE MANAGEMENT AGREEMENT, IT'S VERY CLEAR THAT THE CITY

19   WOULDN'T BEAR ANY RESPONSIBILITY FOR ANY LITIGATION DAMAGES.

20   THAT IS IN ADDITION TO THE INDEMNITY OBLIGATION, SECTION 6.01.

21             THE CONVENTION CENTER DIDN'T PRESENT ANY EXPERT

22   TESTIMONY ON THIS TOPIC.  THEY DIDN'T DESIGNATE AN EXPERT ON

23   THIS TO TRY TO SOMEHOW DEMONSTRATE HOW THIS MANAGEMENT

24   AGREEMENT COULD LEAD ANYONE TO THE CONCLUSION, LET ALONE A

25   REASONABLE JURY, THAT THE LOCAL TAXPAYERS WOULD BEAR THE BURDEN

1    OF ANY ANTITRUST DAMAGES AWARD.  NOR DID ANY OF THE LAY

2    WITNESSES TESTIFY TO THAT TOPIC, YOUR HONOR.  THE EVIDENCE IS

3    UNCONTROVERTED THAT THE CONVENTION CENTER WOULD BEAR THE BURDEN

4    OF ANY ANTITRUST DAMAGES AWARD.

5           THIS IS ALSO CONSISTENT, YOUR HONOR, WITH THE

6    CALIFORNIA CORPORATION CODE SECTION 7350, WHICH -- UNITED DID

7    SUBMIT ITS REQUEST FOR JUDICIAL NOTICE EARLIER TODAY.  BUT ALL

8    OF THE EVIDENCE IS CONSISTENT WITH THE LAW HERE, THAT

9    SHAREHOLDERS WOULDN'T BEAR THE RESPONSIBILITY FOR ANY DAMAGES

10   AWARD.

11          WELL, THE ONLY SHAREHOLDER WE HEARD EVIDENCE ABOUT IS

12   THE CITY.  AND UNDER THE CORPORATION'S CODE, THE SHAREHOLDERS

13   DON'T BEAR THE RESPONSIBILITY FOR ANY DAMAGES AWARD AGAINST

14   SDC.  AND THAT'S CONSISTENT WITH ALL THE EVIDENCE I ALREADY

15   DISCUSSED.

16          ANY CONCLUSION BY THE JURY THAT AN ANTITRUST DAMAGES

17   AWARD WOULD SOMEHOW BE BORNE BY THE LOCAL TAXPAYERS WOULD BE

18   RANK SPECULATION.  BECAUSE THERE HAS BEEN NO EVIDENCE TO

19   SOMEHOW DEMONSTRATE THAT.  SO NO REASONABLE JURY WOULD HAVE A

20   LEGALLY SUFFICIENT BASIS TO FIND FOR SDC ON THE LOCAL

21   GOVERNMENT ANTITRUST ACT AFFIRMATIVE DEFENSE.

22          ACCORDINGLY, UNITED REQUESTS THAT IT HAVE JUDGMENT

23   ENTERED AS A MATTER OF LAW ON SDC'S LOCAL GOVERNMENT ANTITRUST

24   ACT OF AFFIRMATIVE DEFENSE UNDER FEDERAL RULES OF CIVIL

25   PROCEDURE RULE 50(A).

APRIL 18, 2011

1          **THE COURT:**  OKAY.  THANKS.  AND, MR. ERGASTOLO.

2          **MR. ERGASTOLO:**  THANK YOU, YOUR HONOR.  I WANT TO

3    START WITH WHAT JUDGE BENITEZ DID IN THAT SUMMARY JUDGMENT.

4          **THE COURT:**  SURE.

5          **MR. ERGASTOLO:**  THE CONVENTION CENTER MOVED UNDER 15

6    U.S.C. SECTION 34(1)(A), ARGUING THAT THE CONVENTION CENTER IS

7    AN INSTRUMENTALITY OF THE CITY AND A LOCAL GOVERNMENT UNDER THE

8    LGAA.  THAT IS DOCKET NUMBER 92-1 AT 31, COLON, 23-24.

9          UNM OPPOSED THAT SUMMARY JUDGMENT, ARGUING, FIRST,

10   THAT SDCC IS NOT A GENERAL-FUNCTION GOVERNMENTAL UNIT BECAUSE

11   IT SERVES A SPECIFIC FUNCTION AS A CONVENTION CENTER.  IT THEN

12   ARGUED THAT TO BE A SPECIAL-FUNCTION GOVERNMENT UNIT YOU MUST

13   SHOW THREE THINGS.  AND IT LISTED OUT THREE ITEMS.

14         ONE, THAT CALIFORNIA TREATS IT AS A GOVERNMENT

15   ENTITY.  TWO, LIMITED GEOGRAPHIC JURISDICTION.  AND THREE,

16   TAXPAYERS BEAR THE BURDEN OF ANTITRUST DAMAGE AWARDS.  OF

17   COURSE, CITING TARABISHI.

18         IN OUR REPLY ON THAT MOTION FOR SUMMARY JUDGMENT, THE

19   CONVENTION CENTER ARGUED THAT UNM'S SPECIAL-FUNCTION GOVERNMENT

20   UNIT ARGUMENT MISSED THE POINT.  BECAUSE SDCCC IS AN

21   INSTRUMENTALITY OF THE CITY OF SAN DIEGO, I.E., AN

22   INSTRUMENTALITY OF A GENERAL-FUNCTION GOVERNMENT UNIT.  THAT IS

23   DOCKET NUMBER 99, AT 16, COLON, 8-21.

24         JUDGE BENITEZ, IN HIS ORDER, ADDRESSED THE ARGUMENTS

25   AS FOLLOWS:  THE FIRST DEFINITION OF LOCAL GOVERNMENT.  UNDER

1   34(1)(A) HE SAID, ALTHOUGH UNCLEAR, IT APPEARS DEFENDANT ARGUED

2   IT IS A GENERAL-FUNCTION GOVERNMENT UNIT, BUT DEFENDANT CITES

3   NO AUTHORITY FOR THIS POSITION AND THE COURT FINDS NONE.

4           ON THE DEFINITION OF LOCAL GOVERNMENT UNDER (1)(B),

5   HE FOLLOWED THE THREE ITEMS THAT UNITED HAD PUT IN ITS

6   OPPOSITION.  AND THEN CONCLUDED THAT THE DEFENDANT FAILS TO

7   PRODUCE ANY EVIDENCE OF THE THIRD ELEMENT.  ACCORDINGLY, THE

8   COURT FINDS THAT DEFENDANT -- I'M NOW QUOTING FROM JUDGE

9   BENITEZ' OPINION -- ACCORDINGLY, THE COURT FINDS THAT DEFENDANT

10  IS NOT ENTITLED TO IMMUNITY UNDER THE LGAA AS A MATTER OF LAW.

11  AND THAT IS DOCKET NUMBER 120, AT SIX, COLON, 10-16.

12          THE PROBLEM WITH JUDGE BENITEZ' RULING IS THAT IT'S

13  DICTA AND IT'S NOT LAW OF THE CASE.  GENERAL REMARKS ON BROADER

14  ISSUES THAT ARE UNNECESSARY TO THE COURT'S DETERMINATION ARE

15  DICTA.  THAT'S MILGARD TEMPERING V. SELAS CORPORATION OF

16  AMERICA, 902 F2D 703 AT 716, NINTH CIRCUIT, 1990.

17          THE REASON IT'S DICTA IS BECAUSE THE CONVENTION

18  CENTER NEVER MOVED ON 15 U.S.C. SECTION 34(1)(B), WHICH THE

19  SUMMARY JUDGMENT ORDER CONFIRMED.  ACCORDINGLY, THE

20  SPECIAL-FUNCTION GOVERNMENT UNIT DISCUSSION IS DICTA UNDER

21  MILGARD.

22          NOW, EVEN IF SOMEHOW THE COURT DOESN'T ACCEPT THAT

23  ARGUMENT, WE STILL DON'T HAVE LAW OF THE CASE.  LAW OF THE CASE

24  IS DISCRETIONARY WHEN IT IS APPLIED TO THE COURT OF ITS OWN

25  DECISIONS OR TO A COORDINATE OR EQUAL COURT.  AND THAT IS

1  AMAREL V. CONNELL, 102 F3D, 1494 AT 1515, NINTH CIRCUIT, 1997.

2  AND PARTIAL SUMMARY JUDGMENTS ARE INTERLOCUTORY, NOT FINAL.

3  AND FOR THAT REASON, THEY ARE NOT LAW OF CASE.

4         NOW, THE LAW OF THE CASE DOCTRINE GIVES NO PRECLUSIVE

5  EFFECT TO DICTA, AND WE GET BACK TO MILGARD.  SO WHAT WE HAVE

6  HERE IS WE NEVER MOVED ON 15 U.S.C. 34(1)(B), SO JUDGE BENITEZ'

7  DISCUSSION IS DICTA AND IS NOT LAW OF THE CASE.

8         HE DENIED 34(1)(A).  NO LAW OF THE CASE THERE.  AND

9  WE NEVER EVEN MOVED NOR IS THERE ANY DISCUSSION UNDER 15 U.S.C.

10  SECTION 36, WHICH IS THE THIRD PRONG OF THE LOCAL GOVERNMENT

11  ANTITRUST ACT.  SO JUDGE BENITEZ' ORDER IS NOT LAW OF THE CASE

12  ON THAT ONE, AT ALL.

13         SO WHAT WE'RE LEFT WITH, WHAT ARGUMENTS I CAN MAKE

14  UNDER THE LOCAL GOVERNMENT ANTITRUST ACT, I THINK WE ARE AT

15  SQUARE ONE.  I DON'T THINK WE HAVE ANY LAW OF THE CASE, ANY

16  FINDINGS, ANYTHING THAT BIND THE CONVENTION CENTER CORPORATION

17  IN LIMITING ITS ARGUMENTS ON THIS ISSUE.

18         NOW I WANT TO TURN TO THE SUBSTANTIVE ARGUMENTS.  THE

19  CONVENTION CENTER DISAGREES THAT THERE IS A REQUIREMENT UNDER

20  TARABISHI IN THE NINTH CIRCUIT.

21         AS WE POINTED OUT IN OUR SPECIAL TRIAL BRIEF, THAT

22  REQUIREMENT AROSE FROM DIFFICULTY IN THE LATE '80S TRYING TO

23  ASSESS HOW TO APPLY THE LGAA RETROACTIVELY.  LGAA IS RELATIVELY

24  NEW.  IT WAS ENACTED IN 1984 IN RESPONSE TO SOME SUPREME COURT

25  DECISIONS, ANTITRUST CASES, IN WHICH THE DEFENDANTS WERE

1   MUNICIPALITIES AND WERE HIT WITH TREBLE DAMAGES.  IN RESPONSE

2   TO THOSE DECISIONS, CONGRESS PASSED LGAA AND DIDN'T REALLY

3   DEFINE ANY OF THE TERMS THAT CONGRESS USED.  SO WE'RE LEFT WITH

4   TRYING TO FILL IN THE BLANKS.

5          WHAT HAPPENED AFTER 1984 WAS -- ONE OF THE BIGGEST

6   PROBLEMS IS DOES THIS APPLY RETROACTIVELY.  AND THE REASON WE

7   POINTED OUT THE NINTH CIRCUIT CASE, THE KERN-TULARE WATER

8   DISTRICT CASE WHICH IS 828 F2D 514, IS THAT RIGHT AT THE END OF

9   THE DECISION IT SAYS -- AND ADMITTEDLY DICTA, YOUR HONOR -- WE

10  DON'T CONSIDER WHETHER LGAA SHOULD HAVE BEEN APPLIED

11  RETROACTIVELY.

12         AND THEN IT POINTS YOU -- BUT IF YOU GET THERE, IT

13  SAYS, ESSENTIALLY, SEE WOOLEN V. SURTRAN TAXICABS.  THAT IS A

14  DISTRICT COURT CASE FROM THE NORTHERN DISTRICT OF TEXAS, 615 F.

15  SUPP 344.  AND IN THAT CASE, THE DISTRICT COURT IN TEXAS GOES

16  THROUGH A VERY LENGTHY ANALYSIS OF LEGISLATIVE HISTORY ON THE

17  RETROACTIVITY ISSUE AND SAID, SPECIFICALLY, ONE OF THE THINGS

18  YOU MUST CONSIDER IN DECIDING WHETHER TO APPLY RETROACTIVITY ON

19  LGAA IS THE FINANCIAL HARM WHICH A TREBLE DAMAGE AWARD COULD

20  INFLICT ON THE MUNICIPALITY AND ITS TAXPAYERS.

21         THAT IS WHERE THIS REQUIREMENT CAME FROM, IS THE

22  LEGISLATIVE HISTORY DEALING WITH RETROACTIVITY.  THERE IS NO

23  SUCH REQUIREMENT IN THIS CASE BECAUSE THERE IS NO RETROACTIVITY

24  ISSUE IN THIS CASE.  THE CONVENTION CENTER CORPORATION DIDN'T

25  EXIST IN 1984.  NO ONE IS ARGUING A RETROACTIVITY PROBLEM IN

1    THIS CASE.

2         NOW, YOU KNOW, THAT IS ONE PROBLEM.  SO WE DON'T

3    THINK TARABISHI HAS A REQUIREMENT.  THE SECOND PROBLEM IS

4    TARABISHI ITSELF DOESN'T STATE IT AS A REQUIREMENT.  IT SAYS

5    IT'S A CONSIDERATION AMONG MANY.  I BELIEVE THE COURT EVEN

6    NOTED THAT WHEN WE FIRST DISCUSSED THIS ISSUE A COUPLE WEEKS

7    AGO.

8         SO WHAT WE HAVE IS JUDGE BENITEZ TAKING SOMETHING

9    THAT WASN'T A REQUIREMENT, BASED ON REPRESENTATIONS MADE IN A

10   BRIEF SUBMITTED BY UNITED TO THE COURT, AND THEN CREATING A

11   REQUIREMENT IN THIS DISTRICT, ALLEGEDLY, AND TRYING TO NOW DEAL

12   WITH THE ISSUE WITH THAT REQUIREMENT IN PLACE.  WE ARE JUST

13   LEFT WITH -- WE HAVE TO GO BACK TO SQUARE ONE AND FIGURE OUT

14   WHAT DOES LGAA MEAN.  AND I DON'T SEE ANY EVIDENCE IN THE NINTH

15   CIRCUIT THAT THERE IS A REQUIREMENT THAT WE DEAL WITH THE

16   TAXPAYER ISSUE.

17        AND, IN FACT, THE NINTH CIRCUIT CASE THAT I JUST

18   POINTED TO STRONGLY SUGGESTS THAT THAT REQUIREMENT, BY POINTING

19   TO THE DISTRICT COURT CASE IN TEXAS -- THAT THAT REQUIREMENT

20   DEALS SOLELY WITH RETROACTIVITY.

21        SO WHERE ARE WE LEFT?  WE ARE LEFT WITH SECTION 34,

22   35 AND 36.  NOT A LOT OF CASE LAW.  NOW, SECTION 34 DEFINES

23   LOCAL GOVERNMENT IN TWO DIFFERENT WAYS.  ONE IS CITY AND ONE IS

24   SPECIAL-FUNCTION GOVERNMENT UNIT.

25        NOW, UNDER THIS SPECIAL-FUNCTION GOVERNMENT UNIT,

1   REALLY WHAT YOU ARE LOOKING AT IS LIMITED JURISDICTION, WHICH

2   IS UNDISPUTED IN THIS CASE.  THE EVIDENCE HAS BEEN CONSISTENT

3   THAT THE CONVENTION CENTER CORPORATION, THE ENTITY, ONLY HAS

4   CONTROL OVER THIS CONVENTION CENTER THROUGH THE MANAGEMENT

5   AGREEMENT AND THEN THROUGH TWO THEATERS THROUGH A SUBSIDIARY

6   CORPORATION.  THAT REQUIREMENT IS MET.

7          THE OTHER REQUIREMENT THAT WAS LISTED BY UNITED AND

8   ADOPTED BY JUDGE BENITEZ WAS THAT WE ARE A GOVERNMENT ENTITY.

9   WELL, THE JUDGE MADE THAT FINDING ALREADY.  SO IF WE TAKE OUT

10  THAT TARABISHI REQUIREMENT THAT DOESN'T EXIST IN THE NINTH

11  CIRCUIT, BY JUDGE BENITEZ' FINDINGS WE ARE ALREADY A LOCAL

12  GOVERNMENT.

13         AND I WOULD SUBMIT AND MOVE UNDER 50(A) THAT AT THE

14  CONCLUSION OF THE COMPLETE EVIDENCE HERE THAT THE COURT FIND,

15  AS A MATTER OF LAW, THAT WE ARE A LOCAL GOVERNMENT UNDER

16  SECTION 34(1).  BECAUSE THE TARABISHI REQUIREMENT DOESN'T EXIST

17  AND WE MET THE OTHER TWO REQUIREMENTS AND THEY ARE UNDISPUTED.

18  ONE OF THEM HAS BEEN FOUND BY JUDGE BENITEZ AS A MATTER OF LAW,

19  AND THE OTHER ONE IS AN UNDISPUTED FACT.

20         NOW, LET'S SAY THE COURT -- YOU DECIDE, YOU KNOW, I'M

21  STILL CONFUSED ON 34 HERE.  THERE IS NOT ENOUGH CASE LAW HERE.

22  THERE JUST ISN'T ENOUGH.  LET'S LOOK TO WHAT THE PURPOSE OF THE

23  LGAA IS.  IT'S VERY BROAD.  IT'S LEGISLATIVE INTENT.  THE

24  HISTORY IS CLEAR.  VIEW THIS THING BROADLY, CONSIDER ANYTHING

25  THAT HAS GOT POSSIBILITY OF A PUBLIC BEING IMPACTED.  NOW, I

APRIL 18, 2011

1   SUGGEST TO THE COURT THAT WE FOCUS MORE ON SUBSTANCE AND NOT

2   FORM HERE.

3           WE HAVE, ADMITTEDLY, AN ENTITY THAT IS 100 PERCENT

4   OWNED BY THE CITY.  NOW, WE HAVE AN ENTITY WHO IS -- ONE OF ITS

5   RESPONSIBILITIES IS TO GENERATE TAX REVENUE FOR THE CITY.  I

6   THINK IT WOULD BE ILLOGICAL FOR THIS COURT TO USE THE FACT OF

7   THAT CORPORATE SEPARATION TO DENY THE LGAA, WHEN FOR ALL

8   INTENTS AND PURPOSES THE CITY OWNS THE CONVENTION CENTER

9   CORPORATION.

10          THE OTHER ISSUE I WANT TO ADDRESS, YOUR HONOR, IS

11  36(A).  36(A) HASN'T BEEN MENTIONED BY UNITED.  WE DID ADDRESS

12  THE 36(A) ISSUE IN THE MINI BRIEF THAT WE SUBMITTED.  AND UNDER

13  36(A) WE DO HAVE SOME GUIDANCE.  IT'S A CASE THAT IS NOT THE

14  NINTH CIRCUIT, BUT AT LEAST IT TRIES TO SET FORTH SOME SORT OF

15  A TEMPLATE ON DEALING WITH THE 36(A) REQUIREMENTS.

16          NOW, IF THE COURT FINDS THAT WE'RE NOT A LOCAL

17  GOVERNMENT AS THAT IS DEFINED UNDER SECTION 34(1), EITHER

18  BECAUSE WE'RE NOT THE GENERAL CITY OR BECAUSE WE'RE NOT A

19  SPECIAL-FUNCTION GOVERNMENT UNIT, THEN THERE IS A SUBSECTION

20  THAT COMES IN.  36(A) COMES IN.  AND IT SAYS NO DAMAGES IN ANY

21  CLAIM VERSUS A PERSON BASED ON ANY OFFICIAL ACTION DIRECTED BY

22  A LOCAL GOVERNMENT.

23          AND UNDER 36(A), THE PERSON IS THE CONVENTION CENTER

24  AND THE LOCAL GOVERNMENT IS THE CITY OF SAN DIEGO.  AND THE

25  CASE THAT IS ON POINT HERE -- SANDCREST -- SAYS YOU BASICALLY

APRIL 18, 2011

1    FOLLOW THE RUBRIC OF THE STATE ACTION DOCTRINE AND APPLY IT ONE

2    STEP DOWN.

3           SO THE CITY BECOMES THE STATE, AND THE CONVENTION

4    CENTER BECOMES THE CITY.  IF YOU FOLLOW THAT ANALYSIS, YOU END

5    UP WITH A CONCLUSION, AS A MATTER OF LAW, IN MY OPINION,

6    WITHOUT ANY FACTUAL DISPUTES, THAT WE'RE ENTITLED TO IMMUNITY.

7    AND THE KEY FACT IN THIS CASE IS THE ENTITY THAT RECEIVED

8    IMMUNITY IN THE SANDCREST CASE WAS A PRIVATE, NOT A PUBLIC

9    ENTITY.

10           **THE COURT:**  IT WAS A HOSPITAL.

11           **MR. ERGASTOLO:**  NO.  NO, YOUR HONOR.  THE ENTITY THAT

12    RECEIVED THE IMMUNITY -- THE HOSPITAL TOOK THE PLACE OF THE

13    PUBLIC ENTITY.

14           **THE COURT:**  OKAY.

15           **MR. ERGASTOLO:**  THE ENTITY THAT RECEIVED THE IMMUNITY

16    WAS ACTUALLY THE PRIVATE MANAGEMENT COMPANY THAT WAS RETAINED

17    BY THE HOSPITAL, UNDER THE LGAA, ACTING AS THE PUBLIC ENTITY.

18    AND IT RECEIVED THE IMMUNITY UNDER 36(A).  THE PRIVATE ENTITY

19    WAS THE PERSON, AND IT WAS DIRECTED BY ITS HOSPITAL TO DO

20    THINGS AND IT RECEIVED IMMUNITY.

21           SO IF YOU APPLY -- AND I'LL WALK YOU THROUGH IT.  IF

22    YOU APPLY THE RUBRIC OF THE STATE ACTION DOCTRINE, ONE STEP

23    REMOVED, WE END UP WITH UNDISPUTED IMMUNITY UNDER 36(A).

24           **THE COURT:**  DON'T WE GET BACK TO FORESEEABILITY AND

25    THE IMPLEMENTATION --

APRIL 18, 2011

1          **MR. ERGASTOLO:**  WE GET BACK TO SOME OF THOSE SAME

2     ISSUES, YOUR HONOR.  WE END UP WITH THE TEST BEING CLEARLY

3     ARTICULATED, AND ACTIVE SUPERVISION.  AND THE ACTIVE

4     SUPERVISION HERE IS NOT FROM THE STATE; IT'S FROM THE CITY.

5     THE CITY.

6          AND THE ACTIVE SUPERVISION, UNDER THE SAME TEST THAT

7     YOU WOULD APPLY FROM THE STATE, DOESN'T REALLY MEAN ACTUALLY

8     ACTIVE SUPERVISION.  IT MEANS DIFFERENCE AND GIVING PERMISSION.

9     THE MANAGEMENT AGREEMENT DOES EXACTLY THAT.  AND THE WAY THE

10    CITY CONTROLS IS BY APPOINTING THAT BOARD.  THE CITY ONLY

11    APPOINTS THE BOARD MEMBERS THAT ARE ALLOWED TO VOTE ON THE

12    CONVENTION CENTER BOARD.  SO THE CITY RETAINS 100 PERCENT

13    CONTROL THROUGH ITS BOARD OF DIRECTORS OF THE CORPORATION.

14         SO IF WE FOLLOW THAT ANALYSIS, WE END UP WITH A

15    CLEARLY ARTICULATED -- BECAUSE IT'S CLEARLY ARTICULATED THROUGH

16    THE MANAGEMENT AGREEMENT AT THIS POINT.  THAT BECOMES THE

17    GOVERNING DOCUMENT.  AND THEN WE HAVE ACTIVE SUPERVISION,

18    THROUGH THAT SAME DOCUMENT, THROUGH THE BOARD.

19         SO WHETHER YOU USE 34(1) AND LOOK AT THIS BASED ON

20    SUBSTANCE AND NOT FORM, OR WHETHER YOU ARE GOING THROUGH THE

21    36(A) ANALYSIS USING SANDCREST AS YOUR GUIDE AND USING THE

22    RUBRIC OF THE STATE ACTION DOCTRINE, YOU END UP IN THE SAME

23    PLACE.

24         AND WHAT I WANT TO LEAVE THE COURT WITH IS THIS

25    SUBSTANCE OVER FORM.  UNDER 36(A), A PRIVATE ENTITY CAN GET

1   LGAA IMMUNITY.  AND, IN FACT, THE SANDCREST CASE DID JUST THAT,

2   A PRIVATE MANAGEMENT COMPANY.  IF THEY ARE ENTITLED TO LGAA

3   IMMUNITY UNDER THOSE CIRCUMSTANCES, IT'S NOT LOGICAL AND IT

4   CAN'T BE THE CASE THAT THE PUBLIC ENTITY, THE GOVERNMENT ENTITY

5   IN THIS CASE, THE SAN DIEGO CONVENTION CENTER CORPORATION,

6   DOESN'T GET THAT SAME IMMUNITY.

7           NOTHING FURTHER.

8           **THE COURT:**  OKAY.  MR. SLANIA?

9           **MR. SLANIA:**  A FEW POINTS, YOUR HONOR.  THEIR TRIAL

10  BRIEF AND THEIR MEMORANDUM OF CONTENTIONS OF FACT AND LAW WAS

11  FRAMING THE ISSUE FOR THIS TRIAL.  THE CONVENTION CENTER DIDN'T

12  ARGUE UNDER ANY OF THOSE OTHER STATUTES THAT

13  MR. ERGASTOLO NOW BRINGS UP.

14          WHAT THEY SAID WAS SDCC -- AND THIS IS THE TRIAL

15  BRIEF, WHICH IS DOCUMENT NUMBER 163, PAGE 49 -- SDCCC MAY

16  QUALIFY FOR LGAA IMMUNITY IF IT IS A SCHOOL DISTRICT -- WHICH

17  THEY ARE NOT -- A SANITARY DISTRICT -- WHICH THEY ARE NOT -- OR

18  ANY OTHER SPECIAL-FUNCTION GOVERNMENTAL UNIT ESTABLISHED BY

19  STATE LAW IN ONE OR MORE STATES.

20          THEN TO QUALIFY AS A SPECIAL-FUNCTION GOVERNMENT

21  UNIT, THERE ARE THREE PRONGS THAT THEY SET FORTH, THE THIRD ONE

22  BEING TAXPAYERS WILL BEAR THE BURDEN OF ANY ANTITRUST DAMAGE

23  AWARD.

24          THAT IS THEIR OWN TRIAL BRIEF.  THEY DIDN'T ARGUE ANY

25  OF THESE OTHER THINGS OR SET FORTH THE ISSUES TO BE TRIED IN

1    THIS COURTROOM, WHETHER OR NOT ANY OF THOSE OTHER PROVISIONS

2    APPLY.

3          SO I'D LIKE TO POINT THAT OUT TO THE COURT, FIRST.

4    THEY NEVER RAISED THIS ISSUE.

5          SECONDLY, LOOKING AT SUBSTANCE OVER FORM.  THE LOCAL

6    GOVERNMENT ANTITRUST ACT IS CONCERNED ABOUT THE LOCAL TAXPAYERS

7    MAKING SURE THAT THEY WOULDN'T BEAR THE BURDEN OF AN ANTITRUST

8    DAMAGES AWARD.  THE MANAGEMENT AGREEMENT TAKES CARE OF THAT.

9    THE CORPORATION OWES INDEMNITY OBLIGATIONS TO THE CITY.  AND IF

10   FOR SOME REASON THE CITY IS NOT PLEASED WITH THE CONVENTION

11   CENTER CORPORATION'S PERFORMANCE, THEY WILL HIRE A NEW

12   MANAGEMENT COMPANY, YOUR HONOR.  THEY COULD SEIZE THE CONTRACT

13   AND HIRE SOMEBODY ELSE TO MANAGE THE BUILDING.  THEY ARE NOT

14   GOING TO BE PAYING ANY DAMAGES AWARD THAT MAY BE ISSUED BY THE

15   JURY HERE.

16         AND AS FAR AS THE DISCUSSION ABOUT THE KERN CASE AND

17   THE OTHER CASE, I BELIEVE IT'S FROM THE NORTHERN PART OF TEXAS,

18   THAT THE ISSUE RELATES TO A TREBLE DAMAGES AWARD, THE CONCERN

19   IS THAT, ONCE AGAIN, WE ARE TRYING TO PROTECT THE TAXPAYERS.

20   AND IF THE TAXPAYERS WOULD BEAR THE BURDEN OF THE AWARD, THEN

21   THE DEFENSE MAY PROTECT THEM.

22         BUT, ONCE AGAIN, THAT IS NOT THE EVIDENCE WE HAVE IN

23   THIS CASE.  THERE IS NO CAUSAL CONNECTION OR LINK OR NEXUS

24   BETWEEN AN ANTITRUST DAMAGES AWARD BEING RENDERED AGAINST THE

25   CONVENTION CENTER CORPORATION AND A BURDEN ON THE TAXPAYERS.

1      AND I JUST WANTED TO POINT OUT, ALSO, IF YOU

2  REMEMBER, YOUR HONOR, BACK DURING THE MOTION IN LIMINE STAGE,

3  YOU HAD ASKED -- OR ONE OF THE RULINGS WAS THAT ANYTHING THAT

4  IS NOT SET FORTH AT THIS TIME -- THE AFFIRMATIVE DEFENSES THAT

5  AREN'T SET FORTH AT THIS TIME AREN'T GOING TO BE A PART OF THIS

6  TRIAL.  AND I VERY CLEARLY MADE SURE THAT WE WERE ELIMINATING

7  ALL OF THE AFFIRMATIVE DEFENSES THAT HADN'T BEEN PLED BY THE

8  SAN DIEGO CONVENTION CENTER CORPORATION.  AND ANY OF THESE NEW

9  ARGUMENTS THAT ARE BEING RAISED NOW, THAT MR. ERGASTOLO HAS

10  COME UP WITH POTENTIALLY DURING TRIAL, TO THE EXTENT THE COURT

11  WANTS TO CONSIDER THEM, THOSE WERE ALREADY RULED OUT WHEN

12  RULING ON THE MOTIONS IN LIMINE, YOUR HONOR.

13      **THE COURT:**  BUT THEY DID PLEAD 34(1)(A) AND (B) AND

14  36 FROM THE GET-GO.

15      **MR. SLANIA:**  BUT IT WASN'T IN THEIR MEMO OF

16  CONTENTIONS OF FACT OR LAW, YOUR HONOR, AND IT WASN'T IN THEIR

17  TRIAL BRIEF, YOUR HONOR.  THEY WEREN'T PURSUING THOSE THINGS AT

18  THAT POINT IN TIME.

19      IF YOU HAVE ANY QUESTIONS, I'M HAPPY TO ADDRESS THEM.

20      **THE COURT:**  I AM GOING TO NEED SOME TIME TO THINK

21  THROUGH THIS, BUT I WILL SAY I THINK THAT THE RELIANCE ON

22  TARABISHI IS MISPLACED IN TERMS OF FORMULATING WHAT WOULD BE

23  THE CONTROLLING LAW -- MISUNDERSTOOD, MISPLACED, WRONG, PICK

24  YOUR ADJECTIVE.  IT APPLIES TO A RETROACTIVE APPLICATION

25  SITUATION.  AND I DON'T FEEL THAT I AM BOUND NOR WOULD ANYONE

1  IN THE COURT BE BOUND BY JUDGE BENITEZ' RULING ELEVATING IT

2  INTO THE LAW OF THE CASE.

3         WHETHER OR NOT IT WAS THE RIGHT STANDARD, AT THE END

4  OF THE DAY HE SAID DEFENSE DOESN'T GET SUMMARY JUDGMENT ON IT,

5  LEAVING FOR US THIS DEBATE AND THIS ARGUMENT.

6         ALSO, TO THE EXTENT THAT IT WAS PURELY WRONG, IT

7  WOULD BE AGAINST THE INTEREST OF JUSTICE TO JUST SAY WELL,

8  THAT'S THE LAW, WE'RE GOING TO GO WITH IT RIGHT OR WRONG.  AND

9  I DON'T THINK IT FAIRLY STATES THE LAW.  I THINK SANDCREST IS A

10  BETTER STATEMENT, FROM ASSOCIATE JUSTICE POWELL, IN TERMS OF

11  DEFINING THE ELEMENTS.  AND HE BASICALLY EQUATES IT TO THE

12  STATE ACTION IMMUNITY, WHICH WE HAVE DEBATED FOR THE BETTER

13  PART OF AN HOUR, WHICH ULTIMATELY COMES DOWN TO THE CLEARLY

14  ARTICULATED POLICY AND THE FORESEEABILITY OF ANTI-COMPETITIVE

15  CONDUCT.

16         BUT BEFORE I RULE FINALLY, LET'S TAKE OUR NOON

17  RECESS.  AND I WANT TO GO BACK AND READ SANDCREST AGAIN AND

18  SOME OF THESE OTHER CASES, NOW THAT I HAVE YOUR ARGUMENTS

19  FIRMLY IN MIND.

20         AND WHEN WE COME BACK, I'D SAY AT 1:00, I WILL RULE

21  AS TO THE COMPETING REQUESTS HERE TO JUDGMENT AS A MATTER OF

22  LAW IN FAVOR OF THE PLAINTIFF OR IN FAVOR OF THE DEFENSE ON THE

23  LOCAL GOVERNMENT IMMUNITY.

24         SO, LET'S BE IN RECESS UNTIL 1:00.  AND WE'LL PICK UP

25  WITH THE DISCUSSION ON THIS MOTION.  AND THEN, OF COURSE, IF WE

APRIL 18, 2011

1    WIN OR LOSE ON THESE, WE STILL HAVE STATE CLAIMS AND OTHER

2    MATTERS AND JURY INSTRUCTIONS.  SO WE'LL MOVE INTO THAT

3    DISCUSSION.  SO WE'LL BE IN RECESS UNTIL 1:00.

4              **MR. SLANIA:**  THANK YOU, YOUR HONOR.

5              **MR. ERGASTOLO:**  THANK YOU, YOUR HONOR.

6    (RECESS AT 11:57 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APRIL 18, 2011

1      SAN DIEGO, CALIFORNIA; MONDAY, APRIL 18, 2011; 1:01 P.M.

2           **THE COURT:**  WE ARE BACK ON THE RECORD WITH COUNSEL

3    AND SOME OF THE PARTIES, TO CONTINUE THE DISCUSSION.  I DID GO

4    BACK AND READ THE CASES.  AND FROM A PROCEDURAL STANDPOINT, THE

5    DEFENSE HAS TALKED LOCAL GOVERNMENT IMMUNITY, STATE ACTOR

6    IMMUNITY FROM THE GET-GO.  AND WHILE THE LAW ARTICULATED IN THE

7    MEMO OF CONTENTIONS IS WHAT IT IS, I DON'T FIND THAT BINDING.

8    I THINK THAT THE CORRECT STATEMENT OF THE LAW IS WHAT THE COURT

9    ULTIMATELY HAS TO SEEK OUT AND APPLY.  SO I'M NOT GOING TO

10   ESTOP OR TIE THE HANDS OF THE DEFENSE IN THAT REGARD.

11          GOING BACK THROUGH THE CASES, YOU KNOW, TARABISHI

12   COMES UP IN A RETROSPECTIVE CONTEXT, LOOKING AT THE RETROACTIVE

13   APPLICATION.  AND THERE WAS ONE PARTICULAR THAT I FLAGGED

14   WITHOUT WRITING IT DOWN.  IT'S WOOLEN, WHICH IS 615 F. SUPP

15   344.  IT'S THE TAXICAB CASE.  AND, YOU KNOW, READING THROUGH

16   THAT IT TALKS ABOUT THE TWO ESSENTIAL FACTORS FOR THE LOCAL

17   GOVERNMENT IMMUNITY.  AND THEN IT GOES ON TO TALK ABOUT THE

18   RETROACTIVITY APPLICATION BECAUSE IT WAS A PENDING ISSUE.  AND

19   AT THAT POINT IT ARTICULATES THREE MORE REASONS WHERE WE GET

20   INTO THE TAXPAYER IMMUNITY.

21          SO I THINK THE LAW IS CLEAR, AND I WILL FIND THAT THE

22   ELEMENTS ARE THE LOCAL GOVERNMENT UNIT.  IT'S ESSENTIALLY THE

23   SAME AS THE STATE ACTOR IMMUNITY, BUT I THINK, AS MR. ERGASTOLO

24   ARTICULATED, RATHER THAN LOOKING FROM THE STATE DOWNWARD, WE

25   ARE NOW LOOKING AT THE CITY TO CONVENTION CENTER.  AND THIS

1    CONCEPT OF ACTIVE -- LET ME FIND IT HERE.  I WILL READ

2    SPECIFICALLY FROM SANDCREST, JUSTICE POWELL'S EXPRESSION, WHICH

3    CAREFULLY FOLLOWS THE LEGISLATIVE INTENT, HISTORY AND SO FORTH,

4    AND THE PURPOSE BEHIND THE IMMUNITY AS HAS BEEN DISCUSSED.

5         AND THEN CITING THE SUPREME COURT IN PARKER V. BROWN,

6    THAT THE CHALLENGED RESTRAINT MUST BE, ONE, CLEARLY ARTICULATED

7    AND AFFIRMATIVELY EXPRESSED AS STATE POLICY, AND THE

8    ANTI-COMPETITIVE CONDUCT MUST BE ACTIVELY SUPERVISED BY THE

9    STATE ITSELF.

10        SO REALLY, IT'S AN EQUIVALENT CONSTRUCT; IT'S JUST

11   FOCUSED DIFFERENTLY IN TERMS OF STATE POLICY AND ACTION VERSUS

12   THE LOCAL GOVERNMENT EQUIVALENT OF THAT.

13        AND SO FINDING THAT TO BE THE LEGAL STANDARD AND

14   RECOGNIZING THE SAME CLEAR ARTICULATION REQUIREMENTS THAT WE

15   TALKED ABOUT WITH REGARD TO THE STATE GOVERNMENT, THE STATE

16   ACTOR IMMUNITY AND THE CASES THERE -- INCLUDING TOWN OF HALLIE

17   V. CITY OF EAU CLAIRE, SUPREME COURT 471 U.S. 34, 1985 -- TALK

18   ABOUT THE SAME CONCEPT:  THAT IT'S NOT NECESSARILY TO BE

19   EXACTLY AS STATED, BUT THE QUESTION OF FORESEEABILITY AND SO

20   FORTH ALL FIGURE IN.

21        SO I AM GOING TO DENY THE MOTION UNDER 50(A) MADE BY

22   THE PLAINTIFF, FINDING THAT A REASONABLE JURY COULD FIND THE

23   DEFENSE TO APPLY ON THIS SECOND PRONG OF FORESEEABILITY.  FOR

24   THAT SAME REASON, DENY THE DEFENSE REQUEST FOR JUDGMENT AS A

25   MATTER OF LAW UNDER 50(A), TO THE EXTENT THEY ARE IMMUNE FROM

APRIL 18, 2011

1   ANTITRUST DAMAGES.  AGAIN, THE SAME JURY COULD FIND CONTRARY TO

2   THEIR INTEREST AND NOT APPLY THE IMMUNITY IN FAVOR OF PLAINTIFF

3   WITH ITS RULING.

4           SO THAT'S THE DISPOSITION OF THOSE.  I WILL TAKE

5   JUDICIAL NOTICE OF WHAT THE LAW IS UNDER 7350, AS REQUESTED BY

6   PLAINTIFF.  I DON'T FIND IT TO APPLY, BUT IT IS WHAT IT IS, FOR

7   THE RECORD PURPOSES, IN CASE THERE IS AN ISSUE AS TO WHETHER

8   THAT MIGHT FIGURE IN OR NOT.  I DON'T FIND IT APPLIES, THOUGH.

9           DID YOU GUYS WANT TO OBJECT TO THAT?

10          **MR. ERGASTOLO:**  YOUR HONOR, YES.  TO THE EXTENT THAT

11  IT'S NOT RELEVANT TO ANYTHING, THERE IS NO REASON FOR IT TO BE

12  BROUGHT TO THE ATTENTION OF THE JURY.

13          **THE COURT:**  IT'S NOT GOING TO GO TO THE JURY.  I AM

14  TAKING JUDICIAL NOTICE FOR THE PURPOSE OF OUR ARGUMENT, THAT

15  THAT IS THE LAW.  I WAS CUTTING TOO QUICK TO THE CONCLUSION.

16  BUT IN TERMS OF GOING TO THE JURY, THE ISSUE OF FINANCIAL

17  ABILITY TO PAY OR NOT PAY IS NOW IRRELEVANT.

18          YOU GUYS DISAGREE, PROBABLY.

19          **MR. SLANIA:**  THEN I TAKE IT THAT PART OF THE DEFENSE

20  THAT THEY HAVE PUSHED FORWARD IN THE DEFENSE CASE WAS THAT SDC

21  WOULDN'T BE ABLE TO PAY, AND THAT THE CITY WOULD HAVE TO PAY.

22  THAT IS PART OF THEIR AFFIRMATIVE DEFENSE.  AND I UNDERSTAND

23  THE COURT'S RULING NOW REGARDING THE BURDEN ON TAXPAYERS, BUT

24  THE CORPORATION'S CODE VERY CLEARLY SETS FORTH THAT

25  SHAREHOLDERS ARE NOT RESPONSIBLE.  AND THERE HAS BEEN A LOT OF

1   DISCUSSION AND A LOT OF EVIDENCE PRESENTED BY THE CONVENTION

2   CENTER REGARDING A CONNECTION -- OR THE CONNECTION BETWEEN THE

3   CITY AND THE CONVENTION CENTER CORPORATION.  THAT THE

4   CORPORATION'S CODE CLEARLY SETS FORTH THAT THE SHAREHOLDERS ARE

5   NOT RESPONSIBLE FOR THE DEBTS OF THE CORPORATION.

6           PART OF THE ADMITTED AND UNCONTESTED FACTS, YOUR

7   HONOR, WAS THAT THE CITY IS THE SOLE SHAREHOLDER OF THE SAN

8   DIEGO CONVENTION CENTER CORPORATION.  SO THAT IS A FACT THAT

9   HAS BEEN PRESENTED TO THE JURY, AND THIS LAW IS SOMETHING THAT

10  THEY SHOULD ALSO BE PRESENTED WITH, JUST TO INFORM THEM EVEN

11  THOUGH THE CITY IS THE SOLE SHAREHOLDER, THE SHAREHOLDERS ARE

12  NOT RESPONSIBLE FOR CORPORATE DEBTS.  SO IT RESPONDS TO THAT

13  EVIDENCE WHICH IS A PART OF THE STIPULATED FACTS THAT IS

14  ALREADY READ TO THE JURY, YOUR HONOR.

15          **THE COURT:**  WELL, I THINK IT'S TWO DIFFERENT THINGS.

16  NUMBER ONE, I DON'T REMEMBER A WHOLE LOT OF EVIDENCE ABOUT THE

17  TAXPAYERS ARE GOING TO HAVE TO PAY.  TO THE CONTRARY, I WAS

18  PROBABLY THE CHIEF PERPETRATOR IN KEEPING OUT THE PROPOSAL THAT

19  THAT EVIDENCE WOULD BE OFFERED.  AND IT MAY BE WHAT THE

20  CONVENTION CENTER HAS PROPOSED ALL ALONG AS PART OF THEIR CASE,

21  BUT I JUST FOUND IT'S NOT.  AND WE DIDN'T GET INTO THE

22  EVIDENCE.

23          THE ISSUES OF THE CLOSE CONNECTION BETWEEN THE CITY

24  AND SDC ARE RELEVANT WITH REGARD TO THE WHOLE ISSUE OF THESE

25  IMMUNITIES THAT ARE IN PLAY AND THAT I AM SENDING TO THE JURY

APRIL 18, 2011

1   FOR ITS DETERMINATION, INCLUDING SOME OF THE EARLY FUNDING OR

2   SO FORTH THAT LED TO THIS NEXUS TO AN AFFIRMATIVE STATE POLICY

3   THAT WAS ACTIVELY SUPERVISED.  ALL OF THAT IS HAND IN HAND.

4   THE ABILITY TO PAY OR NOT PAY HASN'T GONE IN.  I HAVE KEPT THAT

5   OUT.  SO, I DISAGREE.

6          I AM TAKING JUDICIAL NOTICE OF THE FACT THAT THIS WAS

7   ARGUED IN THE CONTEXT OF THE RULE 50(A) MOTION, BUT THERE IS NO

8   EVIDENCE ABOUT GOING TO THE CITY OR THE TAXPAYERS PAYING, WITH

9   WHICH WE HAVE TO INSTRUCT THE JURY.  SO I WILL DENY GIVING THAT

10  TO THE JURY, BUT IT'S PART OF THE RECORD FOR PURPOSES OF THE

11  CASE OR REVIEW OF THE CASE AS NEED BE.

12         ALL RIGHT.  SO LET'S TURN OUR ATTENTION TO THE JURY

13  INSTRUCTIONS, AND GIVE ME A MINUTE.

14  (FURTHER PROCEEDINGS REPORTED/NOT TRANSCRIBED HEREIN)

15                       CERTIFICATION

16         I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
    QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
17  STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
    TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
18  ON APRIL 18, 2011; THAT SAID TRANSCRIPT IS A TRUE AND CORRECT
    TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT
19  USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE
    UNITED STATES JUDICIAL CONFERENCE.

20

21  DATED:      5/17/11, AT SAN DIEGO, CALIFORNIA.

22          S/N_____
            JEANNETTE N. HILL, OFFICIAL REPORTER, CSR NO. 11148
23

24

25

                        APRIL 18, 2011