James R. Lance (147173)
Jacob M. Slania (200652)
Micaela P. Banach (226656)
**KIRBY NOONAN LANCE & HOGE LLP**
350 Tenth Avenue, Suite 1300
San Diego, California 92101-8700
Telephone (619) 231-8666
Facsimile (619) 231-9593

Theodore R. Tetzlaff (*Pro Hac Vice*)
Kristopher J. Stark (*Pro Hac Vice*)
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, Illinois 60602-4224
Telephone (312) 977-4400
Facsimile (312) 977-4405

Attorneys for Plaintiff
UNITED NATIONAL MAINTENANCE, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California corporation,<br><br>Defendant. | CASE NO. 07-CV-2172 AJB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>Judge:  Hon. Anthony J. Battaglia<br>Crtrm:  12<br>Trial Date:  March 21, 2011<br><br>Hearing Date:  July 1, 2011<br>Time:  1:30 p.m. |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  PROCEDURAL HISTORY ................................................................................. 2

   A.  United's Complaint ................................................................................. 2

   B.  The Motions In Limine .......................................................................... 2

   C.  The Trial ................................................................................................. 3

   D.  SDC's Initial Motion for Judgment as a Matter of Law ........................ 3

   E.  The Jury Instructions Conference .......................................................... 4

   F.  The Verdict ............................................................................................. 5

III.  THE LEGAL STANDARD TO APPLY TO THIS MOTION ............................ 6

IV.  THE MOTION SHOULD BE DENIED ............................................................. 7

   A.  SDC Waived Its Objections to Jury Instructions .................................. 7

      1.  The Standard to Preserve Objections to Jury Instructions ............ 7

      2.  SDC Did Not Preserve Its Objections ........................................... 8

         (a)  Proposed Jury Instruction 438 ............................................ 8

         (b)  Supplemental Instructions ................................................ 10

         (c)  SDC's Proposed Instruction 435 ....................................... 12

   B.  The Court Did not Commit Error .......................................................... 12

      1.  The Jury Instructions Were Correct ............................................ 12

         (a)  Proposed Jury Instruction 435 .......................................... 13

         (b)  Proposed Jury Instruction 438 .......................................... 15

         (c)  Supplemental Instructions ................................................ 17

      2.  The Court's Ruling on United's Motion in Limine No. 4 Was Correct ....... 18

   C.  SDC Did not Suffer Any Prejudice ...................................................... 21

      1.  Proposed Jury Instruction 435 .................................................... 21

      2.  Proposed Jury Instruction 438 .................................................... 22

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

|  |  | 3. | Supplemental Instructions | 23 |
|  |  | 4. | Motion in Limine No. Four | 24 |
|  | D. | The Court Should Not Disturb the Jury's Verdict | | 24 |
|  |  | 1. | United's Intentional Interference Cause of Action was Properly Submitted to the Jury | 24 |
|  |  | 2. | The Jury's Verdict was Supported by the Clear Weight of the Evidence | 26 |
|  | E. | The Intentional Interference Cause of Action is Not so Intertwined with the Other Causes of Action Such That a New Trial is Warranted. | | 28 |
| V. | CONCLUSION | | | 32 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anglo-American General Agents v. Jackson Nat. Life Ins. Co.,*
  83 F.R.D. 41 (N.D. Cal 1979) ................................................................. 1, 7, 21

*Applied Equipment v. Litton Saudi Arabia Ltd.*
  (1994) 7 Cal.4th 503 ........................................................................... 25

*Bertrand v. Southern Pac. Co.,*
  282 F.2d 569 (9th Cir. 1960) ................................................................. 8

*Boston Scientific Corp. v. Johnson & Johnson,*
  550 F.Supp.2d 1102 (N.D. Cal. 2008) ........................................... 6, 7, 21

*Browning v. United States*
  (2009) 567 F.3d 1038 .......................................................................... 13

*Computer Access Tech. Corp. v. Catalyst Enterprises,*
  273 F.Supp.2d 1063 (N.D. Cal. 2003) ..................................................... 32

*FN Enterprises, Inc. v. Callahan Mining Corp.,* WL 509459 *6 (N.D. Cal. 1995)............ 8, 10, 11

*Gasoline Products Co. v. Champlin Refining Co.,*
  283 U.S. 494 (1931) ............................................................................ 31

*Gordon v. New York City Bd. of Educ.,*
  232 F.3d 111 (2nd Cir. 2000) ................................................................. 18

*Grosvenor Properties Ltd v. Southmark Corp.,*
  896 F.2d 1149 (9th Cir. 1990) ............................................................... 8

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

*H&M Associates v. City of El Centro*,
   109 Cal.App.3d 399 (2001)....................................................................... 26

*Imperial Ice Co. v. Rossier*,
   18 Cal.2d 33 (1941)................................................................................... 13

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
   833 F.2d 1365 (9th Cir. 1987)........................................................... 6, 7, 24

*Lowell v. Mother's Cake & Cookie Co.*,
   79 Cal.App.3d 13 (2002)........................................................................... 26

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
   271 F.3d 825 (9th Cir. 2001)..................................................................... 25

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   616 F.3d 904 (9th Cir. 2010)..................................................................... 14

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
   50 Cal.3d 1118 (1990)............................................................................... 27

*Parker v. City of Nashua, N.H.*,
   76 F.3d 9 (1st Cir. 1996) .................................................................. 8, 10, 12

*PM Group v. Stewart*,
   154 Cal.App.4th 55 (2007)........................................................................ 26

*Quelimane Co. v. Stewart Title Guaranty Co.*
   (1998) 19 Cal.4th 26................................................................................. 29

*Richardson v. La Rancherita*,
   98 Cal.App.3d 73 (1979) ................................................................ 9, 10, 16

*Union Oil Co. of California v. Terrible Herbst, Inc.*,
   331 F.3d 735 (9th Cir. 2003)....................................................................... 7

*Union Pac. Railroad Co. v. Bridal Veil Lumber Co.*,
   219 F.2d 825 (9th Cir. 1955)..................................................................... 31

*Voohries-Larson v. Cessna Aircraft Co.*,
   241 F.3d 707 (9th Cir. 2001)..................................................................... 10

**STATUTES**

Evidence Code § 403.......................................................................................... 21

Rule 59 of the Federal Rules of Civil Procedure ................................................. 6

FRCP 51(c)........................................................................................................... 8

FRE 401, 403, 802.................................................................................................... 18

FRE 403.................................................................................................................... 20

**OTHER AUTHORITIES**

40 Cal. Jur. 3d Interference with Economic Advantage § 2 .................................................... 13, 14

Restatement (Second) of Torts.................................................................................................. 17

Restatement (Second) of Torts § 768, comment .......................................................................... 17

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

# I. INTRODUCTION

After five weeks of trial and two weeks of deliberations, the jury unanimously ruled in favor of Plaintiff United National Maintenance, Inc. ("United") on its cause of action for intentional interference with contractual relations.  Defendant San Diego Convention Center Corporation, Inc. ("SDC") seeks a new trial on that claim, arguing that (1) the Court committed "numerous errors" instructing the jury, and (2) the interference claim is predicated on United's antitrust claims.  Neither argument is valid.

Regarding the jury instructions, SDC seeks to overturn the jury's verdict on the grounds that the court erred by failing to give two of SDC's proposed jury instructions (435 and 438), by providing erroneous supplemental instructions in response to jury questions, by erroneously ruling on a pretrial motion in limine, and by allowing the jury to determine whether United proved its interference claim.  SDC's arguments fail for at least three reasons.

First, SDC did not preserve its right to object to certain of those jury instructions.  In fact, in some instances SDC consented to the instructions given.  Second, the Court did not commit any errors.  The instructions given to the jury accurately state the applicable law.  The Court also properly exercised its discretion when ruling on the subject motion in limine.  Third, even if SDC proves there were errors,[1] SDC has failed to establish any prejudicial harm.  On a motion for new trial it is SDC's burden to make a showing of prejudicial harm (*Anglo-American General Agents v. Jackson Nat. Life Ins. Co.,* 83 F.R.D. 41, 43 (N.D. Cal 1979)), and SDC fails to satisfy that burden here.

At trial, United established it has long-term, national contracts with decorators Global Exposition Services, Inc. ("GES") and Champion Exposition Services, Inc. ("Champion") to provide Trade Show Cleaning Services.  The terms of those contracts are not ambiguous, and the Court agreed there is no conflict in the evidence bearing on the contracts:

---

[1] SDC has not proven any error.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

> United has a contract with GES and a contract with Champion where it got x dollars for x services, the 50/50 split, and these varying hourly contract rates. The contract is in evidence. It speaks for itself. Nobody came in and said that's not the deal. So I do not find there are conflicts that need to be resolved on a contract interpretation.

(Declaration of Jacob M. Slania ("Slania Dec.") at ¶ 3; Ex. 1 at 167:22-168:3.) The jury agreed, finding for United on every issue raised in the special verdict form regarding the intentional interference claim. (Slania Dec. at ¶ 4; Ex. 2 at p. 9-11.)

SDC presented evidence at trial in an attempt to defeat this claim. SDC presented argument in support of its theory that GES and Champion did not have the right to contract with United to use United's labor at the San Diego Convention Center. The jury was instructed on the elements of the claim and SDC's justification defense. The justification defense instruction specifically identifies SDC's conduct, motive, and interest as well as SDC's freedom to act. Clearly the jury heard SDC's evidence and theory, and the jury was instructed to consider SDC's evidence and theory while deliberating.

Despite the above, the jury unanimously ruled in favor of United on its cause of action for intentional interference with contractual relations. SDC's Motion should be denied because the jury's unanimous verdict in favor of United is supported by the law and by the clear weight of the evidence presented.

## II. PROCEDURAL HISTORY

### A. United's Complaint

On November 13, 2007, United filed its Complaint against SDC for antitrust violations and interference with contractual and prospective economic relations. United alleged that SDC's Exclusive Policy violated the antitrust laws. United also alleged that SDC interfered with United's contracts with GES and Champion, as well as United's economic relationships with Paradice Decorating Company ("Paradice") and Brede National ("Brede").

### B. The Motions In Limine

Before trial, United filed nine motions in limine. SDC filed fourteen motions in limine and three *Daubert* motions. On March 11, 2011, the parties argued the motions in limine before this

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    Court. SDC argues in the instant Motion for a New Trial that the Court erred in granting United's

2    motion in limine no. 4 seeking to exclude evidence of exclusive policies at other convention center

3    facilities. (Slania Dec. at ¶ 5; Ex. 3.)

4           This motion was argued extensively on the record at the hearing. (Slania Dec. at ¶ 6; Ex. 4

5    at p. 19-43.) SDC made the same arguments that it makes in the instant Motion. The Court

6    considered all of the facts and law relative to this issue and ruled that the evidence was properly

7    excluded because there was better evidence of the parties' reasonable expectations under the

8    contract through analysis of the parties' history of competition at the Facility. (Slania Dec. at ¶ 6;

9    Ex. 4 at p. 26, 29-30, 34, 43). The Court also noted that allowing such evidence would open the

10   door for United to introduce evidence regarding its successful lawsuit in San Francisco against the

11   Moscone Convention Center, in which United obtained an injunction to prevent the enforcement

12   of an exclusive cleaning policy. The Court properly ruled that the prejudicial impact of this

13   evidence outweighed any probative value due to undue consumption of time with additional

14   witnesses and evidence to analyze and compare the other policies. (Slania Dec. at ¶ 6; Ex. 4 at p.

15   31, 34, 43.)

16   **C.    The Trial**

17          The case proceeded to a jury trial from March 21 through April 20, 2011. During the trial,

18   testimony was presented from thirty witnesses and approximately 279 documents were admitted

19   into evidence. SDC objected to various evidentiary issues and the Court ruled appropriately on

20   each objection.

21   **D.    SDC's Initial Motion for Judgment as a Matter of Law**

22          On April 7, 2011, after the close of United's case in chief, SDC made an oral motion for

23   judgment as a matter of law on each of United's causes of action. SDC's motion was denied. In

24   ruling on the claim for intentional interference with contractual relations, this Court ruled there

25   was "plenty of evidence" offered for which a jury could find for United. (Slania Dec. at ¶ 7; Ex. 5

26   at 80:10-14.)

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

### E.    The Jury Instructions Conference

On April 13, 2011, the Court conducted the first session of the jury instruction conference. The first session lasted approximately three hours.  On April 18, 2011 the Court held the second jury instruction conference session.  Counsel for both parties were present for eight hours discussing the proposed instructions.  After significant discussion, the Court ruled on the appropriate instructions that were to be read to the jury, including the instructions on the interference claims.  (Slania Dec. at ¶ 8; Ex. 6.)

Before the jury instruction conference, both United and SDC submitted proposed jury instructions.  (Slania Dec. at ¶ 9, 10; Exs. 7 and 8.)  SDC's proposed jury instructions acknowledged that the elements and burden of proof on United's interference with contract claim was different than the burden on the antitrust claims.  (Slania Dec. at ¶ 10; Ex. 8 at p. 54 (interference with contract), 23-25 (essential facilities) and 34 (attempted monopolization).[2])  In its proposed jury instructions, SDC also acknowledged that the burden of proof on its justification defense to the antitrust claims was different than the burden of proof on its justification affirmative defense to the interference claims.  (Slania Dec. at ¶ 10; Ex. 8 at p. 28-30 (monopolization – business justification and 62-63 (intentional interference with contractual relations – justification.)

During the second jury instruction conference, SDC voluntarily amended its proposed instruction 435.  Proposed instruction 435 was revised by SDC to read as follows:

> To establish that SDC's actions caused actual disruption to the relationship between United and GES and/or Champion, United must prove by a preponderance of the evidence:
>     1.    The nature and extent of United's reasonable expectations under each contract; and
>     2.    That SDC's conduct, in fact, caused disruptions to these expectations.

(Slania Dec. at ¶ 3; Ex. 1 at 166:6-13).  SDC had a footnote in the original proposal that did not appear to be carried over to the modified version.  (Slania Dec. at ¶ 10; Ex.  at p. 59.)  Importantly,

---

[2] United cites to the docket page numbers in the upper right corner of SDC's proposed jury instructions, Docket 161.

1    SDC never proposed an instruction identifying United's reasonable expectations, or how the Court

2    should interpret United's reasonable expectations.  (Slania Dec. at ¶ 3; Ex. 1 at 166:6-169:12).

3    **F.**     **The Verdict**

4           On May 4, 2011, the jury returned a unanimous verdict in favor of United, ruling that SDC

5    unlawfully interfered with United's contractual relationships with two of its customers, GES and

6    Champion.  The jury found:

7    •    There was a contract between United and GES, and a contract between United and

8         Champion (Verdict Form at ¶ 33);

9    •    SDC knew of the contracts between United and GES/Champion (Verdict Form at ¶

10        34);

11   •    SDC intended to disrupt performance of the contracts between United and

12        GES/Champion (Verdict Form at ¶ 35);

13   •    SDC's conduct actually prevented performance or made performance of said

14        contracts more expensive or difficult (Verdict Form at ¶ 36);

15   •    SDC's conduct with respect to GES and Champion was a substantial factor in

16        causing harm to United (Verdict Form at ¶ 37);

17   •    SDC's interference with United's contracts was not justified (Verdict Form at ¶ 38).

18   •    United proved the amount of its damages caused by SDC's interference with the

19        contracts between United and GES/Champion with reasonable certainty (Verdict

20        Form at ¶39);

21   •    United acted properly to mitigate its damages (Verdict Form at ¶40); and

22

23

24

25

26

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1    • The amount of United's damages directly caused by and attributable to SDC's

2    interference with the GES contract was $358,223; and the amount of United's

3    damages directly caused by and attributable to SDC's interference with the

4    Champion contract was $310,682 (Verdict Form at ¶41).[3]

5    (Slania Dec. at ¶ 4; Ex. 2.) United prevailed on the merits of its contractual interference claim.

6    The jury was hung as to the other causes of action.

### III. THE LEGAL STANDARD TO APPLY TO THIS MOTION

8    Rule 59 of the Federal Rules of Civil Procedure provides that the court may, upon motion,

9    grant a new trial on all or some of the issues after a jury trial, for any reason for which a new trial

10   has heretofore been granted in an action at law in federal court.  Rule 50(b) provides that a motion

11   for new trial may be filed as an alternative or joint request in conjunction with a Motion for

12   Judgment as a Matter of Law.

13   It is within the sole discretion of the trial judge whether to grant a new trial under Rule 59.

14   *Boston Scientific Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102, 1110 (N.D. Cal. 2008).  A

15   new trial may be ordered to correct manifest errors of law or fact.  *Id.*  A court should not simply

16   disregard a verdict reached by the jury or decide the case as though there had been no jury.  A

17   court may grant a motion for new trial only if the verdict is <u>against the clear weight of the</u>

18   <u>evidence</u>. *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987)

19   (emphasis added).  There is no verbal formula to explain this concept.  All that can be said is that a

20   verdict can only be set aside where, after giving full respect to the jury's findings, the judge "is left

21   with the definite and firm conviction that <u>a mistake has been committed</u> by the jury." *Id.*

22   (emphasis added).

23

24

25    [3]The jury also unanimously found that SDC knew of and intended to disrupt United's

26   prospective economic relationships with other decorators, namely Paradice and Brede. (Slania
     Dec. at ¶ 4; Ex. 2 at p. 13-14.)  Although the jury was hung on that specific cause of action, it is

27   clear that the jury believed SDC's conduct with regard to United's economic relationships was
     wrongful and unlawful.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

In ruling on a motion for new trial, the Court may assess the credibility of the witnesses and weigh the evidence. *Id.* Additionally, "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Id.* A new trial is only warranted when the clear weight of the evidence is against the verdict, not when the evidence could go either way. *Union Oil Co. of California v. Terrible Herbst, Inc.*, 331 F.3d 735, 742-743 (9th Cir. 2003).

The party seeking the new trial has the burden of showing harmful error. SDC argues that where an error in jury instructions is found, prejudice is presumed and the burden shifts to United to demonstrate that it is more probable than not that the jury would have reached the same verdict with proper instructions. (See, SDC's Motion for New Trial, at p. 4.) This is an incorrect statement of the law. That standard applies on appeal, not on a motion for new trial. In a motion for new trial, the moving party bears the burden of establishing prejudice. *Boston Scientific, supra,* 550 F.Supp.2d at 1110. "The burden of proof on a motion for a new trial is on the moving party, and the court should not lightly disturb a plausible jury verdict. . . Furthermore, new trials should not be granted on the basis of asserted errors which in the circumstances were not prejudicial." *Anglo-American General Agents v. Jackson Nat. Life Ins. Co.*, 83 F.R.D. 41, 43 (N.D. Cal. 1979); *See also, Boston Scientific, supra,* 550 F.Supp.2d at 1110.

### IV. THE MOTION SHOULD BE DENIED

SDC lost the trial. The present motion is SDC's last ditch effort to undo the jury's hard work and effort. To do so, SDC bears the burden of demonstrating that there was "a mistake." *Landes, supra,* 833 F.2d at 1371. Stated another way, SDC must prove that the clear weight of the evidence is against the verdict. *Union Oil Co., supra,* 331 F.3d at 742-743. SDC has not and cannot do so here.

A.      **SDC Waived Its Objections to Jury Instructions**

1.      **The Standard to Preserve Objections to Jury Instructions**

An objection to a jury instruction is preserved only if properly made on the record. A party objecting to an instruction or the failure to give an instruction "must do so on the record,

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1  stating distinctly the matter objected to and the grounds for the objection." FRCP 51(c).  If a party

2  fails to object to jury instructions at the time they are given to the jury, the party waives its right to

3  challenge the court's jury instructions in a motion for new trial.  *FN Enterprises, Inc. v. Callahan*

4  *Mining Corp.*, WL 509459 *6 (N.D. Cal. 1995).

5       A defendant cannot obtain a new trial based on instructional error when it did not object to

6  the instructions.  *Jones v. Hollenback*, WL 3335012 *7 (E.D. Cal. 2007).  Remarks made by

7  counsel in chambers, discussions of law in pretrial memoranda, and mere submission of proposed

8  instructions do not clearly show that the issue was focused for the court and are insufficient to

9  constitute an objection.  *Grosvenor Properties Ltd v. Southmark Corp.*, 896 F.2d 1149, 1152 (9th

10  Cir. 1990).  Submission of a proposed jury instruction which a party believes correctly states the

11  law is insufficient to constitute an objection if the instruction is not used.  *Bertrand v. Southern*

12  *Pac. Co.*, 282 F.2d 569, 572 (9th Cir. 1960).  Furthermore, the objecting party must proffer a

13  satisfactory cure that does not overstate the law in the objecting party's favor.  *Parker v. City of*

14  *Nashua, N.H.*, 76 F.3d 9, 12 (1st Cir. 1996).

15       "Additionally, the court is not obligated to give the exact jury instructions proposed by the

16  parties.  If it were, one of the court's primary functions at trial would be usurped by the parties,

17  who would be free to submit any number of 'proposed' instructions to be read by the court,

18  regardless of their legal merit."  *FN Enterprises*, *supra*, at * 7.

19         **2.**    **SDC Did Not Preserve Its Objections**

20         **(a)**    **Proposed Jury Instruction 438**

21       SDC initially proposed two instructions (437 and 438) for its justification affirmative

22  defense to United's intentional interference with contract claim.  (Slania Dec. at ¶ 10; Ex. 8 at p.

23  62-65.)  SDC also proposed two instructions (446 and 447) on this defense to United's intentional

24  interference with prospective economic advantage claim.  (Slania Dec. at ¶ 10; Ex. 8 at p. 75-78.)

25  During the jury instructions conference on April 18, 2011, SDC voluntarily offered to combine

26  those four instructions into two.  (Slania Dec. at ¶ 3; Ex. 1 at 171:12-15.)

27       The parties then discussed the propriety of having two separate instructions given to the

28  jury on SDC's justification affirmative defense.  (Slania Dec. at ¶ 3; Ex. 1 at p. 183-194).  The

1   parties agreed, and the Court ruled, that instruction 447[4] would be given. (Slania Dec. at ¶ 3; Ex.

2   1 at p. 183:4-12; Slania Dec. at ¶ 8; Ex. 6 at p. 75 (Final Jury Instruction 447.) The Court noted

3   that the instruction, proposed by SDC, identified for the jury the nature of SDC's conduct, and the

4   motive, interest, proximity and remoteness of SDC's conduct, and that "the relevant factors give

5   them a lot of information from which to determine justification." (Slania Dec. at ¶ 3; Ex. 1 at

6   186:21-187:1.) SDC consented to this instruction being given. (Slania Dec. at ¶ 3; Ex. 1 at 189:7-

7   8.)

8         The discussion then moved to SDC's proposed instruction 438. SDC acknowledged that

9   the instruction was crafted by counsel from case law (*Richardson v. La Rancherita,* 98 Cal.App.3d

10  73 (1979)), and not based on a form instruction. (Slania Dec. at ¶ 3; Ex. 1 at 189:9-11.) One of

11  SDC's lawyers said this instruction was an "alternate and narrower test for determining

12  justification." (Slania Dec. at ¶ 3; Ex. 1 at 189:17-18.) Another of SDC's lawyers said it was an

13  alternate to 447 (Slania Dec. at ¶ 3; Ex. 1 at 191:21), and then that it was not an alternate. (Slania

14  Dec. at ¶ 3; Ex. 1 at 191:22.) SDC's position was not clear.

15        The debate then focused on the interest that SDC was attempting to protect through its

16  conduct, and the *Richardson* case only dealt with a property interest. (Slania Dec. at ¶ 3; Ex. 1 at

17  193:6-194:5.) The Court, having heard all of the evidence and argument of counsel, stated:

18              You know what? I think the defense falls short in terms of the
                good-faith aspect. We have Ms. Wallace saying it was her decision
19              – she consulted with others. She made the decision. So this idea of
                the good-faith aspect hasn't been developed. It otherwise used
20              lawful and appropriate means to protect that interest. There is little,
                if any, evidence on alternate means, other

21

22

23

24

25

26

27

28

---

[4] This instruction was originally identified as SDC's proposed instruction 437.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   than moving forward toward this policy. And the interest in
2   security, you know, may touch on the first element. But I don't
    think there is sufficient evidence to instruct the jury on this defense.
    And I am going to rule it out . . .
3

4   (Slania Dec. at ¶ 3; Ex. 1 at 194:6-17.)

5   After the Court ruled on the instruction, SDC did not object on the record, setting forth any

6   specific objection. Instead, SDC moved on to discussing the damages instruction. (Slania Dec. at

7   ¶ 3; Ex. 1 at 194:20-21.)

8   By failing to object, SDC waived any right to argue that there was any error associated

9   with the failure to give proposed instruction 438. *FN Enterprises*, *supra*, at * 6. The purpose of

10  requiring SDC to voice a specific objection during the conference is to bring possible errors to

11  light while there is time to correct them, without entailing the cost, delay, and expenditure of

12  judicial resources caused by retrials. *Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713

13  (9th Cir. 2001). SDC failed to lodge or voice such an objection here, and therefore waived its

14  argument.

15  Even if SDC's discussion could be considered an objection, SDC failed to provide a

16  satisfactory cure. *Parker, supra,* 76 F.3d at 12. Proposed instruction 438 was a one-sided

17  recitation of the *Richardson* case in SDC's favor. This is insufficient under *Parker*. SDC was

18  required to provide an alternative instruction that did not overstate the law. By failing to do so,

19  SDC waived any and all rights to object to proposed instruction 438 not being given. *Parker,*

20  *supra,* 76 F.3d at 12.

21  **(b)     Supplemental Instructions**

22  SDC also complains that the Court erred in its responses to juror questions 21 and 22.

23  (Slania Dec. at ¶ 11; Ex. 9.) Those questions related specifically to the term "parties" as stated on

24  the fifth bullet point in instruction 447. (Slania Dec. at ¶ 12; Ex. 10 at p. 7-16.) SDC now

25  contends that in answering those questions, the jury should have been instructed to include entities

26  with which SDC contracted. Although SDC took the same position when the issue was discussed

27  on May 2, 2011 (Slania Dec. at ¶ 12; Ex. 10 at p. 8-14), importantly, before May 2, SDC took a

28  different position on this specific issue.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  The initial jury question regarding the term "parties" in Instruction 447 was addressed by

2  SDC and United on Friday, April 22, 2011, and again on April 25, 2011. **At that time SDC**

3  **consented and agreed that the term "parties" referred to United, SDC, GES, Champion,**

4  **Paradice and/or Brede.** (Slania Dec. at ¶ 13; Ex. 11 at 7:4-21.) The Court so instructed the jury

5  on April 25, 2011. (Slania Dec. at ¶ 14; Ex. 12 at 15:6-7.) SDC did not object or offer any

6  proposed alternative at that time.[5]

7  In fact, SDC acknowledged it did not object on April 25, 2011. (Slania Dec. at ¶ 12; Ex.

8  10 at 8:4-6.) By failing to object on April 25, 2011, SDC waived any objection to the

9  supplemental instruction. *FN Enterprises*, *supra*, at * 6.

10  When the same question came up again on May 2, 2011 SDC had no right to object to the

11  instruction because it had not previously objected to the same instruction. United explained to the

12  Court that giving a different answer would confuse the jury. The Court agreed, stating:

13  And, in my view, to read more into bullet point 5 than we have
   already instructed them would be inappropriate and would reopen
14  more questions and would cause them to have to interpret or reflect
   back on argument of well over a week ago.

15

16  (Slania Dec. at ¶ 12; Ex. 10 at 13:22-14:1). It would have been prejudicial and confusing to the

17  jury to give any answer other than the same answer previously provided.

18  In sum, SDC waived the right to challenge how the Court defined the "parties" under the

19  fifth bullet point of instruction 447. United should not be penalized, nor should the Court have to

20  expend significant resources on a retrial, because SDC "frankly, …, when we agreed the last time,

21  this set of circumstances is something that we didn't anticipate." (Slania Dec. at ¶ 12; Ex. 10 at

22  9:21-22) Accordingly, SDC's Motion should be denied.

23

24

25

26

27  [5] Juror question 21 acknowledges that the jury had previously asked about who the term
   "parties" referred to in the fifth bullet point of instruction 447. (Slania Dec. at ¶ 11; Ex. 9 (Juror
28  Question No. 13.)

1

(c)   **SDC's Proposed Instruction 435**

2       As mentioned above, to preserve an objection on a jury instruction SDC bears the

3   responsibility of providing a suitable or satisfactory cure. *Parker, supra,* 76 F.3d at 12. SDC

4   failed to do so regarding the proposed instruction 435.

5       Before the instruction conference, SDC's proposed instruction 435 contained a footnote,

6   stating that additional language was required after it was determined what United's reasonable

7   expectations were. It is not clear if that footnote survived the modification of the instruction at the

8   jury conference. Regardless, SDC never offered a satisfactory proposed instruction regarding

9   United's reasonable expectations. Accordingly, SDC failed to preserve any objections to the

10  Court's decision not to provide the modified proposed instruction 435.

11  **B.   The Court Did not Commit Error**

12       **1.   The Jury Instructions Were Correct**

13       If this Court finds that SDC did not waive its objections, it should still deny SDC's Motion

14  because the jury instructions were proper. "If a party claims that an erroneous jury instruction was

15  given, the erroneous instruction is not grounds for granting a new trial unless the error affects the

16  essential fairness of the trial and a new trial is necessary to achieve substantial justice." *Baxter*

17  *Healthcare Corp. v. Fresenius Medical Care Holdings, Inc.*, WL 672640 *3 (N.D. Cal. 2011).

18  The court in *Munley v. U.S.*, WL 444422 *1 (Nev. 1995), described the standard as follows:

19           A new trial is warranted only if, based on a review of the record as a
             whole, the error is found to be prejudicial. *National R. Passenger*
20           *Corp. v. 25,900 Square Foot*, 766 F.2d 685, 688 (2nd Cir. 1985).
             'Determination of whether error was prejudicial is guided by the
21           harmless error doctrine as incorporated in Fed.R.Civ.P. 61.' *Ibid.*
             **When a motion for a new trial is based on a challenge to the jury**
22           **instructions, the court must 'determine, after examining the**
             **record as a whole, whether the instructions 'correctly state the**
23           **applicable law and provide the jury with ample understanding**
             **of the issues and standards of the case.'** *Lamon v. City of*
24           *Shawnee, Kansas*, 972 F.2d 1145, 1153 (10th Cir. 1992) (citations
             omitted/emphasis added).' *Denbo v. United States*, 988 F.2d 1029,
25           1034 (10th Cir. 1993). A new trial on the grounds of erroneous jury
             instructions

26

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1     will not be granted unless the instructions 'misled the jury or had a
    probable effect on its verdict.' *E.I. du Pont de Nemours v. Berkley*
2     *& Co., Inc.,* 620 F.2d 1247, 1257 (8th Cir. 1980).

3     An appellate court reviews jury instructions for abuse of discretion. *Browning v. United*

4 *States* (2009) 567 F.3d 1038, 1041. The court is to consider whether the instructions were

5 misleading or inadequate and whether any error was harmless. *Id*. Here, in examining the record

6 as a whole, the jury instructions correctly stated the law and provided the jury with ample

7 understanding of the issues and standards of the case. This Court gave the proper instructions.

8                 **(a)**     **Proposed Jury Instruction 435**

9     SDC has taken great steps in attempting to legalize its unlawful interference. That is the

10 entire crux of SDC's "tiered" argument. The jury saw right through this argument, as should this

11 Court.

12     SDC decided it would interfere with United's contracts, and implement its exclusive

13 cleaning strategy (Slania Dec. at ¶ 15; Ex. 13), after unsuccessfully soliciting United's customers.

14 It was at that time that SDC concocted its scheme to amend its policies, rules and regulations to

15 require only SDC personnel perform Trade Show Cleaning at the San Diego Convention Center.

16 (Slania Dec. at ¶ 16; Ex. 14.) SDC hoped this unilateral act would insulate it from legal liability

17 through its contract with Facility licensees. In fact, SDC presented evidence to support this

18 theory, and SDC argued this theory to the jury in its closing argument.

19     The jury did not buy this chicanery. Essentially, SDC told the jury it is permissible for

20 SDC to unlawfully interfere if SDC says it can do so in its own rules. Unfortunately for SDC, that

21 is not the law. There is over 100 years of precedent protecting the sanctity of contracts, and SDC's

22 actions violate the spirit and letter of this law. *See, Lumley v. Gye,* 2 El. & Bl. 216 (1853);

23 *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33 (1941). That is precisely what the tort of interference

24 with contracts is designed to protect against, intentional disruption of contracts. *See*, 40 Cal. Jur.

25 3d Interference with Economic Advantage § 2 (a cause of action for contractual interference "is

26 premised upon the principle that everyone has the right to establish and conduct a lawful business

27 and is entitled to the protection of organized society, through its courts, whenever that right is

28 unlawfully invaded").

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    Essentially, by its Motion, SDC wants this Court to rule that because SDC hid its unlawful

2    interference in its policies, rules, and regulations, United never had a reasonable expectation to

3    perform Trade Show Cleaning Services under its contracts with GES/Champion at the San Diego

4    Convention Center after July 1, 2007. **In making this argument, SDC asks this Court to**

5    **exclude United's reasonable expectation that SDC would act lawfully.** SDC's request is

6    improper and contrary to established law. *Id.*

7    SDC also raises a technical argument that the Court failed to properly consider extrinsic

8    evidence. Not so. SDC's Motion fails to identify what extrinsic evidence the Court allegedly did

9    not consider or how the Court committed error in its interpretation of United's contracts. The

10   evidence shows that the Court did in fact consider all of the evidence and argument related to

11   interpretation of United's contracts and simply determined that there was no conflict regarding the

12   terms and meaning of the contracts. The fact that SDC disagrees with the Court's interpretation of

13   the contracts does not mean that the Court committed error. At oral argument on this exact issue,

14   the Court stated:

15              I think we are trying to inject issues that don't need to be there. The
                construct for the cause of action is there was a contract. We have
16              plenty of evidence on that. Whether or not SDC knew of it and
                intended to disrupt it is, I think, plainly clear from their own
17              language. And then, of course, we go on to the prevention of
                performance.
18

19   (Slania Dec. at ¶ 3; Ex. 1 at 166:19-24.)

20   SDC argued the *Mattel* case in support of its argument that the contracts were ambiguous

21   and extrinsic evidence should have been consulted. *Mattel, Inc. v. MGA Entertainment, Inc.*, 616

22   F.3d 904 (9th Cir. 2010). In *Mattel*, the lower court interpreted an employment agreement and

23   instructed the jury on that interpretation. The appellate court remanded the case, stating that the

24   lower court's interpretation was incorrect because it failed to recognize ambiguities in the

25   agreement. The Court listened to SDC's oral argument about the *Mattel* case and concluded:

26              United has a contract with GES and a contract with Champion
                where it got x dollars for x services, the 50/50 split, and these
27              varying hourly contract rates. The contract is in evidence. It speaks
                for itself. Nobody came in and said that's not the deal. So I do not
28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1
2

> find there are conflicts that need to be resolved on a contract interpretation.

> ***

3
4
5
6
7

> I am going to reject it. Let's move on. I don't buy it. The contract is clear. The jury can understand what disruption means: preventing it; made it more difficult. It's a jury question and I think you are attempting to over-complicate it or inject new issues that simply don't exist. If there was conflicts in the evidence about the contract interpretation that would be different, but there is nothing for the court to sort out. It's a jury question. So 435 is out.

8

(Slania Dec. at ¶ 3; Ex. 1 at 167:22-168:3; 169:4-12.)

9
10
11
12

       Thus, it is clear that the Court did in fact consider all of the facts and circumstances surrounding United's contracts and determined that there was no ambiguity and the claim was appropriate for the jury to determine.  SDC's burden in this Motion is to establish that the Court's interpretation was prejudicial error, not that it simply disagrees with the Court's interpretation.

13

**(b)**     **Proposed Jury Instruction 438**

14
15
16

       SDC argues that the Court erred in failing to give its proposed instruction 438 to the jury regarding justification.  Proposed instruction 438 provides that SDC's conduct was legally justified if it proves that it possesses a legally valid interest, it acted in good faith to protect that interest, and it used lawful and appropriate means to protect that interest.

17
18
19

       SDC admits that this instruction was crafted by counsel from case law, rather than a generally accepted form instruction.  SDC argues that it presented evidence of all three elements at trial and therefore the instruction should have been given.

20
21
22
23
24
25
26
27

       It was not error to exclude this instruction for several reasons.  First, the three factors identified in proposed instruction 438 were adequately explained in SDC's other proposed justification instruction.  Instruction 447, which was given to the jury at SDC's request, encompasses all of the same elements.  (Slania Dec. at ¶ 10 and 8; Compare Ex. 8 at p. 64 and Ex. 6 at p. 75.)  Instruction 447 provides that three of the factors that the jury should consider in determining if SDC's conduct was justified are the interest sought to be advanced by SDC (or a legally valid interest), SDC's motive (or good faith) and the nature of SDC's conduct (or whether it

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  used unlawful and appropriate means).  Therefore, it would have been duplicative and unnecessary

2  to provide proposed instruction 438.

3        Second, SDC argued that this was an "alternate and narrower test for determining

4  justification."  (Slania Dec. at ¶ 3; Ex. 1 at 189:16-18.)  It was not error to exclude "alternative"

5  instructions on justification.  The parties did not give alternative instructions to the jury on every

6  issue.  Later SDC changed its mind, arguing that its two proposed justification instructions were

7  not alternatives, but rather different justifications.  (Slania Dec. at ¶ 3; Ex. 1 at 191:21-24.)  In

8  support of this argument, SDC relied on the *Richardson* case.  *Richardson v. La Rancherita of La*

9  *Jolla*, 98 Cal.App.3d 73 (1979).  *Richardson* dealt with whether a lessor's conduct in refusing to

10  consent to a lease assignment was justified to protect its leasehold interest.  In contrast, this case

11  was not about whether SDC's Exclusive Policy was implemented to protect any property interest

12  over a building that it manages for the City.  There was no evidence introduced at trial in support

13  of that theory.  The proposed instruction based on *Richardson* simply doesn't apply, and therefore

14  it was proper for the Court to deny proposed instruction 438.

15        Finally, the Court evaluated the evidence and found that SDC failed to produce sufficient

16  evidence of "good faith" so as to warrant giving this justification instruction.  Specifically, this

17  Court found:

18        I think the defense falls short in terms of the good-faith aspect.  We
      have Ms. Wallace saying it was her decision.  She consulted with
19        others.  She made the decision.  So this idea of the good-faith aspect
      hasn't been developed.  "It otherwise used lawful and appropriate
20        means to protect that interest."  There is little, if any, evidence on
      alternate means, other than moving forward toward this policy.  And
21        the interest in security, you know, may touch on the first element.
      But I don't think there is sufficient evidence to instruct the jury on
22        this defense.  And I am going to rule it out, along with 36.1, which
      would be the Plaintiff's.

23

24  (Slania Dec. at ¶ 3; Ex. 1 at 194:6-18.)

25        The Court did not err in making this finding.  The Court considered all of the evidence that

26  SDC presents in its moving papers regarding good faith and rejected it.  United presented

27  substantial evidence at trial that SDC's conduct as a competing cleaning contractor was not done in

28  good faith, but rather done in order to steal United's customers and make money.  Additionally, the

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1   jury already was instructed to consider SDC's "motive" in other justification instructions.

2   Importantly, the jury unanimously rejected SDC's justification argument under all the

3   circumstances.

4                                  Again, simply because SDC does not agree with the

5   Court's ruling on proposed instruction 438 does not mean that the Court committed error.

6                     **(c)**     **Supplemental Instructions**

7        SDC relies on an excerpt from the Restatement (Second) of Torts in support of its

8   argument that the Court should have given the jury supplemental instructions to consider its

9   relationship with licensees and trade show managers.  In typical fashion, SDC omits key language

10   from the Restatement.  As SDC points out, Section 767 states that "it is important whether the

11   relationship between B and C is that of a prospective contract, an existing contract or a contract

12   terminable at will."  If one continues reading, Section 768 provides that if the relationship involves

13   an existing contract that is not terminable at will, then there are established interests involved that

14   are not subject to interference on the basis of competition alone.  Restatement (Second) of Torts §

15   768, comment a.  "Under the general rule stated in § 767, the social interest in the security of

16   transactions and the greater definiteness of C's expectancy outweigh the interests in A's freedom of

17   action in this situation."  *Id*. at comment h.

18        Therefore, the Restatement offers no support for SDC's claim that the jury should have

19   been instructed to consider SDC's relationship with trade show managers.  In fact, the Restatement

20   provides that a party's freedom of action should be balanced against the parties' expectancy.  This

21   is exactly the language included in Jury Instruction 447.  So the jury was properly instructed on

22   the parties and factors to consider.

23        SDC also argues the Court erred in telling counsel it could argue to the jury that SDC's

24   arrangements higher up the contracting chain preclude liability only later to instruct the jury that it

25   could not consider those arrangements.[6]  SDC misstates the instruction.  At no time did the Court

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [6] SDC does not cite to the record where the Court made this statement to counsel.

28

1  ever instruct the jury not to consider SDC's relationships with its licensees.  Rather, the Court

2  answered a specific question regarding the fifth bullet point of instruction 437.  The jury asked

3  who were included within the term "parties" in that bullet point. (Slania Dec. at ¶ 11; Ex. 9.)  The

4  Court answered that question the same way the Court answered the question earlier.  The Court

5  never said the jury could not consider SDC's license agreements in relation to any other jury

6  instruction.

7         SDC cites *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 119 (2nd Cir. 2000) in

8  support of its argument.  In *Gordon*, the Court actually changed the jury instructions after counsel

9  gave closing arguments.  That is not what happened here.  The jury instructions were agreed upon

10  before closing arguments.  Upon receiving the jury's question during deliberations, the Court

11  conferred with counsel and gave the jury an agreed upon answer that was consistent with the prior

12  instructions.[7]  The Court in no way changed the actual jury instructions before SDC made its

13  closing argument to the jury.  "The purpose of this rule is to allow both parties to mold their

14  closing arguments to the points of law that will be explained in the final jury charge" and it is error

15  only when "counsel is hindered in his ability to present summations which fully deal with the

16  issues to be placed before the jury." *Gordon, supra,* at 118 (internal citations omitted).  SDC was

17  not hindered in its ability to place the issues before the jury.  The supplemental instructions were

18  not error.

19         **2.      The Court's Ruling on United's Motion in Limine No. 4 Was Correct**

20         Before trial, United moved to exclude evidence of exclusive policies at other convention

21  centers on the grounds that such evidence was irrelevant, more prejudicial than probative, and

22  inadmissible hearsay.  FRE 401, 403, 802.  After briefing and oral argument, this Court granted

23  United's motion in limine. (Slania Dec. at ¶ 6; Ex. 4 at 19-43.)  The Court's initial ruling was

24

25

26         [7] What SDC is actually arguing for is that the Court should have changed the instruction,

27  after closing arguments, changing the answer as to whom "parties" referred, in direct contrast with
   the holding in *Gordon.*

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1  correct.  Now, SDC repeats its losing argument.  No circumstances have changed to warrant a

2  different decision now.

3      Evidence of exclusive policies at convention centers outside of San Diego was properly

4  excluded as irrelevant.  SDC's Exclusive Policy, the policy complained of, is only applied at the

5  San Diego Convention Center.  The only place where SDC competes for Trade Show Cleaning

6  Services is at the San Diego Convention Center.  Given these facts, evidence of policies at other

7  locations would lead to unnecessary delay and confuse the jury.

8      There also was no competent or admissible evidence to explain what the terms of those

9  other policies were or what the terms meant.  Not a single witness was offered or prepared to

10  testify that SDC's Exclusive Policy was the same as cleaning policies at other venues.  There was

11  no evidence that any other venue allowed competition for 18 years and then suddenly

12  implemented policy such as the one SDC implemented, which prohibited competition for Trade

13  Show Cleaning Services but did so in a clever way in an attempt to avoid being seen as an

14  "exclusive" in the industry.  In fact, no witness was ever identified, nor was any document

15  produced, to identify what the alleged exclusive policies were in other convention centers.  Thus,

16  any testimony about these other policies would be inadmissible hearsay.

17      Moreover, SDC always has  contended that it implemented its Exclusive Policy for

18  security reasons and to increase revenues.  There was no evidence that SDC implemented or

19  justified its Exclusive Policy because of the policies in existence at other locations.  The cleaning

20  policies at other convention facilities were and are completely irrelevant to a determination as to

21  whether SDC violated California state interference law in implementing its Exclusive Policy at

22  this Facility.

23      Additionally, if evidence of other exclusive policies were admitted into evidence, then

24  United would spend an undue amount of time and effort offering evidence regarding the meaning

25  and interpretation of those other policies, the terms of those policies, whether United has ever

26  challenged those policies, and why or why not.  Other policies were not determinative of the

27  legality of SDC's Exclusive Policy.  Additionally, it would have been improper for the jury to infer

28  that SDC's conduct was lawful simply because other convention facilities have  exclusive cleaning

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   policies.  Any probative value offered by this evidence was substantially outweighed by concerns

2   of undue consumption of time by counsel, witnesses and the jury in hearing this evidence.  FRE

3   403.

4        SDC incorrectly argues that this evidence should have been permitted because it shows

5   United's expectations under its contracts based on course of performance.  As discussed during

6   oral argument on United's Motion in Limine, United's reasonable expectation under its contracts

7   was that it would be able to continue to compete for that work against SDC for Trade Show

8   Cleaning Services at the San Diego Convention Center as it had occurred for 18 years.  (Slania

9   Dec. at ¶ 6; Ex. 4 at 29:23-30:2.)  United did not expect to get all of the cleaning work at the

10  Facility, but it did expect to be able to compete.  United expected that the general contractors at a

11  trade show would be permitted to designate who the cleaning contractor would be.  The Court

12  determined that the history of the parties' conduct was much better evidence of the parties'

13  reasonable expectations than uncertain evidence of various other policies that were not at issue in

14  this litigation.  (Slania Dec. at ¶ 6; Ex. 4 at 26:8-13 and 34:10-22.)

15       Furthermore, United's expectation was that SDC's policy was unlawful in California based

16  on its prior successful challenge of a similar policy in San Francisco at the Moscone Center.  That

17  evidence was excluded at SDC's request.  The Court determined it was more prejudicial than

18  probative to offer evidence of other policies to the jury, as the parties then would have had to

19  supply meaning to each policy in order to compare and contrast the SDC policy and of United's

20  reasonable expectations under the circumstances.  (Slania Dec. at ¶ 6; Ex. 4 at 31:11-16).  This

21  also meant evidence of the prior San Francisco case, and the injunction therein, also was excluded.

22       SDC further argues that evidence of other exclusive policies should have been permitted to

23  prove the existence of conditions precedent to United's contracts with GES and Champion.  As

24  discussed above, the Court did not find United's contracts to be ambiguous.  The terms and

25  meaning of United's contracts were not in dispute.  And, part of United's expectations include the

26  injunction in San Francisco, which was also excluded.

27       For these reasons, the Court did not err in properly excluding evidence of exclusive

28  policies at other convention centers.  Such evidence was and is inadmissible as not relevant and/or

1  hearsay.  Also, under Evidence Code § 403, the evidence's prejudicial value outweighed any

2  probative value, especially in light of excluding evidence of a prior injunction obtained by United

3  in California.  Accordingly, SDC's motion should be denied.

4     **C.     SDC Did not Suffer Any Prejudice**

5        As set forth above, there were no legal errors committed by this Court.  Should the Court

6  find otherwise, SDC has not demonstrated any prejudice or harm resulted from any error.

7  However, even if errors could be found, those errors were harmless.

8        It is important to note that SDC bears the burden to prove that any alleged errors caused

9  SDC prejudice.  *Anglo-American General Agents, supra,* 83 F.R.D. at 43; *Boston Scientific Corp.,*

10  *supra,* 550 F.Supp.2d at 1110.  SDC contends otherwise in its brief, stating the burden shifts to

11  United.  (See, SDC's Motion at pp. 4, 13).  SDC is wrong.  The burden only shifts to United on an

12  appeal, not on a motion for new trial.  *Anglo-American General Agents, supra,* 83 F.R.D. at 43;

13  *Boston Scientific Corp., supra,* 550 F.Supp.2d at 1110.

14        **1.     Proposed Jury Instruction 435**

15        SDC did not satisfy its burden of demonstrating that the failure to give proposed

16  instruction 435 caused SDC prejudice.  As discussed above, proposed instruction 435 states that

17  for United to prevail on its interference claim, United must demonstrate its reasonable

18  expectations and that those expectations were disrupted.  United did precisely that.

19        United put on substantial testimony regarding its expectations.  Mr. Simon, Mr. Linn,

20  Mr. Ramirez and Mr. Ortiz all testified regarding how United performed under its contracts with

21  GES and Champion at the San Diego Convention Center.  (Slania Dec. at ¶ 17; Ex. 15 at pp. 45,

22  48, 71-74,78-82; Slania Dec. at ¶ 18; Ex. 16 at 48:23-25.)  Mr. Robbins, Mr. Colby, and Mr. Kriz

23  all testified regarding United's performance under its contract with GES.  (Slania Dec. at ¶ 19; Ex.

24  17 at 8:13-19 and 10:5-8; Slania Dec. at ¶ 20; Ex. 18 at 10:15-22 and 11:4-21; Slania Dec. at ¶ 21;

25  Ex. 19 at 26:11-25 and 49:4-50:7.)  Similarly, Mr. Epstein and Mr. Pitts testified to United's

26  performance under this contract with Champion.  (Slania Dec. at ¶ 22; Ex. 20 at 7:9-9:12; Slania

27  Dec. at ¶ 23; Ex. 21 at 206:1-207:21.)  This substantial evidence clearly demonstrated United's

28

1   expectations, that it would be permitted to perform Trade Show Cleaning Services at the

2   San Diego Convention Center just as was done prior to July 1, 2007 for 18 years.

3        This is one of the specific issues the jury addressed when it decided United had a contract

4   with GES and a contract with Champion. (Slania Dec. at ¶ 4; Ex. 2 at p. 9 (Question 33).)  SDC

5   argued that it was not reasonable for United to expect to continue performing at the San Diego

6   Convention Center, citing the Action Sports Retailers Show as an example. (See, SDC's Motion

7   for New Trial, at p. 3.) The jury disagreed. Thus, SDC presented evidence and argument on this

8   topic, and the jury disagreed with its theory.

9        As it relates to disruption, there was substantial evidence as to the increased costs borne by

10  United as a result of SDC's Exclusive Policy.  Dr. Kennedy identified the specific amount of the

11  increased costs and damages, and Mr. Simon confirmed that United did not expect to be operating

12  in the red at the San Diego Convention Center, as it was under the new policy. (Slania Dec. at ¶

13  17; Ex. 15 at 78:23-82:12) The jury found this evidence to be compelling, awarding $668,905 in

14  damages. (Slania Dec. at ¶ 4; Ex. 2 at p. 11 (Question 41).)

15       SDC presented contrary evidence, and argued United's damages were not substantiated.

16  Thus, SDC presented this evidence and theory on the second prong of this instruction, and the jury

17  disagreed.  Accordingly, SDC suffered no prejudice by failing to give proposed instruction 435.

18                    **2.     Proposed Jury Instruction 438**

19       SDC was not prejudiced by the exclusion of proposed instruction 438 because the jury

20  would have arrived at the same conclusion even if that instruction had been given.  The same

21  factors discussed in proposed instruction 438 for the jury's consideration were adequately

22  explained Instruction 447.  Instruction 447 provides that three of the factors that the jury should

23  consider in determining if SDC's conduct was justified are the interest sought to be advanced by

24  SDC (or a legally valid interest), SDC's motive (or good faith) and the nature of SDC's conduct (or

25  whether it used unlawful and appropriate means).  The jury deliberated for two weeks and

26  carefully considered each of these factors in determining that SDC's conduct was not justified.

27  Giving proposed instruction 438 would not have changed the jury's verdict.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    Additionally, even if SDC's proposed instruction 438 on justification would have been

2   given, the outcome would have been the same.  The jury unanimously rejected SDC's position that

3   it implemented the Exclusive Policy to enhance security, enhance Homeland Security, enhance the

4   quality of cleaning, or due to a need to use the SDC workforce because they had "San Diego

5   Spirit" training related to security, guest relations, guest communications, etc.  (Slania Dec. at ¶ 4;

6   Ex. 2 at p. 10 (Question 38).

7                                                                    The jury unanimously decided that

8   the policy was implemented solely to increase revenues.  (*Id.*)

9    SDC has not met its burden of proving that it suffered prejudice in the failure to give

10  proposed instruction 438 or that the jury verdict would have been different.  Its Motion simply

11  argues that "a properly instructed jury may have found that SDCCC acted to protects its valid

12  interests, in good faith, and appropriately."  This is insufficient to establish that SDC was so

13  prejudiced as to constitute a jury mistake warranting a new trial, and the juror declarations

14  establish otherwise.

15              **3.    Supplemental Instructions**

16   SDC has failed to prove that it suffered prejudicial error when the Court responded to juror

17  questions regarding the parties to the contracts.  Importantly, when the jury first inquired as to the

18  parties to be considered in bullet point 5 of Instruction 447, counsel for both parties met with the

19  Court to discuss an appropriate answer.  SDC participated fully in that process and agreed with the

20  answer to the question.  When the jury returned on May 2 to ask the same question, the jury was

21  merely seeking confirmation of what they had previously been told.  The Court avoided any

22  confusion by providing the same answer previously agreed upon by SDC.  There was no prejudice

23  in doing so.  SDC has no right to change the jury instructions in the middle of deliberations.

24   The temporal proximity between the jury's question on May 2, and its subsequent

25  indication that it had unanimously resolved that claim, does mean there was prejudicial error.

26  Rather, this simply establishes that the jury received confirmation of what it had already been

27  instructed and was able to reach a decision.

28

1    SDC has not met its burden of proving that the Court's agreed-upon answer to the jury

2 questions caused SDC to suffer prejudice. To grant this Motion, the Court must have a definite

3 and firm conviction that a mistake has been made. *Landes Const. Co., Inc., supra*, 833 F.2d at

4 1371. No such mistake was made here.

5                              **4.    Motion in Limine No. Four**

6    SDC also contends it was prejudiced by the Court's ruling on United's Motion in Limine

7 No. 4. SDC contends it should have been permitted to present evidence of policies at other

8 locations and United's performance at other locations, claiming the evidence bears on United's

9 contractual expectations. If that evidence would have been admitted (despite the problems

10 associated with the evidence as discussed in section IV.B.2 above), United would have responded

11 by presenting evidence of other challenges made to thwart unlawful exclusive policies. The jury

12 would have then learned that previously, in California, when a convention center attempted to

13 implement an exclusive policy for Trade Show Cleaning after years of competition, United

14 successfully challenged the policy, and after an injunction was obtained the policy was rescinded

15 as improper. SDC moved to exclude this very evidence in its Motion in Limine No. 1. (Slania

16 Dec. at ¶ 24; Ex. 22.) The Court excluded both types of evidence, finding that allowing the

17 evidence would be prejudicial, confusing, and time-consuming. (Slania Dec. at ¶ 6; Ex. 4 at pp.

18 31, 34, 43.) The Court also found that there was sufficient evidence of the parties' expectations

19 independent from the excluded evidence. (Slania Dec. at ¶ 6; Ex. 4 at pp. 26, 29-30, 34, 43.)

20 Thus, SDC was still permitted to present all necessary evidence of United's expectations, without

21 being hamstrung by evidence regarding United's prior legal success. Given these circumstances

22 SDC did not suffer any prejudice from the Court's ruling on United's Motion in Limine No. 4.

23    **D.    The Court Should Not Disturb the Jury's Verdict**

24              **1.    United's Intentional Interference Cause of Action was Properly
                        Submitted to the Jury**

25

26    SDC contends that the Court was required to determine the existence and scope of SDC's

27 tort duty. SDC also contends that by allowing the jury to decide if SDC was a "stranger" to

28 United's contracts, the Court committed error. Essentially SDC's argument is that the Court

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  should have determined that SDC was not a stranger, and by leaving that to the jury, a mistake

2  was made.  SDC cites no legal authority with such a holding.  SDC is wrong.

3      The first element of the Judicial Council approved jury instructions on this cause of action

4  is whether a contract exists between United <u>and a third party</u>.  (Slania Dec. at ¶ 8; Ex. 6 at p. 69.)

5  Clearly this is a proper factual inquiry for the jury to decide, and SDC does not argue otherwise.

6  Instead, SDC contends it owes no duty because it is not a stranger to United's contracts.

7      SDC argues that it is not a stranger to the contracts because cooperation between United

8  and SDC is necessary for United to perform its contracts with GES and Champion, including

9  providing access credentials and electrical power.  However, SDC owes those services to the trade

10  show manager – not to United.

11      The cases relied on by SDC do not support its argument.  In *Applied Equipment v. Litton*

12  *Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513-514, the court stated, "It has long been held that a

13  *stranger to a contract* may be liable in tort for intentionally interfering with the performance of

14  the contract." (Emphasis in original.)  The court stated that the policy underlying a cause of action

15  for contractual interference is to protect contracting parties against frustration by outsiders.  *Id.* at

16  514.  This is exactly the situation here.  United's contracts with GES and Champion were

17  threatened by SDC as an outside, competing cleaning contractor, and therefore a stranger to the

18  contracts.  Both the Court and the jury agreed.

19      SDC also relies on *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825 (9th

20  Cir. 2001).  First, that case involved a claim for interference with prospective economic advantage

21  (not contractual interference) and so it is not directly relevant.  The plaintiff there did not have an

22  actual contract with any third party that was alleged to have been disrupted.  Second, there the

23  plaintiff tug company was dependent upon the defendant, Shell Oil Co., in order to conduct

24  business because it needed Shell to load the oil onto its barges.  The court stated that "an entity

25  with a direct interest or involvement in that [prospective economic] relationship is not usually

26  liable for harm caused by pursuit of its interests." *Id.* at 833.  However, here SDC does not have a

27  direct interest or involvement in the contracts between United and GES or Champion.  SDC may

28  have an interest as a competing cleaning contractor for the purpose of wanting to steal United's

1  business, but it has no other "active involvement or interest" in United's contracts.  SDC is a

2  separate and distinct third party.

3          In *PM Group v. Stewart*, 154 Cal.App.4[th] 55 (2007), a key distinction lies in the terms of

4  the actual subcontracts that were allegedly interfered with.  There, the subcontracts contained

5  specific language that provided for singer Rod Stewart's performance.  Thus, neither Stewart nor

6  his agents could be held liable for interference because "a contracting party is incapable of

7  interfering with the performance of his or her own contract." *Id.* at 65.  Here, United's contracts

8  with GES and Champion contain no such terms.  SDC is not mentioned in United's contracts and

9  SDC is not a party to United's contracts.  United's performance of Trade Show Cleaning Services

10 for GES or Champion nationwide is not contingent on SDC doing anything.

11         Additionally, SDC has already lost this argument once.  During SDC's Rule 50(a) Motion

12 for Judgment as a Matter of Law, the Court evaluated this argument and held that it was

13 appropriate for a jury to make this determination.  (Slania Dec. at ¶ 7; Ex. 5 at 79:18-80:2.)  The

14 Court held that because SDC is a competitor, there is a reasonable basis from which a jury could

15 infer that SDC is a third party relative to the contracts between United and GES/Champion and

16 that the question should be submitted to the jury for determination.  (*Id.*)

17         The elements of an intentional interference claim are questions of fact to be determined by

18 consideration of all facts and circumstances.  See, *H&M Associates v. City of El Centro*,

19 109 Cal.App.3d 399, 409 (2001) (whether defendant's conduct in interfering with existing

20 contracts with third person is a factual issue which should properly be placed before the trier of

21 fact); *Lowell v. Mother's Cake & Cookie Co.*, 79 Cal.App.3d 13, 20 (2002) ("as a general rule, the

22 determination of whether the defendant's conduct of interfering with existing contracts with third

23 persons. . .is privileged comprises a factual issue to be decided upon all the circumstances of the

24 case").  Thus, this was clearly a factual inquiry that was appropriately submitted to the jury.

25                    **2.     The Jury's Verdict was Supported by the Clear Weight of the Evidence**

26

27         The Court should affirm the jury's verdict because it was supported by the clear weight of

28 the evidence.  In order to prevail on its cause of action for intentional interference with contractual

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  relations, United had the burden to prove (1) a valid contract between United and a third party;

2  (2) SDC's knowledge of this contract; (3) SDC's intentional acts designed to induce a breach or

3  disruption of the contractual relationship; (4) SDC's conduct prevented performance or made

4  performance more expensive or difficult; (5) United was harmed and (6) SDC's conduct was a

5  substantial factor in causing United's harm. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50

6  Cal.3d 1118, 1126 (1990); Judicial Council of California Civil Jury Instruction ("CACI") No.

7  2201. This is the exact jury instruction that was read to the jury in this case. (Slania Dec. at ¶ 8;

8  Ex. 6 at p. 69.) SDC did not object to this instruction. (Slania Dec. at ¶ 3; Ex. 1 at 160:24-161:1.)

9  This is also consistent with the Special Verdict Form that was presented to the jury, to which SDC

10  did not object. (Slania Dec. at ¶ 4; Ex. 2.)

11       In its Motion, SDC attacks only the first element as to whether a contract exists between

12  United a third party by arguing that SDC is not a stranger to United's contracts with GES and

13  Champion.[8] The evidence established otherwise. At trial, United offered Exhibits 83 and 84 into

14  evidence. These are the contracts United entered into with GES and Champion. There was no

15  dispute about the authenticity of those contracts. SDC is not a party to those contracts. (Slania

16  Dec. at ¶¶ 25, 26; Exs. 22 and 24.) Consistent with the evidence, the jury found that United

17  proved there was a contract between United and GES and a contract between United and

18  Champion. (Slania Dec. at ¶ 4; Ex. 2 at p. 9.)

19       As demonstrated at trial, SDC is a cleaning contractor that competes directly against

20  United for business with GES and Champion. It is an entity wholly distinct from United. SDC

21  seeks to confuse the issues because it wears two hats in this case – as both the manager of the

22  convention center facility and as a cleaning competitor. Brad Gessner testified at trial that SDC

23  and United were cleaning competitors and that he tried to solicit business from GES and

24  Champion before imposition of the Exclusive Policy. (Slania Dec. at ¶ 27; Ex. 25 at 22:7-9.)

25

26  _____

27       [8] SDC has not attacked any other element of this cause of action, and therefore United
    focuses its Opposition on this element only.

28

In further support, Larry Colby and Thomas Robbins of GES both testified about a lunch meeting with Brad Gessner where Mr. Gessner attempted to convince GES to switch from using United to SDC for cleaning services. (Slania Dec. at ¶ 20; Ex. 18 at 8:2-:23; Slania Dec. at ¶ 19; Ex. 17 at 8:20-10:8.) Mark Epstein of Champion also testified that Mr. Gessner tried to solicit Champion to work with SDC. (Slania Dec. at ¶ 22; Ex. 20 at 18:20-19:24.) In essence, SDC tried to get GES and Champion to breach their contracts with United. This is clear evidence that SDC was a stranger to those contracts. It was only after those solicitation efforts failed that SDC implemented the Exclusive Policy, which the jury found to be an intentional interference with United's contracts. (Slania Dec. at ¶ 27; Ex. 25 at 34:10-20.)

United presented more than sufficient evidence to support its cause of action for intentional interference with contractual relations with GES and Champion and to establish that SDC is a stranger to the contracts between United and GES/Champion. At oral argument on SDC's Motion for Judgment as a Matter of Law, this Court concluded that because SDC is a cleaning competitor, there is a reasonable basis from which the jury can infer that SDC is a third party to the United-GES/Champion contracts. (Slania Dec. at ¶ 7; Ex. 5 at 79:18-80:2.) After presentation of all the evidence, the jury agreed, finding that United did have a valid contract with third parties GES and Champion, thereby making SDC a stranger to those contracts. (Slania Dec. at ¶ 4; Ex. 2 at p. 9.) The jury's verdict is consistent with the clear weight of the evidence and therefore this Motion must be denied.

**E.   The Intentional Interference Cause of Action is Not so Intertwined with the Other Causes of Action Such That a New Trial is Warranted.**

SDC argues that the contractual interference claim is so intertwined with the mistried claims that a new trial is warranted. Again, SDC is wrong. United's claim of intentional interference with contractual relations is a distinct cause of action, separate and apart from the other three causes of action pled. It requires proof of distinct elements as identified above and is not derivative of any other cause of action.

SDC argues that the contractual interference claim is interwoven with the others for three reasons. First, SDC contends that all four claims arise out of the "same series of transactions and

1  occurrences." (See, SDC's Motion for New Trial, at p. 33.) This is the standard for bringing a
2  compulsory counter-claim under Rule 13, not a motion for new trial. While each cause of action
3  does arise out of SDC's implementation of the Exclusive Policy, the claims are separate and
4  distinct. An understanding of the contractual interference claim requires no discussion of any
5  anticompetitive behavior or any antitrust claims. (Slania Dec. at ¶ 8; Ex. 6 at p. 69.) The fallacy
6  of this argument is demonstrated by the fact that United could have asserted only one count in its
7  complaint, a contractual interference claim. One is not required to prove anti-trust violations or
8  interference with prospective economic advantage in order to prevail on an interference with
9  contract claim.

10       Second, SDC argues that the two interference claims share five essential elements. It is
11  true they have common elements, but there are three key elements that distinguish these causes of
12  action. First, contractual interference requires the existence of a contract between United and a
13  third party (Jury Instruction 266); economic interference does not (Jury Instruction 268). (Slania
14  Dec. at ¶ 8; Ex. 6 at p. 69 and 72.) Second, contractual interference does not require proof of an
15  independent wrongful act. (*Id.*) "Because interference with an existing contract receives greater
16  solicitude than does interference with prospective economic advantage, it is not necessary that the
17  defendant's conduct be wrongful apart from the interference with the contract itself." *Quelimane*
18  *Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55. United is not required to prove any
19  independent wrongful or antitrust behavior to prevail on its contractual interference claim. Third,
20  the element of damages is different for these two causes of action. Dr. Patrick Kennedy testified
21  at trial regarding the damages United sustained as a result of the interference with its GES and
22  Champion contracts. He testified that United suffered damages in the amount of $358,223 from
23  the GES contract and $310,682 for the Champion contract. In contrast, United suffered separate
24  and distinct damages as a result of SDC's interference with its business relationships with Brede
25  and Paradise, in the amount of $53,215 with Brede and $25,746 with Paradice. The damages for
26  each claim are separate and distinct.

27       Third, SDC argues that the two interference claims are derivative of the antitrust claims.
28  This is just an incorrect statement of the facts and the law. As demonstrated in Jury Instruction

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  266, which SDC agreed was a correct statement of the law on contractual interference, there is no

2  mention of any derivative conduct or relationship to the antitrust claims at all. (Slania Dec. at ¶ 8;

3  Ex. 6 at p. 69.) SDC seeks to inject an element into the contractual interference cause of action

4  that does not exist. The contractual interference claim must be distinguished from the cause of

5  action for intentional interference with prospective economic relations, which does in fact hinge

6  on a finding of wrongful antitrust conduct. Contractual interference does not require such a

7  finding.

8      The fact that a justification defense exists for all four causes of action does not change the

9  result.[9] Which party has the burden of proving justification is also different for the antitrust claims

10 and the interference claims. The elements of proof for the contractual interference claim are

11 simply different than the elements of proof for the other claims.

12      Additionally, contrary to SDC's argument, United did not "invite" any error in making its

13 argument in opposition to SDC's Rule 50 Motion on April 7, 2011 outside the presence of the jury.

14 (See, SDC's Motion for New Trial, at p. 29.) In ruling on that Motion, the Court discussed putting

15 the interference cause of action into "context" by looking at "the entire history since 1989, the

16 competitive environment and the manner in which this whole process went down." (Slania Dec. at

17 ¶ 7; Ex. 5 at 79:18-80:2.) The Court furthered those comments by stating that "there is a

18 reasonable basis from which the jury can infer that the convention center is a third party, relative

19 to the contracts between United and GES and Champion." (*Id*.) There was no "invited error" and

20 no error was committed during the Court's discussion and ruling on the Rule 50 motion. Further,

21 this dialogue was not evidence heard or considered by the jury such that it could constitute error in

22 rendering its verdict. SDC also cites to closing argument in support of its "invited error" theory,

23 but the citations refer directly to SDC's argument, not United's. (Slania Dec. at ¶ 28; Ex. 26 at 47-

24

25

---

26      [9] SDC ought to be careful for what it wishes. The jury already has determined that SDC's
conduct was not justified under all of the circumstances. If each cause of action is as intertwined
27 as SDC argues here, then SDC may be collaterally estopped from asserting its justification defense
in future cases when the other causes of action are retried.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   52.)  On page 100 of the transcript, United is simply responding to SDC's graphic chart.  There is

2   no invited error and there is no intertwining of the causes of action.

3         The case law cited by SDC also is distinguishable.  SDC relies primarily on the *Gasoline*

4   *Products* case.  There, the court ordered a new trial on the issue of damages only because the jury

5   could not determine damages without also considering the terms of the contract and its breach.

6   *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931).  That court's ruling in fact

7   weighs against granting a new trial in this case, as it held that "where the requirement of a jury

8   trial has been satisfied by a verdict according to law upon one issue of fact, that requirement does

9   not compel a new trial of that issue even though another and separable issue must be tried again."

10  *Id.* at 515.  The court held that it "need not disturb" the jury's verdict on the cause of action that

11  was clearly separable from the others.  *Ibid.*  Similar, here there is no need to disturb the jury's

12  verdict on the contractual interference claim, even if the other claims need to be retried.  The

13  contractual interference claim clearly is separable from the others because it requires proof of

14  entirely different elements of both liability and damages.  This is not a case of simply retrying

15  damages.

16        SDC also cites *Union Pacific Railroad Company* as support for this argument.  *Union Pac.*

17  *Railroad Co. v. Bridal Veil Lumber Co.*, 219 F.2d 825 (9th Cir. 1955), which was an indemnity

18  case.  An employee was injured at work and recovered damages from his employer, Union Pacific.

19  Union Pacific sought indemnity from Bridal Veil, the operator of the lumber mill.  The jury in the

20  indemnity case was asked to determine whether Bridal Veil was negligent in various ways related

21  to the accident.  The jury could not agree on one issue of negligence, and the court held that it left

22  a gap in the verdict such that a verdict on indemnity (whether Union Pacific was entitled whole or

23  partial indemnity or whether Bridal Veil was primarily or actively negligent) could not be reached

24  until all of the negligence issues were resolved together.  In contrast, here we have two antitrust

25  claims and two interference claims.  The contractual interference claim contains entirely different

26  elements of proof.  It is not necessary to obtain a verdict on the antitrust claims in order for the

27  jury to properly determine the contractual interference claim.

28

In *Computer Access Technology*, the court granted a motion for new trial on all issues when a jury returned a verdict of willful trademark infringement. *Computer Access Tech. Corp. v. Catalyst Enterprises*, 273 F.Supp.2d 1063 (N.D. Cal. 2003). After ruling that a new trial was warranted on the trademark infringement cause of action (based on specific requirements of trademark law), the court held that a new trial also was required on the issue of willfulness because the jury's finding on willfulness was based on the finding of trademark infringement. In sharp contrast, here the jury's verdict on United's contractual interference claim was not based on any of the antitrust allegations of wrongful conduct and the jury did not make any such findings.

Contrary to SDC's argument, justice requires that the jury verdict stand. The parties and counsel spent four full weeks trying this case and presenting all of the relevant evidence to the jury. The jury deliberated long and hard for two weeks before arriving at its verdict. The contractual interference claim is wholly separate and distinct from the other claims, as evidenced by the unanimous jury verdict on this cause of action, despite being split 7-1 over the definition of a relevant market related to the other causes of action. The jury verdict on this claim should be affirmed.

## V. CONCLUSION

The jury got it right the first time. United proved that SDC wrongfully and unlawfully interfered with United's contracts. There were no errors mandating that SDC be entitled to a new trial. Accordingly, and as set forth herein, SDC's Motion should be denied.

DATED: June 22, 2011                    KIRBY NOONAN LANCE & HOGE LLP


By: */s/ Jacob M. Slania*
     James R. Lance
     Jacob M. Slania
     Micaela P. Banach
     Attorneys for Plaintiff
     UNITED NATIONAL MAINTENANCE, INC.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700