UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada Corporation,<br><br>            Plaintiff,<br>v.<br>SAN DIEGO CONVENTION CENTER CORPORATION, INC., a California Corporation,<br><br>            Defendants. | Civil No.07cv2172 AJB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION<br><br>[Doc. No. 240-1] |

      Plaintiff United National Maintenance, Inc ("United") filed a Motion for a Permanent Injunction enjoining Defendant San Diego Convention Center, Inc. ("SDC") from enforcing an exclusive policy which a federal jury unanimously found to be an intentional interference with contracts between United and its customers Global Exposition Services, Inc. ("GES") and Champion Exposition Services ("Champion"). The Defendant filed an opposition and the Plaintiff filed a reply. The hearing on the motion was held on July 1, 2011 before Judge Battaglia. James Lance appeared on behalf of the Plaintiff. Jacob Slania, John L'Estrange, Joseph Ergastolo, and Andrew Schouten appeared on behalf of the Defendant. Based upon the parties' moving papers, arguments made during the hearing, and for the reasons set forth below, the Plaintiff's motion is hereby DENIED.

//

//

//

## *Background*

This action arose in response to the Cleaning Services Policy established by SDC on July 1, 2007, that required all cleaning services at trade shows at the San Diego Convention Center be performed exclusively by SDC's in-house cleaning staff. Prior to July 1, 2007, these services were either performed by SDC's in-house cleaning staff or, at the trade show decorator's option, outsourced to vendors like United. In its Complaint filed on November 13, 2007, United challenged the Cleaning Services Policy in four claims: (1) actual monopolization, under section 2 of the Sherman Act; (2) attempted monopolization, under section 2 of the Sherman Act ("the essential facilities claim"); (3) intentional interference with contract; and (4) intentional interference with prospective business relations. (Doc. No. 1).

The case proceeded to trial on March 21, 2011. United sought both economic damages and injunctive relief. SDC denied all of the alleged antitrust violations and the contract claims and asserted affirmative defenses based on United's failure to mitigate damages as well as business justification and immunity from liability for the antitrust claims under the Local Government Antitrust Act and the State Action Doctrine.

After a lengthy trial, the jury returned a verdict for United on the Intentional Interference with Contract Claim on May 4, 2011. In the special verdict form (Doc. No. 219) the jury found:

(A) There was a contract between United and GES/Champion (Doc. No. 219 ¶ 33);

(B) SDC knew of the contacts between United and GES/Champion (Doc. No. 219 ¶ 34);

(C) SDC intended to disrupt performance of the contracts between United and GES/Champion (Doc. No. 219 ¶ 35);

(D) SDC's conduct actually prevented performance or made performance of said contracts more expensive or difficult (Doc. No. 219 ¶ 36);

(E) SDC's conduct with respect to GES and Champion was a substantial factor in causing harm to United (Doc. No. 219 ¶ 37); and

(F) SDC's interference with United's contracts was not justified (Doc. No. 219 ¶ 38).

Based on these findings, the Jury awarded United $668,905. The jury could not reach a verdict on the other claims, and a mistrial on those claims resulted. In the instant motion, United seeks a permanent injunction in order to enforce the jury's verdict on the contractual interference claim. (Doc. 240-1.)

## *Discussion*

As a preliminary matter and in light of the Court's rulings granting SDC's motion for judgment as a matter of law, [Doc. No. 239-3], and granting in part SDC's motion for new trial, [Doc. No. 239-1], the Court finds the instant motion to be moot. However, since the parties have made it clear that they intend to appeal the Court's rulings on these motions, the Court will out of an abundance of caution, address the instant motion on the merits.

### I. The Power of the Court to Grant the Injunction

Although a district court may exercise its discretion to grant a permanent injunction where the plaintiff has prevailed on the merits of a cause of action and where equitable relief is appropriate, "an injunction is a matter of discretion [and] does not follow from success on the merits as a matter of course." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 32 (2008) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)). Thus, the fact that United prevailed on the intentional interference with contract claim at trial does not mean that it is automatically entitled to a permanent injunction. In resolving this matter, the Court must ensure that issuing a permanent injunction would not deprive SDC of its constitutional right to a jury trial.

**A. Doctrine of Res Judicata and the Right to Jury Trial**

The Seventh Amendment of the Constitution provides that "in suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. The Supreme Court has long emphasized the importance of preserving a party's right to jury trial. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508-11 (1959); *Scott v. Neely*, 140 U.S. 106, 109-10 (1891); *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830). While a party has the right to a jury trial on the merits of legal claims, no such right to a jury exists for equitable claims. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989).

Resolving a request for injunctive relief presents no constitutional problems as long as the legal and equitable issues are distinct. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001). However, when the legal and equitable issues overlap such that the same evidence supports both issues, "the district court must take care not to impinge on the right to a jury." *Id.* Because the issuance of a permanent injunction is a final order, *Golden Gate Hotel Ass'n v. City & County of San Francisco*, 18 F.3d 1482, 1483 (9th Cir. 1994), it carries res judicata effect that will preclude the parties from relitigating a subsequent legal claim where common issues exist between the equitable and legal claims. *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970); *Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 690 (9th Cir. 1976) (citing *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir. 1972)). Thus, in order to preserve a defendant's right to trial by jury, the court must first resolve the legal claims arising out of the same facts as the equitable claims. *Danjaq*, 263 F.3d at 962; *Dollar Sys.*, 890 F.2d at 170; *Trans-World Int'l v. Smith-Hemion Prods.*, 952 F. Supp. 667, 673 (C.D. Cal. 1996).

United seeks a permanent injunction to enforce the jury verdict in its favor on the intentional interference with contract claim. Despite the jury resolution of this claim, the remaining three mistried claims await possible retrial. United argues that a permanent injunction should issue on the intentional interference with contract claim simply because the elements of that claim differ from the elements of the three antitrust claims. However, in order to preserve SDC's right to jury trial, the Court cannot issue a permanent injunction if there are common factual issues shared by the claim resolved by the jury and the three claims awaiting possible retrial. *See, e.g.*, *Ross*, 396 U.S. at 537-38; *Calnetics*, 532 F.2d at 690.

**B. Interwoven Claims**

The intentional interference claim shares the same factual support as the three mistried claims. First, all four claims at issue concern the effect of the Cleaning Services Policy on United, allege the same set of underlying facts, and require the same proof. (Complaint ¶¶ 70, 81, 97, 103.) For example, United introduced invoices corresponding to its written and oral contracts under both interference claims in order to establish booth and facilities cleaning rates, market data, business relationships, and damages on the antitrust and interference claims. (Exh. 556.) Moreover, during trial, United's counsel argued that the structure of the rights and relationships at issue in the contract interference claim proved that the

San Diego Convention Center was an "essential facility" as alleged in the monopolization claims. (4/20/11 Trial Tr. 100:13-23.)

Second, the two interference claims share essential elements. Throughout the trial, United presented evidence of the terms in the written contracts for the contract interference claim and then later used the same terms of the same contract for the prospective economic advantage claim. (3/28/2011 Trial Tr. 100:16-20.) As the Court recognized in ruling on SDC's Rule 50(a) motion, evidence of damages as presented by expert witness Patrick Kennedy leads to the inference of actual disruption of United's contracts as well as its economic advantages. (4/07/2011 Trial Tr. 67:4-25; 80:4-16.)

Third, in response to SDC's Rule 50(a) motion, United argued that SDC's exercise of its property rights demonstrated monopoly power. (04/07/2011 Trial Tr. 77:10-17.) United argued that because of the anti-competitive conduct at issue in the two antitrust claims, SDC's licenses and policies were void as an unlawful exercise of monopoly power and not property rights. (04/07/2011 Trial Tr. 77:10-17.) The Court agreed with United that any exercise of property rights or first tier contract rights by SDC would be unlawful if it were proved to be anti-competitive. (4/07/11 Trial Tr. 79:18-80:21.) Later, in United's closing argument, United combined the antitrust claims with the contract interference claim by arguing that SDC's reservation of rights demonstrated that the San Diego Convention Center is an essential facility and that SDC had monopoly power in the relevant market. (04/20/11 Trial Tr. 47:1-52:8; 100:13-23.)

According to United's theory of the case and presentation of the facts, the contract interference claim is interwoven with the antitrust claims left to be retried. Because the Court would be required to make factual findings and conclusions of law regarding application of an equitable remedy to the contract interference claim, granting the permanent injunction prior to resolution of the remaining legal issues would impair SDC's right to a jury trial on the mistried claims. Therefore, United's request for permanent injunctive relief is inappropriate on the grounds of res judicata.

**II.  Choice of Law**

United and SDC agree that a permanent injunction may only issue if it is permissible under state law, but they disagree about whether the Court may still exercise its discretion following the application of state law. Under the principles set forth in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal

court with diversity jurisdiction or pendent jurisdiction over state law claims must apply state law to substantive claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). However, federal courts with diversity or pendent jurisdiction may apply federal law to procedural issues. *See Hanna v. Plumer*, 380 U.S. 460, 464-66 (1965).

A permanent injunction, as a method to enforce substantive law rights, "is an integral component of the [underlying] substantive law right." *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 956 (E.D. Cal. 1990). Where the underlying claim is based on state law, the applicability of injunctive relief must also be based on state law in order to avoid the risk of different outcomes in federal and state court. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 978 n.9 (D. Ariz. 2006); *Sullivan*, 731 F. Supp. at 956. Thus, in the Ninth Circuit, the availability of injunctive relief is a substantive issue and is therefore governed by state law. *See Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988); *Fansler Found. v. Am. Realty Investors, Inc.*, No. CV-F-04-5285 LJO DLB, 2007 WL 1302742, *2 (E.D. Cal. May 2, 2007); *Sullivan*, 731 F. Supp. at 956. Accordingly, this Court must first ascertain and apply California law to determine whether a permanent injunction may issue. *See Sims Snowboards*, 863 F.2d at 646-47.

Many federal courts have held that a district court may apply federal law principles in determining whether to exercise discretion to grant or deny an injunction that is available under state law. *Compare Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 955 (W.D. Iowa 2006) (applying federal equitable principles to determine whether an injunction should issue under state law); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1243-44 (N.D. Iowa 1995) (same); *Sullivan*, 731 F. Supp. at 957 (same); *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F. Supp. 923, 931 n.14 (N.D. Cal. 1970) (same), *with MicroStrategy, Inc. v. Business Objects, S.A.*, 369 F. Supp. 2d 725, (E.D. Va. 2005) (noting that only state law determines whether an injunction may issue). Therefore, even if a permanent injunction is permissible under state law, this Court may still exercise its discretion to deny the permanent injunction.

**III. State Law Grounds for Equitable Relief**

Assuming that a permanent injunction as to the contract interference claim would not bar future litigation of the remaining three claims, United argues that it is entitled to relief under state law. Under

California law, the plaintiff must first prove the elements of the cause of action involving the wrongful act sought to be enjoined, and then prove the grounds for equitable relief. *City of S. Pasadena v. Dep't of Transp.*, 29 Cal. App. 4th 1280, 1293 (1994). A court has discretion to grant a permanent injunction to prevent the breach of an obligation that exists in the applicant's favor as long as one of the following four conditions is met:

> (1) Where pecuniary compensation would not afford adequate relief; (2) Where it would be extremely difficult to ascertain the amount of compensation that would afford adequate relief; (3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or (4) Where the obligation arises from a trust. Cal. Civ. Code § 3422.

**A. Permanent Injunction Must Prevent Breach**

A permanent injunction may issue in order "to prevent the breach of an obligation existing in favor of the applicant[.]" Cal. Civ. Code § 3422. This standard generally requires that injunctive relief must be necessary to prevent threatened injury, not to address completed wrongs. *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1402-03 & n.6 (2002). The jury found that SDC wrongfully interfered with United's contracts with GES and Champion. However, because the contracts have already expired and have not been renewed, an injunction could not prevent a future breach of the contracts. Further, the jury failed to reach a verdict on United's claim for intentional interference with prospective economic relations.

**1. Contracts in Existence on July 1, 2007**

On July 1, 2007, SDC implemented its Cleaning Services Policy, requiring SDC employees to perform cleaning services at the Convention Center. (Doc. No. 18 at 16.) On the same date, United had existing contracts with GES and Champion. (3/30/11 Trial Tr. 24:13-26:18 (Robbins); 3/23/11 Trial Tr. 6:3-6, 7:15-17, 9:11-21 (Epstein).) The jury found that SDC intentionally interfered with United's contracts with GES and Champion through the implementation of the Cleaning Services Policy on July 1, 2007. (Doc. No. 219 at 9:1-11:26.) However, United's contract with GES expired on April 30, 2011, and United's contract with Champion expired on June 30, 2011. (Exhs. 83 at 5; 84 at 1.) By the terms of these contracts and based on the factual record, the original contracts underlying the jury's verdict are no longer in effect.

The jury's factual findings demonstrate that SDC's interference with the contracts was wrongful, but, contrary to United's argument, this is insufficient alone to support a permanent injunction. Because the contracts have already expired, there is no threatened injury and nothing left to enjoin. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (stating that district court cannot enjoin a party from infringing a patent that had already expired); *Griffith v. Dep't of Public Works*, 52 Cal. 2d 848, 853 (1959) (affirming the denial of an injunction to prevent the construction of a freeway that had already been built); *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997-98 (1977) (finding no liability for intentional interference with contract where the contracts had already expired); *Lemat Corp. v. Barry*, 275 Cal. App. 2d 671, 676, 680 (1969) (affirming denial of permanent injunction beyond the term of the contract where the contract had already expired).

### 2. Contracts After July 1, 2007

United attempts to preserve its claim for injunctive relief by offering evidence that United entered into renewal contracts with GES and Champion after the original contracts with which SDC interfered had expired. (Exh. 553; 3/28/2011 Trial Tr. 85:21-86:8.) A contract continues to remain in force after the termination date only if the parties renew the terms of the original contract. *East Bay Union of Machinists, Local 1304 v. Fibreboard Paper Prods. Corp.*, 285 F. Supp. 282 (N.D. Cal. 1968), *aff'd*, 435 F.2d 556 (9th Cir. 1970). However, once one of the parties decides to modify the original contract, that contract is not "renewed" but is rather a new contract. *Id.*; *see also Int'l Ass'n of Machinists & Aerospace Workers v. Int'l Longshoremen's and Warehousemen's Union*, 781 F.2d 685, 691 (9th Cir. 1986); *Seymour v. Coughlin Co.*, 609 F.2d 346, 350-51 (9th Cir. 1979). Accordingly, injunctive relief is only proper if United renewed its contracts with GES and Champion without making any changes to the terms of the original contracts.

#### a. United's Contract with GES

United first entered into its contract with GES on May 1, 2001, for a five year period ending April 30, 2006. (Exh. 83 at 1, 5.) The terms of the contract specify that the contract will automatically renew unless either party notifies the other party at least six months prior to the end of the term. (Exh. 83 at 1, 5.) The contract did in fact renew for a subsequent five year period to end on April 30, 2011. (03/28/2011 Trial Tr. at 84:11-20, 85:21-25.) According to the testimony of Richard Simon, United's

07cv2172

President and CEO, United's current and only contract with GES was set to expire on April 30, 2011. (03/28/2011 Trial Tr. at 85:23-25.) He further testified that, at the time of the trial, United and GES were negotiating for an extension of the contract as well as the possibility of providing additional services. (03/28/2011 Trial Tr. at 86:1-8.) There is no evidence in the record to suggest that an agreement had been reached regarding the proposed changes to the original contract, in which case there would be a new contract. In any event, because the parties were aware of United's desire to change the terms of the contract, the contract was not renewed. Based on the facts in the record, United's contract with GES expired on April 30, 2011, and as an expired contract, it cannot serve as the basis for injunctive relief.

### b. United's Contract with Champion

On July 1, 2005, United entered into a contractual agreement with Champion. (Exh. 84 at 1.) The contract would remain in effect for five years and expire on June 30, 2010. (Exh. 84 at 1.) This contract was still in effect when SDC implemented the Cleaning Services Policy on July 1, 2007. (03/28/2011 Trial Tr. at 93:14-20.) Because this original contract did not provide for automatic renewal or modification of the original contract, the contract expired on June 30, 2010. (Exh. 84 at 1.) However, on March 30, 2010, United and Champion negotiated to continue their contractual relationship for a subsequent five-year period beginning on July 1, 2011, and expiring on June 30, 2015. (Exh. 553 at 1.) Therefore, this 2011 contract is a new contract.

Even if the 2005 contract had permitted a renewal of the original contract, the 2011 contract was not a renewal because it contains new and changed terms. When the parties agreed to the new contract on March 30, 2010, they not only included new terms and agreements, but they also changed some of the terms under which the original contract had operated. (Exh. 84; Exh. 553.) Thus, it is an entirely different contract and not merely a renewal of the contract that was in place on July 1, 2007. Accordingly, United's current relationships, if any, with GES and Champion, are not based on the same contracts that were in effect when SDC instituted the Cleaning Services Policy on July 1, 2007. As a result, the contracts with which SDC interfered have expired and there is nothing left to enjoin.

**B. Statutory Grounds for Relief**

For a permanent injunction to issue, United's motion for injunctive relief must be supported by the statutory grounds for relief available under section 3422 of the California Civil Code. Even if United had renewed the contracts that were in place on July 1, 2007, a permanent injunction is not warranted because it would not prevent a multiplicity of judicial proceedings and because monetary damages are adequate.

### 1. Multiplicity of Actions

Section 3422 permits the issuance of a permanent injunction if it is necessary to prevent a multiplicity of actions. Cal. Civ. Code § 3422. This statutory basis requires the permanent injunction to address an interference with contract of such a continuing nature that the only remedy at law would be repeated judicial proceedings for damages. *See Mendelson v. McCabe*, 144 Cal. 230, 233 (1904). Although United argues that irreparable harm is not required, this statutory basis is essentially an expression of irreparable harm. Where the plaintiff will have to litigate multiple suits in the future, monetary damages are deemed to be insufficient and thus, an injunction may issue. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1352 (2003); *McLaughlin v. Del Re*, 64 Cal. 472, 473 (1884). Nevertheless, if the harm that will result from having to litigate multiple suits in the future is self-inflicted, equitable relief is not justified. *See United States v. Superior Court*, 19 Cal. 2d 189, 197 (1941) (finding no future injury where the injury was self-inflicted); *K.D. v. Oakley Union Elementary Sch. Dist.*, 2008 WL 360460, No. C 07-00920, at *11 (N.D. Cal. Feb. 8, 2008); *Ventura Cnty. Christian High Sch. v. City of Buenaventura*, 233 F. Supp. 2d 1241, 1253 (C.D. Cal. 2002); *see also Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995).

United asserts that a permanent injunction is justified because if SDC is not enjoined, SDC will continue to interfere with United's contracts with GES and Champion. United further argues that it will be forced to initiate a lawsuit for damages that will occur in the future, causing United and SDC unnecessary expense as well as burdening the Court's docket. Indeed, without a permanent injunction, United will likely have to file future suits to recover damages if SDC continues to interfere with United's contracts. But United's harm is self-inflicted. Before trial, United sought to rely on the

testimony of its damages expert, Dr. Patrick Kennedy, to establish future damages. The Court excluded the testimony of Dr. Patrick as well as the future damages theory because United failed to timely disclose the opinion and theory. (Doc. No. 146.) Although this Court recognized the possibility that a permanent injunction would resolve the issue of future lost profits, this Court also noted that any need to file future lawsuits in the absence of an injunction "is by plaintiff's own doing." (Doc. No. 146 at 8:8-13.) Even if this ruling forecloses United's future damages theory in this or any other litigation, any harm that arises is the result of United's own failure to comply with its disclosure and discovery obligations. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

### 2. Damages Inadequate

A permanent injunction may also issue "[w]here pecuniary compensation would not afford adequate relief." Cal. Civ. Code § 3422; *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1130 n.9 (1990); *Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1167 (2006). This standard applies to ordinary tort actions, like the cause of action for interference with contract. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 838 (1990). Generally, monetary damages are adequate to compensate the plaintiff for pecuniary losses, consequential losses, and actual harm to reputation resulting from interference with contract. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995) ("The courts provide a damage remedy against a third party conduct intended to disrupt an existing contract[.]"); *Bardis v. Oates*, 119 Cal. App. 4th 1, 10-16 (2004) (affirming award of compensatory damages for interference with economic advantage claim); 6 WITKIN, § 1709 (10th ed. 2005). Despite this general rule, United argues simply that monetary damages will be insufficient to remedy the loss of its market share, business relationships, and workforce.

The jury did not make a factual finding regarding the scope of the relevant market or the parties' shares of the relevant market. (Doc. No. 219 at 2:4-13.) Even if the jury had reached a conclusion on this factual issue, loss of market share that would result in the diminution of the value of the business is generally compensable through monetary damages. *See Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 257 (1968) (explaining that compensatory damages for wrongful interference with business must be demonstrated by concrete evidence of injury, including loss of employees and customers); 40 CAL. JUR. 3d § 48 (2012); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir.

1985) (finding that a newspaper's alleged loss of readers and decreased revenue constitute solely monetary harm even though the newspaper argued that no money damages could adequately repair the damage to the business); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1338 (S.D. Cal. 2010) (denying an injunction because future infringement resulting in lost market share and future lost opportunities were compensable by money damages). Furthermore, loss of business relations due to a dwindling workforce and loss of goodwill are also compensable by monetary damages. *Della Penna*, 11 Cal. 4th at 392; *Diodes*, 260 Cal. App. 2d at 257; 23 CAL. JUR. 3d § 89 (2012); *see also Oakland Tribune*, 762 F.2d at 1376; *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001).

Although the district court in *Signature Flight Support Corp. v. Landlow Aviation Ltd. P'ship*, 698 F. Supp. 2d 602, 624 (E.D. Vir. 2010), held that the plaintiff had demonstrated irreparable harm and the inadequacy of monetary damages where it would suffer a permanent loss of customers and goodwill without the injunction, the court noted that it would be extremely difficult to measure the future damages. The court also relied on the fact that the plaintiff would have to file breach of contract actions in the future in order to prevent future harm. *Signature*, 698 F. Supp. 2d at 624. While the court in *Signature* was persuaded by the difficulty of measuring damages, United already set forth a future damages theory and proposed an expert to establish the damages that will result in the future as a result of SDC's interference with the contracts. Not only does this demonstrate that United previously believed that its injury could be compensated by monetary damages, but it also demonstrates that determining future damages would not be difficult to measure. Moreover, unlike in *Signature*, this Court has already concluded that the possibility that United will have to litigate multiple claims in the future is the result of United's failure to comply with its disclosure and discovery obligations. Accordingly, United has failed to demonstrate that monetary damages would be inadequate.

**IV. California Civil Code Section 3423**

SDC argues that granting a permanent injunction would violate the contracts clause of the California Constitution and the anti-injunction statute of section 3423 of the California Civil Code. However, because the Court has already denied the injunction on various grounds, it need not consider the application of the contracts clause or the anti-injunction statute.

**V. The Equities**

Assuming federal equitable principles apply, this Court has discretion to grant permanent injunctive relief where: (1) the party has suffered irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships between the plaintiff and defendant indicate that equitable relief is warranted; and (4) the public interest will not be disserved by issuing the permanent injunction. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *see also Amoco Prod. Co.*, 480 U.S. 531, 546 n.12 (1987) (noting that the standard for a preliminary injunction is the same as for a permanent injunction except that the plaintiff must demonstrate actual success for a permanent injunction).

**A. Irreparable Harm**

The basis for injunctive relief "in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres*, 359 U.S. at 506-07. The plaintiff has the burden to prove that there is a likelihood of present or imminent irreparable harm that would result absent an injunction. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2760 (2010); *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011). For the same reasons United has failed to prove a claim for equitable relief under section 3422, this Court finds that United has failed to demonstrate irreparable harm. First, because the contracts with which SDC interfered have already expired, there is no present or immediate harm that SDC will continue to interfere with the contracts. Second, to the extent that SDC may interfere with similar contracts between United and GES or Champion in the future, any risk that United will have to enforce its rights through future litigation was caused by United's failure to comply with discovery obligations.

**B. Inadequate Remedies at Law**

The first element of irreparable harm is closely related to the second element, which requires that remedies available at law, such as monetary damages, must be inadequate to compensate the plaintiff for the harm suffered. *eBay*, 547 U.S. at 391; *Apple Inc. v. Pystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009). Monetary harm is not irreparable harm because the injury could be remedied by a damage award. As the Court stated in the discussion of section 3422, a permanent injunction is not necessary

1 because United's claims of loss of market share, workforce, and goodwill are compensable through
2 monetary damages. *See, e.g.*, *Oakland Tribune*, 762 F.2d at 1376; *Presidio Components*, 723 F. Supp.
3 2d at 1338; *OAO Corp*, 49 Fed. Cl. at 480; *Della Penna*, 11 Cal. 4th at 392; *Diodes*, 260 Cal. App. 2d at
4 257. Furthermore, if SDC interferes with United's future contracts, any harm that may arise will be
5 compensable by monetary damages.

6 The Ninth Circuit has held that a district court need not analyze the remaining elements of the
7 injunction standard where the plaintiff has not demonstrated the prerequisite factors of irreparable harm
8 and inadequacy of legal remedies. *Vilsack*, 636 F.3d at 1174; *LaDuke v. Nelson*, 762 F.2d 1318, 1330
9 (9th Cir. 1985). Accordingly, permanent injunctive relief is not warranted.

### *Conclusion*

As set forth above, the Court finds the instant motion to be moot in light of the Court's rulings granting SDC's motion for judgment as a matter of law, [Doc. No. 239-3], and granting in part SDC's motion for new trial, [Doc. No. 239-1]. However, even in the absence of these rulings, the Court finds that United's request for injunctive relief fails for three alternative reasons: first, the doctrine of res judicata bars the Court from addressing an equitable claim prior to the final resolution of the three remaining legal claims; second, United has failed to demonstrate that it is entitled to relief under state law; and third, the federal court exercises its discretion to deny the request for injunctive relief because United has not demonstrated irreparable harm or inadequacy of legal remedies.

IT IS SO ORDERED.

DATED: September 5, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge